# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                   :

In re                                 :        Chapter 11 Case No.
                                                   :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :     08-13555 (JMP)
                                                   :

                      Debtors.     :     (Jointly Administered)
                                                   :

------------------------------------------------------------------x

**ORDER CONFIRMING MODIFIED THIRD AMENDED JOINT CHAPTER 11**
**PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Lehman Brothers Holdings Inc. and its affiliated debtors,[1] (collectively, the

"Debtors"), each having proposed and filed the Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011 (as subsequently

supplemented, amended or modified, including by the Plan Supplement, the "Plan")[2] and the

Disclosure Statement for the Plan, dated August 31, 2011 (as amended, the "Disclosure

Statement"); and the Court having entered the *Amended Order (I) Approving the Proposed*

*Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing,*

*(II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing,*

*and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint*

*Chapter 11 Plan*, dated September 1, 2011 [ECF No. 19631] (the "Disclosure Statement Order");

---

[1] The Debtors are: Lehman Brothers Holdings Inc., LB 745 LLC, PAMI Statler Arms LLC, Lehman Brothers
Commodity Services Inc., Lehman Brothers Special Financing Inc., Lehman Brothers OTC Derivatives Inc.,
Lehman Brothers Derivatives Products Inc., Lehman Commercial Paper Inc., Lehman Brothers Commercial
Corporation, Lehman Brothers Financial Products, Inc., Lehman Scottish Finance L.P., CES Aviation LLC, CES
Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Luxembourg Residential Properties Loan Finance
S.a.r.l., BNC Mortgage LLC, Structured Asset Securities Corporation, LB Rose Ranch LLC, LB 2080 Kalakaua
Owners LLC, Merit LLC, LB Somerset LLC, and LB Preferred Somerset LLC.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in
the Plan, a copy of which is annexed hereto as Exhibit A. Any term used in the Plan or this Confirmation Order that
is not defined in the Plan or this Confirmation Order, but that is defined in title 11 of the United States Code (the
"Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall have the meaning
ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

and the Disclosure Statement, the Plan and the Solicitation Packages (as defined below) having

been distributed to holders of Claims entitled to vote on the Plan as provided in the Disclosure

Statement Order; and due notice of (i) entry of the Disclosure Statement Order, (ii) the hearing

on confirmation of the Plan (the "Confirmation Hearing"), and (iii) the deadline for voting on,

and/or objecting to, the Plan having been provided to holders of Claims against and Equity

Interests in the Debtors and other parties in interest in accordance with the Disclosure Statement

Order, the Bankruptcy Code and the Bankruptcy Rules, as established by the affidavits of

service, mailing, and/or publication filed with the Court; and the following documents having

been filed in support of or in connection with the confirmation of the Plan:

      (i)      Affidavit of Solicitation Mailing [ECF No. 20882] (the "Notice Affidavit");

      (ii)      Affidavits of Publication of Notice of (a) Approval of the Disclosure Statement, (b) Establishing the Record Date, (c) Hearing on Confirmation of the Plan and Procedures for Objecting to Confirmation of the Plan and (d) Procedures and Deadline for Voting on Plan [ECF No. 21695] (the "Publication Affidavits");

      (iii)      Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Cast on Debtors' Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated as of November 29, 2011 [ECF No. 22743] (as supplemented on December 5, 2011 [ECF No. 22972], the "Voting Certification");

      (iv)      the Plan Supplement, dated October 25, 2011 and amendments thereto (the "Plan Supplement") [ECF Nos. 21254, 21665, 22156, 22590, 22742, 22876, 22975 and 22980];

      (v)      the Debtors' Memorandum of Law Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, In Support

of Plan Settlements, dated November 29, 2011 (the "Debtors' Memorandum of Law In Support of the Global Settlement") [ECF No. 22749];

     (vi)    the Debtors' Memorandum of Law in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated November 29, 2011 (the "Debtors' Memorandum of Law In Support of Confirmation") [ECF No. 22747];

     (vii)    the Declaration of John K. Suckow in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated November 29, 2011 [ECF No. 22759] (the "Suckow Declaration");

     (vii)    the Declaration of Daniel J. Ehrmann in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated November 29, 2011 [ECF No. 22760] (the "Ehrmann Declaration");

     (ix)    the Declaration of Steven J. Cohn in Support of Confirmation of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated November 29, 2011 [ECF No. 22761] (the "Cohn Declaration");

     (x)    the Debtors' Response to Objections to Confirmation, dated November 29, 2011 (the "Debtors' Response") [ECF No. 22751];

     (xi)    the Statement of Official Committee of Unsecured Creditors (I) In Support of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors and (II) In Response to Objections to Such Plan, dated as of November 29, 2011 [ECF No. 22773];

     (xii)    the statements of numerous other Creditors in support of confirmation of the Plan; and

     (xiii)   objections to confirmation of the Plan by certain parties;

and each of the objections having been resolved, overruled, or withdrawn at or prior to the

Confirmation Hearing; and the Court having held the Confirmation Hearing commencing on

December 6, 2011; and after full consideration of the record of the Chapter 11 Cases, including,

without limitation, motions, applications and orders in the Chapter 11 Cases, the foregoing

documents, and the evidence admitted and arguments of counsel made at the Confirmation

Hearing; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

DETERMINED, FOUND, ADJUDGED, AND DECREED:

## **FINDINGS OF FACT**

A.      <u>Findings of Fact</u>.  The findings set forth herein and in the record of the

Confirmation Hearing constitute the Court's findings of fact pursuant to Rule 52 of the Federal

Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the

extent any of the following findings of fact constitute conclusions of law, they are adopted as

such.

B.      <u>Separate Chapter 11 Plans for Each Debtor</u>.  Unless otherwise expressly

contemplated herein, any statement regarding the Plan or the satisfaction of any requirements by

the Plan or the Debtors, or approval of Plan, shall be deemed to apply separately to the chapter

11 plan of each of the Debtors.  Unless otherwise expressly contemplated herein, any statements

included herein referring to actions taken by the Debtors shall be deemed to mean actions taken

by each Debtor in connection with its Plan.

C.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2),</u>

<u>1334(a))</u>.  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction

to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code

and should be confirmed.

    D. <u>Commencement of Chapter 11 Cases</u>.  Commencing on September 15,

2008 and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain

of its Affiliates commenced with this Court voluntary cases under chapter 11 of the Bankruptcy

Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and

are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors

are authorized to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

    E. <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the

Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including, without limitation, all pleadings and other documents filed, all orders entered, and the

evidence and arguments made, proffered, or adduced at the hearings held before the Court during

the pendency of the Chapter 11 Cases, including, but not limited to, the hearing to consider the

adequacy of the Disclosure Statement.

    F. <u>Burden of Proof</u>.  The Debtors have met their burden of proving the

elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

    G. <u>Transmittal and Mailing of Materials; Notice</u>.  On, September 1, 2011, the

Court entered the Disclosure Statement Order, which, among others things, approved the

Disclosure Statement, finding the Disclosure Statement contained "adequate information" under

section 1125 of the Bankruptcy Code, established the procedures for the solicitation, voting, and

tabulation of votes on the Plan, and approved the form of ballots and master ballots (the

"<u>Ballots</u>").  The Disclosure Statement, the Plan, the Ballots, the Disclosure Statement Order, the

notice of the scheduling of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>"), and a

letter from the Creditors' Committee in support of the Plan (translated into five languages) (such documents, collectively, the "Solicitation Package"), were transmitted and served in compliance with the Disclosure Statement Order, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and such transmittal and service, as evidenced by the Notice Affidavit was adequate and sufficient.  The Debtors' publication of the Confirmation Hearing Notice in *The New York Times, The Wall Street Journal, the Financial Times, The Times of London, the Sydney Morning Herald, the Tribune De Geneve, the DE Telegraaf, the Apple Daily, the Tages Anzeiger, the Luxemburger Wort, the Corriere Del Ticino, the Frankfurter Allgemeine Zeitung,* and *Yomiuri Shimbun,* as set forth in the Publication Affidavits (i) complied with the Disclosure Statement Order, (ii) was adequate and sufficient under the circumstances of these Chapter 11 Cases, (iii) provided adequate notice of the deadline for objecting to confirmation of the Plan, and the date, time and location of the Confirmation Hearing, and (iv) provided due process to all parties in interest in these Chapter 11 Cases.  No other or further notice is required.

       H.     Voting.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As described in the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

       I.     Plan Supplement.  On October 25, 2011, the Debtors filed the Plan Supplement, which included certain documents and agreements contemplated by the Plan, including the forms of revised certificates of incorporation and by-laws, or similar documents, for each Debtor other than Lehman Scottish Finance L.P. and East Dover Limited; the schedules of executory contracts and unexpired leases to be assumed pursuant to the Plan; the Plan Trust

Agreement; the form of Debtor Allocation Agreement; copies of settlement agreements that are

incorporated into the Plan pursuant to sections 6.5(b)(viii) and (j) of the Plan; an amendment to

the Plan; an updated recovery and liquidation analysis for SASCO and LBCC; a schedule of

Claims by Debtor-Controlled Entities against the Debtors; a reconciliation of the ownership of

certain assets as between certain Debtors; and a list of Debtor-Controlled Entities that may be

dissolved or merged in accordance with the Plan.  The Plan Supplement was amended on

October 25, 2011, November 4, 2011, November 15, 2011, November 22, 2011, November 29,

2011, December 2, 2011 and December 5, 2011.  The Plan Supplement complies with the

provisions of section 15.5 of the Plan.

   J.  <u>Modifications to the Plan</u>.  The Plan, and documents, amendments or

supplements to the Plan included in the Plan Supplement and any amendments thereto, as

modified by the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings

Inc. and its Affiliated Debtors, filed on November 29, 2011 and December 5, 2011 (the "<u>Plan</u>

<u>Modifications</u>"), shall constitute the Plan.

   K.  <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan

complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section

1129(a)(1) of the Bankruptcy Code.

   L.  <u>Compliance with Bankruptcy Rule 3016(a)</u>.  The Plan is dated and

identifies the entities submitting the Plan as proponents, thereby satisfying Bankruptcy Rule

3016(a).

   M.  <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to

Administrative Expense Claims and Priority Tax Claims which need not be designated, the Plan

designates 16 Classes of Claims against LBHI, 8 Classes of Claims against each of LCPI and

LBSF, 7 Classes of Claims against each of LBCS, LBCC and LOTC and 5 Classes of Claims

against each of the other Debtors, and one Class of Equity Interests for each Debtor. As required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.

