NOV - 6 2019

FILED / RECEIVED

NOV 0 1 2019

EPIQ

B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

In re  Lehman Brothers Holdings Inc.,                    Case No. #08-13555

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| Lehman Brothers Asia Pacific (Singapore) Pte. Ltd. (In Creditors' Voluntary Liquidation) | Lehman Brothers Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation) |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:

16 Raffles Quay, #22-00, Hong Leong Building
Singapore 048581

Phone: +65 6213 2370

Court Claim # (if known): #18556
Amount of Claim: USD2,577,661.41
Date Claim Filed: 18 September 2009

Phone: +65 6213 2370
Last Four Digits of Acct. #: N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____                     Date: 31 Oct 2019
    Transferee/~~Transferee's Agent~~
    Bob Yap Cheng Ghee
    For and on behalf of Lehman Brothers Asia Pacific (Singapore) Pte. Ltd.
    (In Creditors' Voluntary Liquidation)
    Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

**DATED THE 31ST DAY OF OCTOBER 2019**

**AMONGST**

**LEHMAN BROTHERS PACIFIC HOLDINGS PTE. LTD.**
**(IN CREDITORS' VOLUNTARY LIQUIDATION)**
(the "**Assignor**")

**AND**

**LEHMAN BROTHERS ASIA PACIFIC (SINGAPORE) PTE. LTD.**
**(IN CREDITORS' VOLUNTARY LIQUIDATION)**
(the "**Assignee**")

---

**ASSIGNMENT AGREEMENT**

---

## CONTENTS

| CLAUSE | PAGE |
|---|---|
| 1. DEFINITIONS & INTERPRETATION | 1 |
| 2. ASSIGNMENT OF CLAIM | 2 |
| 3. REPRESENTATIONS | 2 |
| 4. NOTICE | 3 |
| 5. RELEASE | 4 |
| 6. MISCELLANEOUS | 4 |
| SCHEDULE 1 – DETAILS OF CLAIM | 6 |

## ASSIGNMENT AGREEMENT

**THIS AGREEMENT** is made on the 31st day of October 2019

**AMONGST:**

(1) **LEHMAN BROTHERS PACIFIC HOLDINGS PTE. LTD. (IN CREDITORS' VOLUNTARY LIQUIDATION)** (Company Registration No. 200513883N), with its address at c/o KPMG Advisory Services Pte. Ltd., 16 Raffles Quay, Hong Leong Building #22-00, Singapore 048581 (the "**Assignor**"); and

(2) **LEHMAN BROTHERS ASIA PACIFIC (SINGAPORE) PTE. LTD. (IN CREDITORS' VOLUNTARY LIQUIDATION)** (Company Registration No. 200713770C), with its address at c/o KPMG Advisory Services Pte. Ltd., 16 Raffles Quay, Hong Leong Building #22-00, Singapore 048581 (the "**Assignee**").

**WHEREAS:**

(A) The Assignor has an allowed claim against Lehman Brothers Holdings Inc. ("**LBHI**" or "**Debtor**"), totalling US$ 10,176,313.00 (the "**Total Claim**").

(B) The joint and several liquidators of the Assignor, Messrs Bob Yap Cheng Ghee, and Tay Puay Cheng (the "**Liquidators**") have declared two interim distributions of surplus assets to the Assignee, being the sole contributory of the Assignor, and wish to make a third distribution of surplus assets to the Assignee, which comprises part of the Assignor's Total Claim in the sum of US$ 2,577,661.41 (the "**Claim**"). Further details of the Claim and the Total Claim are set out in Schedule 1.

(C) Pursuant to such distribution in specie, the Assignor wishes to assign, and the Assignee has agreed to take an assignment from the Assignor of, the full right, title, benefit and interest of the Assignor in and to the Claim on the terms and conditions of this Agreement.

**IT IS AGREED** as follows:

1.  **DEFINITIONS & INTERPRETATION**

1.1 In this Agreement, unless the subject or context otherwise requires the following words and expressions shall have the following meanings:

"**Business Day**" means a day (other than a Saturday, Sunday or gazetted public holiday in Singapore) when banks are open for banking business in Singapore.

"**Claim**" has the meaning ascribed to it in Recital (A).

"**Consent**" means that certain Consent dated 22 October 2019 between LBHI and the Assignor in respect of the Claim against LBHI as set out in Schedule 1.

"**Debtor**" has the meaning ascribed to it in Recital (A).

"**Parties**" shall refer to the Assignor and the Assignee collectively and "**Party**" shall refer to any one of them, as the case may be.

"**Total Claim**" has the meaning ascribed to it in Recital (A).

"**US$**" mean the lawful currency of the United States of America.

1.2 Any reference in this Agreement to a statutory provision shall include that provision and any regulations made in pursuance thereof as from time to time modified or re-enacted, whether before or after the date of this Agreement, so far as such modification or re-enactment applies or is capable of applying to any transactions entered into after the date hereof and (so far as liability thereunder may exist or can arise) shall include also any past statutory provision or

1

regulation (as from time to time modified or re-enacted) which such provision or regulation has directly or indirectly replaced.

1.3 In this Agreement, unless otherwise specified:

(a) the headings in this Agreement are inserted for convenience only and shall be ignored in construing this Agreement;

(b) expressions in the singular shall include the plural and *vice versa* and expressions in the masculine shall include, where applicable, the feminine and neuter genders and *vice versa*;

(c) the words "**written**" and "**in writing**" include any means of visible reproduction;

(d) references to "**Clauses**", "**Recitals**", and "**Schedules**" are, respectively, to the clauses of, and the recitals, and schedules to, this Agreement. The Recitals and the Schedules to this Agreement shall form an integral part of, and shall be deemed to be incorporated into, this Agreement;

(e) any reference to "**day**" means a period of 24 hours ending at 12 midnight and any reference to "**person**" shall include any individual, partnership, joint venture, corporation, limited liability company, trust, association, government, governmental agency or department or any other entity;

(f) all references to the Parties shall, unless contrary to the context and meaning thereof, be deemed to include their respective successors and permitted assigns;

(g) references in this Agreement to anything which any Party is required to do or not to do shall include its acts, defaults and omissions, whether direct or indirect, on its own account, or for or through any other person, and those which it permits or suffers to be done or not done by any other person; and

(h) references to any agreement or document including this Agreement shall include such agreement or document as amended, modified, varied or supplemented from time to time.

## 2. ASSIGNMENT OF CLAIM

2.1 Subject to the terms of this Agreement, the Assignor unconditionally, irrevocably and absolutely assigns to the Assignee all the Assignor's rights, title, interest and benefits in and to the Claim and the corresponding rights under the Settlement Agreement in respect of the Claim[1] with effect from the date of this Agreement. For the avoidance of doubt, the assignment does not include the remaining part of the Assignor's Total Claim in the sum of US$ 7,598,651.59, and the corresponding rights under the Settlement Agreement in respect of such remaining part of the Assignor's Total Claim, which remain vested in the Assignor.

2.2 The Assignee agrees that it shall accept the assignment referred to in Clause 2.1.

## 3. REPRESENTATIONS

3.1 The Assignor represents and warrants to the Assignee that:

(a) it has the power to transfer and/or assign the Claim;

(b) it has the power and authority to enter into, deliver and perform, and has taken all necessary action to authorise the entry into, delivery and performance of this Agreement;

---

[1] On December 6, 2011, the United States Bankruptcy Court for the Southern District of New York in the Order Confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliates Debtors entered in Case No. 08-13555 as Docket Number 23023 formally approved and authorized a settlement agreement made and entered into as of August 24, 2011 by and among Lehman US and Lehman Singapore (the "Settlement Agreement"). "Lehman US", "Affiliates Debtors" and "Lehman Singapore" shall have the same meaning ascribed in the Settlement Agreement.

(c) it is the sole legal and beneficial owner and has good title to Claim and no security interest or other encumbrance (including any rights of set off) exists, or may exist as a result of any arrangement or agreement in connection with the Claim;

(d) Except as presented in Schedule 1, no payment or other distribution has been received by or on behalf of Assignor in full or partial satisfaction of the Claim;

(e) no portion of the Claim has been directly or indirectly sold, conveyed, transferred, participated, assigned or pledged to any third party by Assignor or otherwise encumbered, in whole or in part;

(f) Assignor has not engaged in any acts, conduct or omissions and has not had any relationship with the Debtors that might result in Assignee receiving in respect of the Claim proportionately less in payments or distributions or less favorable treatment (including the timing of payments or distributions) than other holders of allowed unsecured claim against the Debtors;

(g) except for the consent of Lehman US which has been obtained pursuant to the Consent and any notice requirement prescribed by Rule 3001 of the United States Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), no consent of, registration with, or approval of, or any other action by, any person or entity (including any state or federal regulatory agency or commission) is or will be required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Assignor or for the assignment contemplated herein to become effective;

(h) no proceedings against Assignor are pending on the date of this Agreement or, to Assignor's knowledge, threatened, that might materially adversely affect the Claim;

(i) neither the execution, delivery or performance of this Agreement, nor consummation of the transaction contemplated hereby, will violate or contravene any provision of the Settlement Agreement or any law, rule, regulation, order, agreement, or instrument affecting the Assignor; and

(j) all rights, benefits and obligations which the Parties have agreed to assign or transfer to the Assignee under this Agreement are capable of being assigned or transferred.

3.2 Except as set forth in Clause 3.1, the Assignor does not make, and the Assignee does not rely upon, any representation, warranty or condition (express or implied) about, and the Assignor shall have no liability or responsibility to the Assignee for:

(a) the extent of recoverability or any non-payment by any Debtor of the monies due under the Claim; or

(b) the financial condition, creditworthiness, status or nature of the Debtors.

3.3 The Assignee represents and warrants to the Assignor that:

(a) it has the power and authority to enter into, deliver and perform, and has taken all necessary action to authorise the entry into, delivery and performance of this Agreement; and

(b) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting the Assignee.

4. **NOTICE**

The Assignor and the Assignee shall execute and deliver by courier and email to the Debtor, notification of the Agreement in such form as may be required by the Debtor within ten (10) Business Days of the date of this Agreement.

5.  **RELEASE**

5.1  The Parties agree that from the date of this Agreement, the Assignor no longer has any rights in relation to the Claim.

6.  **MISCELLANEOUS**

6.1  No failure on the part of any Party to exercise and no delay on the part of any Party in exercising any right hereunder will operate as a release or waiver thereof, nor will any single or partial exercise of any right under this Agreement preclude any other or further exercise of it or any other right or remedy.

6.2  This Agreement shall be binding on and shall inure to the benefit of each of the Parties' successors and permitted assigns. Any reference in this Agreement to any of the Parties shall be construed accordingly.

6.3  At any time after the date of this Agreement, each Party shall use its best endeavours to procure any necessary third party to execute such documents and do such acts and things as any of the other Parties may reasonably require for the purpose of giving to such other Parties the full benefit of all the provisions of this Agreement.

6.4  No remedy conferred by any of the provisions of this Agreement is intended to be exclusive of any other remedy which is otherwise available at law, in equity, by statute or otherwise, and each and every other remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity, by statute or otherwise. The election of any one or more of such remedies by any Party shall not constitute a waiver by such Party of the right to pursue any other available remedies.

6.5  If any provision of this Agreement is held to be illegal, invalid or unenforceable in whole or in part in any jurisdiction, this Agreement shall, as to such jurisdiction, continue to be valid as to its other provisions and the remainder of the affected provision, and the legality, validity and enforceability of such provision in any other jurisdiction shall be unaffected.

6.6  Notices

   (a)  All notices, demands or other communications required or permitted to be given or made hereunder shall be in writing and delivered by hand, by courier or prepaid registered post, or by facsimile transmission or electronic mail addressed to the intended recipient thereof at its address, facsimile number or electronic mail address, and marked for the attention of such person (if any), designated by it to the other Parties for the purposes of this Agreement or to such other address, facsimile number or electronic mail address, and marked for the attention of such person, as a Party may from time to time duly notify the others in writing.

   (b)  The initial addresses, facsimile numbers and electronic mail addresses of the Parties for the purpose of this Agreement are specified below:

**THE ASSIGNOR**

| | | |
|---|---|---|
| Address | : | c/o KPMG Advisory Services Pte. Ltd. |
| | | 16 Raffles Quay, Hong Leong Building #22-00, Singapore 048581 |
| Fax No. | : | +65 6213 3388 |
| E-mail address | : | byap@kpmg.com.sg |
| Attention | : | Bob Yap Cheng Ghee |

4

**THE ASSIGNEE**

| | | |
|---|---|---|
| Address | : | c/o KPMG Advisory Services Pte. Ltd. |
| | | 16 Raffles Quay, Hong Leong Building #22-00, Singapore 048581 |
| Fax No. | : | +65 6213 3388 |
| E-mail address | : | rtay@kpmg.com.sg |
| Attention | : | Tay Puay Cheng |

(c) Any notice, demand or communication so served shall be deemed to have been duly given:

  (i) in the case of delivery by hand or by courier, when delivered;

  (ii) in the case of facsimile transmission, immediately upon confirmation by a transmission report;

  (iii) in the case of electronic mail, at the time of its actual transmission provided that the sender does not receive any indication that the electronic mail message has not been successfully transmitted to the intended recipient; and

  (iv) in the case of post, on the second Business Day after the date of posting (if sent by local mail) and on the seventh Business Day after the date of posting (if sent by air mail),

provided that in each case where delivery occurs on a day which is not a Business Day or after 6pm on a Business Day, service shall be deemed to occur at 9am on the next following Business Day.

For the avoidance of doubt, all notices, demands or other communications made by facsimile transmission or electronic mail shall be deemed to have been duly given upon confirmation by a transmission report (in the case of a facsimile transmission) or at the time of its actual transmission (in the case of an electronic mail) notwithstanding that the same notice, demand or other communication may thereafter be sent by delivery by hand, courier or post. References to time in this Clause are to local time in the country of the addressee.

6.7 This Agreement may be signed in any number of counterparts, all of which taken together shall constitute one and the same instrument. Any Party may enter into this Agreement by signing any such counterpart. Each counterpart may be executed by the Parties and transmitted by facsimile or e-mail transmission (with originals to follow), and shall be valid and effectual as if executed as an original.

6.8 A person who is not a party to this Agreement shall have no rights under the Contracts (Rights of Third Parties) Act (Cap. 53B of the Singapore Statutes) to enforce any of its terms.

6.9 This Agreement shall be governed by, and construed in accordance with, the laws of Singapore and the Parties hereby agree to submit to the exclusive jurisdiction of the Singapore courts.

*[Remainder of page intentionally left blank]*

## SCHEDULE 1

### Details of Claim

| Debtor | Type of Claim | Amount of Claim (US$) | Claim Number | Dividends received as at the date of this Assignment Agreement | |
|---|---|---|---|---|---|
| | | | | % | US$ |
| Lehman Brothers Holdings Inc. | Senior Affiliate Guarantee (Class 4B) | 2,577,661.41 | 18556 | 36.102613 | 930,603.12 |

### Details of Total Claim

| Debtor | Type of Claim | Amount of Claim (US$) | Claim Number | Dividends received as at the date of this Assignment Agreement | |
|---|---|---|---|---|---|
| | | | | % | US$ |
| Lehman Brothers Holdings Inc. | Senior Affiliate Guarantee (Class 4B) | 10,176,313.00 | 18556 | 36.102613 | 3,673,914.90 |

6

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed the date and year first above written.

**THE ASSIGNOR**

**LEHMAN BROTHERS PACIFIC HOLDINGS PTE. LTD.**
**(IN CREDITORS' VOLUNTARY LIQUIDATION)**

By: _____
**Bob Yap Cheng Ghee**
Joint and Several Liquidator and for and on behalf of
Lehman Brothers Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation)
(without personal liability)

in the presence of:
Witness's Signature:
Name: Tiah Shyh Yen
Address: C/o-16, Raffles Quay #22-00, Hong Leong Building, Singapore 048581
Designation: Director


**THE ASSIGNEE**

**LEHMAN BROTHERS ASIA PACIFIC (SINGAPORE) PTE. LTD.**
**(IN CREDITORS' VOLUNTARY LIQUIDATION)**

By: _____
**Tay Puay Cheng**
Joint and Several Liquidator and for and on behalf of
Lehman Brothers Asia Pacific (Singapore) Pte. Ltd. (In Creditors' Voluntary Liquidation)
(without personal liability)

in the presence of:
Witness's Signature:
Name: Lee Sook Kee
Address: C/o- 16, Raffles Quay #22-00, Hong Leong Building, Singapore 048581
Designation: Associate Director

7