WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------x
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (SCC)
                                           :
                        Debtors.           :    (Jointly Administered)
----------------------------------------------------------------x
```

## PLAN ADMINISTRATOR'S OBJECTION TO MOTION TO RECLASSIFY

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator, files this objection to the *Motion to Reclassify* filed by Joseph J. Waske ("Waske") (ECF No. 60337) (the "Motion"), the *Joinder to Motion to Reclassify* (ECF No. 60348) (the "Wu Joinder") filed by Rex Wu ("Wu"), and the *Joinder to Motion of Joseph J. Waske* (ECF No. 60354) (together, with the Wu Joinder, the "Joinders") filed by Alex Olivo ("Olivo") and respectfully represents:

## OBJECTION

1.      Waske requests that the Court "reclassify his shares of [LBHI] Capital Trusts III, IV, V and VI based on new information" that the guarantees issued by LBHI (each a "Subordinated Guarantee") in connection such trusts are now "enforceable." (Mot. ¶1.) Wu and Olivo seek the same relief in the Joinders. (*See* Joinders ¶¶3-4.) Although stylized as a motion to "reclassify," neither Waske nor the joinder parties timely submitted proofs of claim against

LBHI or obtained permission from the Court to file a late proof of claim.[1]  Accordingly, there is

nothing for the Court to reclassify.  The Motion can be denied on this basis alone.  Notwithstanding

the foregoing, the Motion purports to "deem [itself] granted" if an objection is not filed by January

21, 2020.  The Plan Administrator hereby objects to the Motion and Joinders in all respects.

2.    The Plan Administrator presumes, construing the Motion in the best

possible light, that the relief Waske ultimately seeks is a claim against LBHI based on

Subordinated Guarantee.  As set forth below, even if Waske was permitted to file his claim, and

even if the claim was allowed, any liability for the claim would be subordinated in accordance

with section 510(a) of the Bankruptcy Code to the level of preferred equity in LBHI; Waske would

recover nothing from LBHI in these cases.

3.    Nonetheless, Waske should not be permitted to file his claim.  Waske states

that he "relied on the SRM Ruling on the purchase of his most recent shares" (Mot. 4.)[2]  This

Court's *Memorandum Decision and Order Sustaining Plan Administrator's Objection to Claim

Number 29606 Filed by SRM Global Master Fund Limited Partnership* (ECF No. 59744) was

issued on June 3, 2019, which is well after entry of the confirmation order in 2011 and after

consummation of the plan in these chapter 11 cases (the "Plan") in 2012.[3]  By that time, additional

---

[1] On July 2, 2019, Wu was denied permission by the Court to file a late claim based shares in the same capital trusts that Wu now seeks to have reclassified in the Wu Joinder.  (*See* ECF No. 59801.)  The Court's order denying Wu permission to file a late was appealed by a third-party, Dan Ianello, which remains pending before the District Court. *See Dan Ianello v. Lehman Brothers Holdings Inc.*, Case No. 1:19-cv-06397 (PAE).  To the extent that Wu seeks reconsideration of the Court's prior ruling, it should be denied without a hearing. *See In re AMR Corp.*, 2016 WL 675543 *1 (Bankr. S.D.N.Y. 2016) ("Motions for reconsideration and to amend or alter judgment serve a limited function - to correct manifest errors of law or fact or to present newly discovered evidence.  But a motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.  Reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.").

[2] Waske failed to disclose the date on which he acquired the other shares (if any) he is seeking a claim in respect of. Waske should disclose this information to the Court and parties in interest.

[3] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.  (ECF No. 22737.)

claims against LBHI based on the Subordinated Guarantees (held by the then-holder of Waske's securities) were subject to (not exempt from) a bar date. Accordingly, even if Waske were to seek permission to file a late claim, based on the facts set forth in the Motion, he cannot establish cause to permit the filing of a claim years after the bar date.

4.      Moreover, any such claim could not be allowed. As this Court held in 2011 and as recently as 2019, LBHI has no liability for guarantee claims based on a Subordinated Guarantee.[4] The Court has also recognized that claims like Waske's would be duplicative of allowed claims filed by the indenture trustees for the subordinated debt issued by LBHI linked to the securities issued by the four trusts in which Waske, Wu, and Olivo invested. Indeed, the Court disallowed over 1,725 proofs of claim on that basis. The Court would find the same is true for any claim to be filed by Waske.

5.      Accordingly, the Motion should be denied with prejudice, including with prejudice to any future motion Waske might file seeking to obtain permission to file a late claim based on the Subordinated Guarantee.

**The Trusts and the Subordinated Guarantees**

6.      The Court approved the disclosure statement for solicitation of votes on the Plan by order, dated September 1, 2011. (ECF No. 19631.) As described in the disclosure statement, as of August 31, 2008, the Debtors' long-term borrowing included billions of dollars of subordinated debt. (ECF No. 19629.)

7.      Claims against LBHI on account of LBHI's subordinated debt are classified in LBHI Class 10A, LBHI Class 10B, or LBHI Class 10C of the Plan. *See Id.* Holders of claims

---

[4] *See e.g.*, ECF No. 23049 (order dated granting LBHI's 218th omnibus objection (ECF No. 20107) and disallowing and expunging claims based on a Subordinated Guarantee); ECF No. 59813 (order denying Wu permission to file late claim based on Subordinated Guarantee).

in LBHI Class 10A, LBHI Class 10B, or LBHI Class 10C "are not expected to receive any Distributions on account of such Claims." *Id.* "Any Distributions that would have been paid to such Claims are automatically redistributed to holders of [allowed senior unsecured claims against LBHI]." *Id.*

8.     Prior to the Commencement Date, certain issuances of LBHI's subordinated debt (the "Subordinated Debt") were acquired by certain trusts, which, in turn, issued securities (the "Trust Preferred Securities") to third parties.  LBHI issued Subordinated Guarantees in connection with the issuance of the Trust Preferred Securities.

9.     Waske purports to have acquired Trust Preferred Securities in four trusts: Lehman Brothers Holdings Capital Trust III ("Capital Trust III"), Lehman Brothers Holdings Capital Trust IV ("Capital Trust IV"), Lehman Brothers Holdings Capital Trust V ("Capital Trust V"), and Lehman Brothers Holdings Capital Trust VI ("Capital Trust VI") (collectively, the "Trusts").  Each Trust held a separate issuance of Subordinated Debt.

10.    The relevant prospectuses for the Trust Preferred Securities[5]  referred to by Waske throughout the Motion made clear with repeated references that:

a.     the Trusts' assets consisted exclusively of Subordinated Debt;[6]

b.     the Trusts could only make payments on the Trust Preferred Securities if LBHI first makes payments on the Subordinated Debt;[7]

---

[5] Copies of the prospectuses are available on the Court's docket.  (*See* ECF No. 20107.)  The Debtors will provide the Court with courtesy copies in advance of the hearing on the Motion.

[6] *See, e.g.,* LBH Capital Trust III prospectus supplement for 6.375% Preferred Securities, Series K, dated March 12, 2003 ("Prospectus III") at s-1 ("The trust that is issuing the preferred securities will have no assets other than subordinated debentures issued by Lehman Brothers Holdings."), *Id.* at s-7 ("The only assets of the trust will be the subordinated debentures."); LBH Capital Trust IV prospectus supplement for 6.375% Preferred Securities, Series L, dated October 9, 2003 ("Prospectus IV") at s-1, *Id.* at s-7; LBH Capital Trust Lehman Brothers Holdings Capital Trust V prospectus supplement for 6.00% Preferred Securities, Series M, dated April 1, 2003 ("Prospectus V") at s-1, *Id.* at s-7; LBH Capital Trust VI prospectus supplement for 6.24% Preferred Securities, Series N, dated January 5, 2005 ("Prospectus VI") at s-1, *Id.* at s-8.

[7] Prospectus III at s-1, s-5 ("[P]ayments under the subordinated debentures will be the sole source of income to the trust."); Prospectus IV at s-1 (same), s-5 (same); Prospectus V s-1 (same), s-5 (same); Prospectus VI s-1 (same), s-6

c.    the Subordinated Guarantee does not cover payments when the Trust does not have sufficient funds to make payments on the Trust Preferred Securities.  In other words, if LBHI does not make a payment on the Subordinated Debt, the Trust will not have sufficient funds to make payments on the Trust Preferred Securities, and the Subordinated Guarantee will not obligate LBHI to make those payments on the Trust's behalf;[8] and

d.    LBHI's obligations under the guarantee are subordinate to its obligations under all of its other liabilities.[9]

11.    The Subordinated Guarantees themselves likewise provide that:

[LBHI's] [g]uarantee will constitute unsecured obligations of [LBHI] and will rank (i) subordinate and junior in right of payment to all other liabilities of [LBHI], (ii) on a parity with the most senior preferred or preference stock… and (iii) senior to [LBHI's] common stock.[10]

## Bar Dates and Relevant Claims

12.    As set forth in the Motion, on July 2, 2009, this Court entered an order (ECF No. 4271) setting forth the procedures and establishing September 22, 2009 (the "Bar Date") as the general deadline for filing proofs of claim in the Chapter 11 Cases.

13.    The indenture trustees for the Subordinated Debt linked to the Trust Preferred Securities filed proofs of claim on behalf of the holders of such securities prior to the Bar Date.  These claims, identified in the chart below, were subsequently Allowed against LBHI:

| Claim No. | Allowed Amount | Plan Class | Applicable Trust |
|-----------|----------------|------------|------------------|
| 21805 | $314,207,499.10 | LBHI Class 10B | Capital Trust III |
| 22122 | $311,742,937.05 | LBHI Class 10B | Capital Trust IV |
| 22123 | $416,013,746.69 | LBHI Class 10B | Capital Trust V |
| 67753 | $234,250,517.60 | LBHI Class 10B | Capital Trust VI |

---

(same).

[8] *See* Description of the Guarantee, Prospectus III at page 20, Prospectus IV at page 21, Prospectus V at page 21, Prospectus VI at page 21.

[9] *See* Description of the Guarantee, Prospectus III at page 20, Prospectus IV at page 21, Prospectus V at page 21, Prospectus VI at page 21.

[10] *See e.g.*, *id.*

14.     Thus, as was intended, the indenture trustees for securities issued by the Trusts each filed a global proof of claim on behalf of all holders of such securities. The beneficial interests of the Trusts and the individual holders of Trust Preferred Securities are represented by more than $1 billion in Allowed claims against LBHI.

15.     Waske didn't file a proof of claim prior to the Bar Date – because, as he states, he purchased his shares over ten years after the Bar Date. But more than 1,725 proofs of claim were filed by other parties who purported to hold the Subordinated Debt and/or Trust Preferred Securities. The Court disallowed and expunged each of these claims as duplicative of the Allowed claims filed by the indenture trustee referenced above or, in several instances, as late claims.[11]  It is possible that Waske acquired his Trust Preferred Securities from one of the parties whose claims against LBHI had been expunged.

16.     On December 6, 2011, the Court entered an order confirming the Plan (the "Confirmation Order"). (ECF No. 23023.) The Confirmation Order provided: "After the Effective Date, … a proof of Claim relating to a prepetition Claim may not be filed … without the authority of the Court." (Confirmation Order ¶ 86.) This order applies whether or not the purported creditor was subject to the Bar Date.

**The Court Motion Should Be Denied for A Host of Reasons**

17.     Styled as a motion to reclassify, the Motion points to no claim against LBHI to be reclassified. The Court may deny the Motion on this basis alone.

---

[11] *See, e.g.,* ECF Nos. 12671 (duplicative), 12893 (duplicative), 12835 (duplicative), 12676 (duplicative), 12527 (late), 12413 (late), 18427 (late), 19528 (late). Each of these Court orders and the corresponding motions was filed publicly on the Court's docket. In addition, as disclosed in its financial reports, from time to time LBHI publishes responses to questions received from creditors and other parties. A non-exhaustive review revealed that LBHI published responses to questions regarding the Trusts and Trust Preferred Securities in February and October of 2014. *See* https://dm.epiq11.com/case/LBH/documents. LBHI disclosed then that, based on projected future cash flow estimates, holders of Trust Preferred Securities would not receive any recovery.

18.     Even if what Waske ultimately seeks is to assert a late claim, he cannot carry
his burden to establish cause to allow him to file such a claim.  In exercising its discretion during
the course of these cases to disallow hundreds of late-filed claims and to refuse new claims to be
filed and existing claims to be amended, the Court has properly focused on (a) whether any delay
in filing was in the creditors' control, (b) the impact on the administration of these mega cases,
and (c) the impact on other creditors, notwithstanding the potential validity of the late or new
claims.  *See e.g., In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010),
aff'd sub nom. *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137
(S.D.N.Y. 2011); ECF No. 59801 (order denying Wu permission to file a late claim).  Here,
application of each of these factors would require denial of any attempt by Waske to assert a claim
at this stage of LBHI's chapter 11 case:

19.     <u>Control</u>:  Waske purchased his Trust Preferred Securities with actual
knowledge that this Court had previously denied Wu permission to file a late claim based on the
same Trust Preferred Securities.   (*See* Mot.  ¶ 4 (stating reliance on the Court's statements at the
hearing denying Wu permission to file a late claim based on the same Trust Preferred Securities)).[12]

20.     <u>Impact on administration</u>:   The Court has repeatedly recognized the
deleterious impact of new claims on the administration of these mega cases.   The Plan
Administrator need not repeat all of the arguments it has made in the past in detail here.  "The
prejudice to the Debtors is not traceable to the filing of any single additional claim but to the impact
of permitting exceptions that will encourage others to seek similar leniency."  *In re Lehman Bros.
Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010), aff'd sub nom.  *CVI GVF (Lux) Master*

---

[12] As noted above, it is possible that Waske acquired his Trust Preferred Securities from a party who had, in fact, filed
a proof of claim that was subsequently disallowed by the Court.  Without a blocking number, there is no way that
LBHI would be able to determine legitimate ownership and eliminate the possibility of more than one party filing
claims for the same interest.

*S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011).[13]  Allowing Waske to assert

a claim now will open the floodgates for the thousands of similarly-situated, individual holders of

Subordinated Guarantees to file motions to allow claims and motions for reconsideration of the

disallowance of their prior claims.  A number of parties have recently filed pleadings seeking to

assert such relief, including Wu and Olivo.  *See Joinder of Rickey M. Gregory* (ECF No. 59659);

*Joinder of Dan Ianello* (ECF No. 59735); *Joinder of Julie Ianello* (ECF No. 59736); *Joinder of*

*Alex Olivo* (ECF No. 59741); *Joinder of Glen A. Blaze* (ECF No. 59753); *Joinder of Elizabeth*

*Harrison* (ECF No. 59755).

21.     <u>Impact on creditors</u>:  Admission and allowance of new claims clearly would

dilute remaining recoveries for current creditors.  As the Court stated at the June 19, 2019 hearing

in connection with Wu's previous motion, "[t]his exercise has cost creditors money."  *See* June

19, 2019 Hr'g Tr. At 88:4-10; *In re Waterman S.S. Corp.*, 59 B.R. 724, 728 (Bankr. S.D.N.Y.

1986) ("Creditors must be able to learn what they will receive under a Plan . . . [f]ailure to [identify

the creditor body] prejudices the entire community of interest . . .").  Here, the prejudice would be

extraordinary given (a) the potential magnitude of additional claims that could be asserted

(discussed above), and (b) LBHI has no liability for these claims, and even if it did, any liability

would be subordinated to all other creditors of LBHI (discussed below).

**<u>Waske's Purported Claims Cannot Be Allowed</u>**

22.     The Court has disallowed and expunged timely-filed claims similar to those

that Waske purports to hold on the basis that LBHI has no liability under the Subordinated

---

[13] "Creditors act at their peril where they fail to adequately investigate and pursue their rights." *Id. Cf. In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991) (stating a deadline for asserting claims is more than a "procedural gauntlet" and functions as "an integral part of the reorganization process."); *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (same).

Guarantee.  (*See* ECF Nos. 23049, 27630.)  The Court would find the same if Waske's claims were filed.  For this reason, the Motion should be denied.

23.      Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  A proof of claim is "deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

24.      It is undisputed that each Trust's only asset is Subordinated Debt and that holders of Subordinated Debt will not recover from LBHI pursuant the Plan.  The Trusts "only make payments on the [Trust Preferred Securities] if [LBHI] first makes payment on the Subordinated Debt."  (*See e.g.*, Prospectus IV at 1.)  The Subordinated Guarantee "does not cover payments when the [Trust] does not have sufficient funds to make payments on the [Trust Preferred Securities]."  (*Id.* at s-4.)  Thus, by the express terms of the Subordinated Guarantee, LBHI has no liability under the Subordinated Guarantee.  (*See id.* at 21 (describing the terms of the Subordinated Guarantee).)  Therefore, claims based on Subordinated Guarantee should be disallowed and expunged in their entirety.  Indeed, claims based on Subordinated Guarantees have been disallowed by the Court for this reason.  (*See* ECF Nos. 23049, 27630.)  Further, allowing an individual claim by Waske, Wu, or Olivo would lead to a potential for duplicative recovery, as their beneficial interests are represented by the allowed claims filed by the indenture trustees.

**Waske's Claim Would Be Subordinated**

25.    Section 510(a) of the Bankruptcy Code provides that "[a] subordination agreement is enforceable … to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

26.    Courts have routinely held that the "enforcement of lawful subordination agreements by Bankruptcy Courts does not offend the policy of equal distribution of the bankrupt's estate." *In re Leasing Consultants, Inc.*, 2 B.R. 165, 168 (Bankr. N.Y. 1980), citing *In re Credit Industrial Corp.*, 366 F.2d 402, 407 (2d Cir. 1966).  Under general contract law principles, when a subordination agreement is unambiguous, the parties' rights are governed exclusively by that agreement. *In re Leasing Consultants, Inc.*, 2 B.R. at 169.  This Court has enforced subordination provisions consistently in these cases, including through the classification and treatment of Subordinated Debt pursuant to the Plan.

27.    The prospectuses upon which Waske purports to have relied clearly provides that any liability that LBHI would have on the Subordinated Guarantee is subordinated to the level of preferred equity interests in LBHI:

> [LBHI's] [g]uarantee will constitute unsecured obligations of [LBHI] and will rank (i) subordinate and junior in right of payment to all other liabilities of [LBHI], (ii) on a parity with the most senior preferred or preference stock… and (iii) senior to [LBHI's] common stock.

(Prospectus IV at 21.)  Thus, if LBHI had any liability on account of the Subordinated Guarantee, such liability would be subordinate and junior in right of payment to all other liabilities of LBHI and *pari passu* with LBHI's preferred equity, which is not expected to recover from LBHI.

## RESERVATION OF RIGHTS

28.    LBHI reserves all rights to object to any claim that may be permitted to be

asserted against any of the Debtors.

Dated: January 21, 2020
        New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates