UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | CHAPTER 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br>v.<br><br>1st ADVANTAGE MORTGAGE, L.L.C., *et al.*,<br><br>Defendants. | Adv. Proc. No. 16-01019 (SCC) |
| AND COORDINATED ADVERSARY PROCEEDINGS | |

**NOTICE REGARDING METHODOLOGY FOR
ALLOCATING TO DEFENDANTS LBHI'S LIABILITY TO RMBS TRUSTEES**

In order to promote transparency, efficiency, and the earliest possible resolution of the above-captioned consolidated actions (the "Actions"), Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this notice to communicate to the Court and LBHI's creditors LBHI's current view of the methodology it may employ, to allocate to individual defendants in the Actions, their allocable share of LBHI's $2.38 billion liability to certain RMBS Trustees. LBHI contends that the individual defendants each owe LBHI contractual

1

indemnification for mortgage loans that the individual defendants sold to LBHI affiliates and LBHI in turn sold to the RMBS Trustees.[1]

*Methodology Not Binding; Reservation of Rights*

Presenting its preliminary view of the allocation methodology described below in no way binds LBHI to seek Court approval for that methodology in these cases. It merely reflects LBHI's current view as to an appropriate allocation methodology that it may assert in the Actions. The methodology LBHI ultimately asserts will be developed by LBHI's experts during discovery. LBHI reserves all rights and discretion to propose any allocation methodology that it chooses and its experts may deem appropriate.

*LBHI's Current View on Methodology*
*For Allocating Liability to RMBS Trustees*

While the Actions seek full indemnification for LBHI's losses, damages, judgments, and liability with respect to each breaching (or At-Issue) mortgage loan, LBHI always has acknowledged that its ultimate recovery will be based upon the $2.38 billion liability the Court fixed in 2018, not gross loan-level losses. Each defendant's share of this liability will be established based upon an allocation methodology ultimately determined by LBHI's experts. The allocation methodology will likely be applied to all originators and brokers that owe LBHI indemnification, regardless of the originator's or broker's status as a defendant in the Actions.[2] This ensures that no defendant in the Actions is asked effectively to subsidize another originator's or broker's allocable share of LBHI's liability to the RMBS trustees.

---

[1] The individual defendants also owe LBHI contractual indemnification for LBHI's liability to the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac," and with Fannie Mae, the "GSEs"), but this notice does not address those obligations.

[2] LBHI has not sued all of the originators and brokers in the Actions because some are defunct, others are likely judgment proof, and others originated or brokered very few loans. As to the latter, LBHI currently has addressed its claims in business to business negotiations or court ordered mediation rather than litigation, but of course reserves all rights to initiate an action against any mortgage seller that owes it contractual indemnity.

Subject to its reservation of all rights and discretion to propose any reasonable allocation methodology it chooses, LBHI states that the general method or framework it contemplates for allocating damages to individual defendant/mortgage loan originators likely will be driven by loan-level analyses focused on the four principal types of misrepresentation breaches (income, employment, occupancy and debt) that underlie this Court's $2.38 billion RMBS judgment in the estimation proceeding. The estimation hearing record makes clear that LBHI vigorously challenged the substantial majority of the claims underlying the $11.4 billion in damages the Trustees sought. The Court made clear through its statements on the record and in its 163-page decision that it was the misrepresentation claims that supported the $2.38 billion judgment. LBHI, therefore, currently intends to focus on those four types of breaches and the limited number of loans as to which LBHI agreed to accept liability before this Court conducted its estimation hearing in order to determine each defendant's allocable share of the $2.38 billion judgement. This latter group includes loans that implicate regulatory breaches for which LBHI (and the defendant originators) faced essentially strict liability, and a limited set of particularly egregious breaches of representations and warranties. Regarding the former group, LBHI currently intends to allocate liability based upon those misrepresentation claims. And to ensure that its allocation ties to only the strongest breach claims, LBHI currently intends to exclude from that group loans that (i) performed for over three years following origination,[3] (ii) had breaches supported only by evidence that LBHI considers less reliable, or supported by insufficient evidence, including insufficient servicing records, and therefore failed to meet the burden of proof necessary to establish a breach,

---

[3] At the estimation hearing, LBHI argued that breaches on loans that continued to perform for more than three years were less likely to meet the materiality standard under governing RMBS trust documents.

3

and (iii) were included in LBHI's RMBS claims solely based on missing "Documentation,"[4] because LBHI believes that the Court attributed no liability to those types of claims.

Applying the criteria described above to LBHI's entire population of RMBS loans, including loans originated and brokered by entities not at issue in these proceedings, yields an aggregate liability of roughly $4.0 billion. This represents a discount of approximately 65% from the aggregate amount scheduled on the complaints in the Actions. A further discount factor of approximately 41% of $4.0 billion brings that amount into line with the Court's $2.38 billion award and ensures that LBHI cannot collect more from the defendants, in the aggregate, than their allocable share of that amount. In allocating that amount to any particular defendant originator, LBHI applies this discount with certain immaterial adjustments to address each defendant's connection to two circumstances: (i) in the RMBS settlement process, the RMBS Trustees sought approval from certificate holders in covered private label RMBS securitizations, but investors in one trust (SASCO 2006-4) opted out of the settlement, negotiated their claims separately, and ultimately reached a settlement that gave them an allowed claim of $70 million, or roughly twice what the trust would have received under the estimation settlement;[5] and (ii) during the period between the RMBS settlement and the estimation hearing, several RMBS trusts collapsed and were granted allowed claims based upon a *pro rata* share of the initial $2.44 billion settlement in principal with certain institutional investors.

---

[4] The Actions generally characterize "Documentation" claims as those where necessary or required documentation concerning the subject transaction was missing, unverified, or otherwise inadequate, and Defendant's failure to obtain, verify, or otherwise ensure the adequacy of documentation concerning the subject transaction formed the basis of Defendant's breach. LBHI argued that these alleged breaches also failed to meet the materiality requirement and presented insufficient proof of an actionable breach.

[5] LBHI believes this was a fair settlement given the relatively poor quality of the loans and their second lien status, which led to higher loss severities.

LBHI intends to deliver to each defendant in the Actions a summary of LBHI's loan-level analysis of the defendant's liability as determined according to the methodology described above. LBHI also intends to deliver to each defendant its allocable share of accrued litigation costs and attorneys' fees, and pre- and post- judgment interest at the statutory rate of 9% per annum (*see* NY CPLR § 5004), all of which continue to accrue.

All of the foregoing is subject to LBHI's reservation of all rights and discretion to propose any allocation methodology it chooses or its experts may offer.

Dated: New York, New York
March 25, 2020

*/s/* William A. Maher
William A. Maher
Brad J. Axelrod
James N. Lawler
Adam M. Bialek
Brant D. Kuehn
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

*Counsel for Lehman Brothers Holdings Inc.*