# EXHIBIT A

08-13555-mg    Doc 60488-1    Filed 03/27/20    Entered 03/27/20 17:11:33    Exhibit A
Pg 2 of 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 60

-----------------------------------------------------------------------------X

In the matter of the application of

U.S. BANK NATIONAL ASSOCIATION, WELLS FARGO
BANK, NATIONAL ASSOCIATION, WILMINGTON
TRUST, NATIONAL ASSOCIATION, WILMINGTON
TRUST COMPANY, and CITIBANK, N.A. (as Trustees,
Indenture Trustees, Securities Administrators, Paying Agents,
and/or Calculation Agents of Certain Residential
Mortgage-Backed Securitization Trusts),

Petitioners,

For Judicial Instructions under CPLR Article 77 on the
Administration and Distribution of a Settlement Payment.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651625/2018 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 001 |

**INTERIM DECISION
AND ORDER**

HON. MARCY S. FRIEDMAN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 14, 20, 21, 23, 35, 37, 38, 49, 50, 51, 52, 54, 58, 62, 63, 65, 67, 70, 71, 73, 81, 82, 83, 84, 85, 86, 87, 88, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 177, 178, 179, 180, 181, 182, 183, 184, 185, 188, 189, 190, 191, 192, 193, 194, 214, 221

were read on this                                        ARTICLE 77 PROCEEDING                        .


Petitioners U.S. Bank National Association, Wells Fargo Bank, National Association,

Wilmington Trust National Association, Wilmington Trust Company, and Citibank, N.A. are the

trustees, securities administrators, paying agents, and/or calculation agents of residential

mortgage-backed securities (RMBS) trusts.  Lehman Brothers Holdings Inc. and affiliated

debtors (Lehman) were the sponsors or depositors of the trusts and/or originators of the

underlying loans.  Petitioners bring this CPLR Article 77 proceeding for judicial instructions as

to the administration and distribution of settlement payments to be made by Lehman to settling

trusts (Trusts), pursuant to settlement agreements entered into in the Lehman Bankruptcy

1

FILED: NEW YORK COUNTY CLERK 03/20/2020 09:42 AM
INDEX NO. 651625/2018
NYSCEF DOC. NO. 239
RECEIVED NYSCEF: 03/19/2020

08-13555-mg    Doc 60488-1    Filed 03/27/20    Entered 03/27/20 17:11:33    Exhibit A
Pg 3 of 11

proceeding (Settlement Agreements).  (In re Lehman Brothers Holdings Inc., No. 0813555

[SCC], Bankr SD NY [Lehman Bankruptcy].)[1]

As discussed further below, determination of this Article 77 proceeding will require

interpretation, in the first instance, of the Settlement Agreements.  Prior to ultimate

determination of the methodology for distribution of the settlement payments, this court must

defer to the Bankruptcy Court (Hon. Shelley C. Chapman), which has retained jurisdiction over

disputes regarding interpretation of the Settlement Agreements.

In the Lehman Bankruptcy, various accepting trustees and Lehman entered into a

Settlement Agreement as of November 30, 2016 and modified as of March 17, 2017.  This

agreement, entitled RMBS Trust Settlement Agreement, is also referred to as the Covered Loan

Settlement Agreement.  (Petition Ex. B [NYSCEF Doc. No. 3].)  The Agreement provides:

"Except as otherwise provided in this Settlement Agreement, each of the Parties hereto consents

to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding

the interpretation or enforcement of this Settlement Agreement until the closing of the LBHI

Debtors' bankruptcy cases."  (Id. § 6.18.)[2]  The Bankruptcy Court issued an Order approving the

Agreement and directing an estimation proceeding.  (Order Approving RMBS Settlement

Agreement, dated July 6, 2017, also referred to as 9019 Order, Ordering Clause ¶¶ B, D

---

[1] The trusts at issue in this proceeding were originally identified by petitioners in Exhibit A to the Petition.  (See Petition Ex. A [corrected] [NYSCEF Doc. No. 85].  See also Petition Ex. D [corrected], listing trusts subject to the Settlement Agreements but not at issue in this proceeding [NYSCEF Doc. No. 87].)  Requests for instructions for trusts for which no respondent has appeared in this proceeding are addressed by separate orders of this court. (NYSCEF Doc. Nos. 106 and 222.)  In addition, since the filing of the Petition and the pendency of the merits briefing on the Petition, a number of the trusts have resolved distribution issues on consent by Partial Severance Order and Final Judgment.  (NYSCEF Doc Nos.107, 138, 196, 198, 208, 211, 212, 218, 237.)  As used in this decision, the term Trusts refers to those that remain at issue in this proceeding, which the court understands to be: LMT 2005-3, LMT 2006-1, LMT 2007-2, LMT 2007-4, LMT 2005-10, LXS 2005-4, LXS 2005-8, LXS 2006-10N, LXS 2006-16N, LXS 2006-7, LXS 2007-18N, LXS 2007-8H. SAIL 2005-1, SAIL 2005-11, SAIL 2005-7, SARM 2006-8, SASC 2006-BC4, SASC 2006-BC6.  (See Id. and NYSCEF Doc. No. 83.)

[2] The court takes judicial notice that the Lehman Bankruptcy remains pending.

2

FILED: NEW YORK COUNTY CLERK 03/20/2020 09:42 AM
NYSCEF DOC. NO. 239

INDEX NO. 651625/2018

RECEIVED NYSCEF: 03/19/2020

08-13555-mg    Doc 60488-1    Filed 03/27/20    Entered 03/27/20 17:11:33    Exhibit A
Pg 4 of 11

[NYSCEF Doc. No. 23].) This Order provides, in pertinent part, that the Bankruptcy Court "retains exclusive jurisdiction to hear and determine any dispute regarding the interpretation or enforcement of the RMBS Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases. The Court otherwise retains jurisdiction with respect to all matters arising from or related to the implementation of this Order." (Id. Ordering Clause ¶ L). After the estimation proceeding, the Bankruptcy Court issued an Order determining that the allowed claim be "estimated and allowed at $2,375,114,115.67." (Order Estimating Allowed Claim Pursuant to RMBS Settlement Agreement, dated March 15, 2018, also referred to as Estimation Order, Ordering Clause ¶ 1 [NYSCEF Doc. No. 6].) This Order also provides that "the allocation and distribution of the Allowed Claim shall be conducted in accordance with the terms of the RMBS Settlement Agreement," and that the Bankruptcy Court "shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order." (Id. Ordering Clause ¶¶ 2, 5.)

By separate Settlement Agreement, entered into as of September 5, 2017, also referred to as the Transferor Loan Settlement Agreement, various accepting trustees and Lehman resolved disputes regarding "Transferor Loans" that were not addressed by the Covered Loan Settlement Agreement. (Petition Ex. C, Whereas Clause 15 [NYSCEF Doc. No. 4].) This Agreement provides for an allowed claim against Lehman in the amount of $13 million. (Id. § 3.01.) The Agreement also provides: "Except as otherwise provided in this Settlement Agreement, each of the Parties hereto consents to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding the interpretation or enforcement of this Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases." (Id. § 6.16.)

3

In response to the filing of the Petition, a group of investors, identified as the Institutional

Investors, took the position that the commencement of this Article 77 proceeding "is contrary to

the exclusive jurisdiction order of Bankruptcy Judge Shelley C. Chapman," and moved in the

Bankruptcy Court for an order enjoining this proceeding.  (See Institutional Investors' April 10,

2018 Letter [NYSCEF Doc. No. 23].)  The Bankruptcy Court entered an Order on May 7, 2018,

denying the injunction and providing, in pertinent part:

> "ORDERED that the Court abstains from exercising jurisdiction over the
> interpretation of any of the Governing Agreements referred to in the RMBS
> Settlement Agreement which was approved by this Court's Order Approving
> RMBS Settlement Agreement…; and it is further
> ORDERED that in light of such abstention, the Court declines to enjoin the
> parties from continuing the Article 77 Proceeding; and it is further
> ORDERED that in light of paragraph L of this Court's 9019 Order, which is
> still in full force and effect, stating that 'this Court retains exclusive jurisdiction to
> hear and determine any dispute regarding the interpretation or enforcement of the
> RMBS Settlement Agreement under the closing of the [Lehman Brothers
> Holdings Inc.] Debtors' bankruptcy cases,' the Court respectfully requests of the
> Supreme Court, New York County (per Friedman, J.) that if issues arise during
> the Article 77 Proceeding regarding the interpretation of the RMBS Settlement
> Agreement, such issues be referred to this Court for determination."

(Order Determining Motion of Institutional Investors Seeking to Enjoin Article 77

Proceeding at 2 [NYSCEF Doc. No. 52].)

Following issuance of the above Order, various interested party investors answered the

Petition and submitted briefing on the merits as to the proper administration and distribution of

the settlement payments.[3]  As explained by petitioners, resolution of these issues will "affect

---

[3] Respondents that have appeared in this proceeding include:  Ambac Assurance Corporation; American General Life
Insurance Company, American Home Assurance Company, American International Reinsurance Company, Ltd.,
Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., The United States Life
Insurance Company in the City of New York, and The Variable Annuity Life Insurance Company (collectively, AIG
Parties); AEGON USA Investment Management, LLC, Blackrock Financial Management, Inc., Cascade Investment,
L.L.C., The Federal Home Loan Bank of Atlanta, Goldman Sachs Asset Management, L.P., Invesco Advisers, Inc.,
Kore Advisors, L.P., The Metropolitan Life Insurance Company, Pacific Investment Management, LLC, The TCW
Group, Inc., Thrivent Financial for Lutherans, Voya Investment Management (formerly known as ING Investment
Management) and Western Asset Management Company; Nover Ventures, LLC (collectively, Institutional Investors);
Olifant Fund, Ltd., FFI Fund Ltd, and FYI Ltd. (collectively, Olifant); Poetic Holdings VII LLC (Poetic); Tilden Park

4

FILED: NEW YORK COUNTY CLERK 03/20/2020 09:42 AM
NYSCEF DOC. NO. 239
INDEX NO. 651625/2018
RECEIVED NYSCEF: 03/19/2020

08-13555-mg    Doc 60488-1    Filed 03/27/20    Entered 03/27/20 17:11:33    Exhibit A
Pg 6 of 11

which classes of certificates will receive distributions derived from the Settlement Payment, and

the amounts they will receive," as well as "which classes of certificates are written up and the

extent of such write-ups, . . . and, ultimately, the resulting certificate principal balances of the

affected classes." (Petition ¶ 14.) Petitioners note that the Settlement Agreements "specif[y] two

operations that must be performed in connection with the Settlement Payment: (i) the

distribution of the funds constituting Settlement Payments to Certificateholders, and (ii) the

writing up of certificate principal balances in the amount of the Settlement Payment Write-Up."

(Id. ¶ 34.)[4] They then characterize the central issue on which they seek instructions, as follows:

> "[T]he Petitioners are faced with two different possible approaches to perform
> these operations: the Petitioners could first distribute funds constituting the
> Settlement Payments based on certificate principal balances that do not account
> for the Settlement Payment Write-Up and thereafter apply the Settlement Payment
> Write-Up to the pertinent certificate principal balances (the 'Pay First Method');
> or, in the alternative, first apply the Settlement Payment Write-Up to the pertinent
> certificate principal balances and thereafter determine the distribution of the
> Settlement Payments based on the newly written up certificate principal balances
> (the 'Write-Up First Method')."

(Id. ¶ 35.)

In a recent Article 77 proceeding, this court issued judicial instructions to RMBS trustees

regarding the distribution of a settlement payment made by the securitizer of the trusts. (Wells

---

Capital Management LP (Tilden Park). The AIG Parties and Institutional Investors submitted joint merits briefing.
(See NYSCEF Doc. Nos. 151, 178, 194.)

[4] As also explained by the petitioners, "[e]ach certificate generally has, or is assigned, a certificate principal balance
equal to the total distribution of 'principal amount' such certificate is entitled to receive." (Petition ¶ 7.)
"Certificates cannot receive distributions of principal amount in excess of their original aggregate or total certificate
principal balance." (Id.) The Governing Agreements for the Trusts "contain specific 'waterfall' provisions that
dictate the principal amounts and interest amounts distributable to classes of certificates and the order of priority in
which such amounts are distributed among such classes." (Id.) In addition, when a class of certificates receives a
distribution of principal, the Governing Agreements require a corresponding reduction—i.e., "write down"—of the
certificate principal balance. (Id. ¶ 9.) A Trust may also "subsequently receive funds constituting a recovery of a
realized loss," referred to in the Governing Agreements as a "subsequent recovery." (Id. ¶ 11.) "When a subsequent
recovery is realized, the principal balances of certificates previously written down may be increased, or 'written up,'
by the amount of the subsequent recovery." (Id.)

5

Fargo Bank, N.A. (2020 NY Slip Op 30453 [U], 2020 WL 735683 [Sup Ct, NY County Feb. 13,

2020] [JPMorgan II].)  The trustees in JPMorgan II raised issues that are substantially similar to

those at issue here.  The provisions of the settlement agreements here and in JPMorgan II are

also substantially similar.[5]

In JPMorgan II, in order to determine the order of operations—Write-Up First or Pay

First—and the applicable write-up methodology, the court was required to interpret the

settlement agreement as well as the governing agreements for the trusts.  As a threshold matter,

the court determined that the JPMorgan II settlement agreement expressly deferred to the

distribution provisions of the governing agreements; that the governing agreements controlled

where they specified the order of operations; and that the settlement agreement therefore

controlled only where the governing agreements did not specify such order.  (2020 WL 735683,

at *5.)  The court next interpreted the settlement agreement and held that section 3.06 (a)

unambiguously required application of the Pay First Method.  (Id.)  In this regard, the court also

determined that section 3.06 (b) of the settlement agreement did not modify the section 3.06 (a)

Pay First directive, which would apply in the event the governing agreements did not control.

---

[5]  In brief, section 3.06 (a) of the settlement agreements here and in JPMorgan II states that the settlement payment
shall be distributed in accordance with the distribution provisions of the governing agreements, as if it were a
subsequent recovery.  (Petition ¶ 31, quoting section 3.06 [a]; 2020 WL 735683, at *4, quoting section 3.06 [a].)
Section 3.06 (b) of the settlement agreements addresses the write-up methodology.  Section 3.06 (b) of the
Settlement Agreements here provides that "to the extent permitted under each Trust's Governing Agreement,"
balances of certificates to which losses have previously been allocated shall be written up "in the reverse order of
previously allocated losses."  (Petition ¶ 33, quoting section 3.06 [b].)  Section 3.06 (b) of the JPMorgan II
settlement agreement provides for the writing up of balances in the reverse order of previously allocated losses, but
does not include the limiting language "to the extent permitted under each Trust's Governing Agreement."  (2020
WL 735683, at *4.)

The characterization of the Settlement Agreements here, and the discussion that follows, should not be construed as
an interpretation of the Agreements.  Rather, the court notes the similarities between the settlement agreements here
and in JPMorgan II for the purpose of identifying or highlighting the threshold interpretive issues determined by this
court in JPMorgan II, which must be referred to the Bankruptcy Court in this proceeding.

6

(Id.)  Only after having determined these issues did this court turn to interpretation of the governing agreements.  (Id. at *6.)

In JPMorgan II, the court also determined whether the settlement payment write-up should be made using the settlement agreement write-up instruction or the subsequent recovery write-up instructions in the governing agreements.  (2020 WL 735683, at *13.)  The court concluded that interpretation of the settlement agreement was required to determine whether the write-up provision of the settlement agreement, section 3.06(b), applied where it conflicted with a governing agreement.  (Id. at *14.)  Based on this interpretation, the court held that section 3.06 (b) "is a 'gap filler,' which applies only where the Governing Agreement is silent as to the write-up mechanics."  (Id.)  Only after reaching this holding did the court turn to the interpretation of the write-up provisions of the governing agreements.  (Id. at *15.)

Here, the court holds similarly that the Petition and respondents' merits briefing raise issues as to the scope and meaning of the Settlement Agreements, which should be determined before extensive analysis of the terms of the Governing Agreements is undertaken.  It is noted that various respondents contend—albeit, for markedly different reasons—that interpretation of the Settlement Agreements is not required.  For example, the Institutional Investors contend that the Petition fails to raise "bona fide questions" about the meaning of the Governing and Settlement Agreements; that the Governing Agreements are silent as to the order of operations; and that the issues raised in the Petition may be determined by application of the unambiguous terms of the Settlement Agreements, which provide for the Pay First Method.  (Institutional Investors Initial Memo. at 2, 6-9 [NYSCEF Doc. No. 151].)  Tilden Park contends that the Governing Agreements control as they are not silent as to the order of operations, and that the only required interpretation is therefore of those Agreements.  (See Tilden Park Response Memo.

7

FILED: NEW YORK COUNTY CLERK 03/20/2020 09:42 AM
INDEX NO. 651625/2018

NYSCEF DOC. NO. 239
08-13555-mg    Doc 60488-1    Filed 03/27/20    Entered 03/27/20 17:11:33    Exhibit A
RECEIVED NYSCEF: 03/19/2020
Pg 9 of 11

at 3-6, 8-10 [NYSCEF Doc. No. 175].)  Tilden Park further contends that the Settlement

Agreements require distribution of the settlement payments in accordance with the Governing

Agreements, and that the Settlement Agreements may not serve as a gap-filler to direct the order

of operations even if the Governing Agreements are silent as to such order.  (Id. at 5-6.)  Poetic

contends that the Settlement Agreements are silent as to the order of operations.  (Poetic Initial

Memo. at 1 [NYSCEF Doc. No. 174] [adopting Olifant argument, Olifant Initial Memo. at 7-8

[NYSCEF Doc. No. 147].)

      These contentions are, however, themselves predicated upon interpretation of the

Settlement Agreements that respondents claim is unnecessary.  The Institutional Investors' claim

that the Settlement Agreements unambiguously provide for the Pay First Method plainly requires

interpretation of those Agreements.  In connection with this interpretive issue, respondents raise

arguments similar to those advanced in JPMorgan II, regarding the operative provisions of the

Settlement Agreements, which, as noted above, are similar to those at issue in JPMorgan II.[6]

Thus, the Institutional Investors contend, among other things, that there is "no uncertainty" that

sections 3.06 (a) and (b) of the Settlement Agreements require the Pay First Method.

(Institutional Investors Initial Memo. at 6-7.)  Tilden Park, in contrast, disputes that these

sections dictate the order of operations.  (See Tilden Park Initial Memo. at 11-13 [NYSCEF Doc.

No. 141]; Tilden Park Response Memo at 5; see also JPMorgan II, 2020 WL 735683, at *4

[discussing similar arguments].)  In claiming that the Settlement Agreements may not serve as a

gap-filler, Tilden Park also relies on and raises interpretive issues as to sections 3.06 (c) and

6.04, additional provisions of the Settlement Agreements that address conformity and

---

[6]  It is noted that, with few exceptions, petitioners and respondents in both proceedings are the same.

consistency between the Settlement Agreements and Governing Agreements.  (See Tilden Park Initial Memo. at 12-14; Tilden Park Response Memo at 4-6.)

In sum, for the reasons detailed in JPMorgan II, which will not be repeated here, the court finds that resolution of the issues in this proceeding regarding distribution of the settlement payments requires interpretation of the Settlement Agreements prior to interpretation of the Governing Agreements.  These issues will be referred to the Bankruptcy Court based on its retention of jurisdiction over such issues.[7]

Finally, in making this reference, the court rejects the Institutional Investors' contention that this proceeding should be dismissed because petitioners "have sought instructions on issues for which there are not reasonable disputes."  (Institutional Investors Reply Memo. at 4 [emphasis in original] [NYSCEF Doc. No. 194].)  Given the complexity of the issues, and the conflict in the parties' positions on them, the request for instructions is not inappropriate.

ORDER

It is hereby ORDERED that the issues in this proceeding requiring interpretation of the Settlement Agreements are referred to the Bankruptcy Court (The Hon. Shelley C. Chapman, US Bankruptcy Judge) in the Lehman Bankruptcy for determination in that proceeding; and it is further

ORDERED that petitioners shall advise the Bankruptcy Court of this decision and order, within five (5) days of its filing with notice of entry; and it is further

---

[7] JPMorgan II required interpretation not only of the settlement agreement provisions regarding the order of operations but also of the provision regarding the write-up methodology.  The decision thus also determined that section 3.06 (b), the write-up methodology provision of the settlement agreement, controls in the event of conflict with the write-up methodology provision of an applicable governing agreement.  (See 2020 WL 735683, at *14.) Although the latter issue is not squarely raised in this proceeding, the parties to this proceeding will not be precluded by this decision from bringing to the Bankruptcy Court's attention any issues involving interpretation of the Settlement Agreements, even if such issues have not been discussed in this decision.  This court's objective is to avoid multiple referrals to the Bankruptcy Court.

9

ORDERED that this proceeding is stayed pending hearing and determination by the

Bankruptcy Court of the aforesaid issues.  Provided that:  If all interested respondents in any

remaining Trust in this proceeding are able, after the issuance of this decision and in consultation

with petitioners, to resolve a dispute regarding any issue that is the subject of this proceeding by

partial severance order and judgment, they may continue to do so.

Dated:  March 19, 2020

_____

MARCY S. FRIEDMAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

10