**Response Deadline: July 7, 2020, at 4:00 p.m. (Eastern Time)**
**Hearing Date: July 14, 2020, at 10:00 a.m. (Eastern Time)**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Brad J. Axelrod
James N. Lawlor
Adam M. Bialek
Brant D. Kuehn
Joshua M. Slocum

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ———————————————————— x | | |
| | **:** | **Chapter 11** |
| **In re:** | **:** | |
| | **:** | **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | **:** | |
| | **:** | |
| **Debtors.** | **:** | |
| ———————————————————— x | | |

**MOTION IN AID OF ALTERNATIVE DISPUTE RESOLUTION**
**PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS**
**OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

JURISDICTION .......................................................................................................................... 3

BACKGROUND .......................................................................................................................... 3

    A.    The Court approves the Plan and orders Sellers of mortgage loans
underlying the Fannie Mae and Freddie Mac settlements to participate in
mandatory, non-binding ADR. ................................................................................ 3

    B.    LBHI identifies additional Successor entities that it believes are
responsible for the obligations of Sellers covered by the original ADR
Order. ...................................................................................................................... 4

    C.    The Court orders Successors to comply with its original ADR Order. .................. 5

    D.    After the Court amends the ADR Order to encompass Sellers of mortgage
loans underlying LBHI's recent settlements of the RMBS Claims,
numerous potential Successors of those Sellers refuse to participate in
mediation................................................................................................................. 6

RELIEF REQUESTED.................................................................................................................. 9

ARGUMENT............................................................................................................................... 10

I.    LBHI Has Uncovered Evidence of Successor Liability .................................................... 10

    A.    Expressly or Impliedly Assuming Liabilities of Predecessor................................ 11

    B.    De Facto Merger ................................................................................................... 13

    C.    Mere Continuation ................................................................................................ 14

    D.    Fraudulent Transaction ......................................................................................... 15

        1.    Constructive Fraudulent Transfers............................................................. 16

        2.    Actual Fraudulent Transfers ...................................................................... 17

II.    The Court Has Authority to Direct the Successors to Participate in ADR ........................ 18

III.    Successors Should Be Made to Comply With the ADR Order ......................................... 22

NOTICE...................................................................................................................................... 24

CONCLUSION............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*,
   448 F. App'x 134 (2d Cir. 2011) .................................................................................... 19

*Alcan Aluminum Corp., Metal Goods Div. v. Elec. Metal Prods., Inc.*,
   837 P.2d 282 (Colo. App. 1992) ................................................................................... 15

*Amjad Munim, M.D., P.A. v. Azar*,
   648 So. 2d 145 (Fla. 4th DCA 1994) ........................................................................... 14

*Antiphon, Inc. v. LEP Transport, Inc.*,
   183 Mich. App. 377, 454 N.W.2d 222 (1990) ............................................................. 13

*Atlas Tool Co. v. C. I. R.*,
   614 F.2d 860 (3d Cir. 1980) .......................................................................................... 14

*Back v. LTV Corp. (In re Chateaugay Corp.)*,
   213 B.R. 633 (S.D.N.Y. 1997) ..................................................................................... 20

*Bud Antle, Inc. v. Eastern Foods, Inc.*,
   758 F.2d 1451 (11th Cir. 1985) .................................................................................... 14

*Cargo Partner AG v. Albatrans Inc.*,
   207 F. Supp. 2d 86 (S.D.N.Y. 2002) .............................................................................. 9

*Colon v. Multi-Pak Corp.*,
   477 F. Supp. 2d 620 (S.D.N.Y. 2007) .................................................................... 10, 14

*Doktor v. Werner Co.*,
   762 F. Supp. 2d 494 (E.D.N.Y. 2011) ............................................................................ 9

*Drug, Inc. v. Hunt*,
   35 Del. 339, 168 A. 87 (Del. 1933) .............................................................................. 13

*Eastern Airlines, Inc. v. Host Marriot Corp. (In re Ionosphere Clubs, Inc.)*,
   No. 89 B 10448, Bankr. LEXIS 1875 (Bankr. S.D.N.Y. May 12, 1999) ..................... 20

*Elmer v. Tenneco Resins, Inc.*,
   698 F. Supp. 535 (D. Del. 1988) .................................................................................. 12

*Fehl v. S. W. C. Corp.*,
   433 F. Supp. 939 (D. Del. 1977) .................................................................................. 14

*Fiber-Lite Corp. v. Molded Acoustical Prods. of Easton, Inc.*,
  186 B.R. 603 (E.D. Pa. 1994)..................................................................................................15

*Fisher v. SmithKline Beecham Corp.*,
  2009 WL 899433 (W.D.N.Y. Mar. 26, 2009)............................................................................23

*Fizzano Bros. Concrete Prods. v. XLN, Inc.*,
  615 Pa. 242 (2012) ....................................................................................................................14

*Florom v. Elliott Mfg.*,
  867 F.2d 570 (10th Cir. 1989)..................................................................................................11

*Fountain v. Colonial Chevrolet Co.*,
  1988 WL 40019 (Del. Super. Apr. 13, 1988)............................................................................11

*Franklin v. USX Corp.*,
  87 Cal. App. 4th 615 (Cal. App. Ct. 2001) ..............................................................................14

*Gee v. Tenneco, Inc.*,
  615 F.2d 857 (9th Cir. 1980).....................................................................................................13

*Glynwed, Inc. v. Plastimatic, Inc.*,
  869 F. Supp. 265 (D.N.J. 1994) .........................................................................................14, 15

*Goodbody & Co. v. Rigel*,
  339 So. 2d 272 (Fla. Dist. Ct. App. 1976).................................................................................11

*Gorsuch v. Formtek Metal Forming, Inc.*,
  803 F. Supp. 2d 1016 (E.D. Mo. 2011).....................................................................................10

*Graef v. Hegedus*,
  698 So. 2d 655 (Fla. Dist. Ct. App. 1997).................................................................................16

*Grey v. F.D.I.C.*,
  2002 WL 959564 (S.D.N.Y. May 8, 2002)................................................................................23

*Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*,
  638 F. Supp. 2d 278 (D. Conn. 2009) .......................................................................................12

*Hoche Productions, S.A. v. Jayark Films Corp.*,
  256 F. Supp. 291 (S.D.N.Y. 1966) ...........................................................................................13

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*,
  712 F. Supp. 1010 (D. Mass. 1989) ..........................................................................................15

*In re Fundamental Long Term Care, Inc.*,
  507 B.R. 359 (Bankr. M.D. Fla. 2014) .......................................................................................... 18

*In re Hagerstown Fiber Ltd. P'ship*,
  277 B.R. 181 (Bankr. S.D.N.Y. 2002) .......................................................................................... 21

*In re Ismael Longoria*,
  400 B.R. 543 (W.D. Tex. 2009) .................................................................................................... 22

*In re Knippen*,
  355 B.R. 710 (Bankr. N.D. Ill. 2006) ........................................................................................... 18

*In re Metro-Goldwyn-Mayer*,
  459 B.R. 555 (Bankr. S.D.N.Y. 2010) .......................................................................................... 19

*In re Petrie Retail, Inc*.,
  304 F.3d 223 (2d Cir. 2002) .......................................................................................................... 19

*In re Sosa*,
  443 B.R. 263 (Bankr. D.R.I. 2011) ............................................................................................... 21

*J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*,
  124 B.R. 931 (S.D.N.Y. 1991) ..................................................................................................... 21

*Jones v. Reno Hilton Resort Corp.*,
  889 F. Supp. 408 (D. Nev. 1995) .................................................................................................. 12

*Ladjevardian v. Laidlaw-Coggeshall, Inc.*,
  431 F. Supp. 834 (S.D.N.Y. 1977) .......................................................................................... 14, 15

*LaPollo by LaPollo v. Gen. Elec. Co*.,
  664 F. Supp. 178 (D.N.J. 1987) .................................................................................................... 10

*Lehman Bros. Holdings Inc. v. Gateway Funding Divers. Mort. Svcs., L.P.*,
  989 F. Supp. 2d 411 (E.D. Pa. 2013) ........................................................................................ 5, 13

*Lehman Bros. Holdings Inc. v. Gateway Funding Divers. Mort. Svcs., L.P.*,
  785 F.3d 96 (3d Cir. 2015) ............................................................................................................. 5

*Marenyi v. Packard Press Corp.*,
  1994 WL 16000129 (S.D.N.Y. June 9, 1994) .............................................................................. 14

*Marnavi S.p.A. v. Keehan*,
  900 F. Supp. 2d 377 (D. Del. 2012) .............................................................................................. 14

*Matter of Sargeant Farms, Inc.*,

224 B.R. 842 (Bankr. M.D. Fla. 1998)...........................................................................................21

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
965 N.Y.S.2d 284 (N.Y. Sup. Ct. 2013) .....................................................................................12

*Miles Multimedia, LLC v. Schumann Printers, Inc.*,
2013 WL 1858448 (D. Colo. May 2, 2013)................................................................................16

*Mozingo v. Correct Mfg. Corp.*,
752 F.2d 168 (5th Cir. 1985).....................................................................................................15

*Parklane Hosiery Co., Inc. v. Shore*,
439 U.S. 322 (1979)...................................................................................................................22

*Perry Drug Stores v. CSK Auto Corp.*,
93 F. App'x 677 (6th Cir. 2003).................................................................................................12

*Polius v. Clark Equip. Co.*,
802 F.2d 75 (3d Cir. 1986).........................................................................................................15

*Ray v. Alad Corp.*,
19 Cal. 3d 22 (Cal. 1977) ...........................................................................................................10

*Ruedy v. Toledo Factories Co.*,
22 N.E.2d 293 (Ohio App. Ct. 1939) .........................................................................................13

*Ruiz v. ExCello Corp.*,
653 P.2d 415 (Colo. App. 1982) ...........................................................................................13, 14

*Schumacher v. Richards Shear Company, Inc*.,
59 N.Y.2d 239, 451 N.E.2d 195, (1983)....................................................................................11

*Smith v. Navistar Int'l Transp. Corp.*,
737 F. Supp. 1446 (D. Md. 1988) ..............................................................................................12

*Software Freedom Conservancy, Inc. v. Best Buy Co*.,
783 F. Supp. 2d 648 (S.D.N.Y. 2011)........................................................................................11

*Sorenson v. Allied Products Corp*.,
706 N.E.2d 1097 (Ind. Ct. App. 1999)......................................................................................14

*Sourcing Mgmt., Inc. v. Simclar, Inc.*,
2015 WL 4587974 (N.D. Tex. July 30, 2015) ...........................................................................18

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
971 F. Supp. 2d 368 (S.D.N.Y. 2013)...................................................................................17, 18

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009) ................................................................................................. 19

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. - Petrobras*,
  2005 WL 289575 (S.D.N.Y. Feb. 4, 2005) ............................................................... 12

*U.S. v. Sterling Centrecorp Inc.*,
  960 F. Supp. 2d 1025 (E.D. Cal. 2013) ............................................................. 12, 13

*Vill. Builders 96, L.P. v. U.S. Labs., Inc*.,
  121 Nev. 261 (Nev. 2005) .......................................................................... 11, 13, 14

*Warfield v. KR Entm't, Inc.* (*In re Fed. Fountain, Inc.*),
  165 F.3d 600 (8th Cir. 1999) .................................................................................... 21

*Woods v. Holy Cross Hospital*,
  591 F.2d 1164 (5th Cir. 1979) .................................................................................. 23

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................................................. 22

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................ 21

28 U.S.C. § 157(b) ............................................................................................................. 3

28 U.S.C. § 1334 ................................................................................................................ 3

K.R.S. § 378.010 .............................................................................................................. 16

La. Civ. Code art. 2036 .................................................................................................... 16

Md. Code, Com. Law § 15-201 ........................................................................................ 16

N.Y. Debt. & Cred. Law § 270 ........................................................................................ 16

S.C. Code § 27-23-10 ....................................................................................................... 16

Va. Code § 55-80 .............................................................................................................. 16

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator pursuant to the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors,

for LBHI and certain of its subsidiaries, moves (the "Motion") for an order in aid of the Court's

Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors

Against Mortgage Loan Sellers, dated July 18, 2014, as amended on November 14, 2018 [Dkt. No.

59085] and January 14, 2019 [Dkt. No. 59387], as applicable (as so amended, the "ADR Order"),

and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      This Motion seeks to enforce the Court's ADR Order against numerous entities that

LBHI believes are Successors[1] to parties against whom it holds claims for contractual

indemnification (the "Indemnification Claims").

2.      The ADR Orders established a mediation process to resolve the tens of thousands

of contractual Indemnification Claims that LBHI holds against loan originators and other sellers of

allegedly defective residential mortgage loans ("Sellers").  The ADR Order directs the Sellers who

receive an ADR notice containing supporting information for LBHI's Indemnification Claims and

settlement demand (an "ADR Package") to participate, in good faith, in mandatory mediation.  The

ADR Order provides, *inter alia*, that all such mediations are to be conducted in a confidential

manner and that Sellers will waive no defenses they may have by participating in the mediations.

3.      The Court has previously granted a similar motion to this one.  In its Order In Aid

Of Alternative Dispute Resolution Procedures Order For Indemnification Claims Of The Debtors

Against Mortgage Loan Sellers, dated December 1, 2015 (the "2015 Order in Aid of ADR"), the

Court ordered certain Successors to Sellers against whom LBHI intended to assert Indemnification

---

[1]      All capitalized terms in the Preliminary Statement not otherwise defined herein or in the preamble above, are
defined in the Background section below.

Claims arising out of its settlements with the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corp. ("Freddie Mac") to comply with the ADR Order in effect as of that time. [Dkt. No. 51575]

4.    On November 14, 2018 and January 14, 2019, the Court amended the prior ADR Order to encompass additional Sellers from whom LBHI or its affiliates purchased or received mortgage loans underlying (a) this Court's estimation of certain RMBS Trustees' allowed claim in LBHI's bankruptcy dated March 15, 2018 [Dkt. No. 57785]; and (b) the allowance of certain RMBS Trustees' claims settled in the ordinary course of business (collectively, the "RMBS Claims"). [Dkt. Nos. 59387, 59085]  However, just as happened before, many Successors to these additional Sellers who are encompassed by the amended ADR Order have refused to participate in non-binding mediation as provided in the ADR Order, including on the asserted grounds that they are not liable for the relevant Sellers' debts and obligations.  These entities are listed in Exhibit A. Therefore, LBHI respectfully requests that the Court enter an order clarifying, just as the Court did in the 2015 Order in Aid of ADR, that these additional Successors are also bound by the ADR Order.

5.    This order is warranted for all same the reasons set forth in LBHI's October 22, 2015 Motion in Aid of Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 51241], which the Court granted in its 2015 Order in Aid of ADR.  For the Court's convenience, those reasons are reproduced in this brief.  For the avoidance of doubt, while LBHI has investigated many of these Successors and, as set forth herein, has a reasonable basis to assert that each of the Successors may be liable to LBHI under applicable state-law successor liability doctrines to the same extent as the former Sellers, that issue need not—and should not—be decided now.  All defenses that an ADR

2

counterparty possesses, including that it is not liable for a Seller's obligations under applicable law, are expressly preserved in connection with the Court-ordered mediation. Any such argument would therefore not be a valid reason for refusing to participate in non-binding mediation, as it simply constitutes an asserted—and preserved—defense to liability.

## JURISDICTION

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Section 14.1 of the Plan.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**A. The Court approves the Plan and orders Sellers of mortgage loans underlying the Fannie Mae and Freddie Mac settlements to participate in mandatory, non-binding ADR.**

8. Beginning on September 15, 2008, and periodically thereafter, the Debtors commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered under Bankruptcy Rule 1015(b).

9. By Order dated December 6, 2011 (the "Confirmation Order"), the Bankruptcy Court confirmed the Modified Third Amended Plan of Reorganization of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), which became effective on March 6, 2012.

10. On January 22, 2014, LBHI and its affiliates settled claims asserted by Fannie Mae arising from allegedly defective mortgage loans it purchased from LBHI. [Dkt. No. 42153]. LBHI and its affiliates settled similar claims asserted by Freddie Mac on February 12, 2014. [Dkt. No. 42754]. These settlements were approved by Orders dated January 31, 2014 [Dkt. No. 42420] and February 19, 2014 [Dkt. No. 42918], respectively.

3

11.     On May 29, 2014, LBHI filed a Motion for Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers  [Dkt. No. 44450]  (the "2014 ADR Motion") requesting the Court to require LBHI and the Sellers of the mortgage Loans underlying the settled claims by Fannie Mae and Freddie Mac to submit to non-binding mediation to promote the resolution of claims that LBHI intended to assert for indemnification of the amounts it paid under those settlements ("Indemnification Claims").

12.     The Court granted the 2014 ADR Motion on July 18, 2014 (the "2014 ADR Order"). [Dkt. No. 45277]

**B.     LBHI identifies additional Successor entities that it believes are responsible for the obligations of Sellers covered by the original ADR Order.**

13.     Upon initiation of the indemnification ADR proceedings, LBHI discovered that numerous Sellers had effectively transferred their businesses to another entity through a stock sale, a sale of substantially all of their assets to a third-party, reorganizing as a different corporate entity while continuing the normal business operations and the name, a third-party alter ego continuing the Seller's business operations, and the like (the "Successors").

14.     However, when contacted by LBHI, either in connection with pre-mediation negotiations or by the delivery of an ADR Package, some of the Successors asserted they would ignore and/or not comply with the ADR Order.  Others asserted they had no liability for the debts or obligations of the applicable Seller and refused to negotiate in good faith.

15.     LBHI had experienced such recalcitrance previously in pursuing indemnification claims against mortgage loan sellers and had been forced to litigate the matter.  For example, in *Lehman Bros. Holdings Inc. v. Gateway Funding Divers. Mort. Svcs., L.P.*, LBHI sued and asserted indemnification claims unrelated to the Fannie Mae and Freddie Mac settlements against a defendant that had purchased substantially all of the assets of an indemnifying seller under a theory

4

of *de facto* merger under Pennsylvania state law.  989 F. Supp. 2d 411 (E.D. Pa. 2013), *aff'd*, 785 F.3d 96 (3d Cir. 2015).  The district court concluded that the defendant was the successor by merger to the original seller and held the successor liable.  *Id*. at 432-33.  The district court's determination was thereafter upheld by the Third Circuit.  *Lehman Bros. Holdings Inc. v. Gateway Funding Divers. Mort. Svcs., L.P.*, 785 F.3d 96, 103 (3d Cir. 2015).

###    C.    The Court orders Successors to comply with its original ADR Order.

16.    To secure the potential Successors' compliance with the Court's ADR Order, on October 22, 2015, LBHI filed a Motion in Aid of Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 51241] (the "2015 Motion in Aid").  The 2015 Motion in Aid sought an order clarifying that alleged Successors of Sellers against whom LBHI intended to assert Indemnification Claims were obligated to comply with the ADR Order and to submit to non-binding mediation, while preserving all defenses.

17.    The Court granted the 2015 Motion in Aid on December 1, 2015.  In its 2015 Order in Aid of ADR, the Court clarified that (with the exception of a handful of objectors with respect to whom LBHI agreed to withdraw the motion) "all Successors are bound by the terms of the ADR Order and are thereby required to, among other things, participate in the mediation of LBHI's Indemnification Claims in good faith."  [Dkt. No. 51575][2]

---

[2]    The 2015 Order in Aid of ADR noted (on pages 1-2) that the motion had been withdrawn, without prejudice, with respect to three entities who objected to the motion.  LBHI subsequently withdrew the motion voluntarily with respect to seven additional objectors.  [Dkt. Nos. 53495; 53499; 53570; 54995; 55022; 55057; 55058].  None of those entities are the subject of this Motion.

In addition, one potential successor entity on Exhibit A, Ohio Lending Consultants, LLC. (successor to First Ohio Banc & Lending Inc.), was bound by the 2015 Order in Aid of ADR.  However, as it was not served with LBHI's October 1, 2018 Motion of Lehman Brothers Holdings Inc. for Leave to Amend and Extend the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 58858], in an abundance of caution we include it again to confirm it is subject to the amended ADR Order.

**D.** **After the Court amends the ADR Order to encompass Sellers of mortgage loans underlying LBHI's recent settlements of the RMBS Claims, numerous potential Successors of those Sellers refuse to participate in mediation.**

18.     On or around September 22, 2009, certain trustees for hundreds of RMBS trusts filed proofs of claims (the "RMBS Claims"), which claims included, among others, the allegation that LBHI breached various representations and warranties regarding the quality and characteristics of hundreds of thousands of mortgage loans.  LBHI later entered into a settlement agreement, under which it agreed to seek estimation of some of the RMBS Claims before this Court in an estimation proceeding (the "Estimation Proceeding").  At the conclusion of the Estimation Proceeding, on March 15, 2018, the Court entered an order estimating certain allowed RMBS Claims at a total amount of $2.38 billion.  [Dkt. No. 57785] LBHI also settled certain RMBS Claims in the ordinary course of business.

19.     On October 1, 2018, LBHI filed a Motion for Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 45277]  (the "2018 ADR Motion").  The ADR Motion sought to expand the 2018 ADR Order to not only encompass Sellers who sold or delivered mortgage loans underlying LBHI's settlements with Fannie Mae and Freddie Mac, but also (i) this Court's March 15, 2018 estimation of certain allowed RMBS Claims; and (ii) the allowance of certain additional RMBS Claims settled in the ordinary course of business.

20.     As a result of resolving the RMBS Claims, LBHI intended to assert claims for indemnification from the Sellers that sold or delivered the defective mortgage loans to LBHI that gave rise to those liabilities.  Each of the Sellers had agreed to indemnify LBHI and its affiliates

with respect to any third-party liability, judgments, or damages suffered as a result of the mortgage loans.[3]

21.     On October 23, 2018, various Sellers filed numerous responses and objections and/or joinders in objections to the 2018 ADR Motion.  On October 29, 2018, the Court held a hearing on the 2018 ADR Motion.  On November 14, 2018, the Court entered an amended ADR Order with respect to all Sellers who did not timely object.  [Dkt. No. 59085]  On January 14, 2019, the Court entered an amended ADR Order with respect to the objecting Sellers.  [Dkt. No. 59387] Both the November 14, 2018 and the January 14, 2019 amendments to the ADR Order established a mandatory process requiring the Sellers to participate in non-binding mediation related to the Indemnification Claims.

22.     After entry of the amended ADR Order, LBHI began instituting ADR proceedings against many of the Sellers in relation to its settlements of the RMBS Claims.  While LBHI's indemnification ADR proceedings remain ongoing, just as happened during the first round of ADR proceedings following the Fannie Mae and Freddie Mac settlements, LBHI has discovered the many of the Sellers of the mortgage loans underlying the RMBS Claims had effectively transferred their businesses to another entity through a stock sale, a sale of substantially all of their assets to a

---

[3]     An example of the broad indemnification language in one of the agreements that LBHI had with its counterparties is as follows:

711.  INDEMNIFICATION AND THIRD PARTY CLAIMS.  In addition to any repurchase and cure obligations of Seller, … Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

Seller's Guide, § 711, dated April 15, 2005.

third-party, reorganizing as a different corporate entity while continuing the normal business

operations and the name, a third-party alter ego continuing the Seller's business operations, and the

like. And, as happened before, many of these additional potential Successors have refused to

engage in mediation as required by the ADR Order.

23.    Although LBHI cannot conclusively determine the existence of successor liability

prior to the ADR process or the initiation of litigation, it has (again) discovered indicia giving rise

to reasonable grounds to assert that certain Successors may be legally responsible for the liability

of certain Sellers. This includes, but is not limited to, the following:

a.    The Successor acquired the Seller and appears to have continued the operations of that entity;

b.    The Successor absorbed the Seller through merger;

c.    The Successor changed its name from the name of the Seller and has continued the operations of the Seller;

d.    The Successor was a parent or related entity of the Seller and after the Seller was dissolved, the Successor continued the Seller's operations as a division of the Successor;

e.    The Successor operates one or more branches at the same location(s) as the Seller, often times with the owner(s) and/or officer(s) of the Seller serving as branch manager(s) for the Successor;

f.    The Successor shares common owners, directors, and/or employees with the Seller;

g.    The Successor continued the Seller's business operations at the same headquarters, principal place of business, and/or branch location as the Seller;

h.    The Successor continued the Seller's business operations using the same phone number, fax number, and/or email as the Seller;

i.    The Successor's website can be accessed by being redirected from the Seller's website;

j.    The Successor shares the same National Mortgage Licensing System & Registry ("NMLS") number as the Seller;

k.    The Successor and the Seller have the same or substantially similar logos and branding;

8

l.      The Successor was identified by another name and the Seller conducted business under that name.

24.     It is not uncommon for mortgage loan sellers experiencing financial or legal difficulties to attempt to avoid such problems by transferring their business to new or successor entities.  Based on LBHI's initial investigation, LBHI believes that each of the Successors in Exhibit A is or may be liable for the related Seller's debts and obligations in accordance with applicable state successor liability law.

## RELIEF REQUESTED

25.     Given the refusal by certain Successors to participate in ADR notwithstanding the terms of the ADR Order and the prior 2015 Order in Aid of ADR, LBHI seeks an order that will specifically direct these additional Successors to participate.[4]  While LBHI believes that the ADR Order and 2015 Order in Aid of ADR already require participation, an order expressly governing these Successors will remove any doubt.  Such an order is preferable to engaging in individualized motion practice compelling a party to participate and/or subjecting it to sanctions as permitted under the ADR Order.  LBHI submits that the Court has the inherent authority to issue such an order, and the Court has issued a substantially similar Order before.

26.     Such an order does not prejudice the Successors as they are already bound (through their predecessor Sellers) by the ADR Order and they will continue to retain any and all defenses to LBHI's Indemnification Claims, including the defense that they are not successors to any

---

[4]      To the extent that the sale of a Seller's assets to a third-party has been approved by a court of competent jurisdiction and conclusively immunizes the asset purchaser from successor liability to the Seller's creditors, either by its terms or under applicable law, LBHI could not (and would not) pursue the Indemnification Claims against such third-parties.  *See, e.g., Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011) (rejecting successor liability claims against purchaser of bankrupt debtor's assets effectuated through court approved asset sale); *Cargo Partner AG v. Albatrans Inc.,* 207 F. Supp. 2d 86, 112 (S.D.N.Y. 2002) (recognizing that imposition of successor liability on purchaser of bankrupt entity's assets would discourage asset sales and thereby decrease overall amount of money available to creditors).  Accordingly, the proposed order specifically carves out such asset purchasers.  *See* Ex. B, Proposed Order at 2.

particular Seller.  Entry of the order will also protect LBHI by making it clear that service of an

ADR Package on a Successor does not violate the confidentiality provisions of the ADR Order

should it later be determined there is no successor liability.  Accordingly, the Court should enter

the order annexed as **Exhibit B** granting the Motion, binding the Successors to the ADR Order,

and ordering the Successors' good faith participation in ADR of LBHI's Indemnification Claims.

## ARGUMENT

## I.    LBHI HAS UNCOVERED EVIDENCE OF SUCCESSOR LIABILITY

27.    Based upon prior experience and the evidence collected in LBHI's preliminary

investigation, LBHI believes that there will be substantial evidence that each of the Successors on

Exhibit A is liable for the contractual indemnification obligations of a Seller.  While, as a general

rule, successors are not liable for the debts and obligations of their predecessors,  *see, e.g., Gorsuch*

*v. Formtek Metal Forming, Inc.*, 803 F. Supp. 2d 1016, 1021 (E.D. Mo. 2011); *Colon v. Multi-Pak*

*Corp.*, 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007), there are four significant exceptions under state

law that result in liability.  Liability vests in a successor entity when:

      i.     The successor expressly or impliedly assumes the liabilities of the predecessor;

      ii.    The underlying transaction constituted a "*de facto* merger";

      iii.   The successor is the "mere continuation" of the predecessor; or

      iv.   The underlying transaction is a constructive or actual fraud in order to escape

           liabilities.[5]

---

[5]    Certain jurisdictions also recognize a "product line exception" making the successor liable for allegedly
defective products in a product line that continue to be manufactured by the successor in tort cases.  *See, e.g., LaPollo*
*by LaPollo v. Gen. Elec. Co.*, 664 F. Supp. 178, 181 (D.N.J. 1987); *Ray v. Alad Corp.*, 19 Cal. 3d 22, 34 (Cal. 1977).
However, this doctrine is not especially relevant for purposes of LBHI's Indemnification Claims against the Sellers.
Nevertheless, LBHI reserves its right to assert its Indemnification Claims against the Successors in accordance with
any and all applicable successor liability doctrines.

28.     While this issue need not—and should not—be decided now, LBHI believes that

each of the Successors may ultimately be found liable for the debts and obligations of the Sellers,

including the Indemnification Claims, in accordance with the general doctrines for successor

liability listed above.  These doctrines are recognized in varying degrees in all 50 states and the

District of Columbia.  A brief overview of the doctrines is set forth below.

### A.    Expressly or Impliedly Assuming Liabilities of Predecessor

29.     A successor may become liable for the predecessor's debts and obligations when

either (i) the contract itself *expressly* provides for the assumption of liabilities by the successor, or

(ii) based on the circumstances, the successor entity *impliedly* assumed the liabilities of the

predecessor.  *See, e.g.*, *Florom v. Elliott Mfg*., 867 F.2d 570, 574-75 (10th Cir. 1989) (applying

Colorado law); *Software Freedom Conservancy, Inc. v. Best Buy Co.*, 783 F. Supp. 2d 648, 653

(S.D.N.Y. 2011) (applying California law); *Vill. Builders 96, L.P. v. U.S. Labs., Inc*., 121 Nev. 261,

268 (Nev. 2005) (applying Nevada law); *Fountain v. Colonial Chevrolet Co*., 1988 WL 40019, at

*7 (Del. Super. Apr. 13, 1988) (applying Delaware law); *Schumacher v. Richards Shear Company,
Inc*., 59 N.Y.2d 239, 245, 451 N.E.2d 195, 198, (1983) (applying New York law); *Goodbody &
Co. v. Rigel*, 339 So. 2d 272, 274 (Fla. Dist. Ct. App. 1976) (applying Florida law).

30.     If the agreement that led to transferring the business, such as an asset purchase

agreement, specifically provides that the successor has assumed responsibility for the debts or

obligations at issue, then the successor will be liable under basic principles of contract law.  For

example, in *Perry Drug Stores v. CSK Auto Corp.*, the court found that the plaintiff had sufficiently

pled a claim for express assumption of liabilities where the successor entity under the "Plan of

Complete Liquidation and Dissolution" agreed to liquidate and distribute the predecessor's assets

11

"subject to all debts, obligations, contracts and liabilities of the" predecessor corporation. 93 F.

App'x 677, 681 (6th Cir. 2003) (applying Michigan law).[6]

31.    Should LBHI be able to establish that an applicable underlying agreement between

the parties expressly provided for the Successor to be liable for the Seller's debts and obligations

or claims related to mortgage loan defects (which form the basis of LBHI's Indemnification

Claims), or any similar provision, then the Successors will be liable to LBHI for the

Indemnification Claims in accordance with the express assumption of liability doctrine.

32.    Assumption of liabilities need not be express. Where a Successor has acted in a

manner that implies that it is taking on the predecessor's debts and obligations, then state law will

deem the Successor liable for the predecessor's debts and obligations (in whole or in part). *See*

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 311 (N.Y. Sup. Ct. 2013)

(implied assumption of liability focuses "on the relationship between asset buyer and seller and the

buyer's post-acquisition conduct with respect to the assets" under New York law); *Smith v.*

*Navistar Int'l Transp. Corp.*, 737 F. Supp. 1446, 1449 (D. Md. 1988) (successor's "conduct must

manifest an intent to assume the tort liability of its predecessor, or the equities must be sufficiently

strong to impose that liability on the successor" under Maryland law). For example, in *Antiphon,*

*Inc. v. LEP Transport, Inc.,* the court ruled that a successor corporation that held itself out as the

---

[6]    *See also Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 288-89 (D.
Conn. 2009) (finding that successor's assumption of "'current liabilities,' not to exceed $75,000" did not constitute
general assumption of *all* of predecessor's liabilities under Connecticut law); *U.S. Fid. & Guar. Co. v. Petroleo*
*Brasileiro S.A. - Petrobras*, No. 98 CIV. 3099 (THK), 2005 WL 289575, at *24 (S.D.N.Y. Feb. 4, 2005), *amended sub*
*nom. U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. -Petrobras*, No. 98 CIV. 3099 (THK), 2005 WL 736149
(S.D.N.Y. Mar. 29, 2005) (holding that indemnity agreements expressly transferred liabilities for all losses and
expenses related to certain bonds under New York law); *U.S. v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1036
(E.D. Cal. 2013) (concluding that acquisition of all assets "subject to its liabilities" resulted in express assumption of
liabilities under California law); *Jones v. Reno Hilton Resort Corp.*, 889 F. Supp. 408, 412 (D. Nev. 1995) (noting
defendant accepts liability for events occurring after the acquisition under Nevada law); *Elmer v. Tenneco Resins, Inc.*,
698 F. Supp. 535, 541 (D. Del. 1988) (finding defendant's agreement to assume any and all liabilities reasonably
resulted in defendant assuming liability for plaintiff's claims under Delaware law).

predecessor corporation to its creditors who were unaware of the dissolution of the predecessor, was "estopped from denying liability by the existence of an implied agreement to assume the liabilities of [the predecessor]."   183 Mich. App. 377, 385-86, N.W.2d 222, 225-26 (1990) (applying Michigan law); *see also U.S. v. Sterling Centrecorp Inc*., 960 F. Supp. 2d 1025, 1038 (E.D. Cal. 2013) (finding seller's assignment of insurance policies to purchaser, dissolution of seller, and purchaser's assumption of worker's compensation claims evidenced intention that purchaser would acquire seller's liabilities under California law).

33.    Many of the Successor entities are operating out of the same location, using the same telephone numbers, using similar names, and have the same officers and employees.  Such conduct suggests that these Successors have impliedly assumed the Sellers' liabilities.

## B.    De Facto Merger

34.    The concept of "*de facto* merger" is most often applied to situations in which the ownership, assets and management of one corporation are combined with those of another preexisting entity and is widely recognized.[7]   The factors that courts consider in determining whether there has been a *de facto* merger are:

> (1)    Continuity of ownership;
>
> (2)    Continuity of management;
>
> (3)    Dissolution of the selling entity; and
>
> (4)    Assumption of liabilities necessary for the continuation of the business.

---

[7]    *See, e.g., Ruedy v. Toledo Factories Co.*, 22 N.E.2d 293, 293 (Ohio App. Ct. 1939) (applying Ohio law); *Drug, Inc. v. Hunt*, 35 Del. 339, 361-63, 168 A. 87 (Del. 1933) (applying Delaware law); *Hoche Productions, S.A. v. Jayark Films Corp*., 256 F. Supp. 291, 296 (S.D.N.Y. 1966) (applying New York law); *Gateway Funding Divers.*, 785 F.3d at 431, *aff'd*, 785 F.3d at 103 (applying Pennsylvania law); *Gee v. Tenneco, Inc.*, 615 F.2d 857, 865 (9th Cir. 1980) (applying California law); *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 269 (Nev. 2005) (applying Nevada law); *Ruiz v. ExCello Corp.*, 653 P.2d 415, 416 (Colo. App. 1982) (applying Colorado law).

*See Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (New York law); *Sorenson v. Allied Products Corp*., 706 N.E.2d 1097 (Ind. Ct. App. 1999) (Indiana law).[8] The key factor is the continuity of ownership between the parties. *See Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) (Georgia law and collecting cases); *Atlas Tool Co. v. C. I. R.*, 614 F.2d 860, 871 (3d Cir. 1980) (New Jersey law); *Fehl v. S. W. C. Corp.*, 433 F. Supp. 939, 947 (D. Del. 1977) (Delaware law); *Fizzano Bros. Concrete Prods. v. XLN, Inc.*, 615 Pa. 242, 273 (2012) (Pennsylvania law). LBHI submits that certain of the Successors have the same owners as did the respective Seller entities along with continuity of management, assumption of liabilities and the like. Thus, LBHI believes that it will be able to demonstrate that many of the Successors are liable under the *de facto* merger doctrine, as it did in the *Gateway* litigation.

### C.    Mere Continuation

35.    The "mere continuation" exception to successor liability applies when the corporation merely changes its corporate form, but otherwise continues operations with the same management and shareholders. *See Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 839 (S.D.N.Y. 1977) ("What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale.") (New York law); *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994) ("purchasing corporation is merely a 'new hat' for the seller") (Florida law). The mere continuation doctrine is widely recognized.[9] Like the *de facto* merger

---

[8]    *But see Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377 (D. Del. 2012) (Delaware test for de facto merger: (1) one corporation transferred all assets to another corporation, (2) payment was made in stock issued by transferee to shareholders of transferor, and (3) in exchange for stock, the transferee agreed to assume all the debts and liabilities of the transferor).

[9]    *See, e.g., Marenyi v. Packard Press Corp.*, No. 90-CV-4439, 1994 WL 16000129, at *6 (S.D.N.Y. June 9, 1994 (New York law); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 271 (D.N.J. 1994) (New Jersey law); *Ruiz v. ExCello Corp.*, 653 P.2d 415, 416 (Colo. App. 1982) (Colorado law); *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 626 (Cal. App. Ct. 2001) (California law); *Fehl v. S. W. C. Corp.*, 433 F. Supp. 939, 945-46 (D. Del. 1977) (Delaware law); *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 264 (Nev. 2005) (Nevada law).

14

doctrine, mere continuation "envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer." *Ladjevardian*, 431 F. Supp. at 839; *see also Alcan Aluminum Corp., Metal Goods Div. v. Elec. Metal Products, Inc.*, 837 P.2d 282, 283 (Colo. App. 1992) ("'mere continuation' exception applies when there is a continuation of directors and management, shareholder interest, and, in some cases, inadequate consideration") (Colorado law).[10]

36.    As applied to the Successors, they will be found liable for LBHI's Indemnification Claims if the Successors constitute a "mere continuation" of the Sellers such that the Successors have the same ownership and/or management of the Sellers, with the Successor entity merely constituting a "new hat" of the Seller. *See, e.g., Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 176 (5th Cir. 1985) (finding mere continuation where parent company created subsidiary, subsidiary issued equity to shareholders of parent, certain assets of parent transferred to subsidiary, and much of the same management operated subsidiary under Mississippi law); *Fiber-Lite Corp. v. Molded Acoustical Prods. of Easton, Inc.*, 186 B.R. 603, 609 (E.D. Pa. 1994) (ruling purchaser was "mere continuation" of selling corporation where purchaser had essentially same management and employees as seller, produced and sold similar product, used same facility, and selling corporation was dissolved under Pennsylvania law).

### D.    Fraudulent Transaction

37.    The fourth exception to the general rule that a successor is not liable for the debts and obligations of the predecessor is when the transaction at issue constituted a fraud to escape

---

[10]    Because of the similarities between the "mere continuation" and "de facto merger" doctrines, certain jurisdictions treat the doctrines as one and the same. *See, e.g., Polius v. Clark Equip. Co.*, 802 F.2d 75, 85 (3d Cir. 1986) ("*de facto* merger doctrine subsumes the mere continuation theory"); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275 (D.N.J. 1994) ("de facto consolidation and mere continuation theories 'tend to overlap' and 'no criteria can be identified that distinguish them in any useful manner'"); *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1010, 1019 n.15 (D. Mass. 1989) ("the distinction between the two exceptions seems more apparent than real . . . the *de facto* merger exception subsumes the continuation exception").

liabilities, and is often handled in the context of state fraudulent transfer law. *See, e.g., Miles Multimedia, LLC v. Schumann Printers, Inc.*, No. 11-CV-03150-RBJ, 2013 WL 1858448, at \*6 (D. Colo. May 2, 2013) (agreeing that Colorado Uniform Fraudulent Transfer Act was "reasonable source of information as to what constitutes a fraudulent transfer" with respect to court's analysis of whether asset purchaser was liable for seller's debts); *Graef v. Hegedus*, 698 So. 2d 655, 656 (Fla. Dist. Ct. App. 1997) (stating that whether transaction constitutes fraudulent transfer in accordance with successor liability doctrine is determined under Florida's Uniform Fraudulent Transfer Act). In other words, if the predecessor made a fraudulent conveyance of its assets to the successor entity, then a creditor can seek to avoid that transaction under the laws in force in the jurisdictions which permit creditors to seek avoidance of fraudulent transfers. Fraudulent transfer jurisprudence is also largely similar across the different jurisdictions, as 43 states have adopted the Uniform Fraudulent Transfer Act.[11] In general, there are two kinds of fraudulent transfers which may be avoided: (i) constructive fraudulent transfers, and (ii) actual fraudulent transfers.

1. Constructive Fraudulent Transfers

38. Liability for constructive fraudulent transfers may be imposed when the transferor received less than reasonably equivalent consideration for the assets while the transferor was insolvent or rendered insolvent by the transfer. *See Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 383 (S.D.N.Y. 2013) (finding constructive fraudulent transfer claim under New York law adequately pled based on asset sale transactions without fair consideration, while entity was insolvent).

---

[11] The Uniform Fraudulent Transfer Act ("UFTA") has been adopted in 43 states and the District of Columbia, with the following seven states having adopted another form of fraudulent transfer law, most notably the Uniform Fraudulent Conveyance Act which is the precursor of the UFTA: (i) Alaska (A.S. § 34.40.010 *et seq.*); (ii) Kentucky (K.R.S. § 378.010 *et seq.*); (iii) Louisiana (La. Civ. Code art. 2036 *et seq.*); (iv) Maryland (Md. Code, Com. Law § 15-201 *et seq.*); (v) New York (N.Y. Debt. & Cred. Law § 270 *et seq.*); (vi) South Carolina (S.C. Code § 27-23-10 *et seq.*); and (vii) Virginia (Va. Code § 55-80 *et seq.*).

39.     LBHI submits that many of the Sellers likely received less than reasonably equivalent value for their business assets, transferred them while insolvent or were rendered insolvent by the transfer.  Under such circumstances, the Successors will be liable to LBHI for the Indemnification Claims.

2.     Actual Fraudulent Transfers

40.     Actual fraudulent transfer liability arises where the transfer was made with the intent to hinder, delay or defraud present or future creditors of the transferor.  *See Tommy Lee Handbags Mfg. Ltd.*, 971 F. Supp. 2d at 382.  In determining the transferor's actual intent, consideration may be given to the following "badges of fraud":

(1)     the transfer or obligation was to an insider;

(2)     the transferor retained possession or control of the property transferred after the transfer;

(3)     the transfer or obligation was disclosed or concealed;

(4)     before the transfer was made or obligation was incurred, the transferor had been sued or threatened with suit;

(5)     the transfer was of substantially all the transferor's assets;

(6)     the transferor absconded;

(7)     the transferor removed or concealed assets;

(8)     the value of the consideration received by the transferor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)     the transferor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)    the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)    the transferor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the transferor.

17

5 Collier on Bankruptcy ¶ 548.04[1][b][i] (listing 11 badges of fraud); *In re Knippen*, 355 B.R.

710, 732 (Bankr. N.D. Ill. 2006) (same).[12]

41.     The Successors will be liable for the Indemnification Claims if the underlying

transfer was undertaken with the intent to hinder, delay or defraud the Sellers' creditors, including

LBHI.  LBHI will be able to establish such intent where "badges of fraud" are present.  *See, e.g.,*

*Tommy Lee Handbags Mfg. Ltd.*, 971 F. Supp. 2d at 382 (sustaining actual fraudulent transfer claim

under New York law given personal relationship between transferor and transferee, common

ownership interests, inadequacy of consideration, suspicious timing of transaction, and transaction

was concealed); *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 380-81 (Bankr. M.D. Fla.

2014) (finding actual fraudulent transfer claim adequately pled under Florida law where transferee

paid 10% of the market price of assets transferred, transfer was concealed, transferor had been sued

before transfer, and transferor rendered insolvent shortly after transfer); *Sourcing Mgmt., Inc. v.*

*Simclar, Inc.*, No. 3:14-CV-2552-L, 2015 WL 4587974, at *15 (N.D. Tex. July 30, 2015)

(upholding actual fraudulent transfer claim under Texas law where transferor remained in control

of assets, transfer was concealed, transferor was sued pre-transfer, transfer was substantially all of

debtor's assets, and transfer made before substantial debt incurred).

42.     These doctrines, or any of them, are merits issues that will be resolved at a later

stage, either through settlement (in connection with Court-ordered ADR or otherwise) or in

subsequent litigation.

## II.      **THE COURT HAS AUTHORITY TO DIRECT THE SUCCESSORS TO PARTICIPATE IN ADR**

43.     The Court has post-confirmation jurisdiction to consider this Motion and enter the

proposed relief in the order granting the Motion annexed as Exhibit B because (i) this matter has a

---

[12]      These eleven badges of fraud are expressly incorporated into the UFTA.

close nexus to the Plan, and (ii) the Plan explicitly permits and contemplates the Court exercising post-confirmation jurisdiction over this matter. *See Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 F. App'x 134, 137 (2d Cir. 2011). Significantly, the Court already determined that it had post-confirmation jurisdiction to consider the ADR Motions and enter the ADR Order, and to grant the 2015 Motion in Aid. *See* ADR Order § A; 2015 Order in Aid of ADR [Dkt. No. 51575]. By this Motion, LBHI merely seeks another order in aid of the ADR Order, clarifying its application to the Successors in relation to the settled RMBS Claims.

44.    *First*, the Motion and the relief have a "close nexus" to the bankruptcy case. DPH Holdings Corp., 448 F. App'x at 137; *see also In re Metro-Goldwyn-Mayer*, 459 B.R. 555, 556 (Bankr. S.D.N.Y. 2010) ("'close nexus' test is met when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan") (citation and internal quotation marks omitted). Pursuant to Section 14.1(i) of the Plan, the Court retained jurisdiction to "issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce or to restrain interference by any person with the consummation, implementation or enforcement of . . . any [] order of the Bankruptcy Court." Plan § 14.1(i). Bankruptcy courts also have inherent authority to interpret and enforce their own prior orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (upholding the bankruptcy court's jurisdiction to enter a "clarifying order" interpreting the scope of an injunction contained in a prior order confirming a chapter 11 plan); *In re Petrie Retail, Inc*., 304 F.3d 223, 230 (2d Cir. 2002) ("bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders").

45.    Additionally, Section 13.8 of the Plan specifically provides that LBHI retains Litigation Claims, and the Plan's definition of Litigation Claims as "liquidated or unliquidated,

19

fixed or contingent, matured or unmatured" causes of action "based in whole or in part upon any
act or omission or other event occurring prior to the Effective Date" plainly encompasses the
Indemnification Claims to be mediated against the Successors. This Court also previously ruled
that the Indemnification ADR Procedures contemplated by the ADR Motion and ADR Order "has
a close nexus to the chapter 11 cases and the [Plan]." ADR Order § A.

46.    *Second*, the Bankruptcy Court was expressly granted the jurisdiction to adjudicate
the Indemnification Claims (as well as enter orders in connection with such adjudications, as is the
case here). "Where the plan contains broad jurisdictional provisions, the 'Bankruptcy Court's post-
confirmation jurisdiction is as broad as the statutory grant – that is, it extends to all proceedings
'related to' the bankruptcy.'" *See Eastern Airlines, Inc. v. Host Marriot Corp. (In re Ionosphere
Clubs, Inc.)*, No. 89 B 10448, 1999 Bankr. LEXIS 1875, at *21 (Bankr. S.D.N.Y. May 12, 1999)
(quoting *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638-39 (S.D.N.Y. 1997)).

47.    The Confirmation Order provides that the Bankruptcy Court shall, upon the
"Effective Date," retain "exclusive jurisdiction over all matters arising under or related to the
Chapter 11 Cases, including, without limitation, the matters set forth in Article XIV of the Plan."
*See* Confirmation Order ¶ 77. Article XIV of the Plan contains a list of matters over which the
Bankruptcy Court retained exclusive jurisdiction. *See* Plan §14.1 (b), (i), (k). The Plan and
Confirmation Order expressly preserve Indemnification Claims for the benefit of creditors and vest
the Court with jurisdiction over the "consummation, implementation or enforcement" of any Court
order, such as the ADR Order. As a result, both the Plan and Confirmation Order support the
Court's exercise of jurisdiction to consider the Motion and enter the proposed order granting the
relief sought.

48.     In addition, section 105(a) of the Bankruptcy Code grants the Bankruptcy Court broad authority and discretion to take such actions and implement such procedures as are necessary to oversee court-approved ADR. 11 U.S.C. § 105(a); *see also In re Sosa*, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) ("it is within a district court's inherent powers to order even non-consensual mediation in those cases in which the step seems reasonably likely to serve the interests of justice") (citations omitted); *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (recognizing "court's power" to enter order related to pending arbitration which "flows from its inherent power to control its docket"); *Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 847 (Bankr. M.D. Fla. 1998) ("bankruptcy court has the authority and power to promulgate rules associated with court-annexed mediation and, where necessary, to require the parties to participate in same"). Accordingly, the Court has the authority to interpret and enforce the ADR Order as it relates to the Successors.

49.     The Court may also exercise personal jurisdiction over the Successors.  Having given notice and an opportunity to be heard to known Successors, LBHI seeks to expressly mandate the participation of the Successors within the scope of the ADR Order.  This also constitutes a contested matter under Bankruptcy Rule 9014(a).  Under Rule 9014(b), service in a contested matter is made "in the manner provided for service of a summons and complaint by Rule 7004." The Court has jurisdiction over a party under Rule 7004 so long as such party has minimum contacts with the United States, as all the Successors do.  *See Warfield v. KR Entm't, Inc.* (*In re Fed. Fountain, Inc.)*, 165 F.3d 600, 601-02 (8th Cir. 1999); *J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 934 (S.D.N.Y. 1991) ("In a Chapter 11 [proceeding, the court] has nationwide personal jurisdiction over the defendants."); *In re Ismael Longoria*, 400 B.R. 543, 551-52 (W.D. Tex. 2009) (where party to contested matter has been

properly served under Bankruptcy Rules, court can exercise nationwide personal jurisdiction). Further, the Court has already considered and approved the same procedure with respect to the original ADR Motion.

## III.    SUCCESSORS SHOULD BE MADE TO COMPLY WITH THE ADR ORDER

50.    The ADR Order mandates participation in ADR notwithstanding any defenses that the parties may purportedly hold, including that they are not liable for the Sellers' obligations under applicable state law.  *See* ADR Order § 6 (providing that upon receipt of ADR Package, participation in ADR is "mandatory") [Dkt. Nos. 59387, 59085].  Indeed, many of the original Sellers' objections to the ADR Motions were based upon alleged individual defenses, which the Sellers argued protected them from being forced to participate.  The Court rejected those arguments.

51.    Rather, the ADR Order expressly provides that participation in mediation would not prejudice any defense.  *See* ADR Order § 15 (stating that participation in ADR will cause no defenses to be waived) [Dkt. Nos. 59387, 59085].  The Successors' generalized defense based on successor liability law, should similarly not preclude the Successors from participating in ADR.

52.    Requiring the Successors to participate in the ADR process does not run afoul of due process.  Due process concerns only arise when there is the threat of a binding order or judgment on a party.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (due process concerns arise in context of "power to render a ***valid judgment***" over out of state defendants) (emphasis added); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a ***judgment to be binding on a litigant*** who was not a party or a privy and therefore has never had an opportunity to be heard.") (emphasis added); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1176-77 (5th Cir. 1979) (held mandatory mediation processes "do not violate the federal right to due process of law of law").  Whereas here, mediation is by its very

nature non-binding, and the ADR Order explicitly states that the Successors cannot be forced to accept any specific settlement or compromise. *See* ADR Order § 6(b) ("[n]o party is required to settle or compromise any dispute or enter into a particular settlement or compromise") [Dkt. Nos. 59387, 59085].

53.     The alternative to mediation would be multiple individual lawsuits or motions for sanctions under Paragraph 12 of the ADR Order, which would be antithetical to the favored policy of utilizing the cost-effective and expedited alternative dispute resolution process. *See Fisher v. SmithKline Beecham Corp.*, 2009 WL 899433, at *2 (W.D.N.Y. Mar. 26, 2009); *Grey v. F.D.I.C.*, 2002 WL 959564, at *5 (S.D.N.Y. May 8, 2002). This Court previously determined that "[s]ubstantial value may be recovered for the benefit of creditors and judicial efficiency can be promoted if expedient resolution of disputes and recoveries for such claims can be achieved without the need for trial of adversary proceedings or other litigation." ADR Order § E [Dkt. Nos. 59387, 59085].

54.     In addition, the ADR Order provides that information and documents exchanged between the parties are to remain confidential. *See, e.g.*, *id*. § 5. To the extent that the Successors are denying liability for the Sellers' debts and obligations, an order from the Court is required to clarify that LBHI's service of the ADR Package or any related document concerning LBHI's Indemnification Claims on the Successors does not violate the ADR Order.

55.     Further, while LBHI's investigation to date has identified at least [●] Successors (*see* Ex. A) and provided them with notice of this Motion, LBHI may identify additional Successors. When such Successors are identified, LBHI may make additional applications for the relief set forth herein.

## NOTICE

56.    No trustee has been appointed in these chapter 11 cases.  LBHI, in accordance with

the procedures set forth in the amended order entered on June 17, 2010 governing case management

and administrative procedures for these cases [Dkt. No. 9635], has served notice of this Motion on

(i) all known Successors; (ii) all parties who have requested notice in these chapter 11 cases; and

(iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick

Street, Suite 1006, New York, New York 10014 (Attn:  William K. Harrington, Esq. and Andrea

B. Schwartz, Esq.).  LBHI submits that no other or further notice need be provided.

57.    The ADR Motion was granted with the Court's entry of the ADR Order, as

amended, and the 2015 Motion in Aid was granted with the Court's Entry of the 2015 Order in Aid

of ADR.  But, no previous request for the relief sought herein has been made by LBHI to this or

any other court.

24

## **CONCLUSION**

WHEREFORE, LBHI respectfully requests that the Court grant the relief requested herein

by entering the proposed order annexed hereto as Exhibit B, and grant such other and further relief

as it deems just and proper.

Dated:  New York, New York
      May 12, 2020

/s/ Joshua M. Slocum
William A. Maher
Brad J. Axelrod
James N. Lawlor
Adam M. Bialek
Brant Duncan Kuehn
Joshua M. Slocum
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:(212) 382-3300
Facsimile: (212) 382-0050

*Counsel for Lehman Brothers Holdings Inc.*

# Exhibit A

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| **1.** | 1-800-East-West Mortgage Company ("1-800") | Commerce Bank a Division of Berkshire Bank ("Commerce") | Information obtained by LBHI indicates the following: Commerce obtained 1-800 as a wholly owned subsidiary and incorporated in 2000. Articles of Voluntary Dissolution filed on November 3, 2015 with the Secretary of State lists the Principal Office address as: 386 Main Street Worcester, MA 01608, which is the current location of Commerce.  In May of 2018, Berkshire Hills Bancorp purchased Commerce Bancshares Corp., the parent company of Commerce Bank. |
| **2.** | 1st Maryland Mortgage Corporation ("Maryland") | 1st Reliant Home Loans, Inc. ("1st Reliant") | Information obtained by LBHI indicates the following: According to the Maryland Secretary of State, the original entity, Maryland, changed its name to 1st Reliant Home Loans, Inc in August of 2015 and has operated under that name since. |
| **3.** | Accenture Mortgage Corp. ("Accenture") | Liberty Mortgage Lending ("Liberty") | Information obtained by LBHI indicates the following: According to the Florida Secretary of State, the original entity, Accenture, changed its name to Liberty Mortgage Lending in January of 2011 and has operated under that name since. The President of Accenture is now listed as the CFO and Co-Founder of Liberty. |
| **4.** | Access Mortgage Corporation ("Access") | Whitney Bank ("Whitney") | Information obtained by LBHI indicates the following: The original entity, Access, is listed as active by the Florida Secretary of State. Access was a subsidiary of Parish National Bank ("Parish"), which guaranteed Access' Obligations. Parish merged into another bank, which subsequent to an additional merger became Whitney. Whitney and Access share a mailing address, and several of Access' officers are officers of Whitney. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| 5. | All California Mortgage, Inc. ("ACM") | All California Mortgage, a division of American Pacific Mortgage Corporation ("American Pacific") | Information obtained by LBHI indicates the following: California Secretary of State shows that ACM was first registered in 1992 and was dissolved in 2015. Its website is still active and reflects that it was incorporated in 1992 and is now a division of American Pacific. The company timeline shows that ACM opened its doors in 1992, partnered with American Pacific in 2012 and does not note anything occurring in 2015. |
| 6. | All In One Mortgage Lenders LLC ("All In One") | Geneva Financial, LLC. d/b/a All In One Mortgage Lenders ("Geneva") | Information obtained by LBHI indicates the following: Geneva continues to use All In One's domain, phone number, and operates out of the same address as All In One. |
| 7. | American Bank ("American") | Congressional Bank ("Congressional") | Information obtained by LBHI indicates the following: In or around December 2015, American merged with Congressional Bank. |
| 8. | American Homestead Mortgage LLC ("AHM") | Wintrust Mortgage Corporation ("Wintrust") | Information obtained by LBHI indicates the following: On or about February 15, 2017, Wintrust completed a purchase of AHM's mortgage operations and assumed certain of AHM's liabilities. |
| 9. | Amerifirst Home Mortgage Corp ("AHMC") | AIM Mortgage LLC ("AIM") | Information obtained by LBHI indicates the following: Per the Nationwide Mortgage Licensing System ("NMLS") and Florida Secretary of State, the owner of AHMC continues to operate AIM out of the same address and phone number as AHMC. The owner also operates Amerifirst Realty from the same location and the company's website refers clients to AIM for financing. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| 10. | Bank of St. Augustine ("Augustine") | CenterState Bank of Florida ("CenterState") | Information obtained by LBHI indicates the following: On or about April 27, 2013, Augustine merged with Harbor Community Bank. Then, on or about August 18, 2017, Harbor Community Bank merged with CenterState. |
| 11. | Centex Capital Corp. ("Centex") | United Guaranteed Mortgage Company ("UGMC") | Information obtained by LBHI indicates the following: Centex's website reflects that its corporate address is the same address used for UGMC. |
| 12. | Central Lending LLC ("Central") | LMH Capital ("LMH") | Information obtained by LBHI indicates the following: On or about November 6, 2012, the owner of Central closed the company and opened LMH, continuing to use the same phone number and registered address. |
| 13. | Cobalt Mortgage, Inc. ("Cobalt") | Caliber Home Loans ("Caliber") | Information obtained by LBHI indicates the following: On or about November 5, 2014, Cobalt was acquired by Caliber. |
| 14. | Community Banks of Colorado ("CBC") | NBH Banks, N.A. d/b/a Community Banks of Colorado ("NBH") Goldwater Bank Mortgage, a division of Goldwater Bank d/b/a Affiliated Financial Group ("Goldwater") | Information obtained by LBHI indicates the following: The original entity, CBC, is listed as delinquent by the Colorado Secretary of State. NBH acquired all or some of CBC's assets, and operates CBC as a division of NBH with mortgage lending operations.  Alternatively, Goldwater may have continued CBC's mortgage operations, and is currently using the address of CBC as the headquarters for its mortgage lending business. Goldwater also uses Affiliated Financial Group as a trade name in Colorado, which CBC used as a d/b/a when signing the Loan Purchase Agreements. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| **15.** | Community Mtg. Network of Florida, Inc. ("Community") | BayBurg Financial, Inc. ("BayBurg") | Information obtained by LBHI indicates the following: The owner of Community closed Community and opened BayBurg, carrying over the same phone number and NMLS license. |
| **16.** | Consumer One Corp. ("Consumer") | Silver Lining Funding ("Silver") | Information obtained by LBHI indicates the following: The owner of Consumer reflects active licenses for both Consumer and Silver on NMLS. The current address on file for Consumer is residential and a web-search shows that the company is permanently closed. Silver is now operating at Consumer's previous address and phone number. |
| **17.** | Delta Lending Group ("Delta") | Finance of America Mortgage, LLC ("FOA") | Information obtained by LBHI indicates the following: Delta's website now reflects that it is a division of FOA. NMLS for the owner of Delta shows that he was with Delta from 1999 to 2010, was then with Pinnacle Capital Mortgage from 2010 to 2015, and is now with FOA since 2017. Delta's website previously identified it as a division of Pinnacle Capital. Delta's website also states that it is an "established mortgage lending company for the last 20 years" and that the "majority of [its] loan officers have been with Delta Lending for over 10 years." |
| **18.** | Equity One, Inc. ("Equity") | Regency Centers Corporation ("Regency") | Information obtained by LBHI indicates the following: On or about March 1, 2017, Equity merged with and into Regency. |
| **19.** | Fidelity & Trust Mortgage, Inc. ("Fidelity") | Eagle Bank ("Eagle") | Information obtained by LBHI indicates the following: On or about August 30, 2008, Fidelity merged into Eagle. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| 20. | First Fidelity Mortgage LLC ("FFM") | Fidelity Home Loans, LLC ("FHL") | Information obtained by LBHI indicates the following: The owner of FFM closed its doors and simultaneously opened FHL. FHL operates out of the same address and phone number as FFM. |
| 21. | First National Bank of the Mid Cities ("FNBMC") | First Bank Texas | Information obtained by LBHI indicates the following: On or about July 1, 2012, four sister banks (First National Bank – Haskell, Mid-Cities (Bedford), Munday and Stamford) were merged into First National Bank of Baird and the name changed to First Bank Texas. |
| 22. | First Ohio Banc & Lending, Inc. ("First Ohio") | Ohio Lending Consultants, LLC. ("Ohio Lending") | Information obtained by LBHI indicates the following: The original entity, First Ohio, is listed as an active corporation, but it appears its operations have been taken over by Ohio Lending. First Ohio's President is the sole member of Ohio Lending, and First Ohio and Ohio Lending share a registered agent. According to a memorandum of opinion from a case in the Northern District of Ohio, First Ohio fired all its employees, who were then immediately rehired by Proficio Mortgage Ventures ("PMV"). First Ohio's President formed Ohio Lending and entered into an Affiliate Manager Agreement with PMV to manage the PMV branch that hired all of First Ohio's former employees. |
| 23. | First Priority Financial, Inc. ("First Priority") | Caliber Home Loans ("Caliber") | Information obtained by LBHI indicates the following: On or about July 1, 2016, First Priority was acquired by Caliber. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| 24. | Fisher Financial Group Incorporated ("Fisher") | NationsChoice Mortgage ("NationsChoice") | Information obtained by LBHI indicates the following: The Nationwide Mortgage Licensing System license for Fisher remains active and lists NationsChoice as another trade name. NationsChoice's application to Arizona's Secretary of State reflects Fisher as the applicant. Fisher's website now directs to NationsChoice. |
| 25. | Great Eastern Mortgage and Investment Inc. ("Great Eastern") | The Mortgage Firm | Information obtained by LBHI indicates the following: Great Eastern's principal, David Baker, has his license with The Mortgage Firm.  The records of the Florida Secretary of State show that Great Eastern's principal place of business is the same office location as a Jupiter, FL branch of The Mortgage Firm, at which Mr. Baker is the primary contact.  The Mortgage Firm's website for the Jupiter branch is labeled as "Great Eastern powered by The Mortgage Firm." |
| 26. | Guardian First Funding Group, LLC ("Guardian") | Urban Financial of America, LLC ("Urban") | Information obtained by LBHI indicates the following: On or about October 20, 2010, Urban Financial Group acquired Guardian. On or about November 26, 2013, Urban Financial Group changed its name to Urban Financial of America, LLC. |
| 27. | King Mortgage Corp. ("King") | LoanDepot | Information obtained by LBHI indicates the following: The phone number for King now rings to LoanDepot. When asked, the receptionist advised that "Loan Depot, Mortgage Master, and King Mortgage Corporation are all one and the same." A web search indicates that several employees of King became employees of LoanDepot (formerly Mortgage Master) on or around January 2009. |
| 28. | KleinBank | Old National Bancorp ("ONB") | Information obtained by LBHI indicates the following: On or about June 21, 2018, KleinBank was acquired by ONB through a merger agreement. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| 29. | Lendia, Inc. ("Lendia") | Homeward Residential, Inc. ("Homeward") | Homeward has asserted the following: In or about June 2008, Lendia was purchased by Virgin Money. The following year, Virgin Money sold Lendia back to Greg O'Connor, Lendia's founder, who then operated the company under ClearPoint Funding, Inc. ("ClearPoint"). ClearPoint was then acquired by Gleacher & Co. in 2011.<br><br>According to the Asset Purchase Agreement produced by Homeward, Homeward purchased substantially all of ClearPoint, including the ClearPoint name and goodwill, in 2013. |
| 30. | Lund Mortgage Inc. ("LMI") | Lund Mortgage Team ("LMT") | Information obtained by LBHI indicates the following: LMI was owned by Stanley Lund and was dissolved in 2010. LMT was formed in 2009 by Lisa Lund and continues to use LMI's phone number. |
| 31. | Merrimack Mortgage Company, Inc. ("Merrimack") | HarborOne Mortgage ("HarborOne") | Information obtained by LBHI indicates the following: In or about July 2015, HarborOne Bank acquired Merrimack and Merrimack continued to operate as Merrimack Mortgage, a wholly owned subsidiary of HarborOne. Then, on or about April 4, 2018, HarborOne combined its internal mortgage business with Merrimack and created HarborOne Mortgage, a wholly owned subsidiary of HarborOne Bank which would be run by the existing senior leadership team at Merrimack. |
| 32. | Metropolitan Mortgage Group Inc. ("Metropolitan") | Absolute Mortgage, a division of Finance of America Mortgage LLC ("Absolute") | Information obtained by LBHI indicates the following: On or about May 30, 2014, Metropolitan joined Absolute in a partnership. Metropolitan's office became a branch office of Absolute. |
| 33. | Mid-State Bank & Trust ("Mid-State") | RaboBank National Association ("RaboBank") | Information obtained by LBHI indicates the following: On or about April 30, 2007, Mid-State merged into RaboBank and RaboBank was the surviving entity. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| **34.** | Mortgage Brokers Services, Inc. ("MBS") | Mortgage Master Service Corporation ("MMSC") | Information obtained by LBHI indicates the following: MBS acquired Kiel Mortgage and continued to operate as Mortgage Brokers Services d/b/a Kiel Mortgage. Kiel Mortgage was then acquired by MMSC and continues to do business as Mortgage Master Service Corporation d/b/a Kiel Mortgage. |
| **35.** | Mortgage Direct, Inc. ("Direct") | Synergy One Lending ("Synergy One") | Information obtained by LBHI indicates the following: The original entity, Direct, is now administratively dissolved. The former President and CEO of Direct stated that it was acquired by Bridgeview Bank Mortgage ("Bridgeview"). Bridgeview appears to have continued Direct's mortgage operations. The President and CEO of Direct became the regional Vice President of Bridgeview, and one or more key employees of Direct continued in similar roles at Bridgeview. Bridgeview was then sold to Synergy One in 2018, accompanied by the large majority of Bridgeview's employees and offices. |
| **36.** | Mortgage Master, Inc. | LoanDepot | Information obtained by LBHI indicates the following: LoanDepot acquired Mortgage Master, Inc. in late 2014 or early 2015. Today, the company is operated as Mortgage Master, a division of LoanDepot. |
| **37.** | Mortgage Resource Group, Inc. ("MRG") | Polaris Home Funding Corp. ("Polaris") | Information obtained by LBHI indicates the following: Polaris operates from MRG's former office and with the same phone number. The branch manager of that office was one of the principals of MRG. Polaris registered MRG as a d/b/a with the Ohio Secretary of State in the same month, November 2011, that the principal's NMLS license became affiliated with Polaris. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|-----|---------------------|---------------------|---------------------------------------------------|
| 38. | Mt. Olive Financial Inc. ("Mt. Olive") | MLB Residential Lending LLC ("MLB") | Information obtained by LBHI indicates the following: MLB now operates out of the location that Mt. Olive utilized and also uses its phone number. A web search shows several Mt. Olive employees became MLB employees in 2017. |
| 39. | Myers Park Mortgage Inc. ("Myers") | Pinnacle Financial Partners ("Pinnacle") | Information obtained by LBHI indicates the following: CertusBank, N.A. acquired Myers on or about August 3, 2012. CertusBank, N.A. was then acquired by BNC Bancorp on or about June 1, 2015. Then, on or about June 16, 2017, Pinnacle merged with BNC Bancorp. |
| 40. | NDNJ, Inc. ("NDNJ") | Excel Funding Real Estate Services Inc. ("Excel") | Information obtained by LBHI indicates the following: Excel now operates out of the same location and phone number as NDNJ. Furthermore, the website for Excel says it was established in 1990, which aligns with NDNJ. Excel was first registered with the California Secretary of State in 2009. |
| 41. | Palmetto South Mortgage Corp. ("Palmetto") | First Community Bank ("FCB") | Information obtained by LBHI indicates the following: FCB acquired Palmetto in August of 2011 and Palmetto continued to operate as a separate entity until 2014 when the two companies were merged into one. FCB now operates using Palmetto's phone number and location. |
| 42. | Perl Mortgage, Inc. ("Perl") | Crosscountry Mortgage ("Crosscountry") | Information obtained by LBHI indicates the following: On or about March 2019, Perl was acquired by Crosscountry. Perl's website now directs to Crosscountry's. Perl's LinkedIn webpage now describes the company as "The Perl Team at CrossCountry Mortgage, Inc." |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| **43.** | PMC Bancorp | PMAC Lending Services, Inc. ("PMAC Lending") | Information obtained by LBHI indicates the following: PMC Bancorp's principal, William Park, purchased PMAC Lending through an intermediary, Alamo.  Mr. Park then transferred PMC Bancorp's business and operations to PMAC Lending through a number of non-arms-length transactions. |
| **44.** | Premier Residential & Comm. Funding Corp. ("PRCFC") | Premier Choice Funding ("PCF") | Information obtained by LBHI indicates the following: The owner of PRCFC closed the company in late 2013 and opened PCF operating out of the same location and using the same phone number. |
| **45.** | Priority Mortgage Corp. ("Priority") | Senior Lending Corporation ("SLC") | Information obtained by LBHI indicates the following: The owner of Priority closed the company in 2014 and opened SLC, operating out of the same location and using the same phone number. |
| **46.** | Security Pacific Home Loans, Inc. ("SPHL") | Skyline Home Loans d/b/a New Leaf Lending, a division of Skyline Financial Corporation ("Skyline") | Information obtained by LBHI indicates the following: The original entity, SPHL, had its corporate status suspended. Skyline appears to have continued SPHL's operations. Skyline does business as SPHL under the trade name Security Pacific Home Loans. SPHL's website redirects to "New Leaf Lending, a division of Skyline Financial Corp." Former SPHL founder and President became an officer of Skyline. |
| **47.** | Southern Fidelity Mortgage, LLC ("Southern Fidelity") | Mortgage Management Consultants, Inc. ("MMCI") | Information obtained by LBHI indicates the following: Southern Fidelity defaulted on a settlement agreement with LBHI.  Then, shortly after notice of new claims from LBHI, its principal, Rowe Nelson, simultaneously dissolved the company and moved at least 11 Southern Fidelity loan officers to MMCI. Prior to this, MMCI did not have a branch in Nevada, and the 11 former Southern Fidelity loan officers comprised nearly all of the production staff for the new branch. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|---|---|---|---|
| **48.** | South Wind Tours & Excursions, Inc. ("SWTE") | South Wind Financial, Inc. ("SWF") | Information obtained by LBHI indicates the following: There is no record of SWTE with the Nevada Secretary of State, but SWF was incorporated in 2000 at the same address as SWTE. Nevada's Secretary of State shows that there have been amendments to SWFI's records, possibly a name change. The NMLS record is currently in the name of SWF, and SWTE is listed as a prior legal name. |
| **49.** | Southern Mortgage Brokers, Inc. ("SMB") | Southern Mortgage Corp ("Southern") | Information obtained by LBHI indicates the following: Owner of SMB dissolved SMB and at or near the same time opened Southern at the same address as SMB. |
| **50.** | Texas Country Bank ("Texas Country") | Anthem Bank and Trust ("Anthem Bank") | Information obtained by LBHI indicates the following: On or about January 1, 2011, Texas Country was acquired by First Financial Bank and Trust. First Financial Bank and Trust is now Anthem Bank and Trust. Texas Country's address and phone now direct to Anthem Bank. |
| **51.** | The American Eagle of Ohio, Inc. ("AE") | LendUS | Information obtained by LBHI indicates the following: According to LendUS' website, RPM Mortgage and American Eagle Mortgage have come together to form a national collective, known as LendUS. AE's website now states that it is a division of LendUS and AE's headquarters is now a LendUS office and AE's phone number now directs to LendUS. NMLS for LendUS reflects American Eagle as another trade name. |
| **52.** | The Lending Partners, LTD. ("TLP") | Prosperity Home Mortgage, LLC ("Prosperity") | Information obtained by LBHI indicates the following: On or about June 2019, TLP "joined forces" with Prosperity and their information was then transferred to the Prosperity name. Prosperity's website states that the TLP team joined Prosperity in order to expand Prosperity's footprint into Texas. |

**EXHIBIT A – LIST OF POTENTIAL SUCCESSORS**

| No. | Counterparty/Seller | Potential Successor | Links Between Counterparty and Potential Successor |
|-----|---------------------|---------------------|---------------------------------------------------|
| 53. | Virginia Commerce Bank ("Virginia") | United Bankshares ("United") | Information obtained by LBHI indicates the following: On or about February 2, 2013, Virginia was merged into United. The phone number previously tied to Virginia is now used by United. |
| 54. | West Horizon Financial Inc. ("West Horizon") | Washington First Mortgage Loan Corp. ("WFMLC") | Information obtained by LBHI indicates the following: West Horizon was dissolved through the Secretary of State on or about December 17, 2012. West Horizon employees were found to have misrepresented borrower information on loan applications, and those employees' lending licenses were revoked on or about August 22, 2011. In addition to those findings, West Horizon was fined $50,000 by the state of Washington. The principal for West Horizon then registered WFMLC on or about October 19, 2011. WFMLC now utilizes West Horizon's phone number |
| 55. | West Valley Enterprises Inc. ("West Valley") | Bay Equity LLC ("Bay Equity") | Information obtained by LBHI indicates the following: West Valley was dissolved on or about November 3, 2014 and then was reinstated on or about November 2, 2017. The principal is licensed with NMLS at Bay Equity. Bay Equity's address is the same as the registered address for West Valley and the principal's e-mail address with the Washington Secretary of State uses the Bay Equity domain. |

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                          :       **Chapter 11**

**In re:**                                  :

                                          :       **Case No. 08-13555 (SCC)**

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :

                                          :

                         **Debtors.**         :
———————————————————————— x

### ORDER IN AID OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS

Upon the motion, dated May 12,  2020 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator, for an order in aid of the *Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers*, dated July 18, 2014, as amended on November 14, 2018 [Dkt. No. 59085] and January 14, 2019 [Dkt. No. 59387], as applicable (as so amended, the "ADR Order"), as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the Court's amended Order entered June 17, 2010, governing case management and administrative procedures [Dkt. No. 9635]; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBHI, its creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

ORDERED that all Successors are bound by the terms of the ADR Order and are thereby required to, among other things, participate in the mediation of LBHI's Indemnification Claims in good faith; and it is further

ORDERED that the ADR Order shall remain in full force and effect notwithstanding the filing of the Motion and the entry of this order; and it is further

ORDERED that service of the ADR Package on the Successors and the exchange of documents and other information concerning the Indemnification Claim at issue between the respective Successor and LBHI shall not constitute a violation of the ADR Order, including but not limited to, any provision governing confidentiality; and it is further

ORDERED that any purchaser of assets from any Seller whose purchase has been approved by a court of competent jurisdiction, and which immunizes the asset purchaser from successor liability to the Seller's creditors either by its terms or under applicable law will not be subject to the terms of this order or the ADR Order; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the interpretation and implementation of this order.

Dated: _____, 2020
      New York, New York

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

2