Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS, INC.,

8

9          Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  June 3, 2020

17                  10:01 AM

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

1    HEARING re Doc #60448 Motion to Reserve for Motion to

2    Reclassify, filed by Joseph Waske.

3

4    HEARING re Doc #60448 Motion for Summary Judgment filed by

5    Joseph Waske.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    WEIL GOTSHAL & MANGES LLP

4         Attorneys for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:  GARRETT FAIL (TELEPHONICALLY)

9

10   ALSO APPEARING TELEPHONICALLY:

11

12   REX WU, Pro Se (TELEPHONICALLY)

13   JOSEPH WASKE, Pro Se (TELEPHONICALLY)

14   ANA LUCIA HURTADO (TELEPHONICALLY)

15   CHRISTOPHER STAUBLE (TELEPHONICALLY)

16   ELIZABETH HARRISON (TELEPHONICALLY)

17   GLENN BRAZE (TELEPHONICALLY)

18   CHRISTOPHER WHELAN (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Hello, good morning.  This is Judge

3    Chapman.  We're here this morning for an agenda of matters

4    in the Lehman Brothers Holdings, Inc. case.  This hearing is

5    being conducted entirely telephonically via the Court

6    Solutions application.  It is being recorded.  A transcript

7    of it will be created and made available to parties who

8    request it.  In order to create an accurate transcript, I'm

9    requesting that anyone who speaks identify himself or

10   herself, and the party on whose behalf they are appearing,

11   and that you do so every time that you speak so that the

12   record can be accurate.  I also would like to point out that

13   no private recordings of this hearing are permissible.  I

14   would also ask that you keep your phones on mute unless you

15   are speaking.

16              I have an agenda that I've received as a matter

17   scheduled for hearing today.  I also have a roster of those

18   who have dialed in to participate today.  Mr. Fail, shall I

19   start with you?

20              MR. FAIL:  Good morning, Your Honor, Garrett Fail,

21   Weil, Gotshal & Manges for Lehman Brothers Holdings, Inc. as

22   the Plan Administrator.  Thank you for the Court's time this

23   morning.  I'm on the line.

24              THE COURT:  Would you like to get us started?

25              MR. FAIL:  I can, thank you, Your Honor.  There

Page 5

1     are a number of items on the agenda, all related.  The first

2     filed was a Motion to Reclassify filed by Mr. Joseph Waske.

3     It's at ECF 60337.  The Debtor, or the Plan Administrator

4     filed an objection to this motion at ECF 60378.  The next

5     item on the agenda is a Motion for Reserve for the Motion to

6     Reclassify, filed by Mr. Waske at 60448.  The Plan

7     Administrator objected to this motion at ECF 60482.  Mr.

8     Waske also filed a Motion for Summary Judgment related to

9     the Motion for Reserve at 60484, and the plan administrator

10    objected to that motion at docket number 60641.

11            Your Honor, I'll be brief in opening because the

12    movant bears the burden.  The Plan Administrator's positions

13    are set forth in the objection.  And as set forth in the

14    objections, we believe each of the motions should be denied.

15    It fails to state a basis for relief.  Your Honor has

16    addressed very similar questions before and found, in the

17    way that the Plan Administrator asks that you find today, to

18    deny the motions, including, most recently by motions filed

19    by Mr. Rex Wu.  I'm happy to answer any questions the Court

20    may have now and if Your Honor permits, I'll reserve time to

21    rebut or respond to anything that Mr. Waske has to say

22    today.

23            THE COURT:  All right, that makes sense, Mr. Fail.

24    Thank you very much.  Mr. Waske, are you on the line, sir?

25            MR. WASKE:  Yes.  Good morning, Your Honor.  This

Page 6

1    is Joseph Waske.  I'm on the line.  I appreciate the

2    opportunity to be heard.

3             THE COURT:  Okay, go right ahead.

4             MR. WASKE:  Yes, good morning, Your Honor.  I

5    wanted to start off by addressing the reason I'm here today.

6    All of my motions, essentially, center around the prospectus

7    contract language under the status of the guarantee, and

8    under the prospectus' Important Covenant section.  Within

9    each of those specific sections, there are parent and senior

10   affiliate equity rights, and additionally, payment stoppage

11   rights across all subsidiaries that I argue -- I'm asking

12   for the relief that placed the Capital Trusts Three, Four

13   Five and Six, in parity with the parent, the affiliate and

14   the subsidiary preference shares or equity shares.  And,

15   having said that, I guess I'll give up some time and

16   possibly let the counsel for Lehman Brothers respond to

17   that.

18             As far as the earlier objections, they do not

19   address the affiliate parity guarantee, and there has been

20   no response I have seen as far as the important covenant

21   section granted within the prospectus, giving payment

22   stoppage rights across all subsidiaries.

23             THE COURT:  Mr. Waske, I have a question for you.

24   When did you acquire your securities?

25             MR. WASKE:  My first acquisition was prior to the

Page 7

1    Neuberger Berman spinoff, would have been in 2011,

2    approximately.

3            THE COURT:  No, I mean the -- what you seek to

4    have reclassified now.

5            MR. WASKE:  That was my first acquisition and I've

6    had subsequent purchases since then, Your Honor.

7            THE COURT:  Thank you.

8            MR. WASKE:  Thank you.

9            THE COURT:  Mr. Fail?

10           MR. FAIL:  Thank you, Your Honor.  For the record,

11   again, Garrett Fail, Weil Gotshal.

12           THE COURT:  Mr. Fail, having called on you, let me

13   just make the overarching observation, Mr. Waske, you of

14   course have entirely ignored the fact that this is 2020, and

15   that there was an entire 12 years of a bankruptcy proceeding

16   before this, which is and has been conducted according to

17   the bankruptcy code, the bankruptcy rules and a series of

18   court orders.  And what you have done, is arrived at this

19   late date with a theory that you suggest that you first

20   became aware of in the context of a ruling this Court made

21   in 2019, and that, therefore, you now get to assert these

22   rights and make these requests.  You also ignore the fact

23   that Mr. Wu made a similar series of arguments which were

24   rejected by the Court.  There are also, apparently, a number

25   of others who have filed joinders to the relief that you're

Page 8

1    requesting.  There's a very important -- there are competing

2    concepts in the law that I'd like to remind you about.

3    There's the concept of due process, very important; very

4    important for folks to be able to be heard by a Court, to

5    have their day in Court, and today's day in Court, oddly

6    enough, is telephonically, but we go on.  But there's also

7    the concept of finality.  It is impossible for arguments to

8    continue to be permitted to be made over and over and over

9    again, and to have expense and time be incurred addressing

10   the same arguments over and over again.  So, we're going to

11   dispose of these arguments today, hopefully once and for

12   all.  But I'd like to point out to you that in moving

13   directly to address what you view as the merits of your

14   claim, which are incorrect on the merits, you have skipped

15   over the many procedural impediments to your assertion of

16   these arguments at this very, very late date.  Mr. Fail, do

17   you want to take it from here in terms of what the estate's

18   responses are?

19           MR. FAIL:  Thank you, Your Honor, I will.  There

20   were two points raise:  one, breaches of covenants in either

21   the prospectus or in the guarantee.  Assuming that there is

22   one and was one, it would give rise to a claim under the

23   guarantee.  But that guarantee was not a guarantee of

24   payment or return of the investment.  The guarantee was

25   limited to certain circumstances if the trusts had money and

Page 9

```
 1    didn't pay through the money.  So, that's one thing: it
 2    would not give rise to a claim, but more importantly, the
 3    status of subordination of the guarantee.  The provision
 4    that Mr. Waske cites to and includes quotes of, provides
 5    that the guarantee will rank subordinate and junior to all
 6    other liabilities of Lehman Brothers Holdings.  That's key.
 7            The second sentence would apply, perhaps, in a
 8    bankruptcy.  Or outside of bankruptcy, on parity with other
 9    preferred stock.  But there's no question that it's
10    subordinate to all other claims.  The guarantee will be on
11    parity with guarantees of other things, but there are none.
12    There is nothing.  Mr. Waske's pleadings is filled with
13    words that are real words and concepts that are real
14    concepts that have no applicability here.  The fact that
15    equity was created in the spinoff from the Neuberger Berman
16    investment banking division, has nothing to do with what
17    existed prior to the bankruptcy, and nothing to do with
18    this.  The fact that there's equity with value in the world
19    doesn't matter here.  The question is, if there was a
20    guarantee claim for this, where would it rank?  They're
21    seeing to reclassify guarantee claim that exists from a
22    subordinated status junior to all liabilities of Lehman
23    Brothers Holdings, Inc. as provided for in the guarantee and
24    in the plan, to a higher pari passu with creditors.  There's
25    absolutely no basis whatsoever to do that.
```

1          THE COURT:  All right, thank you.  Mr. Waske, is

2    there anything you'd like to say?

3          MR. WASKE:  Yes, Your Honor.  I'd like to respond

4    to some of the points that counsel for the estate brought

5    up.  Let me back up even a little further than that.  I

6    understand that it's a late date to file these claims.  I

7    honestly, as a holder of these securities, it's not very

8    easy to find the information that other affiliate senior

9    preference shares or subsidiary shares had received

10   distributions, which would haver been a breach of the

11   affiliate rights and a breach of the covenants.

12   Additionally, I did reach out to the Trustee to try and work

13   through some of these issues and was provided kind of a

14   boilerplate, while the Plan Administrator will make that

15   determination and fund us if appropriate.

16          So, I did, I acknowledge that it's a late date.

17   But the fact that it's a long duration does not negate the

18   fact that the rights were written into the prospectus as far

19   as the affiliate parity rights, and the stoppage language on

20   any payments across the 177 subsidiaries that Lehman had.

21   Those rights were granted to the security holders, the

22   capital trust security holders, so long as the remained

23   outstanding.  And those --

24          THE COURT:  Mr. Waske, you do understand that the

25   indentured trustees of the capital trust filed global proofs

Page 11

1    of claim.  You do understand that, right?

2              MR. WASKE:  I do, Your Honor.  I do understand

3    that, but the difference -- the issue is that we are not

4    subordinate to any equity, any preference equity across the

5    parent, an affiliate or any subsidiary.  I guess I'll close

6    -- can I say one more thing, Your Honor?

7              THE COURT:  Sure.  Of course.

8              MR. WASKE:  Those rights were written in there, in

9    the prospectus contract.  They were provided to the security

10   holder so long as they remain outstanding.  The rights are

11   there.  I understand it's the Plan Administrator now.  But

12   the Plan Administrator is bound by those rights, even though

13   that -- the fact that those -- the breach of those covenants

14   and those rights, have not been honored, doesn't -- for a

15   long duration, that long duration does not make it right.

16             THE COURT:  I will say to you again that Lehman

17   Brothers filed in 2008.  It was, perhaps the most publicly

18   known bankruptcy filing of all time.  One needed to be in a

19   cave to not know about this filing.  The bar date was in

20   2009.  This is 2020.  It appears that folks have taken pages

21   from various prospectuses and cobbled together these

22   arguments and have determined to continue to create

23   something where there is nothing.  And it has caused the

24   estate tremendous expense.  I would have thought that after

25   the disposition of Mr. Wu's claim, this wouldn't have

Page 12

1   happened again, but it has.  So, I'm prepared to give you a

2   decision on all of your claims and all of your motions and

3   all of your arguments, and the transcript of this decision

4   will be incorporated into a ruling.  We've had these

5   documents for some time and I've had a chance to review

6   them, and I've also seen the, what I would describe as

7   cookie cutter joinder letters filed by various other

8   persons.

9           So, I'm going to ask now if anybody else who has

10  registered for this hearing, wishes to be heard.  Mr. Wu, do

11  you wish to be heard?

12          MR. WU:  Yes, I do, Your Honor.

13          THE COURT:  Go ahead.

14          MR. WU:  Is today's hearing about the motions

15  reclassified?  I was under the impression it was only for

16  the Motion for Reserve and the Motion for Summary Judgment.

17          THE COURT:  Let me be perfectly clear.  There's

18  been a lot of back and forth with my chambers about what's

19  on for hearing.  You should all understand that even though

20  Mr. Waske did not ask for hearing on that motion, I am going

21  to dispose of all three motions.  We are incorporating a

22  ruling on that motion into the hearing today.  They are all

23  related.  They are all seeking, in essence, the same relief.

24  I am under no obligation to hold a hearing on any particular

25  motion.  It is within the Court's discretion to dispose of

Page 13

1    any filed motion on the papers without oral argument.

2    That's something that courts do all the time.  So, I will be

3    ruling today on all three motions.  Do you understand?

4            MR. WU:  Yes, Your Honor.  May I comment on the

5    Neuberger Berman transaction?

6            THE COURT:  I have no interest in your comments on

7    the Neuberger Berman transaction, Mr. Wu.

8            MR. WU:  Why is that, Your Honor?

9            THE COURT:  They have nothing whatsoever to do

10   with the matters that are before the Court today.

11           MR. WU:  Yes, it does, Your Honor.  It does.

12           THE COURT:  Did you hear me say that I don't wish

13   to hear your comments on the Neuberger Berman transaction?

14           MR. WU:  Yes, Your Honor.

15           THE COURT:  Okay.  And you have, other than being

16   an interested party, you're not a co-movant with Mr. Waske,

17   are you, Mr. Wu?

18           MR. WU:  I filed a joinder, Your Honor.

19           THE COURT:  You filed a joinder, but you're not a

20   co-movant, correct?

21           MR. WU:  Yes, Your Honor.

22           THE COURT:  And you already had your motions ruled

23   on by this Court.  Isn't that right?

24           MR. WU:  Yes, Your Honor.  I chose to file the

25   joinder.

Page 14

1           THE COURT:  Right.  But you have no motion that's

2    on for hearing today, correct?

3           MR. WU:  No, Your Honor.  I filed a joinder.

4           THE COURT:  And you have taken an appeal of this

5    Court's previous ruling on your motions, correct?

6           MR. WU:  The Danny Ianello motion appeals was

7    dismissed by the Appellate Court based on his standing.  It

8    has nothing to do with the ruling.  It did not rule on the

9    ruling, Your Honor.

10          THE COURT:  So, you have nothing further pending

11   before this Court or any other court?

12          MR. WU:  Except for this joinder, no, Your Honor.

13          THE COURT:  All right, thank you.  Anything else

14   from Mr. Fail or anyone else?  Okay, I'm going to read a --

15   yes?

16          MR. FAIL:  I was going to say nothing from our

17   side.  Thank you.

18          THE COURT:  All right.  If you would bear with me,

19   this will take a few moments.  And as I said, at the

20   conclusion of this bench ruling, I'll ask that an order be

21   prepared and circulated that will incorporate the ruling.

22          Before the Court are three motions filed by Mr.

23   Joseph Waske.  One, Motion to Reclassify, which appears at

24   docket number 60337, and two related motions: a Motion for

25   Reserve, docket number 60448, and a Motion for Summary

Page 15

1    Judgment, docket number 60484.

2             Lehman Brothers Holdings Inc., or LBHI, as plan

3    administrator, has timely objected to each of the motions.

4    See docket numbers 63078, 60482 and 60641.  Various

5    individuals have filed letters supporting or joining in Mr.

6    Waske's Motion to Reclassify.  They are Mr. Rex Wu, docket

7    numbers 60348, 60400; Alex Olivo, docket number 60354;

8    Elizabeth Harrison, docket number 60379; Glen Braze, docket

9    number 60381; Jeffrey Wood, docket number 60478; Brian

10   Lindsay, docket number 60479, and Alvin Wilson, docket

11   number 60645.  Mr. Waske has submitted replies to the Plan

12   Administrator's objection.  See docket number 60403, 60542,

13   60642.

14             The reasons that follow, and as previously

15   discussed on the record of this hearing, Mr. Waske's motions

16   must be denied.

17             The crux of Mr. Waske's arguments are as follows:

18   Mr. Waske supports to own shares in LBHI Capital Trust

19   three, four, five and six; the Trusts.  He asserts that the

20   trustee for these trusts has not properly asserted the

21   rights of the trust; namely, by enforcing a certain

22   guarantee against LBHI.  Mr. Waske argues that events that

23   occurred after confirmation of the LBHI plan make the

24   guarantee now, quote, unquote, enforceable.  He seems to

25   believe that the omnibus claims filed by the trustee for

1    each of these trusts, should be reclassified because of this

2    now allegedly enforceable guarantee.  He believes that this

3    reclassification would result in a distribution to holders

4    of shares in these capital trusts.  Mr. Waske also asserts

5    that he relies upon the existence of the guarantee and, in

6    part, upon this Court's ruling on June 19, 2019, when

7    subsequently purchasing his shares in the trust.  The Motion

8    to Reclassify seeks to reclassify the trust's global claims

9    into class four of the plan of reorganization: the Motion to

10   Reclassify at page four.  The Motion for Reserve seeks an

11   order from this Court requiring that the plan administrator

12   reserve approximately $71 million to satisfy the potential

13   claims of Mr. Waske and those parties who have filed

14   joinders to his Motion to Reclassify; the Motion for Reserve

15   at page ten and Exhibit D.  The Motion for Summary Judgment

16   seeks immediate entry of an order granting the Motion for

17   Reserve because, according to Mr. Waske, the Plan

18   Administrator failed to object to the motion within the

19   deadline provided in the Federal Rules of Civil Procedure,

20   see Motion for Summary Judgment, page two.

21          The joinders were filed by individuals who appear

22   to be similarly situated to Mr. Waske.  They largely repeat

23   Mr. Waske's argument.

24          The Plan Administrator objects to Mr. Waske's

25   motions and ask that they be denied with prejudice.

Page 17

1          With respect to the Motion to Reclassify, the Plan

2     Administrator notes correctly that the time for seeking this

3     relief has long been past.  The bar date for filing claims

4     in the Lehman Chapter 11 cases was September 22, 2009,

5     docket number 4271.  Indeed, the indentured trustees of

6     Capital Trust Three, Four, Five and Six, timely filed global

7     proofs of claim on behalf of the trust.  See claim numbers

8     21805, 22122, 22123 and 67753.  These claims were classified

9     in LBHI class 10B under the Lehman plan, docket number 22973

10    at section 4.14.  As described in the relevant prospectuses,

11    the only assets of these trusts was subordinated debt.  This

12    class of claim, like other classes of subordinated debt

13    against LBHI was not expected to receive any recovery under

14    the Lehman Plan and, indeed, it has not.  See disclosure

15    statement, docket number 19629 at page 85.  This Court

16    entered an order confirming the Lehman Plan on December 6,

17    2011, docket number 23023.

18          The Plan Administrator further argues that even if

19    the time to file claims or object to the plan

20    classification, has not long since passed, there is simply

21    no basis for reclassifying the claims of the trust.  The

22    Plan Administrator is correct:  The holders of shares in the

23    capital trust have no right to file proofs of claim.  That

24    right is held by the indentured trustees who properly filed

25    such claims in a timely fashion.  The trusts hold only

Page 18

1    subordinated claims.  The guarantee identified by Mr. Waske

2    is likewise subordinated and is not entitled to any

3    distribution.

4              As I noted during the hearing earlier today, this

5    Court previously denied a similar motion filed by Mr. Rex

6    Wu, one of the individuals who has filed a joinder to the

7    motion here.  While it is clear that Mr. Waske's motions

8    likewise failed on the merits, it is unnecessary for the

9    Court to reiterate what it has already said about those

10   arguments today and in previous rulings.  The time for Mr.

11   Waske to file a proof of claim has long since passed.  The

12   time for Waske to object to the reclassification of claims

13   under the plan have long since passed.  It is time for these

14   arguments to cease being made and for the resources of this

15   estate to not have to be deployed in order to address what

16   this Court considers to be these frivolous arguments.

17             With respect to the timing, Bankruptcy Rule

18   3030(c)(3) requires that the Bankruptcy Court establish a

19   deadline for filing poofs of claim in a chapter 11 case.

20   Claims filed after the bar date shall be disallowed.  A bar

21   date is, quote, critically important to the administration

22   of a chapter 11 case as it is intended to be a mechanism

23   providing the debtor and its creditors with finality.  See

24   Enron Creditors Recovery Corporation, 3070 Bankruptcy 90 at

25   94, Bankruptcy SDNY 2007.  A bar date allows the parties in

Page 19

1    a bankruptcy case to identify the universe of claims and

2    claimants in a reasonably prompt fashion, which is a

3    necessary step of achieving the goals of a successful

4    reorganization.  See First Fidelity Bank NA versus Hooker

5    Investments, In re Hooker, 937 F.2d 833, 840, Second Circuit

6    1991.  The bar date is not merely a procedural gauntlet;

7    It's an integral part of the reorganization process designed

8    to serve the efficient and fair administration of bankruptcy

9    cases.  See, In re Lehman Brothers Holdings, 433, Bankruptcy

10   113, Bankruptcy SDNY 2010, affirmed 445 Bankruptcy 137, SDNY

11   2011.

12          Bankruptcy courts do have discretion to enlarge

13   the time to file claims where the failure to file was the

14   result of excusable neglect.  See Bankruptcy Rule 906(b)(1).

15   This is, at its core, an equitable determination.  Four

16   factors determine are considered when analyzing excusable

17   neglect.  They are: one, the danger of prejudice to the

18   debtor; two, the length of the delay and its potential

19   impact on judicial proceedings; three, the reason for the

20   delay, including whether it was in the reasonable control of

21   the movant, and four, whether the movant acted in good

22   faith.  See Pioneer Investment Services Company versus

23   Brunswick Associates LP, 507 US 380 at 395, 1993.

24          The parties seeking an extension of time bears the

25   burden of proving excusable neglect.  In re Enron

Page 20

1    Corporation. 419, F3d, 115, 121, Second Circuit 2005.

2             In these cases in particular, enforcing the bar

3    date is of extreme importance.  In 2010, ten years ago, in

4    denying several motions to allow late file claims in these

5    cases, then presiding Judge Peck reasoned that allowing the

6    filing of late claims would expose the debtors to the risk

7    of a virtually never-ending claims resolution process.

8    Particularly in the context of these enormously complex

9    cases, the bar date order needs to be uniformly enforced

10   except in truly unusual and compelling circumstances.  In Re

11   Lehman Brothers Holdings, 433 Bankruptcy at 127.

12            Mr. Waske does not provide any reason for seeking

13   to lodge a claim against the Lehman Estate, more than a

14   decade after the claim's bar date, let alone a reason that

15   might constitute excusable neglect.  He implies that certain

16   recent events have provided another reason why he thinks he

17   ought to be able to file a claim.  This does not, in any

18   way, change the analysis, nor does the subsequent purchase

19   of claims in a bankruptcy proceeding.  As held by the Court

20   in Enron Corporation, the purchase of claims in a bankruptcy

21   proceeding should not grant a transferee any greater rights

22   than the transferor had.  See In re Enron Corporation 2005,

23   Westlaw 383, 2053 at star 14, Bankruptcy, Southern District

24   of New York, November 28, 2005.

25            The lateness of this request, as I've said, is all

Page 21

1   the more inexcusable as it comes years after the

2   confirmation of the Lehman Chapter 11 plan.  The claims of

3   the trust were treated under the Lehman plan as class 10(b)

4   claims.  Mr. Waske now seeks to reclassify these claims as

5   class four claims.  It bears noting that Mr. Waske is not a

6   plan proponent and, indeed, has no standing to seek to

7   modify the Lehman Plan at all, let alone at this late date.

8   See 11 USC, Section 1127(b), In re Boylan International

9   Limited, 452 Bankruptcy 43 at 48, Bankruptcy SDNY 2011.

10          While a plan proponent may seek to modify the plan

11  if, for example, unforeseen circumstances render the

12  confirmed plan unworkable, modifications that accept the

13  expectation of creditors should be prohibited.  See Boylan

14  International, 452 Bankruptcy at 50.  Confirmation of a plan

15  is the equivalent of a final judgment in the civil

16  litigation.  Section 1127, it reinforces the principal of

17  finality by preserving the rights bought and paid for under

18  the plan.  In re Rickel & Associates, 260 Bankruptcy, 673,

19  at 677, Bankruptcy SDNY 2001.

20          Simply put, Mr. Waske has not standing to seek to

21  modify the Lehman plan to change the classification of the

22  trust claims from class 10(b) to class four.  Indeed, even

23  if he did have standing, such a modification would severely

24  upset the expectation of creditors and would not be

25  warranted.  For these reasons, and the reasons discussed in

Page 22

1      the oppositions filed by the Plan Administrator and as

2      previously described by the Court on this record, the three

3      motions filed by Mr. Waske are all denied.

4               All right, Mr. Fail, I would ask that you

5      circulate an appropriate order and circulate it to Mr. Waske

6      and send it to chambers for us to enter.

7               MR. FAIL:  Thank you, Your Honor, we will.  And

8      thank you and your chambers for the time this morning and

9      leading up to it.

10              THE COURT:  Thank you.  This concludes the

11     hearing.  Thank you all for participating.  Everybody please

12     stay safe.

13              MR. WASKE:  Thank you, Your Honor.  Thank you, Mr.

14     Fail.

15              MR. WU:  Thank you.

16              MR. FAIL:  Thank you.

17

18              (Whereupon these proceedings were concluded at

19     10:37 AM)

20

21

22

23

24

25

1                        I N D E X

2

3                        RULINGS

4                                              Page        Line

5

6    Three motions all denied                   22          3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1              C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  June 23, 2020