**Response Deadline: July 7, 2020, at 4:00 p.m. (Eastern Time)**
**Hearing Date: July 14, 2020, at 10:00 a.m. (Eastern Time)**

MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Jennifer M. Rosa
Robert W. Hamburg

*Counsel for Nonparty Caliber Home Loans, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |

**OBJECTION OF CALIBER HOME LOANS, INC. TO MOTION IN AID OF
ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR
INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN
SELLERS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 6

I.   DEBTORS HAVE FAILED TO ESTABLISH THAT THE COURT HAS
     PERSONAL JURISDICTION OVER CALIBER ............................................................. 6

II.  MEDIATION WOULD BE FUTILE BECAUSE CALIBER IS NOT A
     SUCCESSOR TO COBALT OR FIRST PRIORITY ...................................................... 11

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002) ............................................................................................... 7

*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*,
   869 F.2d 34 (2d Cir.1989) .................................................................................................... 6

*Chung Yang Modas Co. v. Private Label Sourcing, LLC*,
   2008 WL 11340328 (C.D. Cal. May 20, 2008) .................................................................. 8

*E-Quest Mgmt., LLC v. Shaw*,
   433 S.W.3d 18 (Tex. App. 2013) ...................................................................................... 12

*Farouk Sys., Inc. v. AG Glob. Prods., LLC*,
   2016 WL 1322315 (S.D. Tex. Apr. 5, 2016) .................................................................... 13

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014) ............................................................................................ 6, 7

*Lockheed Martin Corp. v. Gordon*,
   16 S.W.3d 127 (Tex. App. 2000) ...................................................................................... 12

*Lopez v. Delta Int'l Mach. Corp.*,
   2017 WL 3142028 (D.N.M. July 24, 2017) ...................................................................... 12

*Lopez v. Stanley Black & Decker, Inc.*,
   764 F. App'x 703 (10th Cir. 2019) ................................................................................... 13

*In re Marion*,
   2006 Bankr. LEXIS 4231 (Bankr. N.D. Ind. May 1, 2006) ................................................ 9

*Moore v. Panini Am. Inc.*,
   2016 WL 7163899 (Tex. App. Nov. 7, 2016) ................................................................... 13

*Nike, Inc. v. Wu*,
   349 F. Supp. 3d 310 (S.D.N.Y. 2018) ............................................................................ 6, 9

*Owners Ass'n of Pecan Square, Inc. v. Capri Lighting, Inc.*,
   1992 WL 186261 (Tex. App. July 31, 1992) .................................................................... 10

*Sherwin-Williams Co. v. Avisep, S.A. de C.V.*,
   2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) ....................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

*Sitaram v. Aetna U.S. Healthcare of N. Texas, Inc.*,
  152 S.W.3d 817 (Tex. App. 2004) ................................................................................... 12

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ............................................................................................. 6

*Stegall v. Casillas*,
  2016 WL 6397668 (S.D. Tex. Oct. 28, 2016) ................................................................. 13

*UST-Mamiya, Inc. v. True Sports, Inc.*,
  2020 WL 905358 (N.D. Tex. Feb. 25, 2020) .................................................................. 13

*Warren v. Arzt*,
  18 F.R.D. 11 (S.D.N.Y. 1955) .......................................................................................... 8

*Xue Ming Wang v. Abumi Sushi Inc.*,
  262 F. Supp. 3d 81 (S.D.N.Y. 2017) ............................................................................... 10

### OTHER AUTHORITIES

Fitzgerald, Gonzalez, & Walrath, *Bankruptcy, Nat'l ed.: The Rutter Group
  Practice Guide* (The Rutter Group 2015) ......................................................................... 9

**PRELIMINARY STATEMENT**

Non-party Caliber Home Loans, Inc. ("Caliber") has nothing to do with this case. It is not a defendant in any adversary proceeding in this Court, not the subject of any pleading, not the target of any substantive allegations to which it might respond, has not filed a proof of claim in this action, and holds no assets relevant to the bankruptcy estate. It has no knowledge of or involvement in any of the mortgage loans, contracts, or transactions purportedly giving rise to indemnification claims of the above-captioned debtors ("Debtors") against third parties. Debtors nonetheless ask the Court to compel Caliber—a Texas-based corporation—to negotiate the settlement of claims that Debtors have not asserted (much less plausibly alleged) against Caliber, through a mediation process in New York that Caliber will be forced to partially fund. Debtors make this audacious request on the strength of a simple motion filed by their attorneys. *See* Dkt. No. 60632-1 (the "Motion" or "Mot.").

The Motion itself does not reference, much less discuss, Caliber. Caliber appears only in a list included as Exhibit A to the Motion (lumped together with many other entities) as a "potential successor" to two of the fifty-five mortgage loan originators or sellers (together, the "Mortgage Loan Sellers"), against which Debtors claim to have indemnification claims arising from RMBS settlements that Debtors entered into. Debtors argue, categorically, that "[b]ased upon prior experience and the evidence collected in LBHI's preliminary investigation," they "believe[] that there *will be* substantial evidence that" all of the potential successors listed in that Exhibit are liable for the indemnification claims they have against the Mortgage Loan Sellers. Mot. at 10 (emphasis added). Debtors do not actually identify any "evidence" that Caliber is a successor to any Mortgage Loan Seller, or explain what "substantial evidence" they hope to adduce in support of that conclusion. Debtors thus attempt to force Caliber into expensive, time-consuming mediation halfway across the country, based not upon any plausible allegations

1

of liability, but solely on the conclusions of Debtors' attorneys that some undisclosed evidence supports liability and their belief that some additional undisclosed evidence is forthcoming.

Even if mediation with "potential successors" could be appropriate in some circumstances, it clearly is not in the case of Caliber, where there is no credible dispute with respect to whether it succeeded to the relevant liabilities. Indeed, the Motion fails to mention that Debtors are actively litigating or negotiating these very indemnification claims with the two Mortgage Loan Sellers that Caliber purportedly succeeded. There is no suggestion, nor could there be, that Caliber and these Mortgage Loan Sellers are *jointly* liable to Debtors, such that Debtors might obtain a judgment against Caliber *and* the Mortgage Loan Sellers. The relevant liabilities either transferred or they did not—and here, they did not. In fact, neither Mortgage Loan Seller takes the position that it transferred relevant liabilities to Caliber.

The first Mortgage Loan Seller at issue, Cobalt Mortgage, Inc. ("Cobalt"), is the subject of an adversary proceeding pending before this Court (Case No. 19-1013) (the "Cobalt Adversary Proceeding"), in which Debtors charge Cobalt with the very same indemnification liability that the Motion now claims lies with Caliber. At no time in the course of the Cobalt Adversary Proceeding has Cobalt argued or even suggested that Caliber, not Cobalt, was the right party from whom to seek indemnification. The second Mortgage Loan Seller, First Priority Financial, Inc. ("First Priority"), wrote a letter to Debtors over a year ago, expressly stating that Caliber did not succeed to any relevant liability and that it, not Caliber, was the proper party with which to discuss Debtors' indemnification claim. And, in fact, Debtors and First Priority have engaged in discussions regarding that indemnification claim.

Debtors do not appear to dispute these facts. Rather, they argue that the Court should compel Caliber to mediate in any event, and that Caliber can explain why it does not belong in

2

mediation at the mediation. But due process prevents the Court from issuing such an order. Moreover, principles of successor liability make clear what Debtors already know, and what First Priority and Cobalt themselves acknowledge: Caliber is not a successor to any relevant liability.

The Motion should be denied as to Caliber.[1]

## BACKGROUND

Caliber is a mortgage lender headquartered in Texas. Since its formation in 2013, Caliber has acquired certain assets from existing mortgage companies through the execution of asset purchase agreements. Two such agreements were entered into with Cobalt and First Priority.

In September 2014, Caliber executed an agreement with Cobalt whereby Caliber obtained a discrete, explicitly identified set of assets, and a discrete, explicitly identified set of liabilities. *See* Declaration of Christopher M. Bass (the "Bass Declaration") at ¶ 4. Cobalt retained *all* other assets and liabilities. *Id*. None of the assets or liabilities that Caliber assumed is relevant to the Debtors' Motion or indemnification claim. Specifically, Caliber did not assume any liabilities arising from mortgage loans that Cobalt sold to Debtors years before the asset purchase. *Id*. at ¶ 5.

In May 2016, in a transaction similar to the Cobalt asset purchase, Caliber acquired a specific set of assets and liabilities from First Priority. Bass Declaration at ¶ 6. Again, Caliber obtained a discrete, specific set of assets and liabilities, and all other assets and liabilities were retained by First Priority. *Id*. And again, neither the assets nor liabilities that Caliber acquired relate in any way to the Motion or Debtors' indemnification claim—i.e., Caliber did not assume

---

[1] Caliber appears in this case for the limited and sole purpose of responding to the Motion. Caliber does not waive, and expressly reserves, all rights and defenses it has with respect to the Motion and the claims referenced therein.

3

any liabilities with respect to loans that First Priority may have sold to Debtors years before. *Id.* at ¶ 7.

Both Cobalt and First Priority are existing corporate entities to this day. *See* Adversary Complaint, *Lehman Bros. Holdings, Inc. v. Cobalt Mortgage, Inc.*, Dkt. 1 at ¶ 5, No. 19-01013 (Bankr. S.D.N.Y. Feb. 2, 2019) (alleging in February 2019 that Cobalt Mortgage "is organized and does business within the United States") (admitted in Answer filed by Cobalt at Dkt. 17); California Secretary of State Registry, available at https://businesssearch.sos.ca.gov (indicating active status of First Priority Financial Inc., with most recent filing on August 19, 2019).

In January 2019, Caliber received a letter from Debtors, demanding over $21 million based upon Caliber's supposed status as successor to First Priority. *See* Ex. A to Declaration of Jennifer M. Rosa, dated July 7, 2020 (the "Rosa Declaration"). The two-page letter claimed that First Priority had breached "a number of representations, warranties and covenants" in connection with the sale of mortgage loans to Debtors, and that Caliber was responsible for those breaches as a successor. *Id.* at 1. Caliber responded through counsel, by letter dated February 22, 2019, informing Debtors that Caliber was not a successor to First Priority. Ex. B to Rosa Declaration. On March 6, 2019, First Priority itself wrote Debtors, stating, in relevant part,

> I am writing on behalf of First Priority Financial, and to ensure Lehman Brothers Holdings, Inc. (LHBI) understands that First Priority Financial, Inc. was not acquired by Caliber Home Loans. Please direct any and all future communication on this matter to my attention.
>
> As stated, Caliber Home Loans is not a successor in interest to First Priority Financial, Inc. Enclosed as Exhibit 1 is a copy of the Secretary of State information for First Priority Financial, Inc., which confirms the same.

4

Ex. C to Rosa Declaration, at 1. Caliber understands that First Priority and Debtors subsequently engaged in discussions regarding these indemnification claims. Caliber did not hear from Debtors for more than a year thereafter, until Debtors filed the Motion.

Meanwhile, on February 2, 2019, Debtors filed the Cobalt Adversary Proceeding. *See* Adversary Complaint, *Lehman Bros. Holdings, Inc. v. Cobalt Mortgage, Inc.*, Dkt. 1, No. 19-01013 (Bankr. S.D.N.Y. Feb. 2, 2019). Debtors claimed that, as part of a loan purchase agreement, Cobalt "sold Defective Loans to [Debtors] that resulted in [Debtors] being exposed to and incurring liability." *Id.* at ¶ 17. Debtors thus seek indemnification for all related losses and liabilities—the same claims that Debtors now seek to compel Caliber to mediate. *Id.* at ¶ 1. Caliber is not mentioned anywhere in the pleadings filed in the Cobalt Adversary Proceeding, including Debtors' motion for summary judgment filed in May 2020. *See id.*; Lehman Brothers Holdings Inc.'s Memorandum of Law in Support of Motion for Partial Summary Judgment on Notice of Settlement of RMBS Claims, *Lehman Bros. Holdings, Inc. v. Cobalt Mortgage, Inc.*, Dkt. 22-1, No. 19-01013 (Bankr. S.D.N.Y. May 4, 2020). Neither Cobalt nor Debtors have suggested in the course of the Cobalt Adversary Proceeding that Caliber assumed any relevant liabilities. In fact, Caliber heard nothing about Debtors' purported indemnification claims against Cobalt until receiving the Motion.

Debtors filed the Motion on May 12, 2020. The Motion does not discuss Caliber specifically. Rather, Caliber is grouped together with dozens of entities described as "potential successors" to Mortgage Loan Sellers in a chart appended as Exhibit A to the Motion, and collectively addressed throughout the Motion as such. *See* Mot. at Ex. A. Debtors' Exhibit does not give any indication of why they believe Caliber is a successor to the relevant liabilities beyond the following generic language: "Information obtained by LBHI indicates the following:

5

On or about November 5, 2014, Cobalt was acquired by Caliber" (*id*. at A-3) and "Information obtained by LBHI indicates the following: On or about July 1, 2016, First Priority was acquired by Caliber" (*id*. at A-5). Debtors have stated that they will be pursuing mediation with Cobalt and First Priority, in addition to Caliber.

**ARGUMENT**

**I.    DEBTORS HAVE FAILED TO ESTABLISH THAT THE COURT HAS PERSONAL JURISDICTION OVER CALIBER**

A district court must have personal jurisdiction over a nonparty in order to compel such party to take any action or enjoin it from doing so. *See Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014) ("[A] district court can enforce an injunction against a nonparty such as [Bank of China] only if it has personal jurisdiction over that nonparty"); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 36 (2d Cir.1989) (holding that district court lacked personal jurisdiction to enforce an injunction to impose contempt sanctions); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018) ("It is axiomatic that, before compelling a nonparty to comply with a subpoena pursuant to Federal Rule of Civil Procedure 45, a court must have personal jurisdiction over that nonparty."). To exercise personal jurisdiction, due process requires (1) that the nonparty have minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018).

Debtors argue that the "minimum contacts" prong is obviated by Bankruptcy Rule 7004, which provides for nationwide service of process and thereby nationwide personal jurisdiction. Mot. at 21. While they do not explain as much in the Motion, they presumably reason that because Caliber is headquartered in Texas, it has minimum contacts *somewhere* in the United States, thus satisfying the nationwide contacts prong. Debtors cite no Second Circuit case law in

6

support of their nationwide contacts theory, and with good reason. The Second Circuit has expressly stated that it "has not yet decided" whether nationwide, as opposed to statewide, contacts is the appropriate framework. *Gucci*, 768 F.3d at 142, n.21.

The Court need not decide that issue, however, because the exercise of personal jurisdiction over Caliber would be patently unreasonable under the circumstances presented here. *See, e.g.*, *Sherwin-Williams Co. v. Avisep, S.A. de C.V.*, 2016 WL 354898, at *7 (S.D.N.Y. Jan. 28, 2016) (noting that where "the contacts that permit the imposition of jurisdiction under a minimum contacts analysis are weak, the importance of the reasonableness factors—each of which counsels against the exercise of jurisdiction here—are enhanced," and finding that "it would be unreasonable to exercise jurisdiction over Defendants"); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) ("The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'").

Here, Caliber's supposed jurisdictional "contacts"—i.e., the mere fact that it is a corporation in the United States—are unquestionably weak. These "contacts" have nothing to do with Debtors' claims, which Debtors have not even asserted against Caliber. Indeed, Caliber is a complete stranger to these proceedings. It has not been named in any adversary proceeding in connection with this bankruptcy action, is not a party to and has not seen any of the agreements by which Debtors purportedly purchased loans from Mortgage Loan Sellers and on which they now base their claims for indemnification, and has no involvement with, or knowledge regarding, any of those loans beyond what is presented in the Motion. It holds no assets or

7

liabilities relevant to Debtors or their bankruptcy estate, including any of the claims asserted in the Motion.

And imposing jurisdiction would impose a substantial burden on Caliber. Caliber is principally located in Texas, and has no relevant personnel in New York. Bass Declaration at ¶ 8. A New York mediation would require Caliber personnel to spend significant time and resources preparing—particularly in light of Debtors' demand that all potential successors not only attend, but also engage in the mediation process in good faith (Mot. at 10)—and traveling across the country. Bass Declaration at ¶ 8; *see, e.g.*, *Chung Yang Modas Co. v. Private Label Sourcing, LLC*, 2008 WL 11340328, at *3 (C.D. Cal. May 20, 2008) (holding that "exercising personal jurisdiction over [defendant] would be unreasonable" when, *inter alia*, defendant had limited contacts with the forum state, maintained its principal place of business elsewhere, and its witnesses would be required to travel). The Motion also contemplates Caliber *splitting the costs* of the requested mediation with Debtors, which only further reflects the unreasonableness of Debtors' demand.

The imposition of this burden on Caliber would be particularly unreasonable in light of (1) the absence of any evidence or plausible allegations that Caliber is a successor to any relevant liabilities and (2) the presence of evidence to the contrary—that Cobalt and First Priority retained any liabilities related to sale of subject mortgages that long predated Caliber's purchase of assets from these entities.

Rather than pointing to evidence supporting jurisdiction or liability as to Caliber—both of which Debtors bear the burden of establishing—Debtors offer only an unsupported and self-serving Motion that makes no specific reference to Caliber. And the Motion provides no basis for the Court to issue an order compelling Caliber to act. *See, e.g.*, *Warren v. Arzt*, 18 F.R.D. 11, 13

8

(S.D.N.Y. 1955) ("Since no action has ever been commenced or is pending in this Court, this Court obviously has no jurisdiction to act."); *see also In re Marion*, 2006 Bankr. LEXIS 4231, at *13 (Bankr. N.D. Ind. May 1, 2006) ("Absent the filing of a valid initiating document, a federal court has no jurisdiction with respect to anything."). Jurisdiction cannot be grounded in Debtors' vague and unsupported references (*see* Mot. at 10, Ex. A) to "evidence" or "information" either existing or forthcoming that *might* support liability over potential successors (collectively). *See* Fitzgerald, Gonzalez, & Walrath, *Bankruptcy, Nat'l ed.: The Rutter Group Practice Guide* (The Rutter Group 2015), ¶¶ 19:40, 19:135 ("[A]ll motions involving factual issues must include a declaration proving the facts in issue by admissible evidence.").

Far from establishing or plausibly alleging that Caliber acquired relevant liabilities from Cobalt or First Priority, Debtors have actually obtained—and acted on—evidence that Cobalt and First Priority *retained* those liabilities. Indeed, Debtors have either formally asserted (with respect to Cobalt) or advanced in the context of other discussions (with respect to First Priority) the very same indemnification claims against these Mortgage Loan Sellers that the Motion claims were transferred to Caliber. And, as mentioned, First Priority already expressly stated in a letter to Debtors that it, not Caliber, is the proper party (Ex. C to Rosa Declaration) and Cobalt has not taken the position in the Cobalt Adversary Proceeding that Caliber is its successor for purposes of these claims.

Because Debtors are either litigating or negotiating their indemnification claims with the proper parties—Cobalt and First Priority—there is no countervailing benefit (or purpose) to having the *wrong party*, Caliber, mediate the same claims. *See Nike*, 349 F. Supp. 3d at 332-33 (discussing reasonableness factors for asserting personal jurisdiction over nonparty, including weighing burden on the nonparty with public benefit). It is not even clear to Caliber what a

9

"good-faith negotiation" of such claims would be in these circumstances, but there are certainly no public or private benefits to whatever that might look like.

In light of these facts, Caliber has attempted to speak with Debtors' counsel and resolve this matter without burdening the Court with formal objections. In meet-and-confer discussions, Debtors principally offer two justifications for their demand that Caliber mediate. First, they contend that they have found the process efficient in the past, and that Caliber is free to raise any and all defenses at the mediation, including that Caliber is not a successor to any relevant liabilities.[2] Of course, the fact that Caliber would not waive its rights by mediating is not a basis to force it to mediate in the first place. Moreover, this ignores that it is Debtors' burden to prove liability, not Caliber's burden to disprove it. *See, e.g.*, *Owners Ass'n of Pecan Square, Inc. v. Capri Lighting, Inc.*, 1992 WL 186261, at *3 (Tex. App. July 31, 1992) (holding that successor liability is a form of vicarious liability for which the proponent bears the burden of proof); *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 92 (S.D.N.Y. 2017) ("[T]he party advocating for successor liability bears the burden of proof."). Forcing Caliber to take action in response to (minimal and generalized) argument by Debtors' attorneys, unsupported by any factual evidence, and in the absence of claims against Caliber—plausibly pleaded or otherwise— is entirely inconsistent with due process.

Second, Debtors assert that they have concerns about, or little insight into, the current financial condition of Cobalt and First Priority. However, the current financial condition of these entities has no bearing on whether or not Caliber succeeded to the relevant liabilities of such

---

[2] Compelling mediation in these circumstances would not result in efficiency, as Debtors suggest, but rather a troubling precedent under which nonparties are forced to defend themselves and consider "cost-of-defense" settlements in response to unfounded argument advanced by counsel. As noted, no claims have been asserted against Caliber, and Debtors provide no basis other than their attorneys' say-so for why Caliber should be forced to mediate in New York.

10

entities four and six years ago. Either Caliber acquired relevant liabilities or it did not. And here, both Cobalt and First Priority acknowledge that it did not, which Debtors implicitly concede by litigating and negotiating in parallel with those parties. Debtors' attempt to force Caliber into pre-suit mediation is particularly perplexing in these circumstances.

Debtors have given the Court no basis to exercise personal jurisdiction over Caliber in this matter, and the Motion should be denied for that reason.[3]

## II.     MEDIATION WOULD BE FUTILE BECAUSE CALIBER IS NOT A SUCCESSOR TO COBALT OR FIRST PRIORITY

Even if Debtors had established personal jurisdiction over Caliber (they have not), mediation would be futile because Caliber did not succeed to the relevant liabilities and nothing in the Motion leads to any other conclusion.

Debtors have the burden of pleading and proving that Caliber is liable as a successor to Cobalt and First Priority. *Supra*. § I.  Debtors do not come close to carrying this burden with respect to Caliber. Debtors make vague assertions about the "potential successors" that are the subject of the Motion as a group, including that they "may" be liable as successors, that it has investigated "many" (not all) of the potential successors, that Debtors "believe[] there will be" substantial evidence of successor liability, and even admit that they "cannot conclusively determine" whether successor liability exists.  *See* Motion at 8, 10. The only specific reference Debtors make to Caliber comes in Exhibit A to the Motion, in which they offer identically worded, generic conclusions: "Information obtained by LBHI indicates the following: On or about November 5, 2014, Cobalt was acquired by Caliber" (Ex. A to Mot. at A-3) and "Information obtained by LBHI indicates the following: On or about July 1, 2016, First Priority

---

[3] Caliber is not aware of any case in which a "potential successor" was forced to mediate with Debtors when Debtors were simultaneously negotiating with the Mortgage Loan Seller that was supposedly acquired.

11

was acquired by Caliber" (Ex. A to Mot. at A-5). Debtors do not explain what "information" led them to the conclude that Caliber acquired Cobalt and First Priority, or identify any evidence relating to the transactions that would indicate a transfer of relevant liabilities. Nor do Debtors acknowledge that they appear to have reached the *opposite* conclusion in deciding to sue Cobalt and negotiate with First Priority in connection with the same indemnification claims—facts completely absent from the Motion. *See Cobalt Mortgage, Inc.*, No. 1:19-ap-01013; Ex. C. Debtors' bald conclusions, unsupported by factual allegations or evidence, are wholly insufficient to assert successor liability.

Even accepting Debtors' vague and conclusory statements as true, nothing in the Motion establishes that Caliber is, or could be, subject to successor liability here. Debtors purport to acknowledge a "general rule" that asset purchasers are not liable for the debts and obligations of asset sellers unless expressly assumed (Mot. at 10). That rule is strictly applied in Texas, where Caliber is headquartered. Indeed, Texas law, unlike some jurisdictions, is particularly hostile to exceptions to the non-liability of corporate successors. As the court in *E-Quest Management, LLC v. Shaw*, summarized:

> Texas "strongly embraces" a "nonliability" rule for corporate successors. Texas law authorizes a successor to acquire the assets of a corporation without incurring any of the grantor corporation's liabilities unless the successor expressly assumes those liabilities. Thus, in Texas, there is no successor in interest when an acquiring corporation does not expressly agree to assume the liabilities of the other party to an agreement because "successor" has a specialized meaning "beyond simple acquisition."

433 S.W.3d 18, 23-24 (Tex. App. 2013) (citations omitted) (first quoting *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex. App. 2000), then quoting *Sitaram v. Aetna U.S. Healthcare of N. Texas, Inc.*, 152 S.W.3d 817, 828 (Tex. App. 2004)); *see also Lopez v. Delta Int'l Mach. Corp.*, 2017 WL 3142028, at *45 (D.N.M. July 24, 2017) (holding that, under Texas law,

12

successor liability attaches only where acquiring entity expressly assumes relevant liability), *aff'd sub nom*, *Lopez v. Stanley Black & Decker, Inc.*, 764 F. App'x 703, 709 (10th Cir. 2019); *UST-Mamiya, Inc. v. True Sports, Inc.*, 2020 WL 905358, at *8 (N.D. Tex. Feb. 25, 2020) (holding that acquiring corporation was not a successor under Texas law, which does not "recognize successor liability for subsequent purchases of corporate assets [except] when the successor corporation expressly assumes the liability of the predecessor corporation."); *Moore v. Panini Am. Inc.*, 2016 WL 7163899, at *6 (Tex. App. Nov. 7, 2016) ("[I]n Texas, there is no successor in interest when an acquiring corporation does not expressly agree to assume the liabilities of the other party to an agreement."); *Stegall v. Casillas*, 2016 WL 6397668, at *4 (S.D. Tex. Oct. 28, 2016) (holding that successor liability must be expressly agreed to in a contract, not implied); *Farouk Sys., Inc. v. AG Glob. Prods., LLC*, 2016 WL 1322315, at *7 (S.D. Tex. Apr. 5, 2016) ("[T]he only means by which successor liability may be imposed under Texas law against a transferee of assets are (1) express assumption or (2) liability conferred by another statute." (internal quotation marks omitted)). Tellingly, Debtors cite no Texas cases when addressing exceptions to the general rule such as "implied assumption" of a predecessor's liabilities (Mot. at 11-13), "*de facto* merger" of predecessors and successors (Motion at 13-14), or "mere continuation" of a predecessor's operations (Mot. at 14-15).

Under Texas law, therefore, Debtors may prevail on successor liability claims against Caliber only if Caliber expressly agreed to assume the liabilities in question. Caliber did not so agree. As explained above, Caliber purchased only a discrete set of assets and liabilities from Cobalt and First Priority, which do not include liabilities arising from mortgage loans that these entities may have sold to Debtors years earlier. And neither Cobalt nor First Priority suggest

13

otherwise. Debtors have not alleged any facts that would give them a basis to assert successor liability claims against Caliber in this matter, and there is none.

Even if exceptions to the non-liability of successors did apply under Texas law, or if the Court were to apply the law of another state that did,[4] Debtors' still have not identified any basis for successor liability claims against Caliber. Debtors cite no facts whatsoever supporting the notion that Caliber impliedly assumed any relevant liabilities of Cobalt or First Priority (Mot. at 11-13) or that Caliber's purchase of discrete assets resulted in a *de facto* merger with (Mot. at 13-14) ,or "mere continuation" of (Mot. at 14-15), Cobalt or First Priority or to support any other purported exception to the general rule.

Indeed, as noted above, the sole "factual" allegations in the Motion specific to Caliber are that it "acquired" Cobalt and First Priority. Mot. at Ex. A-3, A-5. And these "facts" are belied by the continued existence of Cobalt and First Priority, against which Debtors are separately pursuing the very same claims. *See generally*, Cobalt Adversary Proceeding; Ex. C at 1 (letter from First Priority to Debtors) ("I am writing on behalf of First Priority Financial, and to ensure Lehman Brothers Holdings, Inc. (LHBI) understands that First Priority Financial, Inc. *was not acquired by Caliber Home Loans*. Please direct any and all future communication on this matter to my attention." (emphasis added)).

Debtors lack any basis for the notion that Caliber is a successor to Cobalt or First Priority. And in fact, the correct parties, Cobalt and First Priority, have engaged with Debtors on these claims. Caliber should not be forced to spend time and resources on a mediation based

---

[4] It is not clear from the Motion which state's law Debtors believe would apply to any hypothetical claims they may assert against Caliber in the future. Caliber reserves the right to review any such claims, and the allegations and arguments purportedly supporting those claims, before determining conclusively which law applies to them, and to analyze these issues under other applicable law as necessary. However, it is Caliber's position that it is not a successor to Cobalt or First Priority regardless of what state's law applies.

14

simply on Debtors' say-so. Mediating these claims would be futile, and Debtors' request that Caliber be forced to do so should be denied.

## CONCLUSION

For the foregoing reasons, Debtors' Motion in Aid of Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers should be denied as to Caliber Home Loans, Inc.

Dated: July 7, 2020

Respectfully submitted,

*/s/ Jennifer M. Rosa*
Jennifer M. Rosa
Robert W. Hamburg
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2500
jrosa@mayerbrown.com
rhamburg@mayerbrown.com

*Counsel for Nonparty Caliber Home Loans, Inc.*
