**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., et al.,<br><br>　　　　　　Debtors. | CHAPTER 11<br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>1st ADVANTAGE MORTGAGE LLC,<br><br>　　　　　　Defendant. | Central Adversary Docket<br>No. 16-01019 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>PERL MORTGAGE, Inc.,<br><br>　　　　　　Defendant. | Adversary Proceeding<br>No. 19-01019(SCC) |

**DEFENDANT PERL MORTGAGE INC.'S RESPONSE AND OBJECTION TO LEHMAN BROTHERS HOLDINGS INC.'S MOTION IN AID OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION OF <u>CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS</u>**

　　Defendant Perl Mortgage, Inc. ("Defendant" or "Perl"), through its undersigned counsel, hereby submits the following Memorandum of Points and Authorities and accompanying Declaration of Ken Perlmutter in Response and Opposition ("Opposition") to Plaintiff Lehman Brothers Holdings, Inc.'s ("Plaintiff" or "LBHI") Motion in Aid Of Alternative Dispute Resolution Procedures Order ("Motion").

- 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.   INTRODUCTION**

In the matter at bar, Plaintiff is seeking to impose an unfair obligation on both this Defendant and a non-party to the litigation. While LBHI may *believe* that there exists some basis upon which to pursue a successor liability theory against the entity that purchased certain assets from Perl Mortgage Inc., that belief, in and of itself, does not justify this Court's exercise of jurisdiction over CrossCountry Mortgage ("CCM"), let alone an Order compelling that entity to provide LBHI with proprietary information and confidential documents, and to then require its representative to travel to New York, at its own expense, to engage in a confidential mediation on a matter that is of no concern to CCM.

Exhibit A to Plaintiff's Motion offers up the most superficial analysis of the facts, and effectively puts the proverbial cart before the horse by requiring CCM to participate in mediation between LBHI and Perl, which should be confidential between the actual parties, *before determining that CCM even belongs there*. <u>LBHI has had more than enough time to investigate the facts behind this business relationship and could have propounded discovery to explore these issues months ago</u>. As it turns out, given the fact that CCM does not possess facts sufficient to support its effort to include CCM in a confidential mediation with Perl, it recently propounded discovery on this subject. However, setting aside the objectionable nature of the discovery that was propounded, it did not do so timely and Perl's responses are not due until well after this Motion will be fully briefed. This point is made stronger when taking into account the fact that e-mail correspondence between the representatives of Perl and LBHI, going back to January 2020, show that Plaintiff was well aware of Perl's situation and took no action at that time.

**The fact is that Perl entered into an Asset Purchase Agreement ("APA") with CCM, as opposed to a stock sale. CCM did not assume the liabilities of Perl, and specifically excluded from the reach of the APA any liability for this lawsuit.**

This Opposition includes a sworn declaration from Ken Perlmutter, who was a director, officer and shareholder of Perl. Mr. Perlmutter attests to the fact that CCM is not a successor to Perl, that the negotiations to which he was a party expressly excluded any such outcome. Perl is ready and willing to continue settlement negotiations with LBHI. That said, Perl objects to any Order compelling CCM to participate in some future ADR procedure that should be confidential between the actual Parties to this dispute.

**2.    THE RELIEF REQUESTED BY PLAINTIFF IN NOT JUSTIFIED BY ANY REASONABLE ARGUMENT OF FACT OR LAW**

As is recounted in Plaintiff's Motion, this Court has previously issued orders in aid of the ADR procedures affecting both named defendants and other entities not then named as a party to this litigation. However, the defining factor in each case was that Plaintiff was able to show that those entities had sold mortgage loans to LBHI or one of its affiliates. In each instance, Plaintiff could point to those transactions to show privity of contract and to allege a breach of those contract obligations. <u>Here, there is no such factual basis to justify the exercise of jurisdiction over CCM</u>. Instead what we have is a conclusory allegation unsubstantiated by competent and admissible evidence normally required by the federal courts.

In the matter at bar, LBHI has presented no statutory or decisional authority in support of its contention that the Court can order a third-party that LBHI merely believes may be a successor to spend time and money to participate in mediation before having been named in a lawsuit. Nor is there any basis in fact or law to be drawn from the plan to justify the relief requested.

*Assuming arguendo* that Plaintiff is not required to first prove liability and damages against Perl before pursuing its successor liability theory against CCM, it cannot be the case that LBHI can drag a non-party into mediation based solely on a conclusory allegation. <u>Perl and CCM are still entitled to the benefit of basic due process, as well as some threshold evidentiary showing that it is more likely than not that CCM is the successor to Perl</u>. Having failed to meet that burden – or for that matter even try – this Motion must be denied.

Plaintiff's Motion fails to set forth the necessary facts to make a good faith showing that CCM is the successor to Perl. The same can be said for the allegations made against other defendants and their *so-called* successors. The Motion provides a basic discussion of successor liability generally, but no application of the law to Perl specifically. <u>Instead, the various defendants are lumped together without any real legal analysis</u>. Thus, as is correctly described in the Opposition filed by our co-defendant, Wintrust Mortgage:

"Specifically, LBHI claims:

- Each *"may be* liable to LBHI" as a successor. (Mot. at 5 (emphasis added).)

- "LBHI has discovered the [sic] *many of the Sellers* of the mortgage loans underlying the RMBS Claims had effectively transferred their businesses to another entity through a stock sale, a sale of substantially all of their assets to a third-party, reorganizing as a different corporate entity while continuing the normal business operations and the name, a third-party alter ego continuing the Seller's business operations, *and the like."* (Mot. at 7-8 (emphasis added).)

- "Although LBHI *cannot conclusively determine the existence of successor liability"* against any of the 23 entities, "it has . . . discovered *indicia* giving rise to *reasonable grounds to assert* that certain Successors *may be* legally responsible for the liability of certain Sellers." (Mot. at 23 (emphasis added).)

- "LBHI *believes that there will be* substantial evidence," not that there is substantial evidence, "that each of the Successors on Exhibit A is liable for the contractual indemnification obligations of a Seller." (Mot. at 10 (emphasis added).)

**In other words, LBHI lumps all 23 entities together and argues that one or more indicia of successor liability may or may not apply to any particular entity, including numerous qualifications. To say that the Motion is low on specifics is a gross understatement**." *Wintrust Mortgage Response and Opposition*, page 9. [Emphasis added]

As is discussed below, in January of 2019 Perl and CCM entered into an APA, the terms of which reflects the stated and unequivocal intention of both parties that CCM would assume liability for a limited number of specified items such as real estate leases and photocopy equipment contracts. Now is not the time for Perl or CCM to have to do battle with LBHI over some speculative successor liability theory. <u>Plaintiff must pursue this, if at all, in the normal course through discovery</u>.

3.  **BY PROVIDING THE COURT WITH SOME QUOTED MATERIAL FROM THE ASSET PURCHASE AGREEMENT PERL DOES NOT INTEND TO WAIVE THE CONFIDENTIALITY OF THE APA BUT ONLY TO ILLUSTRATE THE FAILING OF PLAINTIFF'S CONCLUSORY CLAIM OF SUCCESSOR LIABILITY**

As is set forth in the accompanying Declaration of Ken Perlmutter, the 2019 APA between Perl and CCM reflects the unequivocal intention of both parties to facilitate the acquisition by CCM of some of the assets of Perl, and the right to use its name and to hire employees of Perl. Thus, the APA provides in pertinent part:

2.02    <u>Liabilities.</u>

(a) <u>Assumed Liabilities</u>. Effective after the Closing, Purchaser will assume and agree to pay, perform, be solely responsible for and discharge the Assumed

- 5 -

Liabilities. **"Assumed Liabilities"** means the following Liabilities of Seller (and no other Liabilities):

(i) all Liabilities of Seller under the Assigned Contracts and Permits transferred to Purchaser, in each case, to be performed after or arising after the Closing (including, for the avoidance of doubt, the payment of all loan officer commissions relating to the Pipeline Loans);

(ii) all Liabilities to the extent relating to the ownership, use or condition of the Purchased Assets after the Closing but excluding any Liabilities for Taxes attributable to periods through and including the Closing Date;

(iii) all Liabilities associated with the obligations, processing, underwriting, funding and closing of the Pipeline Loans, in each case, arising from and after the Closing; and

(iv) all Liabilities for attorneys' fees, court costs and other expenses of pursuing any Subject Employment Claim (including such fees, costs and expenses in connection with defending any counterclaims thereto), provided, for the avoidance of doubt, that the Purchaser shall not assume any of Seller's Liability to the former employees of Seller listed on Annex 4 arising out of their employment with Seller (including for any alleged unpaid compensation or expense reimbursement).

(b) Retained Liabilities. Notwithstanding any other provision of this Agreement, Purchaser is not assuming and will not be liable for any Retained Liabilities. The **Retained Liabilities will remain the sole responsibility of, and will be paid, performed and discharged by Seller**. [Emphasis added]

Plaintiff is surely aware of the fact that an asset purchase agreement is different from a stock purchase agreement, and that only specified liabilities of the Seller are assumed. An asset purchase agreement typically excluds generally and specifically the liabilities of the Seller, which are retained unless expressly assumed by the Buyer. Thus, it is the common practice in the mortgage business that rarely does one purchase the shares of the company as they have the liability attached to them. Here, Perl and CCM have specified in their APA that:

2.01 Assets.

(a) Purchased Assets. Purchaser will purchase from Seller, and Seller will Transfer, or cause to be Transferred, to Purchaser, as of the Closing, all of Seller's right, title and interest in and to the Purchased Assets, free and clear of all Liens other than

> Permitted Liens. Notwithstanding any other provision of this Agreement, Purchaser will not purchase or acquire or otherwise obtain any right, title or interest in any Excluded Asset. For purposes of this Agreement, the "**Purchased Assets**" means the following assets, properties and rights, as of the Closing Date, in each case to the extent owned or leased by Seller, without duplication:
>
> ***
>
> (b) Excluded Assets. At the Closing, Purchaser will not purchase, acquire or otherwise obtain any of Seller's right, title or interest in any Excluded Assets.

Again, this was a typical asset purchase sale in which CCM acquired certain specified assets of Perl but not others. More importantly, the Declaration of Ken Perlmutter explains that none of Perl shareholders received stock in CCM in exchange for the assets of Perl. Nor did the owners of Perl become direct or indirect shareholders in CCM. CCM only purchased certain specified assets and assumed 12 of Perl's office leases, as well as certain copier and equipment leases, and hired some but not all of Perl's employees. Likewise, there was no explicit or implicit agreement on the part of CCM to assume the debts or tort liability of Perl. Instead, the APA is clear that:

> 2.02 Liabilities.
>
> (a) Assumed Liabilities. Effective after the Closing, Purchaser will assume and agree to pay, perform, be solely responsible for and discharge the Assumed Liabilities. "**Assumed Liabilities**" means the following Liabilities of Seller (and no other Liabilities):
>
> (i) all Liabilities of Seller under the Assigned Contracts and Permits transferred to Purchaser, in each case, to be performed after or arising after the Closing (including, for the avoidance of doubt, the payment of all loan officer commissions relating to the Pipeline Loans);
>
> (ii) all Liabilities to the extent relating to the ownership, use or condition of the Purchased Assets after the Closing but excluding any Liabilities for Taxes attributable to periods through and including the Closing Date;
>
> (iii) all Liabilities associated with the obligations, processing, underwriting, funding, and closing of the Pipeline Loans, in each case, arising from and after the Closing; and

(iv) all Liabilities for attorneys' fees, court costs and other expenses of pursuing any Subject Employment Claim (including such fees, costs and expenses in connection with defending any counterclaims thereto), provided, for the avoidance of doubt, that the Purchaser shall not assume any of Seller's Liability to the former employees of Seller listed on Annex 4 arising out of their employment with Seller (including for any alleged unpaid compensation or expense reimbursement).

(b) <u>Retained Liabilities</u>. Notwithstanding any other provision of this Agreement, Purchaser is not assuming and will not be liable for any Retained Liabilities. **The Retained Liabilities will remain the sole responsibility of, and will be paid, performed and discharged by Seller**. [Emphasis added]

The APA also includes indemnification provisions including the requirement that both Perl and its stockholders jointly and severally "indemnify, defend and hold harmless the Purchaser Indemnified Parties from and against any Losses suffered by any such Purchaser Indemnified Parties resulting from . . . (iii) any Retained Liabilities." Schedule 3.11 to the Amendment to the APA excludes the Purchaser's liability for: "8. The Lehman Brothers Matter." <u>Likewise, Annex 1 to that Amendment excludes liability for "9. Any matter related to the Lehman Brothers Matter</u>."

**4.    PLAINTIFF HAS CITED EXCEPTIONS BUT HAS NOT AVOIDED THE GENERAL RULE THAT SUCCESSORS ARE NOT LIABLE FOR THE DEBTS OF THE SELLER IN AN ASSET PURCHASE AGREEMENT**

Plaintiff's moving papers concede that "as a general rule, successors are not liable for the debts and obligations of their predecessors." (Mot. ¶ 27) Although LBHI argues that there are four exceptions to this rule, it fails to meet its burden of showing how any one of them, much less all of them, directly applies to Perl and CCM.

In the matter before the Court, there was the APA and employees of Perl became employees of the alleged successor, raising the possibility of a "mere continuation" exception applying. However, where there is no stock-for-assets swap and the company that sells assets receives cash

for the assets, there is no reason to hold the putative successor liable as the company that sold the assets has cash that can be used to settle its own debts.

A case on point is *Cargo Partner AG v. Albatrans Inc.* 207 F. Supp. 2d 86, 94-95 (S.D.N.Y. 2001), wherein the court explained the basis of the "Mere Continuation" and "De Facto Merger" exceptions as follows:

> The general rule (that the purchaser of a corporation's assets does not become liable for the seller's obligations) reflects the principle that liabilities adhere to the corporate entity. In a merger or corporate reorganization, the corporate identity of the predecessor is absorbed by the surviving corporation; the predecessor's shareholders maintain their interest in the seller's assets through their [**12] ownership of the surviving corporation's stock, and the survivor becomes liable for the predecessor's liabilities. In a bona fide asset sale, the seller maintains its own corporate identity; the seller's shareholders do not retain an interest in the transferred assets, and the seller's creditors must continue to look to the seller (and the consideration it received) to satisfy their claims.

The "mere continuation" and "de facto merger" exceptions originated in cases where the seller's shareholders retained their interest in the transferred assets through an ownership interest in the purchasing corporation while freeing the assets from the claims of the seller's creditors by disguising the transaction as an asset sale. In such cases, the courts determined that the form of the transaction did not accurately portray its substance, and they imposed successor liability upon the purchaser.

The *Cargo Partner* case explains the rationale for requiring an assets-for-stock agreement in order to find a de facto merger. When assets are exchanged for stock, the selling corporation is not provided cash compensation that could be used to settle its debts, thus making it reasonable to look to the purchaser. <u>In contrast, as in this case, when Perl sold assets to CCM, CCM provided Perl with some cash that Perl could use to settle debts</u>. As a result, Perl's shareholders never acquired an interest in CCM in exchange for Perl's assets, and there is no reason to hold CCM accountable for Perl's alleged liabilities to LBHI.

In light of the foregoing, and because LBHI cannot offer credible evidence to show that CCM is the successor to Perl, the Court should not permit Plaintiff to compel the purchaser of some of Perl's assets to attend mediation in a confidential matter that does not concern it.  CCM should not be required to spend time and money on a mediation, which it will simply look to collect from Perl, when there is no evidence in the record that would lead the Court to believe the entity would be liable as a successor.

Therefore, in light of the foregoing, the evidence submitted in support hereof, and any arguments given at a hearing on this matter, the Court should deny LBHI's Motion in its entirety.

Dated: July 7, 2020

Johnston Thomas, Attorneys at Law, PC

/s/ *Robert P. Weiss*
Robert P. Weiss, Esq.
James W. Brody, Esq.
1400 N. Dutton Avenue, Suite 21
Santa Rosa, CA 95401
(707) 545-6542
rweiss@johnstonthomas.com

Moritt Hock & Hamroff LLP

/s/ *Stephen Turman*
Stephen Turman, Esq.
1407 Broadway, 39th Floor
New York, New York 10018
(212) 239-2000
sturman@moritthock.com

*Attorneys for Perl Mortgage, Inc.*

# **CERTIFICATION OF SERVICE**

1. I am a paralegal at the law firm of Johnston Thomas, Attorneys at Law, PC, attorneys for Defendant Perl Mortgage, Inc.

2. On July 7, 2020 I caused true and correct copies of Defendant Perl Mortgage Inc.'s Response and Objection to Lehman Brothers Holdings Inc.'s Motion in Aid of Alternative Dispute Resolution Procedures Order for Indemnification of Claims of the Debtors Against Mortgage Loan Sellers to be served by Electronic Mail upon the following parties listed below at the addresses listed below:

   Attorneys for Lehman Brothers Holding, Inc.

   Wollmuth Maher & Deutsch, LLP
   500 Fifth Avenue
   New York, New York 10110

   | James N. Lawlor: | (Jlawlor@wmd-law.com) |
   |---|---|
   | Adam Bialek: | (Abialek@wmd-law.com) |
   | Brant Kuehn: | (Bkuehn@wmd-law.com) |
   | Christopher J Lucht: | (Clucht@wmd-law.com) |
   | William A Maher: | (Wmaher@wmd-law.com) |
   | Scott Ferrier: | (SFerrier@WMD-LAW.com) |
   | Brad Axelrod: | (BAxelrod@WMD-LAW.com) |

3. I certify that the foregoing statements are true to the best of my knowledge. I am aware that if any of the foregoing statement be willfully false, I am subject to punishment.

Respectfully Submitted on this 7th day of July 2020,

/s/ Megan D Linsenmeyer
Megan D. Linsenmeyer, Paralegal
MLinsenmeyer@johnstonthomas.com
Johnston Thomas Attorneys at Law, P.C.
1400 N. Dutton Avenue
Santa Rosa, CA 95403
Telephone: (707) 545-6542