**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., et al.,<br><br>Debtors. | CHAPTER 11<br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>Plaintiff,<br>v.<br><br>1st ADVANTAGE MORTGAGE LLC,<br><br>Defendant. | Central Adversary Docket<br>No. 16-01019 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>Plaintiff,<br>v.<br><br>PERL MORTGAGE, INC.,<br><br>Defendant. | Adversary Proceeding<br>No. 19-01019 (SCC) |

**DECLARATION OF KEN PERLMUTTER/PERL MORTGAGE INC. IN OPPOSITION
TO LEHMAN BROTHERS HOLDINGS INC.'S MOTION IN AID OF ALTERNATIVE
<u>DISPUTE RESOLUTION PROCEDURES</u>**

I, Ken Perlmutter, declare as follows:

1. I am the President of Perl Mortgage, Inc. ("Perl"). I am personally familiar with the matters set forth herein and make this declaration in support of the opposition to Plaintiff Lehman

-1-

Brothers Holding's ("Plaintiff") Motion in Aid of Alternative Dispute Resolution Procedures ("Motion").

2.      In January of 2019, my fellow shareholders and I entered into an Asset Purchase Agreement ("APA") on behalf of Perl with CrossCountry Mortgage, Inc. ("CCM") to sell certain specified assets of Perl to CCM, and to transfer the leases for some of our branch offices. The APA with CCM reflects the unequivocal intention of both parties to facilitate the acquisition by CCM of some of the assets of Perl, and the right to use its name and to hire employees of Perl. Thus, the APA provides in pertinent part:

> 2.02    Liabilities.
>
> (a) Assumed Liabilities. Effective after the Closing, Purchaser will assume and agree to pay, perform, be solely responsible for and discharge the Assumed Liabilities. **"Assumed Liabilities"** means the following Liabilities of Seller (and no other Liabilities):
>
> (i) all Liabilities of Seller under the Assigned Contracts and Permits transferred to Purchaser, in each case, to be performed after or arising after the Closing (including, for the avoidance of doubt, the payment of all loan officer commissions relating to the Pipeline Loans);
>
> (ii) all Liabilities to the extent relating to the ownership, use or condition of the Purchased Assets after the Closing but excluding any Liabilities for Taxes attributable to periods through and including the Closing Date;
>
> (iii) all Liabilities associated with the obligations, processing, underwriting, funding, and closing of the Pipeline Loans, in each case, arising from and after the Closing; and
>
> (iv) all Liabilities for attorneys' fees, court costs and other expenses of pursuing any Subject Employment Claim (including such fees, costs and expenses in connection with defending any counterclaims thereto), provided, for the avoidance of doubt, that the Purchaser shall not assume any of Seller's Liability to the former employees of Seller listed on Annex 4 arising out of their employment with Seller (including for any alleged unpaid compensation or expense reimbursement).

(b) <u>Retained Liabilities</u>. Notwithstanding any other provision of this Agreement, Purchaser is not assuming and will not be liable for any Retained Liabilities. The Retained Liabilities will remain the sole responsibility of, and will be paid, performed and discharged by Seller.

3. In our negotiations, Perl and CCM were quite clear about what assets of Perl were being purchased and which were not, and likewise, what liabilities of Perl would be assumed by CCM. It is the common practice in the mortgage business to sell assets through an asset purchase agreement rather than a stock purchase agreement in order to avoid the exchange of shares of the company as they have the liability attached to them. Here, Perl and CCM have specified in their APA that:

2.01 <u>Assets</u>.

(a) <u>Purchased Assets</u>. Purchaser will purchase from Seller, and Seller will Transfer, or cause to be Transferred, to Purchaser, as of the Closing, all of Seller's right, title and interest in and to the Purchased Assets, free and clear of all Liens other than Permitted Liens. Notwithstanding any other provision of this Agreement, Purchaser will not purchase or acquire or otherwise obtain any right, title or interest in any Excluded Asset. For purposes of this Agreement, the "**Purchased Assets**" means the following assets, properties and rights, as of the Closing Date, in each case to the extent owned or leased by Seller, without duplication:

***

(b) <u>Excluded Assets</u>. At the Closing, Purchaser will not purchase, acquire or otherwise obtain any of Seller's right, title or interest in any Excluded Assets.

4. My attorneys have provided me with a copy of Plaintiff's Motion and have referred me to Exhibit A and the reference on page 9 therein about Perl. Apparently, LBHI has based its argument that CCM is the successor to Perl on the following:

| 42. | Perl Mortgage, Inc. ("Perl") | CrossCountry Mortgage ("CrossCountry") | Information obtained by LBHI indicates the following: On or about March 2019, Perl was acquired by CrossCountry. Perl's website now directs to CrossCountry's. Perl's LinkedIn webpage now describes the company as "The Perl Team at CrossCountry Mortgage, Inc." |
|---|---|---|---|

5.    Based on my personal knowledge of these negotiations and participation in this transaction, I can unequivocally state that this argument is false. Notwithstanding anything that LBHI or its attorneys *believe* they read on the Internet, this was nothing more than a sale of specific assets by Perl to CCM *without* a general assumption of liabilities. <u>Furthermore, the documents we negotiated specifically exclude any assumption of liability by CCM for this lawsuit.</u> That exclusion is mentioned in two (2) different schedules attached to the APA documents.

**6.    Furthermore, none of Perl's shareholders received stock in CCM in exchange for the assets of Perl. Nor did the owners of Perl become direct or indirect shareholders in CCM. CCM only purchased certain specified assets and assumed 12 of Perl's office leases, as well as certain copier and equipment leases, and hired certain but not all of Perl's employees. Likewise, there was no explicit or implicit agreement on the part of CCM to assume the debts or tort liability of Perl.**

7.    The APA is clear that:

2.02 <u>Liabilities</u>.

(a) <u>Assumed Liabilities</u>. Effective after the Closing, Purchaser will assume and agree to pay, perform, be solely responsible for and discharge the Assumed Liabilities. "**Assumed Liabilities**" means the following Liabilities of Seller (and no other Liabilities):

(i) all Liabilities of Seller under the Assigned Contracts and Permits transferred to Purchaser, in each case, to be performed after or arising after the Closing

(including, for the avoidance of doubt, the payment of all loan officer commissions relating to the Pipeline Loans);

(ii) all Liabilities to the extent relating to the ownership, use or condition of the Purchased Assets after the Closing but excluding any Liabilities for Taxes attributable to periods through and including the Closing Date;

(iii) all Liabilities associated with the obligations, processing, underwriting, funding, and closing of the Pipeline Loans, in each case, arising from and after the Closing; and

(iv) all Liabilities for attorneys' fees, court costs and other expenses of pursuing any Subject Employment Claim (including such fees, costs and expenses in connection with defending any counterclaims thereto), provided, for the avoidance of doubt, that the Purchaser shall not assume any of Seller's Liability to the former employees of Seller listed on Annex 4 arising out of their employment with Seller (including for any alleged unpaid compensation or expense reimbursement).

(b) <u>Retained Liabilities</u>. Notwithstanding any other provision of this Agreement, Purchaser is not assuming and will not be liable for any Retained Liabilities. **The Retained Liabilities will remain the sole responsibility of, and will be paid, performed and discharged by Seller**. [Emphasis added]

8.     The APA also includes indemnification provisions including the requirement that both Perl and its stockholders jointly and severally "indemnify, defend and hold harmless the Purchaser Indemnified Parties from and against any Losses suffered by any such Purchaser Indemnified Parties resulting from . . . (iii) any Retained Liabilities." Schedule 3.11 to the Amendment to the APA excludes the Purchaser's liability for: "8. The Lehman Brothers Matter."  <u>Likewise, Annex 1 to that Amendment excludes liability for "9. Any matter related to the Lehman Brothers Matter</u>."

9.     Lastly, I want the Court to know that we have negotiated in good faith with LBHI's representatives, and I am ready and willing to participate in mediation with them. Settlement offers were informally exchanged in January of 2020 between my attorney, James W. Brody and Scot Osborne who was negotiating on behalf of LBHI. <u>At</u>

<u>that time Mr. Brody wrote to Mr. Osborne indicating our willingness to proceed to mediation</u>.  Plaintiff, however, was not inclined to schedule a mediation at that time.

10. Thus, it is clear that Perl was willing to participate in the ADR process, but it was Plaintiff that declined to do so at that time.  <u>Perl is still willing to mediate</u>.  That said, there is still no reason and no compelling argument of fact or law why CCM should be ordered to participate in a mediate in a matter to which it is not a party.

I declare under perjury of penalty that the foregoing is true and correct.

Executed this 7th day of July 2020 in Chicago, Illinois.

<u>/s/ Ken Perlmutter</u>
Ken Perlmutter, President

# CERTIFICATION OF SERVICE

1. I am a paralegal at the law firm of Johnston Thomas, Attorneys at Law, PC, attorneys for Defendant Perl Mortgage, Inc.

2. On July 7, 2020 I caused true and correct copy of the Declaration of Ken Perlmutter in Support of its Response and Objection to Lehman Brothers Holdings Inc.'s Motion in Aid of Alternative Dispute Resolution Procedures to be served by Electronic Mail upon the following parties listed below at the addresses listed below:

Attorneys for Lehman Brothers Holding, Inc.

Wollmuth Maher & Deutsch, LLP
500 Fifth Avenue
New York, New York 10110

| | |
|---|---|
| James N. Lawlor: | (Jlawlor@wmd-law.com) |
| Adam Bialek: | (Abialek@wmd-law.com) |
| Brant Kuehn: | (Bkuehn@wmd-law.com) |
| Christopher J Lucht: | (Clucht@wmd-law.com) |
| William A Maher: | (Wmaher@wmd-law.com) |
| Scott Ferrier: | (SFerrier@WMD-LAW.com) |
| Brad Axelrod: | (BAxelrod@WMD-LAW.com) |

3. I certify that the foregoing statements are true to the best of my knowledge. I am aware that if any of the foregoing statement be willfully false, I am subject to punishment.

Respectfully Submitted on this 7th day of July 2020,

/s/ Megan D Linsenmeyer
Megan D. Linsenmeyer, Paralegal
MLinsenmeyer@johnstonthomas.com
Johnston Thomas Attorneys at Law, P.C.
1400 N. Dutton Avenue
Santa Rosa, CA 95403
Telephone: (707) 545-6542