**Objection Date and Time: September 29, 2020 at 4:00 p.m.**
**Hearing Date and Time: October 6, 2020 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Attorneys for Lehman Brothers Holdings Inc.,*
*As Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
In re:                                              :        **Chapter 11**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :        **Case No. 08-13555 (SCC)**
                                                    :
                                    Debtors.        :
-------------------------------------------------------------------X

## NOTICE OF HEARING ON MOTION FOR ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER IN CONNECTION WITH CLAIMS HELD BY LEHMAN BROTHERS HOLDINGS INC. REGARDING EXCESS PAYMENTS RECEIVED BY CLAIMANTS ON ACCOUNT OF GUARANTEE CLAIMS

**PLEASE TAKE NOTICE** that on August 28, 2020, Lehman Brothers Holdings Inc.

("**LBHI**" or the "**Plan Administrator**"), as Plan Administrator for the entities in the above

referenced chapter 11 cases, filed a motion for an alternative dispute resolution procedures order

in connection with LBHI's claims against claimants who received excess payments on account of

certain allowed guarantee claims (the "**Motion**"), and that a hearing (the "**Hearing**") to consider

the Motion will be held before the Honorable Shelley C. Chapman, United States Bankruptcy

Judge, in Courtroom 621 of the United States Bankruptcy Court for the Southern District of New

York (the "**Court**"), One Bowling Green, New York, New York 10004, on **October 6, 2020, at**

**10:00 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard in person, telephonically or as otherwise directed by the Court.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable Portable Document Format (PDF) (with a hard copy delivered directly to Chambers), and shall be served upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 621; and (ii) counsel for LBHI, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036 (attn.: Arthur Steinberg, Esq. and Scott Davidson, Esq.), so as to be so filed and received by no later than **September 29, 2020, at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion or any relief requested therein, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing in person, telephonically or as otherwise directed by the Court, and failure to appear may

result in relief being granted or denied upon default.

Dated: New York, New York
        August 31, 2020

KING & SPALDING LLP


By:   /s/ Arthur Steinberg
        Arthur Steinberg
        Scott Davidson
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2100

*Attorneys for Lehman Brothers Holdings*
*Inc., as Plan Administrator*

WORKAMER\20666\230003\37449131.v1-8/31/20

**Objection Date and Time: September 29, 2020 at 4:00 p.m.**
**Hearing Date and Time: October 6, 2020 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Attorneys for Lehman Brothers Holdings Inc.,*
*As Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
In re:                                                       :           **Chapter 11**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :           **Case No. 08-13555 (SCC)**
                                                             :
                                    Debtors.      :
-------------------------------------------------------------------X

## MOTION FOR ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER IN CONNECTION WITH CLAIMS HELD BY LEHMAN BROTHERS HOLDINGS INC. REGARDING EXCESS PAYMENTS <u>RECEIVED BY CLAIMANTS ON ACCOUNT OF GUARANTEE CLAIMS</u>

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("**<u>LBHI</u>**" or the "**<u>Plan Administrator</u>**"), as Plan

Administrator pursuant to the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* ("**<u>Plan</u>**"), for LBHI and certain of its subsidiaries

(collectively, the "**<u>Debtors</u>**"), moves for an alternative dispute resolution procedures order in

connection with LBHI's claims against claimants who received excess payments on account of

certain allowed guarantee claims (the "**<u>Motion</u>**"), and respectfully represents as follows:

**Preliminary Statement**

1.      In connection with LBHI's bankruptcy case, various creditors filed guarantee claims against LBHI where the primary obligor was its affiliate, Lehman Brothers Treasury Co. B.V. ("**LBT**").  Those guarantee claims were allowed in the LBHI bankruptcy case ("**Allowed Guarantee Claims**") and claims against LBT ("**Primary Claims**") were also allowed in an insolvency proceeding concerning LBT in Amsterdam, Holland.[1]  Pursuant to the Plan, an Allowed Guarantee Claim against LBHI is deemed satisfied in full when distributions from LBHI, combined with distributions or other consideration provided on account of the corresponding Primary Claim, equal the amount of the Allowed Guarantee Claim.

2.      LBHI has made distributions on account of certain Allowed Guarantee Claims that, combined with the consideration from LBT on the associated Primary Claims, totals more than the amount of the Allowed Guarantee Claims ("**Excess Payment**").  The Plan Administrator has demanded the return of the excess from such holders and, while many of them have complied and returned the excess, others have not.

3.      The holder of the Allowed Guarantee Claim that has received the largest Excess Payment and who has not returned it to the Plan Administrator is Capital Partners Securities Co., Ltd. ("**Capital Partners**").  On September 17, 2019, the Plan Administrator filed a *Motion Of The Plan Administrator For An Order In Aid Of Execution Of The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors* [ECF No. 59936] ("**CPS Motion**"), seeking to compel Capital Partners to return the Excess Payment it received from LBHI.  Capital Partners opposed the CPS Motion, arguing among other things that it was

---

[1]      In general, the Primary Claims are based on structured securities that were issued by LBT and guaranteed by LBHI.

WORKAMER\20666\230003\37449131.v1-8/31/20

merely a conduit for its customers and that those customers were the real parties in interest. Since filing the CPS Motion, LBHI and Capital Partners have attempted to consensually resolve the Excess Payment dispute and such efforts are continuing.

4.      There are over 50 other holders of Allowed Guarantee Claims that received Excess Payments from LBHI. LBHI has sent demand letters to each of them seeking the return of the Excess Payments. Some of them have raised arguments that are similar to those raised by Capital Partners, some have raised other arguments, and many have not responded to LBHI at all.

5.      By this Motion, the Plan Administrator seeks authority to establish an alternative dispute resolution ("**ADR**") procedure to efficiently address claims ("**Excess Payment Claims**") LBHI holds against the claimants ("**Excess Payment Recipients**")[2] that received Excess Payments from LBHI on account of Allowed Guarantee Claims. The proposed ADR procedure will benefit LBHI's creditors by expediting the resolution and recovery on account of the Excess Payment Claims and by increasing distributions to LBHI's creditors. As set forth below, LBHI has used similar ADR procedures in the past, and the procedures set forth herein have been modelled after the previous ADR procedures.

## **Background**

### A.    **The Chapter 11 Cases**

6.      Commencing on September 15, 2008, and periodically thereafter, the Debtors commenced with this Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

---

[2]    Capital Partners is included within the definition of Excess Payment Recipients.

WORKAMER\20666\230003\37449131.v1-8/31/20

7.      By Order dated December 6, 2011 (the "**Confirmation Order**"), the Bankruptcy Court confirmed the Plan, which became effective on March 6, 2012.

8.      On August 10, 2011, the Court entered an Order approving procedures for determining the Allowed amounts of Claims (including Guarantee Claims) with respect to Lehman-based structured securities [ECF No. 19120] ("**Structured Securities Procedures Order**").  The Structured Securities Procedures Order established an ISIN-by-ISIN[3] method of valuing and allowing the Guarantee Claims that correspond to the Primary Claims.  The Plan Administrator has utilized that method in valuing and allowing such Guarantee Claims.

**B.      LBHI's Chapter 11 Plan**

9.      Pursuant to the Plan, LBHI, as Plan Administrator, is authorized "to carry out and implement all provisions of the Plan . . . ."  Plan, § 6.1(b).

10.     Section 8.13 of the Plan is entitled "Maximum Distribution."  This provision of the Plan governs how and to what extent LBHI would be liable for debts unpaid by its subsidiaries in foreign bankruptcy proceedings.  Section 8.13(a) provides, in relevant part:

> An . . . Allowed Guarantee Claim that receives Distributions . . . that combined with Distributions or other consideration provided on the corresponding Primary Claim . . . equal the Allowed amount of such Guarantee Claim . . . shall . . . be deemed satisfied in full as to such . . . Allowed Guarantee Claim against the applicable Debtor.  To the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan to the extent of LBHI's Distribution on account of such Guarantee Claim *less any amounts received by LBHI by way of disgorgement thereof*. [emphasis added][[4]]

---

[3]     "ISIN" stands for "International Securities Identification Numbers."

[4]     Section 8.14(a) of the Plan, which concerns subrogation rights, is not implicated by this Motion.  That Section provides:

> Except as otherwise agreed by the Debtors, to the extent that a Debtor now has or becomes legally entitled to be subrogated to the rights of any Creditor, including on account of any Distributions received by holders of Allowed Guarantee Claims that are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall

11.     Section 8.13(b) of the Plan further provides, in relevant part, that "[i]n no event shall . . . an Allowed Guarantee Claim receive Distributions . . . that combined with Distributions or other consideration provided on the corresponding Primary Claim . . . ***are in excess of the Allowed amount of the Guarantee Claim*** . . . ." (emphasis added).  Thus, holders of Allowed Guarantee Claims are not permitted to receive more than 100% of their allowed claims, when all sources of payment or other consideration received by the holder are taken into account.

12.     Section 8.13(f) of the Plan also provides as follows:

> Any portion of any Distribution made by LBHI to the holder of an Allowed Guarantee Claim that is recovered pursuant to Section 8.13 or 8.14 of the Plan, whether by way of subrogation, ***disgorgement*** or otherwise, shall be treated as Available Cash of LBHI and distributed accordingly.  [emphasis added].

## C.     LBT's Liquidation

13.     Prior to its bankruptcy, LBT was a subsidiary of LBHI and is not a debtor in these Chapter 11 Cases.  On October 8, 2008, LBT was declared bankrupt by the Amsterdam District Court.  Bankruptcy trustees for LBT were thereafter appointed.

14.     On March 13, 2013, the Amsterdam District Court issued a decision approving LBT's composition plan, which became effective on April 3, 2013.

15.     On April 12, 2013, LBT published final valuations for Primary Claims against LBT on an ISIN-by-ISIN basis.  Certain Primary Claims were allowed by LBT in substantially higher amounts than the corresponding Allowed Guarantee Claims were allowed by LBHI.

16.     Pursuant to previous distributions made by LBHI and LBT, certain Primary Claims received consideration sufficient to satisfy LBHI's obligations on the corresponding Allowed

---

be deemed to have consented to the subrogation of its right against any third-party, including, without limitation, a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution, or (ii) the Debtor shall have all rights, title and power as subrogee of the Creditor against any such third-party, including, without limitation, a Primary Obligor, to the fullest extent permitted by applicable law.

Guarantee Claims under Sections 8.13(a) and (b) of the Plan. In that regard, the Plan Administrator previously filed an objection to deem certain Allowed Guarantee Claims satisfied in full in accordance with the Plan. *See The Plan Administrator's Five-Hundred Twenty-First Omnibus Objection To Claims (Satisfied Guarantee Claims)*, dated August 11, 2017 [ECF No. 55962] ("**Satisfied Guarantee Claims Objection**"). In that Objection, the Plan Administrator reserved "all rights to recover amounts paid on account of Satisfied ISIN Claims in excess of amounts permitted by the Plan." Satisfied Guarantee Claims Objection, ¶ 14. The Court entered an Order ("**Satisfied Guarantee Claims Order**") granting the Satisfied Guarantee Claims Objection on September 19, 2017 [ECF No. 56275].

**D.    The Excess Payment Claims**

17.    Each of the Excess Payment Recipients are holders of Allowed Guarantee Claims that are based on Lehman structured securities. These Allowed Guarantee Claim were deemed satisfied in full pursuant to the Satisfied Guarantee Claims Order. As of the date of this Motion, taking into account distributions made by LBHI and LBT to date, the Excess Payments that have not been returned to the LBHI bankruptcy estate total approximately $17 million. Excess Payment Recipients have returned approximately $15 million in Excess Payments (some individual Excess Payments returned to LBHI were in excess of $1 million).

18.    In June 2018, the Plan Administrator sent each of the Excess Payment Recipients a letter explaining that pursuant to the Plan, the Allowed Guarantee Claim had been satisfied in full, and that Excess Payments were received. Attached to each of the Plan Administrator's June 2018 Letters was a schedule detailing (i) the allowed amounts of the Excess Payment Recipient's Allowed Guarantee Claim against LBHI and its Primary Claim against LBT, (ii) the amount of distributions made by LBHI on account of the Allowed Guarantee Claim, (iii) the amount of

distributions made by LBT on account of the Primary Claim, and (iv) the Excess Payment amount. The Plan Administrator's June 2018 Letters requested that the Excess Payment Recipients promptly repay the amount of the Excess Payment to the LBHI bankruptcy estate. Some Excess Payment Recipients responded to the June 2018 Letter, many of those Excess Payment Recipients returned the Excess Payment, and some never responded.

19.    In November 2018, the Plan Administrator sent those Excess Payment Recipients that did not respond to the June 2018 Letter a second letter, which was substantially the same as the Plan Administrator's June 2018 Letter. Certain Excess Payment Recipients responded to the November 2018 letter and some did not.

20.    As noted, on September 17, 2019, the Plan Administrator filed the CPS Motion with this Court. Other holders of Allowed Guarantee Claims that received excess payments were served with the CPS Motion. While certain Excess Payment Recipients previously returned their Excess Payments, and LBHI and CPS have had some success in trying to resolve the issues raised by the CPS Motion, the Plan Administrator believes that the ADR procedures described below will reduce the burden on the Bankruptcy Court and be a more cost-effective and efficient way to deal with all Excess Payment Recipients that have not returned their Excess Payments to the LBHI bankruptcy estate.

## Jurisdiction

21.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Moreover, the Motion and relief requested herein satisfy the requirements for the exercise of post-confirmation jurisdiction by the Bankruptcy Court. The Motion and the relief have a "close nexus" to the bankruptcy case. *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.),* 448 Fed. Appx. 134, 137 (2d Cir. 2011). *See also In re Metro- Goldwyn-Mayer,* 459 B.R.

WORKAMER\20666\230003\37449131.v1-8/31/20

555, 556 (Bankr. S.D.N.Y. 2010) ("The 'close nexus' test is met when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan" (citation and internal quotation marks omitted)).

22.    In addition, "[w]here the plan contains broad jurisdictional provisions, the 'Bankruptcy Court's post-confirmation jurisdiction is as broad as the statutory grant - that is, it extends to all proceedings 'related to' the bankruptcy.'" *See Eastern Airlines, Inc.* v. *General Mills, Inc. (In re Ionosphere Clubs, Inc.),* No. 89 B 10448, 1999 Bankr. LEXIS 1875, at *21 (Bankr. S.D.N.Y. May 12, 1999) (quoting *Back* v. *LTV Corp. (In re Chateaugay Corp.),* 213 B.R. 633, 638 (S.D.N.Y. 1997)).  The Confirmation Order provides that the Bankruptcy Court shall, upon the "Effective Date," retain "exclusive jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without limitation, the matters set forth in Article XIV of the Plan." *See* Confirmation Order 77.  Article XIV of the Plan contains a list of matters over which the Bankruptcy Court retained exclusive jurisdiction, including but not limited to the following:

(b)    To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases;

. . .

(e)    To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

. . .

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce or to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

. . .

(k)    To hear and determine any actions brought to recover all assets of LBHI and property of the estates, wherever located or to determine or declare entitlement to such assets and property

Plan § 14.1.  Section 14.1(b) authorizes generally the initiation of adversary proceedings and

WORKAMER\20666\230003\37449131.v1-8/31/20

contested matters.  Section 14. l(k) dovetails with the Plan provisions directing liquidation of all assets for the purpose of maximizing distributions.  Similarly, Sections 14.1(e) and (i) are provisions intended to retain jurisdiction for the Bankruptcy Court to enforce and implement the Plan, the Confirmation Order and all other orders of the Bankruptcy Court.  Each of these provisions support the exercise of this Court's jurisdiction to implement ADR procedures with respect to the Excess Payment Claims.

## **RELIEF REQUESTED**

23.    Pursuant to section 105(a) of the Bankruptcy Code and the Court's General Order M-452, adopted June 28, 2013, providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York (the "**Standing Order**"), LBHI requests that the Court establish ADR procedures with respect to the Excess Distribution Claims.

## **The Excess Payments**

24.    LBHI estimates it holds Excess Payment Claims against over 50 Excess Payment Recipients that in aggregate total approximately $17 million.  Given the number of Excess Payment Claims and the amounts involved, LBHI believes that the most efficient means, at this time, to enforce its rights to recover the Excess Payments would be through an ADR procedure, rather than through the commencement of litigation against each of the Excess Payment Recipients.  Many common issues exist with respect to the Excess Payment Claims, including, but not limited to (i) the basis to recover the Excess Payments under the Plan and the Bankruptcy Code, and (ii) the proper calculations for the Allowed Guarantee Claims under the Plan.  In furtherance of LBHI's efforts to recover the Excess Payments, LBHI proposes to implement

WORKAMER\20666\230003\37449131.v1-8/31/20

certain ADR procedures which will reduce the cost associated with enforcing LBHI's rights under the Plan, preserve value and promote judicial efficiency (the "**Excess Payment ADR Procedures**").

25.     LBHI's goal is to obtain, for the benefit of its creditors, similar benefits as it has obtained from the implementation of other ADR procedures in these cases, which Judge Peck previously lauded as "indisputably a success" and further observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court. . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion." Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2.  In addition, LBHI anticipates utilizing the Standing Order, which governs mediation of matters in bankruptcy cases and adversary proceedings.

### Excess Payment ADR Disputes

26.     LBHI will designate a dispute (an "**Excess Payment ADR Dispute**") as to any Excess Payment Claim by serving on an Excess Payment Recipient (i) a copy of an order approving this Motion (the form of which is attached hereto as **Exhibit "A"**), and (ii) a notice (an "**Excess Payment ADR Notice**") containing sufficient information regarding the Excess Payment Claim and its demand for its return (together with the Excess Payment ADR Notice, an "**Excess Payment ADR Package**").  Under the proposed procedure, service on or notice to an Excess Payment Recipient of an Excess Payment ADR Package will be deemed adequate if such service or notice is provided to the Excess Payment Recipient, the Excess Payment Recipient's counsel, estate representative, or other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

### **Mandatory Participation**

27.     The proposed ADR order provides that LBHI and each Excess Payment Recipient

(a) must participate in good faith with the proposed Excess Payment ADR Procedures, and (b) must comply with the Excess Payment ADR Procedures, unless otherwise provided in a specific order applicable to a particular Excess Payment ADR Dispute.  The Excess Payment ADR Procedures do not compel LBHI and the Excess Payment Recipient to settle or compromise any dispute, but each party will be required to (i) serve a response in connection with the proposed demand set forth in an Excess Payment ADR Package, (ii) engage in settlement discussions, (iii) participate in any mediation in good faith, (iv) follow the directions of the mediator, and (v) follow the Excess Payment ADR Procedures approved by this Court.

**Removal of Actions**

28.    If an Excess Payment Recipient commences any other action or proceeding in any other court or forum following service upon it of an Excess Payment ADR Package, LBHI reserves the right to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect LBHI's creditors, despite the incomplete status of the steps prescribed under the Excess Payment ADR Procedures.

**Notice/Response Stage**

29.    Upon receipt of the Excess Payment ADR Package, the Excess Payment Recipient will have twenty (20) calendar days to respond in writing with respect to LBHI's demand.  The Excess Payment Recipient may (i) agree to settle the Excess Payment ADR Dispute in accordance with the terms in LBHI's Excess Payment ADR Notice, (ii) propose alternative settlement terms and provide a brief explanation setting forth the reasons for such proposal, or (iii) decline to settle the Excess Payment ADR Dispute and provide a brief explanation setting forth the reasons for such denial ((i), (ii) and/or (iii) together, the "**Statement of Position**").

30.    Upon receipt of an Excess Payment Recipient's Statement of Position, LBHI will

11

have fifteen (15) days to serve a reply (the "**Reply**") to the Excess Payment Recipient, which may include (i) a modification of LBHI's demand in the Excess Payment ADR Notice, (ii) a response to an Excess Payment Recipient's counteroffer, (iii) additional information or briefing supporting the demand made in the Excess Payment ADR Notice, or (iv) a rejection of any counteroffer in which case the Excess Payment ADR Dispute will automatically proceed to the Mediation Stage. If the Excess Payment Recipient fails to respond, LBHI may elect to seek Sanctions (as defined in Paragraph [39] herein).[5]  The Excess Payment ADR Package, Statement of Position, the Reply, and remedies imposed as part of any Sanctions are collectively referred to herein as the "Notice/Response Stage."

### Settlement Conferences

31.    At any time after service of an Excess Payment ADR Package, LBHI or an Excess Payment Recipient may request an initial telephonic settlement conference (a "**Settlement Conference**") (or in person if the parties agree) to be held within five (5) calendar days of the receipt of such request (the "**Notice of Settlement Conference**").  The purpose of the Settlement Conference will be for the parties to attempt to reach a settlement prior to mediation.  Upon receipt of the Notice of Settlement Conference, the recipient will be required to respond within two (2) calendar days by either accepting the proposed date and time in the Notice of Settlement Conference or proposing an alternate date and time that is no later than five (5) calendar days from the date and time in the Notice of Settlement Conference.  If the parties are not able to agree on a time and date for the Settlement Conference, the Excess Payment ADR Dispute will proceed to the Mediation Stage (as defined below).

32.    The proposed procedures provide that the parties will allocate approximately one

---

[5]    LBHI may also be subject to Sanctions should it fail to mediate in accordance with the requirements of the proposed Order.  *See, infra*.

(1) hour for the initial Settlement Conference and that only LBHI and its representatives and the Excess Payment Recipient and its representatives will participate.  All discussions between the parties and the contents of any papers submitted prior to the Mediation Stage (as defined below) shall remain confidential and privileged in accordance with the confidentiality provisions of the proposed order and shall not be discoverable or admissible as evidence in any subsequent litigation of the Excess Payment ADR Dispute or elsewhere, except as provided by further order of this Court.

### **Mediation Stage**

33.    If LBHI and the Excess Payment Recipient are not able to resolve the Excess Payment ADR Dispute during the Notice/Response Stage, such dispute will proceed to mediation (the "**Mediation Stage**").  LBHI seeks to have the Court select a slate of mediators who will hear and preside over all mediations hereunder in order to permit multiple mediations to occur simultaneously. Once a matter has reached the Mediation Stage, LBHI will select a mediator, and LBHI and the Excess Payment Recipient together will contact the mediator to schedule the initial mediation date.  LBHI seeks to use the register of mediators approved by the Bankruptcy Court as the list of mediators whom LBHI seeks to have designated as approved mediators.[6]  These mediators already serve as panel mediators for the United States Bankruptcy Court for the Southern District of New York.  LBHI reserves the right to seek to have the Court supplement this list with additional mediators.

34.    If the initially selected mediator is unwilling or unavailable to serve, then LBHI shall select an alternate mediator from the approved list.  In the unlikely event that none of the mediators on the approved list are willing and/or available, the parties will select an alternate

---

[6]    The register of mediators is located at http://www.nysb.uscourts.gov/register-mediators.

mediator as mutually agreed in writing by all parties subject to the applicable Excess Payment ADR Dispute. If LBHI and the Excess Payment Recipient cannot agree upon a mediator within ten (10) calendar days after the Notice/Response Stage, the Court will appoint one or more mediators.

35.     The mediator will have the broadest possible discretion as provided under the Standing Order.

36.     LBHI shall submit to the mediator (i) the Excess Payment ADR Package, (ii) the Excess Payment Recipient's Statement of Position, (iii) the Reply, if any, and (iv) any other materials exchanged by the parties reflecting the parties' relative positions ("**Mediation Materials**"). No additional papers shall be submitted to the mediator unless requested by the mediator. All Mediation Materials will be delivered to the mediator at least ten (10) days prior to the scheduled mediation proceeding and will not be filed with the Court.

37.     All parties to an Excess Payment ADR Dispute will appear by video conference at the mediation proceeding. Each party must have a business principal in attendance having settlement authority. In addition, the parties' counsel may attend the mediation proceeding.

### General Mediation Rules

38.     Upon the filing of an application, and after notice and a hearing, the Court may sanction the parties for failing to comply with the Excess Payment ADR Procedures. If the mediator reports to the Court that a party subject to the Excess Payment ADR Procedures is not cooperating, the Court may, on its own motion, schedule a hearing to consider sanctions ("**Sanctions**") against that party for its failure to cooperate in good faith. Sanctions may include but are not limited to (i) attorneys' fees; (ii) fees and costs of the mediator; and/or (iii) termination of the Excess Payment ADR Procedures with respect to the at issue Excess Payment Claim.

WORKAMER\20666\230003\37449131.v1-8/31/20

Litigation with respect to the issuance of Sanctions will not delay the commencement of the Mediation Stage of these procedures upon the completion of the Notice/Response Stage.

39.    All proposed deadlines may be modified by the mutual consent of LBHI and the applicable Excess Payment Recipient or by the Court for cause shown.    All parties will be responsible for their counsel fees and shall share equally in the fees and expenses of the mediator.

## Confidentiality

40.    The proposed order approving this Motion and the Excess Payment ADR Procedures incorporates the confidentiality provisions of section 5.0 of the Standing Order.    No statements or arguments made or positions taken by the mediator, LBHI or an Excess Payment Recipient during any part of the ADR process, including Settlement Conferences and the Mediation Stage, may be disclosed for any purpose by the mediator or by any such parties (or their attorneys or advisors) to the Court or to any third party.    Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving in such capacity will remain confidential and will not be provided to the Court, unless they would be otherwise admissible.    In addition, the mediator will not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; provided, however, the mediator may report to the Court the status of the mediation efforts but will not disclose the content thereof.

41.    Rule 408 of the Federal Rules of Evidence will apply to all aspects of the Excess Payment ADR Procedures including the Settlement Conferences and Mediation Stage.

## The Mediation Procedures Should Be Approved

42.    Section 1.1 of the Standing Order permits the Court to assign a matter to mediation upon the motion of a party in interest, the U.S. Trustee, or on its own motion.    Further, Standing Order section 1.3 permits the Court to assign an adversary proceeding, contested matter, or other

15

dispute to mediation. Moreover, section 105(a) of the Bankruptcy Code grants bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *New Eng. Dairies, Inc v. Dairy Mart Conv. Stores, Inc. (In re Dairy Mart Conv. Stores, Inc.).* 351 F.3d 86, 91 (2d Cir. 2003) (quoting 11 U.S.C. § 105(a)).

43.    Thus, the Standing Order expressly states the intent of the Court to facilitate the use of mediation in all matters. Consistent with that intent, LBHI respectfully requests that the Court exercise its authority to implement the Excess Payment ADR Procedures with respect to the Excess Payment ADR Disputes.

44.    The litigation of the Excess Payment Claims without at least exploring the possibility of a cost-efficient and prompt resolution would not serve the interest of LBHI and its creditors in maximizing the value of LBHI's estate. Given the Debtors' success in implementing ADR Procedures in other contexts, it is reasonable to assume that a similar level of efficiency and progress can be achieved with respect to promptly resolving the Excess Payment Claims.

45.    LBHI believes that the Excess Payment ADR Procedures will help develop a productive and consensual resolution process that will reduce the costs associated with the litigation and collection of LBHI's Excess Payment Claims.

46.    The relief requested in the Motion is substantially similar to the relief that has been granted by this Court in connection with similar motions to implement mediation procedures, both in these cases and in other large chapter 11 cases. *See, e.g., In re Lehman Bros. Holdings Inc., et al.,* Case No. 08-13555 (Bankr. S.D.N.Y. Nov. 14, 2018) (Amended Alternative Dispute Resolution Procedures Order For Indemnification Claims Of The Debtors Against Mortgage Loan Sellers) [Docket No. 59085]; *In re Lehman Bros. Holdings Inc., et al.*, Case No. 08-13555 (Bankr. S.D.N.Y. July 18, 2014) (Alternative Dispute Resolution Procedures Order for Indemnification

Claims of Debtors Against Mortgage Loan Sellers) [Docket No. 45277] *In re Lehman Bros. Holdings Inc., et al.,* Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 19, 2009) (Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts) [Docket No. 5207]; *In re Enron Corp.,* Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862] (ordering mediation procedures with respect to twenty-four adversary proceedings regarding certain trading disputes); *In re Ames Dep't Stores, Inc., et al.,* Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195] (ordering mandatory mediation procedures with respect to over 900 adversary proceedings that the debtors commenced against various preference defendants).

47.    The fundamental purpose of mediation is to allow an unbiased third party to assist adversaries in reaching resolution of issues upon which they disagree.  LBHI submits that the Excess Payment ADR Procedures will be a worthwhile process that will enable it to reduce its costs and expenses of collection, maximize the value of the Excess Payment Claims and promote judicial efficiency by consensually resolving many of these claims.  Based upon the foregoing, LBHI respectfully requests that the Court approve the Excess Payment ADR Procedures.

48.    Capital Partners will be included in the Excess Payment ADR Procedures.

49.    To the extent an Excess Payment Recipient intends to argue that it does not have liability to return the Excess Payment because it was a conduit that passed on the Excess Payment to one or more third parties (an argument which, for avoidance of doubt, LBHI wholly rejects), such third party recipients of such Excess Payments shall also be considered Excess Payment Recipients for purposes of the Excess Payment ADR Procedures and be required to cooperate fully in the Excess Payment ADR Procedures.  The Excess Payment Recipient that asserts that it was a conduit will be directed to forward the order approving this Motion to those third parties that it

17

asserts are the recipients of the Excess Payments, and such forwarding will constitute judicial notice to such recipients.

## Notice

50.     The Plan Administrator has served notice of this Motion on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Capital Partners Securities Co., Ltd.; (vi) all other holders of Allowed Guarantee Claims who received Excess Payments; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the Second Amended Order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

51.     Except for the relief requested in the CPS Motion, no previous request for the relief sought herein has been made by LBHI to this or any other court.

WHEREFORE, LBHI respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
       August 31, 2020

KING & SPALDING LLP


By:  ___/s/ Arthur Steinberg___
        Arthur Steinberg
        Scott Davidson
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2100

*Attorneys for Lehman Brothers Holdings Inc., as Plan Administrator*

18

**EXHIBIT "A"**

**PROPOSED FOR OF ORDER**

WORKAMER\20666\230003\37449131.v1-8/31/20

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
In re:                                                          :          **Chapter 11**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :          **Case No. 08-13555 (SCC)**
                                                                :
                                            **Debtors.**    :
-------------------------------------------------------------------------X

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER IN CONNECTION WITH CLAIMS HELD BY LEHMAN BROTHERS HOLDINGS INC. REGARDING EXCESS PAYMENTS RECEIVED BY CLAIMANTS ON ACCOUNT OF GUARANTEE CLAIMS

Upon the motion, dated August 28, 2020 (the "**Motion**"),[1] of Lehman Brothers Holdings Inc. ("**LBHI**" or "**Plan Administrator**"), as Plan Administrator, for the establishment of alternative dispute resolution ("**ADR**") procedures with respect to LBHI's Excess Payment Claims against the Excess Payment Recipients (the "**Excess Payment ADR Procedures**") in the Chapter 11 Cases of LBHI and its affiliated debtors, all as more fully described in the Motion, it is:

**HEREBY FOUND AND DETERMINED that:[2]**

A.      The Court has jurisdiction to enter this Order as the matter has a close nexus to the chapter 11 cases and the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "**Plan**"), confirmed by Order dated December 6, 2011 (the "**Confirmation Order**").  Pursuant to Paragraph 77 of the Confirmation Order and Section 14.1 of the Plan, the Court retained jurisdiction over the matter.  Venue in this Court for the Motion is appropriate pursuant to 28 U.S.C. § 1408.

B.      Due and proper notice of the Motion has been provided in accordance with the

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.
[2]      Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, where appropriate.

Second Amended Order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635],

C.     LBHI has asserted that it holds Excess Payment Claims against over 50 Excess Payment Recipients, involving approximately $17 million.

D.     Certain common issues exist regarding the Excess Payment Claims, including , but not limited to (i) the basis to recover the Excess Payments under the Plan and the Bankruptcy Code, and (ii) the proper calculations for the Allowed Guarantee Claims under the Plan.

E.     Substantial value may be recovered for the benefit of LBHI's creditors and judicial efficiency can be promoted if expedient resolution of disputes and recoveries for such claims can be achieved without the need for trial of adversary proceedings, contested matters or other litigation.

F.     Similar proceedings ordered in these and other complex chapter 11 cases have contributed to the effective administration of the proceedings and have reduced costs for all parties.

## **RELIEF**

The procedures described below are ORDERED to promote consensual resolution with respect to the Excess Payment Claims, and to encourage effective communication, consultation, negotiation, and, when necessary, mediation procedures between the affected parties.

1.     <u>Standing Mediation Order</u>. All provisions of the General Order M-452, adopted June 28, 2013, providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York, and all existing and further amendments thereto (the "**<u>Standing Order</u>**") shall apply to the mediations to be conducted under this Order.  To the extent there is any conflict between the Standing Order and

this Order, the terms of this Order shall govern.

2. <u>Excess Payment Recipients</u>. To date, LBHI has identified over 50 Excess Payment Recipients involving more than $17 million against whom there is reasonable cause for LBHI to believe that it holds Excess Payment Claims. To the extent an Excess Payment Recipient intends to argue that it does not have liability to return Excess Payments because it was a conduit that passed on the Excess Payment to one or more third parties, such third party recipients of such Excess Payment shall also be considered Excess Payment Recipients for purposes of the Excess Payment ADR Procedures and shall be required to cooperate fully in the Excess Payment ADR Procedures. The Excess Payment Recipient that asserts that it was a conduit is directed to forward this Order to those third parties that it asserts are the recipients of the Excess Payments, and such forwarding shall constitute judicial notice to such recipients.

3. <u>Excess Payment ADR Disputes</u>. LBHI will designate a dispute (an "**<u>Excess Payment ADR Dispute</u>**") as to any Excess Payment Claim by serving the following on an Excess Payment Recipient:

a. A copy of this Order; and

b. An Excess Payment ADR Notice (as defined below) (collectively, the "**<u>Excess Payment ADR Package</u>**"). For purposes of the Excess Payment ADR Procedures, service on or notice to an Excess Payment Recipient shall be deemed adequate if such service or notice is provided to the Excess Payment Recipient, the Excess Payment Recipient's counsel, legal guardian, estate representative, or other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

WORKAMER\20666\230003\37449131.v1-8/31/20

4.    <u>Settlement of Disputes During the Excess Payment ADR Procedures</u>.  Nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, an Excess Payment ADR Dispute at any time before, during, or following the designation of an Excess Payment ADR Dispute to the Excess Payment ADR Procedures by the mutual consent of the parties, provided that such settlement either (i) complies with any applicable Orders in these bankruptcy cases permitting such settlement, or (ii) is approved by specific order of the Court.

5.    <u>Pre-Mediation Stage Confidentiality</u>.  All discussions between the parties and the contents of any papers submitted prior to the Mediation Stage (as defined herein) shall remain confidential and privileged in accordance with Paragraph [12] of this Order and shall not be discoverable or admissible as evidence in any subsequent litigation of the Excess Payment ADR Dispute or elsewhere, except as provided by further order of this Court.

6.    <u>Participation Mandatory</u>. Unless otherwise provided in a specific order applicable to a particular Excess Payment ADR Dispute or a particular Excess Payment Recipient, after service of an ADR Package on an Excess Payment Recipient:

a.    Compliance with the Excess Payment ADR Procedures in this Order is mandatory in the specified Excess Payment ADR Disputes for both LBHI and the Excess Payment Recipient; and

b.    No party is required to settle or compromise any dispute or enter into a particular settlement or compromise.  However, once LBHI serves an Excess Payment ADR Package upon an Excess Payment Recipient, the Excess Payment Recipient must serve the required responses.  LBHI and the Excess Payment Recipient must also engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow the directions of the mediator, and otherwise

4

comply with the Excess Payment ADR Procedures specified below for all Excess Payment ADR Disputes covered by such notice.

## NOTICE/RESPONSE STAGE

7.    <u>Notice/Response</u>.  The initial stage of the Excess Payment ADR Procedures will be a notice/response stage, providing the parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve an Excess Payment ADR Dispute on a consensual basis (the "**Notice/Response Stage**").  The Notice/Response Stage shall include:

a.    <u>Excess Payment ADR Notice</u>.  LBHI shall serve upon an Excess Payment Recipient a notice containing sufficient information regarding the Excess Payment ADR Dispute to make the Excess Payment Recipient aware of the nature of LBHI's affirmative claim and of its demand for settlement, including an amount of monetary recovery LBHI would accept in full settlement and compromise (an "**Excess Payment ADR Notice**").

b.    <u>Excess Payment Recipients' Response to Notice</u>.  A Excess Payment Recipient must respond to the Excess Payment ADR Notice in writing through a "Statement of Position" within twenty (20) calendar days from the date of service of the Notice. The response options available to an Excess Payment Recipient are as follows (the "**Responses**"):

i.    <u>Agreeing to Settle the Demand</u>.  If an Excess Payment Recipient agrees to settle the demand in the Excess Payment ADR Notice, the Excess Payment Recipient shall state in writing that the offer of settlement in the Excess Payment ADR Notice is accepted.   The parties will then execute a

WORKAMER\20666\230003\37449131.v1-8/31/20

settlement and general release (including a confidentiality provision) and, if the matter is in litigation or other contested matter, LBHI shall dismiss any applicable claims in a lawsuit or adversary proceeding with prejudice upon execution of the release and receipt of the settlement payment; or

    ii.    <u>Denying the Demand</u>.  An Excess Payment Recipient may decline to settle for the amount stated in the demand in the Excess Payment ADR Notice, in which case the Excess Payment Recipient must include a brief explanation in the Response to the Excess Payment ADR Notice setting forth the reason(s) for such denial.  In addition, the Excess Payment Recipient may provide a counteroffer to the demand in the Excess Payment ADR Notice, in which case the Excess Payment Recipient must include a brief explanation setting forth the reason(s) for such counteroffer.

c.    <u>Failure to Respond</u>.  Failure to provide a timely Response to the Excess Payment ADR Notice, as described in Paragraphs [7](b)(i) and (ii), may result, at the option of LBHI, in an application to the Court for Sanctions as set forth below, including fees and costs, termination of the mediation and, at LBHI's discretion, institution of an action against the Excess Payment Recipient, or immediate entry into the mediation stage.

d.    <u>Reply to Response</u>.  LBHI shall have fifteen (15) days from the date of the receipt of the Response to serve a reply to the Response to the Excess Payment ADR Notice, in which LBHI may (i) modify its demand, (ii) respond to any counteroffer, (iii) provide additional information or briefing in support of its demands in the Excess Payment ADR Dispute, or (iv) reject any counteroffer in which case the

6

Excess Payment ADR Dispute will automatically proceed to the Mediation Stage. If LBHI fails to respond within this period, the Excess Payment ADR Dispute will automatically proceed to the Mediation Stage.

8.      <u>Request for Initial Settlement Conference</u>.  At any time in the Notice/Response Stage, either LBHI or an Excess Payment Recipient may request an initial telephonic settlement conference by written request, to be held within five (5) calendar days.  Within two (2) calendar days of a receipt of such a request, the other parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.  If an acceptable date cannot be achieved through this process, the parties shall immediately proceed to the Mediation Stage. At least one hour shall be reserved for the initial conference to discuss settlement.  No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this Paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions; the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if both parties agree in writing.

## **MEDIATION STAGE**

9.      <u>Mediation</u>. Excess Payment ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "**Mediation Stage**").

a.      <u>Initializing Mediation</u>.  LBHI and the Excess Payment Recipient together shall contact the mediator to schedule the initial mediation date.

b.    <u>Powers of Mediator</u>.  The mediator shall have the broadest possible discretion consistent with the Standing Order, including the discretion to certify specific legal issues to the Court for decision.

c.    <u>Choice of Mediator</u>.  The mediators identified on the Court's register of mediators, found at http://www.nysb.uscourts.gov/register-mediators, are APPOINTED as the mediators for Excess Payment ADR Disputes reaching the Mediation Stage.  LBHI shall select a mediator from the foregoing list.  If the initially selected mediator is unwilling and/or unavailable to serve, then LBHI shall select an alternate mediator from the register of mediators.  If none of the foregoing are available to serve as mediator, an alternate mediator shall be selected as mutually agreed in writing by all parties to a specific Excess Payment ADR Dispute or group of related Excess Payment ADR Disputes.  Any such alternative shall be deemed to have been appointed upon entry into a written stipulation to that effect by LBHI and Excess Payment Recipients participating in the applicable Excess Payment ADR Dispute or Disputes.  If the parties cannot agree upon a selection of mediator within ten (10) calendar days of the completion of the Notice/Response Stage, the Court shall appoint one or more mediators.

d.    <u>Mediation Materials</u>.  LBHI shall submit to the mediator (i) the Excess Payment ADR Package, (ii) the Statement of Position, (iii) the Reply, if any, and (iv) any other materials exchanged by the parties reflecting the parties' relative positions ("**<u>Mediation Materials</u>**").  No additional papers shall be submitted to the mediator unless so requested by the mediator.  All mediation materials will be delivered to the mediator at least ten (10) days prior to the scheduled mediation proceeding and

8

will not be filed with the Court.

e.    <u>Appearance at Mediations</u>.  All participants in the mediation for the applicable Excess Payment ADR Dispute must appear by video conference or such other means as agreed to by the parties, with a business principal who has settlement authority.  Counsel may also be present and participate.

## OTHER PROVISIONS

10.    <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by: (i) the mutual consent of LBHI and the Excess Payment Recipient, or (ii) the Bankruptcy Court, for cause shown.

11.    <u>Sanctions for Parties</u>.  LBHI and each Excess Payment Recipient must participate in good faith with these Excess Payment ADR Procedures with regard to the ADR Disputes specified in the applicable Excess Payment ADR Notice.  If, after notice and a hearing, the Court determines that LBHI or the Excess Payment Recipient have not complied with the Excess Payment ADR Procedures in good faith in connection with any Excess Payment ADR Dispute, LBHI or the Excess Payment Recipient may be subject to such sanctions as the Court deems appropriate (the "**<u>Sanctions</u>**").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the mediation procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions.  Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions shall include, but are not limited to:  (i) attorneys' fees; (ii) fees and costs of the mediator; and/or (iii) termination of the Excess Payment ADR Procedures with respect as the at issue Excess Payment Claim.

12.    <u>Confidentiality</u>.  The confidentiality provisions of section 5.0 of the Standing Order

are hereby incorporated by reference into this Order. No statements or arguments made or positions taken by the mediator, LBHI, or an Excess Payment Recipient during any part of the ADR process, including Settlement Conferences and the Mediation Stage, may be disclosed by the mediator or any such parties or their attorneys and advisors to the Court or any third party. Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving in such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible. In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; provided, however, the mediator may report to the Court the status of the mediation efforts but shall not disclose the content thereof. Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Excess Payment ADR Procedures including Settlement Conferences and the Mediation Stage.

13.   <u>Removal</u>.  If an Excess Payment Recipient commences any action or proceeding in any other court or forum following service upon it of an Excess Payment ADR Package, LBHI may seek to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect LBHI's creditors, despite the incomplete status of the steps prescribed under the Excess Payment ADR Procedures.

14.   <u>Jury Trials Unaffected</u>.  Except to the extent an Excess Payment Recipient affirmatively chooses the mediation option set forth herein, participation in the Excess Payment ADR Procedures shall not waive any right to a jury trial that might otherwise exist.

15.    <u>Fees</u>. Except as otherwise provided herein, each party to the Mediation shall bear its own costs and counsel fees in connection with Mediation and share equally in the reasonable fees and costs charged by the Mediator.

**SO ORDERED:**

_____, 2020
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WORKAMER\20666\230003\37449131.v1-8/31/20