**PLAN ADMINISTRATOR'S MOTION TO COMPEL COMPLIANCE WITH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER WITH RESPECT TO CAPITAL PARTNERS SECURITIES CO., LTD.**

Capital Partners Securities Co., Ltd. ("CPS") by Mitsugu Saito, Executive Officer of CPS hereby submits this response (the "Response") in opposition to the Motion to compel CPS to comply with the procedures set forth in the Alternative Dispute Resolution Procedures Order In Connection With Claims Held By Lehman Brothers Holdings Inc. Regarding Excess Payments Received By Claimants On Account Of Guarantee Claims, entered by the Court on October 5, 2020 [ECF No. 60886], dated March 1, 2021 (the "Motion"). In support of its Response, CPS respectfully states as follows:

<u>**CPS' MAIN OBJECTION**</u>

1.  CPS respects the intent of the ADR order and cooperates sincerely.

2.  As a Japanese securities company, CPS must comply with the provisions of the ADR order in the context of the laws of Japan.

3.  CPS engaged Mayer Brown as attorney in 2019 as the motion was against CPS so that Lehman should understand that CPS has been merely a conduit and CPS has not gained any single dollar and that distributions from Lehman have been directly remitted to the ultimate investors as a fiduciary duty. Then Lehman has requested CPS to send Lehman's notices to the ultimate investors on behalf of them because it has been firmly convinced that CPS had been a conduit. At Lehman's request, CPS sent Lehman's notices

to the ultimate investors five times by registered mail.

As a result, two ultimate investors have paid Lehman the overpayments. Lehman's receipt of overpayments from these ultimate investors is a strong evidence that CPS has been a merely conduit.

On the other hand, under the ADR order it is the ultimate investors who should return the overpayments. CPS participates in the ADR on behalf of the ultimate investors under the agreements, but the Agreement Concerning Foreign Securities Transaction Account [Exhibit A] terms and conditions requires that the cost of the ultimate investors' refund of the overpayment must be collected from the beneficiary, ultimate investors. At the same time, if such costs, including legal fees and interpretations for ADRs, are incurred, CPS must obtain consent beforehand from ultimate investors. However, it is most unlikely that the ultimate investors will approve the burden of such costs with respect to this matter, because the overpayments were caused by Lehman's mistakes to date.

In addition, CPS violates the Financial Instruments and Exchange Act as illegal payoff if it bears the cost of refunding overpayments attributable to the ultimate investors. For these reasons, CPS must reduce such costs, including attorneys' fees and translators, as much as possible. This is why CPS does not appoint an attorney in the ADR procedures and requests Lehman's attorney, bilingual attorney in Tokyo on its behalf. In the first place,

the overpayments are caused by the negligence of Lehman not CPS and the ultimate investors, who are the holder of the defaulted bonds and have no responsibility of receiving overpayments.

Furthermore, in light of the fact that the ultimate investors invested in the bond in Japan at the solicitation of the Tokyo Branch of Lehman Brothers and suffered big losses. Under the ADR procedures, the Mediator is supposed to explain the overpayment in Japanese based on the principle of equity.

4.   CPS is obligated under the Agreement Concerning Foreign Securities Transaction Account to reduce the costs attributable to the ultimate investors for the best interests of the ultimate investors as fiduciary duty of a securities company. The purpose of this ADR is to refund the overpayment, and it is unreasonable for the ultimate investors to bear the legal fees because of the overpayment caused by Lehman. CPS is willing to accept the assistance of attorneys if Lehman, which is liable for overpayments, bears the legal fees attributable to the ultimate investors.

5.   CPS believes that it has communicated with the Mediator through e-mail methods and that there are no problems in communicating with them. CPS submits such e-mail communication records as evidence as attached [Exhibit B].

6.   (i) CPS's position is to minimize any expenses other than the ultimate investors'

refund amount in order to facilitate the refund of overpayments. In addition, CPS does not believe that an attorney is necessary under the ADR procedure.

(ii)   CPS has agreed to pay the arbitration costs by e-mail to the Mediator dated February 2, 2021 [Exhibit C]. A copy of this has also been sent to Lehman's attorney. As no mediation agreement has been reached to date, it is obvious that no payment has been made.

(iii)  CPS participates in ADRs on behalf of the ultimate investors as a conduit. As noted earlier, CPS cannot accept the costs attributable to the ultimate investors without the prior consent of the ultimate investors in accordance with the Agreement Concerning Foreign Securities Transaction Account. King & Spalding's Tokyo office has already been in direct negotiations with the ultimate investors in Japanese as a translator of Lehman's attorney and has succeeded in refunding the overpayment of at least two investors. Therefore, CPS believes that it is natural that King & Spalding's Tokyo office should continue being as a translator for the ADR.

(iv)  CPS believes that the ADR in written forms is the best and only solution in communication with over 200 ultimate investors.     In addition, as from the next Zoom meeting, CPS proposes to prepare the best translators from group companies.

(v) CPS cannot disclose personal information to a third party under Act on the

Protection of Personal Information in Japan. If Lehman requires information about the ultimate investors, it should seek disclosure requests from the Tokyo District Court. CPS can disclose such information upon Japanese court order.

7.    CPS does not accept the assertion by the plaintiff that CPS is not complying with ADR order in good faith. CPS has been sincerely cooperating with attorneys for Lehman since 2019 regarding a payback of overpayments from investors, by sending letters 5 times on behalf of Lehman. As a result, one investor paid back through CPS and another investor has paid back directly to Lehman. Another investor has agreed to pay back the overpayment. However, Lehman has never responded to the investor's questions as to why he has to pay back more than he has received.

CPS believes more investors will agree to pay back overpayments under ADR procedures if CPS and the Mediator cooperate closely to explain respective investor's questions carefully.

CPS has urged the Mediator by e-mail of February 22, 2021 [Exhibit D] to move forward the ADR, so that the ultimate investors would sit at the table for negotiations.

In spite of the Mediator's e-mail dated March 4, 2021, it is regrettable that this motion is brought by Lehman. The motion discourages the efforts made for the ADR procedures and should be immediately withdrawn.

Dated: March 15, 2021

Mitsugu Saito
Executive Officer
For and on behalf of
Capital Partners Securities Co., Ltd.
Shikoku Building, 1-13-7 Uchikanda
Chiyoda-ku, Tokyo 101-0047
Japan

Exhibit A

The Agreement Concerning Foreign Securities Transaction Account

English translation by Japan Securities Dealers Association

**(Reference Form of the Agreement Concerning Foreign Securities Transactions Account that is prescribed in Article 3, Paragraph 2 of the Rules: enforced on January 1, 2011)**

# AGREEMENT CONCERNING FOREIGN SECURITIES TRANSACTIONS ACCOUNT

## CHAPTER I.    GENERAL PROVISIONS

**(Purpose of Agreement)**

**Article 1** The purpose of this Agreement shall be to clarify the rights and obligations concerning Foreign Securities (Foreign Securities under the provisions of the rules by Japan Securities Dealers Association or a Financial Instruments Exchange; the same shall apply hereinafter) transactions to be entered into by you (hereinafter referred to as the "Customer") with our Company.

2.        The Customer shall agree to the matters set forth in this Agreement with respect to the entrustment of (a) sale or purchase or other transactions of Foreign Securities in a Financial Instruments Exchange Market in Japan (hereinafter referred to as the "Domestic Entrustment Transactions"), (b) agency of sale or purchase order of Foreign Securities to a Financial Instruments Market outside Japan (including an OTC market; the same shall apply hereinafter) (hereinafter referred to as the "Foreign Transactions"), (c) OTC transactions in Japan of Foreign Securities (hereinafter referred to as the "Domestic OTC Transactions"), and (d) safekeeping of such Foreign Securities to our Company (including the management of the quantity described or recorded in an account of such Foreign Securities in case the rights that should be described in the Foreign Securities do not require the issuance of securities certificates in accordance with laws and regulations governing the issuance of such Foreign Securities and such quantity is included in the rights that should be described in the securities if a securities certificate is not issued (hereinafter referred to as "Deemed Foreign Securities"); the same shall apply hereinafter), and shall conduct such transactions at its own judgment and responsibility.

The above-mentioned Domestic Entrustment Transactions, Foreign Transactions, and Domestic OTC Transactions shall not include sale and purchase in connection with margin trading, purchase prices that are borrowed for margin trading, or transactions related to the repayment of securities for short selling.

**(Dealing Through Foreign Securities Transactions Account)**

**Article 2** In connection with any Foreign Securities transactions to be entered into by the Customer with our Company, the execution of a sale or purchase, settlement of the sale or purchase price, custody of securities, and all other matters, including the receipt or payment of money, etc. relating to such Foreign Securities transactions, shall be dealt with through the "Foreign Securities Transactions Account"

(hereinafter referred to as the "Account").

**(Matters to be Observed)**

**Article 3** In connection with any Foreign Securities transactions to be entered into by the Customer with our Company, the Customer shall comply with the provisions of Japanese laws and regulations, and the provisions of the rules, decisions, and practices established by the Financial Instruments Exchange in Japan on which such sale or purchase of securities is executed (hereinafter referred to as the "Exchange"), Japan Securities Dealers Association and securities depositories (including Japan Securities Depository Center Inc. and other securities depositories designated by the Exchange; the same shall apply hereinafter), to the extent that such provisions relate to the sale and purchase in such Foreign Securities, and shall follow any guidance given by our Company with respect to the laws, regulations, and practices, etc. of the country or region (hereinafter referred to as "Countries, etc.") of the issuer of such Foreign Securities (for depository receipts, a depository organization related to such depository receipts; the same shall apply hereinafter).

## CHAPTER II.   DOMESTIC ENTRUSTMENT TRANSACTIONS OF FOREIGN SECURITIES

**(Deposit of Foreign Securities for Commingled Custody, Etc.)**

**Article 4** The Foreign Securities to be deposited by the Customer with our Company (excluding Foreign Shares, etc. and Foreign Share options; hereinafter referred to as the "Deposited Securities") shall be deposited under a contract of deposit for commingled custody. Foreign Shares, etc. and Foreign Share options of which the quantity is recorded or described in the account of the Customer in our Company (hereinafter referred to as the "Transferred Securities") shall be properly managed in accordance with laws and regulations, provisions of the rules, decisions, and practices established by a securities depository, to the extent that such provisions relate to the sale and purchase in Foreign Securities based on the nature of rights held by the customer.

2.        The Deposited Securities shall be deposited under the name of our Company with a securities depository for commingled custody. In the event that the Deposited Securities are in registered form, the securities depository shall transfer such securities to the name designated by the securities depository. For Transferred Securities, the quantity of the securities described or recorded in the account of our Company in a local custodian that is prescribed in the next Paragraph shall be transferred to the account of the securities depository designated by the local custodian and the quantity shall be described or recorded on such account.

3.        The Deposited Securities to be deposited for commingled custody or the Transferred Securities to be transferred to the account of the securities depository under the preceding Paragraph (hereinafter

referred to as the "Deposited Securities, etc.") shall be held in custody or managed by a custodian located in the Countries, etc. of the issuer of such the Deposited Securities, etc. or in the Countries, etc. deemed appropriate by the securities depository (hereinafter referred to as the "Local Custodian") in accordance with the laws, regulations, and practices of the Countries, etc. where the Local Custodian is located and the rules, etc. of the Local Custodian.

4.       With respect to deposit, record, or description under Paragraph 1 above, the Customer shall pay our Company the actual costs incurred by our Company for each instance, unless the Customer deposits Foreign Securities with our Company in the Countries, etc. in which the Local Custodian is located.

**(Joint Ownership Right of Deposited Securities)**

**Article 4-2** When the Customer deposits Foreign Securities with our Company, the Customer shall have the joint ownership right of the Foreign Securities he/she deposited, the Foreign Securities of the same issue that are deposited by other customers with our Company, and the Foreign Securities of the same issue that are deposited by our Company with a securities depository and held for commingled custody by the securities depository. The Customer of the Foreign Share, etc. that are described or recorded in the account of our Company in the Local Custodian shall obtain the rights under the governing law applicable to such Foreign Securities correspondent to the quantity described or recorded in the account in the securities depository of the said Local Custodian.

2.       The joint ownership right of the Deposited Securities owned by the Customer shall be transferred when our Company records the transferred quantity in the account of the Customer. The right in connection with the Transferred Securities owned by the Customer shall be transferred when our Company describes or records the transferred quantity in the account of the Customer.

**(Sale or Delivery of Deposited Securities in a Financial Instruments Market Outside Japan)**

**Article 5** If the Customer intends to sell the Deposited Securities, etc. in a Financial Instruments Market outside Japan, or intends to receive the delivery of such Deposited Securities, etc., our Company shall move the Deposited Securities, etc. to the custody of our Company or a custodian designated by our Company (hereinafter referred to as the "Company's Custodian") from the Local Custodian, or transfer to the account designated by our Company, and sell or deliver them to the Customer.

2.       With respect to the delivery under the preceding Paragraph, the Customer shall pay our Company the actual costs incurred by our Company for each instance.

**(Treatment in Case of Delisting)**

**Article 6** If the Deposited Securities, etc. are delisted from the Exchange, our Company shall transfer such Deposited Securities, etc. from the Local Custodian to the Company, the Company's Custodian, or transfer to the account designated by our Company on or after the date of such delisting.

2.        Notwithstanding the provision in the preceding Paragraph, if a securities depository confirms that the Deposited Securities, etc. to be delisted has no value as securities, our Company shall treat such Deposited Securities, etc., under the rules provided by the securities depository, as if the Customer agrees that a certificate of such the Deposited Securities, etc. is to be disposed unless the Customer requests the return of the certificate of such Deposited Securities, etc. by the date designated by the securities depository.

**(Treatment of Dividends, Etc.)**

**Article 7** Dividends on the Deposited Securities, etc. (including income distribution for Foreign Investment Trust Beneficiary Certificates, etc., profit distribution for Foreign Investment Trust Securities, etc., and distribution of benefit from trusted assets for beneficiary certificates, etc. of foreign beneficiary certificates issuing trust; the same shall apply hereinafter), redemption payments, and other cash that is delivered not based on an act by a substantial or formal owner of Deposited Securities, etc. (including cash that is delivered based on the deemed act by a substantial or formal owner of Deposited Securities, etc. pursuant to the Articles of Incorporation or internal rules of an issuer or determination by the board of directors or other organization of issuer, rules of securities depository, or an agreement, etc. of Foreign Securities Transaction Account; the same shall apply hereinafter) shall be treated as prescribed in each of the following Items:

(1) If cash dividends are to be made, such dividends shall be received by a securities depository and shall be paid to the Customer through a paying agency bank for the dividends (or a paying agency bank for income distribution in case of Foreign Investment Trust Beneficiary Certificates, etc., Foreign Investment Trust Securities, etc., and beneficiary certificates, etc. of foreign beneficiary certificates issuing trust; the same shall apply hereinafter).

(2) In the case of share dividends (including share splits, free distribution of shares, etc. on which withholding tax (including that imposed in the Countries, etc. where the issuer of such Deposited Securities, etc. is located, the same shall apply hereinafter), and also including ones that are related to Foreign Investment Trust Beneficiary Certificates, etc., Foreign Investment Securities, etc., Covered Warrants, Foreign Share Depository Receipts, and beneficiary certificates, etc. of foreign beneficiary certificates issuing trust, and of the same nature; the same shall apply hereinafter) is imposed, such dividends shall, in accordance with the classification prescribed in (a) or (b) below, be treated pursuant to the provisions of (a) or (b) below, as applicable:

(a) Cases except where the securities depository admits that the Exchange is the principal market of the Deposited Securities, etc.;
If the securities depository designates the transfer of share certificates related to the share dividends on the Deposited Securities, etc., and the Customer pays an amount equivalent to the withholding tax, the share certificates related to such share dividends shall be received by

23

the securities depository and shall be transferred to the Account through the Company, however, (A) if the share certificates of such securities are less than one share (or one unit in case of Foreign Investment Trust Beneficiary Certificates, etc., Foreign Investment Securities, etc., and beneficiary certificates, etc. of foreign beneficiary certificates issuing trust, (one certificate in case of Foreign Investment Trust Securities, etc. that are similar to an Investment Corporation Bond), and one Covered Warrant in case of Covered Warrant, and one certificate in case of Share Depository Receipts; the same shall apply hereinafter) or (B) if the securities depository does not designate such transfer or if the securities depository designates the transfer but the Customer does not pay an amount equivalent to the withholding tax imposed in Japan, the securities depository shall dispose share certificates related to share dividends through sale, and the proceeds thereof shall be paid to the Customer through the share handling agent (or beneficiary rights handling agent in the case of Foreign Investment Trust Beneficiary Certificates, etc. and beneficiary certificates of foreign beneficiary certificates issuing trust; investment unit handling agent or investment corporation bond administration handling agent in the case of Foreign Investment Securities, etc., and a covered warrant administration handling agent in the case of Covered Warrant; the same shall apply hereinafter); provided, however, that, if the Customer does not pay the amount equivalent to the withholding tax in the Countries, etc. where the issuer of the Deposited Securities, etc. is located within the prescribed time limit, the Customer, in principle, cannot receive the share certificates related to such share dividends or the sale proceeds of such share certificates.

(b) Cases where the securities depository admits that the Exchange is the principal market of the Deposited Securities, etc.;
The Customer shall pay an amount equivalent to the withholding tax, and the share certificates related to such share dividends shall be received by the securities depository and shall be transferred to the Account through our Company; provided, however, that share certificates of such securities that are less than one share shall be sold by the securities depository and the sale proceeds shall be paid to the Customer through the share handling agent.

(3) Distribution of money other than dividends shall be received by the securities depository and shall be paid to the Customer through the share handling agent.

(4) Payment of the amount equivalent to the withholding tax imposed in the Countries, etc. of the issuer of the Deposited Securities, etc. set forth in Item (2) above shall be made in Yen, and the conversion between a foreign currency and Yen shall be made at the rate prescribed by the clearing company or our Company; provided, however, that such payment may be made in a foreign currency if our Company consents thereto.

2.      With respect to the method of payment of the dividends prescribed in Item (1), the proceeds of sale prescribed in Item (2) (a) and (b), and the money prescribed in Item (3), respectively, of the preceding Paragraph (hereinafter referred to as the "Dividends, etc."), the Customer shall give our Company written

instructions in the form prescribed by our Company.

3.      All payments of the Dividends, etc. shall be made in Yen. (Any fraction less than one Yen occurring in such a case shall be discarded.)

4.      The conversion between a foreign currency and yen in the payment prescribed in the preceding Paragraph shall be the TTB on the date when the dividend payment handling bank (or share handling agent in case of conversion of money other than the dividend prescribed in Paragraph 1, Item (1) hereof; the same shall apply hereinafter in this Paragraph) confirms the receipt of the dividend, etc. (or the TTB immediately after the confirmation of such receipt in case the dividend payment handling bank determines that it is difficult to use the TTB on the receipt date), provided, however, that such rate shall be the rate designated by the securities depository if the transfer of foreign currency to Japan is impossible or difficult due to the laws, regulations, or practices, etc. of the Countries, etc. where the issuer of the Deposited Securities, etc. is located).

5.      If, during the process of the payment of the Dividends, etc. prescribed in each Item of Paragraph 1 above, any expense paid by the securities depository in accordance with the domestic laws, regulations or practices, etc. of the Countries, etc. of the issuer of the Deposited Securities, etc., such expense shall be borne by the Customer and collected from the Customer by a deduction from the dividends or otherwise.

6.      Preparation, submission, etc. of a report on the dividends shall be made by the share handling agent, the securities depository, or the Company in accordance with the relevant laws and regulations.

7.      Notwithstanding the provisions of Paragraphs 1 and 3 [of this Article], if a securities depository cannot pay the Dividends, etc. in Yen due to an abrupt change in the foreign exchange situation, closing of foreign exchange market, etc., the securities depository may reserve the payment of the Dividends, etc. until such cause ceases to exist or may make such payment in a foreign currency.   In such case, the reserved Dividends, etc. shall not bear any interest or other compensation.

**(Treatment of Share Option, Etc. and Other Rights)**

**Article 8** The share option, etc. (rights to receive the new allotment of Foreign Share Certificates, etc.) and other rights related to the Deposited Securities, etc. shall be treated pursuant to the provisions of each of the following Items:

(1) For cases in which the share option, etc. are to be granted, such rights shall, according to the classification prescribed in (a) or (b) below, be treated pursuant to the provisions of (a) or (b) below, as applicable:

(a) Cases except where the securities depository admits that the Exchange is the principal market of the Deposited Securities, etc.:

(i) If the Customer notifies our Company that it desires to subscribe for new shares (Foreign Share Certificates, etc. that are newly allotted; the same shall apply hereinafter) within a prescribed period of time and pays the price of such new shares to the securities depository through our Company, the securities depository shall subscribe for such new Shares on behalf of the Customer by exercising its share options, etc. and transfer such new shares to the Account through our Company, and (ii) if the Customer does not notify our Company that it desires to subscribe for new shares within the prescribed period of time or the securities depository confirms that it is impossible to exercise its share option, etc., such share option, etc. shall be disposed of through sale by the securities depository. However, in case the securities depository cannot sell a part or all of the share option, etc. due to the laws, regulations, or practices, etc. of the Countries, etc. where the issuer of such the Deposited Securities, etc. is located, the said part or all of such option shall be invalid.

(b) Cases where the securities depository admits that the Exchange is the principal market of the Deposited Securities, etc.:

The securities depository receives the share options, etc. and transfers them to the Account through our Company. In such case, (i) if the Customer notifies our Company that it desires to subscribe for new shares within the prescribed period of time and pays the price of such new shares to the securities depository through our Company, the securities depository shall subscribe for such new shares on behalf of the Customer by exercising its share option, etc. and transfer such new shares to the Account through our Company, and (ii) if the Customer does not notify our Company that it desires to subscribe for new shares within the prescribed period of time, the Customer may not subscribe for new shares.

(2) The new shares allocated upon share split, free distribution of shares, consolidation of shares through capital decrease or merger, etc. (excluding those on which withholding tax is imposed, and including those related to Foreign Investment Trust Beneficiary Certificates, etc., Foreign Investment Securities, etc., Covered Warrants, Foreign Share Depositary Receipts, and beneficiary certificates of foreign beneficiary securities issuing trust and that are of the same nature as the above) shall be received by the securities depository and shall be transferred to the Account through our Company; provided, however, that, new shares that are less than one share shall be disposed of through sale by the securities depository.

(3) If share certificates other than the share certificates issued by the issuer of the Deposited Securities, etc. are distributed, and if the securities depository designates the transfer of such distributed share certificates and the Customer pays an amount equivalent to the withholding tax, such distributed share certificates shall be received by the securities depository and shall be transferred to the Account through our Company, and (A) the share certificates of such shares that are less than one share and (B) such distributed share certificates (i) if the clearing company does not designate such transfer or (ii) if the securities depository designates the transfer but the Customer does not pay an amount equivalent to the withholding tax imposed in Japan, shall be

26

disposed of through sale by the securities depository and the sale proceeds thereof shall be paid to the Customer through the share handling agent; provided, however, that if the Customer does not pay the amount equivalent to the withholding tax imposed in the Countries, etc. where the issuer of the Deposited Securities, etc. is located within the prescribed time limit, the Customer, in principle, cannot receive such distributed share certificates or the sale proceeds of the share certificates.

(4) In case any rights other than those set forth in the preceding three Items are granted, the matter shall be treated as prescribed by the securities depository.

(5) The proceeds of the disposition through sale made prescribed in Items (1)(a), (2) and (3) above shall be treated, mutatis mutandis, prescribed in Paragraph 1, Item (2)(a) of the preceding Article and Paragraphs 2 through 5 and 7 of the preceding Article.

(6) Payment of the price of the new shares set forth in Item (1) above and the amount equivalent to the withholding tax imposed in the Countries, etc. of the issuer of the Deposited Securities, etc. set forth in Item (3) above shall be made in Yen, and the conversion between a foreign currency and Yen shall be made at the rate determined by the securities depository or our Company; provided, however, that such payment may be made in a foreign currency if our Company consents thereto.

**(Treatment in Case of Non-Payment)**

**Article 9** If the Customer fails to pay to our Company, within the prescribed time limit, the amount related to the exercise of the share options, etc. to subscribe for new shares or any other price or the amount equivalent to the withholding tax that the Customer promised to pay to our Company in order to exercise the rights of any Foreign Securities or in order to receive share dividends, our Company may, at its own discretion, enter into a sales contract, etc. for the shares to be subscribed, for the account of the Customer in order to perform the Customer's debt.

**(Exercise of Voting Rights)**

**Article 10** The rights to vote on the Deposited Securities, etc. (excluding Foreign Share Depository Receipts; the same shall apply hereinafter in this Article) at a general meeting of shareholders (or a general beneficiary meeting for Foreign Investment Trust Beneficiary Certificates, etc. and beneficiary certificates of foreign beneficiary certificates issuing trust; investors meeting for Foreign Investment Securities, etc.; and investment corporation creditors' meeting; the same shall apply hereinafter) shall be exercised by the securities depository with the instructions of the Customer; provided, however, that the securities depository shall not exercise the voting rights in the absence of such instructions.

2.       The instructions set forth in the preceding Paragraph shall be given to the share handling agent in the prescribed written form no later than the date designated by the securities depository.

3.        Notwithstanding the provisions of Paragraph 1 above, if the securities depository cannot exercise the voting rights at a general shareholders meeting related to the Deposited Securities, etc. due to the laws and regulations of the Countries, etc. of the issuer of the Deposited Securities, etc., the Customer shall exercise the voting rights by having the securities depository send the prescribed document, submitted by the Customer to the share handling agent, to the issuer.

4.        Notwithstanding the provisions set forth in Paragraph 1 and the preceding Paragraph, if the securities depository cannot exercise the voting rights other than the unified manner at a general shareholders meeting due to the laws and regulations of the Countries, etc. where the issuer of the Deposited Securities, etc. is located, or if the Customer is allowed to participate in such shareholders meetings related to the Deposited Securities, etc. and exercise its voting rights itself, the securities depository may separately prescribe the treatment of exercising voting rights.

**(Exercises of Voting Rights Related to Foreign Share Depositary Receipts)**

**Article 10-2** Voting rights at a general shareholders meeting for Foreign Shares, etc. to which the rights described in Foreign Share Depositary Receipts relates shall be exercised by the issuer of such Foreign Share Depositary Receipts with the instructions of the Customer, provided, however, that the issuer shall not exercise the voting right in the absence of such instructions.

2.        The provisions set forth in Paragraph 2 of the preceding Article shall apply mutatis mutandis to the instructions set forth in the preceding Paragraph.

3.        Notwithstanding the provision set forth in Paragraph 1, if the issuer of the Foreign Share Depositary Receipt cannot exercise the voting rights at a general shareholders meeting of Foreign Shares, etc. to which the rights described in Foreign Share Depositary Receipts relates due to laws and regulations of the Countries, etc. where the issuer is located, the Customer shall exercise such voting rights by using the following method: the securities depository sends the prescribed documents which the Customer is normally required to submit to a Share handling agent to the issuer of the Foreign Share, etc. through the issuer of the Foreign Share Depositary Certificates.

4.        Notwithstanding the provision set forth in Paragraph 1 and the preceding Paragraph, if the issuer of the Foreign Share Depositary Receipts cannot exercise the voting rights through the securities depository other than the unified manner at a general shareholders meeting of Foreign Shares, etc. to which the rights described in Foreign Share Depositary Receipts relates due to the laws and regulations of the Countries, etc. where the issuer is located, or if the Customer is allowed to participate in the said shareholders meeting related to the Foreign Shares, etc. and exercise its voting rights itself, the securities depository may separately prescribe the treatment of exercising voting rights.

**(Dispatch, Etc. of Documents, Etc. Related to General Shareholders Meeting)**

**Article 11** Documents related to a general shareholders meeting of the Deposited Securities, etc. (excluding Foreign Share Depositary Receipts) or Foreign Shares, etc. to which the rights described in Foreign Share Depositary Receipts relates, business reports, and other notices relating to the rights or interests of shareholders (beneficiary for Foreign Investment Trust Beneficiary Certificates, etc. and beneficiary certificates of foreign beneficiary certificates issuing trust investors or investment corporation creditors for Foreign Investment Securities, etc., and owners for Foreign Share Depositary Receipts), including dividends, the granting of share options, etc., delivered by the issuer of the Deposited Securities, etc. shall be sent by the share affairs handling agent to the Customer at the address notified by the Customer.

2.        If agreed by the Exchange, the dispatch of the notices set forth in the preceding Paragraph may be replaced by the insertion of public notices in a daily newspaper, which publishes the matters concerning current events, or by preserving such notices at the share handling agent's location.

## CHAPTER III.    FOREIGN TRANSACTIONS AND DOMESTIC OTC TRANSACTIONS OF FOREIGN SECURITIES AND DEALING OF PUBLIC OFFERING OR SECONDARY DISTRIBUTION, OR DEALING OF PRIVATE PLACEMENT

**(Place of Execution of Sale or Purchase Orders and Instructions for Method of Execution)**

**Article 12** The type of sale or purchase transactions between the Customer and our Company and the place and method of execution of sale or purchase orders placed by the Customer with our Company shall be those instructed by the Customer in advance, to the extent acceptable to our Company.

**(Execution and Processing of Orders)**

**Article 13** Sale or purchase orders by the Customer to be placed with our Company and the Customer's application for the acquisition of Foreign Securities related to the Public Offering and Secondary Distribution or Private Placement shall be conducted pursuant to the provisions of each of the following Items:

(1) With respect to Foreign Transactions or applications for the acquisition of Foreign Securities related to the Public Offering or Secondary Distribution, or Private Placement, there may be a lag in time between the date and hour of the placement of the orders and the date and hour that the contract is made, due to the time difference, etc., provided that our Company agrees to handle such matters without delay;

(2) Orders to be placed with our Company shall be placed within the hours prescribed by our Company;

(3) Domestic OTC Transactions shall be conducted when the Customer so requests and our

29

Company agrees to such a request;

(4) The minimum purchase amount of Foreign Securities shall be as prescribed by our Company; and

(5) Our Company shall send Delivery Document upon Conclusion of Contract, etc. to the Customer, without delay after confirming that the sale or purchase, etc. has been executed.

**(Delivery Date, Etc.)**

**Article 14** After the transaction has been concluded, the delivery, etc. shall be conducted pursuant to the provisions of each of the following Items:

(1) In the case of a Foreign Transaction, the contract date shall be the date on which our Company confirms that the sale or purchase order is executed at the place of execution (or if such date falls on a holiday, the following business day); and

(2) The delivery date shall be the fourth business day from the contract date, unless otherwise agreed between our Company and the Customer.

**(Custody of Foreign Securities, Rights and Name)**

**Article 15** The custody of Foreign Securities entrusted to our Company by the Customer, and the handling of rights and name of such Foreign Securities shall be prescribed in the provisions of each of the following Items:

(1) Our Company shall entrust the Foreign Securities entrusted for safekeeping by the Customer to the Company's Custodian;

(2) The safekeeping prescribed in the preceding Item shall be made under the name of our Company;

(3) If the Foreign Securities (except for Deemed Foreign Securities) owned by the Customer are deposited in the Company's Custodian, the Customer shall obtain a right that corresponds to the quantity of such Foreign Securities that is described or recorded in an account of our Company related to such Foreign Securities in the Company's Custodian under the governing laws and practices, and such Foreign Securities shall be deposited based on the nature of the right related to the quantity obtained;

(4) The provision in the preceding Item shall apply mutatis mutandis to Deemed Foreign Securities. In such cases, "Foreign Securities (except for Deemed Foreign Securities) owned by the Customer are deposited in the Company's Custodian" shall be read as "the quantity of such

Deemed Foreign Securities is described or recorded in an account of our Company related to such Foreign Securities in the Company's Custodian", and "obtain a right that corresponds to the quantity of such Foreign Securities" shall be read as "obtain a right that corresponds to the quantity of such Deemed Foreign Securities";

(5) In the case described in Item (3), the Customer shall obtain the right on securities or certificates related to such Foreign Securities under applicable governing laws;

(6) The right on the Foreign Securities owned by the Customer shall be transferred when our Company describes or records the transferred quantity on the Account corresponding to the transferred quantity;

(7) If the Foreign Securities of which the right is owned by the Customer need the registration of the holder's name, the holder shall be a person designated by the Company's Custodian or a person designated by the custodian;.

(8) If the Foreign Securities of which the right is owned by the Customer require sale, change of custodian, or return, such actions shall be processed in accordance with pre-defined procedures. However, the Customer shall not request the return of a certificate of Foreign Securities of which certificate cannot be returned under local laws and regulations, etc. in Japan;

(9) The Customer shall pay the actual cost of such change of custodian or return set forth in the preceding Item incurred by our Company in each instance;

(10) If the Foreign Securities of which right is owned by the Customer lose value as securities and the Company's Custodian deletes the outstanding amount under local laws and regulations, the outstanding amount subject to such deletion shall also be deleted in the Account, and a certificate of such Foreign Securities are treated as disposed unless the Customer specifically requests otherwise.

**(Treatment in Case of Non-Conformity with Selection Criteria)**

**Article 16** If any Foreign Investment Trust Securities no longer conform to the selection criteria determined by Japan Securities Dealers Association, our Company will discontinue the sale of such Foreign Investment Trust Securities. In such case, however, if the Customer so desires, our Company shall respond to brokerage for the sale of such Foreign Investment Trust Securities purchased by the Customer or for the cancellation thereof.

**(Treatment of Rights Relating to Foreign Securities)**

**Article 17** The rights to the Foreign Securities held in custody by our Company's Custodian shall be treated pursuant to the provisions of each of the following Items:

(1) The fruits, such as dividends, interest, distribution of profits, etc. on the Foreign Securities held in custody by such custodian and the redemption money thereof shall be received by our Company on behalf of the Customer and paid over to the Customer.    In such case, if, during the process of such payment, any expenses are incurred by our Company in accordance with the domestic laws, regulations, practices, etc. of the Countries etc. of the issuer of such Foreign Securities, such expenses shall be borne by the Customer and collected from the Customer by deduction from the such fruits or redemption money or otherwise;

(2) If the share options, etc. is granted with respect to the Foreign Securities, such options shall, in principle, be disposed of through sale, and the proceeds of such sale shall be handled, mutatis mutandis, pursuant to the provisions of the preceding Item. However, in case our Company cannot sell part or all of the share options, etc. due to the laws, regulations, or practices, etc. of the Countries, etc. where the issuer of such Foreign Securities is located or due to the market condition, such part or whole of such subscription right shall be invalid;

(3) The shares allocated upon share dividend, share split, free distribution of shares, capital decrease, merger or share swap, etc. shall be handled on the Account through our Company; provided, however, that all shares that are less than the trading unit in the Financial Instruments Market outside Japan shall, unless the Customer specifically requests otherwise, be disposed of through sale, and the proceeds of such sale shall be handled, mutatis mutandis, pursuant to the provisions of Item (1) above;

(4) If the shares allotted in accordance with the provisions set forth in the preceding Item are subject to the withholding tax, notwithstanding such provisions, the shares shall, unless the Customer specifically requests otherwise, be disposed of through sale and the proceeds of such sale shall be handled, mutatis mutandis, pursuant to the provisions of Item (1) above;

(5) If any rights other than those set forth in the preceding four Items are granted with respect to the Foreign Securities, all such rights shall, unless the Customer specifically requests otherwise, be disposed of through sale, and the proceeds of such sale shall be handled, mutatis mutandis, pursuant to the provisions of Item (1) above;

(6) The exercise of voting rights or the objections at a general shareholders meeting, creditors' meeting, beneficiaries' meeting, owners' meeting, etc. shall be conducted in accordance with the Customer's instructions; provided, however, that, in the absence of the Customer's instructions, our Company shall not exercise the voting rights or raise any objections;

(7) For the application of reduced tax rate or tax exemption, tax refund, or other procedures related to the withholding tax imposed on the investment fruits prescribed in Item (1) in a country outside Japan, our Company may handle and implement them on behalf of the Customer.

**(Notices)**

**Article 18** Our Company shall send the following notices to the Customer concerning the Foreign Securities that are entrusted for safekeeping to our Company:

> (1) Notice of any fact that materially affects the status of the shareholders or beneficiaries and owners, such as issuance of subscription shares, share split, or consolidation of shares, etc.;

> (2) Notice of dividends, interests, distribution of profits, redemption money, etc.; and

> (3) Notice concerning mergers or other important agenda to be submitted at a general shareholders meeting.

2.       Our Company or the issuer of Foreign Investment Trust Securities shall send to the Customer, in addition to the notices set forth in the preceding Paragraph, any performance reports or other documents related to the Foreign Investment Trust Securities entrusted for safekeeping to our Company; provided, however, that unless the Customer requests that our Company do so, our Company shall not send the Customer any performance reports or other documents related to the Foreign Investment Securities if a notice on details thereof is published on a daily newspaper that reports the current topics.

**(Notices, Etc. from Issuer)**

**Article 19** Notices, materials, etc. delivered by the issuer shall be kept by our Company and make them available for three (3) years (for those notices related to overseas CDs and overseas CPs, for one (1) year) from the date of their arrival; provided, however, that if the Customer requests our Company to do so, our Company shall send them to the Customer.

2.       The actual costs incurred in sending the notices, materials, etc. to the Customer in accordance with the proviso to the preceding Paragraph shall, except for the costs relating to the Foreign Investment Trust Securities, be paid by the Customer to our Company for each instance.

**(Fees, Etc.)**

**Article 20** Fees concerning the execution of transactions, the payment date thereof, etc. shall be treated pursuant to the provisions of each of the following Items:

> (1) For the Foreign Transaction of Foreign Securities, the Customer shall pay to our Company the sale and purchase commissions, tax, and public dues and any other assessments and charges in the Financial Instruments Market located outside Japan and the prescribed brokerage commissions no later than the delivery date prescribed in Article 14, Item (2) hereof; and

> (2) For the application for acquisition of Foreign Investment Trust Securities in the Public Offering

and Secondary Distribution or Private Placement, the Customer shall pay to our Company the fee prescribed by the fund and tax and public dues and any other assessment and charges prescribed at the place of brokerage no later than the date prescribed in the prospectus etc.

2.      If our Company conducts any special treatment in accordance with the Customer's instructions, the Customer shall pay to our Company the actual costs incurred by our Company for each instance.

**(Receipt or Payment of Foreign Currency, Etc.)**

**Article 21** The receipt or payment of foreign currency related to any Foreign Securities transaction shall, in principle, be made by means of a transfer between a foreign currency deposit account opened by the Customer in its own name and a foreign currency deposit account in our Company's name designated by our Company.

**(Receipt and Payment of Money)**

**Article 22** The receipt and payment of money conducted between our Company and the Customer in connection with the Foreign Securities transaction, etc. prescribed in this Chapter shall be made in Yen or another currency (limited to those designated by the Customer and which is acceptable to our Company). In such case, the conversion between a foreign currency and Yen shall be made at the rate determined by our Company as of the conversion date, except as otherwise agreed upon or designated.

2.      The conversion date set forth in the preceding Paragraph shall be the contract date with respect to a sales price and the date on which our Company confirms the receipt of the total amount of a sales price with respect to the settlement related to the treatment prescribed in Article 17, Items (1) through (4) hereof.

## CHAPTER IV.    MISCELLANEOUS PROVISIONS

**(Delivery of Account Balance Statements)**

**Article 23** With respect to the Foreign Securities entrusted for safekeeping by the Customer to our Company, the Customer shall receive account balance statements issued by our Company on a regular basis; provided, however, that by the request of the Customer our Company may substitute this method for a method whereby the Customer receives an account balance statement immediately after any transfer or settlement activity in the account.

2.      Notwithstanding the provisions of the previous Item, in the case that our Company is not legally obligated to deliver Delivery Document upon Conclusion of Contract, etc. to the Customer, with the exception of those cases provided for otherwise legally, the Customer shall receive an account balance

34

statement immediately after any transfer or settlement activity in the account.

3.　　　Even when our Company is delivering an account balance statement to a Customer immediately after any transfer or settlement activity in the account, for the matters to be stipulated under the law, our Company may substitute the method of delivery of an account balance statement immediately after any transfer or settlement activity in the account with the method of issuing an account balance statement on a regular basis.

**(Matters to be Notified)**

**Article 24** The Customer shall notify its address (or residence), name (or appellation) and, seal, etc. to our Company in the written form prescribed by our Company.

**(Notice of Change in Notified Matters)**

**Article 25** If any change occurs in the address (or residence), name (or appellation), etc. notified to our Company or if the Customer's seal notified to our Company is lost, the Customer shall immediately give our Company a notice thereof in accordance with the procedures prescribed by our Company.

**(Exemption from Liability in Case of Failure to Notify, Etc.)**

**Article 26** Our Company shall be exempted from any liability for any damage caused to the Customer by the failure to make, or a delay in making, any notice under the preceding Articles.

**(Effect of Notice)**

**Article 27** If any notice concerning the Account given by our Company to the Customer is delayed or does not arrive due to the removal or absence of the Customer or any other cause attributable to the Customer, such notice may be treated as if it had arrived at the Customer at such time as it would normally have arrived.

**(Account Administration Fee)**

**Article 28** The Customer shall pay to our Company the account administration fee prescribed by our Company as expenses for the various procedures provided for in this Agreement.

**(Termination of Agreement)**

**Article 29** This Agreement shall be terminated upon the occurrence of any of the following events:

　　　(1) If the Customer proposes the cancellation hereof to our Company;

(2) If the Customer violates any of the provisions hereof and our Company gives the Customer a notice of termination;

(3) If the Customer does not agree to an amendment to this Agreement as prescribed in Article 32 hereof;

(4) If it is found that the Customer made a false statement on its commitment at the time of opening the account and the Company gives the Customer a notice of termination;

(5) If the Customer is found to be an organized crime group member, a corporation associated with an organized crime group, or antisocial forces such as a corporate racketeer, and the Company gives the Customer a notice of termination;

(6) If the Customer makes a violent request or unfair request that exceeds the legal responsibility, and the Company determines that it is impossible to continue the contractual relationship and gives the Customer a notice of termination; or

(7) If, other than those events prescribed in the preceding Items, any event prescribed by our Company as an event where it is deemed appropriate to terminate this Agreement occurs, or if our Company proposes the termination hereof to the Customer for unavoidable reasons.

2.      In the case of the termination of this Agreement pursuant to the preceding Paragraph, our Company shall return Deposited Foreign Securities and money to the Customer in a manner prescribed by the Company. If there are some Foreign Securities that cannot be returned in the original form, the Company shall return the sale proceeds, etc. to the Customer in a manner prescribed by the Company through the liquidation or closing transaction under the instruction of the Customer.

**(Matters Exempt from Liability)**

**Article 30** Our Company shall be exempted from liability for the damages set forth in below:

(1) Damages arising from a delay in, or the impossibility of, execution of a sale or purchase, receipt or payment of money, safekeeping procedure, etc. due to any event deemed to be force majeure, such as an act of God, political change, strike, abrupt change in the foreign exchange situation, closing of foreign exchange market, etc.;

(2) Damages arising from causes not attributable to our Company, such as errors or delays in telegraph or mail; and

(3) Damages arising from the receipt or payment of money, return of securities entrusted for safekeeping, or other actions made or taken after our Company has acknowledged that the seal on the relevant document in the form prescribed by our Company is the genuine seal impression

36

notified to our Company [by the Customer].

Note: Be careful not to make this indemnity disadvantage the Customers one-sidedly.

**(Governing Law and Agreed Jurisdiction)**

**Article 31** The governing law concerning the rights and obligations on the Foreign Securities transactions between the Customer and our Company shall be the Japanese law, provided however, that the governing law may be the law of another country requested by the Customer if the Customer specifically requests it and our Company accepts it.

2.      With respect to any legal action relating to the Foreign Securities transactions between the Customer and our Company, our Company may designate a court among the courts having jurisdiction over the head office or branch offices of our Company.

**(Amendment to Agreement)**

**Article 32** The provisions of this Agreement may be amended due to the change of laws and regulations, instruction by the competent authority, or any other reason that requires such amendments. If the amendments are to restrict the rights the Customer has presently had or impose new obligations on the Customer, our Company shall notify the Customer of such amendments. In such cases, if the Customer raises no objection before the prescribed date, the Customer shall be deemed to have agreed to such amendments.

**(Consent of Providing Personal Data to a Third Party)**

**Article 33** In any case described in each Item below, the Customer shall consent that the personal data of the Customer (address, name, contact information, date of birth, the quantity of Foreign Securities held, and other information to the extent that it is necessary depending on each case) may be provided to a person set forth in each Item below:

(1) In case a reduced tax rate or tax exemption, tax refund, or other procedures related to the withholding tax imposed by a country other than Japan is implemented on the investment fruits such as dividends, interests, distribution of profits, etc. of the Foreign Securities;
    The tax authority of the country, a custodian of the Foreign Securities, or a person who is designated by the above-mentioned persons/entities to implement the procedures for the above-mentioned actions on their behalf.

(2) In case a reduced tax rate or tax exemption, tax refund, or other procedures related to the withholding tax imposed by a country other than Japan is implemented on the investment fruits such as dividends, interests, distribution of profits, etc. of the Foreign Securities that are related to the rights described in depositary receipts;

37

The tax authority of the country, a custodian of the Foreign Securities, an issuer or a custodian of the depositary receipt, or a person who is designated by the above-mentioned persons/entities to implement the procedures for the above-mentioned actions on their behalf.

(3) In case an issuer of the Foreign Securities that is related to the rights described in Foreign Securities or depositary receipts prepares statistical data that is necessary to produce the securities report and other documents in accordance with the laws and rules of Japan or other countries or rules of a Financial Instruments Exchange (hereinafter referred to as "Laws and Rules"), to exercise the rights or fulfill the obligations under the Laws and Rules, to provide information to substantial shareholders, or to do public relations;
An issuer or a custodian of the Foreign Securities, or an issuer or a custodian of the Foreign Securities that are related to the rights described in depositary receipts.

(4) In case the competent authority of the Financial Instruments Market that executes the transaction of Foreign Securities and is located outside Japan (including a self-regulatory organization that is authorized by the competent supervising authority; the same shall apply hereinafter in this Item) conducts an investigation on money laundering, crimes in connection with securities transaction, or other investigation for the purpose of ensuring transaction fairness in the Financial Instruments Market under the relevant Laws and Regulations, etc. of that countries, etc., and in case it is clear that the personal information contained in the investigation result is used neither for criminal proceedings by the court or judges nor for any other purposes;
The competent supervising authority, a Foreign Securities broker or a custodian of the Foreign Securities transaction.

**Note 1:  For these provisions, in light of Articles 4, and 5, and 13 of the "Guideline on the Protection of Personal Information in the Financial Sector" prepared by the Financial Services Agency, it is desirable that the provisions related to the treatment of the personal information are clearly distinguished from other provisions by using a different size font, a bold font, or other method to let the owner of the personal information recognize and understand it easily.**

**Note 2  In the case of providing the U.S. tax agency (the Internal Revenue Service) with information including the personal information of the applicant as required for complying with the Foreign Account Tax Compliance Act in the U.S. ("FATCA"), it is necessary to obtain consent pursuant to the "Statement of Mutual Cooperation and Understanding between the U.S. Department of the Treasury and the Authorities of Japan to Improve International Tax Compliance and to Facilitate Implementation of FATCA" dated June 11, 2013 (by the Financial Services Agency, Ministry of Finance, and National Tax Agency). For the provision of personal information, it is also necessary to obtain consent pursuant to the Act on the Protection of Personal Information. If you intend to obtain the consent mentioned above not by individual consent forms but by this agreement, one approach is to change the title of Article 33 to "(Consent of Providing Personal Data, Etc. to a Third Party)" and add a provision like the one below:**
**For these provisions, in light of Articles 4, 5, and 13 of the "Guideline on the Protection of Personal**

**Information in the Financial Sector" prepared by the Financial Services Agency, it is desirable, as in the case of Paragraph 1, that the provisions related to the treatment of the personal information are clearly distinguished from other provisions by using a different size font, a bold font, or other method to let the owner of the personal information recognize and understand it easily.**

**2.      Based on the request from the U.S. government and the Japanese government, if the Company believes that the applicant meets or is likely to meet any of the following Items as a reportable person under the Foreign Account Tax Compliance Act in the U.S. ("FATCA"), the applicant must consent that the applicant's information (name, address/location, U.S. Taxpayer Identification Number, account number, balance of account, income generated on the account, and other information designated by the U.S. tax agency (Internal Revenue Service)) may be provided to the U.S. tax agency (Internal Revenue Service) for the purpose of tax execution by the U.S. tax agency:**

> **(1) Natural person, corporation, or other entity who is a taxpayer in the U.S.;**
> **(2) Non-U.S. corporation or other entity that is substantially controlled by a natural person who is a taxpayer in the U.S.; or**
> **(3) Financial institutions that have not participated in the FATCA framework (excluding those who are treated as exempt beneficiary owners pursuant to Articles 1471 and 1472 of the U.S. Internal Revenue Code).**

As of MMMM DD, YYYY

(Name of Association Member)

(Note) This Reference Form is based on the February 17, 2014 edition of the original Japanese text.

This translation is solely for the convenience of those interested therein, and accordingly all questions that may arise with regard to the meaning of the words or expressions herein shall be dealt with in accordance with the original Japanese text

Exhibit B

**Mitsugu Saito**

| | |
|---|---|
| 差出人: | Marc Hirschfield <MHirschfield@rccblaw.com> |
| 送信日時: | 2021年2月3日水曜日 3:27 |
| 宛先: | Steinberg, Arthur; Mitsugu Saito; Davidson, Scott; |
| | william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; |
| | anton.kolev@lehmanholdings.com |
| CC: | lehman_team@capital.co.jp |
| 件名: | RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter |

Thank you for communicating Lehman's position. Given the language of the mediation order (which I have no authority to modify), the mediation will need to be by videoconference over Zoom. A such, CPS, please respond to my proposal for the mechanics and timing of the mediation conferences. I would also urge CPS once again to reconsider about having either Japanese or US counsel present to represent CPS. We will also need to have a translator if counsel cannot fulfill that role. Please let me know if CPS will arrange for that or how you otherwise plan to have a translator present.

Thanks,
Marc

Marc E. Hirschfield, Partner

 Royer Cooper
Cohen Braunfeld LLC

1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office:   212-994-0451
Fax:      484-362-2630
Cell:     917-273-2405
Email:   mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com

_____

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by privilege. The information is intended to be for the sole use of the individual or entity named above If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.

**From:** Steinberg, Arthur <ASteinberg@KSLAW.com>
**Sent:** Tuesday, February 2, 2021 9:45 AM
**To:** Marc Hirschfield <MHirschfield@rccblaw.com>; Mitsugu Saito <m.saito@capital.co.jp>; Davidson, Scott <SDavidson@KSLAW.com>; william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Lehman believes Zoom mediation is unquestionably the norm, is the most efficient, and in the end, will be the most productive.

1

**From:** Marc Hirschfield <MHirschfield@rccblaw.com>
**Sent:** Tuesday, February 2, 2021 9:21 AM
**To:** Mitsugu Saito <m.saito@capital.co.jp>; Davidson, Scott <SDavidson@KSLAW.com>;
william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; Steinberg,
Arthur <ASteinberg@KSLAW.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

**External Sender**

Thank you to both sides for the emails. The Bankruptcy Court's order that governs our mediation provides that the
mediation shall be conducted "by video conference or such other means as agreed to by the parties." Accordingly,
Lehman would have to agree to what CPS proposes for it to proceed in that manner. Failing such agreement, the
mediation will have to be done over Zoom. While I believe that conducting the mediation over Zoom would be
more productive, I am open to proceeding how the parties wish. I can say that proceeding by a written mediation
would be more time consuming and as such, I would need to increase the rate I am charging if we were to proceed
that way. Lehman, please respond with your position on CPS's proposal.

Once we resolve that issue, we can address the others.

Thanks,
Marc

Marc E. Hirschfield, Partner

 Royer Cooper
Cohen Braunfeld LLC

1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office:   212-994-0451
Fax:      484-362-2630
Cell:     917-273-2405
Email:   mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com
_____

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by
privilege. The information is intended to be for the sole use of the individual or entity named above. If you are not the intended
recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to
this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it
from your system. Thank you.

**From:** Mitsugu Saito <m.saito@capital.co.jp>
**Sent:** Monday, February 1, 2021 11:54 PM
**To:** Marc Hirschfield <MHirschfield@rccblaw.com>; 'Davidson, Scott' <SDavidson@KSLAW.com>;
william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; 'Steinberg,
Arthur' <ASteinberg@KSLAW.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Dear Mr. Hirschfield,

Thank you for a draft mediation agreement.
1. CPS agrees to Fees and Costs for mediation, however we are not able to agree to Location of Mediation. As you
   found that CPS has no capable for the mediation by a Zoom video conference, CPS strongly requests the

mediation shall be occur in writing. It is totally unfair not to consider language barrier otherwise the Over Payment Recipients are all Japanese and mostly do not speak English. As CPS is making a concession that the mediation shall occur in English, LBHI should also make a concession that the mediation shall occur in writing under principle of fairness if LBHI would like to make progress.

2. CPS doesn't plan to have Anderson Mori at the mediation since CPS as a conduit has a duty to act in the Over Payment Recipients' best interest under AGREEMENT CONCERNING FOREIGN SECURITIES TRANSACTIONS ACCOUNT which is adhesive terms and conditions for the account opening with CPS. While The Ultimate Beneficiary Owners Lehman Bond are aggrieved investors caused by LBHI's responsibility for negligence, translation cost should be borne by LBHI.

3. The mediation shall be occur in writing under principle of fairness. While the mediation in Japanese is the most welcome but CPS is trying to make a concession in writing to move forward the mediation.

Best regards,

Mitsugu Saito
CPS

---

**From:** Marc Hirschfield <MHirschfield@rccblaw.com>
**Sent:** Tuesday, February 2, 2021 7:01 AM
**To:** Mitsugu Saito <m.saito@capital.co.jp>; 'Davidson, Scott' <SDavidson@KSLAW.com>;
william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; 'Steinberg, Arthur' <ASteinberg@KSLAW.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

All –

Given the responses by CPS, I think we've made progress.  There are a few more things that we need to finalize:

1. Attached is an updated version of the mediation agreement that only changes the date of the agreement and the date by which CPS must pay its share of the mediation cost.  Please review and confirm it is acceptable.  Also, please provide the email address of the person who will be signing for each side so my assistant can send a Docusign version to each person.
2. There are still the issues of CPS not having counsel at the mediation and how we will deal with translation issues.  I understand that CPS does not wish to have US counsel represent it at the mediation.  I strongly urge CPS to at least have Japanese counsel present.  Mr. Saito, please advise on whether you plan to have Anderson Mori at the mediation and if not, why not.  I am hoping that Anderson Mori can not only advise CPS as necessary but also serve as a translator.  Given the language barrier, I think it is imperative that CPS arrange for a translator or authorize me to do so at CPS's cost.
3. In terms of scheduling the mediation, given the time differences, that will be a challenge as it appears there are no times that are convenient for all involved.  Accordingly, we will have to work around that.  I would propose that we do the mediation over two sessions a week apart.  Each session would begin at 5:00 pm NY time and end at 10:00 pm NY time.  As I understand it, that translates to 7:00 am to Noon in Japan.  Can each side let confirm for me that they can make that work?

Once we get agreement on the foregoing issues, I think we can select dates for the mediation.

Thanks, Marc

3

Marc E. Hirschfield, Partner



**Royer Cooper
Cohen Braunfeld LLC**

1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office:  212-994-0451
Fax:     484-362-2630
Cell:    917-273-2405
Email:   mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com
_____

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by
privilege. The information is intended to be for the sole use of the individual or entity named above  If you are not the intended
recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to
this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it
from your system.  Thank you.

**From:** Mitsugu Saito <m.saito@capital.co.jp>
**Sent:** Tuesday, January 26, 2021 5:00 AM
**To:** Marc Hirschfield <MHirschfield@rccblaw.com>; 'Davidson, Scott' <SDavidson@KSLAW.com>;
william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; 'Steinberg,
Arthur' <ASteinberg@KSLAW.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Dear Mr. Hirschfield,

Thank you for the prompt response.
Well noted with respect to the mediation fee.

Regarding to my second point, we will not be able to communicate with the over payment recipients in real time
since there is language barrier. That is why we propose to proceed ADR in Japanese or by way of in writing.
As CPS as Japanese securities company has entered into Agreement Concerning Foreign Securities Transactions
Account with all our customers, we have authority to negotiate with Lehman on behalf of the over payment
recipients with fiduciary duty.
For your information, Mayer Brown discussed about this agreement with K&S for long time. We have been
wondering why they took a plenty of time for a standard agreement provided by Japan Securities Dealers
Association under Financial Instruments and Exchange Act. Regulated securities company in Japan is not allowed to
extend beyond this agreement even if K&S has an instinctive aversion to this.

CPS has reliance on you as a mediator with vastly experienced.

Best regards,

Mitsugu Saito
CPS

4

**From:** Marc Hirschfield <MHirschfield@rccblaw.com>
**Sent:** Tuesday, January 26, 2021 8:15 AM
**To:** Davidson, Scott <SDavidson@KSLAW.com>; william.olshan@lehmanholdings.com;
rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; Steinberg, Arthur <ASteinberg@KSLAW.com>
**Cc:** Mitsugu Saito <m.saito@capital.co.jp>
**Subject:** FW: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

All – please see the email below from Mitsugu Saito and let me know Lehman's position on the points he
makes. Mr. Saito has authorized me to forward his email.

Mr. Saito, with respect to the mediation fee, I am not able to offer a further discount.  With regard to most
mediations, the fixed fee that I charge winds up being a discount as compared to what it would be had I charged my
normal hourly rate.  Given the time I've spent thus far, that is likely to be especially true for this
mediation.  Additionally, with regard to your second point, will you be communicating with the parties you mention
in real time at the mediation?  If not, I am not sure that I understand how we will make progress at the mediation
conference if you will not have authority to negotiate with Lehman.  Please explain.

Regards,
Marc

Marc E. Hirschfield, Partner

 Royer Cooper
Cohen Braunfeld LLC

1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office:   212-994-0451
Fax:      484-362-2630
Cell:     917-273-2405
Email:   mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com
_____

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by
privilege. The information is intended to be for the sole use of the individual or entity named above  If you are not the intended
recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to
this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it
from your system.  Thank you.

**From:** Mitsugu Saito <m.saito@capital.co.jp>
**Sent:** Monday, January 25, 2021 3:14 AM
**To:** Marc Hirschfield <MHirschfield@rccblaw.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Dear Mr. Hirschfield,

To reply for your email below, I am writing to you on CPS's positions as below.

1. We does have an intention to be a Proper Party to the Mediation in good faith.
2. As CPS is a merely conduit on behalf of the Over Payment Recipients, CPS will transfer your proposals to the
   Over Payment Recipients in Japanese language.

5

3. We will pay its share of the Mediation Costs. However the initial cost seems too expensive, is there any space to discount the costs?
4. CPS is NOT appointing Orrick for the ADR. US law firm would not able to act on behalf of the Over Payment Recipients, since they are all Japanese who is not able to understand English.
5. In addition above, as the Over Payment has been caused by the PA, all parties must have a duty to reduce the Mediation Costs for the Over Payment Recipients in good faith.

6. CPS does not agree to an assertion that CPS continues to wrongfully disburse funds to its clients. CPS received an email from Mr. Greg Winter as on 24 August 2017, he mentioned that "However these ISINs may be affected at a future date. If they do become affected and the Plan Administrator withholds payment due to the ISINs being deemed satisfied, you will be properly noticed in the mail." However the Plan Administrator has never withheld payments and has been kept paying in despite of the LBT Procedure had ordered. The latest distribution is made in October 2020. While some of the Over Payment Recipients are applying to the distribution, CPS is withholding the payments. CPS must say the PA's distribution management have been totally messed up.
7. CPS is proposing that the PA should reduce the amount of the Over Payment to the amount the Recipients received. CPS believes that some of the Recipients agree to return its payments if the amount of Over Payment would be adjusted.
8. CPS is expecting the PA will participate in ADR in good faith.

I am looking forward to hearing from you.

Best regards,

Mitsugu Saito
CPS

From: Marc Hirschfield <MHirschfield@rccblaw.com>
Sent: Sunday, January 24, 2021 12:37 AM
To: Mitsugu Saito <m.saito@capital.co.jp>
Subject: FW: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Mr. Saito –

As discussed at our pre-mediation call, I am forwarding the letter that Lehman sent to Orrick. As agreed, you are to respond to me on CPS's positions by January 28, 2021.

Thank you,
Marc

Marc E. Hirschfield, Partner

RC   Royer Cooper
CB   Cohen Braunfeld LLC

1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office:   212-994-0451
Fax:      484-362-2630
Cell:     917-273-2405
Email:   mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com

6

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by privilege. The information is intended to be for the sole use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.

**From:** Davidson, Scott <SDavidson@KSLAW.com>
**Sent:** Wednesday, January 20, 2021 7:53 PM
**To:** 'Stern, Robert' <rstern@orrick.com>
**Cc:** Marc Hirschfield <MHirschfield@rccblaw.com>; Steinberg, Arthur <ASteinberg@KSLAW.com>
**Subject:** In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Rob:

Please see the attached letter regarding the mediation with CPS.

Thank you
Scott

___

**Scott Davidson**
*Counsel*

T: +1 212 556 2164; Cell: + 1 516 297 6459 | E: sdavidson@kslaw.com | www.kslaw.com

BIO | vCARD

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036

**KING & SPALDING**

___

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. Click here to view our Privacy Notice.

Exhibit C

## Mitsugu Saito

| | |
|---|---|
| 差出人: | Mitsugu Saito <m.saito@capital.co.jp> |
| 送信日時: | 2021年2月2日火曜日 13:54 |
| 宛先: | 'Marc Hirschfield'; 'Davidson, Scott'; 'william.olshan@lehmanholdings.com'; |
| | 'rich.katz@torquepointllc.com'; 'anton.kolev@lehmanholdings.com'; |
| | 'Steinberg, Arthur' |
| CC: | 'lehman_team@capital.co.jp' |
| 件名: | RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter |

Dear Mr. Hirschfield,

Thank you for a draft mediation agreement.
1. CPS agrees to Fees and Costs for mediation, however we are not able to agree to Location of Mediation. As you found that CPS has no capable for the mediation by a Zoom video conference, CPS strongly requests the mediation shall be occur in writing. It is totally unfair not to consider language barrier otherwise the Over Payment Recipients are all Japanese and mostly do not speak English. As CPS is making a concession that the mediation shall occur in English, LBHI should also make a concession that the mediation shall occur in writing under principle of fairness if LBHI would like to make progress.

2. CPS doesn't plan to have Anderson Mori at the mediation since CPS as a conduit has a duty to act in the Over Payment Recipients' best interest under AGREEMENT CONCERNING FOREIGN SECURITIES TRANSACTIONS ACCOUNT which is adhesive terms and conditions for the account opening with CPS. While The Ultimate Beneficiary Owners Lehman Bond are aggrieved investors caused by LBHI's responsibility for negligence, translation cost should be borne by LBHI.

3. The mediation shall be occur in writing under principle of fairness. While the mediation in Japanese is the most welcome but CPS is trying to make a concession in writing to move forward the mediation.

Best regards,

Mitsugu Saito
CPS

**From:** Marc Hirschfield <MHirschfield@rccblaw.com>
**Sent:** Tuesday, February 2, 2021 7:01 AM
**To:** Mitsugu Saito <m.saito@capital.co.jp>; 'Davidson, Scott' <SDavidson@KSLAW.com>;
william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; 'Steinberg,
Arthur' <ASteinberg@KSLAW.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

All –

Given the responses by CPS, I think we've made progress. There are a few more things that we need to finalize:

1. Attached is an updated version of the mediation agreement that only changes the date of the agreement and the date by which CPS must pay its share of the mediation cost. Please review and confirm it is acceptable. Also, please provide the email address of the person who will be signing for each side so my assistant can send a Docusign version to each person.

2. There are still the issues of CPS not having counsel at the mediation and how we will deal with translation issues. I understand that CPS does not wish to have US counsel represent it at the mediation. I strongly urge CPS to at least have Japanese counsel present. Mr. Saito, please advise on whether you plan to have Anderson Mori at the mediation and if not, why not. I am hoping that Anderson Mori can not only advise CPS as necessary but also serve as a translator. Given the language barrier, I think it is imperative that CPS arrange for a translator or authorize me to do so at CPS's cost.

3. In terms of scheduling the mediation, given the time differences, that will be a challenge as it appears there are no times that are convenient for all involved. Accordingly, we will have to work around that. I would propose that we do the mediation over two sessions a week apart. Each session would begin at 5:00 pm NY time and end at 10:00 pm NY time. As I understand it, that translates to 7:00 am to Noon in Japan. Can each side let confirm for me that they can make that work?

Once we get agreement on the foregoing issues, I think we can select dates for the mediation.

Thanks, Marc

Marc E. Hirschfield, Partner

 **Royer Cooper Cohen Braunfeld LLC**

1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office: 212-994-0451
Fax:     484-362-2630
Cell:    917-213-2405
Email:  mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com

_____

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by privilege. The information is intended to be for the sole use of the individual or entity named above  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.

---

**From:** Mitsugu Saito <m.saito@capital.co.jp>
**Sent:** Tuesday, January 26, 2021 5:00 AM
**To:** Marc Hirschfield <MHirschfield@rccblaw.com>; 'Davidson, Scott' <SDavidson@KSLAW.com>; william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; anton.kolev@lehmanholdings.com; 'Steinberg, Arthur' <ASteinberg@KSLAW.com>
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Dear Mr. Hirschfield,

Thank you for the prompt response.
Well noted with respect to the mediation fee.

Regarding to my second point, we will not be able to communicate with the over payment recipients in real time since there is language barrier. That is why we propose to proceed ADR in Japanese or by way of in writing.

2

Exhibit D

## Mitsugu Saito

| | |
|---|---|
| 差出人: | Marc Hirschfield <MHirschfield@rccblaw.com> |
| 送信日時: | 2021年3月4日木曜日 22:41 |
| 宛先: | Mitsugu Saito; 'Steinberg, Arthur'; 'Davidson, Scott'; |
| | william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com; |
| | anton.kolev@lehmanholdings.com |
| CC: | lehman_team@capital.co.jp |
| 件名: | RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter |

Mr. Saito,

Thank you for your email. The decision to file a motion with the Bankruptcy Court was Lehman's and although I was apprised that they would be doing so, I had no part in the motion or Lehman's decision to file one. That said, and as I have explained previously, the notion of conducting a mediation without the assistance of a translator is troubling to me. You described the pre-mediation call we had as being "awful" and said that you had difficulty understanding what was being said. Given this, I do not see how we could possibly have a successful mediation without the assistance of a translator so that everyone can understand the discourse. Also, I believe that CPS having counsel who can assist you during the mediation and explain any nuanced legal issues is also necessary to maximize the chances of our reaching a negotiated outcome.

You should feel free to discuss with Lehman directly the motion it filed. Once there is an outcome to it and clarity on whether we will have a translator and whether you will have counsel, I will look forward to picking up the mediation discussions.

Regards,
Marc

Marc E. Hirschfield, Partner

 Royer Cooper
Cohen Braunfeld LLC
1120 Avenue of the Americas; 4th Floor
New York, New York 10036
Office:  212-994-0451
Fax:     484-362-2630
Cell:     917-273-2405
Email:   mhirschfield@rccblaw.com
Website: www.rccblaw.com

Click here to sign up for our mailing list or email events@rccblaw.com

_____

This electronic message and all attachments contain information sent by a law firm and may be confidential or protected by privilege. The information is intended to be for the sole use of the individual or entity named above  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.

**From:** Mitsugu Saito <m.saito@capital.co.jp>
**Sent:** Wednesday, March 3, 2021 11:12 PM
**To:** Marc Hirschfield <MHirschfield@rccblaw.com>; 'Steinberg, Arthur' <ASteinberg@KSLAW.com>; 'Davidson, Scott'

1

<SDavidson@KSLAW.com>; william.olshan@lehmanholdings.com; rich.katz@torquepointllc.com;
anton.kolev@lehmanholdings.com
**Cc:** lehman_team@capital.co.jp
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Dear Mr. Hirschfield,

We are very disappointed to have received LBHI - Motion to Compel CPS with Exhibits.
CPS has agreed to share your fee at our email correspondence on February 1, is there any misunderstanding
between us?
We are understanding that the most important is supporting the overpayment recipients for their money back to
Lehman rather than sticking on language barrier nor engagement of lawyer.

Best regards,

Mitsugu Saito

-------------------------------------------------------------------------
Capital Partners Securities Co., Ltd.
Shikoku Building, 8th Floor
1-13-7, Uchikanda, Chiyoda-ku, Tokyo, 101-0047
Direct: +81.3.3518.9332
Fax: +81.3.5259.7335
E-mail: m.saito@capital.co.jp
http://www.capital.co.jp

This e-mail message is confidential and may contain information that is privileged, attorney work product or exempt from
disclosure under applicable law. If you have received this message in error, please immediately notify the sender and delete
this e-mail message from your computer. Thank you.

**From:** Mitsugu Saito <m.saito@capital.co.jp>
**Sent:** Monday, February 22, 2021 1:29 PM
**To:** 'Marc Hirschfield' <MHirschfield@rccblaw.com>; 'Steinberg, Arthur' <ASteinberg@KSLAW.com>; 'Davidson,
Scott' <SDavidson@KSLAW.com>; 'william.olshan@lehmanholdings.com' <william.olshan@lehmanholdings.com>;
'rich.katz@torquepointllc.com' <rich.katz@torquepointllc.com>; 'anton.kolev@lehmanholdings.com'
<anton.kolev@lehmanholdings.com>
**Cc:** 'lehman_team@capital.co.jp' <lehman_team@capital.co.jp>
**Subject:** RE: In re Lehman Brothers Holdings Inc. - CPS Mediation Letter

Dear Mr. Hirschfield,

Any update?
CPS is ready to move forward ADR.

Best regards,

Mitsugu Saito

-------------------------------------------------------------------------
Capital Partners Securities Co., Ltd.
Shikoku Building, 8th Floor
1-13-7, Uchikanda, Chiyoda-ku, Tokyo, 101-0047
Direct: +81.3.3518.9332