## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **LEHMAN BROTHERS HOLDINGS INC.,** )<br>)<br>)<br> **Plaintiff,** )<br>)<br> **v.** )<br>)<br>)<br> **LENDINGTREE, LLC and**<br>**LENDINGTREE, INC.,** )<br>)<br>)<br>)<br> **Defendants.** ) | **Civ. No. 20-cv-1351 (SRN/HB)**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE OR TO COMPEL ARBITRATION** |

## I.   INTRODUCTION

Plaintiff Lehman Brothers Holdings Inc. ("Lehman") filed this lawsuit in the wrong place.  Neither the parties nor the relevant facts have any meaningful relationship to Minnesota.  Lehman is a Delaware corporation with a principal place of business in New York.  It seeks to enforce against Defendants a $13.3 million claim allowed by a California bankruptcy court in Home Loan Center, Inc.'s ("HLC") bankruptcy.  That claim arises out of a pending lawsuit Lehman filed against HLC in a New York bankruptcy court relating to loans HLC sold to Lehman Brothers Bank, FSB ("LBB") when HLC was headquartered in California.  At the time LBB bought loans from HLC, LBB was a federal savings bank with its principal place of business in either New York or Delaware.  Both Defendants LendingTree, LLC ("Tree-LLC") and LendingTree, Inc. ("Tree-Inc.") are organized under the laws of Delaware and maintain their principal place of business in North Carolina.  Indeed, the only purported relationship among the ***parties***

and this State is the allegation that "certain of the mortgage loans sold to LBB originated in Minnesota."  Complaint [Doc. No. 2] ¶ 25 ("Compl.").

As a result, Lehman does not allege jurisdiction and venue based on facts relevant to ***this lawsuit***.  Instead, Lehman seeks to bootstrap forum-specific facts from another lawsuit based on Lehman's decision to cut and paste from the complaint filed there.  *See ResCap Liquidating Trust v. LendingTree, LLC*, 19-cv-2360 (D. Minn.).  But this is a different case.  Unlike Lehman or its assignor LBB, ResCap's predecessor—Residential Funding Company, LLC ("RFC")—was headquartered in Minnesota.  Unlike LBB, who bought HLC loans from New York or Delaware, RFC bought HLC loans from Minnesota, pursuant to a contract governed by Minnesota law that selected Minnesota as the forum for dispute resolution.  Unlike Lehman, ResCap sued HLC in this Court prior to HLC's bankruptcy.  And unlike Lehman, which has an allowed claim against HLC from a California bankruptcy court, ResCap has a judgment against HLC from this Court.  While the *ResCap* case was connected to Minnesota in a number of ways, this case has no meaningful connection to the State.  Consequently, the Court should dismiss or transfer this case.

*First*, the Court lacks personal jurisdiction over Defendants.  Fed. R. Civ. P. 12(b)(2).  General jurisdiction does not exist because neither defendant is incorporated in Minnesota and neither maintains its principal place of business here.  Specific jurisdiction does not exist because the claims are not related to Minnesota.  Lehman instead alleges that Defendants consented to jurisdiction "by appointing an agent to receive service of process in Minnesota."  Compl. ¶ 2.  But Tree-Inc. has *not* appointed an agent to receive

service.  And while this Court has held that Tree-LLC's appointment of an agent is enough for personal jurisdiction, Defendants respectfully preserve for appeal their argument to the contrary.

At a minimum, the Court should dismiss the claims against Tree-Inc., including Count One in its entirety.  Count One asserts that Tree-Inc. assumed HLC's liabilities through the Separation Agreement (as defined below) that has no connection to Minnesota.  Even if, as in *ResCap*, this Court reasons that Count One is a suit on the underlying contracts between HLC and LBB (not on the Separation Agreement), those contracts still cannot establish personal jurisdiction.  The underlying contract in *ResCap* contained a Minnesota forum-selection clause and ResCap sued to enforce a Minnesota judgment.  The underlying contracts here do not have Minnesota forum selection clauses, and Lehman has sued to collect on a claim allowed by a California bankruptcy court.

*Second*, alternatively, the Court should dismiss or transfer this case because Lehman chose an improper venue.  *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). This district does not satisfy any of the three categories for venue under 28 U.S.C. § 1391 because Tree-Inc. is not a resident of Minnesota, a substantial part of the events giving rise to this case did not occur here, and an alternative forum exists.  Even if the Court concludes this is a permissible venue, it should transfer this case to the Western District of North Carolina, which is more convenient for the parties and witnesses.  28 U.S.C. § 1404(a).  The Complaint focuses on the actions of, and the relationships between, Tree-Inc., Tree-LLC, and HLC.  All three have their principal place of business in Charlotte, North Carolina, and the bulk of the witnesses and evidence are located there.  Moreover,

Lehman is not located here and, thus, cannot contend Minnesota is a more convenient forum for it.

*Finally*, even if the Court retains this case, it should compel the parties to arbitrate Count One. The Separation Agreement requires the parties to arbitrate any disputes about its meaning, including disputes over whether the arbitration agreement applies to a particular claim. Defendants recognize that in *ResCap* this Court held that the Separation Agreement's arbitration clause did not apply to a similar claim. They respectfully maintain that decision was wrong because, among other reasons, the Separation Agreement "delegates the arbitrability question to an arbitrator." *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). The Court should compel arbitration of Count One (including the issue of whether that claim is arbitrable) and stay the other counts pending that arbitration.

## II.    BACKGROUND

### A.    The 2008 Separation Agreement.

Tree-Inc., through its subsidiaries, operates online platforms that connect consumers with the providers of various financial products and services, including mortgage loans. Tree-Inc. was formed in 2008 to spinoff from IAC/InterActiveCorp ("IAC") the lending and real-estate business that IAC owned. Compl. ¶¶ 17, 30. In August 2008, Tree-Inc. entered into the Separation Agreement. *Id.* ¶ 33; *see id.* Ex. 2 [Doc. 2-2] ("Separation Agreement"). As a result, Tree-Inc. indirectly acquired Tree-LLC, which has wholly owned HLC since 2004. Compl. ¶¶ 16–19, 27. The Separation

Agreement requires all disputes relating to the agreement to be resolved by binding

arbitration.  Separation Agreement § 9.03 (p.43).

> **B.** **After The California Bankruptcy Court Allows Lehman's Proof Of Claim, Lehman Brings This Lawsuit.**

Lehman seeks to enforce a claim allowed in HLC's bankruptcy against

Defendants.  That claim and the events leading to it are not connected to Minnesota.

HLC previously was a provider (or "originator") of residential mortgage loans.

Compl. ¶¶ 26, 46.  It sold these loans to mortgage aggregators, including LBB (Lehman's

assignor here), a federal savings bank organized under 12 U.S.C. § 1464 with its principal

place of business in New York or Delaware.  *Id.* ¶¶ 45–46, 62; *see also Lehman Bros.*

*Bank, FSB v. State Bank Comm'r*, 937 A.2d 95, 104 (Del. 2007) ("We regard this course

of conduct as evidence that the Bank considered its 'principal place of business' to be

Delaware, not New York.").  In the early 2000s, Lehman's affiliate, LBB, entered into

contracts with HLC pursuant to which HLC sold LBB residential mortgage loans that

HLC originated.  Compl. ¶¶ 47–48.  (Defendants attach two "Loan Purchase

Agreements," incorporated by reference in the complaint, as Exhibits 1 and 2.  *See id.*

¶ 47.)  LBB sold these loans to Lehman who, in turn, sold them to third parties such as

Fannie Mae, Freddie Mac, and residential mortgage-backed securities trusts.  *Id.* ¶¶ 45,

62.  After Lehman filed for chapter 11 bankruptcy in the Southern District of New York

in 2008, these third parties brought claims based on alleged defects in the mortgages.  *Id.*

¶¶ 15, 65–69.  Lehman settled those claims in its New York bankruptcy.  *Id.* ¶ 68.

Lehman then brought claims against HLC for breach-of-contract and

indemnification.  But it did not file suit in Minnesota.  Instead it brought an adversary

proceeding in New York.  *See Lehman Bros. Holdings Inc. v. Home Loan Ctr., Inc.*, No.

16-01342-scc (Bankr. S.D.N.Y.) (the "New York Adversary Proceeding").  Compl.

¶¶ 23, 71–73.  It alleged that HLC breached contractual representations and warranties

made to LBB, which caused the losses Lehman sustained from its settlements with

Fannie Mae, Freddie Mac, and the trusts.  *Id.*  Unlike the underlying contract in *ResCap*,

the contracts between HLC and LBB do not contain forum-selection clauses choosing

Minnesota.  And, unlike the underlying contract in *ResCap*, which chooses Minnesota

law, LBB's contracts choose New York law.  *See* Loan Purchase Agreements § 8.

HLC filed for bankruptcy in July 2019, staying Lehman's New York action.  *See*

11 U.S.C. § 362(a).  Lehman filed a proof of claim in HLC's California bankruptcy

seeking to recover from HLC the damages alleged in the New York Adversary

Proceeding.  Compl. ¶¶ 4–5.  Lehman and HLC's chapter 7 trustee entered into a

settlement pursuant to which Lehman agreed to reduce its claim to $13.3 million and the

HLC trustee agreed to allow Lehman's claim for that amount (the "Allowed Claim").  *Id.*

¶¶ 5, 75.  Lehman then filed this action.  It seeks declarations that Defendants are directly

liable for the Allowed Claim based on three legal theories: (1) Tree-Inc. expressly

assumed liability for the Allowed Claim in the Separation Agreement; (2) Defendants are

HLC's alter-egos; and (3) HLC was acting as Defendants' agent when it sold loans to

LBB pursuant to the Loan Purchase Agreements.  *Id.* ¶¶ 82–97.

III.    **ARGUMENT**

A.    **The Court Lacks Personal Jurisdiction Over Defendants.**

The Court lacks personal jurisdiction over Defendants because the allegations

against them fail to connect them or Lehman's claims to Minnesota.  Fed. R. Civ. P.

12(b)(2).  To survive a motion to dismiss under Rule 12(b)(2), "a plaintiff must make a

prima facie showing that personal jurisdiction exists."  *Paisley Park Enters., Inc. v.

Boxill*, 361 F. Supp. 3d 869, 875 (D. Minn. 2019) (internal quotation marks omitted).

This requires the plaintiff to plead "sufficient facts to support a reasonable inference" that

the court has jurisdiction over the defendant, *id.*, in the form of a "'substantial

connection' . . . between the defendant and the forum state," *Johnson v. Woodcock*, 444

F.3d 953, 956 (8th Cir. 2006).  "Because Minnesota's long-arm statute extends

jurisdiction to the maximum limit permitted by due process," the only question is whether

personal jurisdiction "comports with due process."  *Paisley Park*, 361 F. Supp. 3d at 875.

Due process requires a federal court to have either general or specific jurisdiction

over a defendant.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Helicopteros

Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).  General jurisdiction

allows a court to hear any claims against a defendant when their "affiliations with the

State are so 'continuous and systematic' as to render them essentially at home in the

forum State."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Goodyear

Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Specific jurisdiction, by

contrast, applies only if the controversy is "related to" or "arises out of" the defendant's

contacts with the forum state.  *Woodcock*, 444 F.3d at 956 (citation omitted); *see also*

*Goodyear*, 564 U.S. at 919.  Neither applies here.

> ## 1. Defendants are not subject to general jurisdiction in Minnesota.

Generally, a corporation is subject to general personal jurisdiction in two forums:

its place of incorporation and its principal place of business.  *BNSF*, 137 S. Ct. at 1558

(citing *Daimler*, 571 U.S. at 137).  In an "'exceptional case,' a corporate defendant's

operations in another forum 'may be so substantial and of such a nature as to render the

corporation at home in that State.'"  *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).  But the

Supreme Court has applied this exception only once, finding an Ohio court had general

jurisdiction over a Filipino corporation that had temporarily relocated its principal place

of business to Ohio during the Japanese occupation of the Philippines during World

War II.  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952).  The

Court has not applied it in the seven decades since, leading one justice to suggest that it

has "read the exception out of existence entirely," or at least "limit[ed]" it "to the exact

facts of *Perkins*."  *BNSF*, 137 S. Ct. at 1561–62 (Sotomayor, J., concurring in part and

dissenting in part).

Here, the Complaint fails to show that Defendants are subject to general personal

jurisdiction in Minnesota.  Tree-Inc. is incorporated in Delaware and has its principal

place of business in North Carolina.  Compl. ¶ 18; Barker Decl. ¶ 5.[1]  Same for Tree-

---

[1]      "Barker Decl." refers to the Declaration of Dana Barker in Support of
Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue or Compel
Arbitration.

LLC.  Compl. ¶ 16; Barker Decl. ¶ 8.  Nor does the Complaint make it plausible that this

is an "exceptional case" where either Defendant's contacts are so substantial as to render

it "at home" in Minnesota.  *Daimler*, 571 U.S. at 139 n.19.  Just the opposite: the

Complaint fails to allege *any* contacts between Defendants and Minnesota except for an

allegation (addressed below) that they appointed an agent to receive service.  Compl.

¶ 24.  The absence of any Minnesota contacts precludes general personal jurisdiction.

### 2.    Defendants are not subject to specific jurisdiction in Minnesota.

Defendants also are not subject to specific personal jurisdiction in Minnesota.  A

defendant is subject to specific jurisdiction only if it "purposefully directed its conduct

into the forum State," the suit "arise[s] out of or relate[s] to the defendant's contact with

the forum," and the exercise of jurisdiction is reasonable.  *Bristol-Myers Squibb Co. v.

Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017); *see Pangaea, Inc. v.

Flying Burrito LLC*, 647 F.3d 741, 746 (8th Cir. 2011) (citation omitted).  Because this

requires a nexus between a defendant's contacts and the claims, a plaintiff must establish

specific jurisdiction for each claim.  *See, e.g.*, *Seiferth v. Helicopteros Atuneros, Inc.*, 472

F.3d 266, 274 (5th Cir. 2006); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001);

*Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999);

*Zumbro, Inc. v. California Nat. Prod.*, 861 F. Supp. 773, 779 (D. Minn. 1994); *see also

Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281–82 (8th Cir. 1991).

The Complaint's three counts are unrelated to Defendants limited contacts with

Minnesota.  Generally, Lehman does not allege that Tree-Inc. or Tree-LLC had any

contacts with, or took any action in, Minnesota related to this lawsuit.  More specifically,

a claim-by-claim analysis confirms that the Complaint does not establish specific jurisdiction for any of its three counts.

**a.** Start with Count One, which seeks a declaration that Tree-Inc. expressly assumed HLC's liabilities through the Separation Agreement. Compl. ¶¶ 9, 30–36, 84. Defendants maintain that Count One is a suit on the Separation Agreement, which has no connection to Minnesota. It was executed between several Delaware entities. *See* Separation Agreement at Preamble (p.4). It selects Delaware law to govern its "validity, construction, effect, enforceability, performance and remedies." *Id.* § 13.09 (p.48); *see also id.* § 9.03 (p.43) (same). And when Tree-Inc. executed the agreement, there was nothing that would have provided "fair warning that [its] activities might result in [its] being haled into court in [Minnesota]." *Woodcock*, 444 F.3d at 955. Indeed, the Complaint's allegations for Count One do not even mention Minnesota.

Even if this Court holds, as it did in *ResCap*, that Lehman's suit is on the underlying contracts (not the Separation Agreement), this Court still lacks personal jurisdiction. In *ResCap*, the Court held that it had personal jurisdiction over Tree-Inc. for Count One because the plaintiff had sued to enforce a Minnesota judgment based on HLC's breach of a contract with a Minnesota company that had a Minnesota forum-selection clause. 2020 WL 1317719, at *6, 11 (D. Minn. Mar. 20, 2020). Lehman is a Delaware corporation with its principal place of business in New York. Compl. ¶ 15. It seeks to enforce the Allowed Claim, which was allowed in HLC's California bankruptcy and based on claims asserted in the New York Adversary Proceeding. Neither the Allowed Claim nor the New York Adversary Proceeding is connected to Minnesota. *Id.*

¶ 5.  Most importantly, the Loan Purchase Agreements between HLC and LBB have no

forum-selection clauses and do not even mention Minnesota, instead choosing New York

as the governing law.  *See* Loan Purchase Agreements § 8.  So whether this is a suit on

the Allowed Claim, the Loan Purchase Agreements, or the Separation Agreement, the

Court lacks specific personal jurisdiction over Tree-Inc. and should dismiss Count One.

**b.**  The same goes for Counts Two and Three, which seek to hold Defendants

liable under alter-ego and agency theories.  Compl. ¶¶ 86–97.  Again, the allegations fail

even to mention Minnesota.  The only possible hook, then, comes from HLC.

Generally, a parent corporation "is not present in a state merely because the

subsidiary is there."  *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 650 (8th Cir.

2003).  In some circumstances courts may exercise personal jurisdiction over a corporate

defendant through a subsidiary's contacts.  Jurisdiction may exist if the subsidiary is the

defendant's alter-ego, for example, or through a principal-agent relationship when the

defendant sufficiently controls the subsidiary.  *See id.* at 648–49; *Viasystems, Inc. v.

EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011).

Even assuming, for purposes of this motion, that the Complaint alleges facts

sufficient to impute HLC's contacts to Defendants, HLC's contacts do not establish

specific personal jurisdiction either.  Through nearly 35 pages and 100 paragraphs, the

Complaint makes only one factual allegation connecting HLC and this forum: that

"certain of the mortgage loans [HLC] sold to [LBB] originated in Minnesota."  Compl.

¶ 25(ii).  That is not enough.  The Complaint does not allege how many loans HLC sold

to LBB or what portion originated in Minnesota.  It does not allege any of the purportedly

defective loans originated in Minnesota.  And, crucially, the Complaint does not allege

that any portion of Lehman's Allowed Claim relates to a meaningful number of

Minnesota loans.  Even if HLC's contacts are imputed to Defendants, they cannot

establish specific personal jurisdiction.

The differences between this case and *ResCap* confirm the point.  In *ResCap*,

Defendants did not contest that the Court had personal jurisdiction over them for the

alter-ego count because HLC's contacts, if imputed to Defendants, were sufficient for

personal jurisdiction.  *See* Motion to Dismiss at 9–10, *ResCap*, 19-cv-2360  [Doc. 31].

Similarly, Defendants contested the Court's exercising personal jurisdiction over them

for the agency count by arguing that HLC's contract specific contacts should not be

imputed to Defendants because they were not parties to HLC's underlying contract with

ResCap.  *Id.* at 14–15.  Here, by contrast, HLC's contacts do not establish personal

jurisdiction.  Again, *ResCap* involved a contract between HLC and a *Minnesota*

corporation, with a *Minnesota* forum-selection clause, that resulted in a *Minnesota*

judgment.  2020 WL 1317719, at *6, 11.  And it alleged that HLC sold more than "6,200

loans to RFC in Minnesota, which gave rise to RFC's indemnification claim and

ultimately resulted in the [j]udgment against HLC."  *Id.* at *11.

This complaint alleges no meaningful Minnesota connections.  *See supra* Section

III.A.2.a.  All of the meaningful alleged facts about HLC occurred in States other than

Minnesota.  HLC sold loans from its offices in *California* to a bank (LBB) located in

*New York* or *Delaware*.  Compl. ¶ 20; *Lehman Bros.*, 937 A.2d at 104.  Lehman filed the

New York Adversary Proceeding in *New York*.  A *California* court allowed the Allowed

Claim.  Compl. ¶ 73–75; *see* Order, *In re Home Loan Ctr., Inc.*, No. 19-51455-MEH

(Bankr. N.D. Cal. June 11, 2020) [Doc. 179].  HLC simply does not have any *Minnesota*

contacts relating to Lehman's underlying claim.  Because Lehman cannot even show that

this Court has specific personal jurisdiction over HLC, it cannot establish that the Court

has specific personal jurisdiction over Defendants.

### 3. Tree-Inc. did not consent to personal jurisdiction by appointing an agent for service of process in Minnesota.

The Complaint does not allege that this Court has general or specific personal

jurisdiction over Defendants.  Instead, it asserts that Defendants "consented to personal

jurisdiction . . . by appointing an agent for receipt of service of process in Minnesota."

Compl. ¶ 24.  This allegation is untrue with respect to Tree-Inc., which has *not* appointed

an agent to receive service of process in Minnesota.  Barker Decl. ¶ 7.  And while Tree-

LLC has appointed an agent, it disagrees that the legal effect is that it has consented to

jurisdiction in Minnesota for any and all claims against it.

To be sure, the Eighth Circuit has held that appointing an agent for service "gives

consent to the jurisdiction of Minnesota courts of any cause of action, whether or not

arising out of activities within the state." *Knowlton v. Allied Van Lines*, 900 F.2d 1196,

1999–1200 (8th Circ. 1990).  Defendants respectfully maintain that *Knowlton* was

wrongly decided and should not apply where (as here) the registration statute does not

expressly mention consent to general personal jurisdiction.  *See* Minn. Stat. § 322C.0116;

*Matthews v. BNSF Ry. Co.*, 2017 WL 2266891, at *1–2 (W.D. Mo. May 23, 2017);

*Keeley v. Pfizer Inc.*, 2015 WL 3999488, at *4, n.2 (E.D. Mo. July 1, 2015).  They also

-13-

dispute *Knowlton*'s continued validity given recent Supreme Court precedent, including *Goodyear*, *Daimler*, and *BNSF*. *See State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017). However, because this Court continues to follow *Knowlton*, *see Am. Dairy Queen Corp. v. W.B. Mason Co.*, 2019 WL 135699, at *1, 6 (D. Minn. Jan. 8, 2019), Defendants simply object to the exercise of personal jurisdiction under *Knowlton* and preserve their right to appeal the issue. And regardless of its jurisdiction over Tree-LLC, the Court should dismiss Count One (against Tree-Inc. only) and Counts Two and Three with respect to Tree-Inc.

### B. Alternatively, The Court Should Dismiss This Case For Improper Venue Or Transfer It To The Western District Of North Carolina.

Alternatively, because Lehman chose an improper venue, Fed. R. Civ. P. 12(b)(3), the Court should dismiss the case or transfer it to the Western District of North Carolina, 28 U.S.C. §§ 1404(a), 1406(a). *First*, venue is improper because the Complaint does not satisfy any of the categories for venue in 28 U.S.C. § 1391(b). *Second*, even if this is a permissible venue, North Carolina—where the bulk of the parties, witnesses, and relevant evidence is located—is a more convenient forum. *See id.* § 1404(a).

### 1. Venue is improper under 28 U.S.C. § 1391(b).

This Court must either dismiss the case or transfer it because venue is improper in Minnesota. 28 U.S.C. § 1406(a). When a defendant challenges venue, the court must decide whether the case falls within any of the categories in 28 U.S.C. § 1391(b). "If it does, venue is proper; if it does not, venue is improper." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). Section 1391(b) allows venue

in "any district (1) in which all defendants reside ('residential venue'), or (2) where a substantial part of the claim arose ('transactional venue'), or, if there is no district satisfying either of those, where any defendant is subject to personal jurisdiction for the present case ('fallback venue')."  14D Arthur R. Miller, Fed. Practice & Procedure, Juris. § 3804 (4th ed. & Apr. 2020 Update); *see* 28 U.S.C. § 1391(b)(1)–(3).

In the Eighth Circuit, defendants carry the burden to establish venue is improper. *United States v. Orshek*, 164 F.2d 741, 741–42 (8th Cir. 1947); *see Metro Sales, Inc. v. Core Consulting Grp., LLC*, 2016 WL 912183, at *4 (D. Minn. Mar. 7, 2016) (following *Orshek*).  "To discharge that burden, the defendant must submit affidavits or other evidence defeating venue in the chosen forum."  *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, 2009 WL 1684428, at *2 (D. Minn. June 16, 2009).  Here, Defendants' evidence and the Complaint's allegations show that venue is improper in Minnesota.

*First*, the Complaint does not satisfy residential venue because "*all* defendants" do not reside in Minnesota.  28 U.S.C. § 1391(b)(1) (emphasis added).  For venue purposes, a corporate defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id.* § 1391(c)(2).  As explained above, the Court does not have personal jurisdiction over either Defendant—or at least not over Tree-Inc.  *See supra* Section III.A.

*Second*, the Complaint does not satisfy transactional venue because "a substantial part of the events . . . giving rise to the claim[s]" did not occur in Minnesota.  28 U.S.C. § 1391(b)(2).  For transactional venue courts ask "whether the district the plaintiff chose had a substantial connection to the claim."  *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278,

1281 (8th Cir. 1994). The court's focus "must be on relevant activities of the defendant in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014). As with specific personal jurisdiction, courts must address venue on a claim-by-claim basis. *See Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir. 1985). Defendants' arguments against specific personal jurisdiction show that a "substantial" part of the events giving rise to Lehman's claims did not occur in Minnesota. *See supra* Section III.A.2. Briefly, the Complaint does not allege that either Defendant took *any* actions in Minnesota that gave rise to Lehman's claims. The only connection to Minnesota is the general allegation that "certain" loans HLC sold to LBB "originated in Minnesota," Compl. ¶ 25(ii), but Lehman does not even allege that a meaningful portion of those loans, much less any, underlie its claims against HLC.

*Third*, fallback venue is not an option because it applies only if the plaintiff could not bring the action in another district. 28 U.S.C. § 1391(b)(3). Defendants have their principal places of business in Charlotte, North Carolina. Compl. ¶¶ 16, 18; Barker Decl. ¶ 5. Because the Western District of North Carolina has personal jurisdiction over them, all defendants "reside" in North Carolina, *id.* § 1391(c)(2), and venue is proper in that district, *id.* § 1391(b)(1). Since venue is proper there, venue cannot be proper here under § 1391(b)(3).

*Finally*, if the Court chooses to transfer the case rather than dismiss, *see* 28 U.S.C. § 1406(a), Defendants ask it to transfer to the Western District of North Carolina. Further, since personal jurisdiction is not required to transfer a case, *Am. Registry of Technologists v. Bennett*, 655 F. Supp. 2d 944, 946 (D. Minn. 2009), and North Carolina

is a better forum, the Court may transfer the case without deciding whether it has

personal jurisdiction over Defendants or whether venue is proper here.  *See, e.g.*, *U.S.*

*Bank Nat'l Ass'n v. Alliant Energy Res., Inc.*, 2009 WL 10711818, at *2 (D. Minn. Jan.

20, 2009).

> **2.      Even if this is a permissible venue, the Court still should transfer this case to the Western District of North Carolina.**

A district court may transfer a case to any other district where venue is proper

"[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C.

§ 1404(a).  The court has broad discretion in deciding a motion to transfer.  *Everett v. St.*

*Ansgar Hosp.*, 974 F.2d 77, 79 (8th Cir. 1992).  The purpose of transfer is to "prevent the

waste of time, energy and money and to protect litigants, witnesses and the public against

unnecessary inconvenience and expense."  *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d

1023, 1026 (D. Minn. 1999).  Courts must consider three factors: (1) the convenience of

the parties; (2) the convenience of the witnesses; and (3) the interests of justice.  *Id.*

These are not exclusive; courts also "should weigh any 'case-specific factors' relevant to

convenience and fairness to determine whether transfer is warranted."  *In re Apple, Inc.*,

602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (citation omitted).

As a threshold matter, the Court may transfer this case only to a district where

venue is proper.  28 U.S.C. § 1404(a); *see Cosmetic Warriors Ltd. v. Abrahamson*, 723 F.

Supp. 2d 1102, 1104 (D. Minn. 2010).  Venue is proper in the Western District of North

Carolina, where Defendants reside.  28 U.S.C. § 1391(b)(1); *see supra* Section III.B.1.

The relevant factors weigh in favor of transfer.  *First*, the Western District of
North Carolina would be more convenient because both defendants have their principal
place of business there.  Compl. ¶¶ 16, 18; Barker Decl. ¶ 5.  The majority of Tree-Inc.'s
and Tree-LLC's employees with knowledge about their businesses, the Separation
Agreement, Tree-LLC's acquisition of HLC, and the relationship between Tree-Inc.,
Tree-LLC, and HLC work and live in North Carolina.  Barker Decl. ¶ 12.  The bulk of
Defendants' relevant evidence is located there.  Barker Decl. ¶ 11.  By contrast, no party
has its principal place of business in Minnesota.  And to Defendants' knowledge "no
Minnesota employees . . . will testify in this case" and no "relevant documents" of any
party are located there.  *Cosmetic Warriors*, 723 F. Supp. 2d at 1106.  Lehman  "will be
inconvenienced no matter where this litigation is venued, while Defendants will suffer far
less inconvenience" in North Carolina.  *Id.*  As a result this factor "favors transfer."  *Id.*

*Second*, North Carolina would be more convenient for the witnesses.  Party
witnesses reside in North Carolina, at least on Defendants' side.  Barker Decl. ¶ 12.
North Carolina thus would "be more personally convenient for most of the witnesses"
and would ensure live testimony at trial.  *Nelson*, 58 F. Supp. 2d at 1027.  Defendants are
unaware of any potential witnesses in Minnesota or for whom Minnesota would be a
more convenient venue.

*Finally*, while courts consider numerous issues related to the interests of justice,
*see Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997), the relevant
points favor transfer.  The cost of litigation will be lower in North Carolina because Tree-
Inc. and Tree-LLC are at home there.  *See id.*  Minnesotans have less of an interest in jury

duty, and Minnesota has less of an interest in resolving this dispute, because it does not
have any relationship to Minnesota. *See Brockman v. Sun Valley Resorts, Inc.*, 923 F.
Supp. 1176, 1182 (D. Minn. 1996). The parties are not from Minnesota. The allegations
in the Complaint are not connected to Minnesota. And this case will not involve
questions of Minnesota law. For Count One, the Separation Agreement is governed by
Delaware law and the Loan Purchase agreements are governed by New York law. For
Counts Two and Three, there is no basis to argue Minnesota applies because no party
calls Minnesota home and "the law of the state of incorporation normally determines
issues relating to the internal affairs of a corporation." *Matson Logistics, LLC v. Smiens*,
2012 WL 2005607, at \*5 (D. Minn. June 5, 2012). Finally, courts have transferred to
more convenient venues when there are "serious doubts" whether a defendant "is subject
to personal jurisdiction in the forum." *Cosmetic Warriors*, 723 F. Supp. 2d at 1109.

The two considerations that normally disfavor transfer carry substantially less
weight here. Consideration One: there is a general presumption in favor of a plaintiff's
choice of forum. *Id.* However, that choice receives "significantly less deference" where
the plaintiff does not reside in the forum and the underlying facts did not occur there.
*Nelson*, 58 F. Supp. at 1027; *see Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 981 (D.
Minn. 2013). Consideration Two: the Complaint alleges that Minnesota is more
convenient because *ResCap* is before this Court. Compl. ¶ 25(iv). But *ResCap* no longer
offers convenience or efficiency because ResCap and Defendants are in the process of
implementing a settlement and Defendants anticipate *ResCap*'s dismissal with prejudice.
The numerous factors favoring transfer here strongly outweigh the few considerations

that might support litigating this suit in a venue with little connection to the parties,
witnesses, or claims.

### C.    If The Court Does Not Dismiss Or Transfer This Case, It Should Compel The Parties To Arbitrate Count One.

Defendants recognize that this Court previously held that the Separation
Agreement's arbitration clause did not require ResCap to arbitrate a similar claim. *See
ResCap*, 2020 WL 1317719, at *25–29. For the reasons explained below, Defendants
respectfully submit that the Court wrongly decided the issue there and raise it here
because they believe the Court should reconsider its decision and to preserve the issue for
an immediate interlocutory appeal.

The Federal Arbitration Act (the "FAA") requires courts to enforce agreements to
arbitrate that fall within the scope and coverage of the Act. *KPMG LLP v. Cocchi*, 565
U.S. 18, 19 (2011) (per curiam). Congress enacted the FAA to overcome judicial
hostility to arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 345
(2011). The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute
resolution.'" *KPMG*, 565 U.S. at 21 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-
Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The FAA's primary substantive section states
that "[a] written provision in a contract . . . evidencing a transaction involving commerce
to settle by arbitration a controversy thereafter arising out of such contract or transaction"
"shall be valid, irrevocable, and enforceable" unless grounds at law or equity allow
revocation of the contract. 9 U.S.C. § 2.

The FAA applies to claims by third parties if applicable state law makes written arbitration provisions "enforceable against (or for the benefit of) a third party." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) (same). Delaware law applies because Minnesota courts enforce choice-of-law provisions and the Separation Agreement chooses Delaware law. (Separation Agreement § 13.09 (p.48).) *See St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 787–88 (8th Cir. 2016); *Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. 1994). Under Delaware law, a non-party is bound by a contract's arbitration provision when it sues to enforce the terms of that contract. Lehman thus must pursue Count One, if at all, through arbitration.

### 1.    Delaware law binds non-parties to a contract's arbitration provision when they sue on the contract.

"'Traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Arthur Andersen*, 556 U.S. at 631 (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)); *Reid*, 701 F.3d at 846 (same); *see Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (third-party beneficiary). Delaware law enforces arbitration provisions against those seeking to benefit from the contract, *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 221 (3d Cir. 2014), and third-party beneficiaries, *e.g.*, *NAMA Holdings, LLC v. Related World Market Ctr., LLC*, 922 A.2d 417, 431 (Del. Ch. 2007).

**a.** Equitable estoppel prevents a non-party to a contract from "embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful." *Capital Grp. Cos. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004); *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 182 (Del. Ch. 2010) (same). "This prevents a non-signatory from 'cherry-picking'" the beneficial provisions of a contract "and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)." *Invista S.a.r.l. v. Rhodia, SA*, 625 F.3d 75, 85 (3d Cir. 2010).

Delaware courts have identified several circumstances in which a non-signatory has embraced a contract. *First*, when the non-signatory "direct[ly], rather than indirect[ly]," benefitted from the contract during the course of its performance. *Flintkote*, 769 F.3d at 221 (quoting *NAMA Holdings*, 922 A.2d at 432). *Second*, when the non-signatory "consistently maintain[s] that other provisions of the same contract should be enforced to benefit him." *Id.* (quoting *Aveta*, 23 A.3d at 182). *Third*, when the non-signatory "sue[s] to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not." *Id.* (citation omitted).

When the third circumstance exists—when non-parties sue to enforce provisions of a contract—it is "immaterial" whether the non-parties "are characterized as 'third-party' beneficiaries or only 'incidental' beneficiaries." *Smyrna v. Kent Cty. Levy Court*, 2004 WL 2671745, at *4 (Del. Ch. Nov. 9, 2004). That is because "[e]quity will not allow a party to sue to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not." *Id.*; *accord Sanford v.*

*Bracewell & Guiliani, LLP*, 618 F. App'x 114 (3d Cir. 2015) ("Such exploitation occurs when a non-signatory embraces a contract by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions, and then turn[s] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.") (internal quotation marks and citations omitted).

**b.** "Delaware law prohibits third-party beneficiaries from reaping the benefits of a contract they seek to enforce, while, at the same time, avoiding the burdens or limitations of the contract." *Hadley v. Shaffer*, 2003 WL 21960406, at *6 (D. Del. Aug. 12, 2003) (citing *Rumsey Elec. Co. v. University of Delaware*, 358 A.2d 712, 714 (Del. 1976)). Thus, "a court will not allow a third-party beneficiary to cherry-pick certain provisions of a contract which it finds advantageous in making its claim, while simultaneously discarding corresponding contractual obligations which it finds distasteful." *NAMA Holdings*, 922 A.2d at 434; *see also Reserves Dev. LLC v. Severn Sav. Bank*, 2007 Del. Ch. LEXIS 156, at *58 (Del. Ch. Nov. 9, 2007) (same). "The law is clear that, in the context of enforcing an arbitration clause, a third-party beneficiary of the agreement has no greater rights to compel or avoid arbitration than does one of the signatories to the contract." *Id.*; *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001) (applying Delaware law). Non-signatory plaintiffs suing on a contract cannot "have it both ways." *Smyrna*, 2004 WL 2671745, at *4. "If they are not third-party beneficiaries" to the contract, "they have no standing to sue to enforce [it]." *Id.* "If they are third-party beneficiaries, they are bound to the arbitration clause." *Id.*

### 2. The Separation Agreement's arbitration provision requires the parties to arbitrate Count One—or at least whether Count One is subject to arbitration.

Federal and Delaware law both hold that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *see Johnson Controls v. Cedar Rapids*, 713 F.2d 370, 373 (8th Cir. 1983) (same); *SCB Interactive v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998) (same). Parties also "may agree to have an arbitrator decide not only the merits of a particular dispute but also the gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotation marks and citation omitted). When the parties delegate this threshold question to an arbitrator, "a court possesses no power to decide [it]." *Henry Schein*, 139 S. Ct. at 529.

**a.** The Separation Agreement's arbitration clause requires the parties to arbitrate Count One, which seeks a declaration regarding the meaning of other provisions of that contract. The arbitration provision is broad and covers disputes regarding the agreement's interpretation. It provides that "any such Dispute shall be settled by binding arbitration before the American Arbitration Association ('AAA') in Wilmington, Delaware pursuant to the Commercial Rules of the AAA." Separation Agreement § 9.03 (p.43). Another section in the Separation Agreement confirms that "[t]he provisions of Article IX shall be the Parties' sole recourse for any breach" of the agreement. *Id.* § 13.01 (p.46). A "Dispute," in turn, is "any controversy, claim or dispute of whatever

nature arising out of or relating to this Agreement or the breach, termination,

enforceability or validity thereof." *Id.* § 9.02(a) (p.42).

Under this broad definition, any dispute about the meaning of the Separation

Agreement is subject to arbitration. This includes Count One's merits *and* the gateway

issue of whether Count One is subject to arbitration. As to the former, the question

whether Tree-Inc. assumed HLC's liabilities under the Separation Agreement "relate[s]

to this Agreement." As to the latter, the Separation Agreement incorporates the AAA's

Commercial Rules, *id.* § 9.03 (p.43), which provide that "[t]he arbitrator shall have the

power to rule on his or her own jurisdiction, including any objections with respect to the

existence, scope, or validity of the arbitration agreement or to the arbitrability of any

claim or counterclaim." Am. Arb. Ass'n R. 7(a).

This means the arbitrator must decide whether Count One is arbitrable—even if

this Court believes the Separation Agreement's arbitration clause does not apply to Count

One. *See Henry Schein*, 139 S. Ct. at 527–28. The Supreme Court has consistently held

that parties may delegate the issue of whether a claim is subject to arbitration. *See Rent-

A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (collecting cases). And it

recently rejected a line of cases holding that courts "should decide the threshold

arbitrability question if, under the contract, the argument for arbitration is wholly

groundless." *Henry Schein*, 139 S. Ct. at 529.

**b.** Turning to the question of whether Count One falls within the Separation

Agreement's arbitration clause, this Court held in *ResCap* that the arbitration clause

applied only to Disputes between the parties to the agreement. Defendants respectfully

disagree with that conclusion.  Section 9.02(a) provides a less formal process for the

parties to the Separation Agreement to try to resolve a Dispute before arbitration.  But it

does not limit the definition of Disputes to Disputes between the parties to the agreement:

> Any Party (a "Claimant Party") may commence the dispute
> resolution process of this Section 9.02 by giving the other
> Party or Parties with whom there is such a controversy, claim
> or dispute written notice (a "Dispute Notice") of *any*
> *controversy, claim or dispute of whatever nature arising out*
> *of or relating to this Agreement or the breach, termination,*
> *enforceability or validity thereof* (a "Dispute") which has not
> been resolved in the normal course of business.

Separation Agreement § 9.02(a) (p.42) (emphasis added).

The sentence's syntax confirms that the emphasized language is the entire

definition of dispute.  *First*, this language immediately follows another defined term

(Dispute Notice)—showing that the words that precede that defined term are not part of

the following defined term (Dispute).  *Second*, the last use of "Party or Parties" is limited

by the phrase "with whom there is such a controversy, claim or dispute."  If "Party or

Parties" is part of the definition of dispute, this self-referential language would be too.

While only Parties to the Separation Agreement can initiate § 9.02's informal

dispute resolution process, the same is not true for § 9.03's arbitration provision:

> If the Dispute has not been resolved by the dispute resolution
> process described in Section 9.02, the Dispute Parties agree
> that any such Dispute shall be settled by binding arbitration
> before the American Arbitration Association ("AAA") in
> Wilmington, Delaware pursuant to the Commercial Rules of
> the AAA.

Separation Agreement § 9.03 (p.43).  This applies to any Dispute that is not resolved by

the process in § 9.02.  Since a third party cannot initiate that process, by definition Count

One is a "Dispute that has not been resolved by the dispute resolution process" and subject to arbitration.

Section 9.03's statement that the "Dispute Parties agree" does not limit the definition of Dispute to disputes between the parties to the Separation Agreement. *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 797, 800–01 (8th Cir. 2005). In *CD Partners*, the Eighth Circuit held that an analogous provision—providing that "Franchisor and Franchisee agree" to arbitrate "any claim, controversy, or dispute"—covered non-contractual disputes with third parties. *Id.* at 797, 800–01. So, too, here.

**c.** Count One seeks a declaration regarding the meaning of the Separation Agreement. That Count is titled "Declaratory Relief Against LendingTree Parent." Compl. at 28. It alleges that "[a]n actual controversy has arisen and now exists between" Lehman and Tree-Inc. over whether Tree-Inc. "expressly assumed HLC's repurchase and indemnification liabilities." *Id.* ¶ 83. Count One further alleges that the purported express assumption was made "[w]hen [Tree-Inc.] was spun off from IAC," quoting and relying only on provisions of the Separation Agreement. *Id.* ¶ 84. And it asks the Court for "a declaration that LendingTree Parent ***expressly assumed*** the liabilities of HLC." *Id.* ¶ 85 (emphasis added); *see also id.* at Prayer ¶ A (requesting "[a] declaratory judgment that Defendants assumed HLC's indemnification liabilities"). Count One does not seek relief with respect to the Loan Purchase Agreements, but instead seeks a declaration regarding Tree-Inc.'s obligations under the Separation Agreement.

**d.** Because Count One seeks a declaration regarding the express meaning of the Separation Agreement, and Tree-Inc.'s contractual obligations thereunder, the Separation

Agreement's arbitration provision requires Lehman to arbitrate Count One. Delaware

law equitably estops a non-signatory party from "su[ing] to enforce the provisions of a

contract that it likes, while simultaneously disclaiming the provisions that it does not."

*Flintkote*, 769 F.3d at 221 (quoting *Smyrna*, 2004 WL 2671745, at *4). This rule applies

to Lehman regardless if it is a third-party beneficiary or only an "incidental" beneficiary.

*Smyrna*, 2004 WL 2671745, at *4.

Moreover, Lehman can sue to enforce the Separation Agreement only if it is a

party or a third-party beneficiary to that contract. "As a general rule, only parties to a

contract and intended third-party beneficiaries may enforce an agreement's provisions."

*NAMA Holdings*, 922 A.2d at 434. While Lehman is neither because the contract

disclaims third-party beneficiaries, *see* Separation Agreement § 13.07, Count One is not

viable unless Lehman shows it *is* a third-party beneficiary. *Cf. Henry Schein*, 139 S. Ct.

at 529 (a court may not rule on the merits of the underlying claim even if it appears

frivolous). Non-signatory plaintiffs suing on a contract cannot "have it both ways."

*Smyrna*, 2004 WL 2671745, at *4. "If they are not third-party beneficiaries" to the

contract, "they have no standing to sue to enforce [it]." *Id.* "If they are third-party

beneficiaries, they are bound to the arbitration clause." *Id.*

### 3. The Court should compel arbitration of Count One and stay the remaining claims.

The FAA requires district courts to compel arbitration and stay litigation of any

arguably arbitrable claim pending the outcome of arbitration upon a party's request. 9

U.S.C. §§ 3, 4. Issues in this case—Count One, as well as whether Count One is subject

to arbitration— are "referable to arbitration" under the Separation Agreement. *Id.* § 3;
*see Reid*, 701 F.3d at 845; *see also Webb v. R. Rowland & Co.*, 800 F.2d 803, 808 (8th
Cir. 1986).  Thus, if the Court does not dismiss or transfer this case, it should compel the
parties to arbitrate Count One.

It also should stay the remaining counts.  Section 3 authorizes courts to stay entire
actions even when only a subset of claims are arbitrable.  *AgGrow Oils, L.L.C. v. Nat'l
Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir. 2001).  Courts consider several factors,
including whether the claims involve similar legal or factual questions, whether a stay
would minimize the risk of inconsistent rulings, and whether a stay would increase or
minimize prejudice to the parties from delay.  *E.g.*, *id.* at 783; *Contracting Nw., Inc. v.
Fredericksburg*, 713 F.2d 382, 386–87 (8th Cir. 1983); *Pioneer Power, Inc. v. St. Paul
Park Refining Co.*, 2019 WL 446568, at *2 (D. Minn. Feb. 5, 2019).

These factors favor a stay here.  A stay will avoid duplicative litigation and
discovery, preserving the resources of the parties and this Court.  And while the
Complaint pleads three different legal theories, Count One and the remaining claims
share related facts and similar legal considerations, including (i) the scope of the
relationship and rights (if any) between Tree-Inc., Tree-LLC, HLC, Lehman, and LBB
and (ii) the impact (if any) of Tree-Inc.'s statements in its SEC filings, including
numerous statements regarding the Separation Agreement.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss this case or transfer it to the

Western District of North Carolina.  Alternatively, it should compel arbitration of Count

One and stay the remaining counts.


Dated:  August 19, 2020                          JONES DAY

                                                 */s/   Kelly G. Laudon*
                                                 Kelly G. Laudon (#0386854)
                                                 Matthew C. Enriquez (#0397301)
                                                 90 South 7th Street, Suite 4950
                                                 Minneapolis, MN 55402
                                                 Telephone:  (612) 217-8800
                                                 klaudon@jonesday.com
                                                 menriquez@jonesday.com

                                                 Matthew C. Corcoran *(pro hac vice*
                                                 motion pending*)*
                                                 325 John H. McConnell Boulevard
                                                 Columbus, OH 43215
                                                 Telephone:  (614) 469-3939
                                                 mccorcoran@jonesday.com

                                                 Carl E. Black (*pro hac vice* motion
                                                 pending)
                                                 North Point
                                                 901 Lakeside Avenue
                                                 Cleveland, Ohio 44114
                                                 Telephone: (216) 586-3939
                                                 ceblack@jonesday.com

                                                 *Attorneys for Defendants LendingTree,
                                                 LLC and LendingTree, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **LEHMAN BROTHERS HOLDINGS INC.,** ) | **Civ. No. 20-cv-1351 (SRN/HB)** |
| **Plaintiff,** ) | |
| **v.** ) | **CERTIFICATE OF COMPLIANCE** |
| **LENDINGTREE, LLC and LENDINGTREE, INC.,** ) | |
| **Defendants.** ) | |

I, Kelly G. Laudon, certify that the Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue or to Compel Arbitration complies with Local Rule 7.1(f) and (h).  I further certify that, in preparation of the above document, I used Word 2016, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations, in the following word count.  I further certify that Defendants' Memorandum of Law contains 8,187 words.

Dated:  August 19, 2020

JONES DAY

*/s/  Kelly G. Laudon*
Kelly G. Laudon (#0386854)
Matthew C. Enriquez (#0397301)
90 South 7th Street, Suite 4950
Minneapolis, MN 55402
Telephone:  (612) 217-8800
klaudon@jonesday.com
menriquez@jonesday.com

Matthew C. Corcoran (*pro hac vice*
motion pending*)*
325 John H. McConnell Boulevard
Columbus, OH 43215
Telephone:  (614) 469-3939
mccorcoran@jonesday.com

Carl E. Black (*pro hac vice* motion
pending)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
ceblack@jonesday.com

*Attorneys for Defendants LendingTree,
LLC and LendingTree, Inc.*