# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

LEHMAN BROTHERS HOLDINGS INC.,　　　　　Civ. No. 20-cv-1351 (SRN/HB)

　　　　　Plaintiff,

v.

LENDINGTREE, LLC and
LENDINGTREE, INC.

　　　　　Defendants.

---

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
# TO TRANSFER VENUE, OR TO COMPEL ARBITRATION

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND ............................................................................................. 3

    A.    HLC was obligated to indemnify LBHI for losses it incurred as a
result of defective mortgage loans that HLC sold ......................... 3

    B.    LendingTree Parent dominates and controls both HLC and
LendingTree Sub and openly admits that it is liable for HLC's debts .......... 4

    C.    LBHI obtains an allowed claim against HLC's bankrupt estate ................. 8

ARGUMENT .................................................................................................. 9

I.    THE COURT HAS PERSONAL JURISDICTION OVER LENDINGTREE ........ 9

    A.    Legal Standard ............................................................................. 9

    B.    LendingTree Sub and LendingTree Parent are both subject to the
Court's general jurisdiction ........................................................ 10

    C.    The Court has specific jurisdiction over LendingTree because HLC's
liability to LBHI arose, in part, in Minnesota ............................. 13

II.    LENDINGTREE'S MOTION TO DISMISS OR TRANSFER FOR
IMPROPER VENUE SHOULD BE DENIED ...................................... 14

    A.    Venue is proper in this District .................................................. 14

    B.    The Court should deny LendingTree's transfer request ............... 15

    C.    In the alternative, the Court should transfer this case to the Southern
District of New York for referral to the Bankruptcy Court ......... 20

III.    THE COURT SHOULD NOT COMPEL ARBITRATION ................................. 23

    A.    The Spin Agreement does not require LBHI to arbitrate Count One ......... 23

    B.    LendingTree's third-party beneficiary and equitable estoppel
arguments are misguided ............................................................ 28

    C.    In the event the Court compels arbitration of Count One, it should
not stay the remaining counts ..................................................... 30

CONCLUSION ............................................................................................. 31

# TABLE OF AUTHORITIES

**Case**                                                                 **Page(s)**

*3M Co. v. Icuiti Corp.*,
    No. 05-2945, 2006 WL 1579816 (D. Minn. June 1, 2006) ........................................ 14

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    242 F.3d 777 (8th Cir. 2001) ................................................................. 30

*Alternative Pioneering Sys., Inc. v. Direct Innovative Prods., Inc.*,
    1992 WL 510190 (D. Minn. Aug. 2, 1992) ............................................... 20

*Am. Dairy Queen Corp. v. W.B. Mason Co.*,
    2019 WL 135699 (D. Minn. Jan. 8, 2019) ......................................... 10, 11

*Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*,
    124 F. Supp. 3d 878 (D. Minn. 2015) ........................................... 16, 17, 18

*Aveta Inc. v. Cavallieri*,
    23 A.3d 157 (Del. Ch. 2010) ................................................................. 29

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
    345 F.3d 347 (5th Cir. 2003) ............................................................ 24, 26

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................. 14

*Capital Grp. Cos., Inc. v. Armour*,
    2004 WL 2521295 (Del. Ch. Oct. 29, 2004) ............................................ 30

*CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*,
    259 F.R.D. 398 (D. Minn. 2009) ........................................................... 18

*CD Partners, LLC v. Grizzle*,
    424 F.3d 795 (8th Cir. 2005) ................................................................ 26

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*,
    799 F.3d 975 (8th Cir. 2015) ............................................................. 9, 10

*Creekridge Cap., LLC v. La. Hosp. Ctr., LLC*,
  410 B.R. 623 (D. Minn. 2009) ............................................................ *passim*

*Del. Tr. Co. v. Wilmington Tr., N.A.*,
  534 B.R. 500 (S.D.N.Y. 2015) ........................................................ 20, 21

*EDP Medical Comput. Sys., Inc. v. United States*,
  480 F.3d 621 (2d Cir. 2007) .................................................................. 8

*Epps v. Stewart Info. Servs. Corp.*,
  327 F.3d 642 (8th Cir. 2003) .............................................................. 11

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ........................................................................... 27

*Flink v. Carlson*,
  856 F.2d 44 (8th Cir. 1988) ................................................................ 26

*Gentry v. Kaltner*,
  2020 WL 1467358 (S.D.N.Y. Mar. 25, 2020) ........................................ 23

*George v. Uponor Corp.*,
  988 F. Supp. 2d 1056 (D. Minn. 2013) ............................................ 11, 12

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ...................................................................... 16, 17

*Haywin Textile Prod., Inc. v. Int'l Fin. Inv. & Commerce Bank Ltd.*,
  2001 WL 984721 (S.D.N.Y. Aug. 24, 2001) ........................................ 28

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ........................................................................ 26

*In re Apple, Inc.*,
  602 F.3d 909 (8th Cir. 2010) .............................................................. 20

*In re Celotex Corp.*,
  124 F.3d 619 (4th Cir. 1997) .............................................................. 22

*In re Farmland Indus., Inc.*,
  567 F.3d 1010 (8th Cir. 2009) ............................................................ 16

*In re J.T. Moran Fin. Corp.*,
    124 B.R. 931 (S.D.N.Y. 1991) ...................................................................... 22

*In re Motors Liquidation Co.*,
    565 B.R. 275 (S.D.N.Y. 2017) ..................................................................... 23

*Invista S.A.R.L. v. Rhodia, S.A.*,
    625 F.3d 75 (3d Cir. 2010) .......................................................................... 29

*JL Schweiters Constr., Inc. v. Goldridge Constr., Inc.*,
    788 N.W.2d 529 (Minn. Ct. App. 2010) ...................................................... 12

*Knowlton v. Allied Van Lines, Inc.*,
    900 F.2d 1196 (8th Cir. 1990) ..................................................................... 10

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*,
    519 F.2d 634 (8th Cir. 1975) ................................................................. 12, 13

*Matter of Baudoin*,
    981 F.2d 736 (5th Cir. 1993) ......................................................................... 8

*Mid-Continent Eng'g, Inc. v. Toyoda Mach. USA, Corp.*,
    No. 07-3892, 2009 WL 1272142 (D. Minn. May 5, 2009) ......................... 14

*Minnesota Min. & Mfg. Co. v. Nippon Carbide Indus. Co.*,
    63 F.3d 694 (8th Cir. 1995) ......................................................................... 10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................... 13

*My Pillow, Inc. v. LMP Worldwide, Inc.*,
    331 F. Supp. 3d 920 (D. Minn. 2018) .................................................... 17, 18

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
    922 A.2d 417 (Del. Ch. 2007) ............................................................... 24, 25

*Nitro Distrib., Inc. v. Alticor, Inc.*,
    453 F.3d 995 (8th Cir. 2006) ................................................................. 24, 29

*Quick v. Viziqor Solutions, Inc.*,
    2007 WL 494924 (E.D. Mo. Feb. 12, 2007) ................................... 16, 17, 21

*ResCap Liquidating Tr. v. LendingTree, LLC,*
    No. 19-CV-2360 (SRN/HB), 2020 WL 1317719 (D. Minn. Mar. 20, 2020) ...... *passim*

*Salamone v. Gorman,*
    106 A.3d 354 (Del. 2014) ........................................................................ 24

*Scott v. Mego Int'l, Inc.,*
    519 F. Supp. 1118 (D. Minn. 1981) ........................................................ 12

*Siegel v. Fed. Home Loan Mortg. Corp.,*
    143 F.3d 525 (9th Cir. 1998) .................................................................... 8

*Sierra Rutile Ltd. v. Katz,*
    937 F.2d 743 (2d Cir. 1991) .................................................................... 30

*Source One Enters., L.L.C. v. CDC Acquisition Corp.,*
    2004 WL 1453529 (D. Minn. June 24, 2004) ......................................... 24

*SPV OSUS Ltd. v. AIA LLC,*
    2016 WL 3039192 (S.D.N.Y. 2016) ....................................................... 22

*Stanton v. St. Jude Med., Inc.,*
    340 F.3d 690 (8th Cir. 2003) .................................................................. 10

*Steward v. Up North Plastics, Inc.,*
    177 F. Supp. 2d 953 (D. Minn. 2001) ............................................... 19, 20

*Thomson-CSF, S.A. v. Am. Arb. Ass'n,*
    64 F.3d 773 (2d Cir. 1995) ......................................................... 23, 24, 29

*Thys Chevrolet, Inc. v. General Motors LLC,*
    2010 WL 4004328 (N.D. Iowa 2010) ...................................................... 21

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.,*
    571 F.3d 221 (2d Cir. 2009) ............................................................. 22, 23

*Trustees of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.,*
    919 F.3d 368 (6th Cir. 2019) .................................................................... 8

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opp. Partners II L.P.,*
    717 F.3d 322 (2d Cir. 2013) .................................................................... 27

*VRG Linhas Aereas S.A v. MatlinPatterson Glob. Opp. Partners II L.P.*,
    605 F. App'x 59 (2d Cir. 2015) ................................................................... 27

## **Statutes**

28 U.S.C. § 1334(b) ............................................................................. 15, 16

28 U.S.C. § 1391 ................................................................................. 14, 15

28 U.S.C. § 1404 ................................................................................. 15, 17

28 U.S.C. § 1406(a) .................................................................................. 21

28 U.S.C. § 1412 ............................................................................ 16, 17, 20

Minn. Stat. § 543.19 ................................................................................. 10

## **Rules**

Federal Rule of Bankruptcy Procedure 7004(f) ............................................ 22

Federal Rule of Civil Procedure 12(b)(2) ...................................................... 9

Federal Rule of Civil Procedure 45 .............................................................. 17

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, through its attorneys, respectfully submits this Memorandum of Law and the Declarations of John Orenstein ("Orenstein Decl.") and Zachary Trumpp ("Trumpp Decl.") in opposition to the Motion to Dismiss or, in the Alternative, to Transfer Venue, or to Compel Arbitration (the "Motion"), filed by Defendants LendingTree, Inc. ("LendingTree Parent") and LendingTree, LLC ("LendingTree Sub") (together, "LendingTree").

## PRELIMINARY STATEMENT

This action seeks to hold LendingTree responsible for a bankruptcy court judgment LBHI obtained against its former subsidiary, Home Loan Center ("HLC"). LBHI sues here because LendingTree is already before this Court in an almost identical action brought by the ResCap Liquidating Trust ("ResCap"). ResCap obtained a significant judgment against HLC in this Court in 2019. But rather than pay the HLC judgment, as it had agreed to do when it spun off from IAC in 2008, LendingTree put HLC into bankruptcy and has denied any liability for HLC's mortgage loan-related debts. ResCap accordingly filed suit against LendingTree in this Court, and the Court denied LendingTree's motion to dismiss. Likewise, LBHI obtained an allowed claim against HLC in its bankruptcy case. LBHI now seeks a determination that LendingTree is liable for the unsatisfied balance of the allowed claim.

Just as it did in the *ResCap* case, LendingTree moves to dismiss, claiming that the Court lacks jurisdiction over it and that LBHI must arbitrate one of its claims even though

the parties did not agree to arbitrate this claim. In the *ResCap* case, this Court considered and rejected these same arguments. It should reject them again here.

 As to jurisdiction, LendingTree Sub has appointed a registered agent in Minnesota, fully knowing that the Eighth Circuit has long held that doing so constitutes consent to jurisdiction. This appointment binds LendingTree Parent as well, because it dominates and controls every facet of LendingTree Sub. Both entities are also imputed with HLC's contacts with the forum, including certain faulty mortgage loans that HLC originated in Minnesota and sold to LBHI's affiliate. And since this Court has jurisdiction over both defendants, venue is also proper.

 LendingTree's argument that LBHI must arbitrate one of its claims is also meritless. LBHI cannot be forced to arbitrate without its consent, and LBHI has not agreed to arbitrate anything with LendingTree. LendingTree seeks to bind LBHI to the arbitration clause in the Spin Agreement (defined below), contending that LBHI seeks to enforce the Spin Agreement as a third-party beneficiary. LendingTree fundamentally misunderstands the gravamen of LBHI's claim. LBHI does not seek to *enforce* the Spin Agreement and owes no duties under the Spin Agreement. Rather, LBHI cites the Spin Agreement to prove that LendingTree Parent expressly assumed the debts of HLC, including debts arising after the Spin Agreement was signed. That assumption encompasses the allowed claim—tantamount to a final judgment—that LBHI obtained against HLC last June.

 Without basis, LendingTree asks the Court to exercise its discretion to transfer the case to LendingTree's home jurisdiction in the Western District of North Carolina—a court that, unlike this Court, is unfamiliar with the factual and legal issues in this case. That

request should be declined. Transfer of the case would impose a steep learning curve on a new court, resulting in considerable inefficiency. In contrast, from its oversight of the *ResCap* case, this Court is familiar with the legal and factual issues at play in this case. And to the extent there is any inconvenience to LendingTree in litigating here (which LBHI submits there is not), transferring the case would merely shift that inconvenience from LendingTree to LBHI. That is not a permissible reason to transfer.

In the event the Court decides to transfer the case (which it should not), LBHI respectfully submits that it should be transferred to the Southern District of New York, for referral to the Bankruptcy Court. The Bankruptcy Court currently oversees dozens of LBHI's other indemnification proceedings. And while the Bankruptcy Court lacks the level of familiarity with the claims vis-à-vis LendingTree that this Court has, transferring the case there would far better promote judicial economy and the efficient administration of LBHI's bankruptcy estate than a transfer to the Western District of North Carolina, which has no familiarity with any aspect of the disputes in this case.

## BACKGROUND

### A.    HLC was obligated to indemnify LBHI for losses it incurred as a result of defective mortgage loans that HLC sold

HLC is a now-bankrupt mortgage lender that was headquartered in North Carolina. Compl. ¶ 20. HLC entered into Loan Purchase Agreements (each an "LPA") with LBHI's assignor, Lehman Brothers Bank, FSB ("LBB"), pursuant to which HLC sold residential mortgage loans to LBB. *Id*. ¶ 47. LBHI then securitized and re-sold the loans to the Federal

National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") and various RMBS trusts. *Id.* ¶ 3.

Many loans that HLC sold to LBB, and which LBHI had re-sold to Fannie Mae, Freddie Mac, and the RMBS trusts, breached various representations and warranties incorporated into the LPAs. *Id.* ¶¶ 48-51. Some of these defective mortgage loans were originated in Minnesota. *Id.* ¶ 25. Fannie Mae, Freddie Mac, and the RMBS trustees filed claims against LBHI alleging breaches of representations and warranties relating to these loans. *Id.* ¶¶ 64-65. In 2014, LBHI settled with Fannie Mae and Freddie Mac, and in 2018 it resolved the RMBS trustees' claims pursuant to an estimation proceeding in the Bankruptcy Court of the Southern District of New York, which culminated in a 22-day trial. *Id.* ¶¶ 3, 67-68. LBHI then brought adversary proceedings against the mortgage loan originators that sold the defective loans to LBB, including HLC, to recover their allocated share of the settlements. *Id.* ¶ 72.

**B.    LendingTree Parent dominates and controls both HLC and LendingTree Sub and openly admits that it is liable for HLC's debts**

LendingTree Parent has at all relevant times held itself out as responsible for the debts of HLC. In 2003, LendingTree Sub (then known as LendingTree, Inc.), entered into an Agreement and Plan of Merger with IAC/InterActiveCorp (then known as USA InterActive) ("IAC") and Forest Merger Corp., pursuant to which IAC acquired full ownership of LendingTree Sub, which changed its name to Tree, LLC in December 2004. Compl. ¶ 6. In 2004, LendingTree Sub acquired HLC. *Id.* ¶ 7. HLC was operated as a

wholly owned subsidiary of LendingTree Sub, which is presently a wholly owned subsidiary of LendingTree Parent. *Id.*

Following the HLC acquisition, both LendingTree Sub and HLC were controlled by Douglas Lebda, who founded the "LendingTree" business and is LendingTree Parent's chairman and chief executive officer. *Id.* LendingTree Sub operated its "LendingTree Loans" business through HLC, controlled every aspect of HLC's business, and caused HLC to continue to sell loans to purchasers in the secondary market, including to LBHI. *Id.* ¶ 8. LendingTree Sub also guaranteed the funding critical to the "LendingTree Loans" business. *Id.*

In August 2008, LendingTree Sub spun off from IAC (the "Spin-Off"), pursuant to a Separation and Distribution Agreement dated August 20, 2008 (the "Spin Agreement"). *Id.* ¶ 30. As part of the Spin-Off, Defendant LendingTree Parent (then named Tree.com, Inc.) was incorporated and became the parent of LendingTree Sub. *Id.* LendingTree Sub is the immediate parent of HLC. *Id.* ¶¶ 7, 19. In the Spin Agreement, LendingTree Parent expressly agreed to assume HLC's liabilities, including those related to the "LendingTree Loans." *Id.* ¶¶ 33-36, Ex. 2 (Spin Agreement) §§ 2.03(b), 2.10(g).

In 2012, HLC sold substantially all its operating assets to Discover Bank ("Discover"). Compl. ¶ 20. However, Tree.com, Inc. (now LendingTree Parent) retained all pre-closing liabilities and repurchase, warranty, and indemnification liabilities associated with any HLC mortgage loans. *Id.* Since 2012, HLC has conducted no new business, and its primary function has been litigating the claims arising from its origination of residential mortgage loans. *Id.*

5

LendingTree Parent repeatedly confirmed that it is responsible for HLC's liabilities. For example, in a 2008 Form S-1 following the Spin-Off, LendingTree Parent disclosed that it "will assume all of the liabilities related to the Tree.com Businesses" and defined "Tree.com Businesses" as "LendingTree Loans," which was the dba for HLC. Compl. ¶ 31, Ex. 1 (Form S-1, 8/8/08) at F-32, 58-59. LendingTree Parent's 2008 Form 10-K similarly states that its financial statements reflect "the assumption by [LendingTree Parent] of all the liabilities relating to the Tree.com Businesses in connection with the spin-off." *Id.* ¶ 38, Ex. 3 (Form 10-K, 2/26/09) at 50. LendingTree Parent's 2011 Form 10-K states: "[LendingTree Parent] will continue to be liable for indemnification obligations, repurchase obligations and premium repayment obligations following the anticipated sale of substantially all of the operating assets of the LendingTree Loans [also known as HLC] business to Discover… We plan to negotiate with secondary market purchasers to settle any then-existing and future contingent liabilities." *Id.* ¶ 39, Ex. 4 (Form 10-K, 4/16/12) at 81. In its 2018 Form 10-K, LendingTree Parent made a provision on the consolidated balance sheet of $1 million for the claims that LBHI has asserted here. *Id.* ¶ 80, Ex. 7 (Form 10-K, 2/28/19) at 95. In that filing, LendingTree Parent further stated that it had incurred "substantial legal fees" in the *HLC* litigation and the "ultimate outcome" of the *ResCap* litigation and other pending claims might have a "material and adverse effect on [LendingTree Parent's] business, financial condition and results of operations." *Id.* at 13. Finally, in LendingTree Parent's Form 10-Q for the second quarter of 2019, filed four days after HLC's bankruptcy, LendingTree Parent notes that its losses from "discontinued operations" were "attributable to losses associated with the LendingTree Loans business

formerly operated by our Home Loan Center, Inc., or HLC, subsidiary." *Id.* ¶ 81, Ex. 8
(Form 10-Q, 7/26/29) at 41.

LendingTree Parent also dominates and controls LendingTree Sub. This is shown
by the following facts and other facts to be developed in discovery. LendingTree Parent is
the sole member of LendingTree Sub (which is a limited liability company). Compl. ¶ 44.
LendingTree Parent describes LendingTree Sub as "our operating subsidiary." Orenstein
Decl. ¶ 3, Ex. A (Form 10-K, 2/26/20) at 11. LendingTree Parent's CEO, Douglas Lebda,
is the sole manager of LendingTree Sub (Compl. ¶¶ 19, 88(a)) as well as its CEO. Orenstein
Decl. ¶ 4, Ex. B (Lebda Employment Agreement) at § 1; *see also id.*, Ex. A (Form 10-K,
2/26/20) at 29 (describing Lebda as "our Chairman and Chief Executive Officer").
LendingTree Parent's President and CFO are also the President and CFO of LendingTree
Sub. *Id.* ¶¶ 5-6, Ex. C (Salvage Employment Agreement) § 1, Ex. D (Moriarty Employment
Agreement) § 1. These executives, though employed by LendingTree Sub in their
employment agreements, are compensated in large part with equity in LendingTree Parent
(*id*. ¶¶ 4-6, Ex. B (Lebda) § 3(c), Ex. C (Salvage) § 3(c), Ex. D (Moriarty) § 3(c)). They
are also required to devote their "full working time and best efforts to the diligent and
faithful performance of such duties as may be entrusted to [them] from time to time by
Company Group," which includes both LendingTree Sub and LendingTree Parent. *Id.*, Ex.
B (Lebda) §1, Ex. C (Salvage) § 1, Ex. D (Moriarty) § 1. LendingTree's website draws no
distinction between the business or operations of LendingTree Parent and LendingTree
Sub. *See* https://www.lendingtree.com (last accessed on October 19, 2020). Their
financials are consolidated and not presented separately. Orenstein Decl. ¶ 3, Ex. A (Form

7

10-K, 2/26/20) at 56. LendingTree Parent has "unconditionally guaranteed" LendingTree Sub's obligations under its revolving credit facility. *Id*. at 22.

### C.   LBHI obtains an allowed claim against HLC's bankrupt estate

In June 2019, while LBHI's adversary proceedings against HLC were ongoing, this Court entered a judgment against HLC, in favor of ResCap, in the amount of approximately $68.5 million. Compl. ¶ 4. Less than a month later, HLC filed for Chapter 11 bankruptcy. *Id*. In its filing, HLC disclosed for the first time that it had approximately $11 million in assets, including only $5.4 million in cash. *Id.* ¶ 73. Since LBHI's adversary proceedings against HLC were stayed by the bankruptcy filing, LBHI filed a proof of claim in HLC's bankruptcy case. *Id.* ¶ 5.

On September 16, 2019, HLC's chapter 11 case was converted into a chapter 7 case, and its estate is in liquidation. *Id*. ¶ 20. LBHI and HLC's chapter 7 Trustee settled LBHI's claim for a liquidated amount of $13.3 million (the "Allowed Claim"). *Id*. ¶ 5. After receiving no objection to the settlement (including from LendingTree, which had standing, notice, and opportunity to object if it wished), the bankruptcy court approved the Allowed Claim on June 11, 2020. Orenstein Decl. ¶ 7, Ex. E (HLC Bankruptcy Court Order, 6/11/20). The Allowed Claim has the same force and effect as a final judgment of a court. Compl. ¶ 75.[1] LBHI now sues to enforce the Allowed Claim against LendingTree as the successor, alter ego, and/or principal of HLC.

---

[1] *See also Trustees of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc*., 919 F.3d 368, 381 (6th Cir. 2019); *EDP Medical Comput. Sys., Inc. v. United States*, 480 F.3d 621, 627 (2d Cir. 2007); *Siegel v. Fed. Home Loan Mortg. Corp*., 143 F.3d 525, 530-31 (9th Cir. 1998); *Matter of Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993).

8

## ARGUMENT

## I.    THE COURT HAS PERSONAL JURISDICTION OVER LENDINGTREE

LendingTree moves to dismiss under Rule 12(b)(2), contending that the Court lacks personal jurisdiction over both LendingTree Sub and LendingTree Parent. *See* Motion at 7. Because the Court has both general and specific jurisdiction over LendingTree Sub and LendingTree Parent, LendingTree's motion should be denied.

### A.    Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction, 'a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-CV-2360 (SRN/HB), 2020 WL 1317719, at *4 (D. Minn. Mar. 20, 2020) (Nelson, J.) (quoting *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). While pleadings may be "tested" by affidavits and exhibits, the evidentiary standard for the plaintiff is "minimal," and the Court "must resolve all factual conflicts in the plaintiff's favor." *Id.* "[T]he action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a

conclusion that the exercise of personal jurisdiction over [the defendant] is proper."

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).[2]

### B. LendingTree Sub and LendingTree Parent are both subject to the Court's general jurisdiction

#### 1. LendingTree Sub

This Court has already found that LendingTree Sub is subject to the Court's general

jurisdiction because it appointed a registered agent for service of process in Minnesota,

which, under Eighth Circuit precedent, constitutes consent to jurisdiction. *See ResCap*,

2020 WL 1317719, at *5. Here, just as in *ResCap*, "it is undisputed that LendingTree Sub

has a registered agent for service of process in Minnesota." *Id.*; *see also* Compl. ¶ 24. The

Court should adhere to its prior holding and binding Eighth Circuit precedent to find that

LendingTree Sub has consented to general jurisdiction in Minnesota. *See Knowlton v.*

*Allied Van Lines, Inc.*, 900 F.2d 1196, 1999-1200 (8th Cir. 1990) ("The whole purpose of

requiring designation of an agent for service is to make a nonresident suable in the local

courts."); *Am. Dairy Queen Corp. v. W.B. Mason Co.*, 2019 WL 135699, at *1, 6 (D. Minn.

Jan. 8, 2019) ("this Court… remains bound by *Knowlton*, which is controlling in this case"

and "has been good law since 1991, alerting any foreign corporation who registers under

---

[2] A court may exercise personal jurisdiction over a nonresident defendant if (1)
Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied, and (2) the exercise of
personal jurisdiction does not offend due process. *Stanton v. St. Jude Med., Inc*., 340 F.3d
690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal
jurisdiction of Minnesota courts as far as due process allows, *Minnesota Min. & Mfg. Co.*
*v. Nippon Carbide Indus. Co*., 63 F.3d 694, 697 (8th Cir. 1995), this Court need only
evaluate whether the exercise of personal jurisdiction comports with the requirements of
due process. *Creative Calling Sols.*, 799 F.3d at 979.

Minn. Stat. § 303, that by doing so, they are consenting to general personal jurisdiction in the forum"). LendingTree acknowledges that *Knowlton* and the Court's prior holding in *ResCap* are dispositive and states that it has challenged the Court's jurisdiction over LendingTree Sub merely to preserve the argument for appeal. *See* Motion at 13-14.

###### 2.    LendingTree Parent

The Court has general personal jurisdiction over LendingTree Parent because it dominates and controls LendingTree Sub. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648-49 (8th Cir. 2003). "To establish jurisdiction in this context, a 'rigid satisfaction of the alter ego test' is not necessary." *ResCap* 2020 WL 1317719, at *10 (citing *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1064 (D. Minn. 2013)). Applying the Eighth Circuit's test, this Court has found that LendingTree Parent exercised sufficient domination and control over HLC, which is a subsidiary of LendingTree Sub, to subject LendingTree Parent to jurisdiction. *See ResCap* 2020 WL 1317719, at *10. *A fortiori*, LendingTree Parent's contacts with LendingTree Sub—its direct subsidiary—meet this test as well.

In any event, the Complaint's allegations and LendingTree Parent's own public filings easily satisfy the "minimal" *prima facie* standard required to show jurisdiction through LendingTree Parent's domination and control of LendingTree Sub. As detailed above, LendingTree Parent wholly owns LendingTree Sub; LendingTree Sub is the operating entity that employs LendingTree Parent's senior-most executives, who are required to act on behalf of the "Company Group" and compensated with stock in LendingTree Parent; LendingTree Parent consolidates its financial reports with LendingTree Sub and does not distinguish between the two entities on its website;

11

LendingTree Parent unconditionally guarantees the debts of LendingTree Sub under its credit facility; and both entities operate out of the same address. *See* pages 6-7, *supra*. Even LendingTree's declarant, Dana Barker, though ostensibly an employee of LendingTree Sub only, testifies on behalf of—and about—both LendingTree Parent and LendingTree Sub. *See* Barker Decl. The evidence shows there is no daylight between these two entities.

Courts in this state have repeatedly found equal or lesser showings of domination and control sufficient to establish personal jurisdiction over parent companies. For example, in *George v. Uponor Corp.*, 988 F. Supp. 2d 1056 (D. Minn. 2013), the Finnish parent company was three levels of ownership removed from the U.S. subsidiary; the subsidiary "operate[d] as an extension of [the parent's] business"; the entities "view[ed] themselves as a single enterprise divided by geographic reporting regions"; the subsidiary's website, though separate from the parent's website, described the subsidiary "as part of" the parent; and the two entities had "overlapping finances." *Id.* at 1065-66; *see also Scott v. Mego Int'l, Inc.*, 519 F. Supp. 1118, 1126 (D. Minn. 1981) (finding personal jurisdiction over parent that conducted its business through closely interrelated, wholly-owned subsidiaries, maintained offices at the same location as the subsidiary, shared officers and office space with the subsidiary, issued consolidated financial statements with the subsidiary, and guaranteed the subsidiary's credit facilities); *JL Schweiters Constr., Inc. v. Goldridge Constr., Inc.*, 788 N.W.2d 529, 536-37 (Minn. Ct. App. 2010) (finding personal jurisdiction where parent wholly owned the subsidiary, guaranteed the subsidiary's debts, and "exerted substantial control" over the subsidiary, "using the [subsidiary] as a conduit for its own business"); *cf. Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt.,*

*Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) (sole shareholder was alter ego of company for jurisdictional purposes where he alone lent and borrowed from the company, owned the building where the company was headquartered, and drove a car purchased for him by the company).

*     *     *

Because this Court has general jurisdiction over both LendingTree Sub and LendingTree Parent, the jurisdictional analysis ends there. The Court is empowered to hear "any and all claims" against LendingTree, regardless of whether those claims have a nexus to Minnesota. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). In any event, as discussed below, the claims at issue also have a sufficient nexus to Minnesota to support specific personal jurisdiction.

### C. The Court has specific jurisdiction over LendingTree because HLC's liability to LBHI arose, in part, in Minnesota

LendingTree Parent and LendingTree Sub are also subject to specific jurisdiction because certain of the loans sold by HLC to LBB, which gave rise to HLC's liability in the Allowed Claim, were originated in Minnesota. *See* Compl. ¶ 25. LendingTree advances two arguments against the Court's exercise of specific jurisdiction. Neither has merit.

*First*, LendingTree argues that HLC, and not LendingTree Parent or LendingTree Sub, had the relevant contacts to Minnesota. Motion at 10-11. This argument fails because LendingTree Parent and LendingTree Sub are each liable for HLC's debts under successor, alter ego, and/or agency principles. Compl. ¶¶ 83-97. HLC's contacts are therefore imputed to them for the purpose of jurisdiction. *See* Section I.B, above; *ResCap* 2020 WL 1317719,

13

at *12 (imputing HLC's forum contacts to LendingTree under domination-and-control and agency theories); *Mid-Continent Eng'g, Inc. v. Toyoda Mach. USA, Corp.*, No. 07-3892 (DSD/SRN), 2009 WL 1272142, at *2 (D. Minn. May 5, 2009) ("[P]ersonal jurisdiction over a corporate successor may be based on its predecessor's contacts with the forum, provided the successor would be liable for its predecessor's acts under the forum's law.").

*Second*, LendingTree asserts, without citation to authority or evidence, that HLC's sale of loans to LBB from Minnesota "is not enough" to subject HLC (and, by extension, LendingTree) to jurisdiction in Minnesota. Motion at 11. However, LendingTree does not dispute that HLC originated loans in Minnesota and sold them to LBB. LendingTree has not met its burden of showing that these loans were "not enough" to support jurisdiction. Thus, this argument gives rise to, at most, a dispute of fact that must be decided in favor of LBHI on this pre-answer motion to dismiss. *ResCap*, 2020 WL 1317719, at *4. "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985); *see also 3M Co. v. Icuiti Corp.*, No. 05-2945, 2006 WL 1579816, at *2 (D. Minn. June 1, 2006) (finding that seven sales in Minnesota were sufficient to confer specific jurisdiction).

## II. LENDINGTREE'S MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE SHOULD BE DENIED

### A. Venue is proper in this District

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For venue, a corporate defendant "resides" in "any judicial district in which

14

such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). As described above, the Court has general and specific personal jurisdiction over both LendingTree Sub and LendingTree Parent. *See* Section I. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(1).

While the Court need go no further, venue is also proper for the independent reason that Minnesota is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Here, it is undisputed that certain of the loans giving rise to HLC's liability (and, thus, LendingTree's liability) were originated in Minnesota. *See* Section I.C, above.[3]

### B.    The Court should deny LendingTree's transfer request

In the alternative, LendingTree asks the Court to exercise its discretion to transfer the case to LendingTree's home venue, the Western District of North Carolina, pursuant to 28 U.S.C. § 1404(a). Motion at 17. LendingTree's request should be declined.

As an initial matter, 28 U.S.C. § 1404 is the wrong transfer statute. This case arises under the Court's "related to" bankruptcy jurisdiction. *See* Compl. ¶ 23; 28 U.S.C. §

---

[3] In its brief, LendingTree questions whether any of these loans "underlie [LBHI's] claims against HLC." Motion at 16. While the loans underlying LBHI's claims were originated all around the country, some were originated in Minnesota. Of course, LendingTree knows this because it supervised the litigations involving HLC. *See* Compl. ¶¶ 19-20 (alleging that since 2012, HLC's "principal and essentially only activity has been the litigation of claims arising from its origination of residential mortgage loans" and that Lebda, the CEO of LendingTree, was HLC's sole director until 2019). That is why LendingTree has not adduced any evidence to the contrary.

1334(b).[4] Courts in this Circuit have held that 28 U.S.C. § 1412 governs the issue of venue

transfer in "related to" actions. *See Creekridge Cap., LLC v. La. Hosp. Ctr., LLC*, 410 B.R.

623, 628 (D. Minn. 2009) ("[A] motion to transfer an action related to a bankruptcy

proceeding in another forum is appropriately analyzed under § 1412."); *Quick v. Viziqor*

*Solutions, Inc.¸* 2007 WL 494924, at *3 (E.D. Mo. Feb. 12, 2007) (finding "that § 1412

governs the issue of venue transfer in this 'related to' action"). To obtain a transfer under

28 U.S.C. § 1412, LendingTree must show the transfer would be either in the "interest of

justice" or for the "convenience of the parties." *Creekridge*, 410 B.R. at 629.

In analyzing these factors, "Courts must be cognizant . . . that transfer motions

should not be freely granted." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F.

Supp. 3d 878, 884 (D. Minn. 2015). The party seeking transfer bears the burden of proof

to show that the balance of factors "strongly" favors the movant. *Gulf Oil Corp. v. Gilbert*,

330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the

---

[4] This case is "related to" the LBHI's pending bankruptcy case because a finding of liability against LendingTree and a recovery of the $13 million Allowed Claim will have a "conceivable effect" on the LBHI bankruptcy case. *In re Farmland Indus., Inc.,* 567 F.3d 1010, 1019 (8th Cir. 2009) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankrupt estate.") (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995)) (alterations omitted).

plaintiff's choice of forum should rarely be disturbed.").[5] Analyzed under this standard, neither prong of § 1412 supports a transfer to the Western District of North Carolina.

1.    The Convenience of the Parties

Factors relevant to assessing the convenience of the parties are "(1) the location of the plaintiff and the defendant, (2) ease of access to necessary proof, (3) convenience of witnesses, (4) availability of subpoena power for unwilling witnesses, and (5) expenses related to obtaining witnesses." *Creekridge*, 410 B.R. at 629.

The convenience of the parties does not support a transfer. While LendingTree is headquartered in North Carolina, LBHI has no contacts with North Carolina, and "merely shifting the inconvenience from one side to the other obviously is not a permissible justification for a change of venue." *Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 884. In modern litigation, the location of the Court in relation to documents is largely irrelevant because they are produced electronically. *See My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 928 (D. Minn. 2018) (denying transfer and explaining that, "given the advent of document-reproduction technology, the location of documents is no longer entitled to much weight in the transfer of venue analysis") (quotations omitted).

Subpoena power also favors no forum, since this Court has nationwide subpoena power under Rule 45, and there are no relevant nonparties who could only be summoned

---

[5] "[T]he relevant factors that are considered in analyzing transfer under § 1412 are substantially the same as the factors considered in analyzing transfer under § 1404." *Creekridge*, 410 B.R. at 628 n.3. Accordingly, cases decided under § 1404 are persuasive, except that § 1412 recognizes a "strong presumption" in favor of the forum where the bankruptcy case is pending. *Quick*, 2007 WL 494924, at *3.

17

to trial in North Carolina. The location of *party* witnesses is "not a paramount concern" in the transfer analysis. *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 410 (D. Minn. 2009) (denying transfer and noting that location of "[p]arty witnesses and witnesses who are employees of a party are . . . not a paramount concern because it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum") (punctuation omitted).

Moreover, in the event this case goes to trial, it is noteworthy that LendingTree's lead counsel, Jones Day, has an office in Minneapolis, but not in North Carolina. Thus, LendingTree would need to pay costs associated with travel no matter where the case is venued. *See Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 885 (Where "each party anticipates needing to incur travel expenses and associated costs with witnesses and evidence no matter where this matter is venued, the fact of such expenses is essentially neutral."). Nor can LendingTree claim that the cost of travel for a trial, if one is held, would place any real burden upon it, as LendingTree has a market capitalization in excess of $4 billion.[6] *See My Pillow*, 331 F. Supp. 3d at 927 (travel expenses are neutral factor where "the moving party has not presented convincing evidence that its financial position makes it incapable of litigating in Minnesota") (punctuation omitted); *cf. Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 885 (considering the defendant's "ability to bear [travel] expenses" in rejecting transfer request).

---

[6] LendingTree has approximately 13,046,043 shares of stock outstanding. *See* Orenstein Decl. ¶ 3, Ex. A (Form 10-K, 2/26/20) at 1. As of October 19, 2020, its common stock was trading at $341.47 per share. *See* https://www.google.com/finance/quote/TREE:NASDAQ (last visited October 19, 2020).

For its part, LBHI is a Plan Administrator obligated to conserve the estate's resources and maximize recoveries for the benefit of creditors. Trumpp Decl. ¶ 4. Its bankruptcy case is pending in New York, and that is where its headquarters and certain key personnel are located. *Id.* ¶ 4-5. However, LBHI primarily conducts its residential mortgage operations through a small team of employees located in Kansas and Colorado. *Id.* ¶ 5. Those residential mortgage operations are currently limited to winding down the estate and monetizing claims and assets of the estate for the benefit of its creditors. *Id.* ¶ 6. Transferring the case to North Carolina would, if anything, increase LBHI's travel-related burdens and decrease payouts to the estate's creditors. *Id.* ¶¶ 6-7.

2.   The Interests of Justice

On the interest-of-justice prong, courts have considered "(1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum." *Creekridge*, 410 B.R. at 629.

The interests of judicial efficiency and the efficient administration of LBHI's estate weigh strongly against the requested transfer. This Court has presided over and decided a motion to dismiss in an almost identical case, involving the very same issues, *ResCap Liquidating Trust v. LendingTree, LLC*, 19-cv-2360 (D. Minn.), and is already "intimately familiar with the issues in this case." *Steward v. Up North Plastics, Inc.,* 177 F. Supp. 2d 953, 959 (D. Minn. 2001) (denying transfer where "the central countervailing interest

19

weighing against transfer is the presence of related litigation pending before the Court

involving the same operative facts, the same [type of] claims and the same defendants");

*see also Alternative Pioneering Sys., Inc. v. Direct Innovative Prods., Inc*., 1992 WL

510190 at \*5 (D. Minn. Aug. 2, 1992) ("Judicial economy weighs in favor of a denial of

the defendants' motion. The court is already familiar with the facts underlying the claims

in this case."). Conversely, the Western District of North Carolina is unfamiliar with the

factual or legal issues in this case and would confront a significant learning curve.

LBHI's choice of forum is entitled to considerable deference. *See In re Apple,

Inc*., 602 F.3d 909, 912-13 (8th Cir. 2010). Although § 1412 carries a presumption in favor

of the forum where the bankruptcy case is pending, "that factor is largely offset by the

deference generally accorded to the plaintiff's original choice of forum (Minnesota)."

*Creekridge Cap*., 410 B.R.at 631. The other interest-of-justice factors are neutral: there is

no doubt as to a fair trial and enforceable judgment in any relevant forum; and this is a

multi-state controversy that could touch on various state laws.

LendingTree's request to transfer this case to the Western District of North Carolina

should be denied.

### C.    In the alternative, the Court should transfer this case to the Southern District of New York for referral to the Bankruptcy Court

In the event the Court determines that it lacks jurisdiction, that the venue is

improper, or that the discretionary factors favor a transfer (which it should not), the Court

should transfer the case to the Southern District of New York, for referral to the Bankruptcy

Court, where LBHI's other indemnification proceedings are pending. *See Del. Tr. Co. v.*

*Wilmington Tr., N.A.*, 534 B.R. 500, 521 (S.D.N.Y. 2015) (transferring case to District of

Delaware "in the expectation that this matter will then be referred to the Delaware

Bankruptcy Court"); *Creekridge Cap.*, 410 B.R. 623 (granting transfer to the Eastern

District of Louisiana so that it could be referred to the bankruptcy court); *Thys Chevrolet,*

*Inc. v. General Motors LLC*, 2010 WL 4004328 (N.D. Iowa 2010) (granting motion to

transfer to the Southern District of New York for refence to the bankruptcy court); *Quick*,

2007 WL 494924, at *5 ("[I]n the interest of justice, this cause of action will be transferred

to the United States District Court for the District of Delaware for reference to the Delaware

Bankruptcy Court.").[7]

　　While the Bankruptcy Court for the Southern District of New York has not yet dealt

with a claim against LendingTree based on its relationship with HLC, as this Court has, it

presides over dozens of indemnification proceedings brought by LBHI and "has already

advanced along a substantial 'learning curve'" with respect to the underlying claims as well

as successor claims involving other defendants. *Thys Chevrolet*, 2010 WL 4004328, at *11.

Compared to a transfer to the Western District of North Carolina, such a transfer would

promote judicial economy and the efficient administration of the LBHI bankruptcy estate,

and it would comport with the "strong presumption" in favor of the forum where the

bankruptcy case is pending. *Quick*, 2007 WL 494924, at *3. Moreover, the convenience of

the parties would be served because both parties' lead law firms (Jones Day and Wollmuth

---

[7] In the event the Court determines that it lacks personal jurisdiction over LendingTree or
that venue is improper, it may cure any such defect by transferring the case "to any district
or division in which it could have been brought." 28 U.S.C. § 1406(a).

Maher & Deutsch) have offices in New York. It would thus be more inconvenient for LBHI
to litigate in North Carolina, where neither side's counsel has an office, than it would be
for LendingTree to litigate in New York.

The Bankruptcy Court for the Southern District of New York would be an
appropriate venue because LendingTree Parent, LendingTree Sub, and HLC are organized
in and do business within the United States, and the transactions giving rise to this
controversy occurred in the United States. Compl. ¶¶ 16-19. The Bankruptcy Court would
therefore have personal jurisdiction over them pursuant to Federal Rule of Bankruptcy
Procedure 7004(f). *See In re Celotex Corp.*, 124 F.3d 619, 630 (4th Cir. 1997) ("[W]hen
an action is in federal court on 'related to' jurisdiction ... [w]e need only ask whether
[defendant] has minimum contacts with the United States such that subjecting it to personal
jurisdiction does not offend the Due Process Clause of the Fifth Amendment to the United
States Constitution."); *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 934 (S.D.N.Y. 1991)
("In a Chapter 11 [proceeding, the court] has nationwide jurisdiction over the defendants");
*SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *3 n.3 (S.D.N.Y. 2016) (finding that
"this Court has personal jurisdiction over each of the Access Defendants to the extent
allowed under the Constitution of the United States, and reference to New York's long-
arm statute is not required").

The Bankruptcy Court would also have jurisdiction over LendingTree Parent and
LendingTree Sub because HLC's contacts with New York would be imputed to them.
*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("[I]t is
compatible with due process for a court to exercise personal jurisdiction over an individual

or a corporation that would not ordinarily be subject to personal jurisdiction in that court

when the individual or corporation is an *alter ego* or successor of a corporation that would

be subject to personal jurisdiction in that court.") (collecting cases); *Gentry v. Kaltner*,

2020 WL 1467358, at *7 (S.D.N.Y. Mar. 25, 2020) ("[W]hen a person is found to be a

successor in interest to a person over whom the court has personal jurisdiction, the court

gains personal jurisdiction over the successor simply as a consequence of their status as a

successor in interest."); *In re Motors Liquidation Co.*, 565 B.R. 275, 287 (S.D.N.Y. 2017)

("In New York, the general rule is that the successor-in-interest may be subject to

jurisdiction based on the activities of its predecessor.") (punctuation omitted).

## III.    THE COURT SHOULD NOT COMPEL ARBITRATION

Finally, LendingTree argues that Count One should be submitted to arbitration

because LBHI is purportedly suing as a third-party beneficiary of the Spin Agreement,

which contains an arbitration clause. Here, too, LendingTree acknowledges that the Court

has already rejected this exact argument and states it merely wishes to "preserve the issue

for an immediate interlocutory appeal." Motion at 20. LBHI respectfully submits that the

Court should reject LendingTree's argument here for all the same reasons as in *ResCap*,

2020 WL 1317719, at *25-29. But, to preserve LBHI's arguments for LendingTree's

contemplated appeal, they are set forth below.

### A.    The Spin Agreement does not require LBHI to arbitrate Count One

As a non-signatory to the arbitration clause, LBHI "did not agree to be bound by its

terms." *ResCap*, 2020 WL 1317719, at *27. "Arbitration is contractual by nature—'a party

cannot be required to submit to arbitration any dispute which he has not agreed so to

submit.'" *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *see also*

*Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006) ("Because the

plaintiffs never indicated a willingness to arbitrate with Amway, the estoppel cases cited

by Amway are 'inapposite and insufficient justification' for binding the plaintiffs to an

agreement they never signed."); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347,

355 (5th Cir. 2003) (finding arbitration agreement did not bind Government to arbitrate

because it was non-signatory and not defined as party in the agreement). Because LBHI

did not agree to arbitrate, it cannot be compelled to arbitrate.

Moreover, the terms of the arbitration clause itself do not cover this dispute. The

Spin Agreement, which contains the arbitration clause, provides that it "shall be governed

by and construed and interpreted in accordance with the internal laws of the State of

Delaware." Compl. Ex. 2 § 13.09.[8] Delaware contract law "give[s] priority to the parties'

intentions as reflected in the four corners of the agreement, construing the agreement as a

whole and giving effect to all its provisions." *Salamone v. Gorman*, 106 A.3d 354, 368

(Del. 2014) (punctuation omitted). In construing an arbitration clause under Delaware law,

the first step is to determine "whether the arbitration clause is broad or narrow in scope."

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007).

---

[8] While Delaware law governs the construction of the Spin Agreement due to its choice of
law clause, it does not and cannot affect the rights and obligations of LBHI, which is not a
signatory to the Spin Agreement and did not agree to the choice of law clause. "Contractual
choice of law provisions do not bind litigants who are not parties to the contract [and do]
not extend to the corporate successor analysis." *Source One Enters., L.L.C. v. CDC
Acquisition Corp.*, 2004 WL 1453529, at *5 n.4 (D. Minn. June 24, 2004), *superseded by
statute on other grounds*, Minn. Stat. § 302A.661, *as recognized in Hankinson v. King*, 117
F. Supp. 3d 1068 (D. Minn. 2015).

The Spin Agreement's arbitration clause has a narrow scope: "If the Dispute[9] has not been resolved by the dispute resolution process described in Section 9.02, the Dispute Parties agree that any such Dispute shall be settled by binding arbitration before the American Arbitration Association ("AAA") in Willington, Delaware[.]" *Id*. § 9.03. The "Dispute Parties" are defined as the "Party" who commences the dispute resolution procedure by delivering a Dispute Notice and the "Party" who receives such notice. *Id*. § 9.02. And while Section 13.01 provides that Article IX (which includes the arbitration clause) "shall be the *Parties'* sole recourse for any breach," *id*. § 13.02 (emphasis added), LBHI is not a "Party" and is not suing for breach of contract. Nothing in the arbitration clause purports to extend its scope beyond the "Parties" to the Spin Agreement.

The second step in the analysis is to "apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration." *NAMA*, 922 A.2d at 430. On its face, the arbitration clause limits the agreement to arbitrate to defined "Parties" to the Spin Agreement, and only requires arbitration of a "Dispute" that is between such defined "Parties." *See* Compl. Ex. 2 §§ 9.02-9.03 Because LBHI is not a "Party" to the Spin Agreement (and perforce not a "Dispute Party"), this is not a "Dispute" governed by the

---

[9] The Spin Agreement defines "Dispute" as follows: "Any Party ... may commence the dispute resolution process ... by giving the other Party or Parties with whom there is such a controversy, claim or dispute written notice ... of any controversy, claim or dispute of whatever nature arising out of or relating to this Agreement or the breach, termination, enforceability or validity therefore (a 'Dispute') which has not been resolved in the normal course of business." Compl. Ex. 2 § 9.02. "Party" is in turn defined as IAC, Tree Spinco (i.e., LendingTree Parent) and the other 'Spincos.'" *Id*. § 1.01 & Preamble.

arbitration clause. *See ResCap*, 2020 WL 1317719, at *27; *see also Bridas*, 345 F.3d at 362-63 (refusing to compel third party to arbitrate where contract "specifies that the terms of the agreement apply only to the [defined] parties").[10]

LendingTree argues that this Court "possesses no power to decide" whether the arbitration clause applies because the clause delegates the question of arbitrability to the arbitrator by virtue of incorporating the AAA Commercial Arbitration Rules. Motion at 24 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524 (2019)). That is incorrect. As the Supreme Court recognized in *Henry Schein*, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." 139 S. Ct. at 530. *Henry Schein* addressed a different question of whether, having found that a valid arbitration agreement exists, the court could nevertheless find that a particular dispute is not arbitrable "if, under the contract, the argument for arbitration is wholly groundless." *Id*. at 529. Here, the Court should find that no valid arbitration agreement between the parties exists because LBHI did not agree to arbitrate anything, including the question of arbitrability. *See Flink*, 856 F.2d at 46-47 (declining to compel non-signatory to AAA arbitration).

---

[10] LendingTree mischaracterizes the Eighth Circuit's decision in *CD Partners, LLC v. Grizzle*, 424 F.3d 795 (8th Cir. 2005). *See* Motion at 27. *CD Partners* involved a motion *by non-signatories* to force a signatory to arbitrate, where the non-signatories had a close relationship with the other signatory (they were its three principals). *See id*. at 798-99. The Eighth Circuit specifically distinguished that situation from one where, as here and in *Flink v. Carlson*, 856 F.2d 44 (8th Cir. 1988), a *signatory* tries to compel a non-signatory to arbitrate. *CD Partners*, 424 F.3d at 799. No arbitration clause, however broadly worded, can bind a non-signatory that has not "manifest[ed] his agreement in some way." *Flink*, 856 F.2d at 47.

The Second Circuit's decision in *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322 (2d Cir. 2013), is instructive. There, an ICC tribunal had found that the defendant, though a non-signatory, was bound by an arbitration clause and entered an award against it. After the district court refused to enforce the award because the arbitrators lacked jurisdiction, the Second Circuit remanded. While recognizing that under Second Circuit precedent the ICC Rules, like the AAA Rules, "clearly and unmistakably commit[] to arbitration any questions about the arbitrability of particular disputes," it gave instructions that if "the district court determines that [defendant] did not agree to the terms of [the arbitration clause], no further analysis would be necessary. Such a finding would compel the denial of [plaintiff's] petition to confirm the award on the grounds that [defendant] never consented to submit disputes—whether about arbitrability or anything else—to arbitration." *Id.* at 326-27. After remand, the district court again refused to enforce the award because the arbitrators lacked jurisdiction. The Second Circuit affirmed, finding that the non-signatory defendant "did not agree to arbitrate," rejecting the arbitrators' finding to the contrary. *VRG Linhas Aereas S.A v. MatlinPatterson Glob. Opp. Partners II L.P.*, 605 F. App'x 59, 61 (2d Cir. 2015). Here, as in *VRG*, LBHI did not agree to arbitrate anything, including the threshold question of arbitrability. This Court should therefore decide the question of arbitrability and deny LendingTree's motion to compel arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (punctuation omitted).

27

**B.      LendingTree's third-party beneficiary and equitable estoppel
         arguments are misguided**

LendingTree seeks to bind LBHI to the Spin Agreement's arbitration clause by
contending that LBHI purports to be a third-party beneficiary of the Spin Agreement, or
that under principles of estoppel, LBHI cannot enforce the Spin Agreement without also
subjecting itself to its arbitration clause. Motion at 27-28. Both arguments fail, as they
misapprehend the nature of LBHI's claim.

LBHI is not suing as a third-party beneficiary to *enforce* the Spin Agreement. As
LendingTree itself points out, the Spin Agreement expressly disclaims third-party
beneficiaries. *See* Compl. Ex. 2 § 13.07. Rather, LBHI is "*relying on* the [Spin Agreement]
to demonstrate that LendingTree Parent expressly assumed a portion of HLC's liability, as
required to make out a claim of express assumption successor liability." *ResCap*, 2020 WL
1317719, at *17 (alterations omitted); *see also Haywin Textile Prod., Inc. v. Int'l Fin. Inv.
& Commerce Bank Ltd.*, 2001 WL 984721, at *4 (S.D.N.Y. Aug. 24, 2001) ("When a party
sues as a third party beneficiary to a contract, that party makes a claim that he particularly
is entitled to performance… When a party sues claiming that the defendant is a successor-
in-interest, however, his argument is not premised upon his particular status, but rather
upon the defendant's position of exposure to general liability for the debts of the
predecessor."), *aff'd*, 38 F. App'x 96 (2d Cir. 2002). LBHI is not suing as a third-party
beneficiary; therefore, LendingTree's cited cases binding non-signatories to arbitrate on
that basis are inapplicable. *See ResCap*, 2020 WL 1317719, at *28.

LendingTree's estoppel argument fails for a similar reason. As this Court held in
*ResCap*, estoppel is limited to situations where the non-signatory receives a "direct benefit"
from the contract containing the arbitration clause. *ResCap*, 2020 WL 1317719, at *28
(citing *Nitro*, 453 F.3d at 998 ("Because the plaintiffs never indicated a willingness to
arbitrate with Amway, the estoppel cases cited by Amway are 'inapposite and insufficient
justification' for binding the plaintiffs to an agreement they never signed.")); *see also
Thomson-CSF*, 64 F.3d at 779 (refusing to compel non-signatory to arbitrate where it
benefitted only indirectly from the contract containing the arbitration clause); *cf. Ace Am.
Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 205 (S.D. Tex. 2008) ("[U]nder direct-
benefits estoppel, a non-signatory plaintiff cannot be compelled to arbitrate on the sole
ground that, but for the contract containing the arbitration provision, it would have no basis
to sue.") (quotation omitted). The Spin Agreement on its face does not directly benefit
LBHI. To the contrary, it disclaims third-party beneficiaries. Compl. Ex. 2 § 13.07. LBHI
merely cites the Spin Agreement to show that LendingTree Parent is the successor to HLC
under an assumption-of-liabilities theory. That is not the kind of "direct benefit" under the
Spin Agreement that would be necessary to give rise to estoppel. *See ResCap*, 2020 WL
1317719, at *28.[11]

---

[11] LendingTree's cited cases are inapposite. In *Invista S.A.R.L. v. Rhodia, S.A.*, the court
did not reach the question of estoppel. 625 F.3d 75, 85 (3d Cir. 2010). *Capital Grp. Cos.,
Inc. v. Armour* concerned an agreement that granted the non-signatory a "direct benefit" in
the form of a beneficial interest in stock. 2004 WL 2521295, at *7 (Del. Ch. Oct. 29, 2004).
In *Aveta Inc. v. Cavallieri*, the non-signatories were bound by a forum selection clause
because they sought a direct benefit in the form of specific performance and damages under
the agreement. 23 A.3d 157, 182 (Del. Ch. 2010). Notably, the non-signatories were *not*
permitted to participate in an ongoing arbitration under the same agreement. *Id*. at 181.

**C.** **In the event the Court compels arbitration of Count One, it should not stay the remaining counts**

In the event this Court were to compel arbitration of Count One (which it should not), it should not stay the remainder of the case. Where a lawsuit involves claims beyond those referable to arbitration, "issues such as the risk of inconsistent rulings… and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay." *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 782-83 (8th Cir. 2001). "[T]he movant bears a heavy burden of showing necessity for the stay." *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991).

A delay in potentially litigating the case piecemeal would prejudice LBHI, which is the Plan Administrator of the Lehman Brothers estate, recovering assets for distribution to the estate's creditors in a complex and sprawling bankruptcy now over 12 years old. Trumpp Decl. ¶ 4. And there is no meaningful risk of inconsistent rulings between the arbitration of Count One and the continued litigation of Counts Two and Three. All three claims are legally independent and are based on different sets of operative facts. Count One turns on express assumption of liabilities in the Spin Agreement and later public admissions, whereas Counts Two and Three are based primarily on LendingTree's relationship with HLC at a corporate level as well as in connection with the origination of mortgage loans. Accordingly, there would be no inconsistency between an arbitrator and this Court independently reaching conclusions as to each Count. *See Sierra Rutile*, 937 F.2d at 750-51 (rationale for discretionary stay undermined by difference in the "issues in the court action and in the arbitration").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny LendingTree's Motion to Dismiss or, in the Alternative, to Transfer Venue, or to Compel Arbitration. In the alternative, the Court should transfer the case to the Southern District of New York for referral to the Bankruptcy Court there.

Dated: October 19, 2020

**GREENE ESPEL PLLP**

By:  */s/ John B. Orenstein*
John B. Orenstein, Reg. No. 020903X
Matthew D. Forsgren, Reg. No. 0246694
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
jorenstein@greeneespel.com
mforsgren@greeneespel.com

**WOLLMUTH MAHER & DEUTSCH LLP**

William A. Maher (*pro hac vice*)
Adam M. Bialek (*pro hac vice*)
Christopher J. Lucht (*pro hac vice*)
Joshua M. Slocum (*pro hac vice*)
Joseph F. Pacelli (*pro hac vice*)
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
wmaher@wmd-law.com
abialek@wmd-law.com
clucht@wmd-law.com
jslocum@wmd-law.com
jpacelli@wmd-law.com

*Attorneys for Lehman Brothers Holdings Inc.*

31

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LEHMAN BROTHERS HOLDINGS INC.,          Court File No. 20-CV-1351 (SRN/HB)

                    Plaintiff,

v.                                              **LR 7.1 (f) CERTIFICATE OF**
                                                       **COMPLIANCE**

LENDINGTREE, LLC and
LENDINGTREE, INC.

                    Defendants.

I, Matthew D. Forsgren, certify that the

☒        Memorandum titled: PLAINTIFF'S MEMORANDUM OF LAW
         IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
         OR IN THE ALTERNATIVE, TO TRANSVER VENUE, OR TO
         COMPEL ARBITRATION PURSUANT TO F.R.C.P. 12(b)(6)
         complies with the limits in Local Rule 7.1(f) and Local Rule 7.1(h).

or

☐        Objection or Response to the Magistrate Judge's Ruling complies
         with Local Rule 72.2(d).

I further certify that, in preparation of the above document, I:

☒        Used the following word processing program and version:
         Microsoft Word Version 2016 and that this word processing
         program has been applied specifically to include all text,
         including headings, footnotes, and quotations in the following
         word count.

or

☐        Counted the words in the document.

I further certify that the above document contains the following number of
words: 8,776.

Dated:  October 19, 2020          GREENE ESPEL PLLP

                                   /s/ John B. Orenstein
                                  John B. Orenstein, Reg. No. 020903X
                                  Matthew D. Forsgren, Reg. No. 0246694
                                  222 S. Ninth Street, Suite 2200
                                  Minneapolis, MN  55402
                                  jorenstein@greeneespel.com
                                  mforsgren@greeneespel.com
                                  (612) 373-0830

                                  **WOLLMUTH MAHER & DEUTSCH
                                  LLP**

                                  William A. Maher (*pro hac vice*)
                                  Adam M. Bialek (*pro hac vice*)
                                  Christopher J. Lucht (*pro hac vice*)
                                  Joshua M. Slocum (*pro hac vice*)
                                  Joseph F. Pacelli (*pro hac vice*)
                                  500 Fifth Avenue
                                  New York, NY 10110
                                  Telephone: (212) 382-3300
                                  Facsimile: (212) 382-0050
                                  wmaher@wmd-law.com
                                  abialek@wmd-law.com
                                  clucht@wmd-law.com
                                  jslocum@wmd-law.com
                                  jpacelli@wmd-law.com

                                  *Attorneys for Lehman Brothers Holdings Inc.*