UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **LEHMAN BROTHERS HOLDINGS INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**LENDINGTREE, LLC and LENDINGTREE, INC.,**<br><br>Defendants. | No. 20-cv-1351 (SRN/HB)<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE OR TO COMPEL ARBITRATION** |

## I.     INTRODUCTION

Defendants moved to dismiss or, alternatively, to transfer this case because it has no meaningful connection to Minnesota. *See Motion to Dismiss* [ECF 23] (the "Motion").[1]  Defendants established that the Court does not have personal jurisdiction over Tree-Inc. (Mem. 7–14), that venue is improper (*id.* 14–17), and that the Western District of North Carolina is a more convenient venue (*id.* 17–20).  Defendants further established that the Court should compel arbitration on Count One if the Court does not transfer or dismiss the case.  *Id.* 20–29.

Lehman does not argue that this case has any meaningful Minnesota ties.  Instead, it asks the Court to deny Defendants' Motion for several other reasons, all of which fall flat.  *See Plaintiff's Memorandum of Law in Opposition* [ECF 36] ("Opp.").

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the *Memorandum of Law in Support of Motion* [ECF 25] ("Mem." or "Memorandum").

-1-

*First*, Lehman argues that the Court has general personal jurisdiction over both Defendants based on Tree-LLC's appointment of an agent to receive service of process in Minnesota. *See* Opp. 10–13. This appointment does *not* establish general personal jurisdiction over Tree-Inc.[2] Even if one assumes that Tree-LLC's veil could be pierced, that does not provide a basis for imputing Tree-LLC's appointment of a service agent to Tree-Inc. Veil piercing allows a plaintiff to "pierce" the veil, not remove or eliminate it, for the transaction at issue. And, Tree-LLC did not appoint its service agent in connection with the transaction at issue here.

*Second*, Lehman argues that the Court has specific personal jurisdiction over both Defendants based on HLC's contacts with Minnesota. *See* Opp. 13–14. But the HLC contacts Lehman identifies are not sufficient to establish specific personal jurisdiction over HLC. Lehman seeks to enforce a $13.3 million claim allowed by a California bankruptcy court against HLC.[3] That Allowed Claim is based upon HLC's sale of loans from California to LBB on the East Coast. That some of those loans may have originated

---

[2] When Defendants filed the Motion, they told the Court that Tree-Inc. had never appointed a service agent in Minnesota. While historically true, Tree-Inc. appointed one for the first time on August 14, 2020 for tax filing purposes. *See Declaration of Dana Barker in Support of Defendants' Reply* (the "Barker Reply Decl.") ¶¶ 5-6. Due to an oversight, that recent appointment was not disclosed to the Court. *Id.* However, it is not material to the Motion because personal jurisdiction is measured when the complaint is filed. *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

[3] Lehman asserts that the Allowed Claim "has the same force and effect as a final judgment of a court." Opp. 8 & n.9. But "a 'judgment' is a term whose meaning depends on the context in which it is used." *Ziino v. Baker*, 613 F.3d 1326, 1328 (11th Cir. 2010). While an allowed claim may satisfy one of many predicate elements for issue or claim preclusion, it is not a "money judgment" that can be collected or executed upon. *Id.* In any event, the legal import of the Allowed Claim is not at issue in this Motion.

in Minnesota does not confer specific personal jurisdiction over Lehman's claims against HLC or by extension over Defendants.

*Third*, Lehman asserts that Minnesota is more convenient because this Court decided a motion to dismiss in a similar case and Defendants' counsel has offices in Minneapolis. Opp. 18–21. But this Court merely ruled on a preliminary motion in a case that has since been dismissed. *See ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-cv-2360 (SRN/HB) (D. Minn. Oct. 20, 2020) [Doc. 123] (Order of Dismissal). Moreover, "convenience to . . . 'counsel is not a factor to be considered in deciding the propriety of transfer.'" *Safeco Ins. Co. of Ind. v. Carlson*, 274 F. Supp. 3d 904, 909 n.7 (D. Minn. 2017) (citation omitted).

*Finally*, Lehman argues that the Separation Agreement's arbitration clause does not require it to arbitrate Count One because it is not party thereto. Opp. 23–27. But that is not the relevant question. When a party sues to take advantage of an agreement's provisions, the party must accept all its provisions, not just the ones it likes.

Accordingly, the Court should dismiss this case, transfer it, or, alternatively, order arbitration of Count One and stay the remaining counts.

## II.     ARGUMENT

### A.     The Court Lacks Personal Jurisdiction Over Defendants.

#### 1.     This Court lacks general personal jurisdiction over Tree-Inc.

Lehman does not assert that either Defendant is at home in Minnesota. *See* Mem. 8–9. Instead, it claims both Defendants are subject to general personal jurisdiction because Tree-LLC appointed a service agent in Minnesota. Opp. 10–13. Defendants

disagree that this appointment establishes general personal jurisdiction over Tree-LLC, but acknowledge Eighth Circuit precedent to the contrary. *See Knowlton v. Allied Van Lines*, 900 F.2d 1196 (8th Cir. 1990); Mem. 13–14.

Notwithstanding the Court's general jurisdiction over Tree-LLC under *Knowlton*, however, there is no basis to exercise general jurisdiction over Tree-Inc. At the time Lehman filed its Complaint—June 11, 2020 (ECF 2)—Tree-Inc. had not appointed a service agent in Minnesota. While Tree-Inc. appointed one for tax-filing purposes on August 14, 2020, *see* Barker Reply Decl. ¶¶ 5–6, that act does not establish general personal jurisdiction over Tree-Inc. here because jurisdiction must exist when a complaint is filed. *See Pecoraro*, 340 F.3d at 562; *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999); *cf. Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004). Lehman argues instead that the Court may impute *Tree-LLC's* service agent appointment to *Tree-Inc.*, and exercise general jurisdiction over Tree-Inc. based on Tree-LLC's consent. *See* Opp. 11. Lehman is wrong.

*First*, Lehman asserts that a subsidiary's consent to general personal jurisdiction subjects a parent to general personal jurisdiction if the Court can pierce the subsidiary's corporate veil. *Id.* That argument stretches *Knowlton* far beyond its holding.

Courts have consistently held that they "cannot exercise personal jurisdiction over [a defendant] on the basis of a third party's consent." *Peluso v. New Jersey Devils, LLC*, 2018 WL 4054108, at *5 (D. Minn. Aug. 24, 2018); *see Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*, 78 F. Supp. 3d 572, 592 (D. Del. 2015). None of the cases Lehman cites involve a court imputing a subsidiary's consent to a parent, but rather those courts

-4-

imputed the subsidiary's activity in the forum related to the transaction at issue to the parent.

Moreover, piercing the veil does not remove or eliminate the corporate veil for *all* purposes. Rather, courts pierce the veil for the limited scope of the transaction at issue. *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 607 (Cal. 1985) ("[U]nder certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands."); *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 462 (7th Cir. 1991) ("Aside from the liability of the parent where the alter ego doctrine applies, the corporate form remains intact."); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268–69, (D. Del. 1989) (same). When Courts pierce the corporate veil, they only do so to the extent necessary to avoid fraud or injustice. *Lumpkin*, 933 F.2d at 462.

Here, the only reason for "drilling a hole" would be to allow Lehman to recover from Defendants for Lehman's claims against HLC relating to HLC's sale of loans to LBB. The facts concerning Tree-LLC's appointment of a service agent in Minnesota (through which general personal jurisdiction over Tree-LLC is established) and the facts concerning HLC's contractual relationship with LBB and any control Defendants exerted over that relationship (by which Lehman makes a claim for veil piercing) have nothing to do with one another. Thus, there is no relationship between Tree-LLC's activity in the forum and Lehman's veil-piercing claim that would enable the Court to pierce the veil in Minnesota to find general personal jurisdiction over Tree-Inc. Nor is it necessary to extend the Court's jurisdiction over Tree-LLC to Tree-Inc. to avoid a fraud or injustice—

-5-

Lehman is free to file suit in North Carolina, where both defendants are subject to general personal jurisdiction. Because the transaction at issue in this action is unrelated to Tree-LLC's consent to jurisdiction in Minnesota, and the Court is permitted to "drill a hole" only to the extent necessary to avoid fraud or injustice, there is no basis here to impute the Court's general personal jurisdiction over Tree-LLC to Tree-Inc.

*Second*, Lehman argues this Court's held in *ResCap* that Tree-LLC's consent is imputed to Tree-Inc. *See* Opp. 11. This misunderstands the Court's opinion. The Court did *not* analyze whether Tree-LLC's consent-by-registration extended to Tree-Inc. Instead, the Court addressed that theory only with respect to Tree-LLC. *See ResCap Liquidating Tr. v. LendingTree, LLC*, 2020 WL 1317719, at *5 (D. Minn. Mar. 20, 2020). The Court then held that *specific* personal jurisdiction existed over both Defendants, including Tree-Inc., based on HLC's RFC-specific contacts with Minnesota. It found Defendants were bound to a forum-selection clause in HLC's contract with RFC. *Id.* at *11; *accord TempWorks Software, Inc. v. Careers USA, Inc.*, 2014 WL 2117344, at *3 (D. Minn. May 21, 2014) (forum-selection clause confers specific personal jurisdiction). And, as described below, HLC's contacts with this forum are insufficient for the Court to exercise specific jurisdiction overs Lehman's claims against HLC.

### 2. The Court lacks specific personal jurisdiction.

The Court lacks specific personal jurisdiction over HLC (and thus Defendants) with respect to Lehman's claim against HLC. Mem. 9–13. Lehman mistakenly suggests that Defendants dispute whether HLC's contacts may ever be imputed for purposes of specific personal jurisdiction. Opp. 13–14. Not so. Defendants "assum[e], for purposes

-6-

of [their] motion, that the Complaint alleges facts sufficient to impute HLC's contacts to Defendants," and argue that "HLC's contacts do not establish specific personal jurisdiction." Mem. 11.

Lehman argues that the Court has specific personal jurisdiction because "HLC originated loans in Minnesota and sold them to LBB," Opp. 14, but fails to explain how HLC's loan origination activity establishes a sufficient nexus between HLC and Minnesota to establish jurisdiction over HLC for the claims at issue in this action. Lehman seeks to establish Defendants' liability for a $13.3 million claim allowed by a California bankruptcy court that was based on HLC's *sale* of loans from California to a bank located on the East Coast. *See* Mem. 11–12. That some of those loans may have originated in Minnesota has no bearing on Lehman's claim, and falls well short of the "substantial connection" to Minnesota necessary to establish jurisdiction in this forum. Lehman's claim is that two corporations in North Carolina should be held liable for an Allowed Claim obtained in a California bankruptcy court arising from a California company's sale of loans to an East Coast entity. There is no basis to find specific personal jurisdiction over HLC—nor, by extension, over Defendants—in this action.

### B. Alternatively, The Court Should Dismiss For Improper Venue Or Transfer It To North Carolina.

#### 1. Venue is improper.

Defendants' Memorandum shows (at 14–16) that venue is improper because "all" defendants do not reside in Minnesota, a "substantial part of the events" giving rise to the claims did not occur here, and venue is proper elsewhere. 28 U.S.C. § 1391(b)(1)–(3).

-7-

Lehman makes two arguments in opposition. *First*, Lehman says this case satisfies residential venue because the Court has personal jurisdiction over both Defendants. Opp. 15. As explained above, the Court lacks both general and specific personal jurisdiction over Tree-Inc., at the least. *See supra* Section II.A. *Second*, Lehman claims transactional venue because some loans originated in Minnesota. Opp. 15. But *none* of the "events" material to Lehman's claims—the purchase and sale of loans with accompanying representations and warranties (California, New York and/or Delaware), the allowance of the Allowed Claim (California), the execution of the loan contracts (California, New York and/or Delaware), Defendants' relationship to HLC (North Carolina and California)—happened in Minnesota. 28 U.S.C. § 1391(b)(2); *see* Mem. 5–6.

### 2. North Carolina is a more convenient venue.

Defendants' Memorandum demonstrates that the Western District of North Carolina is a more convenient venue. Mem. 18–20. Plaintiff's responses effectively *concede* that Minnesota is an inconvenient venue, and they fail to show that any venue is more convenient than North Carolina.

Courts split on which statute applies (§ 1404 or 1412), *Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 628 (D. Minn. 2009), but it makes no difference because the test is the same: the "convenience of the parties" and the "interest of justice." 28 U.S.C. § 1412; *id.* § 1404 (same). Indeed, courts rely on cases under both statutes interchangeably. *Residential Funding Co. v. Cherry Creek Mortg. Co.*, 2014 WL 1686516, at *2–4 (D. Minn. Apr. 29, 2014); *Creekridge*, 410 B.R. at 630.

Lehman's reasons why North Carolina is not a more convenient venue than Minnesota do not withstand scrutiny.

*First*, Lehman says transfer would "shift[] the inconvenience from one side to the other" because it has no contacts with North Carolina. Opp. 17 (quoting *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 884 (D. Minn. 2015)). But that case deals with the "classic scenario" where each side argued in favor of "its home forum." *Bae*, 331 F. Supp. 3d at 927; *My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 927 (D. Minn. 2018). Lehman is not at home in Minnesota. Lehman is headquartered in New York and does business in Kansas and Colorado. Trumpp Decl. [ECF 37] ¶ 5. That means it "will be inconvenienced no matter where this litigation is venued" while Defendants "will suffer far less inconvenience" in North Carolina. *Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1106 (D. Minn. 2010).

*Second*, Lehman argues that convenience for Defendants' counsel somehow favors Minnesota. Opp. 18. "The word 'counsel' does not appear anywhere" in the transfer statutes, *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004), and "convenience to . . . counsel is not a factor to be considered in deciding the propriety of transfer." *Safeco*, 274 F. Supp. 3d at 909 n.7 (quotation omitted). The case Lehman cites focused on travel expenses for the "party" and "witnesses," not counsel. *Bae*, 124 F. Supp. 3d at 885.

*Third*, Lehman claims Minnesota is the proper venue because this Court decided a motion to dismiss in the now-dismissed *ResCap* case. Opp. 19–20. A motion to dismiss raises purely legal issues, and familiarity with preliminary legal questions is not enough

-9-

to keep a case in an inconvenient venue, particularly when that familiarity comes from a different case. The primary case Lehman cites demonstrates that a case must be far more advanced before judicial efficiency concerns will overcome convenience concerns. *See* Opp. 19 (citing *Steward v. Up North Plastics, Inc.*, 177 F. Supp. 2d 953, 959 (D. Minn. 2001)). The *Steward* court was "intimately familiar with the issues in th[e] case" because the case had been pending for over four years and the court had "ruled on numerous motions during that time period." *Steward*, 177 F. Supp. 2d. at 959–60. And the court was concerned about "break[ing] two substantially related cases in two and increase[ing] the risk of inconsistent outcomes." *Id.* at 959.

None of those factors exists here. This Court ruled on preliminary legal issues in a single motion in the *ResCap* case against Defendants, and the parties subsequently settled. This case is in its infancy; the transferee court will be no worse off than any court when it first receives a case.

*Finally,* Lehman's forum choice receives "significantly less deference" here because Lehman does not reside in Minnesota and the underlying events did not occur here. *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999). Lehman has not offered any legitimate basis to deny Defendants' requested transfer to North Carolina.

### 3. The Court should transfer to North Carolina, not New York.

Effectively conceding that Minnesota is an inconvenient venue, Lehman asks the Court to transfer the case to New York instead of North Carolina. Opp. 20–23. The Court should reject this fallback argument for several reasons.

To begin, if Lehman were concerned with "the efficient administration of [its] bankruptcy estate," Opp. 21, it would have filed suit in New York, not Minnesota. Lehman does not get a second bite at the apple after it chooses an improper and inconvenient forum.

In addition, Lehman's various arguments that New York is more convenient than North Carolina do not withstand scrutiny. Whether Defendants are subject to personal jurisdiction in New York, Opp. 22–23, says little about the *convenience* of the forum. Lehman cites judicial efficiency, but the New York bankruptcy court's knowledge of Lehman's bankruptcy, Opp. 21, has no bearing on this case—as Lehman itself admits. *See id.* ("[T]he Bankruptcy Court . . . has not yet dealt with a claim against LendingTree based on its relationship with HLC . . . ."). Lehman finally suggests that the New York court has familiarity with the common issue of "successor claims." *Id.* But familiarity with an area of law is no basis on which to decide transfer.

Lehman's proposal to transfer to New York highlights the inconvenience of litigating in Minnesota and confirms that North Carolina is the proper venue.

### C.    Alternatively, The Court Should Compel The Parties To Arbitrate Count One.

If the Court does not dismiss or transfer this case, it should order the parties to arbitrate Count One and stay the remaining counts. *See* Mem. 20–29. Lehman offers several responses, but none rebuts the conclusion that the question of whether Count One is arbitrable should go to an arbitrator.

-11-

*First*, contrary to Lehman's suggestion, Defendants did not merely preserve their arbitration argument for appeal. Opp. 23. Rather, Defendants respectfully requested the Court "reconsider its decision" in *ResCap*. Mem. 20.

*Second*, Lehman argues it cannot be bound by the Separation Agreement's arbitration clause because it was not a party to the agreement. Opp. 23–24. But Delaware law (which controls) holds that non-parties to an agreement cannot cherry-pick the portions of a contract they like while disclaiming the sections they dislike, such as a mandatory arbitration clause. *Invista S.a.r.l. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010); *Capital Grp. Cos. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004); *see* Mem. 21–23.

*Third*, Lehman asserts that the Separation Agreement's arbitration clause does not cover this dispute because its terms apply only to the parties to the agreement. Opp. 25–26. While only the parties can initiate the Separation Agreement's informal dispute resolution process, the arbitration clause is broadly written to apply to any Dispute that is not resolved by that process—including this one. *See* Mem. 25–27; *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 797, 800–01 (8th Cir. 2005). Lehman suggests Defendants "mischaracterize" *CD Partners*, Opp. 26 n.10, but, respectfully, they misunderstand the proposition for which Defendants cite the case. Lehman cites the section of *CD Partners* that addressed when a non-party may be bound by an arbitration clause. 424 F.3d at 798–800 (Section II). But Defendants cited the portion that held that a provision stating that "Franchisor and Franchisee agree" to arbitrate claims covered a dispute involving non-

-12-

parties. *Id.* at 797, 800–01 (Section III). So, too, here. The Separation Agreement's statement that the "Dispute Parties agree" covers non-parties, as well.

*Fourth*, Lehman asserts that the arbitration clause cannot apply because it is "not suing as a third-party beneficiary to *enforce* the Spin Agreement." Opp. 28. Because Lehman seeks a declaration that Tree-Inc. is liable because of the Separation Agreement, it must abide by all of its terms regardless if it is a third-party beneficiary. "Equity will not allow a party to sue to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not." *Smyrna v. Kent Cty. Levy Court*, 2004 WL 2671745, at *4 (Del. Ch. Nov. 9, 2004).

*Finally*, Lehman argues that Count One is distinct and independent from the remaining counts. Opp. 30. But all of the counts share related facts and similar legal considerations, with the focus on the relationship (if any) between Tree-Inc., Tree-LLC, HLC, Lehman, and LBB. If the Court orders arbitration, it should stay all counts.

### III. CONCLUSION

The Court should dismiss this case, transfer it, or, alternatively, order arbitration of Count One and stay the remaining counts.

| | |
|---|---|
| Dated: November 18, 2020 | JONES DAY |
| | */s/ Kelly G. Laudon* |
| | Kelly G. Laudon (#0386854) |
| | Matthew C. Enriquez (#0397301) |
| | 90 South 7th Street, Suite 4950 |
| | Minneapolis, MN 55402 |
| | Telephone: (612) 217-8800 |
| | klaudon@jonesday.com |
| | menriquez@jonesday.com |

        Matthew C. Corcoran (*pro hac vice*)
        325 John H. McConnell Boulevard
        Columbus, OH 43215
        Telephone: (614) 469-3939
        mccorcoran@jonesday.com

        Carl E. Black (*pro hac vice*)
        North Point
        901 Lakeside Avenue
        Cleveland, Ohio 44114
        Telephone: (216) 586-3939
        ceblack@jonesday.com

        *Attorneys for Defendants LendingTree,*
        *LLC and LendingTree, Inc.*