```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
     -----------------------------------------------------------
 3                                   )
     Lehman Brothers Holdings,       )   File No. 20-cv-1351
 4   Inc.,                           )            (SRN/HB)
                                     )
 5          Plaintiff,               )
                                     )   Saint Paul, Minnesota
 6   vs.                             )   December 16, 2020
                                     )   9:30 a.m.
 7   LendingTree, LLC,               )
     and LendingTree, Inc.,          )   HEARING HELD VIA ZOOM
 8                                   )   FOR GOVERNMENT
            Defendants.              )
 9   -----------------------------------------------------------

10          BEFORE THE HONORABLE SUSAN RICHARD NELSON
               UNITED STATES DISTRICT COURT JUDGE
11                       (MOTIONS HEARING)

12   APPEARANCES
       For the Plaintiff:          WOLLMUTH MAHER & DEUTSCH LLP
13                                  JOSHUA SLOCUM, ESQ.
                                    ADAM M. BIALEK, ESQ.
14                                  BRAD J. AXELROD, ESQ.
                                    500 Fifth Avenue
15                                  New York, New York 10110

16                                  GREENE ESPEL PLLP
                                    MATTHEW D. FORSGREN, ESQ.
17                                  222 South 6th Street
                                    Suite 2200
18                                  Minneapolis, Minnesota 55402

19     For the Defendants:          JONES DAY
                                    MATTHEW CORCORAN, ESQ.
20                                  325 John J. McConnell Boulevard
                                    Suite 600
21                                  Columbus, Ohio 43215-2673

22                                  JONES DAY
                                    CARL E. BLACK, ESQ.
23                                  901 Lakeside Avenue
                                    North Point
24                                  Cleveland, Ohio 44114-1190

25
```

```
 1      For the Defendants:        JONES DAY
                                   KELLY G. LAUDON, ESQ.
 2                                 90 South Seventh Street
                                   Suite 4950
 3                                 Minneapolis, Minnesota 55402

 4      Court Reporter:            CARLA R. BEBAULT, RMR, CRR, FCRR
                                   316 North Robert Street
 5                                 Suite 146 U.S. Courthouse
                                   Saint Paul, Minnesota 55101

 6

 7

 8
            Proceedings recorded by mechanical stenography;
 9      transcript produced by computer.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                VIA ZOOM FOR GOVERNMENT

 3

 4          MR. SLOCUM:  Good morning, Your Honor.

 5          MR. CORCORAN:  Good morning, Your Honor.

 6          THE COURT:  Very good.  Good morning.  We are here

 7   today in the matter of Lehman Brothers Holdings, Inc.,

 8   versus LendingTree, LLC, et al.  This is civil file number

 9   20-1351.  Let's begin with appearances for the plaintiff,

10   please.

11          MR. FORSGREN:  Good morning, Your Honor.  Matt

12   Forsgren for Lehman Brothers.

13          THE COURT:  Good morning.

14          MR. SLOCUM:  Good morning, Your Honor.  Joshua

15   Slocum of Wollmuth Maher & Deutsch for Lehman Brothers.

16   Here with me is my colleague Adam Bialek, and also Brad

17   Axelrod is joining us as well.  I will be arguing.

18          THE COURT:  Very good.  All right.  And for the

19   defense, please.

20          MS. LAUDON:  Good morning, Your Honor.  Kelly

21   Laudon with Jones Day here on behalf of the defendants.

22   Also with me today is Mr. Corcoran, Matthew Corcoran, and

23   Carl Black, and Mr. Corcoran will be arguing.

24          THE COURT:  Very good.  We are here to consider

25   the defendants' motion to dismiss or, in the alternative, to
```

1      transfer venue or to compel arbitration.  Mr. Corcoran.

2              MR. CORCORAN:  Thank you, Your Honor.  May it

3      please the Court, Matthew Corcoran with Jones Day on behalf

4      of the defendants LendingTree, Inc., and LendingTree, LLC.

5              This case has no material relationship to

6      Minnesota.  None of the parties is organized under the laws

7      of Minnesota.  None of the parties maintains offices in

8      Minnesota, much less a principal place of business.

9              The plaintiff Lehman is a Delaware corporation

10     with a principal place of business in New York.  Lehman's

11     employees work in Colorado, Kansas and New York.  None work

12     in Minnesota.

13             Both of the defendants were organized under the

14     laws of the Delaware and have a principal place of business

15     in Charlotte, North Carolina.  The majority of defendants'

16     employees work in Charlotte and none of them work in

17     Minnesota.

18             Similarly, Lehman's claims are not based on any

19     activity that occurred in Minnesota.  Lehman seeks to

20     enforce against both defendants a $13.3 million claim that

21     was allowed by the Bankruptcy Court in the Northern District

22     of California pursuant to a settlement between Lehman and a

23     California Chapter 7 trustee in Home Loan Center's

24     California bankruptcy.  That allowed claim relates to loans

25     an affiliate of Lehman bought from HLC.

1        During that time that HLC was selling those loans

2    it was headquartered in Irvine, California and Lehman's

3    banking affiliate was headquartered on the east coast.  The

4    contracts to which HLC sold those loans are governed by New

5    York law and have no forum selection clause, and Lehman's

6    contractual claims against HLC are based on representations

7    and warranties that HLC made from California to Lehman's

8    banking affiliate on the east coast.

9        Moreover, the alleged conduct of defendants that

10    Lehman contends make them liable for the HLC allowed claim

11    did not occur in Minnesota.  Count One relies on the

12    separation agreement and LendingTree, Inc.'s SEC filings.

13    The separation agreement is a contract among Delaware

14    entities that chooses Delaware law and requires disputes to

15    be arbitrated in Delaware.  LendingTree, Inc. made its SEC

16    filings from its offices in North Carolina.

17        Counts Two and Three are based upon defendants'

18    alleged domination and control from Charlotte, North

19    Carolina over HLC's activities in Irvine, California until

20    2012; and thereafter HLC's activities in Charlotte, North

21    Carolina.  There are no material facts that tie this dispute

22    to this forum.  Indeed, Lehman alleged only two facts tying

23    the parties and the claims asserted in the complaint to

24    Minnesota.

25        One, LendingTree, LLC registered an agent for

1    service of process in Minnesota; and two, HLC originated in

2    Minnesota some unidentified portion of the loans it sold to

3    a Lehman's affiliate.  Neither of those facts are

4    sufficient, independently or collectively, to provide this

5    Court with jurisdiction over all the parties or to make

6    Minnesota a proper or convenient forum.

7              Start with the latter, the alleged origination of

8    loans in Minnesota.  The underlying dispute between HLC and

9    Lehman's affiliate is not about loan originations made in

10   California to residents of the 50 states.  It is about the

11   representations and warranties that HLC made to Lehman from

12   its offices in California to Lehman's banking affiliate on

13   the east coast.  Using the state of origination here would

14   be like using the place where a car was manufactured to

15   create jurisdiction and venue in a dispute between a car

16   dealership and a car buyer over a sales contract.

17             The place of origination is simply not material to

18   the dispute.  And even if it were, Your Honor, Lehman does

19   not allege that the number of loans originated in Minnesota

20   represent a meaningful portion of the loans underlying

21   Lehman's allowed claim in the California Bankruptcy Court.

22   Thus, imputing HLC's contacts to the defendants would not

23   give this Court personal jurisdiction over all the

24   defendants or make Minnesota a proper or convenient forum.

25             Next, take LendingTree, LLC's registered agent.

1   While it is the defendants' position recent Supreme Court

2   precedent has abrogated the Eighth Circuit decision in

3   *Knowlton*, we acknowledge that Your Honor ruled in *Dairy*

4   *Queen* that you must follow *Knowlton* unless and until the

5   Eighth Circuit overrules it.  Thus, we simply are preserving

6   that issue with respect to LendingTree, LLC for appeal.

7   However, it does not provide personal jurisdiction

8   over LendingTree, Inc.  Lehman tries to impute LendingTree,

9   LLC's registered agent to LendingTree, Inc. under a veil-

10  piercing theory.  But veil piercing allows the Court to

11  pierce the corporate veil, not eliminate it.  LendingTree,

12  LLC's registering of an agent in Minnesota has nothing to do

13  with HLC's dispute with Lehman.  Thus, even if the Court

14  could impute HLC's relationship with Lehman's affiliates

15  first to LendingTree, LCC, and then to LendingTree, Inc., it

16  could not also impute LendingTree, LLC's registered agent to

17  LendingTree, Inc.  Consequently, the Court lacks personal

18  jurisdiction over all defendants and this is not a proper

19  forum.

20  The forum is also inconvenient.  The parties are

21  not in Minnesota, no witnesses are in Minnesota, and

22  Minnesota law has no bearing on the outcome of this case.

23  North Carolina is a much more convenient forum given that

24  the defendants are located there and much of the alleged

25  conduct occurred there.

1              I want to address two points that Lehman raises in

2       its opposition.  First, the ResCap case that the Court

3       recently dismissed should not alter that analysis.  Choice

4       of forum is about the location of parties, witnesses, and

5       where the underlying dispute occurred.  It is not about

6       legal theories.  The fact that Lehman asserts the same legal

7       theories as a previous case before this Court does not allow

8       them to pick an inconvenient forum.  The case was dismissed

9       as a result of a settlement before the Court heard any

10      evidence in the case.  This Court simply made a legal ruling

11      on a motion to dismiss which all courts around the country

12      are well equipped to do.  The *ResCap* case simply had not

13      progressed far enough to provide this Court with a material

14      advantage over other courts in resolving this dispute.

15              Second, Your Honor, neither of Lehman's choices of

16      forum should be given any weight.  First, courts in this

17      district give the plaintiff's choice of forum far less

18      deference when the plaintiff does not reside here or the

19      underlying facts did not occur here.  Both of those

20      circumstances are present here.  Thus, Lehman's first choice

21      of forum should receive no deference.

22              Lehman's second choice of forum should receive no

23      deference either.  Here Judge Ericksen's decision in *RFC v.*

24      *Cherry Creek* is instructive.  There ResCap asked to transfer

25      one of its representation and warranty cases back to New

 1    York after filing that case in Minnesota based upon a forum

 2    selection provision in the underlying contract choosing

 3    Minnesota.

 4          The Court explained that the plaintiff's choice of

 5    New York was entitled to "no weight" because the plaintiff's

 6    venue privilege can only be exercised once.  As the Court

 7    stated there, "only that initial choice deserves deference."

 8    So too here, plaintiffs should not get a second bite at the

 9    apple now that it has admitted that Minnesota is an

10    inconvenient forum by informally requesting transfer to New

11    York.

12          For those reasons and the reasons set forth in our

13    papers, we ask the Court to dismiss LendingTree, Inc. and to

14    transfer the case to the Western District of North Carolina.

15          If the Court decides to keep the case, we ask the

16    Court to compel arbitration of Count One and stay the

17    remaining counts.  Lehman has sued on a contract in Count

18    One that contains a binding arbitration provision.  Under

19    controlling Delaware law, Lehman is bound by that provision

20    and must arbitrate that claim.

21          Moreover, the separation agreement vests in the

22    arbitrator the ability to decide whether a claim is

23    arbitrable in the first instance.  Thus, Lehman has to

24    arbitrate its claims.

25          Unless the Court has any questions, that completes

1   my opening presentation and I will reserve anything else for

2   reply.

3               THE COURT:  Thank you, Mr. Corcoran.

4               MR. CORCORAN:  Thank you, Your Honor.

5               THE COURT:  Who wishes to be heard for Lehman

6   Brothers?

7               MR. SLOCUM:  Good morning, Your Honor.  May it

8   please the Court, Joshua Slocum, again of Wollmuth Maher &

9   Deutsch on behalf of Lehman Brothers.  And this forum is

10  rather new to me.  We can't be together in Your Honor's

11  courtroom the way we might like, times being what they are,

12  but in this virtual setting we're still guests in your home

13  and we'll comport ourselves as such.

14              THE COURT:  You are literally guests in my home,

15  actually.

16              MR. SLOCUM:  Pardon me, Your Honor?

17              THE COURT:  You are literally guests in my home

18  because we can't be in our courtroom, so you're all in my

19  home.

20              MR. SLOCUM:  The main premise of LendingTree's

21  motion is that this case has no connection to Minnesota or

22  to this Court.  Because that premise is incorrect, the

23  motion should be denied.

24              Now, it's true that this is a multi-state

25  controversy.  Multi-state controversies are not unusual,

1    especially in the federal courts.  The case will touch on

2    many different states and the laws of many different states.

3            But as I will elaborate, the case has a

4    substantial connection to Minnesota.  It involves two

5    defendants who were both subject to the Court's general

6    jurisdiction.  The law requires no more in order for this

7    Court to exercise jurisdiction over the case, and it makes

8    eminent sense for the Court to do so.

9            Now, as Your Honor knows, Home Loan Center, or

10   HLC, was before this Court for many years in an

11   indemnification action brought by ResCap for losses on

12   mortgage loans that ResCap had bought from HLC.  That

13   culminated in a lengthy trial before Your Honor in 2018.

14           During the same period, Lehman was in a similar

15   boat.  It had filed very similar claims against HLC in the

16   New York Bankruptcy Court.  Now, those claims were a few

17   years behind *ResCap* procedurally because of the time when

18   Lehman settled its underlying mortgage loan liabilities.

19   But included in Lehman's case against HLC were four loans

20   from Minnesota with aggregate losses in excess of $400,000.

21   We submit that those loans are sufficient to create a

22   substantial connection to Minnesota.

23           And although it is true that HLC's breaches were

24   by no means limited to the Minnesota loans, I mean they were

25   breaches from states all around the country, as I mentioned,

 1    this is very much a multi-state controversy, but a

 2    multi-state controversy has to be seated somewhere.

 3           And when this Court entered judgment in favor of

 4    ResCap, LendingTree put HLC into bankruptcy staying Lehman's

 5    case.  In that bankruptcy it was first revealed that HLC had

 6    been woefully undercapitalized.  It had on the order of $5

 7    million of cash and it basically upstreamed the rest of it

 8    to LendingTree.

 9           So ResCap filed suit here to enforce its HLC

10    judgment against LendingTree.  Now, HLC was wholly owned by

11    LendingTree Sub at that time -- defendants call it Tree, LLC

12    in their briefs -- and LendingTree Sub is, in turn, wholly

13    owned and controlled, as I will explain, by LendingTree

14    Parent or Tree-Inc., as defendants call it.  Either is fine

15    with me.

16           The LendingTree defendants filed a very

17    substantive motion to dismiss ResCap's complaint.  It

18    required this Court to take a deep dive into the contracts

19    at issue and the legal doctrines governing the relationship

20    between LendingTree and HLC.  That all happened while Lehman

21    was finalizing its allowed claim into bankruptcy against

22    HLC.

23           The Court considered in that motion many of the

24    same arguments that bring us here today.  The Court denied

25    HLC -- or pardon me -- LendingTree's motion to dismiss in a

1    lengthy and thoroughly-reasoned opinion.  So after obtaining

2    its allowed claim against HLC, Lehman filed its case here as

3    well.

4            This case is in every material respect a carbon

5    copy of ResCap's case.  We pled the exact same three claims

6    in the exact same way they did.  They mentioned that we

7    copied and pasted from their complaint.  We did.  There was

8    no reason to use different verbiage or to plead things in

9    any different way because they are literally the same claims

10   that Your Honor has already considered.

11           Now, the factual and legal issues are the same.

12   Your Honor is not only familiar with them from that *ResCap*

13   case but has decided a number of them.  The defendants are

14   obviously the same as they were in the *ResCap* case.  This is

15   just a different plaintiff alleging the same things.  And

16   just as it did in the *ResCap* case, LendingTree now moves

17   before Your Honor to dismiss or to compel arbitration,

18   making many of the exact same arguments that they made in

19   *ResCap*.  The only real new piece to this motion is that in

20   the alternative LendingTree seeks a transfer to its home

21   forum in the Western District of North Carolina with which

22   Lehman has no contacts at all.

23           So overwhelmingly, as I mentioned, this motion

24   that brings us here today raises issues that Your Honor has

25   already considered very carefully and decided in the nearly

1    identical case that ResCap brought against LendingTree.  And

2    since those two actions are essentially identical, I

3    respectfully propose in my presentation now not to dwell too

4    much on the issues that Your Honor has already decided quite

5    correctly in the *ResCap* case.  I'll tick through them very

6    quickly and then move on to the new issues.  I'll, of

7    course, be happy to address them or to answer any questions

8    if Your Honor has any.

9           There are three main issues that have already been

10   decided.  First, Your Honor has already ruled that

11   LendingTree Sub is subject to general personal jurisdiction

12   in this court because it is a registered agent in the state

13   and therefore, under Eighth Circuit precedent, has consented

14   to jurisdiction.  That means that LendingTree Sub is subject

15   to jurisdiction for any and all claims.

16          Second, Your Honor has already ruled that

17   LendingTree Parent cannot compel arbitration of Count One

18   and get out of this case based on the arbitration clause in

19   the Spin agreement pursuant to which it agreed to assume all

20   of the liabilities of HLC.  Your Honor correctly decided

21   that ResCap was not bound to arbitrate.  Lehman is situated

22   in the exact same way.  There's no difference.

23          And I would just want to pause just for a moment

24   on this arbitration issue before I move on.  When

25   Mr. Corcoran was here at the beginning of this year at oral

1   argument on the motion to dismiss the *ResCap* case, he

2   conceded to Your Honor's question that, "I don't think the

3   arbitration clause would bind a party suing under a

4   successor theory."

5           Now, of course, Mr. Corcoran disputed in that case

6   that ResCap had pled a successor theory, but Your Honor

7   interpreted ResCap's claim as a successor claim, quite

8   rightly we would submit, and so we pled our own successor

9   claim in the exact same way.  Again, there was no reason for

10  us to plead the claim any differently when Your Honor had

11  already considered and carefully addressed the claims that

12  ResCap pled.

13          So third and finally, moving to the last issue

14  that Your Honor has already ruled, and defendants in fact

15  clarified in their reply brief that they don't dispute for

16  the purposes of this motion that HLC's jurisdictional

17  contacts with Minnesota will be imputed to them due to their

18  domination and control of HLC.  So that means that if HLC

19  would be subject to jurisdiction here, so would the

20  LendingTree defendants on the issue of specific

21  jurisdiction.

22          So I think what remains of this motion are three

23  main issues that I'll address.  One, does this Court have

24  general personal jurisdiction over LendingTree Parent.  It

25  has jurisdiction over the Sub.  If it has jurisdiction over

1    the Parent, then that settles the jurisdictional question.

2              Two, do HLC's contacts with Minnesota in relation

3    to this lawsuit give rise to specific personal jurisdiction

4    in this case; and if so, that would be imputed to the two

5    defendants here and they would both be subject to the

6    Court's jurisdiction.  As to these issues one and two, Your

7    Honor only need to cite one of them.  Either one is

8    sufficient to give rise to jurisdiction.

9              And three, should this case be transferred and, if

10   so, where.  I'll take these in order.  I'll start with issue

11   number one which is general jurisdiction of LendingTree

12   Parent.  The Court has general jurisdiction over LendingTree

13   Parent because it dominates and controls its subsidiary we

14   call LendingTree Sub, which has consented to jurisdiction.

15   The two entities are considered one and the same for

16   jurisdictional purposes.

17             Now, as I mentioned, this Court already held,

18   defendants don't dispute, that the jurisdictional contacts

19   of HLC, which is a subsidiary of LendingTree Sub, or was,

20   and a step removed from LendingTree Parent, can be imputed

21   to LendingTree Parent.  It stands to reason that the context

22   of LendingTree Sub, which sits between those two entities,

23   can be imputed up the chain as well.  And that conclusion is

24   confirmed by a number of undisputed facts which we laid out

25   in our brief.  There's been no counterevidence whatsoever.

1    These facts are in fact drawn from their own SEC filings, so

2    there's no dispute whatsoever.  I'll highlight some of them.

3          LendingTree Parent wholly owns LendingTree Sub.

4    There's no dilution of ownership whatsoever.  They share the

5    exact same offices.  In fact they have the exact same people

6    running both companies.  They have the same CEO, the same

7    president, and the same CFO.  And we've submitted their

8    employment agreements together with our motion in which it's

9    demonstrated that while they are nominally employed by

10   LendingTree Sub, they are compensated with equity in

11   LendingTree Parent; and their employment agreements

12   expressly task these top executives with acting on behalf of

13   what they call "the company group."

14         So there's really no daylight between these two

15   entities.  They share the same website.  They consolidate

16   their financials.  And LendingTree Parent, which is the

17   public company and has access to capital markets and the

18   like, has unconditionally guaranteed, unconditionally

19   guaranteed, LendingTree Sub's debts under its credit

20   facility that it uses for its operations.

21         LendingTree has not disputed any of these facts by

22   affidavit or otherwise.  Instead, in its reply brief and

23   just now, LendingTree makes a legal argument.  It maintains

24   that the jurisdictional veil-piercing analysis only imputes

25   to the parent company the subsidiary's activity in the forum

1   related to the transaction at issue.  That's on pages 4 and

2   5 of their brief.  In other words, they say that this veil-

3   piercing doctrine is limited to specific jurisdiction, not

4   general jurisdiction.  That's incorrect.  A case in this

5   district illustrates the point, but we didn't have a chance

6   to brief it because this issue was raised in their reply

7   brief.  But in the *Bielicki versus Empire Stevedoring* case

8   Judge Doty held that the veil-piercing analysis can impute

9   the subsidiary's general jurisdiction to the parent.

10          There are two relevant decisions in that case, and

11  the first one -- I'll give you the cite because, again, we

12  didn't have an opportunity to brief it.  741 Federal

13  Supplement 758.  In that case Judge Doty pierced the veil of

14  a subsidiary for jurisdictional purposes and held that its

15  contacts to Minnesota were imputed to its Canadian parent

16  company even though the cause of action arose in

17  Pennsylvania and had nothing to do with the subsidiary's

18  contacts in Minnesota.

19          Now, in that first decision Judge Doty did not

20  initially address general jurisdiction; but in a second

21  decision in that case, which is 765 Federal Supplement 991,

22  Judge Doty amended his prior decision and apparently

23  corrected that decision to hold that both defendants,

24  including the Canadian parent company, were subject to the

25  Court's general jurisdiction and he denied motion to

1    dismiss.

2           And again, the only basis for exercising any

3    jurisdiction, including general jurisdiction, over the

4    Canadian parent company was its domination and control with

5    the Minnesota subsidiary.  Again, this was a claim that

6    arose in Pennsylvania.

7           So to make their argument to the contrary,

8    defendants cite two cases from other jurisdictions.  One is

9    *Mesler* from the California Supreme Court applying California

10   law, and the other is *Lumpkin* from the Seventh Circuit.  But

11   neither case speaks to this issue at all.  Neither case has

12   anything whatsoever to do with personal jurisdiction.  Both

13   of defendants' cases address an entirely separate question:

14   Namely, whether a settlement and release with a defendant

15   also operates as a release of an alleged alterego of the

16   settling defendant.  In both cases the courts found that it

17   does not release the alterego unless the release states

18   otherwise.  Again, that has just nothing to do with

19   jurisdiction.

20          So with that, I'll move to issue two, which is

21   specific jurisdiction of HLC.  I'll turn briefly to this one

22   because, again, defendants don't dispute, at least for the

23   purposes of this motion, that HLC's jurisdictional contacts

24   are imputed to them.  Those contacts would include HLC's

25   origination of faulty mortgages in Minnesota which directly

1    contributed to its indemnification liability to Lehman.

2            But defendants argue that the allowed claim was

3    based on HLC's sale of loans from California to a bank

4    located on the east coast.  They suggest that the fact that

5    some of those loans may have originated in Minnesota has no

6    bearing on Lehman's claim.  But that's wrong.  It's too

7    narrow.  The location of the properties in these mortgage-

8    related disputes and the location of the borrowers was of

9    central importance to Lehman's claims against HLC.  The

10   claims were for breaches of representations and warranties.

11   Those reps and warranties were breached by

12   misrepresentations about things like where the borrower

13   worked, how much money they made, their credit worthiness,

14   whether they planned to live in the house, and so forth.

15           The losses that were sustained by Lehman were

16   caused by default on those mortgages.  So for these

17   Minnesota mortgages, the locus of all these facts is

18   Minnesota.  Now of course there were mortgages in other

19   states as well.  This is a multi-state controversy, but it

20   has a substantial connection to Minnesota.

21           So we submit that HLC's origination of mortgages

22   in Minnesota with Minnesota borrowers, Minnesota real

23   estate, gave rise to a six-figure liability to Lehman,

24   creates that substantial connection; and at a minimum, we

25   submit that it satisfies the minimal prima facie standard on

1     this motion to dismiss.  In our brief we cited the *Burger*

2     *King* case from the Supreme Court which explained that even

3     one transaction can be sufficient to give rise to specific

4     jurisdiction if it creates a substantial connection with the

5     forum, and we submit that these loans satisfy that standard.

6          So moving on from jurisdiction, the -- if Your

7     Honor finds either general or specific jurisdiction, then

8     Your Honor can hear the case.  And then all that remains is

9     whether to exercise Your Honor's discretion to transfer.

10    And courts emphasize at the outset that a motion to transfer

11    should not be freely granted.  It should -- the movant here,

12    which is LendingTree, bears a heavy burden to show that the

13    factors strongly favor a transfer.

14         The parties are broadly in agreement as to what

15    the factors are.  There were a couple of differences that I

16    will address a bit later owing to the fact that we submit

17    that Section 1412 governs the transfer analysis because this

18    is a related to bankruptcy case and not Section 1404,

19    although Section 1404 is certainly persuasive so far as the

20    overlap.

21         But I'll start with the convenience of witnesses.

22    LendingTree has invoked this ground as a reason to transfer.

23    They say all of our people are in North Carolina.  None of

24    them are in Minnesota.

25         But to start with, the *Bae Systems* case, which we

1    cite, emphasizes that the focus of this factor is on

2    nonparty witnesses since it is generally assumed that

3    witnesses within the control of the party calling them, such

4    as employees, will appear voluntarily in a foreign forum.

5    Defendants have said nothing at all about nonparty

6    witnesses.  And while this is not a case I cited in our

7    brief, Your Honor made the exact same observation in the

8    *Valspar* case.

9            So in addition, as the movant, it is defendants'

10   burden on this convenience of the witnesses point to clearly

11   specify the essential witnesses to be called.  To name them.

12   To make a general statement about what their testimony will

13   cover.  That permits the Court to carry out its duty to

14   examine the materiality and importance of the anticipated

15   witness's testimony and then determine their accessibility

16   and convenience to the forum.  Again, I'm paraphrasing from

17   the *Bae Systems* case that we cited.

18           THE COURT REPORTER:  Excuse me.  Could I have the

19   other attorney mute, please?  Could you please mute?

20           THE COURT:  Mr. Corcoran, could you mute, please?

21           THE COURT REPORTER:  Thank you.

22           MR. SLOCUM:  Okay.  I hope I was coming through

23   sufficiently clearly.

24           THE COURT REPORTER:  I think we are okay.

25           MR. SLOCUM:  Okay.  So I was just mentioning that

1      the Court has to know who the witnesses are and know what

2      they are going to testify about in order to assess whether

3      these witnesses are actually all that important to the case

4      and whether they will be able to come to Minnesota.

5              Defendants have not done that.  They have not

6      identified in their briefs, or here today, one single

7      witness, either a party or nonparty witness, let alone one

8      that would be inconvenienced by a Minnesota forum.  They

9      have not stated what any witness's testimony would cover so

10     that the Court can confirm that it's material evidence and

11     not duplicative of other evidence.  This is simply, in our

12     submission, a complete failure to present the type of

13     evidence that it is their burden to come forward with on

14     this motion.

15             So I'll turn now to the convenience of the

16     parties.  Now, the convenience of the parties can involve

17     witnesses as well insofar as it involves costs.  And while

18     it's true that LendingTree is located in North Carolina,

19     nowhere in their briefs, or in counsel's presentation just

20     now, have they come forward with any showing that

21     LendingTree would actually be inconvenienced by litigating

22     in Minnesota.  It's not cost prohibitive for LendingTree.

23     It's not even material for them.  They are a multi-billion

24     dollar enterprise with operations all over the place.

25             By stark contrast, Lehman is no longer the

1      investment banking giant that it once was.  All that's left

2      of it is the plan administrator winding up the estate for

3      the benefit of its creditors; and when that administration

4      is complete, it will cease to exist.  Now, these creditors

5      have been waiting for 12 years to be paid on their claims so

6      time is a little bit of the essence and efficiency is

7      important.

8              As to the location of documents, they noted in

9      their brief, but recent decisions including by Your Honor in

10     this district have increasingly recognized that this factor

11     does not have any real significance.  We cited the *CVS* case

12     in our brief.  Your Honor made the same observation in

13     *Valspar*.  There's no reason that this factor should carry

14     any weight.

15             This is not a case about whether a signature is

16     authentic.  The contracts that are in dispute here have been

17     on file with the SEC for many years.  There's no dispute

18     whatsoever about their authenticity.  It's just about the

19     application and what they mean.

20             So I would submit that the convenience of the

21     parties element is either neutral or, if anything, weighs

22     somewhat against the transfer.  While it's true that

23     Minnesota -- Lehman doesn't have operations in Minnesota,

24     its mortgage team is based in Denver and in Kansas, which is

25     at least closer to Minnesota than it is to North Carolina or

1    the east coast.

2           So the final element is the interests of justice

3    and with these, we submit, weigh strongly against a

4    transfer, not strongly in favor of a transfer, because this

5    prong really boils down to efficiency.  Efficiency in the

6    administration of Lehman's estate and for the Court.  So one

7    of the driving reasons why this forum makes sense is Your

8    Honor's familiarity with the facts and legal issues in this

9    case.  Your Honor has grappled with the contracts pursuant

10   to which LendingTree assumed HLC's liabilities.

11          For example, in their reply brief LendingTree, and

12   of course just today as well, LendingTree argues that only

13   having decided preliminary motions is not enough.  They

14   point out that the *Steward versus Up North Plastics* case

15   that we cite is more advanced procedurally than this case.

16   But they don't mention the *Alternative Pioneering Systems*

17   case that we also cite.  There, the case was no more

18   advanced than this one; and it did not involve, as we have

19   here, a closely-related case where the Court had dealt with

20   important issues of fact and law that identically overlap.

21   The *Alternative Pioneering Systems* court was ruling on

22   preliminary motions.  Those were motions to dismiss and for

23   a preliminary injunction.  Yet it denied the transfer in

24   part based on its own familiarity with the parties' claims.

25          So transferring this case to a new court, we

1    submit, that's unfamiliar with the contracts and the facts

2    of this case, will undoubtedly give rise to a steep learning

3    curve for the new court, further delay with another round of

4    preliminary motion practice; and that would, in turn, delay

5    the wind up of Lehman's estate and prejudice its creditors.

6            So with that, we submit that the motion to

7    transfer should be denied.  This is a convenient forum.

8    It's certainly as convenient or more convenient than North

9    Carolina in every way that really counts for the courts.

10           Now, I want to address just at the end the

11   question of if Your Honor decides to transfer the case, and

12   again, we submit that you should not do so, but in that

13   event, as between North Carolina and New York, New York

14   would be a more convenient forum.

15           So there's been no dispute here that Your Honor

16   has the power to transfer the case to New York, and the

17   Bankruptcy Court there would have jurisdiction over both

18   defendants.  We pointed that out in our brief and they have

19   not disputed it in their reply brief or today.  So it would

20   be a proper forum in terms of jurisdiction of venue.

21           And Section 1412 carries a "strong presumption" in

22   favor of where the bankruptcy is located.  That's New York.

23   Now, that presumption is offset by the choice of the

24   plaintiff's forum here, which is Minnesota; but if Your

25   Honor does determine to transfer, we think that that factor

1    should carry some weight.

2           The bankruptcy judge in -- excuse me, the

3    bankruptcy judge in New York, Judge Chapman, has some

4    familiarity with this case because it was her that presided

5    over Lehman's original indemnification action against HLC,

6    and she is also overseeing the administration of Lehman's

7    estate generally.

8           LendingTree says, Well, Lehman should not get a

9    second bite at the apple regarding the choice of forum.

10   According to them, Lehman filed suit in Minnesota.  It took

11   its shot, so for that reason alone the Court should ignore

12   New York as a potential forum and pick between Minnesota and

13   North Carolina.  And we submit that that's incorrect and

14   that it's not true that just because Lehman is not based in

15   Minnesota that its choice is entitled to no deference.  Even

16   the cases that they cite say it's entitled to less

17   deference, but less deference is not no deference.

18           And -- but they have this one-and-done theory in

19   which they raised in their reply brief -- and we'd note that

20   the *Groesbeck versus Sgarlato Med* case -- I'll spell that

21   name.  S-G-A-R-L-A-T-O, and the cite is 2011 WL 383701.

22   There, it was a case like this where the plaintiff had

23   originally filed suit in Minnesota but was from Utah; and in

24   the course of that motion, having lost his original choice

25   of forum, said, Well, okay, we'll just transfer it to Utah

1    where I live.

2              And the Court said Groesbeck's initial choice of

3    Minnesota is entitled to little deference because he is not

4    a resident of this state nor did the underlying events occur

5    here.  However, Groesbeck now advocates transfer to the

6    District of Utah as a resident of that forum.  As such, as

7    between the District of Utah and the Northern District of

8    the California, which is where the defendants wanted to send

9    the case, the Court will defer to Groesbeck's choice.  This

10   action is transferred to the District of Utah.

11             So in the event Your Honor were to disagree with

12   me that this forum is proper -- and again, we submit that it

13   is proper -- then Lehman is at home in New York and New York

14   would be an appropriate forum and so the case should be

15   transferred there.  With that --

16             THE COURT:  Just to be clear, Mr. Slocum, that

17   case you just cited, that's a Minnesota District Court case,

18   am I correct, from 2011?

19             MR. SLOCUM:  That is correct, Your Honor, yes.

20             THE COURT:  Okay.  Very good.

21             All right.  Then we'll turn it over to

22   Mr. Corcoran, please.

23             MR. CORCORAN:  Thank you, Your Honor.  And sorry

24   for not muting my line before and creating some background

25   noise.

1          Um, I just want to respond to a few of the points

2     that Mr. Slocum raised.  I'll start with the last one he

3     raised.  That case is from 2011.  The *RFC* case that Judge

4     Ericksen decided relied on a Supreme Court case called

5     *Atlantic Marine* contract [sic] that was decided in 2013.

6     That case resolved a split among the courts as to what to do

7     with a case that was filed in an improper forum based upon a

8     forum selection clause.  Various courts have said you could

9     dismiss it for lack of subject matter jurisdiction.  You

10    could dismiss it under 1391 as an improper forum.

11         And the Supreme Court there resolved that dispute

12    and said 1391 defines what is a proper forum, and a case

13    that is filed in violation of a forum selection clause in a

14    proper forum under 1391 is ultimately properly forumed in

15    that venue.  And what to do is is to transfer the case to

16    where the forum selection clause sits.

17         The Supreme Court said as a result of the first

18    choice that the plaintiff -- or the parties to the contract

19    had exercised their venue privilege, and that all of the

20    factors other than the public interest factor are

21    conclusively in favor of transfer to the selected forum.

22         So that decision was interpreted by Judge Ericksen

23    to say, after the 2011 decision that was referenced by

24    Mr. Slocum, that the Supreme Court had found that plaintiffs

25    only get one choice; and once they have exercised their

1    venue privilege, thereafter they are not entitled to a

2    second decision.

3           So we would -- it is our position that that

4    decision has been abrogated by the Supreme Court's decision

5    in *Atlantic Marine*; and Judge Ericksen, in looking at the

6    same issue afterwards, ruled that the plaintiff's second

7    choice of forum is not entitled to any deference at this

8    juncture.

9           Mr. Slocum also said that the defendants did not

10   identify which witnesses would need to testify and what they

11   would need to testify about to demonstrate an inconvenience.

12   Your Honor, that is apparent on the face of the complaint

13   itself.  It is apparent in the filing that they included in

14   their opposition, which is the employment contracts that

15   they are relying on.  It is -- Mr. Lebda, the CEO of

16   LendingTree, LLC, will be a focal point of discovery.  They

17   want to have him testify about their theories as to whether

18   or not he had control over the entities.  They attached

19   other employment contracts of individuals in Charlotte that

20   they contend that they will rely on to establish that there

21   is a domination and control sufficient to pierce the

22   corporate veil.

23          So while it's true we did not include what

24   testimony we would expect from them, it's apparent on the

25   face of their complaint that they intend to rely on that

1      testimony to establish that LendingTree, Inc. and

2      LendingTree, LLC are liable for the obligations of HLC under

3      the allowed claim.

4             I also want to address the specific jurisdiction

5      point about HLC.  There's two points there, Your Honor.

6      First, just as a general matter, you can't bootstrap

7      specific jurisdiction.  So whether or not this Court would

8      have specific jurisdiction over a dispute between HLC and

9      Lehman's banking affiliate with respect to those $400,000

10     loans, it would not give this Court specific jurisdiction

11     over all of the other related claims.  There is no such

12     thing as related to specific jurisdiction.  There is either

13     general jurisdiction or specific jurisdiction.

14            And so to the extent there was jurisdiction over

15     that narrow set of loans that were originated, that does not

16     provide the Court with specific jurisdiction broader than

17     that.  More importantly, they don't seek to litigate those

18     claims in their lawsuit.  It is the plaintiff's position

19     that the allowance of the proof of claim by the Northern

20     District of California Bankruptcy Court conclusively

21     establishes HLC's liability.  And although they are seeking

22     as a declaration that LendingTree has an obligation to make

23     up the difference between what they received on account of

24     their claim in HLC's bankruptcy and the amount of the

25     allowed claim, there is no argument that they want to

1    litigate the underlying claims here.

2             So that's not really material to the dispute, Your

3    Honor.  And so we don't think that it's a basis to establish

4    a convenient forum here since those issues are not part of

5    their complaint as alleged.  And so we do not think that

6    that is a proper way to establish a convenient forum.

7             Finally, I just want to address a couple of points

8    to make the record clear.  Mr. Slocum was saying certain

9    things that Your Honor decided, certain positions that the

10   defendants have taken in this lawsuit and the other lawsuit.

11   We do not agree that you've decided any of the issues

12   definitively.  You have decided for purposes of a motion to

13   dismiss that ResCap adequately alleged facts that would

14   allow them to press their claim before this Court to try to

15   prove, if they came forth with evidence, that they could

16   pierce the veil.

17            This Court has not heard any of that evidence.

18   This Court has not made any evidentiary findings.  Like the

19   case that Mr. Slocum cited, there wasn't a preliminary

20   injunction where there was evidence heard and issues

21   decided.  All you have decided is whether or not the

22   complaint is sufficient on its face to allege claims.

23            We do not concede that HLC's contacts were

24   sufficient to be -- or I'm sorry -- that LendingTree, Inc.

25   or LendingTree, LLC's activities were sufficient to impute

1      the contacts of HLC.  We assumed it for purposes of this

2      argument because we do not believe that HLC's contacts,

3      whether or not they are imputed, are sufficient for this

4      Court to exercise specific or general jurisdiction over the

5      claims asserted in the lawsuit.

6              If Your Honor doesn't have any other questions, we

7      would ask Your Honor to grant the motion, dismiss

8      LendingTree, Inc., and transfer the case to the Western

9      District of North Carolina.

10             MR. SLOCUM:  Your Honor, may I be heard for, you

11     know, 30 to 45 seconds on those issues?

12             THE COURT:  Of course, yes.

13             MR. SLOCUM:  Thank you.  I will just address two

14     of them.  Taking them in order, there was talk about whether

15     the *Atlantic Marine* case overruled *Groesbeck*.  We disagree.

16     This is not a case in our submission where venue was

17     improper.  This is not a case where there was a forum

18     selection clause.  This analysis, this discretionary

19     transfer analysis, I think weighs -- is guided by Your

20     Honor's discretion.  And so the amount of weight to give a

21     particular factor can be guided by past cases but should be

22     guided in the exercise of discretion on the specific facts

23     of the case.  And so we don't think that that is

24     controlling.

25             And second, on the specific jurisdiction question,

1     Mr. Corcoran said that it relates only to a narrow set of

2     loans and Your Honor could only exercise jurisdiction over

3     some loans and not others, but that's not right.  Multi-

4     state controversies have to be heard somewhere and they

5     can't be split up among the various states where those

6     connections occur.

7          The Supreme Court has said that you need a

8     substantial connection to the forum.  So long as the case

9     has a substantial connection to the forum, based on whatever

10    part of the case has those contacts, that is sufficient for

11    the Court to hear the whole case.

12         That is all, Your Honor.  I have nothing more.

13         THE COURT:  Okay.  This has been very nicely

14    briefed and argued and the Court will study it carefully and

15    take it under advisement.  Court is adjourned.

16         MR. SLOCUM:  Thank you, Your Honor.

17         OR. CORCORAN:  Thank you, Your Honor.

18         (Court adjourned at 10:16 a.m.)

19                    *      *      *

20

21         I, Carla R. Bebault, certify that the foregoing is

22    a correct transcript from the record of proceedings in the

23    above-entitled matter.

24         Certified by:   s/Carla R. Bebault
                           Carla Bebault, RMR, CRR, FCRR
25