# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lehman Brothers Holdings Inc., | Case No. 20-cv-1351 (SRN/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| LendingTree, LLC and LendingTree, Inc., | |
| Defendants. | |

Adam M. Bialek, Brant Kuehn, Christopher J. Lucht, James N. Lawlor, Joseph Francis Pacelli, Joshua Slocum, William A. Maher, Wollmuth Maher & Deutsch LLP, 500 5th Ave., 12th Floor, New York, NY 10110; John B. Orenstein, Greene Espel PLLP, 222 S. 9th St., Ste. 2200, Minneapolis, MN 55402, for Plaintiff.

Matthew Corcoran, Jones Day, 325 John H. McConnell Blvd., Ste. 600, Columbus, OH 43215; Carl E. Black, Jones Day, 901 Lakeside Ave., North Point, Cleveland, OH 44114; Kelly G. Laudon and Matthew Enriquez, Jones Day, 90 S. 7th St., Ste. 4950, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss or, in the Alternative, to Transfer Venue or to Compel Arbitration [Doc. No. 23] filed by LendingTree, LLC and LendingTree, Inc. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court grants Defendants' motion in part.

## I.    BACKGROUND

This lawsuit for declaratory relief brought by Plaintiff Lehman Brothers Holdings Inc. ("Lehman") is related to proceedings in two United States bankruptcy courts:  (1)

Lehman's 2008 chapter 11 action in the Southern District of New York Bankruptcy Court ("SDNY Bankruptcy Court"), along with its 2016 adversary action against non-party Home Loan Center Inc. ("HLC") in the SDNY Bankruptcy Court; and (2) HLC's 2019 chapter 11 action in the Northern District of California ("California Bankruptcy Court"), which was later converted to a chapter 7 action. (Compl. [Doc. No. 2] ¶¶ 15, 20–21.)

In this lawsuit, Lehman, on behalf of its assignor and affiliate, Lehman Brothers Bank ("LBB"), seeks to enforce a right of payment in the form of an allowed claim (the "Allowed Claim"), that the California Bankruptcy Court granted Lehman in HLC's bankruptcy proceedings. (*Id.* ¶ 2.) Lehman contends that Defendants are responsible for HLC's obligations, and therefore Lehman seeks a declaratory finding here that Defendants are liable for the amounts due under the Allowed Claim. (*Id.* ¶¶ 1, 82–97.)

To provide greater context for Defendants' instant motion, the Court will first describe the underlying business transactions and relationships between Lehman and HLC, and HLC and Defendants, as well as the bankruptcy proceedings noted above, and two lawsuits filed in Minnesota against HLC and Defendants, respectively.

### A.    Relationship Between LBB and HLC

As a secondary market mortgage loan purchaser, LBB had been in the business of buying residential mortgage loans from mortgage originators and sellers such as HLC, and selling them in pools of other mortgage loans to other entities, including residential mortgage backed securities ("RMBS") trusts. (*Id.* ¶¶ 3, 45–46.)

HLC is a California corporation with its principal place of business in Charlotte, North Carolina. (*Id.* ¶ 20.) It is a "second generation Internet-based direct mortgage

2

lender" that was incorporated in September 2000 under the name FreeApprovalFinder.com, Inc.  (*Id.*)  In 2002, it changed its name to HLC.  (*Id.* ¶ 26.)

Plaintiff alleges that HLC's sales of residential mortgage loans to LBB[1] were governed by written agreements. (*Id.* ¶¶ 47–48.)  In those agreement, HLC made a number of representations and warranties about the quality of its loans, including representations regarding borrower credit information, loan documentation, and collateral.  (*Id.* ¶ 40.)  Pursuant to the parties' agreements, LBB retained the right to seek indemnification from HLC for any losses that LBB sustained as a result of defects in HLC's loans, including defects concerning the quality and characteristics of the loans.  (*Id.* ¶¶ 3, 48–50, 69, 71– 72.)  Plaintiff also alleges that pursuant to the parties' agreements, HLC's obligations extended to LBB's "successors and/or assigns" such as Lehman.  (*Id.* ¶¶ 40, 52.)

Lehman's purported losses and liabilities derive from its subsequent sale of the HLC loans to third parties such as the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and several residential mortgage backed securities ("RMBS") trusts.  (*Id.* ¶ 3.)   Lehman made various representations to these third parties about the quality of the loans, similar to the representations that HLC had made to LBB.  (*Id.*)  After those third parties "discovered that the mortgage loans breached certain . . . [of Lehman's] representations and warranties,"

---

[1]     Although Plaintiff alleges that HLC's relationship was with LBB's affiliates, for purposes of this motion, (Compl. ¶¶ 27, 40), the Court simply refers to the affiliates as "LBB."

the third parties brought claims against Lehman for losses suffered on the allegedly defective mortgage loans. (*Id.*)

In 2008, Lehman filed a voluntary chapter 11 bankruptcy action in the SDNY Bankruptcy Court. (*Id.* ¶ 15.) In early 2014, the SDNY Bankruptcy Court approved settlements between Lehman and Fannie Mae as well as between Lehman and Freddie Mac. (*Id.* ¶¶ 3, 15.) In March 2018, a majority of the RMBS claims were also resolved. (*Id.* ¶ 3.) Lehman asserts that the settlements between it and these third parties triggered Lehman's indemnification claims pursuant to the agreements between LBB and HLC. (*Id.* ¶¶ 3; *see id.* ¶¶ 47–72.)

### B.    HLC's Relationship with Defendants

An understanding of the relationship between HLC and Defendants LendingTree, Inc., ("LendingTree Parent"), and its subsidiary LendingTree, LLC ("LendingTree Sub") provides further context regarding the instant motion. Lehman alleges that in May 2003, LendingTree Sub (then known as LendingTree, Inc.) entered into an Agreement and Plan of Merger with IAC/InterActiveCorp ("IAC") (then known as USA Interactive) and Forest Merger Corp. (*Id.* ¶ 6.) Under the Agreement, IAC acquired full ownership of LendingTree Sub, which changed its name to Tree, LLC in December 2004. (*Id.*)

Lehman further alleges that in 2004, LendingTree Sub acquired HLC, which was incorporated in California and in the business of originating residential mortgage loans and selling the loans to secondary market purchasers. (*Id.* ¶¶ 7–8.) Lehman claims that HLC operated as a wholly owned subsidiary of LendingTree Sub, which, in turn, is now a wholly owned subsidiary of LendingTree Parent. (*Id.* ¶ 7.) After the acquisition, Lehman alleges,

LendingTree Sub operated its lending business through HLC, which originated mortgage loans and sold them to secondary market purchasers such as LBB. (*Id.* ¶ 27.)

Douglas Lebda is the founder of the "LendingTree" business. (*Id.* ¶ 7.) He is also the chairman and chief executive officer of LendingTree Parent. (*Id.*) Lehman alleges that at all relevant times, Lebda controlled both LendingTree Sub and HLC. (*Id.*) Lehman further alleges that after HLC's acquisition, LendingTree Sub "controlled every aspect of HLC's business." (*Id.* ¶ 8.) In particular, Lehman asserts that LendingTree Sub "caused HLC to continue to sell loans to purchasers in the secondary market, including to [Lehman]," and "guaranteed the funding critical to the LendingTree Loans business." (*Id.*)

In August 2008, LendingTree Sub "spun off" from IAC, at which time LendingTree Parent (then Tree.com, Inc.) was incorporated and became the parent of LendingTree Sub (*Id.* ¶ 9.) Lehman alleges that as part of the "spin-off," memorialized in the Separation and Distribution Agreement (the "Spin Agreement"), LendingTree Parent "expressly agreed to assume all of HLC's liabilities, including those related to 'LendingTree Loans.'" (*Id.* ¶ 30; *see id.* ¶¶ 9, 33; Ex. 2 (Spin Agmt.) to Compl.)

Lehman alleges that by 2011, HLC faced a growing number of repurchase demands from purchasers based on alleged misrepresentations that HLC had made regarding the credit quality of mortgage loans it had sold in the secondary market. (Compl. ¶ 10.) In response to the repurchase demands, Lehman alleges, "Defendants caused HLC to sell all of its operating assets, rendering it a mere shell that would conduct no further business, and whose principal activity would be distributing cash to Defendants and defending the claims for which Defendants were co-liable." (*Id.*)

5

In mid-2019, HLC filed for bankruptcy in the California Bankruptcy Court shortly after this Court entered judgment against HLC in a different lawsuit in this Court (discussed in greater detail below) that also dealt with losses and liabilities incurred by a plaintiff based on defective loans that HLC had sold to the plaintiff's predecessor.  (*Id.* ¶ 4.)

When HLC filed for bankruptcy in California, it was also defending a 2016 adversary proceeding for indemnification that Lehman had brought against it in the SDNY Bankruptcy Court.  (*Id.* ¶¶ 5, 11.)  The SDNY Bankruptcy Court stayed the adversary proceeding when HLC filed for bankruptcy, and Lehman then filed a proof of claim in HLC's bankruptcy action in the California Bankruptcy Court.  (*Id.* ¶ 5.)  Lehman and HLC's chapter 7 trustee settled the claim for $13.3 million.  (*Id.* ¶¶ 2, 5, 14; *see* Order Authorizing Compromise of Claim 20, *In re Home Loan Ctr., Inc.*, 5:19-bk-51455 (MEH) (Bankr. N.D. Cal. June 11, 2020).)  This is the allowed claim that Lehman seeks to enforce here against Defendants (the "Allowed Claim").  (Compl. ¶ 2.)

### C.   *Residential Funding Co. v. Home Loan Ctr., Inc.*, **14-cv-1716 (SRN/HB), and** *ResCap Liquidating Tr. v. LendingTree, LLC*, **19-cv-2360 (SRN/HB)**

Lehman's Complaint in this action also contains allegations regarding two different lawsuits filed in this Court.  (*See id.* ¶¶ 4, 11.)  In late 2013, the predecessor of ResCap Liquidating Trust ("ResCap"), a Minnesota-based company known as Residential Funding Company, LLC ("RFC"), filed an indemnification lawsuit against HLC in Minnesota state court.  (*Id.*)  RFC sought recovery for the losses and liabilities that it had subsequently incurred based on the allegedly defective loans that HLC had sold to RFC. (*Id.*)  The case was removed to this Court in 2014, and ResCap was later substituted for RFC as the

plaintiff.  (*Id.* ¶ 11.)  Like Lehman, RFC was in the business of buying residential mortgage loans on the secondary market from entities such as HLC, and pooling them together with other mortgage loans to sell to RMBS trusts or to whole loan purchasers.  *See ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-cv-2360 (SRN/HB), 2020 WL 1317719, at *1 (D. Minn. Mar. 20, 2020).  In November 2018, a jury found HLC liable for ResCap's indemnification claim, and in June 2019 this Court entered judgment in favor of ResCap, and against HLC, for approximately $68.5 million.  (Compl. ¶ 4.)

As previously noted, one month later, in July 2019, HLC filed for chapter 11 bankruptcy in the California Bankruptcy Court.  *ResCap*, 2020 WL 1317719, at *2.  With its bankruptcy filing, HLC disclosed for the first time that it had no more than approximately $5.4 million in cash.  (Compl. ¶ 12.)

In order to collect its judgment, ResCap then filed suit in this Court against LendingTree Parent and LendingTree Sub seeking declaratory relief, asserting that they were liable for the underlying judgment against HLC.  *Id.*  ResCap claimed that the defendants controlled HLC at all relevant times, that LendingTree Parent expressly assumed HLC's relevant liabilities and was therefore liable as HLC's successor, and that the defendants were both liable as alter egos of HLC under California law.  *Id.*

In October 2019, the defendants moved to dismiss for lack of jurisdiction, failure to state a claim, or in the alternative, they sought to compel arbitration on one of the claims, while staying litigation on the two others.  *ResCap*, 2020 WL 1317719, at *1. The Court denied the motion, finding that it had general personal jurisdiction over LendingTree Sub because LendingTree Parent had consented to personal jurisdiction by registering to do

business in Minnesota, which included registering a Minnesota agent to accept service of process. *Id*. at *1, *5–6 (relying on *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1999–2000 (8th Cir. 1990) ("The whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts.")). The Court also concluded that it had general personal jurisdiction over both defendants because the contract between RFC and HLC contained a forum-selection clause requiring the parties to submit to the jurisdiction of this Court, and ResCap had sufficiently pleaded that the forum-selection clause bound both defendants because of their respective relationships with HLC and with each other. *Id*. at *6–8. Additionally, the Court held that "the nature, quality, and quantity of the defendant[s'] contacts with the forum, and the relation of those contacts to the cause of action," were sufficient to exercise specific personal jurisdiction over the defendants, as ResCap had plausibly alleged the defendants' dominion and control over HLC when HLC sold over 6,200 loans to RFC in Minnesota. *Id*. at *11–13.

### D.    This Action and Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue or to Compel Arbitration

#### 1.    This Lawsuit

As noted, in June 2020, Plaintiff, in its capacity as Lehman's bankruptcy plan administrator, filed this action for declaratory relief against LendingTree Parent and LendingTree Sub to enforce the Allowed Claim that Lehman was granted in HLC's bankruptcy. (Compl. ¶¶ 5, 23.) Lehman contends that HLC's obligations to Lehman, as fixed in the Allowed Claim, are also enforceable against Defendants. (*Id.*)

Plaintiff asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C.

§ 1334(b) because this lawsuit is related to Lehman's chapter 11 action in the SDNY

Bankruptcy Court, as Lehman brings suit here to recover amounts owed to its bankruptcy

estate.  (*Id.* ¶ 23.)  Lehman further alleges that Defendants consented to the Court's

personal jurisdiction by appointing an agent for the receipt of service of process in

Minnesota.  (*Id.* ¶ 24.)

Concerning venue, Lehman asserts that venue is proper here under 28 U.S.C. § 1391

for the following reasons:  (1) all Defendants are subject to the Court's personal

jurisdiction; (2) the cause of action arose, in part, in Minnesota because certain of the loans

HLC sold to Lehman originated in Minnesota; (3) LendingTree Parent expressly agreed to

indemnify HLC for repurchase and warranty liabilities associated with HLC's loans; and

(4) litigating the case here would be convenient for the parties and witnesses in light of the

*ResCap v. LendingTree* matter, which was substantially similar to this lawsuit.  (*Id.* ¶ 25.)

In lieu of filing an answer to the Complaint, Defendants filed the instant motion,

moving to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue

or to compel arbitration.

## 2.    Parties' Arguments

Citing Federal Rule of Civil Procedure 12(b)(2), Defendants argue that the Court

lacks personal jurisdiction over them because they are not "at home" in Minnesota.  (Defs.'

Mem. [Doc. No. 25] at 2, 8–9.)  They are neither incorporated here, nor do they maintain

their principal place of business here.  (*Id.*)  While they acknowledge that LendingTree Sub

has appointed an agent for service of process in Minnesota, they maintain that recent

Supreme Court authority has abrogated longstanding Eighth Circuit precedent that recognizes consent to general personal jurisdiction based on a defendant's appointment of an agent for service of process in Minnesota. (*Id.* at 13–14.) Even if the Court has general personal jurisdiction over LendingTree Sub based on consent, Defendants argue that jurisdiction does not extend to LendingTree Parent, which did not appoint an agent to receive service in Minnesota prior to the filing of this suit.[2] (*Id.*; Defs.' Reply [Doc. No. 40] at 4–6.)

Defendants also claim that specific personal jurisdiction is lacking here because Lehman's claims "are not related to Minnesota." (Defs.' Mem. at 2.) They note that only a small portion of the loans in question originated in Minnesota, and none of the loans were sold in Minnesota. (*See* Defs.' Mem. at 11–12; Defs.' Reply at 6–7.) It is the sale of the loans that could support specific personal jurisdiction, Defendants argue, not where the loans originated. (Defs.' Mem. at 11–12.)

In the alternative to dismissal for lack of personal jurisdiction, Defendants argue that the Court should dismiss or transfer this case because Lehman chose an improper venue. (*See id.* at 3, 14) (citing Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a)). Even if venue in Minnesota is permissible, Defendants contend that in the Court's discretion, it

---

[2]     A few months after Lehman filed this lawsuit, LendingTree Parent appointed an agent to accept service of process in Minnesota. (Barker Reply Decl. [Doc. No.42] ¶¶ 5–6.) This appointment is not material to the jurisdictional analysis here, however, as personal jurisdiction is not based on contacts occurring after the filing of the complaint. *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F. 3d 558, 562 (8th Cir. 2003) (noting that minimum contacts must be present at the time the cause of action arose, the time the suit is filed, or within a reasonable time immediately prior to the filing of the lawsuit).

should transfer this case to the United States District Court for the Western District of
North Carolina for the convenience of the parties, and in the interests of justice, pursuant
to 28 U.S.C. § 1404(a). (*See id*. at 3–4; 17–20.)

Finally, if the Court declines to dismiss or transfer the case, Defendants ask the
Court to compel the parties to arbitrate Count One of the three-count Complaint, in which
Lehman seeks a declaratory finding that LendingTree Parent expressly assumed HLC's
repurchase and indemnification liabilities. (*Id*. at 20–29.) They argue that the 2008 Spin
Agreement requires the arbitration of this claim. (*Id.*)

Plaintiff opposes Defendants' motion, arguing that LendingTree Sub has consented
to the Court's general personal jurisdiction, which may be imputed to LendingTree Parent
by virtue of LendingTree Parent's domination and control of its subsidiary. (Pl.'s Opp'n
[Doc. No. 36] at 10–12.) It also argues that the Court has specific jurisdiction over
Defendants because HLC's liability to Lehman arose, in part, in Minnesota. (*Id.* at 12–14.)
As to venue, Plaintiff argues that Minnesota is a proper venue, for many of the reasons
applicable to a finding of general personal jurisdiction and specific personal jurisdiction.
(*Id.* at 20–23.) However, if the Court decides to transfer the case in its discretion, Lehman
request that the Court transfer it to the Southern District of New York (the "SDNY") for
reference to the SDNY Bankruptcy Court. (*Id*.) Finally, Lehman argues that the Court
should not compel arbitration because there is no agreement applicable to these parties that
requires arbitration. (*Id.* at 23–30.)

## II.   DISCUSSION

As explained below, because the Court ultimately concludes that discretionary transfer is warranted, and because aspects of personal jurisdiction analysis are subsumed in the venue analysis, the Court declines to dismiss for lack of personal jurisdiction under Rule 12(b)(2).   *See U.S. Bank Nat'l Assoc. v. Alliant Ener. Res., Inc.*, No. 08-cv-5111 (MJD/JJK), 2009 WL 10711818, at * 2 (D. Minn. Jan. 20, 2009) (declining to address personal jurisdiction and proper venue as grounds for dismissal in light of finding that transfer was warranted under 28 U.S.C. § 1401(a)); *see also Ying v. China Chef, Inc*., No. 08 Civ. 4282(PKC), 2008 WL 4104018, at *1 (S.D.N.Y. Sept. 2, 2008) (holding that because court was granting "motion to transfer venue for the convenience of the parties and witnesses and in the interest of justice," it did not need to reach the personal jurisdiction prong of defendants' motion); *see also Everlast World's Boxing Headquarters Corp. v. Ringside, Inc*., 928 F. Supp. 2d 735 (S.D.N.Y. 2013) (reaching a venue motion in lieu of first addressing personal jurisdiction where the question of whether there is personal jurisdiction over a defendant is close and likely to yield further litigation).

Also, because the Court finds that discretionary transfer of venue is warranted, it does not address Defendants' alternative argument with respect to the arbitration of Count One.

### A.   Venue

#### 1.   Whether Venue is Proper

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

justice, transfer such case to any district or division in which it could have been brought." As to whether venue is "proper," 28 U.S.C. § 1391 provides that a civil action may be properly brought in any of the following venues: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the court is located; (2) a judicial district in which a substantial part of the events giving rise to the claim occurred; or (3) if there is no district in which the action could otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b)(1)–(3).

### a. Whether a Substantial Part of the Events Giving Rise to Plaintiff's Claims Occurred in Minnesota

Lehman asserts that venue in Minnesota is proper under § 1391(b)(2) because "certain of the loans giving rise to HLC's liability (and, thus, LendingTree's liability) were originated in Minnesota." (Pl.'s Opp'n at 15.)

The Court, however, finds that Plaintiff's allegations do not support venue in Minnesota under § 1391(b)(2). Addressing the related issue of specific personal jurisdiction in *ResCap*, the Court found jurisdiction was present there because HLC *sold over 6,200 loans to RFC in Minnesota*, giving rise to RFC's indemnification claim and ultimately, its Minnesota judgment against HLC. 2020 WL 1317719, at *11. But here, Lehman's indemnification claims are not based on HLC's actions in *originating* loans in California to residents in Minnesota, or any other state. Rather, Lehman's indemnification claims implicate the following "events," in the following locations: (1) the purchase and sale of loans in California, New York, or Delaware, with accompanying representations

13

and warranties; (2) the execution of loan contracts in California, New York, or Delaware; (3) the approval of Lehman's RMBS settlements by the SDNY Bankruptcy Court in New York; (4) the allowance of the Allowed Claim against HLC by the California Bankruptcy Court; and (5) the relationship between Defendants and HLC, which implicates Delaware, North Carolina and New York.   None of these events giving rise to Lehman's indemnification claims, let alone a "substantial part" of them, concern Minnesota. Accordingly, the Court finds that § 1391(b)(2) does not provide a proper basis for venue in Minnesota.

### b.    Whether All Defendants "Reside" in Minnesota Subject to the Court's Personal Jurisdiction

The Court next considers whether "all defendants are residents of [Minnesota]" to determine whether venue is proper pursuant to 28 U.S.C. § 1391(b)(1). A corporate defendant "reside[s] . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

A court may exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied, and (2) the exercise of personal jurisdiction does not offend due process. *Stanton v. St. Jude Med., Inc*., 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, *Minn. Min. & Mfg. Co. v. Nippon Carbide Indus. Co*., 63 F.3d 694, 697 (8th Cir. 1995), this Court need only evaluate

whether the exercise of personal jurisdiction comports with the requirements of due process. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

A court may exercise personal jurisdiction over litigating parties either under a theory of general or specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014), the Supreme Court clarified that a court may only exercise general personal jurisdiction if a defendant's contacts are "so continuous and systematic as to render [it] essentially at home in the forum." (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). A defendant's place of incorporation and principal place of business are the "paradigm all-purpose forums." *Daimler*, 571 U.S. at 137 (citing *Goodyear*, 564 U.S. at 924). Only in an "exceptional case" may a "corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139, n.19.

As noted, Defendants are neither incorporated in Minnesota nor do they have their principal place of business here. (Compl. ¶¶ 16–18.) However, another basis for the exercise of general personal jurisdiction is a defendant's consent. *ResCap*, 2020 WL 1317719, at *5 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). Consent to personal jurisdiction may be established in several ways, including as a condition of performing some activity in the state. *Id.* In *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d at 1199–1200, the Eighth Circuit held that the appointment of an agent for service of process in Minnesota pursuant to the state's business

registration statutes constitutes consent to the general jurisdiction of Minnesota courts.  In *ResCap*, the Court found that because LendingTree Sub—also a defendant here—had appointed a registered agent for service of process in Minnesota, it was subject to the Court's general jurisdiction.[3]  2020 WL 1317719, at *5 (citing *Knowlton*, 900 F.2d at 1199–1200; *Am. Dairy Queen Corp. v. W.B. Mason Co.*, No. 18-cv-693 (SRN/ECW), 2019 WL 135699, at *1, 6 (D. Minn. Jan. 8, 2019)).

Plaintiff urges the Court to follow its ruling in *ResCap*, and find that the Court has general personal jurisdiction over LendingTree Sub based on its consent to jurisdiction, and over LendingTree Parent because it dominates and controls LendingTree Sub.  (Pl.'s Opp'n at 10–11.)  Based on the existence of general personal jurisdiction over Defendants, Lehman argues, by extension, that venue is proper under § 1391(b)(1).  (*Id.* at 14–15.)

But Defendants argue that *Knowlton*'s recognition of consent to general jurisdiction by virtue of business registration is at odds with the Supreme Court's more recent and much narrower "at-home" requirement for the exercise of general personal jurisdiction.  (Defs.'

---

[3]    In addition to consent to the Court's jurisdiction based on the registration of an agent for service of process, in *ResCap*, the Court also found  that it had general personal jurisdiction over LendingTree Sub and LendingTree Parent because the operative agreement between RFC and HLC included a forum-selection clause designating Minnesota as the chosen forum, and the plaintiff had adequately alleged LendingTree Parent's successor liability, and that the defendants controlled and dominated HLC to such a degree that HLC's contacts could be imputed to the them. 2020 WL 1317719, at *6–11. Moreover, the Court found that it had specific personal jurisdiction over the defendants due to the nature, quality, and quantity of their contacts with Minnesota, and the relation of those contacts to the cause of action. *Id.* at *11. Specifically, the Court noted ResCap's allegations that LendingTree Sub and LendingTree Parent dominated and controlled HLC when HLC sold over 6,200 loans to RFC in Minnesota, which gave rise to ResCap's indemnification claim. *Id.*

Mem. at 7–9) (citing *BNSF*, 137 S. Ct. at 1558; *Daimler*, 571 U.S. at 127; *Goodyear*, 564

U.S. at 919).  Nevertheless, Defendants concede that *Knowlton* is controlling precedent in

the Eighth Circuit.  (Defs.' Reply at 2.)

Indeed, the Court acknowledges that the Supreme Court's decisions in *Goodyear*

and *Daimler* limit the exercise of general personal jurisdiction to forums in which the

defendant is considered "at home."  *Goodyear*, 564 U.S. at 924; *Daimler*, 571 U.S. at 127.

However, as noted in a recent decision from this District, the Supreme Court in *Goodyear*,

*Daimler*, and *BNSF* did not address the question of whether consent based on a state's

corporate registration statutes is sufficient to confer general personal jurisdiction.

*GreenState Credit Union v. Hy-Vee, Inc.*, __ F. Supp. 3d __, No. 20-621 (DSD/DTS), 2020

WL 6586230, (D. Minn. Nov. 10, 2020).  Certainly, the general precepts from these more

recent Supreme Court decisions raise concerns about whether this form of consent-based

general personal jurisdiction continues to comply with due process.  *Id.* (stating that

*Goodyear*, *Daimler*, and *BNSF* "raise serious questions as to whether the exercise of

general jurisdiction over a defendant based on its registration to do business under state

corporate registration statutes such as Minnesota's is proper."); *Am. Dairy Queen*, 2019

WL 135699, at \*6 (noting that "persuasive arguments can be made that the holding of

*Knowlton* is not reconcilable with the narrowing of the boundaries of due process that

govern an analysis of minimum contacts and general personal jurisdiction under *Goodyear*

and *Daimler*.").

However, because *Knowlton* remains good law in the Eighth Circuit, this Court is

bound by it, as acknowledged in *ResCap* and *GreenState*.  *ResCap*, 2020 WL 1317717, at

*5; *GreenState*, 2020 WL 6586230, at *5.  As this Court observed in *American Dairy Queen*, "It is for the Supreme Court to address consent by registration statutes in light of its new jurisprudence on general personal jurisdiction and/or for the Eighth Circuit to reconsider *Knowlton* in light of this changing view of the law."  2019 WL 135699, at *6. Accordingly, the Court finds that it has general personal jurisdiction over LendingTree Sub based on its consent via Minnesota's corporate registration statutes.

As to whether the Court has general personal jurisdiction over LendingTree Parent based on its relationship to LendingTree Sub, in *ResCap*, the Court found that LendingTree Parent exercised sufficient domination and control over HLC, a subsidiary of LendingTree Sub, to subject LendingTree Parent to the Court's general personal jurisdiction based on the forum-selection clause in HLC's agreement with RFC.  2020 WL 1317719, at *10 (citing *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648–49 (8th Cir. 2003); *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1064 (D. Minn. 2013)).  Because of the presence of a forum-selection clause in *ResCap*, the Court did not consider whether LendingTree Sub's consent to personal jurisdiction based on the registration of an agent for service of process could be imputed to LendingTree Parent.

Plaintiff argues that the court in *Bielicki v. Empire Stevedoring Co., Ltd.*, 765 F. Supp. 991, 994 (D. Minn. 1990), exercised personal jurisdiction over a Canadian parent company based solely on the parent company's domination and control of its Minnesota subsidiary, "notwithstanding the lack of a nexus" between its contacts with Minnesota and the plaintiffs' cause of action.  (*See* Dec. 16, 2020 Hr'g Tr. [Doc. No. 46] at 18–19.)  There,

however, unlike here, the subsidiary conducted extensive business in Minnesota. *Bielicki*, 765 F. Supp. at 992–93.

Just as the continued viability of consent-based personal jurisdiction via the business registration statutes is in question, it is also unclear whether consent-based general jurisdiction may be imputed to a parent corporation. If so, Lehman sufficiently alleges that LendingTree Parent controls and dominates LendingTree Sub. *See Epps*, 327 F.3d at 648–49. Among other things, Lehman alleges that: (1) Defendants operate at the same address, (Compl. ¶ 88(b)); (2) Defendants consolidate their financial statements, (*id.* ¶ 38); (3) LendingTree Parent wholly owns LendingTree Sub, which wholly owns HLC, (*id.* ¶¶ 1, 7); and (4) there is no dilution in ownership between LendingTree Parent, LendingTree Sub, and HLC (*id.* ¶¶ 19, 88(a)). The Complaint makes clear that "LendingTree Parent is the sole member of LendingTree Sub. LendingTree Sub is the sole shareholder of HLC and owns 100% of HLC's stock. [Douglas] Lebda is the chief executive officer, chairman of the board, and a shareholder of LendingTree Parent, the sole manager of LendingTree Sub, and until February 2019, was the sole director of HLC." (*id.* ¶ 19; *see also* ¶ 88(a)). *Cf. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596–97 (8th Cir. 2011) (finding the relationship between the parent and subsidiary—a "two-steps-removed 28–percent interest" was too attenuated to support the assertion of personal jurisdiction over the parent based on the activities of the subsidiary).

Thus, if consent-based jurisdiction may be imputed to a parent, the Court finds that Lehman has adequately alleged that LendingTree Parent exercised sufficient domination and control over LendingTree Sub, such that venue is proper as to LendingTree Parent.

Under this analysis, because "all defendants" are subject to the Court's general personal jurisdiction, venue is proper under § 1391(b)(1).

However, if venue is not proper on this basis, the Court finds that in the interest of justice, transfer is warranted to a district in which the action "could have been brought." 28 U.S.C. § 1406(a). As the Court explains below, that district is the SDNY.

### 2. Whether Discretionary Transfer is Warranted

Although venue in Minnesota may be proper, the Court considers Defendants' alternative argument that the discretionary transfer of venue is warranted under 28 U.S.C. § 1404(a). As noted, Defendants request transfer to the Western District of North Carolina for the convenience of the parties and witnesses and in the interests of justice. (Defs.' Mem. at 17.) In opposition, Lehman argues that venue should remain in Minnesota, and the propriety of transfer should be analyzed under 28 U.S.C. § 1412, not § 1404(a). (Pl.'s Opp'n at 15–16.) However, if the Court finds that transfer is warranted, Lehman requests that the Court transfer the case to the SDNY, for reference to the SDNY Bankruptcy Court. (*Id.* at 20.) In Defendants' Reply, they reassert that § 1404(a) governs the question of transfer, but contend that ultimately "it makes no difference" which statute is applied, because the test is the same." (Defs.' Reply at 8.) However, Defendants object to Lehman's requested transfer to the SDNY because Plaintiff should not "get a second bite at the apple after [choosing] an improper and inconvenient forum." (*Id.* at 8–11.)

Section 1404(a)—the statute that Defendants urge the Court to apply—states that "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" "[f]or

the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

A district court considers the following non-exclusive factors in making its decision under

§ 1404(a):  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3)

the interests of justice.  *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam)

(citation omitted).

Section 1412—the statute that Lehman argues the Court should apply—likewise

provides that "[a] district court may transfer a case or proceeding under title 11 to a district

court for another district, in the interest of justice or for the convenience of the parties."  28

U.S.C. § 1412.

At least one judge in this district has relied on the two statutes interchangeably, *see*

*Residential Funding Co. v. Cherry Creek Mortg. Co.*, No. 13-cv-3449 (JNE/SER), 2014

WL 1686516, at *2–4 (D. Minn. Apr. 29, 2014), and other courts have found no reason to

distinguish between the two due to their similarity.  *See In re Thomson McKinnon Sec. Inc.*,

126 B.R. 833, 835 (Bankr. S.D.N.Y. 1991) (citing *In re Spillane*, 884 F.2d 642, 645 n.4

(1st Cir. 1989)).  Nonetheless, the Court concludes that § 1412 applies here because the

Eighth Circuit has adopted a broad, "conceivable effect" test to analyze "related to"

jurisdiction.  *In re Farmland Indus., Inc.*, 567 F.3d 1010, 1019 (8th Cir. 2009) ("[A] civil

proceeding is related to bankruptcy . . . [where] the outcome of that proceeding could

conceivably have any effect on the estate being administered in the bankruptcy. . . .  An

action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities,

options, or freedom of action . . . and which in any way impacts upon the handling and

administration of the bankruptcy estate." (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995)).

As noted earlier, the basis for the Court's subject matter jurisdiction here is 28 U.S.C. § 1334(b), i.e., "related to" bankruptcy jurisdiction. (Compl. ¶ 23.) Lehman alleges that it brings its claims as Lehman's chapter 11 bankruptcy plan administrator to recover amounts owed to Lehman's bankruptcy estate. (*Id.*) Here, recovery of the Allowed Claim that Lehman seeks to enforce against Defendants would have a "conceivable effect" on, and "impact[] the handling and administration of" Lehman's bankruptcy estate. *Id.* The Court therefore finds that § 1412 controls the Court's venue transfer analysis. *See Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 628 (D. Minn. 2009) ("[A] motion to transfer an action related to a bankruptcy proceeding in another forum is appropriately analyzed under § 1412."). However, the Court agrees with Defendants that the analysis would be essentially the same under § 1404(a).

"[A] transfer under § 1412 requires a sufficient showing that granting the transfer *either* will be in the interest of justice or for the convenience of the parties." *Id.* at 629 (emphasis in original). "[C]ourt[s] may also consider any other factors [they] find[] relevant when deciding whether transfer is warranted." *Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1105 (D. Minn. 2010) (citing *In re Apple, Inc.*, 602 F.3d at 912). Transfer motions "should not be freely granted" and it must be shown that the relevant factors weigh strongly in favor of transfer. *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982) (per curiam), *abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990); *see Cosmetic Warrior*, 723 F. Supp. 2d at 1105.

However, as under § 1404(a), courts possess "much discretion" in weighing the relevant factors to determine whether to grant a motion to transfer under § 1412. *Cosmetic Warrior*, 723 F. Supp. 2d at 1105 (addressing discretion under § 1404(a)); *Creekridge*, 410 B.R. at 629 ("Deciding whether transfer under § 1412 is warranted requires a case specific analysis that is subject to broad discretion of the district court.").

### a.    Interests of Justice

Regarding the interests-of-justice prong for transferring venue under § 1412, courts take into account:  "(1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum." *Creekridge*, 410 B.R. at 629.  Courts often find that the first factor—the economical and efficient administration of the bankruptcy estate—is the most important factor under § 1412.  *Id.*; *In re Bruno's, Inc.*, 227 B.R. 311, 324 n.44 (Bankr. N.D. Ala. 1998) (listing cases).

The balance here weighs strongly in favor of transfer to the SDNY.  First, transfer to that district for reference to the SDNY Bankruptcy Court, where Lehman's other indemnification proceedings are pending, would promote the economical and efficient administration of Lehman's bankruptcy estate, as well as promote judicial efficiency.  *See Quick v. Viziqor Sols., Inc.*, No. 4:06CV637SNL, 2007 WL 494924, at *4 (E.D. Mo. Feb. 12, 2007); *Creekridge*, 410 B.R. at 631.  Neither Minnesota nor the Western District of

North Carolina are the bankruptcy forum of any party to this action, and there is a presumption in favor of the forum of the bankruptcy action. *Creekridge*, 410 B.R. at 629.

While the presumption favoring the administration of the bankruptcy estate may sometimes be offset by the deference accorded to the plaintiff's original choice of forum, *see id.* at 630–31, Defendants argue that Lehman's original choice is entitled to less deference because it does not reside in Minnesota, and the underlying events did not occur here. (Defs.' Reply at 10) (citing *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999)). The Court agrees. As discussed earlier, Lehman is not incorporated in Minnesota, its principal place of business is not in Minnesota, and the events underlying its indemnification claims did not occur in Minnesota. Accordingly, the presumption favoring the bankruptcy estate's forum is not offset by any deference to Lehman's original choice of forum in Minnesota.

Defendants further contend that the Court should give no deference to Plaintiff's alternative choice of forum, the SDNY, as "Lehman does not get a second bite at the [(choice of forum)] apple." (Defs.' Reply at 11.) At the hearing on the instant motion, defense counsel relied on *Cherry Creek Mortgage*, 2014 WL 1686516, at *3, which, in turn, relied on *Atlantic Marine Construction Company v. U.S. District Court for the Western District of Texas*, 571 U.S. 49 (2013). (*See* Dec. 16, 2020 Hr'g Tr. at 8, 29–30.) Those cases involve the effect of a forum-selection clause in a motion to transfer venue. In *Atlantic Marine*, the Supreme Court held that when "parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," unless extraordinary circumstances exist. 571 U.S. at 62. In

*Cherry Creek Mortgage,* RFC filed suit in this district, but later sought to transfer venue to the SDNY, for reference to the SDNY Bankruptcy Court, which administered RFC's bankruptcy proceedings. *Id.* at *1. Judge Joan Erickson denied RFC's motion, pointing to a valid forum-selection clause in the parties' governing contract that designated Minnesota as the chosen forum. *Id.* at 1–3. In that context, Judge Erickson found that RFC's subsequent choice of forum (the SDNY) merited no deference, stating "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at *3.

The holdings of *Cherry Creek Mortgage* and *Atlantic Marine* are not directly applicable here, as this case does not involve a forum-selection clause. In *Groesbeck v. Sgarlato Med, LLC*, No. 10-cv-3782 (ADM/JJK), 2011 WL 383701, at *3 (D. Minn. Feb. 3, 2011), which did not involve a forum-selection clause, Judge Ann Montgomery deferred to a plaintiff's second choice of forum in a motion to transfer venue under § 1404(a). While the defendants advocated for transfer to the Northern District of California, and the plaintiff ultimately advocated for transfer to the District of Utah, the court deferred to the plaintiff's second choice, because he was a resident of Utah. *Id.*

In any event, the Court does not give deference to Lehman's alternative choice of venue. Rather, in this case, the Court applies the presumption in favor of the economical and efficient administration of the bankruptcy estate, and the presumption in favor of the

forum where the bankruptcy case is pending. *Creekridge*, 410 B.R. at 629. It simply happens to be the case here that the application of these presumptions and Plaintiff's alternative choice of forum align.

Lehman argues that venue in Minnesota would promote judicial efficiency, given the Court's familiarity with the prior *ResCap* actions for indemnification against HLC and declaratory judgment against LendingTree Parent and LendingTree Sub. (Pl.'s Opp'n at 19–20) (citing *Steward v. Up North Plastics, Inc.*, 177 F. Supp. 2d 953, 959 (D. Minn. 2001)). But while the *ResCap* declaratory judgment action was similar to this case in some ways, it settled shortly after the court ruled on a motion to dismiss, whereas in *Steward*, the case on which Lehman relies, the case had been pending for over four years, during which time the transferee court had ruled on numerous motions. 177 F. Supp. 2d at 959–60. Accordingly, the Court does not find that it possesses particular familiarity or expertise such that venue in Minnesota would promote judicial efficiency.

Nor does the Court find that venue in the Western District of North Carolina would promote judicial efficiency, as Defendants identify no particular familiarity in that district with the issues in this case. Moreover, Defendants acknowledge that none of the applicable agreements in this case involve the application of North Carolina or Minnesota law. (Defs.' Mem. at 19.) Rather, the Spin Agreement is governed by Delaware law, and the loan purchase agreements are governed by New York law. (*Id.*) Given the potential application of New York law and the administration of Lehman's bankruptcy estate in the SDNY

Bankruptcy Court, the promotion of judicial efficiency weighs strongly in favor of transfer to the SDNY.[4]

In addition, when analyzing the "interests of justice" in motions brought under § 1404(a), some courts have found that doubts surrounding personal jurisdiction add weight to the transfer scale. *See Cosmetic Warrior*, 723 F. Supp. 2d at 1109 (expressing concerns about the court's exercise of personal jurisdiction over all defendants in transfer of venue analysis under § 1404(a)); *U.S. Bank Nat'l Ass'n*, 2009 WL 10711818, at *4 (same). Given that courts must consider the interests of justice under both § 1404(a) and § 1412, the Court finds consideration of personal jurisdiction relevant to the analysis of the interests of justice here.

Consideration of this factor weighs in favor of transfer to the SDNY because the Court harbors concerns about whether Defendants are ultimately subject to personal jurisdiction here. *Cosmetic Warrior*, 723 F. Supp. 2d at 1109; *U.S. Bank Nat'l Ass'n*, 2009 WL 10711818, at *4 (finding that the interests of justice weigh heavily in favor of transfer and noting, "It is doubtful that this Court even has personal jurisdiction over Defendants, whose connections to Minnesota are negligible and unrelated to this case."). As discussed earlier, based on *Knowlton*, 900 F.2d 1196, the Court has general personal jurisdiction over LendingTree Sub. But, as noted, post-*Knowlton* Supreme Court authority casts some doubt on whether *Knowlton* remains good law. *See Am. Dairy Queen*, 2019 WL 135699, at *6.

---

[4]     Even if transfer is analyzed under § 1404(a), without the presumptions accorded to the bankruptcy venue and the efficient administration of the bankruptcy estate under § 1412, the factor of judicial efficiency strongly favors transfer to the SDNY.

Nor did *Knowlton* address whether consent-by-registration can be used to impute general personal jurisdiction over a parent entity from a subsidiary, based solely on the subsidiary's consent. *See* 900 F.2d at 1197–1200.

In addition, the Court does not believe that it has specific personal jurisdiction over this action, for the same reasons addressed earlier concerning the propriety of venue under § 1391(b)(2).

The remaining factors concerning transfer in the interests of justice—the ability to receive a fair trial, the state's interest in having local controversies decided within its borders by those familiar with its laws, and the enforceability of any judgment rendered— are neutral under the circumstances here. *Creekridge*, 410 B.R. at 629.

Taking into account the economical and efficient administration of Lehman's bankruptcy estate, judicial efficiency, and the Court's concerns surrounding personal jurisdiction, the relevant factors under § 1412's interests-of-justice prong weigh strongly in favor of transfer to the SDNY for reference to the SDNY Bankruptcy Court.[5]

### b.    Convenience of the Parties

The Court also considers whether a change of venue is warranted under § 1412 "for the convenience of the parties." 28 U.S.C. § 1412. Among the factors that courts consider when evaluating whether transfer would be for the convenience of the parties are "(1) the location of the plaintiff and the defendant, (2) ease of access to necessary proof, (3)

---

[5]    The Court would reach the same conclusion in an analysis of the interests of justice under § 1404(a), finding that judicial efficiency and concerns about personal jurisdiction weigh in favor of transfer to the SDNY.

convenience of witnesses, (4) availability of subpoena power for unwilling witnesses, and (5) expenses related to obtaining witnesses." *Creekridge*, 410 B.R. at 629.

Applying these factors, transferring venue out of Minnesota is warranted for the convenience of the parties. Lehman and Defendants are not located in Minnesota, nor does Minnesota appear to provide easy access to the evidence. Given the parties' locations in New York and North Carolina, Minnesota also appears to be mutually inconvenient for witnesses.

Defendants argue that the Western District of North Carolina would be more convenient because they both have their principal place of business there, the majority of their employees and party witnesses with relevant knowledge live and work in North Carolina, and much of the relevant evidence is located there. (Defs.' Mem. at 18.)

Plaintiff, however, argues that it has no contacts with North Carolina, and as Lehman's bankruptcy plan administrator, it is obliged to conserve the bankruptcy estate's resources and maximize recoveries for the benefit of its creditors. (Pl.'s Opp'n at 19.) It notes that its bankruptcy case is pending in the SDNY Bankruptcy Court, which is where its headquarters and certain key personnel are located. (*Id.*)

The Court finds that because North Carolina would be more convenient for Defendants, and the SDNY would be more convenient for Plaintiff, consideration of the convenience of the parties is neutral.

On balance, the interests of justice weigh heavily in favor of transfer to the SDNY, for reference to the SDNY Bankruptcy Court, pursuant to 28 U.S.C. § 1412.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue or to Compel Arbitration [Doc. No. 23] is **GRANTED IN PART**; and

2. This case is **TRANSFERRED** to the United States District Court for the Southern District of New York for reference to the United States Bankruptcy Court for the Southern District of New York.

Dated: March 22, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge