WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------------x
                                           :
In re                                      :      Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :      08-13555 (SCC)
                                           :
Debtors.                                   :      (Jointly Administered)
                                           :
-----------------------------------------------------------------------x
```

**NOTICE OF AGREEMENT BETWEEN
LEHMAN BROTHERS HOLDINGS INC. AND CERTAIN ECAPS HOLDERS**

PLEASE TAKE NOTICE that Lehman Brothers Holdings Inc. entered into agreements with entities managed by King Street Capital Management, L.P. that hold approximately 14.3% of Lehman securities commonly known as "ECAPS". A summary of the terms and copies of the agreements are attached to this notice as Exhibits A and B.

Dated: July 14, 2021
New York, New York

/s/ Garrett A. Fail
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

## EXHIBIT A

**Lehman Brothers Holdings Inc. reaches agreement with 14.3% ECAPS holder: Deal will give entities managed by King Street Capital Management, L.P. their pro-rata share of 16.19% of funds available for subordinated creditors of Lehman Brothers Holdings PLC (in administration)**

As has been previously disclosed, Lehman Brothers Holdings Inc. ("**LBHI**") has been involved in various legal actions in U.S. and English courts pertaining to three series of securities known as the "ECAPS", which together aggregate approximately €797 million in face amount. The litigation, which is scheduled to continue with a hearing at the U.K. Court of Appeals beginning on October 4, 2021, relates principally to the relative ranking of two categories of subordinated debt at Lehman Brothers Holdings PLC ("**PLC**") and the relative ranking of two categories of subordinated debt at LB Holdings Intermediate 2 Limited ("**LBHI2**"). This hearing is the result of appeals to the orders of the English High Court on July 24, 2020, the effect of which was that the ECAPS holders would be entitled to approximately 13.67% of certain distributions made by Lehman's UK group (the "**Litigated Surplus**").

LBHI is pleased to announce that it has come to an agreement (documented in three settlement agreements, the "**Settlement Agreements**") with three entities managed by King Street Capital Management, L.P. ("**King Street**"), which in aggregate hold approximately 14.3% of the ECAPS, pursuant to which King Street will receive its pro rata share (relating to such holding) of 16.19% of the Litigated Surplus. Each Settlement Agreement provides for this result via top-up, to be paid directly by LBHI to King Street, in the event that the ECAPS' collections fall below this 16.19% threshold, and conversely, by remittance, to be paid by King Street to LBHI, in the event that the ECAPS' collections exceed such threshold. King Street has agreed to deposit the ECAPS subject to the Settlement Agreements into custodial accounts, the proceeds of which are pledged to LBHI to secure any such remittance obligations.

The agreement includes a "Most-Favoured Nation" option providing King Street the right to amend each Settlement Agreement to reflect the terms of any other settlement agreement (or agreement in principle) that LBHI enters into with another ECAPS holder prior to the last day of the above-mentioned Court of Appeals hearing which are different than the terms of the Settlement Agreements, subject to certain exceptions. The Settlement Agreements also provide that any further purchases of ECAPS made by King Street on or prior to Monday, September 27, 2021 will be subject to the terms of the Settlement Agreements on, proportionally, the same terms as King Street's current holdings.

Copies of the Settlement Agreements are available online at https://dm.epiq11.com/case/lbh/documents in the "Other Key Documents- Post Emergence" folder.

LBHI is willing, with respect to certain qualified institutional holders of ECAPS, subject to criteria to be determined by LBHI in its sole discretion, to enter into agreements with respect to their ECAPS on terms identical (on a proportionate basis) to those in the Settlement Agreements (including the custody and collateral provisions). If you are an institutional holder of ECAPS wishing to pursue such an arrangement, please contact Claire Hallowell Leonard of LBHI at claire.hallowell@lehmanholdings.com prior to August 16, 2021. THE FOREGOING IS NOT AN OFFER TO PURCHASE ANY SECURITIES FROM ANY HOLDER AND IS NOT AN OFFER CAPABLE OF BEING ACCEPTED.

In the United Kingdom this announcement is only addressed to and directed at persons who (i) have professional experience in matters relating to investments (being investment professionals falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005, as amended (the "**Financial Promotion Order**")), (ii) fall within Article 49(2)(a) to (d) ("high net worth companies, unincorporated associations, etc.") of the Financial Promotion Order, or (iii) to the extent that doing so does not prejudice the lawful distribution of this announcement to the foregoing, are persons to whom an invitation or inducement to engage in investment activity (within the meaning of section 21 of the Financial Services and Markets Act 2000) in connection with the subject matter of this announcement may otherwise lawfully be communicated or caused to be communicated (all such persons together being referred to as "relevant persons"). The foregoing announcement is only made in the United Kingdom to relevant persons and this announcement must not be acted on or relied on by anyone in the United Kingdom who is not a relevant person.

**EXHIBIT B**

**Weil, Gotshal & Manges (London) LLP**
110 Fetter Lane
London EC4A 1AY
+44 20 7903 1000 main tel
+44 20 7903 0990 main fax
weil.com



**EXECUTION VERSION**

**7 JULY 2021**

**SETTLEMENT AGREEMENT**

**between**

**LEHMAN BROTHERS HOLDINGS INC.**

**and**

**LEHMAN BROTHERS HOLDINGS SCOTTISH LP 3**

**and**

**as SH 1**

**THIS AGREEMENT** is made on 7 July 2021 between the following parties:

(1)     **LEHMAN BROTHERS HOLDINGS INC.**, a corporation formed in the State of Delaware, United States of America and whose principal place of business is at 110 East 42nd Street, Suite 820 – 8th Floor, New York, NY 10017, United States of America ("**LBHI**");

(2)     **LEHMAN BROTHERS HOLDINGS SCOTTISH LP 3**, a limited partnership incorporated in Scotland with company number SL006052 and whose registered office is at 13 Queens Road, Aberdeen, AB15 4YL ("**SLP3**"); and

(3)     ███████████████████████ a limited company incorporated in ███████ with company number ████████ and whose registered office is at ████████████████████████████████████ ("**SH1**"),

(jointly the "**Parties**", and each a "**Party**").

**WHEREAS**

(A)     LBHI and SH1 wish, as between each other, to settle the economic outcome of the Priority Proceedings.

(B)     The basis of the settlement is to fix the economics of SH1's notional share of the PLC Sub-Notes at a scenario where:

      a)  LBHI2 distributes on the LBHI2 Sub-Debts 100% of the funds it has available, from time to time, for distribution to subordinated creditors, until the LBHI2 Sub-Debts have been paid in full; and

      b)  PLC distributes on the PLC Sub-Notes 16.19% of the funds it has available, from time to time, for distribution to subordinated creditors, *pari passu* among PLC Note Series 1, PLC Note Series 2 and PLC Note Series 3.

(C)     LBHI has also entered into related settlement agreements (the "**Related SH Agreements**") with certain Affiliated Parties of SH1, namely, ███████████████████ ("**SH2**") and ███████ ███████████████ ("**SH3**") (together with SH1 and SH2, the "**Settling Holders**") to settle the economic outcome of the Priority Proceedings as between LBHI and each such person.

(D)     SLP3 wishes to enter into this Agreement in order to acknowledge the rights and obligations of LBHI under the terms of this Agreement.

**1       DEFINITIONS AND INTERPRETATION**

1.1     In this Agreement, unless the context otherwise requires, the following words and expressions have the following meanings:

| | |
|---|---|
| "**2006 Act**" | means the Companies Act 2006. |
| "**Additional Period**" | has the meaning given to it in Clause 6.2 (*Future ECAPS Purchases*) below. |
| "**Additional Settlement Agreement**" | means any settlement agreement between LBHI and any ECAPS Holder (other than SH1), including the Related SH Agreements, that contains calculations of the PLC Surplus and/or the ECAPS Holder's gain/loss comparable or identical to the calculations set out at Clause 4 (*Settlement – Payment Provisions*) of this Agreement. For the avoidance of doubt, this term shall include |

1

|  | any settlement agreement entered into by a transferee of SH1 ECAPS pursuant to Clause 7.6 (*Security*). |
|---|---|
| **"Affiliated Parties"** | means a Parent Undertaking or Subsidiary Undertaking of a person, together with any other Subsidiary Undertakings of a Parent Undertaking of that person. |
| **"Alternative Collateral Arrangement"** | has the meaning given to it in Clause 7.2(b) (*Security*) below. |
| **"Announcement"** | has the meaning given to it in Clause 12.1 (*Announcements*) below. |
| **"Available ECAPS"** | has the meaning given to it in Clause 7.6(a) (*Security*) below. |
| **"Bank of England Spot Rate"** | means the daily spot exchange rate against Sterling as published on the Bank of England website. |
| **"Business Days"** | means a day (other than a Saturday or a Sunday) on which banks are open for general business in London and New York. |
| **"Calculation Expert"** | has the meaning given to it in Clause 5.1 (*Expert Determination*) below. |
| **"Collateral Account"** | means the segregated custodian account with account number ▮▮ established and maintained by ▮▮ in the name of SH1, which shall consist of a securities account and a deposit account. |
| **"Collateral Documents"** | means the Control Agreement and the Security Agreement. |
| **"Comparator Settlement"** | means, any agreement entered into by LBHI with any existing or future ECAPS Holder (other than the Settling Holders or any Affiliated Party of the Settling Holders) to purchase, settle, quantify or compromise such ECAPS Holder's entitlements in their capacity as ECAPS Holder on terms which are different (other than any terms required to reflect the different ECAPS holders party to such agreement) than the terms of this Agreement. |
| **"Completion Date"** | has the meaning given to it in Clause 2.1 (*Completion Date*) below. |
| **"Control Agreement"** | means the New York law governed Collateral Account Control Agreement dated the Effective Date and made between SH1 (as Pledgor), LBHI (as the Secured Party) and ▮▮ (as the Securities Intermediary) (each such term as defined therein) in respect of the Collateral Account. |
| **"ECAPS"** | means ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3. |
| **"ECAPS Guarantees"** | means the subordinated guarantees given by PLC in favour of holders of the ECAPS pursuant to certain guarantees referred to in the ECAPS Series 1 prospectus dated 29 March 2005, ECAPS Series 2 prospectus dated 30 August 2005 and ECAPS Series 3 prospectus dated 20 February 2006. |

2

| | |
|---|---|
| **"ECAPS Holder"** | means the beneficial owner of any part of ECAPS Series 1, ECAPS Series 2 and/or ECAPS Series 3. |
| **"ECAPS Series 1"** | means the EUR225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities issued by Lehman Brothers UK Capital Funding LP as described in a prospectus dated 29 March 2005. |
| **"ECAPS Series 2"** | means the EUR200,000,000 Euro Fixed Rate Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities initially issued by Lehman Brothers UK Capital Funding II LP as described in a prospectus dated 30 August 2005, together with a further EUR50,000,000 Euro Fixed Rate Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities issued by way of Final Terms dated 26 October 2005. |
| **"ECAPS Series 3"** | means the EUR500,000,000 of Fixed/Floating Rate Enhanced Capital Advantaged Preferred Securities issued by Lehman Brothers UK Capital Funding III LP as described in a prospectus dated 20 February 2006. |
| **"Effective Date"** | means the date stated at the start of this Agreement. |
| **"Encumbrance"** | means any: |
| | (a) mortgage, pledge, lien, charge, hypothecation, security interest or other encumbrance, security agreement or security arrangement of any kind; |
| | (b) purchase or option agreement or arrangement; |
| | (c) subordination agreement or arrangement; |
| | (d) participation or sub-participation; |
| | (e) right of set-off; and/or |
| | (d) agreements to create or effect any of the foregoing. |
| **"EU MAR"** | means Regulation (EU) No 596/2014 of the European Parliament and of the Council of 16 April 2014 on market abuse. |
| **"EUR"** | means euro, being the official currency of certain member states of the European Union. |
| **"Exchange Act"** | means the U.S. Securities Exchange Act of 1934, as amended. |
| **"Final Hearing Date"** | means the final date on which the Court of Appeal sits for its substantive hearing of the Priority Proceedings, which hearing is scheduled to begin on Monday, 4 October 2021 and is expected to last five (5) days.  For the avoidance of doubt, for these purposes the substantive hearing does not include any judgment hand-down hearing, any hearing to address matters consequential upon judgment or any subsequent hearing. |

3

| | |
|---|---|
| **"GBP"** | means the British pound sterling, being the official currency of the United Kingdom. |
| **"GP1"** | means LB GP No 1 Limited (in liquidation). |
| **"Initial Date**" | has the meaning given to it in Clause 4.2 (*Settlement – Payment Provisions*) below. |
| **"LBHI Payments"** | has the meaning given to it in Clause 4.5(a) (*Settlement – Payment Provisions*) below. |
| **"LBHI2"** | means LB Holdings Intermediate 2 Limited (in administration). |
| **"LBHI2 Sub-Debts"** | means the debts owed on the following: |

(a) USD4,500,000,000 Long-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006;

(b) EUR3,000,000,000 Long-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006; and

(c) USD8,000,000,000 Short-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006.

| | |
|---|---|
| **"LBHI2 Sub-Notes"** | means the USD6,139,000,000 Floating Rate Subordinated Notes issued by LBHI2 as described in an offering circular dated 26 April 2007, as amended by a written resolution dated 3 September 2008. |
| **"LBL"** | means Lehman Brothers Limited (in administration). |
| **"LCIA"** | has the meaning given to it in Clause 5.2(a) (*Expert Determination*) below. |
| **"Legal Reservations"** | means: |

(a) the principle that certain remedies may be granted or refused at the discretion of the court, the limitation of enforcement by laws relating to bankruptcy, insolvency, liquidation, reorganisation, court schemes, moratoria, administration and other laws generally affecting the rights of creditors and secured creditors;

(b) the time barring of claims under applicable limitation laws (including the Limitation Acts) and defences of acquiescence, set off or counterclaim;

(c) the principle that in certain circumstances an Encumbrance granted by way of fixed charge may be recharacterised as a floating charge or that an Encumbrance purported to be constituted as an assignment may be recharacterised as a charge;

(d) the principle that the creation or purported creation of an Encumbrance over:

4

(i) any asset not beneficially owned by the relevant charging company at the date of the relevant security document; or

(ii) any contract or agreement which is subject to a prohibition on transfer, assignment or charging,

may be void, ineffective or invalid and may give rise to a breach of the contract or agreement over which an Encumbrance has purportedly been created; and

(e) similar principles, rights and defences under the laws of any relevant jurisdiction.

| | |
|---|---|
| **"MFN Option"** | has the meaning given to it in Clause 8.2 (*Most Favoured Nation Option*) below. |
| **"P1"** | has the meaning given to it in Clause 4.5(b) (*Settlement – Payment Provisions*) below. |
| **"P2"** | has the meaning given to it in Clause 4.5(c) (*Settlement – Payment Provisions*) below. |
| **"P3"** | has the meaning given to it in Clause 4.5(d) (*Settlement – Payment Provisions*) below. |
| **"Parent Undertaking"** | has the meaning given to it in section 1162 of the 2006 Act. |
| **"Payment"** | has the meaning given to it in Clause 9.1A (*Representations, Warranties and Indemnities*) below. |
| **"Perfection Requirements"** | means the making or the procuring of the filing of a Uniform Commercial Code financing statement in respect of the collateral assignment set out in the Security Agreement. |
| **"Permitted Security"** | means: |

(a) any lien arising by operation of law and in the ordinary course of trading, provided such lien does not arise a result of any default or omission by SH1 or any of its Affiliated Parties or from the use of the Collateral Account to hold any asset other than SH1 ECAPS or any payments or distributions in respect thereof, unless agreed in writing by LBHI; and

(b) any lien or right of set off arising under the general terms and conditions of any banks (including custodian banks) with which SH1 maintains a banking relationship in the ordinary course of business.

| | |
|---|---|
| **"PLC"** | means Lehman Brothers Holdings plc (in administration). |
| **"PLC Note Series 1"** | means the EUR225,000,000 Fixed Rate to CMS-Linked Subordinated Notes due 30 March 2035 issued by PLC as described in an offering circular dated 29 March 2005. |
| **"PLC Note Series 2"** | means the EUR200,000,000 Fixed Rate Subordinated Notes due 21 September 2035 issued by PLC as described in an offering |

5

|  | circular dated 19 September 2005, together with the EUR50,000,000 Fixed Rate Subordinated Notes due 21 September 2035 issued by PLC as described in an offering circular dated 26 October 2005, which were consolidated together. |
|---|---|
| **"PLC Note Series 3"** | means the EUR500,000,000 Fixed/Floating Rate Subordinated Notes due 22 February 2036 issued by PLC as described in an offering circular dated 20 February 2006. |
| **"PLC Preference Shares"** | means the non-cumulative redeemable preference shares issued by PLC. |
| **"PLC Sub-Debts"** | means the debts owed on the following: |
|  | (a) USD4,500,000,000 Long-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 30 July 2004; |
|  | (b) EUR3,000,000,000 Long-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 30 July 2004; and |
|  | (c) USD8,000,000,000 Short-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 31 October 2005. |
| **"PLC Sub-Notes"** | means PLC Note Series 1, PLC Note Series 2 and PLC Note Series 3. |
| **"PLC Surplus"** | has the meaning given to it in Clause 4.2 (*Settlement – Payment Provisions*) below. |
| **"Priority Proceedings"** | means the applications issued by the joint administrators of LBHI2 and the joint administrators of PLC on 16 March 2018 seeking directions from the High Court of Justice in England and Wales among other things with respect to the relative ranking and purported release of subordinated debts, including the appeals issued by certain parties to the Court of Appeal (case references A3/2020/1787, A3/2020/1810 and A3/2020/1811), any appeals issued by any party to the Supreme Court, and any ancillary proceedings in relation to such applications. |
| **"Related SH Agreements"** | has the meaning given to it in Recital C. |
| **"Rule 14.44"** | means rule 14.44 of the Insolvency (England and Wales) Rules 2016. |
| "Scheduled Claims" | means each of the claims against LBHI2, PLC and LBL listed in Schedule 1 (*Scheduled Claims*) to this Agreement, as such schedule may be amended from time to time pursuant to Clause 4.4 (*Settlement – Payment Provisions*) below. |
| **"Security Agreement"** | means the New York law governed security agreement dated the Effective Date and made between SH1 (as Pledgor) and LBHI (as Pledgee) (each such term as defined therein). |

6

| | |
|---|---|
| **"Selected Comparator Settlement"** | has the meaning given to it in Clause 8.3 (*Most Favoured Nation Option*) below. |
| **"Series 1 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(e) (*Settlement – Payment Provisions*) below. |
| **"Series 2 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(f) (*Settlement – Payment Provisions*) below. |
| **"Series 3 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(g) (*Settlement – Payment Provisions)* below. |
| **"Settling Holders"** | has the meaning given to it in Recital C. |
| **"SH1 Additional ECAPS"** | has the meaning given to it in Clause 6.2 (*Future ECAPS Purchases*) below. |
| **"SH1 ECAPS"** | means the SH1 Effective Date ECAPS and the SH1 Additional ECAPS. |
| **"SH1 Effective Date ECAPS"** | means the ECAPS beneficially owned by SH1 as at the Effective Date, as set out at the version of Schedule 3 (*SH1 ECAPS*) to this Agreement applicable on the Effective Date. |
| **"SH1 Gain/Loss"** | has the meaning given to it in Clause 4.5 (*Settlement – Payment Provisions*) below. |
| **"SH1 Payments"** | has the meaning given to it in Clause 4.5(h) (*Settlement – Payment Provisions*) below. |
| **"SH1 Share of ECAPS Series 1"** | has the meaning given to it in Clause 4.5(i) (*Settlement – Payment Provisions*) below. |
| **"SH1 Share of ECAPS Series 2"** | has the meaning given to it in Clause 4.5(j) (*Settlement – Payment Provisions*) below. |
| **"SH1 Share of ECAPS Series 3"** | has the meaning given to it in Clause 4.5(k) (*Settlement – Payment Provisions*) below. |
| **"SH2"** | has the meaning given to it in Recital C. |
| **"SH3"** | has the meaning given to it in Recital C. |
| **"Subsidiary Undertaking"** | means: <br><br> a) a subsidiary undertaking within the meaning of section 1162 of the 2006 Act; and <br><br> b) any undertaking which would be a subsidiary undertaking within the meaning of section 1162 of the 2006 Act but for any security subsisting over the shares in that undertaking from time to time. |
| **"Threshold Amount"** | has the meaning given to it in Clause 4.3 (*Settlement – Payment Provisions*) below. |

WEIL:\98047175\1\58399.0011

| | |
|---|---|
| **"Transferred ECAPS"** | has the meaning given to it in Clause 4.20 (*Settlement – Payment Provisions*) below. |
| **"UK MAR"** | means EU MAR as it forms part of English law by virtue of the European Union (Withdrawal) Act 2018 (as amended). |
| **"USD"** | means the U.S. dollar, being the official currency of the United States of America. |
| **"VAT"** | means value added tax. |

1.2     Unless the context requires otherwise in this Agreement:

   **(a)**     a reference to a Clause or a Schedule is a reference to a clause of, or schedule to, this Agreement;

   **(b)**     references to the singular shall include references to the plural and vice versa;

   **(c)**     references to a "person" shall be construed so as to include any individual, firm, company, corporation, body corporate, fund, government, state or agency of a state, local or municipal authority or government body or any joint venture, association or partnership (whether or not having separate legal personality);

   **(d)**     the words "including" and "include" shall not be construed as or take effect as limiting the generality of the foregoing words;

   **(e)**     words importing any gender shall include all other genders;

   **(f)**     a reference to any statute or statutory provision (including any subordinate legislation) includes any statute or statutory provision which amends, extends, consolidates or replaces the same, or which has been amended, extended, consolidated or replaced by the same, and shall include any orders, regulations, instruments or other subordinate legislation made under the relevant statute or statutory provision;

   **(g)**     a reference to an agreement is to that agreement as amended and/or restated from time to time;

   **(h)**     the headings shall not be construed as part of this Agreement nor affect its interpretation;

   **(i)**     a reference to a time of day is a reference to London time;

   **(j)**     a reference to the date of a notice or other written communication sent pursuant to this Agreement is a reference to the date on which it is deemed received pursuant to Clause 15.2 (*Notices and Communications*); and

   **(k)**     a reference to a currency is a reference to the lawful currency for the time being of the relevant country.

## 2    COMPLETION DATE

2.1     This Agreement in its entirety will become effective and legally binding among the Parties on and from, and not before, the date that the SH1 Effective Date ECAPS are deposited in the Collateral Account pursuant to Clause 7.1 (*Security*) (such date being the "**Completion Date**").

**2.2**    If the Completion Date does not occur within seven (7) calendar days of the Effective Date, this Agreement will terminate in its entirety and will be of no legal effect.

**3**    **GENERAL ACKNOWLEDGMENTS**

**3.1**    Each of the Parties acknowledges that the compromises, rights and obligations in this Agreement are without prejudice to, and are not intended to influence, the Priority Proceedings or the rights and remedies of the Parties otherwise.

**3.2**    Nothing in this Agreement shall be, or be deemed to constitute, a waiver, consent, amendment or agreement to any matter or obligation other than those expressly noted in this Agreement.

**3.3**    This Agreement is not, and shall not be represented or construed as, an admission of liability or wrongdoing on the part of any Party or any other person or entity.

**3.4**    Each of the Parties acknowledges that this Agreement is the product of arm's-length negotiations and has been duly, freely and voluntarily executed and delivered by it, and each of the Parties acknowledges that this Agreement constitutes valid and legally binding obligations, enforceable against it in accordance with its terms.

**4**    **SETTLEMENT - PAYMENT PROVISIONS**

*The settlement payments*

**4.1**    In order to settle the economic outcome of the Priority Proceedings as it would apply as between LBHI and SH1, LBHI shall make payments to SH1 and/or SH1 shall make payments to LBHI in the amount of the SH1 Gain/Loss, as required by this Clause 4 (*Settlement – Payment Provisions*).

*Defined terms for the calculations*

**4.2**    "**PLC Surplus**" means:

**(a)**    if, as at the date on which such surplus is to be determined, LBHI2 has not made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full, the aggregate total amount of funds that PLC has distributed on the PLC Sub-Notes, PLC Sub-Debts, ECAPS Guarantees and PLC Preference Shares from time to time on or after 7 July 2021 (being the "**Initial Date**"), expressed as an amount in GBP; and

**(b)**    if, as at the date on which such surplus is to be determined, LBHI2 has made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full, the sum of: (i) the aggregate total amount of funds that LBHI2, PLC and LBL have distributed on the Scheduled Claims from time to time on or after the Initial Date in excess of the Threshold Amount; plus (ii) the aggregate total amount of funds that PLC has distributed on the PLC Sub-Notes, PLC Sub-Debts, ECAPS Guarantees and PLC Preference Shares from time to time on or after the Initial Date, and the aggregate total amount of funds referred to at (i) and (ii) above shall be expressed as an amount in GBP.

**4.3**    "**Threshold Amount**" means GBP 160,308,671.10 or such revised amount as is stated in the most recent notice sent by LBHI pursuant to Clause 4.4 (*Settlement – Payment Provisions*).

**4.4**    Subject to Clause 4.19 (*Settlement – Payment Provisions*) below, if (i) any new claim (other than the PLC Sub-Debts, PLC Sub-Notes and ECAPS Guarantees) is admitted to proof against PLC or LBL (save to the extent that the economic interest in such claim flows, directly or indirectly, to PLC, LBHI2 or LBL (in which case LBHI shall give notice to SH1 of that fact)); or (ii) the relevant administrators or the court revise the amount at which any of the Scheduled Claims is admitted to proof such that the relevant admitted claim amount listed in Column B of Schedule 1 (*Scheduled*

9

*Claims*) to this Agreement is incorrect, in each case LBHI shall send SH1 a revised version of Schedule 1 (*Scheduled Claims*) in which:

**(a)** The portion of any new provable claim which is admitted against PLC or LBL, whose economic interest does not flow, directly or indirectly, to PLC, LBHI2 or LBL, is added to the list of Scheduled Claims and (i) the amount at which such portion of the claim is admitted to proof is inserted in Column B, and (ii) the outstanding amount to be paid on such portion of the claim, including statutory interest, is calculated without deduction of any distributions made after the Initial Date and is inserted in Column C, such that Column C represents the outstanding amount that would have been payable on that claim as at the Initial Date but for its late admittance. For the purpose of Schedule 1 (*Scheduled Claims*), the calculation of statutory interest on any new provable claim shall be based on a good faith estimate of the date on which it is anticipated that the provable amount of the new claim will be paid, and such estimate shall be updated as and when each distribution is paid on the provable claim.

**(b)** With respect to any revision to the amount at which a Scheduled Claim is admitted to proof: (i) the value in Column B of the admitted claim amount is updated to reflect the revised value, and (ii) the outstanding amount to be paid on the claim, including statutory interest, is recalculated in accordance with the revised value for the admitted claim amount, disregarding any distributions made after the Initial Date and inserted in Column C, such that Column C represents the outstanding amount that would have been payable on that claim as at the Initial Date if already admitted in the revised amount. For the purpose of Schedule 1 (*Scheduled Claims*), the calculation of statutory interest on a revised claim amount shall be based on a good faith estimate of the date on which it is anticipated that the outstanding provable amount of such claim will be paid, and such estimate shall be updated as and when each distribution is paid on the outstanding amount of the provable claim. Notwithstanding anything in the preceding sentences, if the admitted claim amount is decreased, the Scheduled Claim shall be revised only to the extent that the relevant debtor actually receives any excess distribution paid on that claim.

**(c)** The aggregate total value of all amounts in Column C is updated to reflect the changes made pursuant to this Clause 4.4 (*Settlement – Payment Provisions*) and the Threshold Amount shall thereafter be an amount equal to that updated aggregate total amount in Column C. For the avoidance of doubt, the Threshold Amount does not include the outstanding amount to be paid on the LBHI2 Sub-Notes.

When sending any notice or revised version of Schedule 1 (*Scheduled Claims*) under this Clause 4.4 (*Settlement – Payment Provisions*), LBHI shall attach the information and documentation relied upon by LBHI for such notice or revisions, including (if applicable) information showing that the economic interest in a claim flows, directly or indirectly, to PLC, LBHI2 or LBL, subject to Clause 4.9 (*Settlement – Payment Provisions*) below.

**4.5** "**SH1 Gain/Loss**" means, subject to Clause 4.20 (*Settlement – Payment Provisions*) below, the amount of SH1's notional gain or loss, calculated according to the following formula and expressed as an amount in GBP:

(P1 – (16.19% x Series 1 Share of PLC Notes x PLC Surplus)) x SH1 Share of ECAPS Series 1 +

(P2 – (16.19% x Series 2 Share of PLC Notes x PLC Surplus)) x SH1 Share of ECAPS Series 2 +

(P3 – (16.19% x Series 3 Share of PLC Notes x PLC Surplus)) x SH1 Share of ECAPS Series 3 +

LBHI Payments – SH1 Payments = **SH1 Gain/Loss**

Where:

10

(a)    "**LBHI Payments**" is, subject to Clause 4.20 (*Settlement – Payment Provisions*) below, as at any date of determination, the aggregate total of amounts already paid by LBHI pursuant to Clauses 4.14 and 4.15 (*Settlement – Payment Provisions*) below, expressed in GBP.

(b)    "**P1**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 1 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 1, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 1 pro-rata to their holdings of ECAPS Series 1, expressed in GBP.

(c)    "**P2**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 2 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 2, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 2 pro-rata to their holdings of ECAPS Series 2, expressed in GBP.

(d)    "**P3**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 3 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 3, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 3 pro-rata to their holdings of ECAPS Series 3, expressed in GBP.

(e)    "**Series 1 Share of PLC Notes**" is the GBP37,674,151.81 deemed provable value of PLC Notes Series 1 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 22.411%.

(f)    "**Series 2 Share of PLC Notes**" is the GBP52,931,231.82 deemed provable value of PLC Notes Series 2 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 31.487%.

(g)    "**Series 3 Share of PLC Notes**" is the GBP77,499,131.64 deemed provable value of PLC Notes Series 3 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 46.102%.

(h)    "**SH1 Payments**" is, subject to Clause 4.20 (*Settlement – Payment Provisions)* below, as at any date of determination, the aggregate total of amounts already paid by SH1 pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) below, expressed in GBP.

(i)    "**SH1 Share of ECAPS Series 1**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH1's holding of EUR 5,000,000 face amount of ECAPS Series 1, expressed as a percentage by value of the EUR 173,825,000 total outstanding issuance of ECAPS Series 1, being agreed at 2.876%.

(j)    "**SH1 Share of ECAPS Series 2**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH1's holding of EUR 13,600,000 face amount of ECAPS Series 2, expressed as a percentage by value of the EUR 250,000,000 total outstanding issuance of ECAPS Series 2, being agreed at 5.440%.

11

**(k)**    "**SH1 Share of ECAPS Series 3**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH1's holding of EUR 18,650,000 face amount of ECAPS Series 3, expressed as a percentage by value of the EUR 373,650,000 total outstanding issuance of ECAPS Series 3, being agreed at 4.991%.

**4.6**    For the purpose of the calculations in this Clause 4 (*Settlement – Payment Provisions*), if any distribution or payment is made in a currency other than GBP, the GBP equivalent shall be calculated using the Bank of England Spot Rate for the date of distribution or payment.

**4.7**    Worked examples of:

**(a)**    the calculation of the PLC Surplus and the SH1 Gain/Loss; and

**(b)**    the calculation of SH1 Share of ECAPS Series 1, SH1 Share of ECAPS Series 2 and SH1 Share of ECAPS Series 3 in a scenario in which SH1 or any of its Affiliated Parties  (other than SH2 or SH3) purchase SH1 Additional ECAPS pursuant to Clause 6.2 (*Future ECAPS Purchases*),

are set out at Schedule 2 (*SH1 Gain/Loss – Worked Examples*) to this Agreement, by way of illustration only.

*Calculation and payment of SH1 Gain/Loss*

**4.8**    Subject to Clause 4.9 and Clause 4.19 (*Settlement – Payment Provisions*) below, within fourteen (14) calendar days of the date of each distribution to creditors by PLC, LBHI2 and/or LBL, LBHI shall send a notice to SH1 reflecting its calculations, set out substantially in the form of the worked examples at Schedule 2 (*SH1 Gain/Loss – Worked Examples*) to this Agreement, of the following:

**(a)**    the status of post-Initial Date distributions on the Scheduled Claims as compared to the Threshold Amount;

**(b)**    the PLC Surplus; and

**(c)**    the SH1 Gain/Loss.

LBHI's notice shall attach the information and documentation that has been relied upon by LBHI for the purposes of the calculations (including those documents referred to at Clause 4.10 (*Settlement – Payment Provisions*).

**4.9**    To the extent that any information or documentation that LBHI would otherwise be required to provide under Clause 4.4 or Clause 4.8 (*Settlement – Payment Provisions*) is subject to confidentiality obligations preventing its disclosure, LBHI shall use reasonable efforts to obtain the requisite permission(s) in order that such information or documentation can be disclosed to SH1 provided that LBHI shall not be required to take part in any legal proceedings or incur any out-of-pocket expenses (other than non-material expenses incurred in the ordinary course of obtaining such permissions) in doing so. In the event that LBHI is unable to obtain the requisite permission(s), then the relevant confidential information or documentation does not need to be provided, however LBHI shall confirm in the notice: (i) that it has sought the requisite permission(s) but its request was refused or no substantive response has been received; and (ii) the nature of the relevant information or documentation that cannot be provided, including its relevance for the purposes of the calculations. For the avoidance of doubt, the provision of any information or document by LBHI does not amount to a representation by LBHI as to whether it contains "inside information" within the meaning of UK MAR and/or EU MAR or otherwise contains material non-public information under applicable securities law, including the Exchange Act. Information and documentation supplied under Clause 4.4 or Clause 4.8 (*Settlement – Payment Provisions*) shall be sent by LBHI only to ███████████████    at ███████████████

12

**4.10**   LBHI shall calculate the PLC Surplus and the status of post-Initial Date distributions on the Scheduled Claims by reference to the LBHI2, PLC and LBL administrators' dividend letters, notices of declaration of dividend, progress reports and other information provided by those administrators, if and to the extent available.  If the relevant information is unavailable or the available information is shown to be inaccurate or incomplete for the purposes of the relevant calculations, LBHI or SH1 shall promptly request further, updated or corrected information from the relevant administrators (with a copy of any such correspondence and any responses being sent to the other party for information) and the applicable time requirements set out in Clauses 4.8, 4.11, 4.12 and 4.15 (*Settlement – Payment Provisions*) shall be stayed pending the relevant administrators' substantive response, with such stay lasting up to a maximum of forty-five (45) calendar days from the date of such request (or such other period as may be agreed by the parties hereto), following which the time requirements shall no longer be stayed.

**4.11**   Within fourteen (14) calendar days of the date of LBHI's notice under Clause 4.8 (*Settlement – Payment Provisions*) above, SH1 shall send LBHI a notice specifying whether or not it agrees each of the calculations set out in LBHI's notice. If SH1 does not agree one or more of the calculations, SH1 shall set out in its notice its reasons for not agreeing the relevant calculations and any additional information SH1 reasonably believes that it needs in order to check the calculations. LBHI and SH1 shall discuss the reasons for SH1's non-agreement and any information requests, and shall promptly take reasonable steps in good faith to seek to reach agreement on the relevant calculations.  If SH1 does not send such a notice within the fourteen (14) calendar day period, SH1 shall be deemed to have agreed LBHI's calculations.

**4.12**   If no agreement or deemed agreement of the value of the SH1 Gain/Loss has been reached within forty-two (42) calendar days of the date of LBHI's notice under Clause 4.8 (*Settlement – Payment Provisions*) above, either LBHI or SH1 may give notice under Clause 5.1 (*Expert Determination*) below.

**4.13**   If the SH1 Gain/Loss is a positive number, then SH1 shall pay to LBHI an amount in GBP equal to the SH1 Gain/Loss.  The date for payment is as provided for at Clause 4.15 (*Settlement – Payment Provisions*) below.

**4.14**   If the SH1 Gain/Loss is a negative number, then LBHI shall pay to SH1 an amount in GBP equal to the SH1 Gain/Loss (expressed as a positive number).  The date for payment is as provided for at Clause 4.15 (*Settlement – Payment Provisions*) below.

**4.15**   SH1 and/or LBHI (as relevant) shall make the payments required by Clauses 4.13 and 4.14 (*Settlement – Payment Provisions*) above within fourteen (14) calendar days of the amount being agreed or deemed agreed pursuant to Clause 4.11 (*Settlement – Payment Provisions*) above or determined by the Calculation Expert pursuant to Clause 5 (*Expert Determination*) below.  Payment shall be made to:

    **(a)**    For payments to LBHI:

        **Account Name:**    ███████████████

        **Sort Code:**    ██████

        **Account Number:**    ███████

        **IBAN:**    ██████████████

        **SWIFT/BIC:**    ███████

    **(b)**    For payments to SH1:

        **Intermediary Bank:**    ███████████████████

13

| | |
|---|---|
| **Intermediary Bank BIC:** | ██████████ |
| **Sort Code:** | █████ |
| **Account Name:** | ███████████████████ |
| **Account BIC:** | ███████████ |
| **Beneficiary Name:** | ██████████████ |
| **Beneficiary Account Number:** | ████████ |

**4.16**    The calculations in this Agreement are to be made by reference to the gross amounts distributed or paid by PLC, LBHI2, LBL, LBHI and SH1 rather than by reference to amounts received by the relevant recipient, and the calculations shall not take into account any tax suffered by the relevant recipient in respect of any such distributions (whether imposed by way of withholding or otherwise) or any other deduction taken from such distributions.

**4.17**    Subject to Clause 4.18 (*Settlement – Payment Provisions*), all amounts due under this Agreement shall be paid in full without any set-off, counterclaim, deduction or withholding.

**4.18**    All payments made in accordance with Clauses 4.13 and 4.14 (*Settlement – Payment Provisions*) shall be made free and clear of, and without withholding or deduction for, any taxes duties, assessments or governmental charges in the nature of a tax, unless such withholding or deduction is required by law. If any such withholding or deduction is required, the party making the payment shall (i) not be required to pay any additional amounts to the recipient in respect of such withholding or deduction; and (ii) deliver to the party receiving the payment evidence reasonably satisfactory to such party that the withholding or deduction has been made and remitted to the relevant tax authority.

**4.19**    LBHI shall only be required:

**(a)**    to give notice or send a revised version of Schedule 1 (*Scheduled Claims*) pursuant to Clause 4.4 (*Settlement – Payment Provisions*); and/or

**(b)**    to include the calculation at Clause 4.8(a) (*Settlement – Payment Provisions*) in its notice to SH1 pursuant to Clause 4.8 (*Settlement – Payment Provisions*);

if, as at the date on which LBHI would otherwise be required to do so, LBHI2 has made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full. If LBHI2 subsequently makes such a distribution, the time for giving any notices that have been postponed pursuant to this Clause 4.19 (*Settlement – Payment Provisions*) shall run from the date of that distribution.

**4.20**    If SH1 transfers any SH1 ECAPS pursuant to Clause 7.6 (*Security*) below (the relevant SH1 ECAPS being the "**Transferred ECAPS**"), the calculation of due but unpaid amounts of the SH1 Gain/Loss and of future amounts of the SH1 Gain/Loss shall be altered, if and to the extent necessary, such that:

**(a)**    all obligations to pay and rights to receive payment of the SH1 Gain/Loss which arise by reference to the Transferred ECAPS shall pass to the transferee of those Transferred ECAPS, including any such amounts which are accrued but not paid;

**(b)**    for the purposes of determining the amount of the LBHI Payments under this Agreement, all amounts that have been paid by LBHI pursuant to Clauses 4.14 and 4.15 (*Settlement – Payment Provisions*) above with respect to the Transferred ECAPS shall be excluded (and

14

shall instead be included in the equivalent term in the equivalent settlement agreement between LBHI and the transferee); and

**(c)**    for the purposes of determining the amount of the SH1 Payments under this Agreement, all amounts that have been paid by SH1 pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) above with respect to the Transferred ECAPS shall be excluded (and shall instead be included in the equivalent term in the equivalent settlement agreement between LBHI and the transferee);

and the aggregate amount of the SH1 Gain/Loss due to or from SH1 and the transferee shall be the same amount as would have been due to or from SH1 (alone) if it had not transferred the Transferred ECAPS.

**4.21**    No item shall be included or excluded more than once in or from the calculations in this Clause 4 (*Settlement – Payment Provisions*) where to do so would result in double counting.

**4.22**    Each of LBHI and SH1 shall cooperate in good faith to achieve the prompt agreement, deemed agreement or determination of the calculation of the SH1 Gain/Loss pursuant to this Clause 4 (*Settlement – Payment Provisions*) and/or Clause 5 (*Expert Determination*).

## 5    EXPERT DETERMINATION

**5.1**    If LBHI and SH1 do not agree, and are not deemed to agree, the calculation of the SH1 Gain/Loss under Clause 4 (*Settlement – Payment Provisions*), LBHI and/or SH1 may give notice that they wish to refer the matter to determination by an independent expert who is an accountant and/or licensed insolvency practitioner, acting as expert and not as arbitrator (the "**Calculation Expert**"). If either LBHI or SH1 gives such a notice, LBHI and SH1 shall use reasonable endeavours in good faith to agree the appointment of a Calculation Expert, including the terms of that appointment, as soon as reasonably practicable.

**5.2**    If LBHI and SH1 are unable to agree on a Calculation Expert or their terms of appointment under Clause 5.1 (*Expert Determination*), in each case within twenty-one (21) calendar days of the date of the notice given pursuant to Clause 5.1 (*Expert Determination*) above, LBHI and SH1 shall take the following steps:

**(a)**    if one or more Calculation Experts have previously been appointed by the London Court of International Arbitration ("**LCIA**") pursuant to Clause 5.2(b) (*Expert Determination*) of this Agreement or pursuant to any Additional Settlement Agreement, whether such expert determination process is completed or ongoing, LBHI and SH1 shall request that the most recently appointed Calculation Expert also act as the Calculation Expert under this Agreement on the same terms (and if they are unable or unwilling to act, shall make the request of each of the other previously appointed Calculation Experts in turn, starting with the most recently appointed), and to the extent reasonably practicable the Calculation Expert shall combine the expert determination processes under this Agreement and under any such Additional Settlement Agreement such that they can be organised and determined together and in a consistent manner; and

**(b)**    if no Calculation Expert has previously been appointed by the LCIA pursuant to this Clause 5.2(b) (*Expert Determination*) or pursuant to any Additional Settlement Agreement, or if the previously appointed Calculation Experts are unable or unwilling to act in respect of a calculation dispute under this Agreement, either LBHI or SH1 may apply, in writing, to the LCIA to appoint a Calculation Expert, enclosing a copy of this Agreement and a brief statement describing the nature and circumstances of the dispute and setting out any matters that the applicant party wishes to bring to the attention of the LCIA for the purposes of selecting the Calculation Expert, with simultaneous copy to the other party. The expert determination shall be administered by the LCIA, which shall also be the appointing authority for the purposes of appointing the Calculation Expert. Within seven (7) calendar

days of service of the application, the other party shall send to the LCIA, with simultaneous copy to the applicant party, a reply to any matters raised by the applicant party. The LCIA shall endeavour to appoint the Calculation Expert within seven (7) calendar days of service of the reply, or as soon as reasonably practicable thereafter.

If a Calculation Expert is to be appointed under this Clause 5.2 (*Expert Determination*), LBHI and SH1 shall be deemed to have agreed the Calculation Expert's appointment and shall, acting reasonably and in good faith, approve and formalise the terms of the Calculation Expert's engagement promptly. The terms of the Calculation Expert's appointment under Clause 5.2(b) (*Expert Determination*) shall be consistent with this Clause 5 (*Expert Determination*), and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (ADR).

5.3     If there is a referral to a Calculation Expert, the following provisions shall apply:

(a)     each of LBHI and SH1 shall prepare a written statement on the matters in dispute, which shall include their proposed value for the SH1 Gain/Loss and which, together with any relevant documents, shall be sent to the Calculation Expert and to the other party within twenty-eight (28) calendar days of the date of the Calculation Expert's appointment, being the date they are appointed by the LCIA (if so appointed) or the date of their engagement letter (if not appointed by the LCIA);

(b)     each of LBHI and SH1 may send one set of written comments on the other party's written statement (addressing, in particular, the proposed value for the SH1 Gain/Loss set out at Clause 5.3(a) (*Expert Determination*)) to the Calculation Expert and to the other party within twenty-eight (28) calendar days of the submission of the written statements under Clause 5.3(a) (*Expert Determination*);

(c)     the Calculation Expert shall be entitled:

(i)     to extend the time limits in Clauses 5.3(a) and 5.3(b) (*Expert Determination*) above by a maximum of fourteen (14) calendar days each;

(ii)     to disregard any written statement or comments not delivered to the Calculation Expert within the time periods so stipulated;

(iii)     to require LBHI and SH1 (and their respective advisers) to attend one or more meetings and to raise enquiries of them about any matters which the Calculation Expert considers relevant within such timeframe as the Calculation Expert considers necessary in view of the timeframe for their determination specified in 5.3(e) (*Expert Determination*) below;

(iv)     in the absence of agreement between LBHI and SH1, to determine the procedure to be followed in undertaking the expert determination process as they consider appropriate (including the prescribed format and maximum length of any written statement or comments), insofar as the procedure is not set out in this Clause 5 (*Expert Determination*); and

(v)     to appoint advisers (including legal advisers) if required;

(d)     LBHI and SH1 shall use their respective reasonable endeavours to procure that the Calculation Expert is given all such assistance and access to documents and other information as they may reasonably require in order to make their determination;

(e)     the Calculation Expert shall give their determination, with written reasons, within sixty (60) calendar days of the deadline for delivery of the written comments referred to in Clause 5.3(b) (*Expert Determination*), unless LBHI, SH1 and the Calculation Expert agree to another deadline; and

16

**(f)**  save in the case of fraud or manifest error, the determination by the Calculation Expert shall be final and binding on all concerned.

5.4  In determining the SH1 Gain/Loss, the Calculation Expert shall take into account the information and documents provided to them pursuant to Clause 5.3 (*Expert Determination*) and the calculations set out at Clause 4 (*Settlement – Payment Provisions*).

5.5  Each of LBHI and SH1 shall bear their own legal costs and other expenses incurred by them in respect of the expert determination process. The (i) LCIA's fees (if applicable) and (ii) Calculation Expert's fees and any costs incurred by them in arriving at their determination (including any fees and costs of any advisers appointed by the Calculation Expert), in each case payable pursuant to their terms of engagement, shall be paid by the party whose proposed value for the SH1 Gain/Loss, as specified in the submissions provided under Clause 5.3(a) (*Expert Determination*), is furthest from that determined by the Calculation Expert. If the Calculation Expert's determination falls exactly between LBHI and SH1's proposed values, LBHI and SH1 shall bear the Calculation Expert's fees and costs equally.  If there is uncertainty as to whose value is furthest from that determined by the Calculation Expert, because one party has failed to state a single asserted value for the SH1 Gain/Loss pursuant to Clause 5.3(a) (*Expert Determination*) above, the Calculation Expert shall determine which of LBHI and/or SH1 shall pay the fees and costs, on the principle that costs should follow the event. The LCIA's fees and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (LCIA Appointing Only) and Schedule of Costs (ADR) respectively.

5.6  If the Calculation Expert dies or becomes unwilling or incapable of acting, or does not deliver their determination within the time required by this Clause 5 (*Expert Determination*), then:

**(a)**  LBHI and SH1 shall seek to agree on the appointment of a replacement Calculation Expert and shall seek to agree with the Calculation Expert the terms of their appointment, as set out at Clause 5.1 (*Expert Determination*); and

**(b)**  if LBHI and SH1 do not reach an agreement in relation to the appointment of a replacement Calculation Expert within seven (7) calendar days of being notified of the Calculation Expert's inability to act or their failure to give a determination within the time required, either party may apply to the LCIA to discharge the Calculation Expert and to appoint a replacement Calculation Expert in accordance with Clause 5.2(b) (*Expert Determination*), which shall apply to the appointment of the replacement Calculation Expert as if they were the first Calculation Expert to be appointed. If a Calculation Expert is to be appointed under this Clause 5.6 (*Expert Determination*), LBHI and SH1 shall be deemed to have agreed the Calculation Expert's appointment and shall, acting reasonably and in good faith, approve and formalise the terms of the Calculation Expert's engagement promptly. The terms of the Calculation Expert's appointment shall be consistent with this Clause 5 (Expert Determination), and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (ADR).

5.7  Each of LBHI and SH1 shall act reasonably and co-operate in good faith to give effect to the provisions of this Clause 5 (*Expert Determination*) and otherwise do nothing to hinder or prevent the Calculation Expert from reaching their determination. Time limits set out in this Clause 5 (*Expert Determination*) may be extended by written agreement between LBHI and SH1.

5.8  Any written statements or other information provided by LBHI or SH1 to any Calculation Expert, and any determination of a Calculation Expert, may be used or referred to without redaction in any subsequent expert determination process under this Agreement or under any Additional Settlement Agreement.

5.9  The Calculation Expert and the LCIA shall have no liability to LBHI or SH1 howsoever for any act or omission in so acting, save where the act or omission is shown by either party to constitute

conscious and/or deliberate wrongdoing committed by the body or person alleged to be liable to that party.

**5.10**    All communications concerning the expert determination process shall be copied to the LCIA (if the appointment is made by the LCIA) and, once appointed, the Calculation Expert. All communications shall be sent by email, in accordance with Clause 15 (*Notices and Communications*).

**5.11**    If two or more of the Settling Holders are unable to agree the calculation of their gain/loss with LBHI under Clause 4.11 (*Settlement – Payment Provisions*), or an equivalent provision of the relevant Related SH Agreement, and the dispute proceeds to expert determination, the Settling Holders shall submit a single joint written statement and proposed approach to that calculation under Clause 5.3(a) (*Expert Determination*) and a single joint set of written comments under Clause 5.3(b) (*Expert Determination*) pursuant to the terms of this Agreement and the Related SH Agreements. For the avoidance of doubt, the Settling Holders shall agree to use the same Calculation Expert.

**6**    **FUTURE ECAPS PURCHASES**

**6.1**    If SH1 or any of its Affiliated Parties (other than SH2 or SH3) acquire any additional interest in any ECAPS at any time, whether directly or indirectly, through assignment or otherwise, SH1 shall notify LBHI in writing within seven (7) calendar days of the acquisition (being measured from the trade date, if applicable). SH1's notice shall specify the face value of such additional ECAPS acquired, the series of which such additional ECAPS form part and the resultant aggregate principal amount of ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3 held by SH1 and its Affiliated Parties (other than SH2 and SH3) following such acquisition. This Clause 6 (*Future ECAPS Purchases*) shall not apply to any acquisition by an Affiliated Party of SH1 in respect of which a notice has been served under Clause 6.1 (*Future ECAPS Purchases*) of either of the Related SH Agreements.

**6.2**    Any additional interest in ECAPS so acquired by SH1 or any of its Affiliated Parties (other than SH2 or SH3) on or after the Effective Date and on or before Monday, 27 September 2021 (the "**Additional Period**") (with the date of acquisition for these purposes being the trade date, if applicable) shall be subject to the terms of this Agreement, including but not limited to Clause 7 (*Security*) and Clause 11 (*Agreement Not to Sue*), whether or not settlement of such acquisition occurs during the Additional Period (such additional ECAPS being the "**SH1 Additional ECAPS**"), and the list of holdings set out at Schedule 3 (*SH1 ECAPS*) to this Agreement shall be deemed updated in accordance with the notice at Clause 6.1 (*Future ECAPS Purchases*). LBHI shall recalculate the definitions of SH1 Share of ECAPS Series 1, SH1 Share of ECAPS Series 2 and SH1 Share of ECAPS Series 3 (as relevant) in accordance with Clause 4 (*Settlement – Payment Provisions*) to take into account the newly acquired SH1 Additional ECAPS. Within fourteen (14) calendar days of SH1's notice pursuant to Clause 6.1 (*Future ECAPS Purchases*) above, LBHI shall send SH1 a notice of the revised calculations of SH1 Share of ECAPS Series 1, SH1 Share of ECAPS Series 2 and SH1 Share of ECAPS Series 3 (as relevant), and those terms shall be deemed amended accordingly, with such amendment being deemed to take effect on the date of acquisition of such SH1 Additional ECAPS (being for these purposes the settlement date, if applicable).

**6.3**    Any ECAPS acquired by SH1 or any of its Affiliated Parties after the expiry of the Additional Period (with the acquisition being treated as taking place on the trade date, if applicable) shall not be subject to the terms of this Agreement and none of the definitions of SH1 Share of ECAPS Series 1, SH1 Share of ECAPS Series 2 and SH1 Share of ECAPS Series 3 shall be amended to reflect them, unless the Parties agree otherwise in writing. Nevertheless, the provisions of Clause 11 (*Agreement Not To Sue*) shall govern all of SH1's and its Affiliated Parties' (other than SH2 and SH3) activities in respect of all ECAPS they own, whether purchased prior to, during or after the expiry of the Additional Period.

WEIL:\98047175\1\58399.0011

## 7    SECURITY

*Security over SH1 Effective Date ECAPS and SH1 Additional ECAPS*

7.1    SH1 shall deposit all SH1 Effective Date ECAPS in the Collateral Account within seven (7) calendar days of the Effective Date, and upon doing so shall send LBHI proof that it has done so in the form of a screenshot or statement from ▓▓▓▓▓▓▓▓▓▓▓▓▓. SH1 shall, and shall procure that its Affiliated Parties shall, deposit all SH1 Additional ECAPS directly into the Collateral Account (and direct any selling counterparty to transfer all SH1 Additional ECAPS directly into the Collateral Account) and maintain all SH1 ECAPS in the Collateral Account and subject to the terms of the Collateral Documents.

7.2    On or before 27 September 2021, SH1 shall not acquire, and shall procure that its Affiliated Parties shall not acquire, any SH1 Additional ECAPS unless:

   (a)    such SH1 Additional ECAPS are capable of being deposited in the Collateral Account and held subject to the Collateral Documents; or

   (b)    SH1 provides alternative security or collateral (an "**Alternative Collateral Arrangement**") in form and substance satisfactory to LBHI (acting reasonably) within ten (10) calendar days of the settlement date in respect of the acquisition of such SH1 Additional ECAPS.

7.3    SH1 shall not create or agree to create or permit to subsist any Encumbrance over all or any part of the SH1 ECAPS other than Permitted Security.

7.4    If, within fourteen (14) calendar days of the settlement date in respect of any acquisition of any SH1 Additional ECAPS, SH1 has not complied with the undertakings in Clause 7.1 and 7.2 above, LBHI may elect in writing (but is under no obligation) to terminate the effect of Clause 6.2 (*Future ECAPS Purchases*) above insofar as it relates to the SH1 Additional ECAPS which have not been deposited into the Collateral Account and with respect to which no other security or collateral has been provided in form and substance satisfactory to LBHI (acting reasonably) with immediate effect, such that those SH1 Additional ECAPS shall cease to be treated as SH1 Additional ECAPS and shall instead be treated as ECAPS acquired after the expiry of the Additional Period for the purposes of Clause 6.3 (*Future ECAPS Purchases*).

7.5    Upon receipt by LBHI of all payments owed to LBHI pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) or other terms of this Agreement in cleared funds into the relevant account identified at Clause 4.15 (*Settlement – Payment Mechanics*), and upon LBHI satisfying itself that no such payments will be required to be made by SH1 to LBHI in the future, LBHI shall promptly notify SH1 that all payments required to be made under this Agreement have been made. With effect on and from the date of that notice, LBHI shall irrevocably and unconditionally:

   (a)    release and discharge SH1 from all security constituted, created, evidenced or conferred by or pursuant to this Agreement and the Collateral Documents;

   (b)    reassign and retransfer to SH1 all rights, interest and title to all assets and property of SH1 which were assigned or transferred to LBHI;

   (c)    authorise SH1 to give a notice (at SH1's cost and expense) on behalf of LBHI of the releases under this Clause 7.5 (*Security*) to any person on whom notice of any security interest created by this Agreement and the Collateral Document was served; and

   (d)    (i) file or authorise SH1 to file (at SH1's cost and expense) terminations of any and all Uniform Commercial Code financing statements and (ii) provide any necessary notice of termination of the Control Agreement entered into with respect to the Collateral Account.

19

*Sale of SH1 ECAPS*

**7.6**    SH1 may transfer any of the SH1 ECAPS to any party at any time provided that:

   **(a)**    the number of transfers that may be made following the Effective Date of ECAPS that, at the time of the transfer,  are or have been SH1 ECAPS, SH2 ECAPS or SH3 ECAPS (in the latter two cases as defined in the SH2 and SH3 Related SH Agreements) (together, "**Available ECAPS**") is limited such that Available ECAPS may at any given time be held only by a maximum of fifteen (15) different beneficial owners in aggregate (in addition to SH1, SH2 and SH3). For the avoidance of doubt, any subsequent transfer by any transferee will count towards the limitation on the number of transfers for the purposes of this Clause 7.6(a) (*Security*);

   **(b)**    on or before the settlement date in respect of such transfer, SH1 shall transfer to the transferee all obligations to pay and rights to receive payment of the SH1 Gain/Loss which arise by reference to the transferred ECAPS, including any such amounts which have accrued but not been paid;

   **(c)**    on or before the settlement date in respect of such transfer, SH1 shall transfer to the transferee any and all proceeds of those transferred ECAPS which are held in the Collateral Account at the date of the transfer;

   **(d)**    on or before the settlement date in respect of such transfer, SH1 shall procure that the transferee enters into a settlement agreement with LBHI on substantially the same terms as this Agreement as if such transferee were SH1 with respect to the relevant SH1 ECAPS;

   **(e)**    on or before the settlement date in respect of such transfer, SH1 shall procure that the transferee establishes an account equivalent to the Collateral Account and provides security to LBHI on terms substantially equivalent to the Collateral Documents with respect to the relevant SH1 ECAPS;

   **(f)**    on or before the settlement date in respect of such transfer, SH1 shall give notice to LBHI of the identity of the transferee, the face value of SH1 ECAPS that SH1 wishes to sell to that transferee (including the series of which such SH1 ECAPS form part);

   **(g)**    SH1 shall only be entitled to transfer SH1 ECAPS if LBHI consents in writing, such consent not to be unreasonably withheld, and the only grounds on which LBHI may reasonably withhold consent are limited to: (i) the entry by LBHI into a settlement agreement and related security agreements with the transferee, or the transactions contemplated by them, will result in, or is reasonably likely to result in, (A) negative tax consequences for LBHI and/or its Affiliated Parties, (B) material impediments on the ability of LBHI to enforce the rights of LBHI under the settlement agreement and related security agreements entered into between LBHI and the transferee, or (C) breach of sanctions, trade restrictions, money laundering, terrorist financing, criminal activities or other restrictions imposed by the United States Office of Foreign Assets Control or departments of the United States Government or the governments or competent authorities of other relevant jurisdictions (including, without limitation, the United Kingdom and the European Union), whether those concerns arise from the jurisdiction(s) in each case in which the proposed transferee is incorporated or carries on business or whether those concerns arise on any other grounds; (ii) the fact that a proposed transferee is a natural person (or a special purpose entity beneficially owned by a natural person and incorporated for the sole or primary purpose of holding the SH1 ECAPS); (iii) any actual or threatened dispute or legal proceedings between LBHI and/or any of its Affiliated Parties on the one hand and the proposed transferee and/or any of its Affiliated Parties on the other hand; or (iv) any of Clauses 7.6(a) to 7.6(e) (*Security*) not being satisfied on or before the settlement date in respect of the transfer; and

WEIL:\98047175\1\58399.0011

**(h)**    if the transfer of the SH1 ECAPS is completed, SH1 shall give notice to LBHI within five (5) Business Days of the transfer (being measured from the trade date, if applicable) specifying the face value of the SH1 ECAPS sold, the series of which such SH1 ECAPS form part and the resultant aggregate principal amount of ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3 held by SH1 following such transfer.

**7.7**    Each of LBHI and SH1 shall cooperate in good faith to achieve the entry by the transferee into the settlement agreement and related security agreements as set out in Clause 7.6 (*Security*) above.

**7.8**    Following any transfer by SH1 of SH1 ECAPS in accordance with Clause 7.6 (*Security*) above, the list of holdings set out at Schedule 3 (*SH1 ECAPS*) to this Agreement shall be deemed updated in accordance with the notice at Clause 7.6(h) (*Future ECAPS Purchases*). LBHI shall recalculate the definitions of SH1 Share of ECAPS Series 1, SH1 Share of ECAPS Series 2 and SH1 Share of ECAPS Series 3 (as relevant) in accordance with Clause 4 (*Settlement – Payment Provisions*) to take into account the transfer of SH1 ECAPS by SH1. LBHI shall send SH1 a notice of the revised calculations of SH1 Share of ECAPS Series 1, SH1 Share of ECAPS Series 2 and SH1 Share of ECAPS Series 3 (as relevant), and those terms shall be deemed amended accordingly, with such amendment being deemed to take effect on the date of the transfer of such SH1 ECAPS (being for these purposes the settlement date, if applicable).

## 8    MOST FAVOURED NATION OPTION

**8.1**    Subject to Clause 8.7 (*Most Favoured Nation Option*) below, if, during the period from the Effective Date to the Final Hearing Date, LBHI:

**(a)**    reaches an agreement in principle with respect to a Comparator Settlement; or

**(b)**    enters into any Comparator Settlement with respect to which it had not previously given notice under this Clause 8.1 (*Most Favoured Nation Option*) of an agreement in principle,

LBHI shall give notice to SH1 in writing with details of the agreement in principle or a copy of the Comparator Settlement (as applicable) within five (5) Business Days of the date of reaching such agreement in principle or the date of such Comparator Settlement.

**8.2**    SH1 shall have the option (the "**MFN Option**") to amend this Agreement to match the terms of the agreement in principle or Comparator Settlement, provided that it gives notice in writing to LBHI stating whether or not it intends to exercise the MFN Option within five (5) Business Days of the date of the notice described in Clause 8.1 (*Most Favoured Nation Option*) above. If SH1 does not give a notice in accordance with this Clause 8.2 (*Most Favoured Nation Option*) within that five (5) Business Day period, SH1 shall be deemed not to have exercised the MFN Option.

**8.3**    If SH1 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is exercising the MFN Option with respect to a signed Comparator Settlement (the "**Selected Comparator Settlement**"):

**(a)**    a draft amended version of this Agreement, reflecting the terms of the Selected Comparator Settlement, shall be sent by LBHI to SH1 for review within fourteen (14) calendar days of the date of SH1's notice under Clause 8.2 (*Most Favoured Nation Option*) above;

**(b)**    SH1 and LBHI shall use reasonable endeavours to agree and sign the amended agreement within fourteen (14) calendar days of the date of LBHI sending the draft amended version of this Agreement for review under Clause 8.3(a) (*Most Favoured Nation Option*) above; and

**(c)**    the existing terms of this Agreement shall continue to apply to the Parties until the amended agreement has been signed by all Parties and has come into effect.

21

**8.4**    If SH1 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is exercising the MFN Option with respect to an agreement in principle:

(a)    no amendments to this Agreement shall be implemented or effective unless and until there is a signed Comparator Settlement with respect to the relevant agreement in principle;

(b)    LBHI shall promptly notify SH1 following execution of the relevant Comparator Settlement and provide SH1 with a copy of such Comparator Settlement;

(c)    SH1 shall have a right to withdraw its notice, within five (5) Business Days of receipt of a signed Comparator Settlement provided under Clause 8.4(b) (*Most Favoured Nation Option*) above, if any term of the signed Comparator Settlement differs from those described in the original notice sent pursuant to Clause 8.1 (*Most Favoured Nation Option*) above; and

(d)    unless SH1 withdraws its notice within five (5) Business Days pursuant to Clause 8.4(c) (*Most Favoured Nation Option*) above, Clause 8.3 (*Most Favoured Nation Option*) above shall apply with the fourteen (14) calendar day period in Clause 8.3(a) (*Most Favoured Nation Option*) running from the expiry of the five (5) Business Day period within which SH1 could have withdrawn its notice.

**8.5**    If SH1 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is not exercising the MFN Option with respect to an agreement in principle, or is deemed not to have exercised the MFN Option:

(a)    LBHI shall promptly notify SH1 following execution of the relevant Comparator Settlement and provide SH1 with a copy of such Comparator Settlement;

(b)    if any term of the signed Comparator Settlement deriving from such agreement in principle differs from those described in the original notice sent pursuant to Clause 8.1 (*Most Favoured Nation Option*) above, SH1 shall have a right to exercise the MFN Option with respect to the Comparator Settlement, provided it does so within five (5) Business Days of receipt of a signed Comparator Settlement provided under Clause 8.5(a) (*Most Favoured Nation Option*) above; and

(c)    if SH1 gives notice within five (5) Business Days pursuant to Clause 8.5(b) (*Most Favoured Nation Option*) above, Clause 8.3 (*Most Favoured Nation Option*) above shall apply with the fourteen (14) calendar day period in Clause 8.3(a) (*Most Favoured Nation Option*) running from the date SH1 gives such notice.

**8.6**    For the avoidance of doubt, for the purposes of determining which parts of this Agreement should be amended to match the terms of a Comparator Settlement pursuant to Clause 8.2 (*Most Favoured Nation Option*) above, differences that arise solely from a differential between the numbers of ECAPS in ECAPS Series 1, ECAPS Series 2 and/or ECAPS Series 3 held by SH1, on the one hand, as compared to the ECAPS Holders subject to the Comparator Settlement, on the other hand, shall be disregarded.

**8.7**    The MFN Option shall not apply:

(a)    to a Comparator Settlement if the face value of ECAPS held by the relevant ECAPS Holder and any of their affiliates is in aggregate less than EUR 1 million;

(b)    to any Comparator Settlement entered into after the Final Hearing Date, unless that Comparator Settlement reflects an agreement in principle that was reached on or prior to the Final Hearing Date;

22

**(c)**    to any agreement in principle that does not ultimately result in a signed Comparator Settlement; or

**(d)**    to any terms of any Comparator Settlement that relate to and resolve matters other than the applicable parties' entitlement to, or notional share of, the assets available for distribution to PLC's subordinated creditors and/or LBHI2's subordinated creditors under their respective subordinated debt claims.

**9**       **REPRESENTATIONS, WARRANTIES AND INDEMNITIES**

*General*

**9.1**    LBHI and SH1 each represent and warrant to the other that:

**(a)**    it is duly organised and validly existing under the laws of the jurisdiction in which it is incorporated;

**(b)**    it has the power to enter into, perform and deliver the transactions contemplated by this Agreement and to execute, perform and deliver this Agreement;

**(c)**    its obligations in relation to this Agreement and the transaction contemplated by this Agreement constitute legal, valid, binding and enforceable obligations (subject to the Legal Reservations, Perfection Requirements and subject, as to enforceability, to equitable principles of general application); and

**(d)**    it has obtained all necessary authorisations, consents, approval, resolutions, licences, exemptions, filings, notarisations or registrations and has taken all necessary action to enable it lawfully to enter into, exercise its rights in and comply with its obligations in this Agreement.

**9.1 A**    Each payor under any present or future obligation to make a payment under this Agreement to a payee (each such payment is referred to as a "**Payment**") represents and warrants to each such payee that they are not as of the date of this Agreement under any legal obligation to withhold any amount for or on account of taxes in respect of a Payment had such Payment been required to be made on the date of this Agreement (save in respect of US backup withholding taxes pursuant to section 3406 of the U.S. Internal Revenue Code of 1986 that may be imposed on a Payment solely as a result of a payee's failure to provide a relevant IRS Form W-8 or IRS Form W-9 but only if (i) such form is required by applicable law to eliminate such US backup withholding and (ii) such form is timely requested by the payor of such Payment before making such Payment).

*Indemnities*

**9.2**    SH1 shall indemnify, and shall keep indemnified, LBHI against all reasonably incurred liabilities, costs and expenses (including legal and out-of-pocket expenses and any value added tax on those costs and expenses) arising directly out of or incurred directly in connection with (i) any legal or other proceedings for the enforcement of SH1's payment obligations  or recovery of sums due from SH1 under this Agreement  (excluding, for the avoidance of doubt, any proceedings under Clause 5 (*Expert Determination*) concerning the amount due); and (ii) the enforcement of Clause 7 (*Security*) and/or any security created thereunder (other than liabilities, costs and expenses incurred by reason of LBHI's gross negligence or willful misconduct).

**9.3**    LBHI shall indemnify, and shall keep indemnified, SH1 against all reasonably incurred liabilities, costs and expenses (including legal and out-of-pocket expenses and any value added tax on those costs and expenses) arising directly out of or incurred directly in connection with any legal or other proceedings for the enforcement of LBHI's payment obligations or recovery of sums due from LBHI under this Agreement (excluding, for the avoidance of doubt, any proceedings under Clause 5 (*Expert Determination*) concerning the amount due) (other than liabilities, costs and expenses incurred by reason of SH1's gross negligence or willful misconduct).

*SH1*

**9.4**     SH1 represents and warrants that it and its Affiliated Parties (other than SH2 or SH3) are, and will continue to be, the sole beneficial owner of, and have good beneficial title to, the SH1 ECAPS, free and clear of any Encumbrance and that they have not made any prior sale, transfer or sub-participation of their interest in the SH1 ECAPS which is subsisting.

**9.5**     SH1 represents and warrants that the list of holdings of the SH1 ECAPS, as set out at Schedule 3 (*SH1 ECAPS*) to this Agreement, is accurate and up-to-date.

**9.6**     SH1 represents and warrants that the proof of ownership of the SH1 Effective Date ECAPS provided pursuant to Clause 7.1 (*Security*) is accurate and up-to-date as at the Completion Date.

**9.7**     The representations and warranties at Clause 9.4 (*Representations, Warranties and Indemnities*) and Clause 9.5 (*Representations, Warranties and Indemnities*) are stated with respect to the SH1 Effective Date ECAPS on the Completion Date and repeated on the date SH1 gives notice to LBHI of it or any of its Affiliated Parties (other than SH2 or SH3) acquiring any SH1 Additional ECAPS pursuant to Clause 6.1 (*Future ECAPS Purchases*) with respect to all such SH1 Effective Date ECAPS and SH1 Additional ECAPS.

**9.8**     SH1 represents and warrants that:

   **(a)**     it is not insolvent or unable to pay its debts within the meaning of section 123 of the Insolvency Act 1986 or any other applicable insolvency legislation;

   **(b)**     it has the resources to discharge its debts as they fall due;

   **(c)**     to its knowledge and belief, no execution or other process issued on a judgment, decree or order of any court in favour of a creditor remains unsatisfied in whole or in part and no statutory demand for payment has been served on it;

   **(d)**     to its knowledge and belief, no corporate action has been taken or is pending and no other steps have been taken and no legal proceedings have been commenced or are threatened or are pending for: (i) the suspension of payments, a moratorium in respect of any indebtedness, winding-up, liquidation, dissolution, administration or reorganisation (using a voluntary arrangement, scheme of arrangement or otherwise) of it; (ii) the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of SH1 or any of its property, undertaking or assets; or (iii) it to enter into any composition, compromise, assignment or arrangement with its creditors generally; and

   **(e)**     no event equivalent to any of the provisions in Clause 9.8(d) (*Representations, Warranties and Indemnities*) has occurred under the laws of any other jurisdiction.

**10**     **COSTS**

   Each of the Parties shall bear their own legal and other costs incurred in connection with the negotiation, preparation and execution of this Agreement and any documents referred to in it, including the Collateral Documents.

**11**     **AGREEMENT NOT TO SUE**

**11.1**     Subject to Clause 11.2 (*Agreement Not To Sue*), SH1 shall not, without LBHI's prior written consent (and shall procure that its Affiliated Parties, including without limitation the other Settling Holders, do not without LBHI's prior written consent), at any time assert a claim against or sue, commence, continue, voluntarily aid in any way, intervene or seek to be joined, prosecute or cause to be commenced or prosecuted (or instruct, direct, authorise, assist or encourage any other person to commence or continue) any action, suit or other proceeding in any jurisdiction or forum whatsoever

24

against LBHI, SLP3, PLC, LBHI2, LBL and/or GP1 and/or any of their Affiliated Parties concerning:

**(a)**     the issues in the Priority Proceedings;

**(b)**     anything that might affect the flow of funds to the ECAPS and/or to LBHI2, SLP3, PLC and/or LBL's other subordinated or unsubordinated creditors; and/or

**(c)**     anything that might affect the nature or quantum of the PLC Surplus or the timing of its distribution.

**11.2**    For the avoidance of doubt, the agreement not to sue at Clause 11.1 (*Agreement Not To Sue*) above shall not apply to any claims, rights and/or causes of action in respect of any breach of this Agreement or the Collateral Documents.

**12**      **ANNOUNCEMENTS**

**12.1**    The Parties consent to the issue of an announcement, substantially in the agreed form attached at Schedule 4 (*Announcement*) to this Agreement, immediately following the Completion Date (the "**Announcement**").

**12.2**    On or after the Completion Date, LBHI shall arrange for the Announcement to be uploaded to its website and/or filed on its docket along with this Agreement, with the bank account details set out in Clause 4.15 (*Settlement – Payment Provisions*), and other personal information reasonably required by SH1 or LBHI, being redacted in the copy of this Agreement that is made public.

**13**      **INTEREST**

**13.1**    If either LBHI or SH1 fails to make a payment due to the other party under this Agreement by the due date, then, without limiting the other party's remedies, the defaulting party shall pay interest on the overdue sum from the due date until payment of the overdue sum, whether before or after judgment.

**13.2**    Interest under this Clause 13 (*Interest*) shall accrue each day at the rate provided for judgment debts in section 17 of the Judgments Act 1838.

**14**      **FURTHER ASSURANCES**

The Parties shall, as soon as reasonably practicable, do all such things, take all such steps or actions and execute all such documents and/or declarations as may be required by law, reasonably required by another Party or which are reasonably required to give effect to, evidence or perfect the obligations and liabilities as set out in, and upon the terms of, this Agreement.

**15**      **NOTICES AND COMMUNICATIONS**

**15.1**    All notices and other communications given under or in connection with this Agreement shall be in writing, in the English language and sent to the Party at the following email addresses (or to any other email addresses as otherwise notified in writing to each other Party):

**(a)**     In the case of LBHI and SLP3, the email addresses are:

**Email**: ronald.geraghty@lehmanholdings.com and notices@lehmanholdings.com
**With a copy via email to**:
Mark.Lawford@weil.com and Lindsay.Merritt@weil.com

**(b)**     In the case of SH1, the email addresses are:

**Email**: ████████████████████████

**With a copy via email to:** ▮▮▮▮▮▮▮▮▮▮▮

or, with respect to any information or documents to be sent by LBHI to ▮▮▮▮▮▮
▮▮▮▮▮▮▮ pursuant to Clause 4.9 (*Settlement – Payment Provisions*), to
▮▮▮▮▮

15.2    Any notices or other communications shall be deemed to have been received at the time of transmission of the email or, if this time falls outside business hours in the place of receipt, when business hours resume. In this Clause 15 (*Notices and Communications*), business hours means 9.00am to 5.00pm Monday to Friday on a day that is not a public holiday in the United States of America or in the United Kingdom.

15.3    This Clause 15 (*Notices and Communications*) applies to notices and other communications given with respect to the expert determination procedure set out in Clause 5 (*Expert Determination*) above, but does not apply to the service of any proceedings or other documents in any legal action or, if applicable, any other method of dispute resolution.

## 16    SERVICE OF PROCESS

*LBHI*

16.1    LBHI appoints Law Debenture Corporate Services Limited of Fifth Floor, 100 Wood Street, London, EC2V 7EX, United Kingdom as its agent under this Agreement for service of process in relation to any proceedings before the English courts in connection with any dispute arising in relation to this Agreement.

16.2    Failure by a process agent to notify LBHI of any process will not invalidate the relevant proceedings.

16.3    If the person appointed as process agent under Clause 16.1 (*Service of Process*) is unable for any reason to so act, LBHI must immediately (and in any event within seven (7) calendar days of becoming aware) appoint another agent. If LBHI fails to appoint another process agent within that time period, SH1 may appoint another process agent on LBHI's behalf or serve the original process agent.

*SH1*

16.4    SH1 appoints ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as its agent under this Agreement for service of process in relation to any proceedings before the English courts in connection with any dispute arising in relation to this Agreement.

16.5    Failure by a process agent to notify SH1 of any process will not invalidate the relevant proceedings.

16.6    If the person appointed as process agent under Clause 16.4 (*Service of Process*) is unable for any reason to so act, SH1 must immediately (and in any event within seven (7) calendar days of becoming aware) appoint another agent.  If SH1 fails to appoint another process agent within that time period, LBHI may appoint another process agent on behalf of SH1 or serve the original process agent.

## 17    RIGHTS OF THIRD PARTIES

17.1    No person who is not a Party to this Agreement shall have any rights, whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise, to enforce any terms of this Agreement.

17.2    The rights of the Parties to rescind or vary this Agreement are not subject to the consent of any other person.

26

**18      SUCCESSORS AND ASSIGNS**

This Agreement is personal to the Parties and no Party shall assign, transfer, mortgage, charge, subcontract, delegate, declare a trust over or deal in any other manner with any of its rights and obligations under this Agreement without the prior written consent of each of the other Parties.

**19      CONTRA PROFERENTUM**

The Parties acknowledge that this Agreement has been jointly drafted by the Parties and accordingly it should not be construed strictly, nor shall the contra proferentem rule be applied, against any Party.

**20      DAMAGES NOT AN ADEQUATE REMEDY**

Without prejudice to any other rights or remedies that the Parties may have, the Parties acknowledge that damages alone would not be an adequate remedy for any breach of Clause 5 (*Expert Determination*), Clause 7 (*Security*) or Clause 11 (*Agreement Not To Sue*)) of this Agreement. Accordingly, any Party shall be entitled to seek the remedies of injunction, specific performance and/or other equitable relief for any threatened or actual breach of Clause 5 (*Expert Determination*), Clause 7 (*Security*) or Clause 11 (*Agreement Not To Sue*) of this Agreement.

**21      ENTIRE AGREEMENT**

**21.1**   This Agreement and the Collateral Documents constitute the entire understanding and agreement between LBHI and SLP3 on the one hand, and SH1 on the other, in relation to the subject matter of this Agreement.

**21.2**   Each Party acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of the other Party (whether orally or in writing) other than as expressly set out in this Agreement.

**21.3**   Nothing in this Clause 21 (*Entire Agreement*) shall limit or exclude liability for fraud.

**22      VARIATION**

Any variation of this Agreement must be in writing and signed by, or on behalf of, each Party.

**23      SEVERABILITY**

**23.1**   If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, that shall not affect or impair:

**(a)**   the legality, validity or enforceability in that jurisdiction of any other provision of this Agreement; or

**(b)**   the legality, validity or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

**23.2**   If any provision or part-provision of this Agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted and the Parties shall negotiate in good faith to agree a new provision which will achieve as close as possible to the same result without being invalid, illegal or unenforceable. Any modification to or deletion of a provision or part-provision under this Clause 23.2 (*Severability*) shall not affect the validity and enforceability of the rest of this Agreement.

WEIL:\98047175\1\58399.0011

**24      COUNTERPARTS**

This Agreement may be executed in any number of counterparts, and by the Parties on separate counterparts, but shall not be effective until each Party has executed at least one counterpart.

**25      GOVERNING LAW AND JURISDICTION**

**25.1**    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter (including any non-contractual disputes or claims), shall be governed by and construed in accordance with the laws of England and Wales.

**25.2**    The courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this Agreement and/or its subject matter (including any non-contractual disputes or claims).

28

**IN WITNESS WHEREOF** this Agreement has been duly executed on the date stated at the beginning of it.

| | |
|---|---|
| Signed for and on behalf of )<br>**LEHMAN BROTHERS HOLDINGS INC.** )<br>a company incorporated in Delaware )<br>by Ronald Geraghty )<br>being a person who, in accordance with the laws )<br>of the territory, is acting under the authority of )<br>the company ) | |

Authorised Signatory

| | |
|---|---|
| Signed for and on behalf of )<br>**LEHMAN BROTHERS HOLDINGS** )<br>**SCOTTISH LP 3**, a Scottish limited )<br>Partnership, by its general partner, )<br>**Lehman Brothers Holdings Scottish LP 2**, )<br>acting by its general partner, )<br>**Lehman Brothers Holdings Inc.** ) | |

Authorised Signatory

*SH1 Settlement Agreement – LBHI and SLP3 Signature Page*

Signed for and on behalf of                              )
                                                         )
▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                           )
a company incorporated in ▮▮▮▮▮▮▮▮▮                      )
by ▮▮▮▮▮                                                 )
being a person who, in accordance with the laws          )   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
of the territory, is acting under the authority of       )
the company                                              )
                                                             Director

**SCHEDULE 1**
**SCHEDULED CLAIMS**

| (A) Original Claimant or Current Holder | (B) Claims/Admitted Value in GBP | (C) Outstanding Amount to be Paid in GBP |
|---|---|---|
| **LBL CREDITORS** | | |
| LBHI | 35,000,000.00 | 8,808,862.04 |
| LBHI | 25,000,000.00 | 6,395,713.31 |
| LBHI | 22,854,649.00 | 5,724,780.60 |
| LBHI | 1,041,704.90 | 261,072.28 |
| 314 Commonwealth | 239,662.71 | 60,064.31 |
| LBHI | 232,322.78 | 58,224.66 |
| LBHI | 183,246.18 | 45,900.69 |
| LBHI | 21,459.98 | 5,378.31 |
| LBHI | 9,220.96 | 2,319.96 |
| LBHI | 1,852.68 | 464.32 |
| LBHI (Subordinated) | 5,000,000.00 | 10,200,000.00 |
| **Total LBL Creditors** | **89,584,119.19** | **31,562,771.48** |
| **PLC CREDITORS** | | |
| LBHI | 35,621,091.00 | 16,495,143.29 |
| LB Hercules Holdings LLC | 1,462,009.50 | 683,358.95 |
| LB Asia Holdings Ltd. | 929,730.26 | 430,527.22 |
| Lehman Brothers Inc. | 533,483.94 | 247,041.68 |
| LBHK Funding (Cayman) No. 1 Ltd. | 44,304.55 | 20,515.96 |
| Sunrise Finance Co. Ltd. | 1,664.16 | 770.63 |
| Lehman Brothers Bankhaus A.G. | 1,300.38 | 602.17 |
| LB Holdings Scottish LP | 79,238,688.47 | 36,693,247.79 |
| Lehman Brothers Luxembourg Investments Sarl | 51,425,443.50 | 23,813,702.33 |
| LB Beta Finance Ltd. | 43,147,598.61 | 19,980,461.03 |

31

| (A) Original Claimant or Current Holder | (B) Claims/Admitted Value in GBP | (C) Outstanding Amount to be Paid in GBP |
|---|---|---|
| LB UK Holdings Ltd. | 19,547,739.03 | 9,052,239.90 |
| Eldon Street Holdings Ltd | 31,358,468.41 | 14,521,240.51 |
| Thayer Properties (Jersey) Ltd | 14,699,806.00 | 6,807,048.18 |
| **Total PLC Creditors** | **278,011,327.81** | **128,745,899.62** |
| **LBHI2 CREDITORS** | | |
| SLP3 | 4,219,533,988.59 | Not included in the Threshold Amount |
| **THRESHOLD AMOUNT** | | |
| **Threshold Amount** | | **160,308,671.10** |

WEIL:\98047175\1\58399.0011

**SCHEDULE 2**
**SH1 GAIN/LOSS – WORKED EXAMPLES**

WEIL:\98047175\1\58399.0011

**Worked Example 1.**
**Assume First Instance Judgment Confirmed:**

| | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|

**The Scheduled Claims:**

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | | |
|---|---|---|---|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a | | | | |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | |
|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | 8,808,862.04 | | | |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | 6,395,713.31 | | | |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | 5,724,780.60 | | | |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | 261,072.28 | | | |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | 60,064.31 | | | |
| LBHI | 100% | 232,322.78 | 58,224.66 | 58,224.66 | | | |
| LBHI | 100% | 183,246.18 | 45,900.69 | 45,900.69 | | | |
| LBHI | 100% | 21,459.98 | 5,378.31 | 5,378.31 | | | |
| LBHI | 100% | 9,220.96 | 2,310.96 | 2,310.96 | | | |
| LBHI | 100% | 1,852.68 | 464.32 | 464.32 | | | |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | 10,200,000.00 | | | |
| Total | | 89,584,119.19 | 26,562,771.48 | | | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | | |
|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | 16,495,143.29 | | | |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | 683,358.95 | | | |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | 430,527.22 | | | |
| LBI | 100% | 533,483.94 | 247,041.68 | 247,041.68 | | | |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | 20,515.96 | | | |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | 770.63 | | | |
| Bankhaus | 100% | 1,300.38 | 602.17 | 602.17 | | | |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | 36,693,247.79 | | | |
| LBLIS | 100% | 51,425,443.50 | 23,813,702.33 | 23,813,702.33 | | | |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | 19,980,461.03 | | | |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | 9,052,239.90 | | | |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | 14,521,240.51 | | | |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | 6,807,048.18 | | | |
| Total | | 278,011,327.81 | 128,745,899.62 | | | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | |
|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | 3,065,487.43 | 3,065,487.43 | 3,065,487.43 |
| E2 | GP No 1 | 52,931,231.82 | n/a | | 4,306,932.42 | 4,306,932.42 | 4,306,932.42 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | 6,305,984.40 | 6,305,984.40 | 6,305,984.40 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | 86,321,595.75 | 86,321,595.75 | 86,321,595.75 |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| | | | | | | | |
| | | Total From Payment Round | | 160,308,671.10 | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| | | | | | | | |
| | | Cumulative Total | | 160,308,671.10 | 260,308,671.10 | 360,308,671.10 | 460,308,671.10 |
| | | | | | | | |
| | | Threshold Amount | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |

"PLC Surplus" is
the Cumulative total less the threshold amount

| | | "PLC Surplus" equals | | 0.00 | 100,000,000.00 | 200,000,000.00 | 300,000,000.00 |
|---|---|---|---|---|---|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Settlement Percentage Agreed at | 16.19% | | | | | | |
| | | P1 | | 0.00 | 3,065,487.43 | 6,130,974.86 | 9,196,462.28 |
| | | P2 | | 0.00 | 4,306,932.42 | 8,613,864.83 | 12,920,797.25 |
| | | P3 | | 0.00 | 6,305,984.40 | 12,611,968.81 | 18,917,953.21 |
| | | | | | | | |
| | | Series 1 share of PLC Notes | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | | | | | | |
| | | SH1 Share of ECAPS Series 1 | | 2.876% | 2.876% | 2.876% | 2.876% |
| | | SH1 Share of ECAPS Series 2 | | 5.440% | 5.440% | 5.440% | 5.440% |
| | | SH1 Share of ECAPS Series 3 | | 4.991% | 4.991% | 4.991% | 4.991% |
| | | | | | | | |
| | | LBHI Payments | | 0.00 | 0.00 | 117,005.77 | 234,011.54 |
| | | | | | | | |
| | | SH1 Payments | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| | | **SH1 Gain/Loss** | **GBP** | **0** | **-117,005.77** | **-117,005.77** | **-117,005.77** |
| | | | | | | | |
| | | LBHI/SLP3 pays to SH1 | | 0.00 | 117,005.77 | 117,005.77 | 117,005.77 |
| | | SH1 pays to LBHI/SLP3 | | 0.00 | 0.00 | 0.00 | 0.00 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss
(H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84+H86

**Worked Example 2.**

Assume First Instance Judgment of LBHI2 ranking is overturned so ranking is pari-passu, ranking at PLC is confirmed as pari-passu:

| | | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|---|
| **The Scheduled Claims:** | | | | | | | | | |
| **LBHI2 Scheduled Claim** | | | | | | | | | |
| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | | | | |
| SLP3 | 0% | 4,219,533,988.59 | n/a | | | | 100,000,000.00 | 100,000,000.00 | 190,122,074.14 |
| **LBL Scheduled Claims** | | | | | | | | | |
| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st 2021) GBP | | | | | | |
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | | | 8,808,862.04 | | | |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | | | 6,395,713.31 | | | |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | | | 5,724,780.60 | | | |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | | | 261,072.28 | | | |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | | | 60,064.31 | | | |
| LBHI | 100% | 232,322.78 | 58,224.66 | | | 58,224.66 | | | |
| LBHI | 100% | 183,246.18 | 45,900.69 | | | 45,900.69 | | | |
| LBHI | 100% | 21,459.98 | 5,378.31 | | | 5,378.31 | | | |
| LBHI | 100% | 9,220.96 | 2,310.96 | | | 2,310.96 | | | |
| LBHI | 100% | 1,852.68 | 464.32 | | | 464.32 | | | |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | | | 10,200,000.00 | | | |
| Total | | 89,584,119.19 | 26,562,771.48 | | | | | | |
| **LBH PLC Scheduled Claims** | | | | | | | | | |
| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | | | | 4,948,542.99 | |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | | | | 205,007.68 | |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | | | | | 129,158.17 | |
| LBI | 100% | 533,483.94 | 247,041.68 | | | | | 74,112.50 | |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | | | | 6,154.79 | |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | | | | 231.19 | |
| Bankhaus | 100% | 1,300.38 | 602.17 | | | | | 180.65 | |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | | | | 11,007,974.34 | |
| LBUS | 100% | 51,425,443.50 | 23,813,702.33 | | | | | 7,144,110.70 | |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | | | | 5,994,138.31 | |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | | | | 2,715,671.97 | |
| | | | | | | | | 0.00 | |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | | | | 4,356,418.25 | |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | | | | 2,042,123.94 | |
| Total | | 278,011,327.81 | 128,745,899.62 | | | | | | |
| **LBH PLC Subordinated Claims** | | | | | | | | | |
| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
| E1 | GP No 1 | 37,674,151.81 | n/a | | | | | | |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | | 0 | 0 | 0 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | | 0 | 0 | 0 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | | 0 | 0 | 0 |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | | | | |
| | | | Total From Payment Round | | | 31,562,771.48 | 100,000,000.00 | 138,623,825.48 | 190,122,074.14 |
| | | | Cumulative Total | | | 31,562,771.48 | 131,562,771.48 | 270,186,596.96 | 460,308,671.10 |
| | | | Threshold Amount | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |
| "PLC Surplus" is the Cumulative total less the threshold amount | | | "PLC Surplus" equals | | | 0.00 | 0.00 | 109,877,925.86 | 300,000,000.00 |
| Settlement Percentage Agreed at | 16.19% | | | | | | | | |
| | | | P1 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | P2 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | P3 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | Series 1 share of PLC Notes | | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | | Series 2 share of PLC Notes | | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | | Series 3 share of PLC Notes | | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | | SH1 Share of ECAPS Series 1 | | | 2.876% | 2.876% | 2.876% | 2.876% |
| | | | SH1 Share of ECAPS Series 2 | | | 5.440% | 5.440% | 5.440% | 5.440% |
| | | | SH1 Share of ECAPS Series 3 | | | 4.991% | 4.991% | 4.991% | 4.991% |
| | | | LBHI Payments | | | 0.00 | 0.00 | 0.00 | 828,733.41 |
| | | | SH1 Payments | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | **SH1 Gain/Loss** | GBP | | 0 | 0.00 | -828,733.41 | -1,433,959.67 |
| | | | LBHI/SLP3 pays to SH1 | | | 0.00 | 0.00 | 828,733.41 | 1,433,959.67 |
| | | | SH1 pays to LBHI/SLP3 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | Reference example  Formula in Cell H88 for calculating the SH Gain/Loss | | | | | | |
| | | | (H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84-H86 | | | | | | |

**Worked Example 3.**

Assume first instance judgment of LBHI2 ranking is confirmed with LBHI2 Sub-Debts senior, ranking at PLC is overturned so PLC Sub-Notes rank senior:

|  | | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|---|
| **The Scheduled Claims:** | | | | | | | | | |

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a | | | | | | |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | | | 8,808,862.04 | | | |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | | | 6,395,713.31 | | | |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | | | 5,724,780.60 | | | |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | | | 261,072.28 | | | |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | | | 60,064.31 | | | |
| LBHI | 100% | 232,322.78 | 58,224.66 | | | 58,224.66 | | | |
| LBHI | 100% | 183,246.18 | 45,900.69 | | | 45,900.69 | | | |
| LBHI | 100% | 21,459.98 | 5,378.31 | | | 5,378.31 | | | |
| LBHI | 100% | 9,220.96 | 2,310.96 | | | 2,310.96 | | | |
| LBHI | 100% | 1,852.68 | 464.32 | | | 464.32 | | | |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | | | 10,200,000.00 | | | |
| Total | | 89,584,119.19 | 26,562,771.48 | | | | | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | | 16,495,143.29 | | | |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | | 683,358.95 | | | |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | | | 430,527.22 | | | |
| LBI | 100% | 533,483.94 | 247,041.68 | | | 247,041.68 | | | |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | | 20,515.96 | | | |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | | 770.63 | | | |
| Bankhaus | 100% | 1,300.38 | 602.17 | | | 602.17 | | | |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | | 36,693,247.79 | | | |
| LBLIS | 100% | 51,425,443.50 | 23,813,702.33 | | | 23,813,702.33 | | | |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | | 19,980,461.03 | | | |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | | 9,052,239.90 | | | |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | | 14,521,240.51 | | | |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | | 6,807,048.18 | | | |
| Total | | 278,011,327.81 | 128,745,899.62 | | | | | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | | | 22,411,148.06 | 22,411,148.06 | 22,411,148.06 |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | | 31,487,097.02 | 31,487,097.02 | 31,487,097.02 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | | 46,101,754.92 | 46,101,754.92 | 46,101,754.92 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | | | | |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Total From Payment Round | | | | 160,308,671.10 | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| | | Cumulative Total | | | | 160,308,671.10 | 260,308,671.10 | 360,308,671.10 | 460,308,671.10 |
| | | Threshold Amount | | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |
| "PLC Surplus" is | | | | | | | | | |
| the Cumulative total less the threshold amount | | "PLC Surplus" equals | | | | 0.00 | 100,000,000.00 | 200,000,000.00 | 300,000,000.00 |
| Settlement Percentage Agreed at | 16.19% | | | | | | | | |
| | | P1 | | | | 0.00 | 22,411,148.06 | 44,822,296.11 | 67,233,444.17 |
| | | P2 | | | | 0.00 | 31,487,097.02 | 62,974,194.05 | 94,461,291.07 |
| | | P3 | | | | 0.00 | 46,101,754.92 | 92,203,509.84 | 138,305,264.76 |
| | | Series 1 share of PLC Notes | | | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | | | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | | | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH1 Share of ECAPS Series 1 | | | | 2.876% | 2.876% | 2.876% | 2.876% |
| | | SH1 Share of ECAPS Series 2 | | | | 5.440% | 5.440% | 5.440% | 5.440% |
| | | SH1 Share of ECAPS Series 3 | | | | 4.991% | 4.991% | 4.991% | 4.991% |
| | | LBHI Payments | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH1 Payments | | | | 0.00 | 0.00 | 3,904,391.94 | 7,808,783.47 |
| | | **SH1 Gain/Loss** | **GBP** | | | 0.00 | 3,904,391.74 | 3,904,391.74 | 3,904,391.74 |
| | | LBHI/SLP3 pays to SH1 | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH1 pays to LBHI/SLP3 | | | | 0.00 | 3,904,391.94 | 3,904,391.94 | 3,904,391.94 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss

(H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84+H86

**Clause 4.7(b) Worked example of purchase of SH1 Additional ECAPS**

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | **Euros** | | **ISIN** | | | | | |
| 5 | | | Outstanding Face Value of Ecaps Notes, Series 1 | | | | | 173,825,000.00 | | XS0215349357 | | | | | |
| 6 | | | Outstanding Face Value of Ecaps Notes, Series 2 | | | | | 250,000,000.00 | | XS0229269856 | | | | | |
| 7 | | | Outstanding Face Value of Ecaps Notes, Series 3 | | | | | 373,650,000.00 | | XS0243852562 | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | SH1 Holding in Ecaps Series 1 | | | | | 5,000,000 00 | | | | | | | |
| 10 | | | SH1 Holding in Ecaps Series 2 | | | | | 13,600,000 00 | | | | | | | |
| 11 | | | SH1 Holding in Ecaps Series 3 | | | | | 18,650,000 00 | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | SH1 Share of Ecaps Series 1 | | | | | **2.876%** | | | Used in Gain/Loss Calculation | | | | |
| 14 | | | SH1 Share of Ecaps Series 2 | | | | | **5.440%** | | | Used in Gain/Loss Calculation | | | | |
| 15 | | | SH1 Share of Ecaps Series 3 | | | | | **4.991%** | | | Used in Gain/Loss Calculation | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |
| 19 | | | *If SH1 purchased an additional €2million in each of Ecaps Series 1,2 and 3, then:* | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | |
| 21 | | | SH1 Holding in Ecaps Series 1 would be | | | | | 7,000,000 00 | | | | | | | |
| 22 | | | SH1 Holding in Ecaps Series 2 would be | | | | | 15,600,000 00 | | | | | | | |
| 23 | | | SH1 Holding in Ecaps Series 3 would be | | | | | 20,650,000 00 | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | SH1 Share of Ecaps Series 1 would be | | | | | **4.027%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 26 | | | SH1 Share of Ecaps Series 2 would be | | | | | **6.240%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 27 | | | SH1 Share of Ecaps Series 3 would be | | | | | **5.527%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 28 | | | | | | | | | | | | | | | |

## SCHEDULE 3
## SH1 ECAPS

Holdings of SH1 ECAPS by SH1 or any of its Affiliated Parties (other than SH2 or SH3)

| ECAPS Series | Security Description | Total Amount Held (EUR) |
|---|---|---|
| ECAPS Series 1 | Lehman UK Funding I LP FRN Perp (ISIN: XS0215349357) | 5,000,000 |
| ECAPS Series 2 | Lehman UK Funding II 5.125% 9/21/2049 (ISIN: XS0229269856) | 13,600,000 |
| ECAPS Series 3 | Lehman UK Funding III 3.875% 2/22/2049 (ISIN: XS0243852562) | 18,650,000 |
| **Total** | | **37,250,000** |

34

## SCHEDULE 4
## ANNOUNCEMENT

**"Lehman Brothers Holdings Inc. reaches agreement with 14.3% ECAPS holder: Deal will give King Street Capital Management, L.P. their pro-rata share of 16.19% of funds available for subordinated creditors of Lehman Brothers Holdings PLC (in administration)**

*As has been previously disclosed, Lehman Brothers Holdings Inc. ("**LBHI**") has been involved in various legal actions in U.S. and English courts pertaining to three series of securities known as the "ECAPS", which together aggregate approximately €797 million in face amount. The litigation, which is scheduled to continue with a hearing at the U.K. Court of Appeals beginning on 4 October 2021, relates principally to the relative ranking of two categories of subordinated debt at Lehman Brothers Holdings PLC ("**PLC**") and the relative ranking of two categories of subordinated debt at LB Holdings Intermediate 2 Limited ("**LBHI2**"). This hearing is the result of appeals to the orders of the English High Court on 24 July 2020, the effect of which was that the ECAPS holders would be entitled to approximately 13.67% of certain distributions made by Lehman's UK group (the "**Litigated Surplus**").*

*LBHI is pleased to announce that it has come to an agreement (documented in three settlement agreements, the "**Settlement Agreements**") with three entities managed by King Street Capital Management, L.P. ("**King Street**"), which in aggregate hold approximately 14.3% of the ECAPS, pursuant to which King Street will receive its pro rata share (relating to such holding) of 16.19% of the Litigated Surplus. Each Settlement Agreement provides for this result via top-up, to be paid directly by LBHI to King Street, in the event that the ECAPS' collections fall below this 16.19% threshold, and conversely, by remittance, to be paid by King Street to LBHI, in the event that the ECAPS' collections exceed such threshold. King Street has agreed to deposit the ECAPS subject to the Settlement Agreements into custodial accounts, the proceeds of which are pledged to LBHI to secure any such remittance obligations.*

*The agreement includes a "Most-Favoured Nation" option providing King Street the right to amend each Settlement Agreement to reflect the terms of any other settlement agreement (or agreement in principle) that LBHI enters into with another ECAPS holder prior to the last day of the above-mentioned Court of Appeals hearing which are different than the terms of the Settlement Agreements, subject to certain exceptions. The Settlement Agreements also provide that any further purchases of ECAPS made by King Street on or prior to Monday, 27 September 2021 will be subject to the terms of the Settlement Agreements on, proportionally, the same terms as King Street's current holdings.*

*Copies of the Settlement Agreements are available here [link or downloadable files to be included].*

*LBHI is willing, with respect to certain qualified institutional holders of ECAPS, subject to criteria to be determined by LBHI in its sole discretion, to enter into agreements with respect to their ECAPS on terms identical (on a proportionate basis) to those in the Settlement Agreements (including the custody and collateral provisions). If you are an institutional holder of ECAPS wishing to pursue such an arrangement, please contact Claire Hallowell Leonard of LBHI at claire.hallowell@lehmanholdings.com prior to 16 August 2021. THE FOREGOING IS NOT AN OFFER TO PURCHASE ANY SECURITIES FROM ANY HOLDER AND IS NOT AN OFFER CAPABLE OF BEING ACCEPTED.*

*In the United Kingdom this announcement is only addressed to and directed at persons who (i) have professional experience in matters relating to investments (being investment professionals falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005, as amended (the "**Financial Promotion Order**")), (ii) fall within Article 49(2)(a) to (d) ("high net worth companies, unincorporated associations, etc.") of the Financial Promotion Order, or (iii) to the extent that doing so does not prejudice the lawful distribution of this announcement to the foregoing, are persons to whom an invitation or inducement to engage in investment activity (within the meaning of section 21 of the Financial Services and Markets Act 2000) in connection with the subject matter of this announcement may otherwise lawfully be communicated or caused to be communicated (all such persons together being referred to as "relevant persons"). The foregoing announcement is only made in the United Kingdom to relevant persons and this announcement must not be acted on or relied on by anyone in the United Kingdom who is not a relevant person".*

WEIL:\98047175\1\58399.0011

**Weil, Gotshal & Manges (London) LLP**
110 Fetter Lane
London EC4A 1AY
+44 20 7903 1000 main tel
+44 20 7903 0990 main fax
weil.com



**EXECUTION VERSION**

**7 JULY 2021**

**SETTLEMENT AGREEMENT**

**between**

**LEHMAN BROTHERS HOLDINGS INC.**

**and**

**LEHMAN BROTHERS HOLDINGS SCOTTISH LP 3**

**and**

███████████████

**as SH2**

**THIS AGREEMENT** is made on 7 July 2021 between the following parties:

(1)     **LEHMAN BROTHERS HOLDINGS INC.**, a corporation formed in the State of Delaware, United States of America and whose principal place of business is at 110 East 42nd Street, Suite 820 – 8th Floor, New York, NY 10017, United States of America ("**LBHI**");

(2)     **LEHMAN BROTHERS HOLDINGS SCOTTISH LP 3**, a limited partnership incorporated in Scotland with company number SL006052 and whose registered office is at 13 Queens Road, Aberdeen, AB15 4YL ("**SLP3**"); and

(3)     ███████████████████████████ a limited company incorporated in ██████ with company number ███████ and whose registered office is at ██████████ ("**SH2**"),

(jointly the "**Parties**", and each a "**Party**").

**WHEREAS**

(A)     LBHI and SH2 wish, as between each other, to settle the economic outcome of the Priority Proceedings.

(B)     The basis of the settlement is to fix the economics of SH2's notional share of the PLC Sub-Notes at a scenario where:

a)   LBHI2 distributes on the LBHI2 Sub-Debts 100% of the funds it has available, from time to time, for distribution to subordinated creditors, until the LBHI2 Sub-Debts have been paid in full; and

b)   PLC distributes on the PLC Sub-Notes 16.19% of the funds it has available, from time to time, for distribution to subordinated creditors, *pari passu* among PLC Note Series 1, PLC Note Series 2 and PLC Note Series 3.

(C)     LBHI has also entered into related settlement agreements (the "**Related SH Agreements**") with certain Affiliated Parties of SH2, namely, ████████████████ ("**SH1**") and ████████████ ("**SH3**") (together with SH1 and SH2, the "**Settling Holders**") to settle the economic outcome of the Priority Proceedings as between LBHI and each such person.

(D)     SLP3 wishes to enter into this Agreement in order to acknowledge the rights and obligations of LBHI under the terms of this Agreement.

**1     DEFINITIONS AND INTERPRETATION**

1.1     In this Agreement, unless the context otherwise requires, the following words and expressions have the following meanings:

| | |
|---|---|
| "**2006 Act**" | means the Companies Act 2006. |
| "**Additional Period**" | has the meaning given to it in Clause 6.2 (*Future ECAPS Purchases*) below. |
| "**Additional Settlement Agreement**" | means any settlement agreement between LBHI and any ECAPS Holder (other than SH2), including the Related SH Agreements, that contains calculations of the PLC Surplus and/or the ECAPS Holder's gain/loss comparable or identical to the calculations set out at Clause 4 (*Settlement – Payment Provisions*) of this Agreement. For the avoidance of doubt, this term shall include |

1

|  | any settlement agreement entered into by a transferee of SH2 ECAPS pursuant to Clause 7.6 (*Security*). |
|---|---|
| **"Affiliated Parties"** | means a Parent Undertaking or Subsidiary Undertaking of a person, together with any other Subsidiary Undertakings of a Parent Undertaking of that person. |
| **"Alternative Collateral Arrangement"** | has the meaning given to it in Clause 7.2(b) (*Security*) below. |
| **"Announcement"** | has the meaning given to it in Clause 12.1 (*Announcements*) below. |
| **"Available ECAPS"** | has the meaning given to it in Clause 7.6(a) (*Security*) below. |
| **"Bank of England Spot Rate"** | means the daily spot exchange rate against Sterling as published on the Bank of England website. |
| **"Business Days"** | means a day (other than a Saturday or a Sunday) on which banks are open for general business in London and New York. |
| **"Calculation Expert"** | has the meaning given to it in Clause 5.1 (*Expert Determination*) below. |
| **"Collateral Account"** | means the segregated custodian account with account number ██████ established and maintained by ████████ ████ in the name of SH2, which shall consist of a securities account and a deposit account. |
| **"Collateral Documents"** | means the Control Agreement and the Security Agreement. |
| **"Comparator Settlement"** | means, any agreement entered into by LBHI with any existing or future ECAPS Holder (other than the Settling Holders or any Affiliated Party of the Settling Holders) to purchase, settle, quantify or compromise such ECAPS Holder's entitlements in their capacity as ECAPS Holder on terms which are different (other than any terms required to reflect the different ECAPS holders party to such agreement) than the terms of this Agreement. |
| **"Completion Date"** | has the meaning given to it in Clause 2.1 (*Completion Date*) below. |
| **"Control Agreement"** | means the New York law governed Collateral Account Control Agreement dated the Effective Date and made between SH2 (as Pledgor), LBHI (as the Secured Party) and ████████ ████ (as the Securities Intermediary) (each such term as defined therein) in respect of the Collateral Account. |
| **"ECAPS"** | means ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3. |
| **"ECAPS Guarantees"** | means the subordinated guarantees given by PLC in favour of holders of the ECAPS pursuant to certain guarantees referred to in the ECAPS Series 1 prospectus dated 29 March 2005, ECAPS Series 2 prospectus dated 30 August 2005 and ECAPS Series 3 prospectus dated 20 February 2006. |

2

| | |
|---|---|
| **"ECAPS Holder"** | means the beneficial owner of any part of ECAPS Series 1, ECAPS Series 2 and/or ECAPS Series 3. |
| **"ECAPS Series 1"** | means the EUR225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities issued by Lehman Brothers UK Capital Funding LP as described in a prospectus dated 29 March 2005. |
| **"ECAPS Series 2"** | means the EUR200,000,000 Euro Fixed Rate Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities initially issued by Lehman Brothers UK Capital Funding II LP as described in a prospectus dated 30 August 2005, together with a further EUR50,000,000 Euro Fixed Rate Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities issued by way of Final Terms dated 26 October 2005. |
| **"ECAPS Series 3"** | means the EUR500,000,000 of Fixed/Floating Rate Enhanced Capital Advantaged Preferred Securities issued by Lehman Brothers UK Capital Funding III LP as described in a prospectus dated 20 February 2006. |
| **"Effective Date"** | means the date stated at the start of this Agreement. |
| **"Encumbrance"** | means any: |
| | (a) mortgage, pledge, lien, charge, hypothecation, security interest or other encumbrance, security agreement or security arrangement of any kind; |
| | (b) purchase or option agreement or arrangement; |
| | (c) subordination agreement or arrangement; |
| | (d) participation or sub-participation; |
| | (e) right of set-off; and/or |
| | (d) agreements to create or effect any of the foregoing. |
| **"EU MAR"** | means Regulation (EU) No 596/2014 of the European Parliament and of the Council of 16 April 2014 on market abuse. |
| **"EUR"** | means euro, being the official currency of certain member states of the European Union. |
| **"Exchange Act"** | means the U.S. Securities Exchange Act of 1934, as amended. |
| **"Final Hearing Date"** | means the final date on which the Court of Appeal sits for its substantive hearing of the Priority Proceedings, which hearing is scheduled to begin on Monday, 4 October 2021 and is expected to last five (5) days. For the avoidance of doubt, for these purposes the substantive hearing does not include any judgment hand-down hearing, any hearing to address matters consequential upon judgment or any subsequent hearing. |

3

| | |
|---|---|
| **"GBP"** | means the British pound sterling, being the official currency of the United Kingdom. |
| **"GP1"** | means LB GP No 1 Limited (in liquidation). |
| **"Initial Date"** | has the meaning given to it in Clause 4.2 (*Settlement – Payment Provisions*) below. |
| **"LBHI Payments"** | has the meaning given to it in Clause 4.5(a) (*Settlement – Payment Provisions*) below. |
| **"LBHI2"** | means LB Holdings Intermediate 2 Limited (in administration). |
| **"LBHI2 Sub-Debts"** | means the debts owed on the following: |

(a) USD4,500,000,000 Long-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006;

(b) EUR3,000,000,000 Long-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006; and

(c) USD8,000,000,000 Short-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006.

| | |
|---|---|
| **"LBHI2 Sub-Notes"** | means the USD6,139,000,000 Floating Rate Subordinated Notes issued by LBHI2 as described in an offering circular dated 26 April 2007, as amended by a written resolution dated 3 September 2008. |
| **"LBL"** | means Lehman Brothers Limited (in administration). |
| **"LCIA"** | has the meaning given to it in Clause 5.2(a) (*Expert Determination*) below. |
| **"Legal Reservations"** | means: |

(a) the principle that certain remedies may be granted or refused at the discretion of the court, the limitation of enforcement by laws relating to bankruptcy, insolvency, liquidation, reorganisation, court schemes, moratoria, administration and other laws generally affecting the rights of creditors and secured creditors;

(b) the time barring of claims under applicable limitation laws (including the Limitation Acts) and defences of acquiescence, set off or counterclaim;

(c) the principle that in certain circumstances an Encumbrance granted by way of fixed charge may be recharacterised as a floating charge or that an Encumbrance purported to be constituted as an assignment may be recharacterised as a charge;

(d) the principle that the creation or purported creation of an Encumbrance over:

4

(i) any asset not beneficially owned by the relevant charging company at the date of the relevant security document; or

(ii) any contract or agreement which is subject to a prohibition on transfer, assignment or charging,

may be void, ineffective or invalid and may give rise to a breach of the contract or agreement over which an Encumbrance has purportedly been created; and

(e) similar principles, rights and defences under the laws of any relevant jurisdiction.

| | |
|---|---|
| **"MFN Option"** | has the meaning given to it in Clause 8.2 (*Most Favoured Nation Option*) below. |
| **"P1"** | has the meaning given to it in Clause 4.5(b) (*Settlement – Payment Provisions*) below. |
| **"P2"** | has the meaning given to it in Clause 4.5(c) (*Settlement – Payment Provisions*) below. |
| **"P3"** | has the meaning given to it in Clause 4.5(d) (*Settlement – Payment Provisions*) below. |
| **"Parent Undertaking"** | has the meaning given to it in section 1162 of the 2006 Act. |
| **"Payment"** | has the meaning given to it in Clause 9.1A (*Representations, Warranties and Indemnities*) below. |
| **"Perfection Requirements"** | means the making or the procuring of the filing of a Uniform Commercial Code financing statement in respect of the collateral assignment set out in the Security Agreement. |
| **"Permitted Security"** | means: |

(a) any lien arising by operation of law and in the ordinary course of trading, provided such lien does not arise a result of any default or omission by SH2 or any of its Affiliated Parties or from the use of the Collateral Account to hold any asset other than SH2 ECAPS or any payments or distributions in respect thereof, unless agreed in writing by LBHI; and

(b) any lien or right of set off arising under the general terms and conditions of any banks (including custodian banks) with which SH2 maintains a banking relationship in the ordinary course of business.

| | |
|---|---|
| **"PLC"** | means Lehman Brothers Holdings plc (in administration). |
| **"PLC Note Series 1"** | means the EUR225,000,000 Fixed Rate to CMS-Linked Subordinated Notes due 30 March 2035 issued by PLC as described in an offering circular dated 29 March 2005. |
| **"PLC Note Series 2"** | means the EUR200,000,000 Fixed Rate Subordinated Notes due 21 September 2035 issued by PLC as described in an offering |

5

|  | circular dated 19 September 2005, together with the EUR50,000,000 Fixed Rate Subordinated Notes due 21 September 2035 issued by PLC as described in an offering circular dated 26 October 2005, which were consolidated together. |
|---|---|
| **"PLC Note Series 3"** | means the EUR500,000,000 Fixed/Floating Rate Subordinated Notes due 22 February 2036 issued by PLC as described in an offering circular dated 20 February 2006. |
| **"PLC Preference Shares"** | means the non-cumulative redeemable preference shares issued by PLC. |
| **"PLC Sub-Debts"** | means the debts owed on the following: |
|  | (a) USD4,500,000,000 Long-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 30 July 2004; |
|  | (b) EUR3,000,000,000 Long-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 30 July 2004; and |
|  | (c) USD8,000,000,000 Short-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 31 October 2005. |
| **"PLC Sub-Notes"** | means PLC Note Series 1, PLC Note Series 2 and PLC Note Series 3. |
| **"PLC Surplus"** | has the meaning given to it in Clause 4.2 (*Settlement – Payment Provisions*) below. |
| **"Priority Proceedings"** | means the applications issued by the joint administrators of LBHI2 and the joint administrators of PLC on 16 March 2018 seeking directions from the High Court of Justice in England and Wales among other things with respect to the relative ranking and purported release of subordinated debts, including the appeals issued by certain parties to the Court of Appeal (case references A3/2020/1787, A3/2020/1810 and A3/2020/1811), any appeals issued by any party to the Supreme Court, and any ancillary proceedings in relation to such applications. |
| **"Related SH Agreements"** | has the meaning given to it in Recital C. |
| **"Rule 14.44"** | means rule 14.44 of the Insolvency (England and Wales) Rules 2016. |
| "**Scheduled Claims**" | means each of the claims against LBHI2, PLC and LBL listed in Schedule 1 (*Scheduled Claims*) to this Agreement, as such schedule may be amended from time to time pursuant to Clause 4.4 (*Settlement – Payment Provisions*) below. |
| **"Security Agreement"** | means the New York law governed security agreement dated the Effective Date and made between SH2 (as Pledgor) and LBHI (as Pledgee) (each such term as defined therein). |

6

| | |
|---|---|
| **"Selected Comparator Settlement"** | has the meaning given to it in Clause 8.3 (*Most Favoured Nation Option*) below. |
| **"Series 1 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(e) (*Settlement – Payment Provisions*) below. |
| **"Series 2 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(f) (*Settlement – Payment Provisions*) below. |
| **"Series 3 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(g) (*Settlement – Payment Provisions)* below. |
| **"Settling Holders"** | has the meaning given to it in Recital C. |
| **"SH2 Additional ECAPS"** | has the meaning given to it in Clause 6.2 (*Future ECAPS Purchases*) below. |
| **"SH2 ECAPS"** | means the SH2 Effective Date ECAPS and the SH2 Additional ECAPS. |
| **"SH2 Effective Date ECAPS"** | means the ECAPS beneficially owned by SH2 as at the Effective Date, as set out at the version of Schedule 3 (*SH2 ECAPS*) to this Agreement applicable on the Effective Date. |
| **"SH2 Gain/Loss"** | has the meaning given to it in Clause 4.5 (*Settlement – Payment Provisions*) below. |
| **"SH2 Payments"** | has the meaning given to it in Clause 4.5(h) (*Settlement – Payment Provisions*) below. |
| **"SH2 Share of ECAPS Series 1"** | has the meaning given to it in Clause 4.5(i) (*Settlement – Payment Provisions*) below. |
| **"SH2 Share of ECAPS Series 2"** | has the meaning given to it in Clause 4.5(j) (*Settlement – Payment Provisions*) below. |
| **"SH2 Share of ECAPS Series 3"** | has the meaning given to it in Clause 4.5(k) (*Settlement – Payment Provisions*) below. |
| **"SH1"** | has the meaning given to it in Recital C. |
| **"SH3"** | has the meaning given to it in Recital C. |
| **"Subsidiary Undertaking"** | means: |
| | a) a subsidiary undertaking within the meaning of section 1162 of the 2006 Act; and |
| | b) any undertaking which would be a subsidiary undertaking within the meaning of section 1162 of the 2006 Act but for any security subsisting over the shares in that undertaking from time to time. |
| **"Threshold Amount"** | has the meaning given to it in Clause 4.3 (*Settlement – Payment Provisions*) below. |

7

| | |
|---|---|
| **"Transferred ECAPS"** | has the meaning given to it in Clause 4.20 (*Settlement – Payment Provisions*) below. |
| **"UK MAR"** | means EU MAR as it forms part of English law by virtue of the European Union (Withdrawal) Act 2018 (as amended). |
| **"USD"** | means the U.S. dollar, being the official currency of the United States of America. |
| **"VAT"** | means value added tax. |

1.2     Unless the context requires otherwise in this Agreement:

    **(a)**     a reference to a Clause or a Schedule is a reference to a clause of, or schedule to, this Agreement;

    **(b)**     references to the singular shall include references to the plural and vice versa;

    **(c)**     references to a "person" shall be construed so as to include any individual, firm, company, corporation, body corporate, fund, government, state or agency of a state, local or municipal authority or government body or any joint venture, association or partnership (whether or not having separate legal personality);

    **(d)**     the words "including" and "include" shall not be construed as or take effect as limiting the generality of the foregoing words;

    **(e)**     words importing any gender shall include all other genders;

    **(f)**     a reference to any statute or statutory provision (including any subordinate legislation) includes any statute or statutory provision which amends, extends, consolidates or replaces the same, or which has been amended, extended, consolidated or replaced by the same, and shall include any orders, regulations, instruments or other subordinate legislation made under the relevant statute or statutory provision;

    **(g)**     a reference to an agreement is to that agreement as amended and/or restated from time to time;

    **(h)**     the headings shall not be construed as part of this Agreement nor affect its interpretation;

    **(i)**     a reference to a time of day is a reference to London time;

    **(j)**     a reference to the date of a notice or other written communication sent pursuant to this Agreement is a reference to the date on which it is deemed received pursuant to Clause 15.2 (*Notices and Communications*); and

    **(k)**     a reference to a currency is a reference to the lawful currency for the time being of the relevant country.

**2      COMPLETION DATE**

2.1     This Agreement in its entirety will become effective and legally binding among the Parties on and from, and not before, the date that the SH2 Effective Date ECAPS are deposited in the Collateral Account pursuant to Clause 7.1 (*Security*) (such date being the "**Completion Date**").

WEIL:\98047233\1\58399.0011

**2.2**    If the Completion Date does not occur within seven (7) calendar days of the Effective Date, this Agreement will terminate in its entirety and will be of no legal effect.

**3**    **GENERAL ACKNOWLEDGMENTS**

**3.1**    Each of the Parties acknowledges that the compromises, rights and obligations in this Agreement are without prejudice to, and are not intended to influence, the Priority Proceedings or the rights and remedies of the Parties otherwise.

**3.2**    Nothing in this Agreement shall be, or be deemed to constitute, a waiver, consent, amendment or agreement to any matter or obligation other than those expressly noted in this Agreement.

**3.3**    This Agreement is not, and shall not be represented or construed as, an admission of liability or wrongdoing on the part of any Party or any other person or entity.

**3.4**    Each of the Parties acknowledges that this Agreement is the product of arm's-length negotiations and has been duly, freely and voluntarily executed and delivered by it, and each of the Parties acknowledges that this Agreement constitutes valid and legally binding obligations, enforceable against it in accordance with its terms.

**4**    **SETTLEMENT - PAYMENT PROVISIONS**

*The settlement payments*

**4.1**    In order to settle the economic outcome of the Priority Proceedings as it would apply as between LBHI and SH2, LBHI shall make payments to SH2 and/or SH2 shall make payments to LBHI in the amount of the SH2 Gain/Loss, as required by this Clause 4 (*Settlement – Payment Provisions*).

*Defined terms for the calculations*

**4.2**    "**PLC Surplus**" means:

   **(a)**    if, as at the date on which such surplus is to be determined, LBHI2 has not made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full, the aggregate total amount of funds that PLC has distributed on the PLC Sub-Notes, PLC Sub-Debts, ECAPS Guarantees and PLC Preference Shares from time to time on or after 7 July 2021 (being the "**Initial Date**"), expressed as an amount in GBP; and

   **(b)**    if, as at the date on which such surplus is to be determined, LBHI2 has made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full, the sum of: (i) the aggregate total amount of funds that LBHI2, PLC and LBL have distributed on the Scheduled Claims from time to time on or after the Initial Date in excess of the Threshold Amount; plus (ii) the aggregate total amount of funds that PLC has distributed on the PLC Sub-Notes, PLC Sub-Debts, ECAPS Guarantees and PLC Preference Shares from time to time on or after the Initial Date, and the aggregate total amount of funds referred to at (i) and (ii) above shall be expressed as an amount in GBP.

**4.3**    "**Threshold Amount**" means GBP 160,308,671.10 or such revised amount as is stated in the most recent notice sent by LBHI pursuant to Clause 4.4 (*Settlement – Payment Provisions*).

**4.4**    Subject to Clause 4.19 (*Settlement – Payment Provisions*) below, if (i) any new claim (other than the PLC Sub-Debts, PLC Sub-Notes and ECAPS Guarantees) is admitted to proof against PLC or LBL (save to the extent that the economic interest in such claim flows, directly or indirectly, to PLC, LBHI2 or LBL (in which case LBHI shall give notice to SH2 of that fact)); or (ii) the relevant administrators or the court revise the amount at which any of the Scheduled Claims is admitted to proof such that the relevant admitted claim amount listed in Column B of Schedule 1 (*Scheduled*

WEIL:\98047233\1\58399.0011

*Claims*) to this Agreement is incorrect, in each case LBHI shall send SH2 a revised version of Schedule 1 (*Scheduled Claims*) in which:

(a)    The portion of any new provable claim which is admitted against PLC or LBL, whose economic interest does not flow, directly or indirectly, to PLC, LBHI2 or LBL, is added to the list of Scheduled Claims and (i) the amount at which such portion of the claim is admitted to proof is inserted in Column B, and (ii) the outstanding amount to be paid on such portion of the claim, including statutory interest, is calculated without deduction of any distributions made after the Initial Date and is inserted in Column C, such that Column C represents the outstanding amount that would have been payable on that claim as at the Initial Date but for its late admittance. For the purpose of Schedule 1 (*Scheduled Claims*), the calculation of statutory interest on any new provable claim shall be based on a good faith estimate of the date on which it is anticipated that the provable amount of the new claim will be paid, and such estimate shall be updated as and when each distribution is paid on the provable claim.

(b)    With respect to any revision to the amount at which a Scheduled Claim is admitted to proof: (i) the value in Column B of the admitted claim amount is updated to reflect the revised value, and (ii) the outstanding amount to be paid on the claim, including statutory interest, is recalculated in accordance with the revised value for the admitted claim amount, disregarding any distributions made after the Initial Date and inserted in Column C, such that Column C represents the outstanding amount that would have been payable on that claim as at the Initial Date if already admitted in the revised amount. For the purpose of Schedule 1 (*Scheduled Claims*), the calculation of statutory interest on a revised claim amount shall be based on a good faith estimate of the date on which it is anticipated that the outstanding provable amount of such claim will be paid, and such estimate shall be updated as and when each distribution is paid on the outstanding amount of the provable claim. Notwithstanding anything in the preceding sentences, if the admitted claim amount is decreased, the Scheduled Claim shall be revised only to the extent that the relevant debtor actually receives any excess distribution paid on that claim.

(c)    The aggregate total value of all amounts in Column C is updated to reflect the changes made pursuant to this Clause 4.4 (*Settlement – Payment Provisions*) and the Threshold Amount shall thereafter be an amount equal to that updated aggregate total amount in Column C. For the avoidance of doubt, the Threshold Amount does not include the outstanding amount to be paid on the LBHI2 Sub-Notes.

When sending any notice or revised version of Schedule 1 (*Scheduled Claims*) under this Clause 4.4 (*Settlement – Payment Provisions*), LBHI shall attach the information and documentation relied upon by LBHI for such notice or revisions, including (if applicable) information showing that the economic interest in a claim flows, directly or indirectly, to PLC, LBHI2 or LBL, subject to Clause 4.9 (*Settlement – Payment Provisions*) below.

4.5    "**SH2 Gain/Loss**" means, subject to Clause 4.20 (*Settlement – Payment Provisions*) below, the amount of SH2's notional gain or loss, calculated according to the following formula and expressed as an amount in GBP:

(P1 – (16.19% x Series 1 Share of PLC Notes x PLC Surplus)) x SH2 Share of ECAPS Series 1 +

(P2 – (16.19% x Series 2 Share of PLC Notes x PLC Surplus)) x SH2 Share of ECAPS Series 2 +

(P3 – (16.19% x Series 3 Share of PLC Notes x PLC Surplus)) x SH2 Share of ECAPS Series 3 +

LBHI Payments – SH2 Payments = **SH2 Gain/Loss**

Where:

WEIL:\98047233\1\58399.0011

(a)  "**LBHI Payments**" is, subject to Clause 4.20 (*Settlement – Payment Provisions*) below, as at any date of determination, the aggregate total of amounts already paid by LBHI pursuant to Clauses 4.14 and 4.15 (*Settlement – Payment Provisions*) below, expressed in GBP.

(b)  "**P1**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 1 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 1, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 1 pro-rata to their holdings of ECAPS Series 1, expressed in GBP.

(c)  "**P2**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 2 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 2, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 2 pro-rata to their holdings of ECAPS Series 2, expressed in GBP.

(d)  "**P3**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 3 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 3, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 3 pro-rata to their holdings of ECAPS Series 3, expressed in GBP.

(e)  "**Series 1 Share of PLC Notes**" is the GBP37,674,151.81 deemed provable value of PLC Notes Series 1 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 22.411%.

(f)  "**Series 2 Share of PLC Notes**" is the GBP52,931,231.82 deemed provable value of PLC Notes Series 2 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 31.487%.

(g)  "**Series 3 Share of PLC Notes**" is the GBP77,499,131.64 deemed provable value of PLC Notes Series 3 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 46.102%.

(h)  "**SH2 Payments**" is, subject to Clause 4.20 (*Settlement – Payment Provisions)* below, as at any date of determination, the aggregate total of amounts already paid by SH2 pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) below, expressed in GBP.

(i)  "**SH2 Share of ECAPS Series 1**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH2's holding of EUR 17,957,000 face amount of ECAPS Series 1, expressed as a percentage by value of the EUR 173,825,000 total outstanding issuance of ECAPS Series 1, being agreed at 10.331%.

(j)  "**SH2 Share of ECAPS Series 2**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH2's holding of EUR 4,912,000 face amount of ECAPS Series 2, expressed as a percentage by value of the EUR 250,000,000 total outstanding issuance of ECAPS Series 2, being agreed at 1.965%.

11

(k)     "**SH2 Share of ECAPS Series 3**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH2's holding of EUR 20,050,000 face amount of ECAPS Series 3, expressed as a percentage by value of the EUR 373,650,000 total outstanding issuance of ECAPS Series 3, being agreed at 5.366%.

4.6     For the purpose of the calculations in this Clause 4 (*Settlement – Payment Provisions*), if any distribution or payment is made in a currency other than GBP, the GBP equivalent shall be calculated using the Bank of England Spot Rate for the date of distribution or payment.

4.7     Worked examples of:

(a)     the calculation of the PLC Surplus and the SH2 Gain/Loss; and

(b)     the calculation of SH2 Share of ECAPS Series 1, SH2 Share of ECAPS Series 2 and SH2 Share of ECAPS Series 3 in a scenario in which SH2 or any of its Affiliated Parties (other than SH1 or SH3) purchase SH2 Additional ECAPS pursuant to Clause 6.2 (*Future ECAPS Purchases*),

are set out at Schedule 2 (*SH2 Gain/Loss – Worked Examples*) to this Agreement, by way of illustration only.

*Calculation and payment of SH2 Gain/Loss*

4.8     Subject to Clause 4.9 and Clause 4.19 (*Settlement – Payment Provisions*) below, within fourteen (14) calendar days of the date of each distribution to creditors by PLC, LBHI2 and/or LBL, LBHI shall send a notice to SH2 reflecting its calculations, set out substantially in the form of the worked examples at Schedule 2 (*SH2 Gain/Loss – Worked Examples*) to this Agreement, of the following:

(a)     the status of post-Initial Date distributions on the Scheduled Claims as compared to the Threshold Amount;

(b)     the PLC Surplus; and

(c)     the SH2 Gain/Loss.

LBHI's notice shall attach the information and documentation that has been relied upon by LBHI for the purposes of the calculations (including those documents referred to at Clause 4.10 (*Settlement – Payment Provisions*).

4.9     To the extent that any information or documentation that LBHI would otherwise be required to provide under Clause 4.4 or Clause 4.8 (*Settlement – Payment Provisions*) is subject to confidentiality obligations preventing its disclosure, LBHI shall use reasonable efforts to obtain the requisite permission(s) in order that such information or documentation can be disclosed to SH2 provided that LBHI shall not be required to take part in any legal proceedings or incur any out-of-pocket expenses (other than non-material expenses incurred in the ordinary course of obtaining such permissions) in doing so. In the event that LBHI is unable to obtain the requisite permission(s), then the relevant confidential information or documentation does not need to be provided, however LBHI shall confirm in the notice: (i) that it has sought the requisite permission(s) but its request was refused or no substantive response has been received; and (ii) the nature of the relevant information or documentation that cannot be provided, including its relevance for the purposes of the calculations. For the avoidance of doubt, the provision of any information or document by LBHI does not amount to a representation by LBHI as to whether it contains "inside information" within the meaning of UK MAR and/or EU MAR or otherwise contains material non-public information under applicable securities law, including the Exchange Act. Information and documentation supplied under Clause 4.4 or Clause 4.8 (*Settlement – Payment Provisions*) shall be sent by LBHI only to ███████████████ at ████████████████

12

**4.10**    LBHI shall calculate the PLC Surplus and the status of post-Initial Date distributions on the Scheduled Claims by reference to the LBHI2, PLC and LBL administrators' dividend letters, notices of declaration of dividend, progress reports and other information provided by those administrators, if and to the extent available. If the relevant information is unavailable or the available information is shown to be inaccurate or incomplete for the purposes of the relevant calculations, LBHI or SH2 shall promptly request further, updated or corrected information from the relevant administrators (with a copy of any such correspondence and any responses being sent to the other party for information) and the applicable time requirements set out in Clauses 4.8, 4.11, 4.12 and 4.15 (*Settlement – Payment Provisions*) shall be stayed pending the relevant administrators' substantive response, with such stay lasting up to a maximum of forty-five (45) calendar days from the date of such request (or such other period as may be agreed by the parties hereto), following which the time requirements shall no longer be stayed.

**4.11**    Within fourteen (14) calendar days of the date of LBHI's notice under Clause 4.8 (*Settlement – Payment Provisions*) above, SH2 shall send LBHI a notice specifying whether or not it agrees each of the calculations set out in LBHI's notice. If SH2 does not agree one or more of the calculations, SH2 shall set out in its notice its reasons for not agreeing the relevant calculations and any additional information SH2 reasonably believes that it needs in order to check the calculations. LBHI and SH2 shall discuss the reasons for SH2's non-agreement and any information requests, and shall promptly take reasonable steps in good faith to seek to reach agreement on the relevant calculations. If SH2 does not send such a notice within the fourteen (14) calendar day period, SH2 shall be deemed to have agreed LBHI's calculations.

**4.12**    If no agreement or deemed agreement of the value of the SH2 Gain/Loss has been reached within forty-two (42) calendar days of the date of LBHI's notice under Clause 4.8 (*Settlement – Payment Provisions*) above, either LBHI or SH2 may give notice under Clause 5.1 (*Expert Determination*) below.

**4.13**    If the SH2 Gain/Loss is a positive number, then SH2 shall pay to LBHI an amount in GBP equal to the SH2 Gain/Loss. The date for payment is as provided for at Clause 4.15 (*Settlement – Payment Provisions*) below.

**4.14**    If the SH2 Gain/Loss is a negative number, then LBHI shall pay to SH2 an amount in GBP equal to the SH2 Gain/Loss (expressed as a positive number). The date for payment is as provided for at Clause 4.15 (*Settlement – Payment Provisions*) below.

**4.15**    SH2 and/or LBHI (as relevant) shall make the payments required by Clauses 4.13 and 4.14 (*Settlement – Payment Provisions*) above within fourteen (14) calendar days of the amount being agreed or deemed agreed pursuant to Clause 4.11 (*Settlement – Payment Provisions*) above or determined by the Calculation Expert pursuant to Clause 5 (*Expert Determination*) below. Payment shall be made to:

   **(a)**    For payments to LBHI:

          Account Name:          ■■■■■■■■■■■■■■■

          Sort Code:             ■■■■■

          Account Number:        ■■■■■

          IBAN:                  ■■■■■■■■■■■

          SWIFT/BIC:             ■■■■■

   **(b)**    For payments to SH2:

          Intermediary Bank:     ■■■■■■■■■■■■■■■

13

| | |
|---|---|
| **Intermediary Bank BIC:** | ███████████ |
| **Sort Code:** | █████ |
| **Account Name:** | ████████████████████ |
| **Account BIC:** | ████████████ |
| **Beneficiary Name:** | ████████████████ |
| **Beneficiary Account Number:** | ██████████ |

**4.16**   The calculations in this Agreement are to be made by reference to the gross amounts distributed or paid by PLC, LBHI2, LBL, LBHI and SH2 rather than by reference to amounts received by the relevant recipient, and the calculations shall not take into account any tax suffered by the relevant recipient in respect of any such distributions (whether imposed by way of withholding or otherwise) or any other deduction taken from such distributions.

**4.17**   Subject to Clause 4.18 (*Settlement – Payment Provisions*), all amounts due under this Agreement shall be paid in full without any set-off, counterclaim, deduction or withholding.

**4.18**   All payments made in accordance with Clauses 4.13 and 4.14 (*Settlement – Payment Provisions*) shall be made free and clear of, and without withholding or deduction for, any taxes duties, assessments or governmental charges in the nature of a tax, unless such withholding or deduction is required by law. If any such withholding or deduction is required, the party making the payment shall (i) not be required to pay any additional amounts to the recipient in respect of such withholding or deduction; and (ii) deliver to the party receiving the payment evidence reasonably satisfactory to such party that the withholding or deduction has been made and remitted to the relevant tax authority.

**4.19**   LBHI shall only be required:

   **(a)**   to give notice or send a revised version of Schedule 1 (*Scheduled Claims*) pursuant to Clause 4.4 (*Settlement – Payment Provisions*); and/or

   **(b)**   to include the calculation at Clause 4.8(a) (*Settlement – Payment Provisions*) in its notice to SH2 pursuant to Clause 4.8 (*Settlement – Payment Provisions*);

   if, as at the date on which LBHI would otherwise be required to do so, LBHI2 has made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full.  If LBHI2 subsequently makes such a distribution, the time for giving any notices that have been postponed pursuant to this Clause 4.19 (*Settlement – Payment Provisions*) shall run from the date of that distribution.

**4.20**   If SH2 transfers any SH2 ECAPS pursuant to Clause 7.6 (*Security*) below (the relevant SH2 ECAPS being the "**Transferred ECAPS**"), the calculation of due but unpaid amounts of the SH2 Gain/Loss and of future amounts of the SH2 Gain/Loss shall be altered, if and to the extent necessary, such that:

   **(a)**   all obligations to pay and rights to receive payment of the SH2 Gain/Loss which arise by reference to the Transferred ECAPS shall pass to the transferee of those Transferred ECAPS, including any such amounts which are accrued but not paid;

   **(b)**   for the purposes of determining the amount of the LBHI Payments under this Agreement, all amounts that have been paid by LBHI pursuant to Clauses 4.14 and 4.15 (*Settlement – Payment Provisions*) above with respect to the Transferred ECAPS shall be excluded (and

shall instead be included in the equivalent term in the equivalent settlement agreement between LBHI and the transferee); and

**(c)**  for the purposes of determining the amount of the SH2 Payments under this Agreement, all amounts that have been paid by SH2 pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) above with respect to the Transferred ECAPS shall be excluded (and shall instead be included in the equivalent term in the equivalent settlement agreement between LBHI and the transferee);

and the aggregate amount of the SH2 Gain/Loss due to or from SH2 and the transferee shall be the same amount as would have been due to or from SH2 (alone) if it had not transferred the Transferred ECAPS.

**4.21**  No item shall be included or excluded more than once in or from the calculations in this Clause 4 (*Settlement – Payment Provisions*) where to do so would result in double counting.

**4.22**  Each of LBHI and SH2 shall cooperate in good faith to achieve the prompt agreement, deemed agreement or determination of the calculation of the SH2 Gain/Loss pursuant to this Clause 4 (*Settlement – Payment Provisions*) and/or Clause 5 (*Expert Determination*).

## 5    EXPERT DETERMINATION

**5.1**  If LBHI and SH2 do not agree, and are not deemed to agree, the calculation of the SH2 Gain/Loss under Clause 4 (*Settlement – Payment Provisions*), LBHI and/or SH2 may give notice that they wish to refer the matter to determination by an independent expert who is an accountant and/or licensed insolvency practitioner, acting as expert and not as arbitrator (the "**Calculation Expert**"). If either LBHI or SH2 gives such a notice, LBHI and SH2 shall use reasonable endeavours in good faith to agree the appointment of a Calculation Expert, including the terms of that appointment, as soon as reasonably practicable.

**5.2**  If LBHI and SH2 are unable to agree on a Calculation Expert or their terms of appointment under Clause 5.1 (*Expert Determination*), in each case within twenty-one (21) calendar days of the date of the notice given pursuant to Clause 5.1 (*Expert Determination*) above, LBHI and SH2 shall take the following steps:

**(a)**  if one or more Calculation Experts have previously been appointed by the London Court of International Arbitration ("**LCIA**") pursuant to Clause 5.2(b) (*Expert Determination*) of this Agreement or pursuant to any Additional Settlement Agreement, whether such expert determination process is completed or ongoing, LBHI and SH2 shall request that the most recently appointed Calculation Expert also act as the Calculation Expert under this Agreement on the same terms (and if they are unable or unwilling to act, shall make the request of each of the other previously appointed Calculation Experts in turn, starting with the most recently appointed), and to the extent reasonably practicable the Calculation Expert shall combine the expert determination processes under this Agreement and under any such Additional Settlement Agreement such that they can be organised and determined together and in a consistent manner; and

**(b)**  if no Calculation Expert has previously been appointed by the LCIA pursuant to this Clause 5.2(b) (*Expert Determination*) or pursuant to any Additional Settlement Agreement, or if the previously appointed Calculation Experts are unable or unwilling to act in respect of a calculation dispute under this Agreement, either LBHI or SH2 may apply, in writing, to the LCIA to appoint a Calculation Expert, enclosing a copy of this Agreement and a brief statement describing the nature and circumstances of the dispute and setting out any matters that the applicant party wishes to bring to the attention of the LCIA for the purposes of selecting the Calculation Expert, with simultaneous copy to the other party. The expert determination shall be administered by the LCIA, which shall also be the appointing authority for the purposes of appointing the Calculation Expert.  Within seven (7) calendar

WEIL:\98047233\1\58399.0011

days of service of the application, the other party shall send to the LCIA, with simultaneous copy to the applicant party, a reply to any matters raised by the applicant party. The LCIA shall endeavour to appoint the Calculation Expert within seven (7) calendar days of service of the reply, or as soon as reasonably practicable thereafter.

If a Calculation Expert is to be appointed under this Clause 5.2 (*Expert Determination*), LBHI and SH2 shall be deemed to have agreed the Calculation Expert's appointment and shall, acting reasonably and in good faith, approve and formalise the terms of the Calculation Expert's engagement promptly. The terms of the Calculation Expert's appointment under Clause 5.2(b) (*Expert Determination*) shall be consistent with this Clause 5 (*Expert Determination*), and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (ADR).

5.3    If there is a referral to a Calculation Expert, the following provisions shall apply:

(a)    each of LBHI and SH2 shall prepare a written statement on the matters in dispute, which shall include their proposed value for the SH2 Gain/Loss and which, together with any relevant documents, shall be sent to the Calculation Expert and to the other party within twenty-eight (28) calendar days of the date of the Calculation Expert's appointment, being the date they are appointed by the LCIA (if so appointed) or the date of their engagement letter (if not appointed by the LCIA);

(b)    each of LBHI and SH2 may send one set of written comments on the other party's written statement (addressing, in particular, the proposed value for the SH2 Gain/Loss set out at Clause 5.3(a) (*Expert Determination*)) to the Calculation Expert and to the other party within twenty-eight (28) calendar days of the submission of the written statements under Clause 5.3(a) (*Expert Determination*);

(c)    the Calculation Expert shall be entitled:

(i)    to extend the time limits in Clauses 5.3(a) and 5.3(b) (*Expert Determination*) above by a maximum of fourteen (14) calendar days each;

(ii)    to disregard any written statement or comments not delivered to the Calculation Expert within the time periods so stipulated;

(iii)    to require LBHI and SH2 (and their respective advisers) to attend one or more meetings and to raise enquiries of them about any matters which the Calculation Expert considers relevant within such timeframe as the Calculation Expert considers necessary in view of the timeframe for their determination specified in 5.3(e) (*Expert Determination*) below;

(iv)    in the absence of agreement between LBHI and SH2, to determine the procedure to be followed in undertaking the expert determination process as they consider appropriate (including the prescribed format and maximum length of any written statement or comments), insofar as the procedure is not set out in this Clause 5 (*Expert Determination*); and

(v)    to appoint advisers (including legal advisers) if required;

(d)    LBHI and SH2 shall use their respective reasonable endeavours to procure that the Calculation Expert is given all such assistance and access to documents and other information as they may reasonably require in order to make their determination;

(e)    the Calculation Expert shall give their determination, with written reasons, within sixty (60) calendar days of the deadline for delivery of the written comments referred to in Clause 5.3(b) (*Expert Determi*nation), unless LBHI, SH2 and the Calculation Expert agree to another deadline; and

16

**(f)**    save in the case of fraud or manifest error, the determination by the Calculation Expert shall be final and binding on all concerned.

5.4    In determining the SH2 Gain/Loss, the Calculation Expert shall take into account the information and documents provided to them pursuant to Clause 5.3 (*Expert Determination*) and the calculations set out at Clause 4 (*Settlement – Payment Provisions*).

5.5    Each of LBHI and SH2 shall bear their own legal costs and other expenses incurred by them in respect of the expert determination process. The (i) LCIA's fees (if applicable) and (ii) Calculation Expert's fees and any costs incurred by them in arriving at their determination (including any fees and costs of any advisers appointed by the Calculation Expert), in each case payable pursuant to their terms of engagement, shall be paid by the party whose proposed value for the SH2 Gain/Loss, as specified in the submissions provided under Clause 5.3(a) (*Expert Determination*), is furthest from that determined by the Calculation Expert. If the Calculation Expert's determination falls exactly between LBHI and SH2's proposed values, LBHI and SH2 shall bear the Calculation Expert's fees and costs equally.  If there is uncertainty as to whose value is furthest from that determined by the Calculation Expert, because one party has failed to state a single asserted value for the SH2 Gain/Loss pursuant to Clause 5.3(a) (*Expert Determination*) above, the Calculation Expert shall determine which of LBHI and/or SH2 shall pay the fees and costs, on the principle that costs should follow the event. The LCIA's fees and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (LCIA Appointing Only) and Schedule of Costs (ADR) respectively.

5.6    If the Calculation Expert dies or becomes unwilling or incapable of acting, or does not deliver their determination within the time required by this Clause 5 (*Expert Determination*), then:

**(a)**    LBHI and SH2 shall seek to agree on the appointment of a replacement Calculation Expert and shall seek to agree with the Calculation Expert the terms of their appointment, as set out at Clause 5.1 (*Expert Determination*); and

**(b)**    if LBHI and SH2 do not reach an agreement in relation to the appointment of a replacement Calculation Expert within seven (7) calendar days of being notified of the Calculation Expert's inability to act or their failure to give a determination within the time required, either party may apply to the LCIA to discharge the Calculation Expert and to appoint a replacement Calculation Expert in accordance with Clause 5.2(b) (*Expert Determination*), which shall apply to the appointment of the replacement Calculation Expert as if they were the first Calculation Expert to be appointed. If a Calculation Expert is to be appointed under this Clause 5.6 (*Expert Determination*), LBHI and SH2 shall be deemed to have agreed the Calculation Expert's appointment and shall, acting reasonably and in good faith, approve and formalise the terms of the Calculation Expert's engagement promptly. The terms of the Calculation Expert's appointment shall be consistent with this Clause 5 (Expert Determination), and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (ADR).

5.7    Each of LBHI and SH2 shall act reasonably and co-operate in good faith to give effect to the provisions of this Clause 5 (*Expert Determination*) and otherwise do nothing to hinder or prevent the Calculation Expert from reaching their determination. Time limits set out in this Clause 5 (*Expert Determination*) may be extended by written agreement between LBHI and SH2.

5.8    Any written statements or other information provided by LBHI or SH2 to any Calculation Expert, and any determination of a Calculation Expert, may be used or referred to without redaction in any subsequent expert determination process under this Agreement or under any Additional Settlement Agreement.

5.9    The Calculation Expert and the LCIA shall have no liability to LBHI or SH2 howsoever for any act or omission in so acting, save where the act or omission is shown by either party to constitute

conscious and/or deliberate wrongdoing committed by the body or person alleged to be liable to that party.

**5.10** All communications concerning the expert determination process shall be copied to the LCIA (if the appointment is made by the LCIA) and, once appointed, the Calculation Expert. All communications shall be sent by email, in accordance with Clause 15 (*Notices and Communications*).

**5.11** If two or more of the Settling Holders are unable to agree the calculation of their gain/loss with LBHI under Clause 4.11 (*Settlement – Payment Provisions*), or an equivalent provision of the relevant Related SH Agreement, and the dispute proceeds to expert determination, the Settling Holders shall submit a single joint written statement and proposed approach to that calculation under Clause 5.3(a) (*Expert Determination*) and a single joint set of written comments under Clause 5.3(b) (*Expert Determination*) pursuant to the terms of this Agreement and the Related SH Agreements. For the avoidance of doubt, the Settling Holders shall agree to use the same Calculation Expert.

## 6    FUTURE ECAPS PURCHASES

**6.1** If SH2 or any of its Affiliated Parties (other than SH1 or SH3) acquire any additional interest in any ECAPS at any time, whether directly or indirectly, through assignment or otherwise, SH2 shall notify LBHI in writing within seven (7) calendar days of the acquisition (being measured from the trade date, if applicable). SH2's notice shall specify the face value of such additional ECAPS acquired, the series of which such additional ECAPS form part and the resultant aggregate principal amount of ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3 held by SH2 and its Affiliated Parties (other than SH1 and SH3) following such acquisition. This Clause 6 (*Future ECAPS Purchases*) shall not apply to any acquisition by an Affiliated Party of SH2 in respect of which a notice has been served under Clause 6.1 (*Future ECAPS Purchases*) of either of the Related SH Agreements.

**6.2** Any additional interest in ECAPS so acquired by SH2 or any of its Affiliated Parties (other than SH1 or SH3) on or after the Effective Date and on or before Monday, 27 September 2021 (the "**Additional Period**") (with the date of acquisition for these purposes being the trade date, if applicable) shall be subject to the terms of this Agreement, including but not limited to Clause 7 (*Security*) and Clause 11 (*Agreement Not to Sue*), whether or not settlement of such acquisition occurs during the Additional Period (such additional ECAPS being the "**SH2 Additional ECAPS**"), and the list of holdings set out at Schedule 3 (*SH2 ECAPS*) to this Agreement shall be deemed updated in accordance with the notice at Clause 6.1 (*Future ECAPS Purchases*). LBHI shall recalculate the definitions of SH2 Share of ECAPS Series 1, SH2 Share of ECAPS Series 2 and SH2 Share of ECAPS Series 3 (as relevant) in accordance with Clause 4 (*Settlement – Payment Provisions*) to take into account the newly acquired SH2 Additional ECAPS. Within fourteen (14) calendar days of SH2's notice pursuant to Clause 6.1 (*Future ECAPS Purchases*) above, LBHI shall send SH2 a notice of the revised calculations of SH2 Share of ECAPS Series 1, SH2 Share of ECAPS Series 2 and SH2 Share of ECAPS Series 3 (as relevant), and those terms shall be deemed amended accordingly, with such amendment being deemed to take effect on the date of acquisition of such SH2 Additional ECAPS (being for these purposes the settlement date, if applicable).

**6.3** Any ECAPS acquired by SH2 or any of its Affiliated Parties after the expiry of the Additional Period (with the acquisition being treated as taking place on the trade date, if applicable) shall not be subject to the terms of this Agreement and none of the definitions of SH2 Share of ECAPS Series 1, SH2 Share of ECAPS Series 2 and SH2 Share of ECAPS Series 3 shall be amended to reflect them, unless the Parties agree otherwise in writing. Nevertheless, the provisions of Clause 11 (*Agreement Not To Sue*) shall govern all of SH2's and its Affiliated Parties' (other than SH1 and SH3) activities in respect of all ECAPS they own, whether purchased prior to, during or after the expiry of the Additional Period.

WEIL:\98047233\1\58399.0011

## 7      SECURITY

*Security over SH2 Effective Date ECAPS and SH2 Additional ECAPS*

7.1      SH2 shall deposit all SH2 Effective Date ECAPS in the Collateral Account within seven (7) calendar days of the Effective Date, and upon doing so shall send LBHI proof that it has done so in the form of a screenshot or statement from ███████████████. SH2 shall, and shall procure that its Affiliated Parties shall, deposit all SH2 Additional ECAPS directly into the Collateral Account (and direct any selling counterparty to transfer all SH2 Additional ECAPS directly into the Collateral Account) and maintain all SH2 ECAPS in the Collateral Account and subject to the terms of the Collateral Documents.

7.2      On or before 27 September 2021, SH2 shall not acquire, and shall procure that its Affiliated Parties shall not acquire, any SH2 Additional ECAPS unless:

(a)      such SH2 Additional ECAPS are capable of being deposited in the Collateral Account and held subject to the Collateral Documents; or

(b)      SH2 provides alternative security or collateral (an "**Alternative Collateral Arrangement**") in form and substance satisfactory to LBHI (acting reasonably) within ten (10) calendar days of the settlement date in respect of the acquisition of such SH2 Additional ECAPS.

7.3      SH2 shall not create or agree to create or permit to subsist any Encumbrance over all or any part of the SH2 ECAPS other than Permitted Security.

7.4      If, within fourteen (14) calendar days of the settlement date in respect of any acquisition of any SH2 Additional ECAPS, SH2 has not complied with the undertakings in Clause 7.1 and 7.2 above, LBHI may elect in writing (but is under no obligation) to terminate the effect of Clause 6.2 (*Future ECAPS Purchases*) above insofar as it relates to the SH2 Additional ECAPS which have not been deposited into the Collateral Account and with respect to which no other security or collateral has been provided in form and substance satisfactory to LBHI (acting reasonably) with immediate effect, such that those SH2 Additional ECAPS shall cease to be treated as SH2 Additional ECAPS and shall instead be treated as ECAPS acquired after the expiry of the Additional Period for the purposes of Clause 6.3 (*Future ECAPS Purchases*).

7.5      Upon receipt by LBHI of all payments owed to LBHI pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) or other terms of this Agreement in cleared funds into the relevant account identified at Clause 4.15 (*Settlement – Payment Mechanics*), and upon LBHI satisfying itself that no such payments will be required to be made by SH2 to LBHI in the future, LBHI shall promptly notify SH2 that all payments required to be made under this Agreement have been made. With effect on and from the date of that notice, LBHI shall irrevocably and unconditionally:

(a)      release and discharge SH2 from all security constituted, created, evidenced or conferred by or pursuant to this Agreement and the Collateral Documents;

(b)      reassign and retransfer to SH2 all rights, interest and title to all assets and property of SH2 which were assigned or transferred to LBHI;

(c)      authorise SH2 to give a notice (at SH2's cost and expense) on behalf of LBHI of the releases under this Clause 7.5 (*Security*) to any person on whom notice of any security interest created by this Agreement and the Collateral Document was served; and

(d)      (i) file or authorise SH2 to file (at SH2's cost and expense) terminations of any and all Uniform Commercial Code financing statements and (ii) provide any necessary notice of termination of the Control Agreement entered into with respect to the Collateral Account.

*Sale of SH2 ECAPS*

**7.6**    SH2 may transfer any of the SH2 ECAPS to any party at any time provided that:

**(a)**    the number of transfers that may be made following the Effective Date of ECAPS that, at the time of the transfer, are or have been SH2 ECAPS, SH1 ECAPS or SH3 ECAPS (in the latter two cases as defined in the SH1 and SH3 Related SH Agreements) (together, "**Available ECAPS**") is limited such that Available ECAPS may at any given time be held only by a maximum of fifteen (15) different beneficial owners in aggregate (in addition to SH1, SH2 and SH3). For the avoidance of doubt, any subsequent transfer by any transferee will count towards the limitation on the number of transfers for the purposes of this Clause 7.6(a) (*Security*);

**(b)**    on or before the settlement date in respect of such transfer, SH2 shall transfer to the transferee all obligations to pay and rights to receive payment of the SH2 Gain/Loss which arise by reference to the transferred ECAPS, including any such amounts which have accrued but not been paid;

**(c)**    on or before the settlement date in respect of such transfer, SH2 shall transfer to the transferee any and all proceeds of those transferred ECAPS which are held in the Collateral Account at the date of the transfer;

**(d)**    on or before the settlement date in respect of such transfer, SH2 shall procure that the transferee enters into a settlement agreement with LBHI on substantially the same terms as this Agreement as if such transferee were SH2 with respect to the relevant SH2 ECAPS;

**(e)**    on or before the settlement date in respect of such transfer, SH2 shall procure that the transferee establishes an account equivalent to the Collateral Account and provides security to LBHI on terms substantially equivalent to the Collateral Documents with respect to the relevant SH2 ECAPS;

**(f)**    on or before the settlement date in respect of such transfer, SH2 shall give notice to LBHI of the identity of the transferee, the face value of SH2 ECAPS that SH2 wishes to sell to that transferee (including the series of which such SH2 ECAPS form part);

**(g)**    SH2 shall only be entitled to transfer SH2 ECAPS if LBHI consents in writing, such consent not to be unreasonably withheld, and the only grounds on which LBHI may reasonably withhold consent are limited to: (i) the entry by LBHI into a settlement agreement and related security agreements with the transferee, or the transactions contemplated by them, will result in, or is reasonably likely to result in, (A) negative tax consequences for LBHI and/or its Affiliated Parties, (B) material impediments on the ability of LBHI to enforce the rights of LBHI under the settlement agreement and related security agreements entered into between LBHI and the transferee, or (C) breach of sanctions, trade restrictions, money laundering, terrorist financing, criminal activities or other restrictions imposed by the United States Office of Foreign Assets Control or departments of the United States Government or the governments or competent authorities of other relevant jurisdictions (including, without limitation, the United Kingdom and the European Union), whether those concerns arise from the jurisdiction(s) in each case in which the proposed transferee is incorporated or carries on business or whether those concerns arise on any other grounds; (ii) the fact that a proposed transferee is a natural person (or a special purpose entity beneficially owned by a natural person and incorporated for the sole or primary purpose of holding the SH2 ECAPS); (iii) any actual or threatened dispute or legal proceedings between LBHI and/or any of its Affiliated Parties on the one hand and the proposed transferee and/or any of its Affiliated Parties on the other hand; or (iv) any of Clauses 7.6(a) to 7.6(e) (*Security*) not being satisfied on or before the settlement date in respect of the transfer; and

20

**(h)**     if the transfer of the SH2 ECAPS is completed, SH2 shall give notice to LBHI within five (5) Business Days of the transfer (being measured from the trade date, if applicable) specifying the face value of the SH2 ECAPS sold, the series of which such SH2 ECAPS form part and the resultant aggregate principal amount of ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3 held by SH2 following such transfer.

**7.7**     Each of LBHI and SH2 shall cooperate in good faith to achieve the entry by the transferee into the settlement agreement and related security agreements as set out in Clause 7.6 (*Security*) above.

**7.8**     Following any transfer by SH2 of SH2 ECAPS in accordance with Clause 7.6 (*Security*) above, the list of holdings set out at Schedule 3 (*SH2 ECAPS*) to this Agreement shall be deemed updated in accordance with the notice at Clause 7.6(h) (*Future ECAPS Purchases*). LBHI shall recalculate the definitions of SH2 Share of ECAPS Series 1, SH2 Share of ECAPS Series 2 and SH2 Share of ECAPS Series 3 (as relevant) in accordance with Clause 4 (*Settlement – Payment Provisions*) to take into account the transfer of SH2 ECAPS by SH2. LBHI shall send SH2 a notice of the revised calculations of SH2 Share of ECAPS Series 1, SH2 Share of ECAPS Series 2 and SH2 Share of ECAPS Series 3 (as relevant), and those terms shall be deemed amended accordingly, with such amendment being deemed to take effect on the date of the transfer of such SH2 ECAPS (being for these purposes the settlement date, if applicable).

## 8     MOST FAVOURED NATION OPTION

**8.1**     Subject to Clause 8.7 (*Most Favoured Nation Option*) below, if, during the period from the Effective Date to the Final Hearing Date, LBHI:

**(a)**     reaches an agreement in principle with respect to a Comparator Settlement; or

**(b)**     enters into any Comparator Settlement with respect to which it had not previously given notice under this Clause 8.1 (*Most Favoured Nation Option*) of an agreement in principle,

LBHI shall give notice to SH2 in writing with details of the agreement in principle or a copy of the Comparator Settlement (as applicable) within five (5) Business Days of the date of reaching such agreement in principle or the date of such Comparator Settlement.

**8.2**     SH2 shall have the option (the "**MFN Option**") to amend this Agreement to match the terms of the agreement in principle or Comparator Settlement, provided that it gives notice in writing to LBHI stating whether or not it intends to exercise the MFN Option within five (5) Business Days of the date of the notice described in Clause 8.1 (*Most Favoured Nation Option*) above. If SH2 does not give a notice in accordance with this Clause 8.2 (*Most Favoured Nation Option*) within that five (5) Business Day period, SH2 shall be deemed not to have exercised the MFN Option.

**8.3**     If SH2 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is exercising the MFN Option with respect to a signed Comparator Settlement (the "**Selected Comparator Settlement**"):

**(a)**     a draft amended version of this Agreement, reflecting the terms of the Selected Comparator Settlement, shall be sent by LBHI to SH2 for review within fourteen (14) calendar days of the date of SH2's notice under Clause 8.2 (*Most Favoured Nation Option*) above;

**(b)**     SH2 and LBHI shall use reasonable endeavours to agree and sign the amended agreement within fourteen (14) calendar days of the date of LBHI sending the draft amended version of this Agreement for review under Clause 8.3(a) (*Most Favoured Nation Option*) above; and

**(c)**     the existing terms of this Agreement shall continue to apply to the Parties until the amended agreement has been signed by all Parties and has come into effect.

**8.4**    If SH2 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is exercising the MFN Option with respect to an agreement in principle:

(a)    no amendments to this Agreement shall be implemented or effective unless and until there is a signed Comparator Settlement with respect to the relevant agreement in principle;

(b)    LBHI shall promptly notify SH2 following execution of the relevant Comparator Settlement and provide SH2 with a copy of such Comparator Settlement;

(c)    SH2 shall have a right to withdraw its notice, within five (5) Business Days of receipt of a signed Comparator Settlement provided under Clause 8.4(b) (*Most Favoured Nation Option*) above, if any term of the signed Comparator Settlement differs from those described in the original notice sent pursuant to Clause 8.1 (*Most Favoured Nation Option*) above; and

(d)    unless SH2 withdraws its notice within five (5) Business Days pursuant to Clause 8.4(c) (*Most Favoured Nation Option*) above, Clause 8.3 (*Most Favoured Nation Option*) above shall apply with the fourteen (14) calendar day period in Clause 8.3(a) (*Most Favoured Nation Option*) running from the expiry of the five (5) Business Day period within which SH2 could have withdrawn its notice.

**8.5**    If SH2 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is not exercising the MFN Option with respect to an agreement in principle, or is deemed not to have exercised the MFN Option:

(a)    LBHI shall promptly notify SH2 following execution of the relevant Comparator Settlement and provide SH2 with a copy of such Comparator Settlement;

(b)    if any term of the signed Comparator Settlement deriving from such agreement in principle differs from those described in the original notice sent pursuant to Clause 8.1 (*Most Favoured Nation Option*) above, SH2 shall have a right to exercise the MFN Option with respect to the Comparator Settlement, provided it does so within five (5) Business Days of receipt of a signed Comparator Settlement provided under Clause 8.5(a) (*Most Favoured Nation Option*) above; and

(c)    if SH2 gives notice within five (5) Business Days pursuant to Clause 8.5(b) (*Most Favoured Nation Option*) above, Clause 8.3 (*Most Favoured Nation Option*) above shall apply with the fourteen (14) calendar day period in Clause 8.3(a) (*Most Favoured Nation Option*) running from the date SH2 gives such notice.

**8.6**    For the avoidance of doubt, for the purposes of determining which parts of this Agreement should be amended to match the terms of a Comparator Settlement pursuant to Clause 8.2 (*Most Favoured Nation Option*) above, differences that arise solely from a differential between the numbers of ECAPS in ECAPS Series 1, ECAPS Series 2 and/or ECAPS Series 3 held by SH2, on the one hand, as compared to the ECAPS Holders subject to the Comparator Settlement, on the other hand, shall be disregarded.

**8.7**    The MFN Option shall not apply:

(a)    to a Comparator Settlement if the face value of ECAPS held by the relevant ECAPS Holder and any of their affiliates is in aggregate less than EUR 1 million;

(b)    to any Comparator Settlement entered into after the Final Hearing Date, unless that Comparator Settlement reflects an agreement in principle that was reached on or prior to the Final Hearing Date;

22

**(c)**     to any agreement in principle that does not ultimately result in a signed Comparator Settlement; or

**(d)**     to any terms of any Comparator Settlement that relate to and resolve matters other than the applicable parties' entitlement to, or notional share of, the assets available for distribution to PLC's subordinated creditors and/or LBHI2's subordinated creditors under their respective subordinated debt claims.

**9        REPRESENTATIONS, WARRANTIES AND INDEMNITIES**

*General*

**9.1**     LBHI and SH2 each represent and warrant to the other that:

**(a)**     it is duly organised and validly existing under the laws of the jurisdiction in which it is incorporated;

**(b)**     it has the power to enter into, perform and deliver the transactions contemplated by this Agreement and to execute, perform and deliver this Agreement;

**(c)**     its obligations in relation to this Agreement and the transaction contemplated by this Agreement constitute legal, valid, binding and enforceable obligations (subject to the Legal Reservations, Perfection Requirements and subject, as to enforceability, to equitable principles of general application); and

**(d)**     it has obtained all necessary authorisations, consents, approval, resolutions, licences, exemptions, filings, notarisations or registrations and has taken all necessary action to enable it lawfully to enter into, exercise its rights in and comply with its obligations in this Agreement.

**9.1 A**   Each payor under any present or future obligation to make a payment under this Agreement to a payee (each such payment is referred to as a "**Payment**") represents and warrants to each such payee that they are not as of the date of this Agreement under any legal obligation to withhold any amount for or on account of taxes in respect of a Payment had such Payment been required to be made on the date of this Agreement (save in respect of US backup withholding taxes pursuant to section 3406 of the U.S. Internal Revenue Code of 1986 that may be imposed on a Payment solely as a result of a payee's failure to provide a relevant IRS Form W-8 or IRS Form W-9 but only if (i) such form is required by applicable law to eliminate such US backup withholding and (ii) such form is timely requested by the payor of such Payment before making such Payment).

*Indemnities*

**9.2**     SH2 shall indemnify, and shall keep indemnified, LBHI against all reasonably incurred liabilities, costs and expenses (including legal and out-of-pocket expenses and any value added tax on those costs and expenses) arising directly out of or incurred directly in connection with (i) any legal or other proceedings for the enforcement of SH2's payment obligations  or recovery of sums due from SH2 under this Agreement  (excluding, for the avoidance of doubt, any proceedings under Clause 5 (*Expert Determination*) concerning the amount due); and (ii) the enforcement of Clause 7 (*Security*) and/or any security created thereunder (other than liabilities, costs and expenses incurred by reason of LBHI's gross negligence or willful misconduct).

**9.3**     LBHI shall indemnify, and shall keep indemnified, SH2 against all reasonably incurred liabilities, costs and expenses (including legal and out-of-pocket expenses and any value added tax on those costs and expenses) arising directly out of or incurred directly in connection with any legal or other proceedings for the enforcement of LBHI's payment obligations or recovery of sums due from LBHI under this Agreement (excluding, for the avoidance of doubt, any proceedings under Clause

23

5 (*Expert Determination*) concerning the amount due) (other than liabilities, costs and expenses incurred by reason of SH2's gross negligence or willful misconduct).

*SH2*

**9.4**    SH2 represents and warrants that it and its Affiliated Parties (other than SH1 or SH3) are, and will continue to be, the sole beneficial owner of, and have good beneficial title to, the SH2 ECAPS, free and clear of any Encumbrance and that they have not made any prior sale, transfer or sub-participation of their interest in the SH2 ECAPS which is subsisting.

**9.5**    SH2 represents and warrants that the list of holdings of the SH2 ECAPS, as set out at Schedule 3 (*SH2 ECAPS*) to this Agreement, is accurate and up-to-date.

**9.6**    SH2 represents and warrants that the proof of ownership of the SH2 Effective Date ECAPS provided pursuant to Clause 7.1 (*Security*) is accurate and up-to-date as at the Completion Date.

**9.7**    The representations and warranties at Clause 9.4 (*Representations, Warranties and Indemnities*) and Clause 9.5 (*Representations, Warranties and Indemnities*) are stated with respect to the SH2 Effective Date ECAPS on the Completion Date and repeated on the date SH2 gives notice to LBHI of it or any of its Affiliated Parties (other than SH1 or SH3) acquiring any SH2 Additional ECAPS pursuant to Clause 6.1 (*Future ECAPS Purchase*s) with respect to all such SH2 Effective Date ECAPS and SH2 Additional ECAPS.

**9.8**    SH2 represents and warrants that:

**(a)**    it is not insolvent or unable to pay its debts within the meaning of section 123 of the Insolvency Act 1986 or any other applicable insolvency legislation;

**(b)**    it has the resources to discharge its debts as they fall due;

**(c)**    to its knowledge and belief, no execution or other process issued on a judgment, decree or order of any court in favour of a creditor remains unsatisfied in whole or in part and no statutory demand for payment has been served on it;

**(d)**    to its knowledge and belief, no corporate action has been taken or is pending and no other steps have been taken and no legal proceedings have been commenced or are threatened or are pending for: (i) the suspension of payments, a moratorium in respect of any indebtedness, winding-up, liquidation, dissolution, administration or reorganisation (using a voluntary arrangement, scheme of arrangement or otherwise) of it; (ii) the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of SH2 or any of its property, undertaking or assets; or (iii) it to enter into any composition, compromise, assignment or arrangement with its creditors generally; and

**(e)**    no event equivalent to any of the provisions in Clause 9.8(d) (*Representations, Warranties and Indemnities*) has occurred under the laws of any other jurisdiction.

**10**    **COSTS**

Each of the Parties shall bear their own legal and other costs incurred in connection with the negotiation, preparation and execution of this Agreement and any documents referred to in it, including the Collateral Documents.

**11**    **AGREEMENT NOT TO SUE**

**11.1**    Subject to Clause 11.2 (*Agreement Not To Sue*), SH2 shall not, without LBHI's prior written consent (and shall procure that its Affiliated Parties, including without limitation the other Settling Holders,

24

do not without LBHI's prior written consent), at any time assert a claim against or sue, commence, continue, voluntarily aid in any way, intervene or seek to be joined, prosecute or cause to be commenced or prosecuted (or instruct, direct, authorise, assist or encourage any other person to commence or continue) any action, suit or other proceeding in any jurisdiction or forum whatsoever against LBHI, SLP3, PLC, LBHI2, LBL and/or GP1 and/or any of their Affiliated Parties concerning:

   **(a)**      the issues in the Priority Proceedings;

   **(b)**      anything that might affect the flow of funds to the ECAPS and/or to LBHI2, SLP3, PLC and/or LBL's other subordinated or unsubordinated creditors; and/or

   **(c)**      anything that might affect the nature or quantum of the PLC Surplus or the timing of its distribution.

**11.2**     For the avoidance of doubt, the agreement not to sue in Clause 11.1 (*Agreement Not To Sue*) above shall not apply to any claims, rights and/or causes of action in respect of any breach of this Agreement or the Collateral Documents.

**12**      **ANNOUNCEMENTS**

**12.1**     The Parties consent to the issue of an announcement, substantially in the agreed form attached at Schedule 4 (*Announcement*) to this Agreement, immediately following the Completion Date (the "**Announcement**").

**12.2**     On or after the Completion Date, LBHI shall arrange for the Announcement to be uploaded to its website and/or filed on its docket along with this Agreement, with the bank account details set out in Clause 4.15 (*Settlement – Payment Provisions*), and other personal information reasonably required by SH2 or LBHI, being redacted in the copy of this Agreement that is made public.

**13**      **INTEREST**

**13.1**     If either LBHI or SH2 fails to make a payment due to the other party under this Agreement by the due date, then, without limiting the other party's remedies, the defaulting party shall pay interest on the overdue sum from the due date until payment of the overdue sum, whether before or after judgment.

**13.2**     Interest under this Clause 13 (*Interest*) shall accrue each day at the rate provided for judgment debts in section 17 of the Judgments Act 1838.

**14**      **FURTHER ASSURANCES**

The Parties shall, as soon as reasonably practicable, do all such things, take all such steps or actions and execute all such documents and/or declarations as may be required by law, reasonably required by another Party or which are reasonably required to give effect to, evidence or perfect the obligations and liabilities as set out in, and upon the terms of, this Agreement.

**15**      **NOTICES AND COMMUNICATIONS**

**15.1**     All notices and other communications given under or in connection with this Agreement shall be in writing, in the English language and sent to the Party at the following email addresses (or to any other email addresses as otherwise notified in writing to each other Party):

   **(a)**      In the case of LBHI and SLP3, the email addresses are:

            **Email**: ronald.geraghty@lehmanholdings.com and notices@lehmanholdings.com
            **With a copy via email to**:

Mark.Lawford@weil.com and Lindsay.Merritt@weil.com

(b)    In the case of SH2, the email addresses are:

**Email:** ███████████████████
**With a copy via email to:** ███████████████████

or, with respect to any information or documents to be sent by LBHI to ███████████
██████████████████ pursuant to Clause 4.9 (*Settlement – Payment Provisions*), to
██████████████████

15.2    Any notices or other communications shall be deemed to have been received at the time of transmission of the email or, if this time falls outside business hours in the place of receipt, when business hours resume. In this Clause 15 (*Notices and Communications*), business hours means 9.00am to 5.00pm Monday to Friday on a day that is not a public holiday in the United States of America or in the United Kingdom.

15.3    This Clause 15 (*Notices and Communications*) applies to notices and other communications given with respect to the expert determination procedure set out in Clause 5 (*Expert Determination*) above, but does not apply to the service of any proceedings or other documents in any legal action or, if applicable, any other method of dispute resolution.

**16    SERVICE OF PROCESS**

*LBHI*

16.1    LBHI appoints Law Debenture Corporate Services Limited of Fifth Floor, 100 Wood Street, London, EC2V 7EX, United Kingdom as its agent under this Agreement for service of process in relation to any proceedings before the English courts in connection with any dispute arising in relation to this Agreement.

16.2    Failure by a process agent to notify LBHI of any process will not invalidate the relevant proceedings.

16.3    If the person appointed as process agent under Clause 16.1 (*Service of Process*) is unable for any reason to so act, LBHI must immediately (and in any event within seven (7) calendar days of becoming aware) appoint another agent. If LBHI fails to appoint another process agent within that time period, SH2 may appoint another process agent on LBHI's behalf or serve the original process agent.

*SH2*

16.4    SH2 appoints ██████████████████████████████████████████ as its agent under this Agreement for service of process in relation to any proceedings before the English courts in connection with any dispute arising in relation to this Agreement.

16.5    Failure by a process agent to notify SH2 of any process will not invalidate the relevant proceedings.

16.6    If the person appointed as process agent under Clause 16.4 (*Service of Process*) is unable for any reason to so act, SH2 must immediately (and in any event within seven (7) calendar days of becoming aware) appoint another agent.  If SH2 fails to appoint another process agent within that time period, LBHI may appoint another process agent on behalf of SH2 or serve the original process agent.

**17    RIGHTS OF THIRD PARTIES**

17.1    No person who is not a Party to this Agreement shall have any rights, whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise, to enforce any terms of this Agreement.

WEIL:\98047233\1\58399.0011

**17.2**    The rights of the Parties to rescind or vary this Agreement are not subject to the consent of any other person.

**18**    **SUCCESSORS AND ASSIGNS**

This Agreement is personal to the Parties and no Party shall assign, transfer, mortgage, charge, subcontract, delegate, declare a trust over or deal in any other manner with any of its rights and obligations under this Agreement without the prior written consent of each of the other Parties.

**19**    **CONTRA PROFERENTUM**

The Parties acknowledge that this Agreement has been jointly drafted by the Parties and accordingly it should not be construed strictly, nor shall the contra proferentem rule be applied, against any Party.

**20**    **DAMAGES NOT AN ADEQUATE REMEDY**

Without prejudice to any other rights or remedies that the Parties may have, the Parties acknowledge that damages alone would not be an adequate remedy for any breach of Clause 5 (*Expert Determination*), Clause 7 (*Security*) or Clause 11 (*Agreement Not To Sue*)) of this Agreement. Accordingly, any Party shall be entitled to seek the remedies of injunction, specific performance and/or other equitable relief for any threatened or actual breach of Clause 5 (*Expert Determination*), Clause 7 (*Security*) or Clause 11 (*Agreement Not To Sue*) of this Agreement.

**21**    **ENTIRE AGREEMENT**

**21.1**    This Agreement and the Collateral Documents constitute the entire understanding and agreement between LBHI and SLP3 on the one hand, and SH2 on the other, in relation to the subject matter of this Agreement.

**21.2**    Each Party acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of the other Party (whether orally or in writing) other than as expressly set out in this Agreement.

**21.3**    Nothing in this Clause 21 (*Entire Agreement*) shall limit or exclude liability for fraud.

**22**    **VARIATION**

Any variation of this Agreement must be in writing and signed by, or on behalf of, each Party.

**23**    **SEVERABILITY**

**23.1**    If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, that shall not affect or impair:

   **(a)**    the legality, validity or enforceability in that jurisdiction of any other provision of this Agreement; or

   **(b)**    the legality, validity or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

**23.2**    If any provision or part-provision of this Agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted and the Parties shall negotiate in good faith to agree a new provision which will achieve as close as possible to the same result without being invalid, illegal or unenforceable. Any modification to or

WEIL:\98047233\1\58399.0011

deletion of a provision or part-provision under this Clause 23.2 (*Severability*) shall not affect the validity and enforceability of the rest of this Agreement.

**24      COUNTERPARTS**

This Agreement may be executed in any number of counterparts, and by the Parties on separate counterparts, but shall not be effective until each Party has executed at least one counterpart.

**25      GOVERNING LAW AND JURISDICTION**

25.1    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter (including any non-contractual disputes or claims), shall be governed by and construed in accordance with the laws of England and Wales.

25.2    The courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this Agreement and/or its subject matter (including any non-contractual disputes or claims).

28

**IN WITNESS WHEREOF** this Agreement has been duly executed on the date stated at the beginning of it.

| | |
|---|---|
| Signed for and on behalf of | ) |
| **LEHMAN BROTHERS HOLDINGS INC.** | ) |
| a company incorporated in Delaware | ) |
| by Ronald Geraghty | ) |
| being a person who, in accordance with the laws | ) |
| of the territory, is acting under the authority of | ) |
| the company | ) |

Authorised Signatory

| | |
|---|---|
| Signed for and on behalf of | ) |
| **LEHMAN BROTHERS HOLDINGS** | ) |
| **SCOTTISH LP 3**, a Scottish limited | ) |
| Partnership, by its general partner, | ) |
| **Lehman Brothers Holdings Scottish LP 2,** | ) |
| acting by its general partner, | ) |
| **Lehman Brothers Holdings Inc.** | ) |

Authorised Signatory

*SH2 Settlement Agreement – LBHI and SLP3 Signature Page*

Signed for and on behalf of

a company incorporated in
by
being a person who, in accordance with the laws
of the territory, is acting under the authority of
the company

)
)
)
)
)
)
)
)

Director

**SCHEDULE 1**
**SCHEDULED CLAIMS**

| (A) Original Claimant or Current Holder | (B) Claims/Admitted Value in GBP | (C) Outstanding Amount to be Paid in GBP |
|---|---|---|
| **LBL CREDITORS** | | |
| LBHI | 35,000,000.00 | 8,808,862.04 |
| LBHI | 25,000,000.00 | 6,395,713.31 |
| LBHI | 22,854,649.00 | 5,724,780.60 |
| LBHI | 1,041,704.90 | 261,072.28 |
| 314 Commonwealth | 239,662.71 | 60,064.31 |
| LBHI | 232,322.78 | 58,224.66 |
| LBHI | 183,246.18 | 45,900.69 |
| LBHI | 21,459.98 | 5,378.31 |
| LBHI | 9,220.96 | 2,319.96 |
| LBHI | 1,852.68 | 464.32 |
| LBHI (Subordinated) | 5,000,000.00 | 10,200,000.00 |
| **Total LBL Creditors** | **89,584,119.19** | **31,562,771.48** |
| **PLC CREDITORS** | | |
| LBHI | 35,621,091.00 | 16,495,143.29 |
| LB Hercules Holdings LLC | 1,462,009.50 | 683,358.95 |
| LB Asia Holdings Ltd. | 929,730.26 | 430,527.22 |
| Lehman Brothers Inc. | 533,483.94 | 247,041.68 |
| LBHK Funding (Cayman) No. 1 Ltd. | 44,304.55 | 20,515.96 |
| Sunrise Finance Co. Ltd. | 1,664.16 | 770.63 |
| Lehman Brothers Bankhaus A.G. | 1,300.38 | 602.17 |
| LB Holdings Scottish LP | 79,238,688.47 | 36,693,247.79 |
| Lehman Brothers Luxembourg Investments Sarl | 51,425,443.50 | 23,813,702.33 |
| LB Beta Finance Ltd. | 43,147,598.61 | 19,980,461.03 |

WEIL:\98047233\1\58399.0011

| (A) Original Claimant or Current Holder | (B) Claims/Admitted Value in GBP | (C) Outstanding Amount to be Paid in GBP |
|---|---|---|
| LB UK Holdings Ltd. | 19,547,739.03 | 9,052,239.90 |
| Eldon Street Holdings Ltd | 31,358,468.41 | 14,521,240.51 |
| Thayer Properties (Jersey) Ltd | 14,699,806.00 | 6,807,048.18 |
| **Total PLC Creditors** | **278,011,327.81** | **128,745,899.62** |
| **LBHI2 CREDITORS** | | |
| SLP3 | 4,219,533,988.59 | Not included in the Threshold Amount |
| **THRESHOLD AMOUNT** | | |
| **Threshold Amount** | | **160,308,671.10** |

WEIL:\98047233\1\58399.0011

**SCHEDULE 2**
**SH2 GAIN/LOSS – WORKED EXAMPLES**

WEIL:\98047233\1\58399.0011

**Worked Example 1.**

Assume First Instance Judgment Confirmed:

|  |  |  |  | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|

The Scheduled Claims:

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) |
|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | Payment 1 (G) |
|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | 8,808,862.04 |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | 6,395,713.31 |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | 5,724,780.60 |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | 261,072.28 |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | 60,064.31 |
| LBHI | 100% | 232,322.78 | 58,224.66 | 58,224.66 |
| LBHI | 100% | 183,246.18 | 45,900.69 | 45,900.69 |
| LBHI | 100% | 21,459.98 | 5,378.31 | 5,378.31 |
| LBHI | 100% | 9,220.96 | 2,310.96 | 2,310.96 |
| LBHI | 100% | 1,852.68 | 464.32 | 464.32 |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | 10,200,000.00 |
| Total | | 89,584,119.19 | 26,562,771.48 | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | Payment 1 (G) |
|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | 16,495,143.29 |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | 683,358.95 |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | 430,527.22 |
| LBI | 100% | 533,483.94 | 247,041.68 | 247,041.68 |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | 20,515.96 |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | 770.63 |
| Bankhaus | 100% | 1,300.38 | 602.17 | 602.17 |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | 36,693,247.79 |
| LBLIS | 100% | 51,425,443.50 | 23,813,702.33 | 23,813,702.33 |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | 19,980,461.03 |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | 9,052,239.90 |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | 14,521,240.51 |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | 6,807,048.18 |
| Total | | 278,011,327.81 | 128,745,899.62 | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | Payment 2 (H) | Payment 3 (I) | Payment 4 (J) |
|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | 3,065,487.43 | 3,065,487.43 | 3,065,487.43 |
| E2 | GP No 1 | 52,931,231.82 | n/a | 4,306,932.42 | 4,306,932.42 | 4,306,932.42 |
| E3 | GP No 1 | 77,499,131.64 | n/a | 6,305,984.40 | 6,305,984.40 | 6,305,984.40 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | 86,321,595.75 | 86,321,595.75 | 86,321,595.75 |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |

| | | | Payment 1 (G) | Payment 2 (H) | Payment 3 (I) | Payment 4 (J) |
|---|---|---|---|---|---|---|
| Total From Payment Round | | | 160,308,671.10 | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| Cumulative Total | | | 160,308,671.10 | 260,308,671.10 | 360,308,671.10 | 460,308,671.10 |
| Threshold Amount | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |
| "PLC Surplus" is the Cumulative total less the threshold amount | "PLC Surplus" equals | | 0.00 | 100,000,000.00 | 200,000,000.00 | 300,000,000.00 |
| Settlement Percentage Agreed at | 16.19% | | | | | |
| | | P1 | 0.00 | 3,065,487.43 | 6,130,974.86 | 9,196,462.28 |
| | | P2 | 0.00 | 4,306,932.42 | 8,613,864.83 | 12,920,797.25 |
| | | P3 | 0.00 | 6,305,984.40 | 12,611,968.81 | 18,917,953.21 |
| | | Series 1 share of PLC Notes | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH2 Share of ECAPS Series 1 | 10.331% | 10.331% | 10.331% | 10.331% |
| | | SH2 Share of ECAPS Series 2 | 1.965% | 1.965% | 1.965% | 1.965% |
| | | SH2 Share of ECAPS Series 3 | 5.366% | 5.366% | 5.366% | 5.366% |
| | | LBHI Payments | 0.00 | 0.00 | 135,818.46 | 271,636.92 |
| | | SH2 Payments | 0.00 | 0.00 | 0.00 | 0.00 |
| | | **SH2 Gain/Loss** GBP | 0 | -135,818.46 | -135,818.46 | -135,818.46 |
| | | LBHI/SLP3 pays to SH2 | 0.00 | 135,818.46 | 135,818.46 | 135,818.46 |
| | | SH2 pays to LBHI/SLP3 | 0.00 | 0.00 | 0.00 | 0.00 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss

$$(H72-(\$C\$71*H76*H69))*H80+(H73-(\$C\$71*H77*H69))*H81+(H74-(\$C\$71*H78*H69))*H82+H84+H86$$

**Worked Example 2.**

Assume First Instance Judgment of LBHI2 ranking is overturned so ranking is pari-passu, ranking at PLC is confirmed as pari-passu:

| | | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|---|

**The Scheduled Claims:**

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | Payment 1 | Payment 2 | Payment 3 | Payment 4 |
|---|---|---|---|---|---|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a | | | | 100,000,000.00 | 100,000,000.00 | 190,122,074.14 |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | | | 8,808,862.04 | | | |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | | | 6,395,713.31 | | | |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | | | 5,724,780.60 | | | |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | | | 261,072.28 | | | |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | | | 60,064.31 | | | |
| LBHI | 100% | 232,322.78 | 58,224.66 | | | 58,224.66 | | | |
| LBHI | 100% | 183,246.18 | 45,900.69 | | | 45,900.69 | | | |
| LBHI | 100% | 21,459.98 | 5,378.31 | | | 5,378.31 | | | |
| LBHI | 100% | 9,220.96 | 2,310.96 | | | 2,310.96 | | | |
| LBHI | 100% | 1,852.68 | 464.32 | | | 464.32 | | | |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | | | 10,200,000.00 | | | |
| Total | | 89,584,119.19 | 26,562,771.48 | | | | | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | | | | 4,948,542.99 | |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | | | | 205,007.68 | |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | | | | | 129,158.17 | |
| LBI | 100% | 533,483.94 | 247,041.68 | | | | | 74,112.50 | |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | | | | 6,154.79 | |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | | | | 231.19 | |
| Bankhaus | 100% | 1,300.38 | 602.17 | | | | | 180.65 | |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | | | | 11,007,974.34 | |
| LBLIS | 100% | 51,425,443.50 | 23,813,702.33 | | | | | 7,144,110.70 | |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | | | | 5,994,138.31 | |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | | | | 2,715,671.97 | |
| | | | | | | | | 0.00 | |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | | | | 4,356,418.25 | |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | | | | 2,042,123.94 | |
| Total | | 278,011,327.81 | 128,745,899.62 | | | | | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | | | | | |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | 0 | 0 | 0 | 0 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | 0 | 0 | 0 | 0 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | 0 | 0 | 0 | 0 |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | | | | |

| | | | | | | Payment 1 | Payment 2 | Payment 3 | Payment 4 |
|---|---|---|---|---|---|---|---|---|---|
| Total From Payment Round | | | | | | 31,562,771.48 | 100,000,000.00 | 138,623,825.48 | 190,122,074.14 |
| Cumulative Total | | | | | | 31,562,771.48 | 131,562,771.48 | 270,186,596.96 | 460,308,671.10 |
| Threshold Amount | | | | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |

"PLC Surplus" is the Cumulative total less the threshold amount

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | "PLC Surplus" equals | | | | 0.00 | 0.00 | 109,877,925.86 | 300,000,000.00 |

| Settlement Percentage Agreed at | 16.19% | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | P1 | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | P2 | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | P3 | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | Series 1 share of PLC Notes | | | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | | | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | | | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH2 Share of ECAPS Series 1 | | | | 10.331% | 10.331% | 10.331% | 10.331% |
| | | SH2 Share of ECAPS Series 2 | | | | 1.965% | 1.965% | 1.965% | 1.965% |
| | | SH2 Share of ECAPS Series 3 | | | | 5.366% | 5.366% | 5.366% | 5.366% |
| | | LBHI Payments | | | | 0.00 | 0.00 | 0.00 | 961,980.72 |
| | | SH2 Payments | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | **SH2 Gain/Loss** | **GBP** | | | **0** | **0.00** | **-961,980.72** | **-1,664,517.85** |
| | | LBHI/SLP3 pays to SH2 | | | | 0.00 | 0.00 | 961,980.72 | 1,664,517.85 |
| | | SH2 pays to LBHI/SLP3 | | | | 0.00 | 0.00 | 0.00 | 0.00 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss

(H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84+H86

**Worked Example 3.**

Assume first instance judgment of LBHI2 ranking is confirmed with LBHI2 Sub-Debts senior, ranking at PLC is overturned so PLC Sub-Notes rank senior:

The Scheduled Claims:

|  |  |  |  |  | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) |
|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | Example Payment 1 |
|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | | 8,808,862.04 |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | | 6,395,713.31 |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | | 5,724,780.60 |
| LBHI | 100% | 1,041,700.90 | 261,072.28 | | 261,072.28 |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | | 60,064.31 |
| LBHI | 100% | 232,322.78 | 58,224.66 | | 58,224.66 |
| LBHI | 100% | 183,246.18 | 45,900.69 | | 45,900.69 |
| LBHI | 100% | 21,459.98 | 5,378.31 | | 5,378.31 |
| LBHI | 100% | 9,220.96 | 2,310.96 | | 2,310.96 |
| LBHI | 100% | 1,852.68 | 464.32 | | 464.32 |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | | 10,200,000.00 |
| Total | | 89,584,119.19 | 26,562,771.48 | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | Example Payment 1 |
|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | 16,495,143.29 |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | 683,358.95 |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | | 430,527.22 |
| LBI | 100% | 533,483.94 | 247,041.68 | | 247,041.68 |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | 20,515.96 |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | 770.63 |
| Bankhaus | 100% | 1,300.38 | 602.17 | | 602.17 |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | 36,693,247.79 |
| LBUS | 100% | 51,425,443.50 | 23,813,702.33 | | 23,813,702.33 |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | 19,980,461.03 |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | 9,052,239.90 |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | 14,521,240.51 |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | 6,807,048.18 |
| Total | | 278,011,327.81 | 128,745,899.62 | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | | 22,411,148.06 | 22,411,148.06 | 22,411,148.06 |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | 31,487,097.02 | 31,487,097.02 | 31,487,097.02 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | 46,101,754.92 | 46,101,754.92 | 46,101,754.92 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | | | |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |

| | | | | | Payment 1 | Payment 2 | Payment 3 | Payment 4 |
|---|---|---|---|---|---|---|---|---|
| | | Total From Payment Round | | | 160,308,671.10 | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| | | Cumulative Total | | | 160,308,671.10 | 260,308,671.10 | 360,308,671.10 | 460,308,671.10 |
| | | Threshold Amount | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |

"PLC Surplus" is

| the Cumulative total less the threshold amount | "PLC Surplus" equals | 0.00 | 100,000,000.00 | 200,000,000.00 | 300,000,000.00 |
|---|---|---|---|---|---|

| Settlement Percentage Agreed at | 16.19% | | | | | |
|---|---|---|---|---|---|---|
| | | P1 | 0.00 | 22,411,148.06 | 44,822,296.11 | 67,233,444.17 |
| | | P2 | 0.00 | 31,487,097.02 | 62,974,194.05 | 94,461,291.07 |
| | | P3 | 0.00 | 46,101,754.92 | 92,203,509.84 | 138,305,264.76 |

| | | | Payment 1 | Payment 2 | Payment 3 | Payment 4 |
|---|---|---|---|---|---|---|
| | | Series 1 share of PLC Notes | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH2 Share of ECAPS Series 1 | 10.331% | 10.331% | 10.331% | 10.331% |
| | | SH2 Share of ECAPS Series 2 | 1.965% | 1.965% | 1.965% | 1.965% |
| | | SH2 Share of ECAPS Series 3 | 5.366% | 5.366% | 5.366% | 5.366% |
| | | LBHI Payments | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH2 Payments | 0.00 | 0.00 | 4,532,156.58 | 9,064,313.16 |
| | | SH2 Gain/Loss          GBP | 0.00 | 4,532,156.58 | 4,532,156.58 | 4,532,156.58 |
| | | LBHI/SLP3 pays to SH2 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH2 pays to LBHI/SLP3 | 0.00 | 4,532,156.58 | 4,532,156.58 | 4,532,156.58 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss

(H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84+H86

**Clause 4.7(b) Worked example of purchase of SH2 Additional ECAPS**

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | **Euros** | | **ISIN** | | | | | |
| 5 | | | Outstanding Face Value of Ecaps Notes, Series 1 | | | | | 173,825,000.00 | | XS0215349357 | | | | | |
| 6 | | | Outstanding Face Value of Ecaps Notes, Series 2 | | | | | 250,000,000.00 | | XS0229269856 | | | | | |
| 7 | | | Outstanding Face Value of Ecaps Notes, Series 3 | | | | | 373,650,000.00 | | XS0243852562 | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | SH2 Holding in Ecaps Series 1 | | | | | 17,957,000 00 | | | | | | | |
| 10 | | | SH2 Holding in Ecaps Series 2 | | | | | 4,912,000 00 | | | | | | | |
| 11 | | | SH2 Holding in Ecaps Series 3 | | | | | 20,050,000 00 | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | SH2 Share of Ecaps Series 1 | | | | | **10.331%** | | | Used in Gain/Loss Calculation | | | | |
| 14 | | | SH2 Share of Ecaps Series 2 | | | | | **1.965%** | | | Used in Gain/Loss Calculation | | | | |
| 15 | | | SH2 Share of Ecaps Series 3 | | | | | **5.366%** | | | Used in Gain/Loss Calculation | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |
| 19 | | | *If SH2 purchased an additional €2million in each of Ecaps Series 1,2 and 3, then:* | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | |
| 21 | | | SH2 Holding in Ecaps Series 1 would be | | | | | 19,957,000 00 | | | | | | | |
| 22 | | | SH2 Holding in Ecaps Series 2 would be | | | | | 6,912,000 00 | | | | | | | |
| 23 | | | SH2 Holding in Ecaps Series 3 would be | | | | | 22,050,000 00 | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | SH2 Share of Ecaps Series 1 would be | | | | | **11.481%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 26 | | | SH2 Share of Ecaps Series 2 would be | | | | | **2.765%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 27 | | | SH2 Share of Ecaps Series 3 would be | | | | | **5.901%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 28 | | | | | | | | | | | | | | | |

**SCHEDULE 3**
**SH2 ECAPS**

Holdings of SH2 ECAPS by SH2 or any of its Affiliated Parties (other than SH1 or SH3)

| ECAPS Series | Security Description | Total Amount Held (EUR) |
|---|---|---|
| ECAPS Series 1 | Lehman UK Funding I LP FRN Perp (ISIN: XS0215349357) | 17,957,000 |
| ECAPS Series 2 | Lehman UK Funding II 5.125% 9/21/2049 (ISIN: XS0229269856) | 4,912,000 |
| ECAPS Series 3 | Lehman UK Funding III 3.875% 2/22/2049 (ISIN: XS0243852562) | 20,050,000 |
| **Total** | | **42,919,000** |

34

**SCHEDULE 4**
**ANNOUNCEMENT**

**"Lehman Brothers Holdings Inc. reaches agreement with 14.3% ECAPS holder: Deal will give King Street Capital Management, L.P. their pro-rata share of 16.19% of funds available for subordinated creditors of Lehman Brothers Holdings PLC (in administration)**

*As has been previously disclosed, Lehman Brothers Holdings Inc. ("**LBHI**") has been involved in various legal actions in U.S. and English courts pertaining to three series of securities known as the "ECAPS", which together aggregate approximately €797 million in face amount.  The litigation, which is scheduled to continue with a hearing at the U.K. Court of Appeals beginning on 4 October 2021, relates principally to the relative ranking of two categories of subordinated debt at Lehman Brothers Holdings PLC ("**PLC**") and the relative ranking of two categories of subordinated debt at LB Holdings Intermediate 2 Limited ("**LBHI2**").  This hearing is the result of appeals to the orders of the English High Court on 24 July 2020, the effect of which was that the ECAPS holders would be entitled to approximately 13.67% of certain distributions made by Lehman's UK group (the "**Litigated Surplus**").*

*LBHI is pleased to announce that it has come to an agreement (documented in three settlement agreements, the "**Settlement Agreements**") with three entities managed by King Street Capital Management, L.P. ("**King Street**"), which in aggregate hold approximately 14.3% of the ECAPS, pursuant to which King Street will receive its pro rata share (relating to such holding) of 16.19% of the Litigated Surplus. Each Settlement Agreement provides for this result via top-up, to be paid directly by LBHI to King Street, in the event that the ECAPS' collections fall below this 16.19% threshold, and conversely, by remittance, to be paid by King Street to LBHI, in the event that the ECAPS' collections exceed such threshold. King Street has agreed to deposit the ECAPS subject to the Settlement Agreements into custodial accounts, the proceeds of which are pledged to LBHI to secure any such remittance obligations.*

*The agreement includes a "Most-Favoured Nation" option providing King Street the right to amend each Settlement Agreement to reflect  the terms of any other settlement agreement (or agreement in principle) that LBHI enters into with another ECAPS holder prior to the last day of the above-mentioned Court of Appeals hearing which are different than the terms of the Settlement Agreements, subject to certain exceptions. The Settlement Agreements also provide that any further purchases of ECAPS made by King Street on or prior to Monday, 27 September 2021 will be subject to the terms of the Settlement Agreements on, proportionally, the same terms as King Street's current holdings.*

*Copies of the Settlement Agreements are available here [link or downloadable files to be included].*

*LBHI is willing, with respect to certain qualified institutional holders of ECAPS, subject to criteria to be determined by LBHI in its sole discretion, to enter into agreements with respect to their ECAPS on terms identical (on a proportionate basis) to those in the Settlement Agreements (including the custody and collateral provisions).  If you are an institutional holder of ECAPS wishing to pursue such an arrangement, please contact Claire Hallowell Leonard of LBHI at claire.hallowell@lehmanholdings.com prior to 16 August 2021. THE FOREGOING IS NOT AN OFFER TO PURCHASE ANY SECURITIES FROM ANY HOLDER AND IS NOT AN OFFER CAPABLE OF BEING ACCEPTED.*

*In the United Kingdom this announcement is only addressed to and directed at persons who (i) have professional experience in matters relating to investments (being investment professionals falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005, as amended (the "**Financial Promotion Order**")), (ii) fall within Article 49(2)(a) to (d) ("high net worth companies, unincorporated associations, etc.") of the Financial Promotion Order, or (iii) to the extent that doing so does not prejudice the lawful distribution of this announcement to the foregoing, are persons to whom an invitation or inducement to engage in investment activity (within the meaning of section 21 of the Financial Services and Markets Act 2000) in connection with the subject matter of this announcement may otherwise lawfully be communicated or caused to be communicated (all such persons together being referred to as "relevant persons"). The foregoing announcement is only made in the United Kingdom to relevant persons and this announcement must not be acted on or relied on by anyone in the United Kingdom who is not a relevant person".*

WEIL:\98047233\1\58399.0011

**Weil, Gotshal & Manges (London) LLP**
110 Fetter Lane
London EC4A 1AY
+44 20 7903 1000 main tel
+44 20 7903 0990 main fax
weil.com



**EXECUTION VERSION**

**7 JULY 2021**

**SETTLEMENT AGREEMENT**

**between**

**LEHMAN BROTHERS HOLDINGS INC.**

**and**

**LEHMAN BROTHERS HOLDINGS SCOTTISH LP 3**

**and**

███████████████

**as SH 3**

**THIS AGREEMENT** is made on 7 July 2021 between the following parties:

(1)   **LEHMAN BROTHERS HOLDINGS INC.**, a corporation formed in the State of Delaware, United States of America and whose principal place of business is at 110 East 42nd Street, Suite 820 – 8th Floor, New York, NY 10017, United States of America ("**LBHI**");

(2)   **LEHMAN BROTHERS HOLDINGS SCOTTISH LP 3**, a limited partnership incorporated in Scotland with company number SL006052 and whose registered office is at 13 Queens Road, Aberdeen, AB15 4YL ("**SLP3**"); and

(3)   ███████████████████████ a limited company incorporated in ████████ with company number ████████ and whose registered office is at ████████ ███████████████████████████████████████ ("**SH3**"),

(jointly the "**Parties**", and each a "**Party**").

**WHEREAS**

(A)   LBHI and SH3 wish, as between each other, to settle the economic outcome of the Priority Proceedings.

(B)   The basis of the settlement is to fix the economics of SH3's notional share of the PLC Sub-Notes at a scenario where:

   a)   LBHI2 distributes on the LBHI2 Sub-Debts 100% of the funds it has available, from time to time, for distribution to subordinated creditors, until the LBHI2 Sub-Debts have been paid in full; and

   b)   PLC distributes on the PLC Sub-Notes 16.19% of the funds it has available, from time to time, for distribution to subordinated creditors, *pari passu* among PLC Note Series 1, PLC Note Series 2 and PLC Note Series 3.

(C)   LBHI has also entered into related settlement agreements (the "**Related SH Agreements**") with certain Affiliated Parties of SH3, namely, ████████████████ ("**SH1**") and ████████ ████████ ("**SH2**") (together with SH1 and SH3, the "**Settling Holders**") to settle the economic outcome of the Priority Proceedings as between LBHI and each such person.

(D)   SLP3 wishes to enter into this Agreement in order to acknowledge the rights and obligations of LBHI under the terms of this Agreement.

**1      DEFINITIONS AND INTERPRETATION**

1.1    In this Agreement, unless the context otherwise requires, the following words and expressions have the following meanings:

| | |
|---|---|
| "**2006 Act**" | means the Companies Act 2006. |
| "**Additional Period**" | has the meaning given to it in Clause 6.2 (*Future ECAPS Purchases*) below. |
| "**Additional Settlement Agreement**" | means any settlement agreement between LBHI and any ECAPS Holder (other than SH3), including the Related SH Agreements, that contains calculations of the PLC Surplus and/or the ECAPS Holder's gain/loss comparable or identical to the calculations set out at Clause 4 (*Settlement – Payment Provisions*) of this Agreement. For the avoidance of doubt, this term shall include |

1

|  | any settlement agreement entered into by a transferee of SH3 ECAPS pursuant to Clause 7.6 (*Security*). |
|---|---|
| **"Affiliated Parties"** | means a Parent Undertaking or Subsidiary Undertaking of a person, together with any other Subsidiary Undertakings of a Parent Undertaking of that person. |
| **"Alternative Collateral Arrangement"** | has the meaning given to it in Clause 7.2(b) (*Security*) below. |
| **"Announcement"** | has the meaning given to it in Clause 12.1 (*Announcements*) below. |
| **"Available ECAPS"** | has the meaning given to it in Clause 7.6(a) (*Security*) below. |
| **"Bank of England Spot Rate"** | means the daily spot exchange rate against Sterling as published on the Bank of England website. |
| **"Business Days"** | means a day (other than a Saturday or a Sunday) on which banks are open for general business in London and New York. |
| **"Calculation Expert"** | has the meaning given to it in Clause 5.1 (*Expert Determination*) below. |
| **"Collateral Account"** | means the segregated custodian account with account number ▮▮▮▮▮ established and maintained by ▮▮▮▮▮ in the name of SH3, which shall consist of a securities account and a deposit account. |
| **"Collateral Documents"** | means the Control Agreement and the Security Agreement. |
| **"Comparator Settlement"** | means, any agreement entered into by LBHI with any existing or future ECAPS Holder (other than the Settling Holders or any Affiliated Party of the Settling Holders) to purchase, settle, quantify or compromise such ECAPS Holder's entitlements in their capacity as ECAPS Holder on terms which are different (other than any terms required to reflect the different ECAPS holders party to such agreement) than the terms of this Agreement. |
| **"Completion Date"** | has the meaning given to it in Clause 2.1 (*Completion Date*) below. |
| **"Control Agreement"** | means the New York law governed Collateral Account Control Agreement dated the Effective Date and made between SH3 (as Pledgor), LBHI (as the Secured Party) and ▮▮▮▮▮ (as the Securities Intermediary) (each such term as defined therein) in respect of the Collateral Account. |
| **"ECAPS"** | means ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3. |
| **"ECAPS Guarantees"** | means the subordinated guarantees given by PLC in favour of holders of the ECAPS pursuant to certain guarantees referred to in the ECAPS Series 1 prospectus dated 29 March 2005, ECAPS Series 2 prospectus dated 30 August 2005 and ECAPS Series 3 prospectus dated 20 February 2006. |

2

| | |
|---|---|
| **"ECAPS Holder"** | means the beneficial owner of any part of ECAPS Series 1, ECAPS Series 2 and/or ECAPS Series 3. |
| **"ECAPS Series 1"** | means the EUR225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities issued by Lehman Brothers UK Capital Funding LP as described in a prospectus dated 29 March 2005. |
| **"ECAPS Series 2"** | means the EUR200,000,000 Euro Fixed Rate Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities initially issued by Lehman Brothers UK Capital Funding II LP as described in a prospectus dated 30 August 2005, together with a further EUR50,000,000 Euro Fixed Rate Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities issued by way of Final Terms dated 26 October 2005. |
| **"ECAPS Series 3"** | means the EUR500,000,000 of Fixed/Floating Rate Enhanced Capital Advantaged Preferred Securities issued by Lehman Brothers UK Capital Funding III LP as described in a prospectus dated 20 February 2006. |
| **"Effective Date"** | means the date stated at the start of this Agreement. |
| **"Encumbrance"** | means any: |
| | (a) mortgage, pledge, lien, charge, hypothecation, security interest or other encumbrance, security agreement or security arrangement of any kind; |
| | (b) purchase or option agreement or arrangement; |
| | (c) subordination agreement or arrangement; |
| | (d) participation or sub-participation; |
| | (e) right of set-off; and/or |
| | (d) agreements to create or effect any of the foregoing. |
| **"EU MAR"** | means Regulation (EU) No 596/2014 of the European Parliament and of the Council of 16 April 2014 on market abuse. |
| **"EUR"** | means euro, being the official currency of certain member states of the European Union. |
| **"Exchange Act"** | means the U.S. Securities Exchange Act of 1934, as amended. |
| **"Final Hearing Date"** | means the final date on which the Court of Appeal sits for its substantive hearing of the Priority Proceedings, which hearing is scheduled to begin on Monday, 4 October 2021 and is expected to last five (5) days. For the avoidance of doubt, for these purposes the substantive hearing does not include any judgment hand-down hearing, any hearing to address matters consequential upon judgment or any subsequent hearing. |

3

| | |
|---|---|
| **"GBP"** | means the British pound sterling, being the official currency of the United Kingdom. |
| **"GP1"** | means LB GP No 1 Limited (in liquidation). |
| **"Initial Date"** | has the meaning given to it in Clause 4.2 (*Settlement – Payment Provisions*) below. |
| **"LBHI Payments"** | has the meaning given to it in Clause 4.5(a) (*Settlement – Payment Provisions*) below. |
| **"LBHI2"** | means LB Holdings Intermediate 2 Limited (in administration). |
| **"LBHI2 Sub-Debts"** | means the debts owed on the following: |
| | (a) USD4,500,000,000 Long-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006; |
| | (b) EUR3,000,000,000 Long-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006; and |
| | (c) USD8,000,000,000 Short-Term Subordinated Loan Facility between PLC and LBHI2 dated 1 November 2006. |
| **"LBHI2 Sub-Notes"** | means the USD6,139,000,000 Floating Rate Subordinated Notes issued by LBHI2 as described in an offering circular dated 26 April 2007, as amended by a written resolution dated 3 September 2008. |
| **"LBL"** | means Lehman Brothers Limited (in administration). |
| **"LCIA"** | has the meaning given to it in Clause 5.2(a) (*Expert Determination*) below. |
| **"Legal Reservations"** | means: |
| | (a) the principle that certain remedies may be granted or refused at the discretion of the court, the limitation of enforcement by laws relating to bankruptcy, insolvency, liquidation, reorganisation, court schemes, moratoria, administration and other laws generally affecting the rights of creditors and secured creditors; |
| | (b) the time barring of claims under applicable limitation laws (including the Limitation Acts) and defences of acquiescence, set off or counterclaim; |
| | (c) the principle that in certain circumstances an Encumbrance granted by way of fixed charge may be recharacterised as a floating charge or that an Encumbrance purported to be constituted as an assignment may be recharacterised as a charge; |
| | (d) the principle that the creation or purported creation of an Encumbrance over: |

4

    (i) any asset not beneficially owned by the relevant charging company at the date of the relevant security document; or

    (ii) any contract or agreement which is subject to a prohibition on transfer, assignment or charging,

may be void, ineffective or invalid and may give rise to a breach of the contract or agreement over which an Encumbrance has purportedly been created; and

(e) similar principles, rights and defences under the laws of any relevant jurisdiction.

| | |
|---|---|
| **"MFN Option"** | has the meaning given to it in Clause 8.2 (*Most Favoured Nation Option*) below. |
| **"P1"** | has the meaning given to it in Clause 4.5(b) (*Settlement – Payment Provisions*) below. |
| **"P2"** | has the meaning given to it in Clause 4.5(c) (*Settlement – Payment Provisions*) below. |
| **"P3"** | has the meaning given to it in Clause 4.5(d) (*Settlement – Payment Provisions*) below. |
| **"Parent Undertaking"** | has the meaning given to it in section 1162 of the 2006 Act. |
| **"Payment"** | has the meaning given to it in Clause 9.1A (*Representations, Warranties and Indemnities*) below. |
| **"Perfection Requirements"** | means the making or the procuring of the filing of a Uniform Commercial Code financing statement in respect of the collateral assignment set out in the Security Agreement. |
| **"Permitted Security"** | means: |

(a) any lien arising by operation of law and in the ordinary course of trading, provided such lien does not arise a result of any default or omission by SH3 or any of its Affiliated Parties or from the use of the Collateral Account to hold any asset other than SH3 ECAPS or any payments or distributions in respect thereof, unless agreed in writing by LBHI; and

(b) any lien or right of set off arising under the general terms and conditions of any banks (including custodian banks) with which SH3 maintains a banking relationship in the ordinary course of business.

| | |
|---|---|
| **"PLC"** | means Lehman Brothers Holdings plc (in administration). |
| **"PLC Note Series 1"** | means the EUR225,000,000 Fixed Rate to CMS-Linked Subordinated Notes due 30 March 2035 issued by PLC as described in an offering circular dated 29 March 2005. |
| **"PLC Note Series 2"** | means the EUR200,000,000 Fixed Rate Subordinated Notes due 21 September 2035 issued by PLC as described in an offering |

5

circular dated 19 September 2005, together with the EUR50,000,000 Fixed Rate Subordinated Notes due 21 September 2035 issued by PLC as described in an offering circular dated 26 October 2005, which were consolidated together.

**"PLC Note Series 3"**    means the EUR500,000,000 Fixed/Floating Rate Subordinated Notes due 22 February 2036 issued by PLC as described in an offering circular dated 20 February 2006.

**"PLC Preference Shares"**    means the non-cumulative redeemable preference shares issued by PLC.

**"PLC Sub-Debts"**    means the debts owed on the following:

(a) USD4,500,000,000 Long-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 30 July 2004;

(b) EUR3,000,000,000 Long-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 30 July 2004; and

(c) USD8,000,000,000 Short-Term Subordinated Loan Facility between Lehman Brothers UK Holdings Limited and PLC dated 31 October 2005.

**"PLC Sub-Notes"**    means PLC Note Series 1, PLC Note Series 2 and PLC Note Series 3.

**"PLC Surplus"**    has the meaning given to it in Clause 4.2 (*Settlement – Payment Provisions*) below.

**"Priority Proceedings"**    means the applications issued by the joint administrators of LBHI2 and the joint administrators of PLC on 16 March 2018 seeking directions from the High Court of Justice in England and Wales among other things with respect to the relative ranking and purported release of subordinated debts, including the appeals issued by certain parties to the Court of Appeal (case references A3/2020/1787, A3/2020/1810 and A3/2020/1811), any appeals issued by any party to the Supreme Court, and any ancillary proceedings in relation to such applications.

**"Related SH Agreements"**    has the meaning given to it in Recital C.

**"Rule 14.44"**    means rule 14.44 of the Insolvency (England and Wales) Rules 2016.

"**Scheduled Claims**"    means each of the claims against LBHI2, PLC and LBL listed in Schedule 1 (*Scheduled Claims*) to this Agreement, as such schedule may be amended from time to time pursuant to Clause 4.4 (*Settlement – Payment Provisions*) below.

**"Security Agreement"**    means the New York law governed security agreement dated the Effective Date and made between SH3 (as Pledgor) and LBHI (as Pledgee) (each such term as defined therein).

6

| | |
|---|---|
| **"Selected Comparator Settlement"** | has the meaning given to it in Clause 8.3 (*Most Favoured Nation Option*) below. |
| **"Series 1 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(e) (*Settlement – Payment Provisions*) below. |
| **"Series 2 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(f) (*Settlement – Payment Provisions*) below. |
| **"Series 3 Share of PLC Notes"** | has the meaning given to it in Clause 4.5(g) (*Settlement – Payment Provisions)* below. |
| **"Settling Holders"** | has the meaning given to it in Recital C. |
| **"SH3 Additional ECAPS"** | has the meaning given to it in Clause 6.2 (*Future ECAPS Purchases*) below. |
| **"SH3 ECAPS"** | means the SH3 Effective Date ECAPS and the SH3 Additional ECAPS. |
| **"SH3 Effective Date ECAPS"** | means the ECAPS beneficially owned by SH3 as at the Effective Date, as set out at the version of Schedule 3 (*SH3 ECAPS*) to this Agreement applicable on the Effective Date. |
| **"SH3 Gain/Loss"** | has the meaning given to it in Clause 4.5 (*Settlement – Payment Provisions*) below. |
| **"SH3 Payments"** | has the meaning given to it in Clause 4.5(h) (*Settlement – Payment Provisions*) below. |
| **"SH3 Share of ECAPS Series 1"** | has the meaning given to it in Clause 4.5(i) (*Settlement – Payment Provisions*) below. |
| **"SH3 Share of ECAPS Series 2"** | has the meaning given to it in Clause 4.5(j) (*Settlement – Payment Provisions*) below. |
| **"SH3 Share of ECAPS Series 3"** | has the meaning given to it in Clause 4.5(k) (*Settlement – Payment Provisions*) below. |
| **"SH1"** | has the meaning given to it in Recital C. |
| **"SH2"** | has the meaning given to it in Recital C. |
| **"Subsidiary Undertaking"** | means: |
| | a) a subsidiary undertaking within the meaning of section 1162 of the 2006 Act; and |
| | b) any undertaking which would be a subsidiary undertaking within the meaning of section 1162 of the 2006 Act but for any security subsisting over the shares in that undertaking from time to time. |
| **"Threshold Amount"** | has the meaning given to it in Clause 4.3 (*Settlement – Payment Provisions*) below. |

7

| | |
|---|---|
| **"Transferred ECAPS"** | has the meaning given to it in Clause 4.20 (*Settlement – Payment Provisions*) below. |
| **"UK MAR"** | means EU MAR as it forms part of English law by virtue of the European Union (Withdrawal) Act 2018 (as amended). |
| **"USD"** | means the U.S. dollar, being the official currency of the United States of America. |
| **"VAT"** | means value added tax. |

1.2     Unless the context requires otherwise in this Agreement:

    **(a)**     a reference to a Clause or a Schedule is a reference to a clause of, or schedule to, this Agreement;

    **(b)**     references to the singular shall include references to the plural and vice versa;

    **(c)**     references to a "person" shall be construed so as to include any individual, firm, company, corporation, body corporate, fund, government, state or agency of a state, local or municipal authority or government body or any joint venture, association or partnership (whether or not having separate legal personality);

    **(d)**     the words "including" and "include" shall not be construed as or take effect as limiting the generality of the foregoing words;

    **(e)**     words importing any gender shall include all other genders;

    **(f)**     a reference to any statute or statutory provision (including any subordinate legislation) includes any statute or statutory provision which amends, extends, consolidates or replaces the same, or which has been amended, extended, consolidated or replaced by the same, and shall include any orders, regulations, instruments or other subordinate legislation made under the relevant statute or statutory provision;

    **(g)**     a reference to an agreement is to that agreement as amended and/or restated from time to time;

    **(h)**     the headings shall not be construed as part of this Agreement nor affect its interpretation;

    **(i)**     a reference to a time of day is a reference to London time;

    **(j)**     a reference to the date of a notice or other written communication sent pursuant to this Agreement is a reference to the date on which it is deemed received pursuant to Clause 15.2 (*Notices and Communications*); and

    **(k)**     a reference to a currency is a reference to the lawful currency for the time being of the relevant country.

## 2     COMPLETION DATE

2.1     This Agreement in its entirety will become effective and legally binding among the Parties on and from, and not before, the date that the SH3 Effective Date ECAPS are deposited in the Collateral Account pursuant to Clause 7.1 (*Security*) (such date being the "**Completion Date**").

8

**2.2**     If the Completion Date does not occur within seven (7) calendar days of the Effective Date, this Agreement will terminate in its entirety and will be of no legal effect.

**3**     **GENERAL ACKNOWLEDGMENTS**

**3.1**     Each of the Parties acknowledges that the compromises, rights and obligations in this Agreement are without prejudice to, and are not intended to influence, the Priority Proceedings or the rights and remedies of the Parties otherwise.

**3.2**     Nothing in this Agreement shall be, or be deemed to constitute, a waiver, consent, amendment or agreement to any matter or obligation other than those expressly noted in this Agreement.

**3.3**     This Agreement is not, and shall not be represented or construed as, an admission of liability or wrongdoing on the part of any Party or any other person or entity.

**3.4**     Each of the Parties acknowledges that this Agreement is the product of arm's-length negotiations and has been duly, freely and voluntarily executed and delivered by it, and each of the Parties acknowledges that this Agreement constitutes valid and legally binding obligations, enforceable against it in accordance with its terms.

**4**     **SETTLEMENT - PAYMENT PROVISIONS**

*The settlement payments*

**4.1**     In order to settle the economic outcome of the Priority Proceedings as it would apply as between LBHI and SH3, LBHI shall make payments to SH3 and/or SH3 shall make payments to LBHI in the amount of the SH3 Gain/Loss, as required by this Clause 4 (*Settlement – Payment Provisions*).

*Defined terms for the calculations*

**4.2**     "**PLC Surplus**" means:

    **(a)**     if, as at the date on which such surplus is to be determined, LBHI2 has not made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full, the aggregate total amount of funds that PLC has distributed on the PLC Sub-Notes, PLC Sub-Debts, ECAPS Guarantees and PLC Preference Shares from time to time on or after 7 July 2021 (being the "**Initial Date**"), expressed as an amount in GBP; and

    **(b)**     if, as at the date on which such surplus is to be determined, LBHI2 has made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full, the sum of: (i) the aggregate total amount of funds that LBHI2, PLC and LBL have distributed on the Scheduled Claims from time to time on or after the Initial Date in excess of the Threshold Amount; plus (ii) the aggregate total amount of funds that PLC has distributed on the PLC Sub-Notes, PLC Sub-Debts, ECAPS Guarantees and PLC Preference Shares from time to time on or after the Initial Date, and the aggregate total amount of funds referred to at (i) and (ii) above shall be expressed as an amount in GBP.

**4.3**     "**Threshold Amount**" means GBP 160,308,671.10 or such revised amount as is stated in the most recent notice sent by LBHI pursuant to Clause 4.4 (*Settlement – Payment Provisions*).

**4.4**     Subject to Clause 4.19 (*Settlement – Payment Provisions*) below, if (i) any new claim (other than the PLC Sub-Debts, PLC Sub-Notes and ECAPS Guarantees) is admitted to proof against PLC or LBL (save to the extent that the economic interest in such claim flows, directly or indirectly, to PLC, LBHI2 or LBL (in which case LBHI shall give notice to SH3 of that fact)); or (ii) the relevant administrators or the court revise the amount at which any of the Scheduled Claims is admitted to proof such that the relevant admitted claim amount listed in Column B of Schedule 1 (*Scheduled*

9

*Claims*) to this Agreement is incorrect, in each case LBHI shall send SH3 a revised version of
Schedule 1 (*Scheduled Claims*) in which:

**(a)**    The portion of any new provable claim which is admitted against PLC or LBL, whose
economic interest does not flow, directly or indirectly, to PLC, LBHI2 or LBL, is added to
the list of Scheduled Claims and (i) the amount at which such portion of the claim is
admitted to proof is inserted in Column B, and (ii) the outstanding amount to be paid on
such portion of the claim, including statutory interest, is calculated without deduction of
any distributions made after the Initial Date and is inserted in Column C, such that Column
C represents the outstanding amount that would have been payable on that claim as at the
Initial Date but for its late admittance. For the purpose of Schedule 1 (*Scheduled Claims*),
the calculation of statutory interest on any new provable claim shall be based on a good
faith estimate of the date on which it is anticipated that the provable amount of the new
claim will be paid, and such estimate shall be updated as and when each distribution is paid
on the provable claim.

**(b)**    With respect to any revision to the amount at which a Scheduled Claim is admitted to proof:
(i) the value in Column B of the admitted claim amount is updated to reflect the revised
value, and (ii) the outstanding amount to be paid on the claim, including statutory interest,
is recalculated in accordance with the revised value for the admitted claim amount,
disregarding any distributions made after the Initial Date and inserted in Column C, such
that Column C represents the outstanding amount that would have been payable on that
claim as at the Initial Date if already admitted in the revised amount. For the purpose of
Schedule 1 (*Scheduled Claims*), the calculation of statutory interest on a revised claim
amount shall be based on a good faith estimate of the date on which it is anticipated that the
outstanding provable amount of such claim will be paid, and such estimate shall be updated
as and when each distribution is paid on the outstanding amount of the provable claim.
Notwithstanding anything in the preceding sentences, if the admitted claim amount is
decreased, the Scheduled Claim shall be revised only to the extent that the relevant debtor
actually receives any excess distribution paid on that claim.

**(c)**    The aggregate total value of all amounts in Column C is updated to reflect the changes made
pursuant to this Clause 4.4 (*Settlement – Payment Provisions*) and the Threshold Amount
shall thereafter be an amount equal to that updated aggregate total amount in Column C.
For the avoidance of doubt, the Threshold Amount does not include the outstanding amount
to be paid on the LBHI2 Sub-Notes.

When sending any notice or revised version of Schedule 1 (*Scheduled Claims*) under this Clause
4.4 (*Settlement – Payment Provisions*), LBHI shall attach the information and documentation relied
upon by LBHI for such notice or revisions, including (if applicable) information showing that the
economic interest in a claim flows, directly or indirectly, to PLC, LBHI2 or LBL, subject to Clause
4.9 (*Settlement – Payment Provisions*) below.

**4.5**    "**SH3 Gain/Loss**" means, subject to Clause 4.20 (*Settlement – Payment Provisions*) below, the
amount of SH3's notional gain or loss, calculated according to the following formula and expressed
as an amount in GBP:

(P1 – (16.19% x Series 1 Share of PLC Notes x PLC Surplus)) x SH3 Share of ECAPS Series 1 +

(P2 – (16.19% x Series 2 Share of PLC Notes x PLC Surplus)) x SH3 Share of ECAPS Series 2 +

(P3 – (16.19% x Series 3 Share of PLC Notes x PLC Surplus)) x SH3 Share of ECAPS Series 3 +

LBHI Payments – SH3 Payments = **SH3 Gain/Loss**

Where:

10

(a)     "**LBHI Payments**" is, subject to Clause 4.20 (*Settlement – Payment Provisions*) below, as at any date of determination, the aggregate total of amounts already paid by LBHI pursuant to Clauses 4.14 and 4.15 (*Settlement – Payment Provisions*) below, expressed in GBP.

(b)     "**P1**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 1 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 1, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 1 pro-rata to their holdings of ECAPS Series 1, expressed in GBP.

(c)     "**P2**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 2 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 2, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 2 pro-rata to their holdings of ECAPS Series 2, expressed in GBP.

(d)     "**P3**", as at any date of determination, is the sum of (i) the aggregate total amount distributed from time to time by PLC to GP1 (or its successors and permitted assigns that are not LBHI or any of its Affiliated Parties which are controlled by LBHI) on PLC Notes Series 3 and by PLC to ECAPS Holders on the ECAPS Guarantees in respect of ECAPS Series 3, and (ii) any payments made by or on behalf of LBHI to or at the direction of GP1 for the benefit of all holders of ECAPS Series 3 pro-rata to their holdings of ECAPS Series 3, expressed in GBP.

(e)     "**Series 1 Share of PLC Notes**" is the GBP37,674,151.81 deemed provable value of PLC Notes Series 1 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 22.411%.

(f)     "**Series 2 Share of PLC Notes**" is the GBP52,931,231.82 deemed provable value of PLC Notes Series 2 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 31.487%.

(g)     "**Series 3 Share of PLC Notes**" is the GBP77,499,131.64 deemed provable value of PLC Notes Series 3 expressed as a percentage by value of the GBP 168,104,515.26 aggregate deemed provable value of all PLC Sub-Notes, in each case discounted for futurity pursuant to Rule 14.44, being agreed at 46.102%.

(h)     "**SH3 Payments**" is, subject to Clause 4.20 (*Settlement – Payment Provisions)* below, as at any date of determination, the aggregate total of amounts already paid by SH3 pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) below, expressed in GBP.

(i)     "**SH3 Share of ECAPS Series 1**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH3's holding of ECAPS Series 1, expressed as a percentage by value of the EUR 173,825,000 total outstanding issuance of ECAPS Series 1, being agreed at 0%.

(j)     "**SH3 Share of ECAPS Series 2**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH3's holding of ECAPS Series 2, expressed as a percentage by value of the EUR 250,000,000 total outstanding issuance of ECAPS Series 2, being agreed at 0%.

WEIL:\98047235\1\58399.0011

**(k)** "**SH3 Share of ECAPS Series 3**" is, subject to Clause 6.2 (*Future ECAPS Purchases*) and Clause 7.8 (*Security*), SH3's holding of EUR 33,600,000 face amount of ECAPS Series 3, expressed as a percentage by value of the EUR 373,650,000 total outstanding issuance of ECAPS Series 3, being agreed at 8.992%.

4.6    For the purpose of the calculations in this Clause 4 (*Settlement – Payment Provisions*), if any distribution or payment is made in a currency other than GBP, the GBP equivalent shall be calculated using the Bank of England Spot Rate for the date of distribution or payment.

4.7    Worked examples of:

   **(a)**    the calculation of the PLC Surplus and the SH3 Gain/Loss; and

   **(b)**    the calculation of SH3 Share of ECAPS Series 1, SH3 Share of ECAPS Series 2 and SH3 Share of ECAPS Series 3 in a scenario in which SH3 or any of its Affiliated Parties (other than SH1 or SH2) purchase SH3 Additional ECAPS pursuant to Clause 6.2 (*Future ECAPS Purchases*),

   are set out at Schedule 2 (*SH3 Gain/Loss – Worked Examples*) to this Agreement, by way of illustration only.

*Calculation and payment of SH3 Gain/Loss*

4.8    Subject to Clause 4.9 and Clause 4.19 (*Settlement – Payment Provisions*) below, within fourteen (14) calendar days of the date of each distribution to creditors by PLC, LBHI2 and/or LBL, LBHI shall send a notice to SH3 reflecting its calculations, set out substantially in the form of the worked examples at Schedule 2 (*SH3 Gain/Loss – Worked Examples*) to this Agreement, of the following:

   **(a)**    the status of post-Initial Date distributions on the Scheduled Claims as compared to the Threshold Amount;

   **(b)**    the PLC Surplus; and

   **(c)**    the SH3 Gain/Loss.

   LBHI's notice shall attach the information and documentation that has been relied upon by LBHI for the purposes of the calculations (including those documents referred to at Clause 4.10 (*Settlement – Payment Provisions*).

4.9    To the extent that any information or documentation that LBHI would otherwise be required to provide under Clause 4.4 or Clause 4.8 (*Settlement – Payment Provisions*) is subject to confidentiality obligations preventing its disclosure, LBHI shall use reasonable efforts to obtain the requisite permission(s) in order that such information or documentation can be disclosed to SH3 provided that LBHI shall not be required to take part in any legal proceedings or incur any out-of-pocket expenses (other than non-material expenses incurred in the ordinary course of obtaining such permissions) in doing so. In the event that LBHI is unable to obtain the requisite permission(s), then the relevant confidential information or documentation does not need to be provided, however LBHI shall confirm in the notice: (i) that it has sought the requisite permission(s) but its request was refused or no substantive response has been received; and (ii) the nature of the relevant information or documentation that cannot be provided, including its relevance for the purposes of the calculations. For the avoidance of doubt, the provision of any information or document by LBHI does not amount to a representation by LBHI as to whether it contains "inside information" within the meaning of UK MAR and/or EU MAR or otherwise contains material non-public information under applicable securities law, including the Exchange Act. Information and documentation supplied under Clause 4.4 or Clause 4.8 (*Settlement – Payment Provisions*) shall be sent by LBHI only to ███████████        a ████████████████

12

**4.10**    LBHI shall calculate the PLC Surplus and the status of post-Initial Date distributions on the Scheduled Claims by reference to the LBHI2, PLC and LBL administrators' dividend letters, notices of declaration of dividend, progress reports and other information provided by those administrators, if and to the extent available. If the relevant information is unavailable or the available information is shown to be inaccurate or incomplete for the purposes of the relevant calculations, LBHI or SH3 shall promptly request further, updated or corrected information from the relevant administrators (with a copy of any such correspondence and any responses being sent to the other party for information) and the applicable time requirements set out in Clauses 4.8, 4.11, 4.12 and 4.15 (*Settlement – Payment Provisions*) shall be stayed pending the relevant administrators' substantive response, with such stay lasting up to a maximum of forty-five (45) calendar days from the date of such request (or such other period as may be agreed by the parties hereto), following which the time requirements shall no longer be stayed.

**4.11**    Within fourteen (14) calendar days of the date of LBHI's notice under Clause 4.8 (*Settlement – Payment Provisions*) above, SH3 shall send LBHI a notice specifying whether or not it agrees each of the calculations set out in LBHI's notice. If SH3 does not agree one or more of the calculations, SH3 shall set out in its notice its reasons for not agreeing the relevant calculations and any additional information SH3 reasonably believes that it needs in order to check the calculations. LBHI and SH3 shall discuss the reasons for SH3's non-agreement and any information requests, and shall promptly take reasonable steps in good faith to seek to reach agreement on the relevant calculations. If SH3 does not send such a notice within the fourteen (14) calendar day period, SH3 shall be deemed to have agreed LBHI's calculations.

**4.12**    If no agreement or deemed agreement of the value of the SH3 Gain/Loss has been reached within forty-two (42) calendar days of the date of LBHI's notice under Clause 4.8 (*Settlement – Payment Provisions*) above, either LBHI or SH3 may give notice under Clause 5.1 (*Expert Determination*) below.

**4.13**    If the SH3 Gain/Loss is a positive number, then SH3 shall pay to LBHI an amount in GBP equal to the SH3 Gain/Loss. The date for payment is as provided for at Clause 4.15 (*Settlement – Payment Provisions*) below.

**4.14**    If the SH3 Gain/Loss is a negative number, then LBHI shall pay to SH3 an amount in GBP equal to the SH3 Gain/Loss (expressed as a positive number). The date for payment is as provided for at Clause 4.15 (*Settlement – Payment Provisions*) below.

**4.15**    SH3 and/or LBHI (as relevant) shall make the payments required by Clauses 4.13 and 4.14 (*Settlement – Payment Provisions*) above within fourteen (14) calendar days of the amount being agreed or deemed agreed pursuant to Clause 4.11 (*Settlement – Payment Provisions*) above or determined by the Calculation Expert pursuant to Clause 5 (*Expert Determination*) below. Payment shall be made to:

    **(a)**    For payments to LBHI:

        **Account Name:**    ████████████████

        **Sort Code:**    ██████

        **Account Number:**    ██████

        **IBAN:**    ███████████████

        **SWIFT/BIC:**    ██████

    **(b)**    For payments to SH3:

        **Intermediary Bank:**    ██████████████████

13

| | |
|---|---|
| **Intermediary Bank BIC:** | ████████ |
| **Sort Code:** | ████ |
| **Account Name:** | █████████████████ |
| **Account BIC:** | ████████ |
| **Beneficiary Name:** | ██████████████ |
| **Beneficiary Account Number:** | ██████ |

**4.16**   The calculations in this Agreement are to be made by reference to the gross amounts distributed or paid by PLC, LBHI2, LBL, LBHI and SH3 rather than by reference to amounts received by the relevant recipient, and the calculations shall not take into account any tax suffered by the relevant recipient in respect of any such distributions (whether imposed by way of withholding or otherwise) or any other deduction taken from such distributions.

**4.17**   Subject to Clause 4.18 (*Settlement – Payment Provisions*), all amounts due under this Agreement shall be paid in full without any set-off, counterclaim, deduction or withholding.

**4.18**   All payments made in accordance with Clauses 4.13 and 4.14 (*Settlement – Payment Provisions*) shall be made free and clear of, and without withholding or deduction for, any taxes duties, assessments or governmental charges in the nature of a tax, unless such withholding or deduction is required by law. If any such withholding or deduction is required, the party making the payment shall (i) not be required to pay any additional amounts to the recipient in respect of such withholding or deduction; and (ii) deliver to the party receiving the payment evidence reasonably satisfactory to such party that the withholding or deduction has been made and remitted to the relevant tax authority.

**4.19**   LBHI shall only be required:

**(a)**   to give notice or send a revised version of Schedule 1 (*Scheduled Claims*) pursuant to Clause 4.4 (*Settlement – Payment Provisions*); and/or

**(b)**   to include the calculation at Clause 4.8(a) (*Settlement – Payment Provisions*) in its notice to SH3 pursuant to Clause 4.8 (*Settlement – Payment Provisions*);

if, as at the date on which LBHI would otherwise be required to do so, LBHI2 has made a distribution of any size on the LBHI2 Sub-Notes before the LBHI2 Sub-Debts have been paid and discharged in full. If LBHI2 subsequently makes such a distribution, the time for giving any notices that have been postponed pursuant to this Clause 4.19 (*Settlement – Payment Provisions*) shall run from the date of that distribution.

**4.20**   If SH3 transfers any SH3 ECAPS pursuant to Clause 7.6 (*Security*) below (the relevant SH3 ECAPS being the "**Transferred ECAPS**"), the calculation of due but unpaid amounts of the SH3 Gain/Loss and of future amounts of the SH3 Gain/Loss shall be altered, if and to the extent necessary, such that:

**(a)**   all obligations to pay and rights to receive payment of the SH3 Gain/Loss which arise by reference to the Transferred ECAPS shall pass to the transferee of those Transferred ECAPS, including any such amounts which are accrued but not paid;

**(b)**   for the purposes of determining the amount of the LBHI Payments under this Agreement, all amounts that have been paid by LBHI pursuant to Clauses 4.14 and 4.15 (*Settlement – Payment Provisions*) above with respect to the Transferred ECAPS shall be excluded (and

14

shall instead be included in the equivalent term in the equivalent settlement agreement between LBHI and the transferee); and

**(c)** for the purposes of determining the amount of the SH3 Payments under this Agreement, all amounts that have been paid by SH3 pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) above with respect to the Transferred ECAPS shall be excluded (and shall instead be included in the equivalent term in the equivalent settlement agreement between LBHI and the transferee);

and the aggregate amount of the SH3 Gain/Loss due to or from SH3 and the transferee shall be the same amount as would have been due to or from SH3 (alone) if it had not transferred the Transferred ECAPS.

**4.21** No item shall be included or excluded more than once in or from the calculations in this Clause 4 (*Settlement – Payment Provisions*) where to do so would result in double counting.

**4.22** Each of LBHI and SH3 shall cooperate in good faith to achieve the prompt agreement, deemed agreement or determination of the calculation of the SH3 Gain/Loss pursuant to this Clause 4 (*Settlement – Payment Provisions*) and/or Clause 5 (*Expert Determination*).

## 5    EXPERT DETERMINATION

**5.1** If LBHI and SH3 do not agree, and are not deemed to agree, the calculation of the SH3 Gain/Loss under Clause 4 (*Settlement – Payment Provisions*), LBHI and/or SH3 may give notice that they wish to refer the matter to determination by an independent expert who is an accountant and/or licensed insolvency practitioner, acting as expert and not as arbitrator (the "**Calculation Expert**"). If either LBHI or SH3 gives such a notice, LBHI and SH3 shall use reasonable endeavours in good faith to agree the appointment of a Calculation Expert, including the terms of that appointment, as soon as reasonably practicable.

**5.2** If LBHI and SH3 are unable to agree on a Calculation Expert or their terms of appointment under Clause 5.1 (*Expert Determination*), in each case within twenty-one (21) calendar days of the date of the notice given pursuant to Clause 5.1 (*Expert Determination*) above, LBHI and SH3 shall take the following steps:

**(a)** if one or more Calculation Experts have previously been appointed by the London Court of International Arbitration ("**LCIA**") pursuant to Clause 5.2(b) (*Expert Determination*) of this Agreement or pursuant to any Additional Settlement Agreement, whether such expert determination process is completed or ongoing, LBHI and SH3 shall request that the most recently appointed Calculation Expert also act as the Calculation Expert under this Agreement on the same terms (and if they are unable or unwilling to act, shall make the request of each of the other previously appointed Calculation Experts in turn, starting with the most recently appointed), and to the extent reasonably practicable the Calculation Expert shall combine the expert determination processes under this Agreement and under any such Additional Settlement Agreement such that they can be organised and determined together and in a consistent manner; and

**(b)** if no Calculation Expert has previously been appointed by the LCIA pursuant to this Clause 5.2(b) (*Expert Determination*) or pursuant to any Additional Settlement Agreement, or if the previously appointed Calculation Experts are unable or unwilling to act in respect of a calculation dispute under this Agreement, either LBHI or SH3 may apply, in writing, to the LCIA to appoint a Calculation Expert, enclosing a copy of this Agreement and a brief statement describing the nature and circumstances of the dispute and setting out any matters that the applicant party wishes to bring to the attention of the LCIA for the purposes of selecting the Calculation Expert, with simultaneous copy to the other party. The expert determination shall be administered by the LCIA, which shall also be the appointing authority for the purposes of appointing the Calculation Expert.  Within seven (7) calendar

15

days of service of the application, the other party shall send to the LCIA, with simultaneous copy to the applicant party, a reply to any matters raised by the applicant party. The LCIA shall endeavour to appoint the Calculation Expert within seven (7) calendar days of service of the reply, or as soon as reasonably practicable thereafter.

If a Calculation Expert is to be appointed under this Clause 5.2 (*Expert Determination*), LBHI and SH3 shall be deemed to have agreed the Calculation Expert's appointment and shall, acting reasonably and in good faith, approve and formalise the terms of the Calculation Expert's engagement promptly. The terms of the Calculation Expert's appointment under Clause 5.2(b) (*Expert Determination*) shall be consistent with this Clause 5 (*Expert Determination*), and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (ADR).

**5.3**     If there is a referral to a Calculation Expert, the following provisions shall apply:

**(a)**     each of LBHI and SH3 shall prepare a written statement on the matters in dispute, which shall include their proposed value for the SH3 Gain/Loss and which, together with any relevant documents, shall be sent to the Calculation Expert and to the other party within twenty-eight (28) calendar days of the date of the Calculation Expert's appointment, being the date they are appointed by the LCIA (if so appointed) or the date of their engagement letter (if not appointed by the LCIA);

**(b)**     each of LBHI and SH3 may send one set of written comments on the other party's written statement (addressing, in particular, the proposed value for the SH3 Gain/Loss set out at Clause 5.3(a) (*Expert Determination*)) to the Calculation Expert and to the other party within twenty-eight (28) calendar days of the submission of the written statements under Clause 5.3(a) (*Expert Determination*);

**(c)**     the Calculation Expert shall be entitled:

**(i)**     to extend the time limits in Clauses 5.3(a) and 5.3(b) (*Expert Determination*) above by a maximum of fourteen (14) calendar days each;

**(ii)**     to disregard any written statement or comments not delivered to the Calculation Expert within the time periods so stipulated;

**(iii)**     to require LBHI and SH3 (and their respective advisers) to attend one or more meetings and to raise enquiries of them about any matters which the Calculation Expert considers relevant within such timeframe as the Calculation Expert considers necessary in view of the timeframe for their determination specified in 5.3(e) (*Expert Determination*) below;

**(iv)**     in the absence of agreement between LBHI and SH3, to determine the procedure to be followed in undertaking the expert determination process as they consider appropriate (including the prescribed format and maximum length of any written statement or comments), insofar as the procedure is not set out in this Clause 5 (*Expert Determination*); and

**(v)**     to appoint advisers (including legal advisers) if required;

**(d)**     LBHI and SH3 shall use their respective reasonable endeavours to procure that the Calculation Expert is given all such assistance and access to documents and other information as they may reasonably require in order to make their determination;

**(e)**     the Calculation Expert shall give their determination, with written reasons, within sixty (60) calendar days of the deadline for delivery of the written comments referred to in Clause 5.3(b) (*Expert Determi*nation), unless LBHI, SH3 and the Calculation Expert agree to another deadline; and

16

**(f)**     save in the case of fraud or manifest error, the determination by the Calculation Expert shall be final and binding on all concerned.

5.4     In determining the SH3 Gain/Loss, the Calculation Expert shall take into account the information and documents provided to them pursuant to Clause 5.3 (*Expert Determination*) and the calculations set out at Clause 4 (*Settlement – Payment Provisions*).

5.5     Each of LBHI and SH3 shall bear their own legal costs and other expenses incurred by them in respect of the expert determination process. The (i) LCIA's fees (if applicable) and (ii) Calculation Expert's fees and any costs incurred by them in arriving at their determination (including any fees and costs of any advisers appointed by the Calculation Expert), in each case payable pursuant to their terms of engagement, shall be paid by the party whose proposed value for the SH3 Gain/Loss, as specified in the submissions provided under Clause 5.3(a) (*Expert Determination*), is furthest from that determined by the Calculation Expert. If the Calculation Expert's determination falls exactly between LBHI and SH3's proposed values, LBHI and SH3 shall bear the Calculation Expert's fees and costs equally.   If there is uncertainty as to whose value is furthest from that determined by the Calculation Expert, because one party has failed to state a single asserted value for the SH3 Gain/Loss pursuant to Clause 5.3(a) (*Expert Determination*) above, the Calculation Expert shall determine which of LBHI and/or SH3 shall pay the fees and costs, on the principle that costs should follow the event. The LCIA's fees and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (LCIA Appointing Only) and Schedule of Costs (ADR) respectively.

5.6     If the Calculation Expert dies or becomes unwilling or incapable of acting, or does not deliver their determination within the time required by this Clause 5 (*Expert Determination*), then:

**(a)**     LBHI and SH3 shall seek to agree on the appointment of a replacement Calculation Expert and shall seek to agree with the Calculation Expert the terms of their appointment, as set out at Clause 5.1 (*Expert Determination*); and

**(b)**     if LBHI and SH3 do not reach an agreement in relation to the appointment of a replacement Calculation Expert within seven (7) calendar days of being notified of the Calculation Expert's inability to act or their failure to give a determination within the time required, either party may apply to the LCIA to discharge the Calculation Expert and to appoint a replacement Calculation Expert in accordance with Clause 5.2(b) (*Expert Determination*), which shall apply to the appointment of the replacement Calculation Expert as if they were the first Calculation Expert to be appointed. If a Calculation Expert is to be appointed under this Clause 5.6 (*Expert Determination*), LBHI and SH3 shall be deemed to have agreed the Calculation Expert's appointment and shall, acting reasonably and in good faith, approve and formalise the terms of the Calculation Expert's engagement promptly. The terms of the Calculation Expert's appointment shall be consistent with this Clause 5 (Expert Determination), and the Calculation Expert's fee rate shall conform to the LCIA's Schedule of Costs (ADR).

5.7     Each of LBHI and SH3 shall act reasonably and co-operate in good faith to give effect to the provisions of this Clause 5 (*Expert Determination*) and otherwise do nothing to hinder or prevent the Calculation Expert from reaching their determination. Time limits set out in this Clause 5 (*Expert Determination*) may be extended by written agreement between LBHI and SH3.

5.8     Any written statements or other information provided by LBHI or SH3 to any Calculation Expert, and any determination of a Calculation Expert, may be used or referred to without redaction in any subsequent expert determination process under this Agreement or under any Additional Settlement Agreement.

5.9     The Calculation Expert and the LCIA shall have no liability to LBHI or SH3 howsoever for any act or omission in so acting, save where the act or omission is shown by either party to constitute

conscious and/or deliberate wrongdoing committed by the body or person alleged to be liable to that party.

5.10    All communications concerning the expert determination process shall be copied to the LCIA (if the appointment is made by the LCIA) and, once appointed, the Calculation Expert. All communications shall be sent by email, in accordance with Clause 15 (*Notices and Communications*).

5.11    If two or more of the Settling Holders are unable to agree the calculation of their gain/loss with LBHI under Clause 4.11 (*Settlement – Payment Provisions*), or an equivalent provision of the relevant Related SH Agreement, and the dispute proceeds to expert determination, the Settling Holders shall submit a single joint written statement and proposed approach to that calculation under Clause 5.3(a) (*Expert Determination*) and a single joint set of written comments under Clause 5.3(b) (*Expert Determination*) pursuant to the terms of this Agreement and the Related SH Agreements. For the avoidance of doubt, the Settling Holders shall agree to use the same Calculation Expert.

## 6    FUTURE ECAPS PURCHASES

6.1    If SH3 or any of its Affiliated Parties (other than SH1 or SH2) acquire any additional interest in any ECAPS at any time, whether directly or indirectly, through assignment or otherwise, SH3 shall notify LBHI in writing within seven (7) calendar days of the acquisition (being measured from the trade date, if applicable). SH3's notice shall specify the face value of such additional ECAPS acquired, the series of which such additional ECAPS form part and the resultant aggregate principal amount of ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3 held by SH3 and its Affiliated Parties (other than SH1 and SH2) following such acquisition. This Clause 6 (*Future ECAPS Purchases*) shall not apply to any acquisition by an Affiliated Party of SH3 in respect of which a notice has been served under Clause 6.1 (*Future ECAPS Purchases*) of either of the Related SH Agreements.

6.2    Any additional interest in ECAPS so acquired by SH3 or any of its Affiliated Parties (other than SH1 or SH2) on or after the Effective Date and on or before Monday, 27 September 2021 (the "**Additional Period**") (with the date of acquisition for these purposes being the trade date, if applicable) shall be subject to the terms of this Agreement, including but not limited to Clause 7 (*Security*) and Clause 11 (*Agreement Not to Sue*), whether or not settlement of such acquisition occurs during the Additional Period (such additional ECAPS being the "**SH3 Additional ECAPS**"), and the list of holdings set out at Schedule 3 (*SH3 ECAPS*) to this Agreement shall be deemed updated in accordance with the notice at Clause 6.1 (*Future ECAPS Purchases*). LBHI shall recalculate the definitions of SH3 Share of ECAPS Series 1, SH3 Share of ECAPS Series 2 and SH3 Share of ECAPS Series 3 (as relevant) in accordance with Clause 4 (*Settlement – Payment Provisions*) to take into account the newly acquired SH3 Additional ECAPS. Within fourteen (14) calendar days of SH3's notice pursuant to Clause 6.1 (*Future ECAPS Purchases*) above, LBHI shall send SH3 a notice of the revised calculations of SH3 Share of ECAPS Series 1, SH3 Share of ECAPS Series 2 and SH3 Share of ECAPS Series 3 (as relevant), and those terms shall be deemed amended accordingly, with such amendment being deemed to take effect on the date of acquisition of such SH3 Additional ECAPS (being for these purposes the settlement date, if applicable).

6.3    Any ECAPS acquired by SH3 or any of its Affiliated Parties after the expiry of the Additional Period (with the acquisition being treated as taking place on the trade date, if applicable) shall not be subject to the terms of this Agreement and none of the definitions of SH3 Share of ECAPS Series 1, SH3 Share of ECAPS Series 2 and SH3 Share of ECAPS Series 3 shall be amended to reflect them, unless the Parties agree otherwise in writing. Nevertheless, the provisions of Clause 11 (*Agreement Not To Sue*) shall govern all of SH3's and its Affiliated Parties' (other than SH1 and SH2) activities in respect of all ECAPS they own, whether purchased prior to, during or after the expiry of the Additional Period.

WEIL:\98047235\1\58399.0011

## 7    SECURITY

*Security over SH3 Effective Date ECAPS and SH3 Additional ECAPS*

7.1    SH3 shall deposit all SH3 Effective Date ECAPS in the Collateral Account within seven (7) calendar days of the Effective Date, and upon doing so shall send LBHI proof that it has done so in the form of a screenshot or statement from ███████████████. SH3 shall, and shall procure that its Affiliated Parties shall, deposit all SH3 Additional ECAPS directly into the Collateral Account (and direct any selling counterparty to transfer all SH3 Additional ECAPS directly into the Collateral Account) and maintain all SH3 ECAPS in the Collateral Account and subject to the terms of the Collateral Documents.

7.2    On or before 27 September 2021, SH3 shall not acquire, and shall procure that its Affiliated Parties shall not acquire, any SH3 Additional ECAPS unless:

   (a)    such SH3 Additional ECAPS are capable of being deposited in the Collateral Account and held subject to the Collateral Documents; or

   (b)    SH3 provides alternative security or collateral (an "**Alternative Collateral Arrangement**") in form and substance satisfactory to LBHI (acting reasonably) within ten (10) calendar days of the settlement date in respect of the acquisition of such SH3 Additional ECAPS.

7.3    SH3 shall not create or agree to create or permit to subsist any Encumbrance over all or any part of the SH3 ECAPS other than Permitted Security.

7.4    If, within fourteen (14) calendar days of the settlement date in respect of any acquisition of any SH3 Additional ECAPS, SH3 has not complied with the undertakings in Clause 7.1 and 7.2 above, LBHI may elect in writing (but is under no obligation) to terminate the effect of Clause 6.2 (*Future ECAPS Purchases*) above insofar as it relates to the SH3 Additional ECAPS which have not been deposited into the Collateral Account and with respect to which no other security or collateral has been provided in form and substance satisfactory to LBHI (acting reasonably) with immediate effect, such that those SH3 Additional ECAPS shall cease to be treated as SH3 Additional ECAPS and shall instead be treated as ECAPS acquired after the expiry of the Additional Period for the purposes of Clause 6.3 (*Future ECAPS Purchases*).

7.5    Upon receipt by LBHI of all payments owed to LBHI pursuant to Clauses 4.13 and 4.15 (*Settlement – Payment Provisions*) or other terms of this Agreement in cleared funds into the relevant account identified at Clause 4.15 (*Settlement – Payment Mechanics*), and upon LBHI satisfying itself that no such payments will be required to be made by SH3 to LBHI in the future, LBHI shall promptly notify SH3 that all payments required to be made under this Agreement have been made. With effect on and from the date of that notice, LBHI shall irrevocably and unconditionally:

   (a)    release and discharge SH3 from all security constituted, created, evidenced or conferred by or pursuant to this Agreement and the Collateral Documents;

   (b)    reassign and retransfer to SH3 all rights, interest and title to all assets and property of SH3 which were assigned or transferred to LBHI;

   (c)    authorise SH3 to give a notice (at SH3's cost and expense) on behalf of LBHI of the releases under this Clause 7.5 (*Security*) to any person on whom notice of any security interest created by this Agreement and the Collateral Document was served; and

   (d)    (i) file or authorise SH3 to file (at SH3's cost and expense) terminations of any and all Uniform Commercial Code financing statements and (ii) provide any necessary notice of termination of the Control Agreement entered into with respect to the Collateral Account.

WEIL:\98047235\1\58399.0011

*Sale of SH3 ECAPS*

**7.6**  SH3 may transfer any of the SH3 ECAPS to any party at any time provided that:

**(a)**  the number of transfers that may be made following the Effective Date of ECAPS that, at the time of the transfer,  are or have been SH1 ECAPS, SH2 ECAPS or SH3 ECAPS (in the former two cases as defined in the SH1 and SH2 Related SH Agreements) (together, "**Available ECAPS**") is limited such that Available ECAPS may at any given time be held only by a maximum of fifteen (15) different beneficial owners in aggregate (in addition to SH1, SH2 and SH3). For the avoidance of doubt, any subsequent transfer by any transferee will count towards the limitation on the number of transfers for the purposes of this Clause 7.6(a) (*Security*);

**(b)**  on or before the settlement date in respect of such transfer, SH3 shall transfer to the transferee all obligations to pay and rights to receive payment of the SH3 Gain/Loss which arise by reference to the transferred ECAPS, including any such amounts which have accrued but not been paid;

**(c)**  on or before the settlement date in respect of such transfer, SH3 shall transfer to the transferee any and all proceeds of those transferred ECAPS which are held in the Collateral Account at the date of the transfer;

**(d)**  on or before the settlement date in respect of such transfer, SH3 shall procure that the transferee enters into a settlement agreement with LBHI on substantially the same terms as this Agreement as if such transferee were SH3 with respect to the relevant SH3 ECAPS;

**(e)**  on or before the settlement date in respect of such transfer, SH3 shall procure that the transferee establishes an account equivalent to the Collateral Account and provides security to LBHI on terms substantially equivalent to the Collateral Documents with respect to the relevant SH3 ECAPS;

**(f)**  on or before the settlement date in respect of such transfer, SH3 shall give notice to LBHI of the identity of the transferee, the face value of SH3 ECAPS that SH3 wishes to sell to that transferee (including the series of which such SH3 ECAPS form part);

**(g)**  SH3 shall only be entitled to transfer SH3 ECAPS if LBHI consents in writing, such consent not to be unreasonably withheld, and the only grounds on which LBHI may reasonably withhold consent are limited to: (i) the entry by LBHI into a settlement agreement and related security agreements with the transferee, or the transactions contemplated by them, will result in, or is reasonably likely to result in, (A) negative tax consequences for LBHI and/or its Affiliated Parties, (B) material impediments on the ability of LBHI to enforce the rights of LBHI under the settlement agreement and related security agreements entered into between LBHI and the transferee, or (C) breach of sanctions, trade restrictions, money laundering, terrorist financing, criminal activities or other restrictions imposed by the United States Office of Foreign Assets Control or departments of the United States Government or the governments or competent authorities of other relevant jurisdictions (including, without limitation, the United Kingdom and the European Union), whether those concerns arise from the jurisdiction(s) in each case in which the proposed transferee is incorporated or carries on business or whether those concerns arise on any other grounds; (ii) the fact that a proposed transferee is a natural person (or a special purpose entity beneficially owned by a natural person and incorporated for the sole or primary purpose of holding the SH3 ECAPS); (iii) any actual or threatened dispute or legal proceedings between LBHI and/or any of its Affiliated Parties on the one hand and the proposed transferee and/or any of its Affiliated Parties on the other hand; or (iv) any of Clauses 7.6(a) to 7.6(e) (*Security*) not being satisfied on or before the settlement date in respect of the transfer; and

WEIL:\98047235\1\58399.0011

**(h)**  if the transfer of the SH3 ECAPS is completed, SH3 shall give notice to LBHI within five (5) Business Days of the transfer (being measured from the trade date, if applicable) specifying the face value of the SH3 ECAPS sold, the series of which such SH3 ECAPS form part and the resultant aggregate principal amount of ECAPS Series 1, ECAPS Series 2 and ECAPS Series 3 held by SH3 following such transfer.

**7.7**  Each of LBHI and SH3 shall cooperate in good faith to achieve the entry by the transferee into the settlement agreement and related security agreements as set out in Clause 7.6 (*Security*) above.

**7.8**  Following any transfer by SH3 of SH3 ECAPS in accordance with Clause 7.6 (*Security*) above, the list of holdings set out at Schedule 3 (*SH3 ECAPS*) to this Agreement shall be deemed updated in accordance with the notice at Clause 7.6(h) (*Future ECAPS Purchases*). LBHI shall recalculate the definitions of SH3 Share of ECAPS Series 1, SH3 Share of ECAPS Series 2 and SH3 Share of ECAPS Series 3 (as relevant) in accordance with Clause 4 (*Settlement – Payment Provisions*) to take into account the transfer of SH3 ECAPS by SH3. LBHI shall send SH3 a notice of the revised calculations of SH3 Share of ECAPS Series 1, SH3 Share of ECAPS Series 2 and SH3 Share of ECAPS Series 3 (as relevant), and those terms shall be deemed amended accordingly, with such amendment being deemed to take effect on the date of the transfer of such SH3 ECAPS (being for these purposes the settlement date, if applicable).

## 8    MOST FAVOURED NATION OPTION

**8.1**  Subject to Clause 8.7 (*Most Favoured Nation Option*) below, if, during the period from the Effective Date to the Final Hearing Date, LBHI:

**(a)**  reaches an agreement in principle with respect to a Comparator Settlement; or

**(b)**  enters into any Comparator Settlement with respect to which it had not previously given notice under this Clause 8.1 (*Most Favoured Nation Option*) of an agreement in principle,

LBHI shall give notice to SH3 in writing with details of the agreement in principle or a copy of the Comparator Settlement (as applicable) within five (5) Business Days of the date of reaching such agreement in principle or the date of such Comparator Settlement.

**8.2**  SH3 shall have the option (the "**MFN Option**") to amend this Agreement to match the terms of the agreement in principle or Comparator Settlement, provided that it gives notice in writing to LBHI stating whether or not it intends to exercise the MFN Option within five (5) Business Days of the date of the notice described in Clause 8.1 (*Most Favoured Nation Option*) above. If SH3 does not give a notice in accordance with this Clause 8.2 (*Most Favoured Nation Option*) within that five (5) Business Day period, SH3 shall be deemed not to have exercised the MFN Option.

**8.3**  If SH3 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is exercising the MFN Option with respect to a signed Comparator Settlement (the "**Selected Comparator Settlement**"):

**(a)**  a draft amended version of this Agreement, reflecting the terms of the Selected Comparator Settlement, shall be sent by LBHI to SH3 for review within fourteen (14) calendar days of the date of SH3's notice under Clause 8.2 (*Most Favoured Nation Option*) above;

**(b)**  SH3 and LBHI shall use reasonable endeavours to agree and sign the amended agreement within fourteen (14) calendar days of the date of LBHI sending the draft amended version of this Agreement for review under Clause 8.3(a) (*Most Favoured Nation Option*) above; and

**(c)**  the existing terms of this Agreement shall continue to apply to the Parties until the amended agreement has been signed by all Parties and has come into effect.

21

**8.4**    If SH3 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is exercising the MFN Option with respect to an agreement in principle:

    **(a)**    no amendments to this Agreement shall be implemented or effective unless and until there is a signed Comparator Settlement with respect to the relevant agreement in principle;

    **(b)**    LBHI shall promptly notify SH3 following execution of the relevant Comparator Settlement and provide SH3 with a copy of such Comparator Settlement;

    **(c)**    SH3 shall have a right to withdraw its notice, within five (5) Business Days of receipt of a signed Comparator Settlement provided under Clause 8.4(b) (*Most Favoured Nation Option*) above, if any term of the signed Comparator Settlement differs from those described in the original notice sent pursuant to Clause 8.1 (*Most Favoured Nation Option*) above; and

    **(d)**    unless SH3 withdraws its notice within five (5) Business Days pursuant to Clause 8.4(c) (*Most Favoured Nation Option*) above, Clause 8.3 (*Most Favoured Nation Option*) above shall apply with the fourteen (14) calendar day period in Clause 8.3(a) (*Most Favoured Nation Option*) running from the expiry of the five (5) Business Day period within which SH3 could have withdrawn its notice.

**8.5**    If SH3 gives notice pursuant to Clause 8.2 (*Most Favoured Nation Option*) that it is not exercising the MFN Option with respect to an agreement in principle, or is deemed not to have exercised the MFN Option:

    **(a)**    LBHI shall promptly notify SH3 following execution of the relevant Comparator Settlement and provide SH3 with a copy of such Comparator Settlement;

    **(b)**    if any term of the signed Comparator Settlement deriving from such agreement in principle differs from those described in the original notice sent pursuant to Clause 8.1 (*Most Favoured Nation Option*) above, SH3 shall have a right to exercise the MFN Option with respect to the Comparator Settlement, provided it does so within five (5) Business Days of receipt of a signed Comparator Settlement provided under Clause 8.5(a) (*Most Favoured Nation Option*) above; and

    **(c)**    if SH3 gives notice within five (5) Business Days pursuant to Clause 8.5(b) (*Most Favoured Nation Option*) above, Clause 8.3 (*Most Favoured Nation Option*) above shall apply with the fourteen (14) calendar day period in Clause 8.3(a) (*Most Favoured Nation Option*) running from the date SH3 gives such notice.

**8.6**    For the avoidance of doubt, for the purposes of determining which parts of this Agreement should be amended to match the terms of a Comparator Settlement pursuant to Clause 8.2 (*Most Favoured Nation Option*) above, differences that arise solely from a differential between the numbers of ECAPS in ECAPS Series 1, ECAPS Series 2 and/or ECAPS Series 3 held by SH3, on the one hand, as compared to the ECAPS Holders subject to the Comparator Settlement, on the other hand, shall be disregarded.

**8.7**    The MFN Option shall not apply:

    **(a)**    to a Comparator Settlement if the face value of ECAPS held by the relevant ECAPS Holder and any of their affiliates is in aggregate less than EUR 1 million;

    **(b)**    to any Comparator Settlement entered into after the Final Hearing Date, unless that Comparator Settlement reflects an agreement in principle that was reached on or prior to the Final Hearing Date;

WEIL:\98047235\1\58399.0011

**(c)** to any agreement in principle that does not ultimately result in a signed Comparator Settlement; or

**(d)** to any terms of any Comparator Settlement that relate to and resolve matters other than the applicable parties' entitlement to, or notional share of, the assets available for distribution to PLC's subordinated creditors and/or LBHI2's subordinated creditors under their respective subordinated debt claims.

**9       REPRESENTATIONS, WARRANTIES AND INDEMNITIES**

*General*

**9.1**     LBHI and SH3 each represent and warrant to the other that:

**(a)** it is duly organised and validly existing under the laws of the jurisdiction in which it is incorporated;

**(b)** it has the power to enter into, perform and deliver the transactions contemplated by this Agreement and to execute, perform and deliver this Agreement;

**(c)** its obligations in relation to this Agreement and the transaction contemplated by this Agreement constitute legal, valid, binding and enforceable obligations (subject to the Legal Reservations, Perfection Requirements and subject, as to enforceability, to equitable principles of general application); and

**(d)** it has obtained all necessary authorisations, consents, approval, resolutions, licences, exemptions, filings, notarisations or registrations and has taken all necessary action to enable it lawfully to enter into, exercise its rights in and comply with its obligations in this Agreement.

**9.1 A**   Each payor under any present or future obligation to make a payment under this Agreement to a payee (each such payment is referred to as a "**Payment**") represents and warrants to each such payee that they are not as of the date of this Agreement under any legal obligation to withhold any amount for or on account of taxes in respect of a Payment had such Payment been required to be made on the date of this Agreement (save in respect of US backup withholding taxes pursuant to section 3406 of the U.S. Internal Revenue Code of 1986 that may be imposed on a Payment solely as a result of a payee's failure to provide a relevant IRS Form W-8 or IRS Form W-9 but only if (i) such form is required by applicable law to eliminate such US backup withholding and (ii) such form is timely requested by the payor of such Payment before making such Payment).

*Indemnities*

**9.2**     SH3 shall indemnify, and shall keep indemnified, LBHI against all reasonably incurred liabilities, costs and expenses (including legal and out-of-pocket expenses and any value added tax on those costs and expenses) arising directly out of or incurred directly in connection with (i) any legal or other proceedings for the enforcement of SH3's payment obligations  or recovery of sums due from SH3 under this Agreement  (excluding, for the avoidance of doubt, any proceedings under Clause 5 (*Expert Determination*) concerning the amount due); and (ii) the enforcement of Clause 7 (*Security*) and/or any security created thereunder (other than liabilities, costs and expenses incurred by reason of LBHI's gross negligence or willful misconduct).

**9.3**     LBHI shall indemnify, and shall keep indemnified, SH3 against all reasonably incurred liabilities, costs and expenses (including legal and out-of-pocket expenses and any value added tax on those costs and expenses) arising directly out of or incurred directly in connection with any legal or other proceedings for the enforcement of LBHI's payment obligations or recovery of sums due from LBHI under this Agreement (excluding, for the avoidance of doubt, any proceedings under Clause

23

5 (*Expert Determination*) concerning the amount due) (other than liabilities, costs and expenses incurred by reason of SH3's gross negligence or willful misconduct).

*SH3*

**9.4**  SH3 represents and warrants that it and its Affiliated Parties (other than SH1 or SH2) are, and will continue to be, the sole beneficial owner of, and have good beneficial title to, the SH3 ECAPS, free and clear of any Encumbrance and that they have not made any prior sale, transfer or sub-participation of their interest in the SH3 ECAPS which is subsisting.

**9.5**  SH3 represents and warrants that the list of holdings of the SH3 ECAPS, as set out at Schedule 3 (*SH3 ECAPS*) to this Agreement, is accurate and up-to-date.

**9.6**  SH3 represents and warrants that the proof of ownership of the SH3 Effective Date ECAPS provided pursuant to Clause 7.1 (*Security*) is accurate and up-to-date as at the Completion Date.

**9.7**  The representations and warranties at Clause 9.4 (*Representations, Warranties and Indemnities*) and Clause 9.5 (*Representations, Warranties and Indemnities*) are stated with respect to the SH3 Effective Date ECAPS on the Completion Date and repeated on the date SH3 gives notice to LBHI of it or any of its Affiliated Parties (other than SH1 or SH2) acquiring any SH3 Additional ECAPS pursuant to Clause 6.1 (*Future ECAPS Purchase*s) with respect to all such SH3 Effective Date ECAPS and SH3 Additional ECAPS.

**9.8**  SH3 represents and warrants that:

**(a)**  it is not insolvent or unable to pay its debts within the meaning of section 123 of the Insolvency Act 1986 or any other applicable insolvency legislation;

**(b)**  it has the resources to discharge its debts as they fall due;

**(c)**  to its knowledge and belief, no execution or other process issued on a judgment, decree or order of any court in favour of a creditor remains unsatisfied in whole or in part and no statutory demand for payment has been served on it;

**(d)**  to its knowledge and belief, no corporate action has been taken or is pending and no other steps have been taken and no legal proceedings have been commenced or are threatened or are pending for: (i) the suspension of payments, a moratorium in respect of any indebtedness, winding-up, liquidation, dissolution, administration or reorganisation (using a voluntary arrangement, scheme of arrangement or otherwise) of it; (ii) the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of SH3 or any of its property, undertaking or assets; or (iii) it to enter into any composition, compromise, assignment or arrangement with its creditors generally; and

**(e)**  no event equivalent to any of the provisions in Clause 9.8(d) (*Representations, Warranties and Indemnities*) has occurred under the laws of any other jurisdiction.

**10**  **COSTS**

Each of the Parties shall bear their own legal and other costs incurred in connection with the negotiation, preparation and execution of this Agreement and any documents referred to in it, including the Collateral Documents.

**11**  **AGREEMENT NOT TO SUE**

**11.1**  Subject to Clause 11.2 (*Agreement Not To Sue*), SH3 shall not, without LBHI's prior written consent (and shall procure that its Affiliated Parties, including without limitation the other Settling Holders,

24

do not without LBHI's prior written consent), at any time assert a claim against or sue, commence, continue, voluntarily aid in any way, intervene or seek to be joined, prosecute or cause to be commenced or prosecuted (or instruct, direct, authorise, assist or encourage any other person to commence or continue) any action, suit or other proceeding in any jurisdiction or forum whatsoever against LBHI, SLP3, PLC, LBHI2, LBL and/or GP1 and/or any of their Affiliated Parties concerning:

(a)     the issues in the Priority Proceedings;

(b)     anything that might affect the flow of funds to the ECAPS and/or to LBHI2, SLP3, PLC and/or LBL's other subordinated or unsubordinated creditors; and/or

(c)     anything that might affect the nature or quantum of the PLC Surplus or the timing of its distribution.

**11.2**     For the avoidance of doubt, the agreement not to sue in Clause 11.1 (*Agreement Not To Sue*) above shall not apply to any claims, rights and/or causes of action in respect of any breach of this Agreement or the Collateral Documents.

## 12     ANNOUNCEMENTS

**12.1**     The Parties consent to the issue of an announcement, substantially in the agreed form attached at Schedule 4 (*Announcement*) to this Agreement, immediately following the Completion Date (the "**Announcement**").

**12.2**     On or after the Completion Date, LBHI shall arrange for the Announcement to be uploaded to its website and/or filed on its docket along with this Agreement, with the bank account details set out in Clause 4.15 (*Settlement – Payment Provisions*), and other personal information reasonably required by SH3 or LBHI, being redacted in the copy of this Agreement that is made public.

## 13     INTEREST

**13.1**     If either LBHI or SH3 fails to make a payment due to the other party under this Agreement by the due date, then, without limiting the other party's remedies, the defaulting party shall pay interest on the overdue sum from the due date until payment of the overdue sum, whether before or after judgment.

**13.2**     Interest under this Clause 13 (*Interest*) shall accrue each day at the rate provided for judgment debts in section 17 of the Judgments Act 1838.

## 14     FURTHER ASSURANCES

The Parties shall, as soon as reasonably practicable, do all such things, take all such steps or actions and execute all such documents and/or declarations as may be required by law, reasonably required by another Party or which are reasonably required to give effect to, evidence or perfect the obligations and liabilities as set out in, and upon the terms of, this Agreement.

## 15     NOTICES AND COMMUNICATIONS

**15.1**     All notices and other communications given under or in connection with this Agreement shall be in writing, in the English language and sent to the Party at the following email addresses (or to any other email addresses as otherwise notified in writing to each other Party):

(a)     In the case of LBHI and SLP3, the email addresses are:

**Email**: ronald.geraghty@lehmanholdings.com and notices@lehmanholdings.com
**With a copy via email to**:

WEIL:\98047235\1\58399.0011

Mark.Lawford@weil.com and Lindsay.Merritt@weil.com

(b)     In the case of SH3, the email addresses are:

**Email:** █████████████████████████████
**With a copy via email to:** ████████████████████

or, with respect to any information or documents to be sent by LBHI to █████████
████████████ pursuant to Clause 4.9 (*Settlement – Payment Provisions*), to

15.2    Any notices or other communications shall be deemed to have been received at the time of transmission of the email or, if this time falls outside business hours in the place of receipt, when business hours resume. In this Clause 15 (*Notices and Communications*), business hours means 9.00am to 5.00pm Monday to Friday on a day that is not a public holiday in the United States of America or in the United Kingdom.

15.3    This Clause 15 (*Notices and Communications*) applies to notices and other communications given with respect to the expert determination procedure set out in Clause 5 (*Expert Determination*) above, but does not apply to the service of any proceedings or other documents in any legal action or, if applicable, any other method of dispute resolution.

## 16     SERVICE OF PROCESS

*LBHI*

16.1    LBHI appoints Law Debenture Corporate Services Limited of Fifth Floor, 100 Wood Street, London, EC2V 7EX, United Kingdom as its agent under this Agreement for service of process in relation to any proceedings before the English courts in connection with any dispute arising in relation to this Agreement.

16.2    Failure by a process agent to notify LBHI of any process will not invalidate the relevant proceedings.

16.3    If the person appointed as process agent under Clause 16.1 (*Service of Process*) is unable for any reason to so act, LBHI must immediately (and in any event within seven (7) calendar days of becoming aware) appoint another agent. If LBHI fails to appoint another process agent within that time period, SH3 may appoint another process agent on LBHI's behalf or serve the original process agent.

*SH3*

16.4    SH3 appoints ███████████████████████████████████████████ as its agent under this Agreement for service of process in relation to any proceedings before the English courts in connection with any dispute arising in relation to this Agreement.

16.5    Failure by a process agent to notify SH3 of any process will not invalidate the relevant proceedings.

16.6    If the person appointed as process agent under Clause 16.4 (*Service of Process*) is unable for any reason to so act, SH3 must immediately (and in any event within seven (7) calendar days of becoming aware) appoint another agent.  If SH3 fails to appoint another process agent within that time period, LBHI may appoint another process agent on behalf of SH3 or serve the original process agent.

## 17     RIGHTS OF THIRD PARTIES

17.1    No person who is not a Party to this Agreement shall have any rights, whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise, to enforce any terms of this Agreement.

26

**17.2**    The rights of the Parties to rescind or vary this Agreement are not subject to the consent of any other person.

**18    SUCCESSORS AND ASSIGNS**

This Agreement is personal to the Parties and no Party shall assign, transfer, mortgage, charge, subcontract, delegate, declare a trust over or deal in any other manner with any of its rights and obligations under this Agreement without the prior written consent of each of the other Parties.

**19    CONTRA PROFERENTUM**

The Parties acknowledge that this Agreement has been jointly drafted by the Parties and accordingly it should not be construed strictly, nor shall the contra proferentem rule be applied, against any Party.

**20    DAMAGES NOT AN ADEQUATE REMEDY**

Without prejudice to any other rights or remedies that the Parties may have, the Parties acknowledge that damages alone would not be an adequate remedy for any breach of Clause 5 (*Expert Determination*), Clause 7 (*Security*) or Clause 11 (*Agreement Not To Sue*)) of this Agreement. Accordingly, any Party shall be entitled to seek the remedies of injunction, specific performance and/or other equitable relief for any threatened or actual breach of Clause 5 (*Expert Determination*), Clause 7 (*Security*) or Clause 11 (*Agreement Not To Sue*) of this Agreement.

**21    ENTIRE AGREEMENT**

**21.1**    This Agreement and the Collateral Documents constitute the entire understanding and agreement between LBHI and SLP3 on the one hand, and SH3 on the other, in relation to the subject matter of this Agreement.

**21.2**    Each Party acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of the other Party (whether orally or in writing) other than as expressly set out in this Agreement.

**21.3**    Nothing in this Clause 21 (*Entire Agreement*) shall limit or exclude liability for fraud.

**22    VARIATION**

Any variation of this Agreement must be in writing and signed by, or on behalf of, each Party.

**23    SEVERABILITY**

**23.1**    If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, that shall not affect or impair:

(a)    the legality, validity or enforceability in that jurisdiction of any other provision of this Agreement; or

(b)    the legality, validity or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

**23.2**    If any provision or part-provision of this Agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted and the Parties shall negotiate in good faith to agree a new provision which will achieve as close as possible to the same result without being invalid, illegal or unenforceable. Any modification to or

27

deletion of a provision or part-provision under this Clause 23.2 (*Severability*) shall not affect the validity and enforceability of the rest of this Agreement.

## 24    COUNTERPARTS

This Agreement may be executed in any number of counterparts, and by the Parties on separate counterparts, but shall not be effective until each Party has executed at least one counterpart.

## 25    GOVERNING LAW AND JURISDICTION

25.1    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter (including any non-contractual disputes or claims), shall be governed by and construed in accordance with the laws of England and Wales.

25.2    The courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this Agreement and/or its subject matter (including any non-contractual disputes or claims).

WEIL:\98047235\1\58399.0011

**IN WITNESS WHEREOF** this Agreement has been duly executed on the date stated at the beginning of it.

| | |
|---|---|
| Signed for and on behalf of | ) |
| **LEHMAN BROTHERS HOLDINGS INC.** | ) |
| a company incorporated in Delaware | ) |
| by Ronald Geraghty | ) |
| being a person who, in accordance with the laws | ) |
| of the territory, is acting under the authority of | ) |
| the company | ) |

Authorised Signatory

| | |
|---|---|
| Signed for and on behalf of | ) |
| **LEHMAN BROTHERS HOLDINGS** | ) |
| **SCOTTISH LP 3**, a Scottish limited | ) |
| Partnership, by its general partner, | ) |
| **Lehman Brothers Holdings Scottish LP 2,** | ) |
| acting by its general partner, | ) |
| **Lehman Brothers Holdings Inc.** | ) |

Authorised Signatory

*SH3 Settlement Agreement – LBHI and SLP3 Signature Page*

Signed for and on behalf of                                )
██████████████████████                                     )
a company incorporated in ████                             )
by ██████                                                  )
being a person who, in accordance with the laws            )
of the territory, is acting under the authority of         )
the company                                                )

_____
Director

## SCHEDULE 1
## SCHEDULED CLAIMS

| (A) Original Claimant or Current Holder | (B) Claims/Admitted Value in GBP | (C) Outstanding Amount to be Paid in GBP |
|---|---|---|
| **LBL CREDITORS** | | |
| LBHI | 35,000,000.00 | 8,808,862.04 |
| LBHI | 25,000,000.00 | 6,395,713.31 |
| LBHI | 22,854,649.00 | 5,724,780.60 |
| LBHI | 1,041,704.90 | 261,072.28 |
| 314 Commonwealth | 239,662.71 | 60,064.31 |
| LBHI | 232,322.78 | 58,224.66 |
| LBHI | 183,246.18 | 45,900.69 |
| LBHI | 21,459.98 | 5,378.31 |
| LBHI | 9,220.96 | 2,319.96 |
| LBHI | 1,852.68 | 464.32 |
| LBHI (Subordinated) | 5,000,000.00 | 10,200,000.00 |
| **Total LBL Creditors** | **89,584,119.19** | **31,562,771.48** |
| **PLC CREDITORS** | | |
| LBHI | 35,621,091.00 | 16,495,143.29 |
| LB Hercules Holdings LLC | 1,462,009.50 | 683,358.95 |
| LB Asia Holdings Ltd. | 929,730.26 | 430,527.22 |
| Lehman Brothers Inc. | 533,483.94 | 247,041.68 |
| LBHK Funding (Cayman) No. 1 Ltd. | 44,304.55 | 20,515.96 |
| Sunrise Finance Co. Ltd. | 1,664.16 | 770.63 |
| Lehman Brothers Bankhaus A.G. | 1,300.38 | 602.17 |
| LB Holdings Scottish LP | 79,238,688.47 | 36,693,247.79 |
| Lehman Brothers Luxembourg Investments Sarl | 51,425,443.50 | 23,813,702.33 |
| LB Beta Finance Ltd. | 43,147,598.61 | 19,980,461.03 |

31

| (A) Original Claimant or Current Holder | (B) Claims/Admitted Value in GBP | (C) Outstanding Amount to be Paid in GBP |
|---|---|---|
| LB UK Holdings Ltd. | 19,547,739.03 | 9,052,239.90 |
| Eldon Street Holdings Ltd | 31,358,468.41 | 14,521,240.51 |
| Thayer Properties (Jersey) Ltd | 14,699,806.00 | 6,807,048.18 |
| **Total PLC Creditors** | **278,011,327.81** | **128,745,899.62** |
| **LBHI2 CREDITORS** | | |
| SLP3 | 4,219,533,988.59 | Not included in the Threshold Amount |
| **THRESHOLD AMOUNT** | | |
| **Threshold Amount** | | **160,308,671.10** |

WEIL:\98047235\1\58399.0011

**SCHEDULE 2**
**SH3 GAIN/LOSS – WORKED EXAMPLES**

WEIL:\98047235\1\58399.0011

**Worked Example 1.**

Assume First Instance Judgment Confirmed:

| | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|

The Scheduled Claims:

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | | | |
|---|---|---|---|---|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a | | | | | |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | |
|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | | 8,808,862.04 | | | |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | | 6,395,713.31 | | | |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | | 5,724,780.60 | | | |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | | 261,072.28 | | | |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | | 60,064.31 | | | |
| LBHI | 100% | 232,322.78 | 58,224.66 | | 58,224.66 | | | |
| LBHI | 100% | 183,246.18 | 45,900.69 | | 45,900.69 | | | |
| LBHI | 100% | 21,459.98 | 5,378.31 | | 5,378.31 | | | |
| LBHI | 100% | 9,220.96 | 2,310.96 | | 2,310.96 | | | |
| LBHI | 100% | 1,852.68 | 464.32 | | 464.32 | | | |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | | 10,200,000.00 | | | |
| Total | | 89,584,119.19 | 26,562,771.48 | | | | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | |
|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | 16,495,143.29 | | | |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | 683,358.95 | | | |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | | 430,527.22 | | | |
| LBI | 100% | 533,483.94 | 247,041.68 | | 247,041.68 | | | |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | 20,515.96 | | | |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | 770.63 | | | |
| Bankhaus | 100% | 1,300.38 | 602.17 | | 602.17 | | | |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | 36,693,247.79 | | | |
| LBLIS | 100% | 51,425,443.50 | 23,813,702.33 | | 23,813,702.33 | | | |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | 19,980,461.03 | | | |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | 9,052,239.90 | | | |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | 14,521,240.51 | | | |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | 6,807,048.18 | | | |
| Total | | 278,011,327.81 | 128,745,899.62 | | | | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | |
|---|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | | 3,065,487.43 | 3,065,487.43 | 3,065,487.43 |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | 4,306,932.42 | 4,306,932.42 | 4,306,932.42 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | 6,305,984.40 | 6,305,984.40 | 6,305,984.40 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | 86,321,595.75 | 86,321,595.75 | 86,321,595.75 |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |

| | | | | | Payment 1 | Payment 2 | Payment 3 | Payment 4 |
|---|---|---|---|---|---|---|---|---|
| | | Total From Payment Round | | | 160,308,671.10 | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| | | Cumulative Total | | | 160,308,671.10 | 260,308,671.10 | 360,308,671.10 | 460,308,671.10 |
| | | Threshold Amount | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |
| "PLC Surplus" is | | | | | | | | |
| the Cumulative total less the threshold amount | | "PLC Surplus" equals | | | 0.00 | 100,000,000.00 | 200,000,000.00 | 300,000,000.00 |
| Settlement Percentage Agreed at | 16.19% | | | | | | | |
| | | P1 | | | 0.00 | 3,065,487.43 | 6,130,974.86 | 9,196,462.28 |
| | | P2 | | | 0.00 | 4,306,932.42 | 8,613,864.83 | 12,920,797.25 |
| | | P3 | | | 0.00 | 6,305,984.40 | 12,611,968.81 | 18,917,953.21 |
| | | Series 1 share of PLC Notes | | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH3 Share of ECAPS Series 1 | | | 0.000% | 0.000% | 0.000% | 0.000% |
| | | SH3 Share of ECAPS Series 2 | | | 0.000% | 0.000% | 0.000% | 0.000% |
| | | SH3 Share of ECAPS Series 3 | | | 8.992% | 8.992% | 8.992% | 8.992% |
| | | LBHI Payments | | | 0.00 | 0.00 | 104,121.76 | 208,243.51 |
| | | SH3 Payments | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH3 Gain/Loss | GBP | | 0 | -104,121.76 | -104,121.76 | -104,121.76 |
| | | LBHI/SLP3 pays to SH3 | | | 0.00 | 104,121.76 | 104,121.76 | 104,121.76 |
| | | SH3 pays to LBHI/SLP3 | | | 0.00 | 0.00 | 0.00 | 0.00 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss

$$(H72-(\$C\$71*H76*H69))*H80+(H73-(\$C\$71*H77*H69))*H81+(H74-(\$C\$71*H78*H69))*H82+H84+H86$$

**Worked Example 2.**

Assume First Instance Judgment of LBHI2 ranking is overturned so ranking is pari-passu, ranking at PLC is confirmed as pari-passu:

| | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|

The Scheduled Claims:

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) | | | | | |
|---|---|---|---|---|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a | | | 100,000,000.00 | 100,000,000.00 | 190,122,074.14 |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | |
|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | 8,808,862.04 | | | | |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | 6,395,713.31 | | | | |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | 5,724,780.60 | | | | |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | 261,072.28 | | | | |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | 60,064.31 | | | | |
| LBHI | 100% | 232,322.78 | 58,224.66 | 58,224.66 | | | | |
| LBHI | 100% | 183,246.18 | 45,900.69 | 45,900.69 | | | | |
| LBHI | 100% | 21,459.98 | 5,378.31 | 5,378.31 | | | | |
| LBHI | 100% | 9,220.96 | 2,310.96 | 2,310.96 | | | | |
| LBHI | 100% | 1,852.68 | 464.32 | 464.32 | | | | |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | 10,200,000.00 | | | | |
| Total | | 89,584,119.19 | 26,562,771.48 | | | | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | |
|---|---|---|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | | | 4,948,542.99 | |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | | | 205,007.68 | |
| LB Asia Holdings Ltd. | 100% | 929,730.36 | 430,527.22 | | | | 129,158.17 | |
| LBI | 100% | 533,483.94 | 247,041.68 | | | | 74,112.50 | |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | | | 6,154.79 | |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | | | 231.19 | |
| Bankhaus | 100% | 1,300.38 | 602.17 | | | | 180.65 | |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | | | 11,007,974.34 | |
| LBLIS | 100% | 51,425,443.50 | 23,813,702.33 | | | | 7,144,110.70 | |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | | | 5,994,138.31 | |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | | | 2,715,671.97 | |
| | | | | | | | 0.00 | |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | | | 4,356,418.25 | |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | | | 2,042,123.94 | |
| Total | | 278,011,327.81 | 128,745,899.62 | | | | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | | | | |
|---|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | | | | |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | 0 | 0 | 0 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | 0 | 0 | 0 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | 0 | 0 | 0 |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | | | |

| | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|
| | | Total From Payment Round | | | 31,562,771.48 | 100,000,000.00 | 138,623,825.48 | 190,122,074.14 |
| | | Cumulative Total | | | 31,562,771.48 | 131,562,771.48 | 270,186,596.96 | 460,308,671.10 |
| | | Threshold Amount | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |

"PLC Surplus" is
the Cumulative total less the threshold amount

| | | "PLC Surplus" equals | | | 0.00 | 0.00 | 109,877,925.86 | 300,000,000.00 |
|---|---|---|---|---|---|---|---|---|

| Settlement Percentage Agreed at | 16.19% | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | P1 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | P2 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | P3 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | Series 1 share of PLC Notes | | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH3 Share of ECAPS Series 1 | | | 0.000% | 0.000% | 0.000% | 0.000% |
| | | SH3 Share of ECAPS Series 2 | | | 0.000% | 0.000% | 0.000% | 0.000% |
| | | SH3 Share of ECAPS Series 3 | | | 8.992% | 8.992% | 8.992% | 8.992% |
| | | LBHI Payments | | | 0.00 | 0.00 | 0.00 | 737,477.97 |
| | | SH3 Payments | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | **SH3 Gain/Loss** | **GBP** | | 0 | 0.00 | -737,477.97 | -1,276,060.13 |
| | | LBHI/SLP3 pays to SH3 | | | 0.00 | 0.00 | 737,477.97 | 1,276,060.13 |
| | | SH3 pays to LBHI/SLP3 | | | 0.00 | 0.00 | 0.00 | 0.00 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss
(H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84-H86

**Worked Example 3.**

Assume first instance judgment of LBHI2 ranking is confirmed with LBHI2 Sub-Debts senior, ranking at PLC is overturned so PLC Sub-Notes rank senior:

|  | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|

**The Scheduled Claims:**

**LBHI2 Scheduled Claim**

| Original Claimant or Current Holder | Principal Paid to Date | Claim GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) |
|---|---|---|---|
| SLP3 | 0% | 4,219,533,988.59 | n/a |

**LBL Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | Example Payment 1 |
|---|---|---|---|---|---|
| LBHI | 100% | 35,000,000.00 | 8,808,862.04 | | 8,808,862.04 |
| LBHI | 100% | 25,000,000.00 | 6,395,713.31 | | 6,395,713.31 |
| LBHI | 100% | 22,854,649.00 | 5,724,780.60 | | 5,724,780.60 |
| LBHI | 100% | 1,041,704.90 | 261,072.28 | | 261,072.28 |
| 314 Commonwealth | 100% | 239,662.71 | 60,064.31 | | 60,064.31 |
| LBHI | 100% | 232,322.78 | 58,224.66 | | 58,224.66 |
| LBHI | 100% | 183,246.18 | 45,900.69 | | 45,900.69 |
| LBHI | 100% | 21,459.98 | 5,378.31 | | 5,378.31 |
| LBHI | 100% | 9,220.96 | 2,310.96 | | 2,310.96 |
| LBHI | 100% | 1,852.68 | 464.32 | | 464.32 |
| LBHI (Subordinated Claim) | 0% | 5,000,000.00 | 5,200,000.00 | | 10,200,000.00 |
| Total | | 89,584,119.19 | 26,562,771.48 | | |

**LBH PLC Scheduled Claims**

| Original Claimant or Current Holder | Principal Paid to Date | Admitted Value GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | Example Payment 1 |
|---|---|---|---|---|---|
| LBHI | 100% | 35,621,091.00 | 16,495,143.29 | | 16,495,143.29 |
| LB Hercules Holdings LLC | 100% | 1,462,009.50 | 683,358.95 | | 683,358.95 |
| LB Asia Holdings Ltd. | 100% | 929,730.26 | 430,527.22 | | 430,527.22 |
| LBI | 100% | 533,483.94 | 247,041.68 | | 247,041.68 |
| LBHK Funding (Cayman) No. 1 Ltd. | 100% | 44,304.55 | 20,515.96 | | 20,515.96 |
| Sunrise Finance Co. Ltd. | 100% | 1,664.16 | 770.63 | | 770.63 |
| Bankhaus | 100% | 1,300.38 | 602.17 | | 602.17 |
| LB Holdings Scottish LP | 100% | 79,238,688.47 | 36,693,247.79 | | 36,693,247.79 |
| LBUS | 100% | 51,425,443.50 | 23,813,702.33 | | 23,813,702.33 |
| LB Beta Finance Ltd. | 100% | 43,147,598.61 | 19,980,461.03 | | 19,980,461.03 |
| LB UK Holdings Ltd. | 100% | 19,547,739.03 | 9,052,239.90 | | 9,052,239.90 |
| Eldon Street Holdings Ltd (ESH) | 100% | 31,358,468.41 | 14,521,240.51 | | 14,521,240.51 |
| Thayer Properties (Jersey) Ltd (TPJL) | 100% | 14,699,806.00 | 6,807,048.18 | | 6,807,048.18 |
| Total | | 278,011,327.81 | 128,745,899.62 | | |

**LBH PLC Subordinated Claims**

| Original Claimant or Current Holder | Claimant | Deemed Claim amount GBP | Maximum Remaining Gross Statutory Interest Due (as of 1st June 2021) GBP | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|
| E1 | GP No 1 | 37,674,151.81 | n/a | | | 22,411,148.06 | 22,411,148.06 | 22,411,148.06 |
| E2 | GP No 1 | 52,931,231.82 | n/a | | | 31,487,097.02 | 31,487,097.02 | 31,487,097.02 |
| E3 | GP No 1 | 77,499,131.64 | n/a | | | 46,101,754.92 | 46,101,754.92 | 46,101,754.92 |
| LBHI | LBHI | 1,060,873,018.90 | n/a | | | | | |
| Total Subordinated Claims | | 1,228,977,534.16 | n/a | | | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |

| | | | | | Example Payment 1 | Example Payment 2 | Example Payment 3 | Example Payment 4 |
|---|---|---|---|---|---|---|---|---|
| | | Total From Payment Round | | | 160,308,671.10 | 100,000,000.00 | 100,000,000.00 | 100,000,000.00 |
| | | Cumulative Total | | | 160,308,671.10 | 260,308,671.10 | 360,308,671.10 | 460,308,671.10 |
| | | Threshold Amount | | | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 | 160,308,671.10 |

"PLC Surplus" is
the Cumulative total less the threshold amount

| | | "PLC Surplus" equals | | | 0.00 | 100,000,000.00 | 200,000,000.00 | 300,000,000.00 |
|---|---|---|---|---|---|---|---|---|
| Settlement Percentage Agreed at | 16.19% | | | | | | | |
| | | P1 | | | 0.00 | 22,411,148.06 | 44,822,296.11 | 67,233,444.17 |
| | | P2 | | | 0.00 | 31,487,097.02 | 62,974,194.05 | 94,461,291.07 |
| | | P3 | | | 0.00 | 46,101,754.92 | 92,203,509.84 | 138,305,264.76 |
| | | Series 1 share of PLC Notes | | | 22.411% | 22.411% | 22.411% | 22.411% |
| | | Series 2 share of PLC Notes | | | 31.487% | 31.487% | 31.487% | 31.487% |
| | | Series 3 share of PLC Notes | | | 46.102% | 46.102% | 46.102% | 46.102% |
| | | SH3 Share of ECAPS Series 1 | | | 0.000% | 0.000% | 0.000% | 0.000% |
| | | SH3 Share of ECAPS Series 2 | | | 0.000% | 0.000% | 0.000% | 0.000% |
| | | SH3 Share of ECAPS Series 3 | | | 8.992% | 8.992% | 8.992% | 8.992% |
| | | LBHI Payments | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH3 Payments | | | 0.00 | 0.00 | 3,474,462.18 | 6,948,924.37 |
| | | **SH3 Gain/Loss** | **GBP** | | 0.00 | 3,474,462.18 | 3,474,462.18 | 3,474,462.18 |
| | | LBHI/SLP3 pays to SH3 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SH3 pays to LBHI/SLP3 | | | 0.00 | 3,474,462.18 | 3,474,462.18 | 3,474,462.18 |

Reference example  Formula in Cell H88 for calculating the SH Gain/Loss
(H72-($C$71*H76*H69))*H80+(H73-($C$71*H77*H69))*H81+(H74-($C$71*H78*H69))*H82+H84+H86

**Clause 4.7(b) worked example of purchase of SH3 Additional ECAPS**

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | **Euros** | | **ISIN** | | | | | |
| 5 | | | Outstanding Face Value of Ecaps Notes, Series 1 | | | | | 173,825,000.00 | | XS0215349357 | | | | | |
| 6 | | | Outstanding Face Value of Ecaps Notes, Series 2 | | | | | 250,000,000.00 | | XS0229269856 | | | | | |
| 7 | | | Outstanding Face Value of Ecaps Notes, Series 3 | | | | | 373,650,000.00 | | XS0243852562 | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | SH3 Holding in Ecaps Series 1 | | | | | - | | | | | | | |
| 10 | | | SH3 Holding in Ecaps Series 2 | | | | | - | | | | | | | |
| 11 | | | SH3 Holding in Ecaps Series 3 | | | | | 33,600,000 00 | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | SH3 Share of Ecaps Series 1 | | | | | **0.000%** | | | Used in Gain/Loss Calculation | | | | |
| 14 | | | SH3 Share of Ecaps Series 2 | | | | | **0.000%** | | | Used in Gain/Loss Calculation | | | | |
| 15 | | | SH3 Share of Ecaps Series 3 | | | | | **8.992%** | | | Used in Gain/Loss Calculation | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |
| 19 | | | *If SH3 purchased an additional €2million in each of Ecaps Series 1,2 and 3, then:* | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | |
| 21 | | | SH3 Holding in Ecaps Series 1 would be | | | | | 2,000,000 00 | | | | | | | |
| 22 | | | SH3 Holding in Ecaps Series 2 would be | | | | | 2,000,000 00 | | | | | | | |
| 23 | | | SH3 Holding in Ecaps Series 3 would be | | | | | 35,600,000 00 | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | SH3 Share of Ecaps Series 1 would be | | | | | **1.151%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 26 | | | SH3 Share of Ecaps Series 2 would be | | | | | **0.800%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 27 | | | SH3 Share of Ecaps Series 3 would be | | | | | **9.528%** | | | Would be Used in Gain/Loss Calculation | | | | |
| 28 | | | | | | | | | | | | | | | |

### SCHEDULE 3
### SH3 ECAPS

Holdings of SH3 ECAPS by SH3 or any of its Affiliated Parties (other than SH1 or SH2)

| ECAPS Series | Security Description | Total Amount Held (EUR) |
|---|---|---|
| ECAPS Series 1 | Lehman UK Funding I LP FRN Perp (ISIN: XS0215349357) | 0 |
| ECAPS Series 2 | Lehman UK Funding II 5.125% 9/21/2049 (ISIN: XS0229269856) | 0 |
| ECAPS Series 3 | Lehman UK Funding III 3.875% 2/22/2049 (ISIN: XS0243852562) | 33,600,000 |
| **Total** | | **33,600,000** |

34

**SCHEDULE 4**
**ANNOUNCEMENT**

**"Lehman Brothers Holdings Inc. reaches agreement with 14.3% ECAPS holder: Deal will give King Street Capital Management, L.P. their pro-rata share of 16.19% of funds available for subordinated creditors of Lehman Brothers Holdings PLC (in administration)**

*As has been previously disclosed, Lehman Brothers Holdings Inc. ("**LBHI**") has been involved in various legal actions in U.S. and English courts pertaining to three series of securities known as the "ECAPS", which together aggregate approximately €797 million in face amount. The litigation, which is scheduled to continue with a hearing at the U.K. Court of Appeals beginning on 4 October 2021, relates principally to the relative ranking of two categories of subordinated debt at Lehman Brothers Holdings PLC ("**PLC**") and the relative ranking of two categories of subordinated debt at LB Holdings Intermediate 2 Limited ("**LBHI2**"). This hearing is the result of appeals to the orders of the English High Court on 24 July 2020, the effect of which was that the ECAPS holders would be entitled to approximately 13.67% of certain distributions made by Lehman's UK group (the "**Litigated Surplus**").*

*LBHI is pleased to announce that it has come to an agreement (documented in three settlement agreements, the "**Settlement Agreements**") with three entities managed by King Street Capital Management, L.P. ("**King Street**"), which in aggregate hold approximately 14.3% of the ECAPS, pursuant to which King Street will receive its pro rata share (relating to such holding) of 16.19% of the Litigated Surplus. Each Settlement Agreement provides for this result via top-up, to be paid directly by LBHI to King Street, in the event that the ECAPS' collections fall below this 16.19% threshold, and conversely, by remittance, to be paid by King Street to LBHI, in the event that the ECAPS' collections exceed such threshold. King Street has agreed to deposit the ECAPS subject to the Settlement Agreements into custodial accounts, the proceeds of which are pledged to LBHI to secure any such remittance obligations.*

*The agreement includes a "Most-Favoured Nation" option providing King Street the right to amend each Settlement Agreement to reflect the terms of any other settlement agreement (or agreement in principle) that LBHI enters into with another ECAPS holder prior to the last day of the above-mentioned Court of Appeals hearing which are different than the terms of the Settlement Agreements, subject to certain exceptions. The Settlement Agreements also provide that any further purchases of ECAPS made by King Street on or prior to Monday, 27 September 2021 will be subject to the terms of the Settlement Agreements on, proportionally, the same terms as King Street's current holdings.*

*Copies of the Settlement Agreements are available here [link or downloadable files to be included].*

*LBHI is willing, with respect to certain qualified institutional holders of ECAPS, subject to criteria to be determined by LBHI in its sole discretion, to enter into agreements with respect to their ECAPS on terms identical (on a proportionate basis) to those in the Settlement Agreements (including the custody and collateral provisions). If you are an institutional holder of ECAPS wishing to pursue such an arrangement, please contact Claire Hallowell Leonard of LBHI at claire.hallowell@lehmanholdings.com prior to 16 August 2021. THE FOREGOING IS NOT AN OFFER TO PURCHASE ANY SECURITIES FROM ANY HOLDER AND IS NOT AN OFFER CAPABLE OF BEING ACCEPTED.*

*In the United Kingdom this announcement is only addressed to and directed at persons who (i) have professional experience in matters relating to investments (being investment professionals falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005, as amended (the "**Financial Promotion Order**")), (ii) fall within Article 49(2)(a) to (d) ("high net worth companies, unincorporated associations, etc.") of the Financial Promotion Order, or (iii) to the extent that doing so does not prejudice the lawful distribution of this announcement to the foregoing, are persons to whom an invitation or inducement to engage in investment activity (within the meaning of section 21 of the Financial Services and Markets Act 2000) in connection with the subject matter of this announcement may otherwise lawfully be communicated or caused to be communicated (all such persons together being referred to as "relevant persons"). The foregoing announcement is only made in the United Kingdom to relevant persons and this announcement must not be acted on or relied on by anyone in the United Kingdom who is not a relevant person."*

35