        (i)    <u>Justification for Separate Classification</u>. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan. The classification takes into account the nature of Claims and the differing legal rights of the holders of such Claims. The nature of Claims and legal rights of the holders differ for (i) Claims asserted by Affiliates and third-party Creditors, (ii) direct Claims against a Debtor and Guarantee Claims, (iii) Claims subject to contractual or statutory subordination, and (iv) Claims entitled to be treated as senior obligations. In addition, the classification of Claims pursuant to the Plan takes into account the nature and risks of certain Claims in respect of the Plan Issues. These issues include: whether the equitable doctrine of substantive consolidation may be applied to the Debtors and their Affiliates; the characterization of the intercompany balances owed to LBHI by Subsidiary Debtors; the Allowed amounts of Affiliate Claims; the ownership and rights of various Debtors and their Affiliates with respect to certain assets; the allocation of costs and expenses of administration among the Debtors; and the post-effective date governance of the Debtors (collectively, the "<u>Plan Issues</u>"). The relative risks and benefits of potential litigation of the Plan Issues is a reasonable basis for the Plan to provide for separate classification of such Claims. If the Debtors and their Affiliates were substantively consolidated, generally, all Claims based on LBHI's guarantees of the obligations of its Affiliates and all Claims of Affiliates would be disregarded. The different nature of Claims, the legal rights of the holders of Claims and the recovery entitlements of Claims in the separate Classes, are a reasonable basis for separately classifying Claims.

(ii)   <u>Contractual Subordination Agreements</u>.  The contractual terms of the indentures pursuant to which LBHI issued Subordinated Notes provide that upon the bankruptcy of LBHI, no payments will be made to holders of the Subordinated Notes until all obligations of LBHI designated as "senior" in the indentures have been satisfied in full.  The Plan gives effect to these provisions by separately classifying Claims based on their respective priority in relation to the Subordinated Notes and the entitlement to receive amounts that would otherwise have been distributed to holders of Claims based on the Subordinated Notes.

(iii)   <u>Convenience Claims and Convenience Guarantee Claims (11 U.S.C. § 1122(b))</u>.  The definition and classification of Convenience Claims and Convenience Guarantee Claims are reasonable and necessary for administrative convenience.  The inclusion of convenience Classes in the Plans of LBHI, LBCS, LBCC, LBSF, LCPI and LOTC will permit those Debtors to make a single Distribution on account of Convenience Claims and Convenience Guarantee Claims against such Debtors and avoid the administrative burden of tracking the transfers of these Claims, repeating the calculations of the Distributions to holders of such Claims, providing notices to holders of such Claims and preparing and mailing or wiring Distributions to holders of such Claims on each Distribution Date.  The definitions of Convenience Claims and Convenience Guarantee Claims, including the exclusions of Claims based on public debt securities issued or guaranteed by LBHI or a Claim filed by a nominee on behalf of one or more beneficial holders of Claims, is reasonable and necessary for administrative convenience.

N.   <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  The Plan does not include any Classes of Claims that are unimpaired under the Plan.  The Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

9

O.   <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  All

Classes of Claims are impaired under the Plan.  Articles III, IV and V of the Plan specify the

treatment for each Class of Claims, thereby satisfying section 1123(a)(3) of the Bankruptcy

Code.

P.   <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the

same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless

the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of

such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

Q.   <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan, including the

various documents and agreements set forth in the Exhibits to the Plan and the Plan Supplement,

provide adequate and proper means for the Plan's implementation, including (i) the appointment

of a Plan Administrator with the duties and responsibilities set forth in Section 6.1(b) of the Plan

to administer and maximize the value of the Debtors' estates; (ii) the Global Settlement and

Bilateral Settlements incorporated into the Plan; (iii) the provisions governing Distributions

under the Plan; (iv) the procedures governing the allowance of Claims under the Plan; (v) the

dissolution or wind down of a Debtor or Debtor-Controlled Entity in accordance with applicable

law and consistent with the implementation of the Plan; and (vi) the liquidating trust vehicles

that may be created under the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy

Code. *See* Plan, Arts. VI-X.

R.   <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  To the extent

applicable, each Debtor's certificate of incorporation, bylaws or limited liability company

agreement, as applicable, shall be amended as of the Effective Date to contain a provision that

prohibits the issuance of nonvoting equity securities prohibited by section 1123(a)(6), thereby

satisfying section 1123(a)(6) of the Bankruptcy Code.

S.   <u>Selection of Officers, Directors, or Trustees (11 U.S.C. § 1123(a)(7))</u>.

Sections 7.2, 7.3 and 7.4 of the Plan provide for the manner in which the boards of directors of

each of the Debtors will be appointed following the Effective Date.  Such provisions are

consistent with the interests of Creditors, equity security holders, and public policy, thereby

satisfying section 1123(a)(7) of the Bankruptcy Code.  Prior to the Confirmation Hearing, the

Debtors have filed with the Court a list of the persons selected to serve on the board of directors

of LBHI following the Effective Date [ECF No. 22931].

T.   <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The provisions of the

Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a

provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the

effectiveness of this Confirmation Order.

U.   <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article XI of the

Plan and the Plan Supplement (as amended) provide for the rejection of executory contracts and

unexpired leases of the Debtors as of the Effective Date, except for any executory contract or

unexpired lease (i) that has been assumed pursuant to an order of the Bankruptcy Court prior to

the Effective Date, (ii) as to which a motion for approval of the assumption of such executory

contract or unexpired lease has been filed and served prior to the Confirmation Date or (iii) that

is specifically designated as an executory contract or unexpired lease to be assumed in the Plan

Supplement, and any amendment thereto.  Pursuant to the notices sent out by the Debtors to each

party to a contract proposed to be assumed by the Debtors (each, a "<u>Cure Notice</u>"), the Debtors

provided notice of any defaults to be cured with respect to each contract to be assumed by the

Debtors.  Numerous parties filed objections to the assumption of their contracts; a hearing before

the Court on the assumption of such contracts has been scheduled for February 14, 2012 at 10:00

a.m.  In addition, the Debtors have agreed with certain other parties to defer without date

disputes regarding whether a particular contract is executory and, if executory, whether (i) the

obligations thereunder are severable and (ii) whether the contract will be assumed or rejected.

The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

      V.      Settlement/Retention of Claims or Interests (11 U.S.C. § 1123(b)(3)).  The

Plan includes a settlement and compromise of the Plan Issues that is designed to achieve a fair

and efficient resolution of the Chapter 11 Cases.  Pursuant to Section 1123(b)(3) of the

Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes a settlement of potential

litigation of the Plan Issues.  The terms of the Plan reflect an integrated and comprehensive

settlement that resolves the various Plan Issues through (i) the Plan Adjustment; (ii) Distributions

to LBHI on only 80% of the portion of its Claims against the Subsidiary Debtors relating to

intercompany funding; (iii) the reallocation of the first $100 million distributed to LBHI on

account of its Claims against LBSF and LCPI to holders of General Unsecured Claims in LBSF

Class 4A and LCPI Class 4A; (iv) the Distribution to holders of General Unsecured Claims in

LBSF Class 4A and Affiliate Claims in LBSF Class 5C of the first $70 million recovered by

LBSF on account of its assets in excess of $14.156 billion; (v) the Allowed amount of Claims

asserted by Designated Entities; (vi) the allowance of LBT's intercompany Claim against LBHI

in the amount of $34.548 billion; (vii) the allocation of costs and expenses incurred in the

administration of the estates pursuant to the Debtor Allocation Agreement; and (viii) the

principles included in the Structured Securities Valuation Methodologies (the "Global

Settlement").  Each component of the Global Settlement is an integral part thereof.  The Plan was

accepted by Creditors holding 95.00% of voting Claims in the aggregate amount of

approximately $400 billion.  The Creditors supporting the Global Settlement include the

Creditors' Committee, the Ad Hoc Group,[3] certain of the Non-Con Plan Proponents[4] and certain

Foreign Affiliates (as defined below), each of which is a sophisticated party and represented by

counsel that is recognized as being knowledgeable and experienced in the field of complex

chapter 11 cases. The Global Settlement is a result of good faith arms'-length negotiations. The

Global Settlement is consistent with section 1123(b)(3) of the Bankruptcy Code.

       (i)    <u>Substantive Consolidation.</u>

       a.    The Debtors and the Creditors' Committee have conducted

a thorough factual and legal analysis to determine whether the substantive consolidation of the

Debtors and their Affiliates is appropriate. The facts and analysis set forth in the Disclosure

Statement, the Debtors' Memorandum of Law In Support of the Global Settlement, and the

Suckow Declaration, reflect that there are facts that support and facts that militate against the

substantive consolidation of the Debtors and their Affiliates based upon the law in this

jurisdiction. There is a possibility that if litigated to final judgment, a court may find that the

substantive consolidation of the Debtors and their affiliates, including their Foreign Affiliates, is

appropriate.

       b.    The Global Settlement gives due consideration to the

strengths and weaknesses of potential arguments that have been made for and against substantive

---

[3] The Ad Hoc Group consists of California Public Employees' Retirement System, Canyon Capital Advisors LLC, City of Costa Mesa, City of Fremont, County of San Mateo, Fiduciary Counselors Inc., Fir Tree, Inc., Gruss Asset Management, L.P., Owl Creek Asset Management, L.P., on behalf of the funds it manages or advises, Paulson & Co. Inc., Perry Capital LLC, on behalf of one or more investment funds for which it or an affiliate acts as investment advisor or general partner, Taconic Capital Advisors L.P. and Vallejo Sanitation and Flood Control District.

[4] The Non-Con Plan Proponents are Angelo, Gordon & Co., L.P., Contrarian Capital Management, LLC, Credit Agricole CIB, Credit Suisse International, Cyrus Capital Partners, LP, D. E. Shaw Composite Portfolios, L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., Deutsche Bank AG, Goldentree Asset Management, LP, Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.), Goldman Sachs International, Hayman Capital Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC, Morgan Stanley & Co. International plc., Morgan Stanley Capital Services Inc., Mount Kellett Capital Management, Oaktree Capital Management, L.P., The Royal Bank of Scotland plc, Serengeti Asset Management LP, Silver Point Capital, L.P., State Street Bank and Trust Company, and York Capital Management Global Advisors, LLC.

consolidation.  Litigation regarding substantive consolidation of the Debtors would require vast amounts of discovery and investigation into the operations of Lehman prior to the Commencement Date, would be extraordinarily complex and costly for all parties involved, and would significantly delay Distributions to all Creditors.

        c.     The Plan Adjustment, which is a key element of the Global Settlement, ensures that recoveries to all Creditors are within the range of possible litigated outcomes and fall between the estimated Distributions to each Class if the Participating Debtors and their affiliates were substantively consolidated or if the Participating Debtors had strict non-consolidation plans.

        (ii)     <u>Characterization of Intercompany Claims</u>.

        a.     Prior to the Commencement Date, the Debtors and their Affiliates entered into tens of thousands of transactions daily involving billions of dollars.  The transactions were recorded on Lehman's general ledger.  The Debtors reviewed a sampling of the transactions between Debtors and considered the relevant legal standards for the recharacterization of indebtedness as equity interests.  Based on the facts and analysis set forth in the Disclosure Statement, the Debtors' Memorandum of Law In Support of the Global Settlement, and the Cohn Declaration, there is a risk that certain portions of the intercompany balances owed to LBHI by the Subsidiary Debtors could be recharacterized as equity contributions if such matter were litigated to final judgment.

        b.     The Global Settlement gives due consideration to the strengths and weaknesses of potential arguments for and against the recharacterization of intercompany balances.  Litigation regarding characterization of a vast number of intercompany balances would be extremely time consuming and expensive, and would delay Distributions to all Creditors.

c.      By providing that the Distribution that LBHI will receive is based only on a portion of its Claims against the Subsidiary Debtors, the Plan provides recoveries to all Creditors that are within the range of possible litigated outcomes.

(iii)    Amount of Intercompany Claims/ Ownership of Assets.

a.      As a result of the large number of intercompany transactions among the Debtors and their Affiliates prior to the Commencement Date, there are many intercompany receivables and payables between Debtors.  The Debtors and their advisors have reviewed some of the transactions and the transfer of assets among the Debtors and determined that it is in the best interests of all Debtors and their Creditors to agree to the intercompany Claims among the parties in the amounts set forth on the books and records, subject to certain adjustments, and not to pursue any avoidance actions.

b.      The Plan establishes the Allowed amount of Claims among the Debtors and Claims of the Debtor-Controlled Entities against the Debtors and provides that all other Claims or causes of action are irrevocably released and waived.  The terms of the Global Settlement give due consideration to the strengths and weaknesses of potential arguments regarding the Claims among such entities and the ownership of assets.  Litigation regarding the amount or validity of thousands of intercompany balances and ownership of the Debtors' assets would be extremely time consuming and expensive, and would delay Distributions to all Creditors.

c.      The settlement of all Claims among the Debtors in the amounts set forth on the books and records, subject to certain adjustments, is within the range of possible litigated outcomes.

(iv)    <u>Settlements with Foreign Affiliates and Certain Third-Party Creditors Incorporated in the Plan.</u>

a.    Lehman was a worldwide enterprise prior to the Commencement Date which included affiliates organized and doing business in many international jurisdictions. Following the Commencement Date, insolvency or liquidation proceedings were commenced with respect to 80 of the Foreign Affiliates of the Debtors in 16 jurisdictions. Due to the manner in which Lehman operated prior to the Commencement Date, upon the fracturing of the Lehman enterprise, the Foreign Affiliates and the Debtors had significant Claims against each other.

b.    The Debtors have entered into settlement agreements with Lehman Brothers Bankhaus AG, Lehman Brothers Treasury Co. B.V., Lehman Brothers Securities N.V., Lehman Brothers International (Europe) and the Lehman UK Entities, Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*), Lehman Brothers (Luxembourg) Equity Finance S.A. (in liquidation), the Hong Kong Lehman Entities In Liquidation, the Lehman Singapore Entities, the Lehman Japan Entities (collectively, the "<u>Foreign Affiliates</u>"), Deutsche Bundesbank ("<u>Bundesbank</u>"), Bundesverband deutscher Banken E.V. ("<u>BdB</u>"), Entschädigungseinrichtung deutscher Banken GmbH ("<u>EdB</u>"), and Deutsche Bank and certain holders of participations in Claim Nos. 59006 and 58233 (collectively, the "<u>Bilateral Settlements</u>"). Each of the Bilateral Settlements with the Foreign Affiliates, BdB, EdB and Bundesbank takes into account the various Plan Issues, specifically substantive consolidation, and the validity and enforceability of asserted Guarantee Claims. Many of the Foreign Affiliates asserted Guarantee Claims against LBHI based upon certain corporate resolutions, pursuant to which LBHI purportedly guaranteed the obligations of certain of its Affiliates. LBHI has reviewed such Claims and has challenged the enforceability of such Claims.

c.     The Bilateral Settlements, other than the agreement with Deutsche Bank, take into account the fact that Claims of the affiliates and Guarantee Claims would be disregarded if the Debtors and its affiliates were substantively consolidated and the risk that certain Guarantee Claims may be unenforceable against LBHI, and, therefore, allow the Claims of the Foreign Affiliates in amounts substantially less than the asserted amounts.

d.     The Bilateral Settlement with Deutsche Bank takes into account the relative strengths of the arguments regarding the classification of certain Claims and the interpretation of the applicable agreements in which such Claims were settled and Allowed.

e.     The Bilateral Settlements resulted in a reduction of Claims asserted against the Debtors by more than $295 billion.

f.     Each of the Bilateral Settlements was negotiated in good faith and at arm's length.

W.     <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Packages and related documents and notices and in soliciting and tabulating votes on the Plan.

X.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the

Debtors' estates and effectuating an orderly liquidation of the Debtors.  The Plan was negotiated

at arm's length among representatives of the Debtors, the Creditors' Committee, the Ad Hoc

Group, certain of the Non-Con Plan Proponents, certain holders of notes issued by LBT and

guaranteed by LBHI, various Foreign Affiliates and other Creditors.  More than 150 parties that

asserted approximately $450 billion in Claims have entered into Plan Support Agreements in

connection with the Plan.

        Y.     <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

All payments made or to be made by any of the Debtors for services or for costs and expenses in

connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter

11 Cases, have been approved by, or are subject to the approval of, the Court, thereby satisfying

section 1129(a)(4) of the Bankruptcy Code.

        Z.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors

have complied with section 1129(a)(5) of the Bankruptcy Code.  Sections 7.2 and 7.3 of the Plan

provide for the manner in which the board of directors of each of the Debtors will be selected.

The Debtors have filed with the Court a list of the directors selected by the Director Selection

Committee to serve on the board of directors of LBHI following the Effective Date.  The

appointment to such offices of such persons is consistent with the interests of holders of Claims

against and Equity Interests in the Debtors and with public policy.  The Plan, therefore, complies

with section 1129(a)(5) of the Bankruptcy Code.

        AA.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for

any rate changes by the Debtors, and, therefore, section 1129(a)(6) of the Bankruptcy Code is

inapplicable in these Chapter 11 Cases.

        BB.    <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The Disclosure Statement, the Plan Supplement, the

Cohn Declaration and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Equity Interest in each Debtor will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the applicable Debtor were hypothetically liquidated under chapter 7 of the Bankruptcy Code on such date.  The assumptions and estimates in the liquidation analysis that are set forth in Exhibit 5 to the Disclosure Statement are reasonable in the context of these Chapter 11 Cases, including the assumption that the compromises and settlements incorporated in the Plan would also be consummated in a hypothetical chapter 7 liquidation.  Conversion of the Chapter 11 Cases to chapter 7 would result in substantial additional delay and expense, as well as diminished asset value.

CC.  <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Other than classes of Claims identified in the Voting Certification for which no votes were cast (the "<u>Non-Voting Classes</u>"), at each Debtor, all Classes in which Creditors were entitled to vote have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  Under these circumstances and in light of the overwhelming support for the Plan, the Non-Voting Classes are deemed to have accepted the Plan.  Claims in LBHI Class 10A, 10B, 10C and 11 (the "<u>Deemed Rejecting Classes of Claims</u>"), and Equity Interests in each of the Debtors are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes of Claims and the Classes of Equity Interests in each Debtor, each Debtor's Plan is confirmable because each Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

DD.     Treatment of Administrative Expenses, Priority Non-Tax Claims, and
Priority Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense Claims
and Priority Non-Tax Claims pursuant to Sections 2.1 of the Plan satisfies the requirements of
sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims
pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the
Bankruptcy Code.  Each Debtor has sufficient Cash to pay Allowed Administrative Expense
Claims, Allowed Priority Non-Tax Claims, and Allowed Priority Tax Claims.

EE.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  At least one
Class of Claims against each Debtor that is impaired under the Plan has accepted the Plan,
determined without including any acceptance of the Plan by any insider, thus satisfying the
requirements of section 1129(a)(10) of the Bankruptcy Code.

FF.     Feasibility (11 U.S.C. § 1129(a)(11)).  The Debtors' Memorandum of Law
in Support of Confirmation, the Disclosure Statement and the Suckow Declaration are persuasive
and credible evidence that each Debtor will have sufficient funds to continue to manage its assets
and make all payments required under the Plan.  Accordingly, the Plan satisfies the requirements
of section 1129(a)(11) of the Bankruptcy Code.

GG.     Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under
section 1930 of title 28, United States Code, as determined by the Court, have been paid or will
be paid pursuant to Section 15.7 of the Plan.  Thus, the Plan satisfies the requirements of section
1129(a)(12) of the Bankruptcy Code.

HH.     Benefit Plans (11 U.S.C. § 1129(a)(13)).  Section 1123(a)(13) is
inapplicable to the Debtors.

II.     Inapplicable Sections of Section 1129 of the Bankruptcy Code.  Sections 1129(a)(14), 1129(a)(15), 1129(a)(16) and 1129(e) are inapplicable in the Debtors' Chapter 11 Cases.

JJ.     Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Based on the Disclosure Statement, the Debtors' Memorandum of Law In Support of the Global Settlement, the Debtors' Memorandum of Law In Support of Confirmation of the Plan, the Suckow Declaration, and the Debtors' Response, the Plan (i) does not discriminate unfairly, and (ii) is fair and equitable as to LBHI Classes 10A, 10B, 10C and 11 and the Equity Interests in each Debtor, which Classes were deemed to reject the Plan, as required by section 1129(b)(1) of the Bankruptcy Code.

KK.     Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan being prosecuted in these Chapter 11 Cases, thereby satisfying section 1129(c) of the Bankruptcy Code.  The Ad Hoc Group and certain of the Non-Con Plan Proponents that signed plan support agreements have agreed to support the Plan and hold their plans in abeyance and not prosecute or seek confirmation of the Plan subject to certain termination rights set forth in the Stipulation and Order, dated June 30, 2011 [ECF Nos. 18306 and 18686].  Neither the Ad Hoc Group nor the Non-Con Plan Proponents have terminated the Stipulation and Order and both are supporting the confirmation of the Plan.

LL.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

MM.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court in these Chapter 11 Cases, the Debtors and their directors, officers, employees, members, agents, advisors, attorneys and professionals, the Released Parties and the PSA

Creditors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy

Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy

Rules in connection with all their respective activities relating to the solicitation of acceptance or

rejection of the Plan and their participation in the activities described in section 1125 of the

Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the exculpation provisions set forth in Section 13.3 of the Plan.

NN.   <u>Assumption and Rejection</u>.  Article XI of the Plan governing the

assumption and rejection of executory contracts and unexpired leases satisfies the requirements

of section 365(b) of the Bankruptcy Code.

OO.   <u>Releases, Injunction and Exculpation</u>.  In the context of these unique

Chapter 11 Cases, each of the releases, and the injunction and exculpation provisions set forth in

the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a),

1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section

1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated

into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their

estates, and their Creditors; (e) is important to the overall objectives of the Plan; and (f) is

consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the

Bankruptcy Code, and other applicable law.

PP.   <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the

requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

QQ.   <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all

issues raised in the objections (excluding any timely filed objections that relate solely to

assumption of any executory contract), or which might have been raised, and the objections

(excluding any timely filed objections that relate solely to assumption of any executory contract)
have been fully and fairly litigated.

RR.     Retention of Jurisdiction.  The Court is authorized to retain jurisdiction
over the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code, as
well as any motions filed prior to the Effective Date requesting authorization to use, sell, or lease
assets outside the ordinary course of business pursuant to section 363 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED THAT:

1.     Confirmation.  The Plan is approved and confirmed under section 1129 of
the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and
approved.  The terms of the Plan, all Exhibits thereto, and the Plan Supplement are incorporated
by reference into and are an integral part of the Plan and this Confirmation Order and are all
approved.

2.     Objections.  All objections (excluding any timely filed objections that
relate solely to assumption of any executory contract) that have not been withdrawn, waived, or
settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are
overruled on the merits for the reasons set forth in the Response, the Debtors' Memorandum of
Law In Support of Confirmation and the Debtors' Memorandum of Law In Support of the Global
Settlement.

3.     Conclusions of Law.  The conclusions of law set forth herein and in the
record of the Confirmation Hearing constitute the Court's conclusions of law pursuant to Rule 52
of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052

and 9014.  To the extent any of the following conclusions of law constitute findings of fact, they

are adopted as such.

       4.      <u>Modifications to the Plan</u>.  The Plan Modifications meet the requirements

of sections 1127(a) and (c) of the Bankruptcy Code and do not adversely change the treatment of

the Claim of any Creditor or the Equity Interest of any equity security holder within the meaning

of Bankruptcy Rule 3019, and, therefore, all holders of Claims against the Debtors who voted to

accept the Plan are hereby deemed to have accepted the Plan as amended by the Plan

Modifications, and no further solicitation or voting is required.  No holder of a Claim against the

Debtors who has voted to accept the Plan shall be permitted to change its acceptance or rejection

as a consequence of the Plan Modifications.

       5.      <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied

with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon

the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions

of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The solicitation of votes on

the Plan complied with the solicitation procedures in the Disclosure Statement Order, was

appropriate and satisfactory under the circumstances of the Debtors' Chapter 11 Cases, and was

in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local

Rules.  Notice of the Plan Supplement and all related documents, was appropriate and

satisfactory under the circumstances of the Debtors' Chapter 11 Cases, and was in compliance

with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

       6.      <u>Implementation</u>.  On and after the Effective Date, the Debtors, and the

Plan Administrator are authorized to (i) execute, deliver, file, or record such documents,

contracts, instruments, releases, and other agreements, including, without limitation, those

contained in the Plan Supplement, (ii) make any and all Distributions and transfers contemplated

pursuant to, and as provided for in, the Plan, and (iii) take such other actions as may be necessary

to effectuate, implement, and further evidence the terms and conditions of the Plan.

7.      Plan Classification Controlling.  The classification of Claims and Equity

Interests for purposes of the Distributions to be made under the Plan shall be governed solely by

the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the

Debtors' Creditors in connection with voting on the Plan (a) were set forth on the Ballots for

purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no way

affect, the actual classification of such Claims and Equity Interests under the Plan for

Distribution purposes, and (c) shall not be binding on the Debtors.

8.      Binding Effect.  The Plan and its provisions shall be binding on the

Debtors, any entity acquiring or receiving property or a Distribution under the Plan, and any

holder of a Claim against or Equity Interest in the Debtors, including all governmental entities,

whether or not the Claim or Equity Interest of such holder (a) is impaired under the Plan or (b)

has accepted the Plan.

**The Global Settlement**

9.      Global Settlement Provisions.  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the Global Settlement set forth in section 6.5 of the Plan, and each

component of the Global Settlement, are hereby approved pursuant to Bankruptcy Rule 9019 as

fair and reasonable and in the best interests of each of the Debtors, their estates and Creditors.

The settlement is within the range of reasonable results if the issues were litigated and falls

above the lowest point in the range of reasonableness.

**The Bilateral Settlements**

10.     The Plan constitutes a motion for approval of each of the Bilateral Settlements pursuant to Bankruptcy Rule 9019.  The settlement agreements were included in the Plan or the Plan Supplement, which provided adequate and sufficient notice to all Creditors.

11.     <u>Approval of Bankhaus Settlement.</u>  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and Lehman Brothers Bankhaus AG ("<u>Bankhaus</u>") described in the Disclosure Statement and incorporated into the Plan pursuant to Section 6.5(b)(ii) of the Plan (the "<u>Bankhaus Settlement Agreement</u>") is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the Bankhaus Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, Bankhaus shall have Allowed Claims against the Debtors in the amounts set forth in the Bankhaus Settlement Agreement.

12.     <u>Approval of LBT Settlement.</u>  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and Lehman Brothers Treasury Co. B.V. ("<u>LBT</u>") described in the Disclosure Statement and incorporated into the Plan pursuant to Section 6.5(b)(iii) of the Plan (the "<u>LBT Settlement Agreement</u>") is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully

perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the LBT Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, LBT shall have Allowed Claims against the Debtors in the amounts set forth in the LBT Settlement Agreement.

13.     Approval of Hong Kong Settlement.  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and the Hong Kong Lehman Entities In Liquidation described in the Disclosure Statement and incorporated into the Plan pursuant to Section 6.5(b)(v) of the Plan (the "Hong Kong Settlement Agreement") is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the Hong Kong Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, the Hong Kong Lehman Entities shall have Allowed Claims against the Debtors in the amounts set forth in the Hong Kong Settlement Agreement

14.     Approval of Singapore Settlement.  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and the Lehman Singapore Entities described in the Disclosure Statement and incorporated into the Plan pursuant to 6.5(b)(vi) of the Plan (the "Singapore Settlement Agreement") is fair and reasonable and is in the

best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019. The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the Singapore Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein. Pursuant to section 502 of the Bankruptcy Code, Lehman Singapore shall have Allowed Claims against the Debtors in the amounts set forth in the Singapore Settlement Agreement.

15. <u>Approval of Lehman UK Entities Settlement.</u> Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and the Lehman UK Entities set forth in the agreement, dated October 24, 2011 included in the Plan Supplement (the "<u>Lehman UK Entities Settlement Agreement</u>") and incorporated into the Plan pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019. The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the Lehman UK Entities Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein. Pursuant to section 502 of the Bankruptcy Code, the Lehman UK Entities shall have Allowed Claims against the Debtors in the amounts set forth in the Lehman UK Entities Settlement Agreement.

16. <u>Approval of LBJ Settlement.</u> Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the

Disclosure Statement, the settlement between the Debtors and the Lehman Japan Entities set

forth in the agreement, dated as of October 24, 2011, included in the Plan Supplement (the "LBJ

Settlement Agreement") and incorporated into the Plan pursuant to Section 6.5(b)(vii), is fair and

reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved

pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents, and papers and to

take any and all actions reasonably necessary or appropriate to consummate the LBJ Settlement

Agreement, including waiving any conditions precedent to its effectiveness, and to perform any

and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, the

Lehman Japan Entities shall have Allowed Claims against the Debtors in the amounts set forth in

the LBJ Settlement Agreement.

17.     Approval of LBSN Settlement.  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and the Lehman Brothers

Securities N.V. ("LBSN") set forth in the agreement, dated as of October 19, 2011, included in

the Plan Supplement (the "LBSN Settlement Agreement") and incorporated into the Plan

pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best interests of the Debtors

and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are

duly authorized to execute, deliver, implement and fully perform any and all obligations,

instruments, documents, and papers and to take any and all actions reasonably necessary or

appropriate to consummate the LBSN Settlement Agreement, including waiving any conditions

precedent to its effectiveness, and to perform any and all obligations contemplated therein.

Pursuant to section 502 of the Bankruptcy Code, LBSN shall have Allowed Claims against the

Debtors in the amounts set forth in the LBSN Settlement Agreement.

18.     <u>Approval of LB Lux Settlement.</u>  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and Lehman Brothers

(Luxembourg) Equity Finance S.A. (*en faillite*) ("<u>LB Lux</u>") set forth in the agreement, dated as

of October 25, 2011, included in the Plan Supplement (the "<u>LB Lux Settlement Agreement</u>") and

incorporated into the Plan pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best

interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule

9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and

all obligations, instruments, documents, and papers and to take any and all actions reasonably

necessary or appropriate to consummate the LB Lux Settlement Agreement, including waiving

any conditions precedent to its effectiveness, and to perform any and all obligations

contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, LB Lux shall have

Allowed Claims against the Debtors in the amounts set forth in the LB Lux Settlement

Agreement.

19.     <u>Approval of BdB Settlement.</u>  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and BdB set forth in the

agreement, dated as of September 30, 2011, included in the Plan Supplement (the "<u>BdB

Settlement Agreement</u>") and incorporated into the Plan pursuant to Section 6.5(j), is fair and

reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved

pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents, and papers and to

take any and all actions reasonably necessary or appropriate to consummate the BdB Settlement

Agreement, including waiving any conditions precedent to its effectiveness, and to perform any

08-13555-scc-mg   Doc 59936-2   Filed 12/06/11   Entered 12/06/11 16:57:28   Exhibit B
08-13555-scc-mg   Doc 23023   Filed 12/06/11   Entered 12/06/11 16:57:28   Main Document
Pg 32 of 61
Pg 32 of 62

and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, BdB shall have Allowed Claims against the Debtors in the amounts set forth in the BdB Settlement Agreement.

20.     Approval of EdB Settlement.  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and EdB set forth in the agreement, dated as of September 30, 2011, included in the Plan Supplement (the "EdB Settlement Agreement") and incorporated into the Plan pursuant to Section 6.5(j), is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the EdB Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, EdB shall have Allowed Claims against the Debtors in the amounts set forth in the EdB Settlement Agreement.

21.     Approval of Bundesbank Settlement.  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and Bundesbank set forth in the agreement, dated as of October 11, 2011, included in the Plan Supplement (the "Bundesbank Settlement Agreement") and incorporated into the Plan pursuant to Section 6.5(j), is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments,

documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the Bundesbank Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein. Pursuant to section 502 of the Bankruptcy Code, Bundesbank shall have Allowed Claims against the Debtors in the amounts set forth in the Bundesbank Settlement Agreement.

22. <u>Approval of Deutsche Bank Settlement.</u> Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the LBHI, LCPI, Deutsche Bank AG, Monarch Alternative Capital LP, Stone Lion Portfolio L.P., Permal Stone Lion Fund Ltd., Centerbridge Credit Advisors LLC, and Anchorage Capital Group, L.L.C. set forth in the agreement, dated as of November 23, 2011, included in the Plan Supplement (the "<u>DB Claims Settlement Agreement</u>") and incorporated into the Plan pursuant to Section 6.5(j), is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019. The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the DB Claims Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein.

23. <u>Implementation of the Bilateral Settlements.</u> The Debtors are authorized to take all actions to implement the terms of each of the Bilateral Settlements. The Debtors are authorized to direct Epiq Bankruptcy Solutions, LLC, the court-appointed claims agent (the "<u>Claims Agent</u>") to modify the official claims register (the "<u>Claims Register</u>") to reflect the terms of the Bilateral Settlements.

24.    <u>Debtors' Claims Schedule</u>.  Pursuant to the Bar Date Order, the Debtors
were not required to file Claims against each other.  Pursuant to Section 6.5(b)(i) of the Plan,
Senior Affiliate Claims, Senior Affiliate Guarantee Claims and Affiliate Claims of a Debtor
against another Debtor are Allowed in the applicable Classes in the net amounts set forth on
pages 1 and 2 of the Debtors' Claims Schedule.  Other than any Claims that arise out of the
Debtor Allocation Agreement, the amounts included on the Debtors' Claims Schedule shall be
the only prepetition Claims of the Debtors against each other that are Allowed.  The Claims
Agent is authorized to take all actions to reflect the Claims set forth in the Debtor Claims
Schedule on the Claims Register.

25.    <u>Schedule of Claims of Debtor-Controlled Entities</u>.  Pursuant to the Bar
Date Order, the Debtor-Controlled Entities were not required to file proofs of Claim against the
Debtors prior to the Bar Date.  The Schedule of Claims of Debtor-Controlled Entities included in
the Plan Supplement sets forth the prepetition Claims of the Debtor-Controlled Entities against
each of the Debtors that will be Allowed pursuant to the Plan upon the occurrence of the
Effective Date.  The Claims will be Allowed as Senior Affiliate Claims (LBHI Class 4A), Senior
Affiliate Guarantee Claims (LBHI Class 4B) and Affiliate Claims (LBHI Class 8) against LBHI
as set forth in the Schedule of Claims of Debtor-Controlled Entities and against each of the
Subsidiary Debtors in the Class of Claims of Affiliates Other Than Participating Debtors.
Except for Claims that may arise between the Debtors and the Debtor-Controlled Entities in
accordance with the Debtor Allocation Agreement or Claims for which a proof of Claim was
timely filed, (i) the amounts included on the Schedule of Claims of Debtor-Controlled Entities
shall be the only prepetition Claims of the Debtor-Controlled Entities that are Allowed against
the Debtors and (ii) to the extent any Debtor-Controlled Entity is not included on the Schedule of
Claims of Debtor-Controlled Entities, such Debtor-Controlled Entity shall not have any Allowed

33

prepetition Claims against the Debtors. Notwithstanding the foregoing, the Schedule of Claims

of Debtor-Controlled Entities provides that LB Re Financing No. 2 Limited shall have an

Allowed Claim against LBHI in LBHI Class 4A in the amount of $6,761,074,231, which amount

shall supersede in all respects the Claim filed by LB Re Financing No. 2 Limited against LBHI

(Claim No. 23568), which proof of Claim shall be disregarded for all purposes. In addition, the

Debtor-Controlled Entities Claims Schedule provides that LB Offshore Partners Ltd. shall have

an Allowed Claim against LBSF in LBSF Class 5C in the amount of $144,992. The Allowed

Claims set forth on this schedule shall supersede in all respects the claim filed by LB Offshore

Partners Ltd (Claim No. 27448). However, this shall not have any effect on Claim Nos. 24609

and 24611, which LB Offshore Partners Ltd. acquired from a third party. The Claims Agent is

authorized to take all actions to reflect the Claims set forth in the Debtor-Controlled Entities

Claims Schedule on the Claims Register.

26. _Debtor Allocation Agreement_. The Debtor Allocation Agreement, which

provides for the manner in which (a) expenses of the administration of the assets and liabilities of

the Debtors and certain of their affiliates, (b) the costs and benefits of Jointly Owned Litigation

Claims, (c) tax liabilities, refunds or readjustments for periods prior to, during and after the

Effective Date, will be allocated among the Debtors, is approved. Pursuant to the Debtor

Allocation Agreement, LBSF shall have an Allowed Administrative Expense Claim against

LBHI in the amount of $300 million to be satisfied in accordance with Section 6.3 of the Plan.

The Debtors and the Plan Administrator are authorized to take all actions necessary to allocate

such costs and expenses in accordance with the Debtor Allocation Agreement.

27. _Resolution of Inter-Debtor Issues_. In order to "close" the various inter-

company repurchase transactions, remove encumbrances, and to simplify the accounting for the

estates, the Debtors are authorized to make the transfers set forth in the Exhibit 10 of the Plan

Supplement.  Except as set forth in the preceding sentence, all Claims and disputes among the

Debtors or a Debtor and any Debtor-Controlled Entity regarding the title or beneficial ownership

of assets are hereby resolved in favor of the Debtor or Debtor-Controlled Entity whom the

Debtors have determined have beneficial ownership of these assets.  All Avoidance Actions of

any Debtor against another Debtor or Debtor-Controlled Entity are fully and irrevocably

released.  All reservations of rights of any of the Debtors or affiliates of the Debtors or their

respective Creditors, to assert any arguments or challenge any transaction entered into by any

other Debtors contained in any order entered by this Court prior the date hereof or agreement

entered into by any Debtor or affiliate of any Debtor are fully and finally extinguished.

28. <u>Plan Trust Agreement</u>.  The Plan Trust Agreement, which provides that

the Plan Trust will hold the Plan Trust Stock, is approved.  The members of the Director

Selection Committee who are serving in such capacity as of the Effective Date, or their

replacements designated in accordance with the Court's Order Pursuant to Sections 105(a),

363(b), and 1142(b) of the Bankruptcy Code, Appointing the Director Selection Committee,

Approving Retention of Korn/Ferry International, and Authorizing Certain Related Relief [ECF

No. 22871], shall serve as the Plan Trustees and shall have the rights and obligations set forth in

section 7.4 of the Plan and the Plan Trust Agreement.

**Executory Contracts and Unexpired Leases**

29. Pursuant to Section 11.1 of the Plan, all prepetition executory contracts

and unexpired leases to which any of the Debtors are parties shall be deemed to be rejected

pursuant to section 365 of the Bankruptcy Code, except for any executory contract or unexpired

lease (a) that has been assumed pursuant to an order of the Court entered prior to the Effective

Date, (b) as to which a motion for approval of the assumption or rejection of such executory

contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is

specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor.

30.     Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the assumption of each executory contract and unexpired lease designated in the Plan Supplement other than any executory contracts set forth on Schedules 1 and 2 hereto, or that are the subject of the objections listed on Schedules 1 and 2 hereto, is approved.  To the extent any provision of an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract or unexpired lease, the effectiveness of such provision is hereby limited or unenforceable to the full extent provided in section 365(f) of the Bankruptcy Code.  The hearing regarding the Debtors' ability to assume, or assume and assign, any executory contract or unexpired lease set forth on Schedule 1 hereto or that is the subject of the objections listed on Schedule 1 hereto (the "February 14 Contracts") shall be held by the Court **on February 14, 2011 at 10:00 a.m.**  The inclusion on the Plan Supplement of the executory contracts set forth on Schedule 2 hereto (the "Deferred Contracts") constitutes a motion for assumption of the executory contract or unexpired lease, which has been adjourned without date and shall be scheduled by the Debtors, with leave from the Court, on a date to be determined with at least 30 days notice to the counterparty, or as otherwise agreed. All of the Debtors' rights with respect to the February 14 Contracts and the Deferred Contracts are reserved.

31.     If the Court determines either before or after the Effective Date that the cure amount or requirements for adequate assurance for any Deferred Contract is in excess of the amount asserted by the Debtors, or if the Debtors determine not to proceed to assume any Deferred Contract, the Debtors' rights are fully preserved to amend Exhibit 2 to the Plan Supplement to remove the applicable contract(s), and upon such removal the applicable

contract(s) shall be deemed rejected as of the Effective Date in accordance with Section 11.1 of the Plan.

32.     The filing and service of the Plan and the Plan Supplement, the service of a notice of the cure amount, and the publication of the Confirmation Order is adequate notice of the assumption of executory contracts and unexpired leases that are assumed pursuant to this Order and the Plan (the "Assumed Contracts").

33.     Except as may otherwise be agreed to by the parties to a particular contract, within thirty (30) days after the Effective Date, the applicable Debtor shall cure any and all payment defaults under its respective Assumed Contracts in accordance with section 365(b) of the Bankruptcy Code, by payment of the amount specified by the applicable Debtor in the Cure Notice sent by the Debtor with respect to such Assumed Contract.  With respect to February 14 Contracts and Deferred Contracts, disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.  Notwithstanding any requirement in the Bankruptcy Code that executory contracts be assumed or rejected on or prior to the Confirmation Date, the Debtors shall (i) be entitled to assume any executory contract that the Court determines the Debtors are entitled to assume, or (ii) reject any executory contract that either the Court determines the Debtors are not entitled to assume, or that the Debtors elect to reject at any time prior to the hearing on February 14, 2011, in which case, such assumption or rejection shall be effective as of the Effective Date.

34.     All counterparties to Assumed Contracts have been provided with adequate assurance of future performance pursuant to section 365(f) of the Bankruptcy Code.

35.     The assumption of a prepetition executory contract shall not enhance any contractual rights of a counterparty that were otherwise unenforceable under the Bankruptcy

Code immediately prior to the assumption or rejection of such contract; *provided, however,* that the rights of all counterparties to assert that a contractual right was enforceable under the Bankruptcy Code immediately prior to assumption or rejection and the Debtors' rights to dispute any such assertions are fully preserved.

36.     With respect to the Assumed Contracts, any defaults on the part of the Debtors that may arise because of a condition of the kind specified in section 365(b)(2) of the Bankruptcy Code ("Ipso Facto Defaults") are not subject to the requirements under section 365(b)(1) of the Bankruptcy Code and no party shall be permitted to declare a default, terminate, cease payment, delivery or any other performance under any executory contract, or any agreement relating thereto, or otherwise modify any such executory contract, assert any Claim or right to termination payment, or impose any penalty or otherwise take action against a Debtor as a result of an Ipso Facto Default.

37.     Bar Date for Rejection Damage Claims.  Pursuant to Section 11.4 of the Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section 11.1 of the Plan results in damages to the other party or parties to such contract or lease, if not evidenced by a previously filed proof of Claim, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors, or any property to be distributed under the Plan, unless a proof of Claim is filed with the Court and served upon the Debtors, on or before the date that is forty-five (45) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease.  All Claims filed against the Debtors as a result of the rejection of an executory contract or unexpired lease must be filed in accordance with the procedures for the filing of Claims set forth in the Bar Date Order,

including the requirements to complete the Derivatives Questionnaire and/or the Guarantee

Questionnaire, as applicable.  Service of the Confirmation Notice shall be sufficient notice to the

applicable counterparties to executory contracts and unexpired leases of the rejection of their

executory contracts and unexpired leases pursuant to the Plan and the deadlines and procedures

for filing and Claims against the Debtors resulting from such rejection.

      38.    <u>Insurance Contracts</u>.  To the extent that any of the Debtors' insurance

policies and any agreements, documents or instruments with insurers relating thereto constitute

executory contracts, such contracts shall be deemed assumed under the Plan.

**<u>Title to Assets</u>**

      39.    <u>Vesting of Assets</u>.  Pursuant to Section 13.1 of the Plan, except as

otherwise provided in the Plan, all property of each of the Debtor's estates shall vest in that

Debtor free and clear of all Claims, liens, encumbrances, charges and other interests.  From and

after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action,

including, without limitation, the operation of their businesses, the use, acquisition, sale, lease

and disposition of property, and the entry into transactions, agreements, understandings or

arrangements, whether or not in the ordinary course of business, and execute, deliver, implement,

and fully perform any and all obligations, instruments, documents and papers or otherwise in

connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the

Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or

provision of the Bankruptcy Code, except as explicitly provided in the Plan.

**Distributions and Reserves**

40.     <u>Initial Distributions</u>.  If the Debtors make the initial Distribution after January 31 but before March 30, 2012, then notwithstanding the provisions of Section 8.3 of the Plan, the Debtors shall not be required to make a Distribution on March 30, 2012 and the second Distribution will be made on September 30, 2012.  All subsequent Distributions shall be made on the semi-annual dates set forth in Section 8.3 of the Plan.

41.     <u>Effective Date Payments and Transfers by the Debtors</u>.  Pursuant to Section 2.1 of the Plan, and subject to Sections 8.3 and 8.4 of the Plan, on the Effective Date, or as soon thereafter as is practicable, the Debtors shall remit to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and, if applicable, Allowed Secured Claims Cash in an amount equal to the Allowed amount of such Claims.

42.     <u>Reserve Requirements</u>.  Pursuant to Section 8.4 of the Plan, the Debtors shall reserve an aggregate amount equal to the Pro Rata Share of the Distributions that would have been made to each holder of a Disputed Claim if such Disputed Claim were an Allowed Claim against such Debtor in an amount equal to the least of (a) the filed amount of such Disputed Claim as set forth on the Claims Register maintained by the Claims Agent, (b) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Court for purposes of fixing the amount to be retained for such Disputed Claim, and (c) such other amount as may have been agreed upon by the holder of such Disputed Claim and the Debtors or may be agreed upon by the holder of such Disputed Claim and the Plan Administrator.

43.     <u>No Reserve for Disallowed or Expunged Claims</u>.  None of the Debtors shall be required to establish reserves for Claims that have been disallowed or expunged by order

of the Court in the absence of an order of the Court expressly directing the Debtor to establish a reserve.

44.  <u>Distributions to Holders of Allowed Convenience Claims and Allowed Convenience Guarantee Claims</u>.  A single Distribution to holders of Convenience Claims and Convenience Guarantee Claims in the amounts set forth in the Plan shall satisfy such Claims in full.  Such Creditors shall not have any further right to a Distribution from any Debtor in respect of their Convenience Claims or Convenience Guarantee Claims.  Holders of Convenience Claims subject to the *Order Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Procedures for the Determination of the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc.* [ECF No. 19120] (the "<u>Structured Securities Procedures Order</u>") shall be bound by this paragraph even if the Debtors determine subsequent to the date hereof that the value of a structured security is greater than the amount previously proposed by the Debtors pursuant to the Structured Securities Valuation Methodologies and Structured Securities Procedures Order.

45.  <u>Setoffs and Recoupment</u>.  Except as otherwise agreed by a Debtor, including in the Plan, any Debtor may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtor may have against the claimant; *provided, however*, that the claimant shall be served with written notice of the proposed setoff or recoupment at least twenty-eight (28) days prior to exercising any asserted setoff or recoupment right, and, if such claimant serves a written objection to such asserted setoff or recoupment on or before twenty-eight (28) days of receipt of such written notice, (i) the objection shall be deemed to initiate a contested matter governed by, *inter alia*, Bankruptcy Rule 9014 and Local Rules 9014-1 and 9014-2, (ii) nothing herein shall affect the respective burden of each party in connection with

such contested matter, and (iii) the Debtor shall not proceed with the asserted setoff or recoupment absent the withdrawal of such objection or the entry of a Final Order overruling such objection but the Debtor may withhold such payment pending resolution of such objection; *provided, further*, that neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

**Post-Effective Date Management of the Debtors**

46.  Boards of Directors.  Following the Effective Date, the board of directors of LBHI shall be: Frederick Arnold, Robert S. Gifford, Thomas A. Knott, Sean O. Mahoney, David Pauker, Ronald K. Tanemura and Owen D. Thomas.

47.  Following the Effective Date, the board of directors of LBSF and LCPI shall each consist of three (3) individuals as follows: (i) an individual who is a concurrently serving member of the LBHI board of directors who is selected by the LBHI board of directors; (ii) an individual who is a concurrently serving member of the LBHI board of directors who is selected by the LBHI board of directors and acceptable to the Opco Plan Proponents who are PSA Creditors; and (iii) an individual who is selected by the individuals appointed pursuant to (i) and (ii) of this section and who is independent from LBHI, the members of the Director Selection Committee and, in the case of LBSF, LBSF, or in the case of LCPI, LCPI.  Pursuant to the Plan, the boards of directors of each of the Subsidiary Debtors, other than LBSF and LCPI, shall consist of one (1) director which shall be a member of the LBHI board of directors.  With respect to a Subsidiary Debtor incorporated or formed under the laws of a jurisdiction outside of the United States, if the laws of such foreign jurisdiction require the appointment of more than one (1) director or manager to the board of directors or managers of such Subsidiary Debtor or of a director or manager that is not an individual concurrently serving as a member of the LBHI

42

board of directors, such additional or alternative directors or managers shall be appointed by the LBHI board of directors

48.    <u>Post Effective Date Role of Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (i) implementation of the Plan through the date of the initial Distribution in accordance with Section 8.3 of the Plan; (ii) defending any appeals from this Confirmation Order until final disposition of such appeals; and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date.  Following the Effective Date, the litigation and derivatives subcommittees of the Creditors' Committee may continue functioning for the limited purposes of (i) resolving pending litigation and (ii) subject to approval of the post-Effective Date board of directors of LBHI, other litigation and derivatives matters as to which, currently, the subcommittees are involved, and which shall be recommended by the applicable subcommittee and the Plan Administrator.  Other than with respect to the foregoing, the members of the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents shall terminate.  The Debtors shall pay the reasonable fees and expenses of the professionals retained by and shall reimburse the members of the remaining subcommittees for reasonable disbursements incurred, including the reasonable fees of counsel, in connection with the foregoing from and after the Effective Date.  If a member of a subcommittee becomes unable to serve on a subcommittee or resigns after the Effective Date, the remaining members may replace such member, continue to discharge the subcommittee's roles, or dissolve by a majority vote of the remaining members.  Each of the subcommittees shall be deemed dissolved upon the

earliest to occur of (i) voluntary agreement of the members of the subcommittee, (ii) the
completion of the subcommittee's responsibilities, and (iii) the Closing Date.

49.     <u>Post-Effective Date Role of Fee Committee</u>.  The fee committee appointed
in the Chapter 11 Cases shall continue to exist after the Effective Date to perform its duties under
the Amended Fee Protocol approved by the Court [ECF No. 15998] in connection with all
applications for approval of professional fees incurred prior to the Effective Date, and all related
proceedings, including hearings on final fee applications.  The Debtors shall pay the reasonable
fees and expenses of the independent member and counsel retained by the fee committee in
connection with the foregoing from and after the Effective Date.

50.     <u>Post Effective Date Reporting</u>.  Beginning the first month-end and first
quarter-end following the Effective Date and until the Closing Date, the Plan Administrator shall
file with the Court reports consistent with the obligations set forth in section 15.6 of the Plan.

51.     <u>General Authorizations</u>.  The Plan Administrator on behalf of the Debtors
is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other
agreements or documents and take such actions as may be necessary or appropriate to effectuate,
implement, and further evidence the terms and provisions of the Plan and any securities issued
pursuant to the Plan.  The  Debtors and their directors, officers, members, agents, and attorneys
are authorized and empowered to issue, execute, deliver, file, or record any agreement,
document, or security, including, without limitation, the documents contained in the Plan
Supplement and the Exhibits to the Plan, as modified, amended, and supplemented, in
substantially the form included therein, and to take any action necessary or appropriate to
implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all
corporate actions authorized to be taken pursuant to the Plan, including merger of any of the
Debtors and the dissolution of each of the Debtors, and any release, amendment, or restatement

of any bylaws, certificates of incorporation, or other organizational documents of the Debtors, whether or not specifically referred to in the Plan or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

**Releases, Discharge and Injunction**

52.     <u>Releases, Exculpations, and Injunctions</u>.  The release, exculpation, and injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their estates, and such provisions shall be effective and binding on all persons and entities.

53.     <u>Release and Exculpation</u>.  On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released (a) the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the negotiation, formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreements or any contract, instrument, document or other agreement related thereto and (b) the PSA Creditors from, and none of the PSA Creditors shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the negotiation,

formulation, dissemination or confirmation, consummation or administration of the Plan, or any

other act or omission in connection with the Plan, the Disclosure Statement, the Plan Support

Agreements, including the filing of any alternative chapter 11 plan and any determination to not

pursue solicitation or confirmation of such alternative plan, or any contract, instrument,

document or other agreement related thereto; *provided, however*, that (i) other than as may be

otherwise provided in any releases included in settlement agreements between the Debtors and

the Foreign Affiliates, BdB, EdB and Bundesbank that are incorporated into the Plan, in no event

shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any

Released Party or PSA Creditor for any act taken or omitted to be taken prior to the

Commencement Date be released by the Plan, (ii) nothing herein or in the Plan shall affect or

release any obligation of the Debtors under the Plan, and (iii) nothing herein shall affect the

liability of any person that otherwise would result from any such act or omission to the extent

such act or omission is determined by a Final Order to have constituted willful misconduct or

gross negligence; *provided, further*, that nothing in this Plan shall limit the liability of the

professionals of the Debtors, the Creditors' Committee or the PSA Creditors to their respective

clients pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

54.     Term of Injunctions and Automatic Stay.  Pursuant to Section 13.7 of the

Plan, unless otherwise expressly provided herein or in the Plan or in a Final Order of the Court,

all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105

or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall

remain in full force and effect until the Closing Date.

55.     Injunction.  Pursuant to Section 13.5 of the Plan, except as expressly

provided in the Plan, herein, or a separate order of the Court or as agreed to by a Creditor and the

Plan Administrator (on behalf of a Debtor), all entities who have held, hold or may hold Claims

against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not) and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims and Causes of Action that will be or are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or Allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan

56.  <u>Discharge</u>.  Pursuant to Section 13.4 of the Plan, except as expressly provided therein, upon the date that all Distributions under the Plan have been made, (a) each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and (b)

all such holders shall be forever precluded and enjoined, pursuant to section 524 of the

Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated

Equity Interest in the Debtors.

57.     No Waiver of Rights and Defenses. Except as otherwise agreed, the

provisions of the Plan and this Confirmation Order shall not enjoin, impair, prejudice, have any

preclusive effect upon, or otherwise affect (A) the rights of any Creditor to (x) effectuate a

recoupment pursuant to common law or setoff pursuant to common law or otherwise in

accordance with (a) section 553 and (b) sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27),

555, 556, 559, 560 or 561 of the Bankruptcy Code (subject to the Debtors' rights to contest the

validity of such asserted right of setoff or recoupment or the applicability of any of the foregoing

sections of the Bankruptcy Code) or (y) continue to assert the validity of a setoff previously

taken by such Creditor or to seek authority from the Bankruptcy Court to exercise a right of

setoff or recoupment (subject in each case to the Debtors' right to contest the validity of any such

setoff or recoupment), or (B) any legal or equitable defense, including any defensive right of

setoff or recoupment, that has been, or may be, asserted by any entity in response to a Litigation

Claim, Avoidance Action of a Debtor or objections to Claims against a Debtor.

58.     Indemnification Obligations.  The obligations of each Debtor to

indemnify, defend, reimburse or limit the liability of (a) directors, officers and any other

employee who is held responsible for obligations of the Debtor incurred after the

Commencement Date who are directors, officers or employees of such Debtor or a Debtor-

Controlled Entity on or after the Commencement Date and (b) Released Parties, respectively,

against any Claims or Causes of Action as provided in the Debtor's articles of organization,

certificates of incorporation, bylaws, other organizational documents or applicable law, shall be

assumed by such Debtor and will remain in effect after the Effective Date.  Any such assumed

obligations owed in connection with an event occurring after the Commencement Date shall be paid as an Administrative Expense Claim under the Plan. Any such obligations owed in connection with an event occurring before the Commencement Date shall be treated as pre-petition Claims under the Plan. Nothing in the Plan shall in any way limit, modify, alter or amend the Debtor's limitation of liability of the Independent Directors set forth in Section 10.1 of the Restated Certificate of Incorporation of LBHI.

      59.      <u>Special Provisions for United States Government</u>.

      a.      As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall: (i) discharge, release or otherwise preclude (A) any liability of the Debtors arising on or after the Confirmation Date (defined for purposes of this section as the date the Confirmation Order becomes final and non appealable), (B) with respect to the Debtors, any liability that is not a Claim against a Debtor, (C) any valid right of setoff or recoupment, or (D) any liability of the Debtors arising under environmental or criminal laws as the owner or operator of property that such Debtor owns or operates after the Confirmation Date (defined for purposes of this section as the date the Confirmation Order becomes final and non-appealable); or (ii) limit or expand the scope of the discharge to which the Debtors are entitled under the Bankruptcy Code. The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

      b.      Nothing in the Plan, Plan Trust Agreement, or this Confirmation Order shall provide to any person or entity (other than a Debtor) any exculpation, release, discharge, preclusion of, or injunction against (i) any liability or other obligation owed by such person or entity to the United States, its agencies or departments, or (ii) or any Claim, Cause of Action, or other right held by the United States, its agencies or departments.

       c.      Nothing contained in the Plan or this Confirmation Order
shall be deemed to have determined, or to bind the United States with respect to the
determination of, the federal tax treatment of any item, distribution, person or entity, or the tax
liability of any person or entity, including but not limited to the Debtors and the Liquidating
Trust; *provided, however*, that the foregoing shall not affect the rights, claims, defenses and
obligations of the United States or the Debtors under the Plan or otherwise with respect to the
allowance, disallowance or treatment of Claims of the United States (including, without
limitation, under the Bar Date Order and any stipulations between the Internal Revenue Service
or United States and the Debtors), nor shall it affect any right of any Debtor or successor to a
Debtor to request a determination of tax liability pursuant to section 505(b) of the Bankruptcy
Code, or any defenses or objections of the United States with respect to a request for a
determination of taxes by any person or entity pursuant to section 505(b) of the Bankruptcy
Code.

**Miscellaneous**

      60.     <u>Resolution of Potential Plan Objections</u>.  Each of the (i) Stipulation
Among Debtors and Fidelity National Title Insurance Company Resolving Disputes in
Connection with the Plan; and (ii) Stipulation and Agreement By and Among Fannie Mae,
Freddie Mac and the Debtors Regarding the Debtors' Third Amended Plan, are approved.

      61.     <u>Agreement with LBF With Respect to Section 8.15</u>.  The Debtors and the
Plan Administrator shall not withhold pursuant to Section 8.15 of the Plan any Distribution to
any Non-Controlled Affiliate on the basis that the Non-Controlled Affiliate may use such
Distribution to satisfy a Claim of LBF against such Non-Controlled Affiliate.  The Debtors or the
Plan Administrator also shall not withhold pursuant to Section 8.15 of the Plan any Distributions

to LBF on account of any Allowed Claims of LBF on the basis that LBF may use such Distribution to satisfy a claim of another Non-Controlled Affiliate against LBF.

62.    Certain Pending Securities Litigations.

a.    Nothing in the Plan or this Confirmation Order shall affect the rights and obligations of the Debtors and of any party in interest as set forth in the Order Discharging Examiner And Granting Related Relief [ECF No. 10169].

b.    Nothing in the Plan or in this Confirmation Order shall preclude any of (i) the Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, Northern Ireland Local Government Officers' Superannuation Committee, City of Edinburgh Council as Administering Authority of the Lothian Pension Fund and Operating Engineers Local 3 Trust Fund, the court-appointed lead plaintiffs (collectively, the "Securities Action Lead Plaintiffs") or (ii) The Local 302 and 612 of the International Union of Operating Engineers–Employers Construction Industry Retirement Trust (the "MBS Action Lead Plaintiffs," and together with the Securities Action Lead Plaintiffs, the "Lead Plaintiffs"), lead plaintiffs in *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 08-05523 (LAK), and *In re Lehman Brothers Mortgage Backed Securities Litigation*, Case No. 08-6762 (LAK) (the "Securities Litigation"), respectively, from seeking relief from the Court to pursue their Claims against the Debtors solely to collect from any available insurance proceeds.  All rights of the Debtors to object or respond to requests for such relief or assert any defenses are fully preserved.

c.    In the event that the pending settlements involving the Lead Plaintiffs in the Securities Litigation are not approved by final order or judgment of the United States District Court, Southern District of New York and do not become effective by their terms, nothing in the Plan or this Confirmation Order shall preclude the Lead Plaintiffs from seeking

discovery from any of the Debtors, the Plan Administrator or the Liquidating Trustee in accordance with the Federal Rules of Civil Procedure following the Effective Date. All rights of the Debtors, the Plan Administrator or the Liquidating Trustee under the Federal Rules of Civil Procedure to object or respond to requests or assert any defenses are fully preserved.

63.     <u>Alternative Dispute Resolution Procedures</u>.  The following Court Orders shall continue to apply and be binding on all parties following the Effective Date through the Closing Date: (a) *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors* [ECF No. 8474]; (b) *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 5207]; (c) *Tier 2 Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More than $1 Million* [ECF No. 11649]; and (d) *Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties* [ECF No. 14789].

64.     <u>Claims Settlement Procedures</u>.  The following Court orders permitting the Debtors to compromise and settle Claims against the Debtors shall continue to apply and be binding on all parties following the Effective Date through the Closing Date:  (a) *Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts* [ECF No. 2257], and all supplements to such order and (b) *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Approving Settlement Procedures* [ECF No. 7936].

65.     <u>Debtors' Right Under Bankruptcy Rule 2004</u>.  The Debtors' shall retain following the Effective Date the same rights they had prior to the Effective Date under

Bankruptcy Rule 2004 and this Court's *Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities* [ECF No. 5910], shall remain in full force and effect following the Effective Date until the Closing Date.

66.     Issuance of New Securities.  The Plan Administrator, each Debtor or Debtor Controlled-Entity is authorized to (a) form and transfer certain assets of the Debtors and/or Debtor Controlled Entities to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities and, (b) issue New Securities for Distribution under the Plan.  In the event that the Plan Administrator issues New Securities, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan.

67.     Exemption from Securities Laws.  The offering, issuance, or distribution of the New Securities in accordance with the Plan is exempt from the provisions of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, or distribution of a security by reason of section 1145(a) of the Bankruptcy Code.

68.     Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition or acquisition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in

53

connection with any disposition or acquisition of assets contemplated by the Plan (including by a Liquidating Trust) in each case whether as a result of sale, assignment, foreclosure or deed-in-lieu of foreclosure, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies.

69. <u>Governmental Approvals Not Required</u>. Except as otherwise expressly provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

70. Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments and (b) all actions of the Plan Administrator and those acting on its behalf, that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, this Confirmation Order, and the agreements created or contemplated by the Plan, without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

71. <u>Structured Securities</u>. As provided in the Structured Securities Procedures Order, the Debtors are determining the Allowed amount of each Claim based on a Structured Security in accordance with the Structured Securities Valuation Methodologies. In accordance with the Structured Securities Procedures Order, the Debtors sent notices of a proposed Allowed Claim amount ("<u>Structured Securities Notices</u>") to each holder of a Claim based on a Structured Security. To the extent that holders of such Claims agreed with the proposed amount or did not

respond by the established deadline (as such may have been extended by the Debtors), such

Claim will be Allowed in the amount set forth on the Structured Securities Notice, subject to the

Debtors' right to object to Claims based on Structured Securities on the grounds that such claims

do not include a blocking number or include an invalid blocking number, are duplicative of other

claims, have been amended and superseded, or otherwise do not comply with the provisions of

the Bar Date Order is fully preserved; *provided* that, the Allowed amount of such Claims may be

increased to the extent that in connection with the resolution of a disputed Structured Securities

Notice, the Debtors determine that the value of a structured security is greater than the amount

previously proposed by the Debtors. As indicated in paragraph 44 hereof, holders of

Convenience Claims or Convenience Guarantee Claims shall not be entitled to any increase in

the Allowed amount of their Claims.

72.     <u>Final Fee Applications</u>.  Pursuant to Section 2.2 of the Plan, all entities

seeking an award by the Court of compensation for services rendered or reimbursement of

expenses incurred through and including the Effective Date under sections 327, 328, 330, 331,

503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their

respective final applications for allowance of compensation for services rendered and

reimbursement of expenses incurred by the date that is one hundred twenty (120) days after the

Effective Date, and (ii) shall be paid in full in such amounts as are Allowed by the Court (A) on

the date on which the order relating to any such application is entered, or as soon thereafter as

practicable, or (B) upon such other terms as may be mutually agreed upon between the claimant

and the Debtors.

73.     The Debtors are authorized to pay, in the ordinary course of business and

without the need for Court approval, the reasonable fees and expenses, incurred after the

Effective Date, of the professional persons employed by the Debtors and the Creditors'
Committee.

74.     Fees and Expenses of Indenture Trustees and Creditors' Committee
Members.  The reasonable fees and expenses, including attorneys' fees, of (i) the indenture
trustees for the Senior Notes and the Subordinated Notes issued by LBHI and the (ii) individual
members of the Creditors' Committee shall be paid in accordance with Section 6.7 of the Plan
upon application to, and subject to approval of, the Bankruptcy Court, after reasonable notice to
and with opportunity to object for the United States Trustee and all parties in interest; *provided,*
that nothing in the Plan or this Confirmation Order shall affect any party in interest's right to
object to or defend any such application.  All objections to any such application are expressly
reserved, including, without limitation, any objections regarding the appropriate legal standard
for such applications, and any objections that payment of such fees is unauthorized under the
Bankruptcy Code and Bankruptcy Rules.

75.     Definition of Equity Interests.  The definition of Equity Interest included
in the Plan is without prejudice to the Debtors' rights to object to, or seek to subordinate, any
Claim, and any Creditor's rights to defend against such action.

76.     Retention of Litigation Claims.  Except as expressly provided in the Plan,
nothing contained in the Plan or herein shall be deemed to be a waiver or the relinquishment of
any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf
of their respective estates under any provision of the Bankruptcy Code or any applicable
nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation,
(a) any and all Claims against any person or entity, to the extent such person or entity asserts a
crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the
Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under

any tax sharing agreement among the Debtors and their Affiliates, (c) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff or other legal or equitable defense and remedies.  The Debtors shall have, retain, reserve, and may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the Chapter 11 Cases had not been commenced.

77.     <u>Retention of Jurisdiction</u>. This Court may properly and, upon the Effective Date shall, consistent with Article XIV of the Plan, retain exclusive jurisdiction over all matters arising under or related to, the Chapter 11 Cases, including, without limitation, the matters set forth in Article XIV of the Plan.

78.     <u>Debtors' Rights of Subrogation</u>.

a.     Except as otherwise agreed by the Debtors, to the extent that a Debtor now has or becomes legally entitled to be subrogated to the rights of any Creditor, including on account of any Distributions received by holders of Allowed Guarantee Claims that are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall be deemed to have consented to the subrogation of its right against any third-party, including, without limitation, a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution, or (ii) the Debtor shall have all rights, title and power as subrogee of the Creditor against any such third-party, including, without limitation, a Primary Obligor, to the fullest extent permitted by applicable law.

b.     Except as otherwise agreed by the Debtors, the Debtors' rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any similar right, including, without limitation, any right to setoff with respect to any of the foregoing, against any entity, including, without limitation, a Primary Obligor, on account of

Distribution made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law.

79.     The Debtors' rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any other similar right, including, without limitation, any right to setoff with respect to any of the foregoing, against any entity, including, without limitation, a Primary Obligor, on account of Distributions made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law.

80.     <u>Trading Restrictions</u>.  The restrictions imposed by the *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto* [ECF No. 1386], as the same may be amended from time to time, shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

81.     <u>Equity Interests in LBHI</u>.  On the Effective Date, the LBHI Stock shall be canceled and one new share of LBHI common stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative priority and economic entitlements; *provided, however*, that the Plan Trust may not exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan.

82.     <u>Equity Interests in Subsidiary Debtors</u>.  On the Effective Date, the Equity Interests in each of the Subsidiary Debtors shall be unaffected by the Plan, in which case the Debtor holding such Equity Interests shall continue to hold such Equity Interests.

83.     <u>Nonoccurrence of Effective Date</u>.  In the event that the Effective Date does not occur, then (a) the Plan, (b) the assumption or rejection of executory contracts or unexpired leases pursuant to the Plan, (c) any document or agreement executed pursuant to the

Plan, and (d) any actions, releases, waivers, or injunctions authorized by this Confirmation Order

or any order in aid of consummation of the Plan shall be deemed null and void; *provided* that this

paragraph shall not have any affect on any provisions of the Bilateral Settlement agreements, if

any, that survive the termination of such agreements.  In such event, nothing contained in this

Confirmation Order, any order relating to consummation of the Plan, or the Plan, and no acts

taken in preparation for consummation of the Plan shall be (i) deemed to constitute a waiver or

release of any Claims or Equity Interests by or against the Debtors or any other person or

entities, to prejudice in any manner the rights of the Debtors or any person or entity in any

further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort

by the Debtors or any other persons or entities as to any issue, or (ii) construed as a finding of

fact or conclusion of law in respect thereof.

84.   <u>Notice of Entry of Confirmation Order</u>.  On or before the thirtieth (30th)

Business Day following the date of entry of this Confirmation Order, the Debtors shall serve

notice of entry of this Confirmation Order (which, in the Debtors' discretion, may be combined

with the Notice of the Effective Date) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and

3020(c) on all Creditors and interest holders, the United States Trustee, and other parties in

interest, by causing notice of entry of the Confirmation Order (the "<u>Notice of Confirmation</u>"), to

be delivered to such parties by first-class mail, postage prepaid.  The notice described herein is

adequate under the particular circumstances, and no other or further notice is necessary.  The

Debtors also shall cause the Notice of Confirmation to be published as promptly as practicable

after the entry of this Confirmation Order once in each of *the Financial Times*, *The Wall Street*

*Journal* (Global Edition – North America, Europe, and Asia), and *The New York Times*

(National).

85. <u>Notice of Effective Date</u>.  Within five (5) Business Days following the occurrence of the Effective Date, the Plan Administrator shall file the notice of the occurrence of the Effective Date and shall serve a copy of same on the Master Service List, as defined in the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 9635].

86. <u>No Amendments to Proofs of Claim</u>.  After the Effective Date, other than a proof of Claim relating to an executory contract or unexpired lease that is rejected pursuant to the Plan, a proof of Claim relating to a prepetition Claim may not be filed or amended without the authority of the Court.

87. <u>Barclays Sale Order</u>.  Nothing contained in the Plan, the Disclosure Statement or the Confirmation Order constitutes or shall be construed as any modification or amendment to the Barclays Sale Order and the rights and defenses of each of the Debtors, the SIPA Trustee (on behalf of LBI), Barclays Bank PLC and Barclays Capital Inc., with respect to any litigation, adversary proceeding, contested matter, claims adjudication, appeal or other dispute against the other are fully preserved, including, without limitation, any rights, defenses, counterclaims and/or cross-claims asserted in connection with or related to the Sale Order.

88. <u>Payment of Statutory Fees</u>.  On the Effective Date and thereafter, the Plan Administrator and any Liquidating Trustee thereafter appointed, shall pay all fees incurred pursuant to Section 1930 of title 28, United States Code, together with interest, if any, pursuant to Section 3717 of title 31, United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under Chapter 7 of the Bankruptcy Code or a Final Order dismissing such Debtor's case is entered.

89.    <u>Effectiveness of Plan Provisions</u>.  Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Code in accordance with section 15.13, is valid and enforceable pursuant to its terms.

90.    <u>Immediate Effectiveness</u>.  Any stay of this Order provided by any Bankruptcy Rule, including Bankruptcy Rule 3020(e) is hereby waived, and the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

91.    <u>Conflicts Between Order and Plan</u>.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.


Dated: New York, New York
        December 6, 2011


_____*s/ James M. Peck*_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE