UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH WASKE,

                Appellant,

    v.

LEHMAN BROTHERS HOLDINGS INC.,

                Appellee.

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

20-CV-5083 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    This appeal arises from a group of pro se litigants' novel reading of a trust prospectus that they maintain entitles them to recover from the dwindling pool of assets in the Lehman Brothers bankruptcy filed thirteen years ago. These individuals own shares of trusts that in turn own Lehman Brothers Holdings Inc. ("LBHI") subordinated debt. For nearly a decade, that subordinated debt has ranked behind billions of dollars owed to creditors, but Appellant Joseph Waske and others argue their interpretation of the trusts' guarantees entitles them to leapfrog ahead of countless unpaid creditors. The bankruptcy court (Chapman, J), explaining that the time for such arguments had "long since passed," denied all of Mr. Waske's motions.[1] Mr. Waske now appeals that decision, and also alleges that the bankruptcy court violated his due process rights and was biased against him. For the reasons that follow, the bankruptcy court's decision is affirmed, and Mr. Waske's appeal is denied.

## BACKGROUND[2]

    In the years preceding its bankruptcy, LBHI borrowed billions of dollars of subordinated debt, some of which was purchased by trusts that issued securities based on that debt. The dispute here

---

[1] The bankruptcy court also denied substantively similar requests by Mr. Rex Wu six months before the events of this case. *See* Dkt. 5-2, A702–A736 (transcript of Wu hearing, denying similar motion).
[2] The Court recites only the history of the Lehman bankruptcy that is relevant to the appeal.

concerns securities issued by four trusts: Lehman Brothers Holdings Capital Trusts III, IV, V, and VI. *See* Appellant's Statement of Issues, Dkt. 2 ¶¶ 6, 12–14 ("Stmt. Issues"). Each trust's only asset was a different issuance of LBHI subordinated debt, and the trusts would make payments to security holders only if LBHI made a payment on the underlying debt. *See In re Lehman Brothers Holdings Inc., et al.*, No. 08-13555, Dkt. 20107, Exs. B–G (Bankr. S.D.N.Y. Sept. 16, 2011) (hereinafter "Lehman Dkt."). Mr. Waske now alleges the trust securities rank higher than the subordinated debt held by the trusts, and that as a result, he, as a security holder, is entitled to payment.[3]

LBHI filed for bankruptcy in September 2008. In July 2009, the bankruptcy court designated September 22, 2009 as the deadline to file proofs of claim (the "Bar Date"). Lehman Dkt. 4271 at 2. The indenture trustees for each trust filed timely proofs of claim on behalf of the trusts and the securities holders. *See* App. Part II to Appellee's Brief, Dkt. 5-2 at A738–A764 ("App. 2"). These timely proofs of claim amounted to over one billion dollars in allowed claims and encompassed the interests of the beneficial owners of the debt. The bankruptcy court subsequently rejected as duplicative hundreds of claims based on the same subordinated debt because those claims were already represented by the claims filed by the indenture trustees.[4] In December 2011, the bankruptcy court entered an order confirming the Chapter 11 Plan ("the Plan"). *See* Lehman Dkt. 23023. Under the Plan, claims based on LBHI's subordinated debt were classified in Classes 10A, 10B, and 10C. *See* Lehman Dkt. 23023-1 at 17–18, 41–42. In the order confirming the Plan, the bankruptcy court also prohibited filing or amending proofs of claim without "the authority of the Court." *See* Lehman Dkt. 23023 at 60.

---

[3] Rex Wu is appealing the same ruling in a separate case before this Court. *See Wu v. Lehman Brothers Holdings Inc.*, No. 20 Civ. 5823.

[4] *See, e.g.*, Lehman Dkt. Nos. 12671, 12676, 12835, 12893 (orders disallowing claims as duplicative of indenture trustee claims); *see also* Lehman Dkt. 20107 (Plan Administrator's objection to claims related to trust securities issued by Capital Trusts III, IV, V, VI).

2

## PROCEDURAL HISTORY

Mr. Waske alleges that the trustees failed to enforce the original "covenants" set forth in the prospectuses of Capital Trusts III, IV, V, and VI, and that the equity issued by the trusts is actually in parity with preferred equity of LBHI affiliates who received payments under the Plan. *See, e.g.,* Dkt. 4, 12–13. He filed three motions in the bankruptcy court seeking to vindicate this guarantee: (1) a Motion to Reclassify, Lehman Dkt. 60337; (2) a Motion to Reserve for Motion to Reclassify, Lehman Dkt. 60448; and (3) a Motion for Summary Judgment, Lehman Dkt. 60484. The Motion to Reclassify and Motion to Reserve contained the substantive arguments regarding classification of his claims, while the Motion for Summary Judgment amounted to a request that the substantive motions be deemed unopposed and granted because the Plan Administrator had not yet responded.

On March 24, 2020, the Plan Administrator filed an objection to Mr. Waske's motions. Lehman Dkt. 60482. In April 2020, the bankruptcy court scheduled a hearing for June 3, 2020 on the Motion to Reserve for the Motion to Reclassify and the Motion for Summary Judgment, but not the Motion to Reclassify itself. Lehman Dkt. 60498. The notice of hearing required any objections to be submitted by May 18, 2020. *Id*. Five days after the notice of hearing, Mr. Waske wrote an email to the court stating he only wanted the hearing to address the Motion for Summary Judgment, not the Motion to Reserve for the Motion to Reclassify. Lehman Dkt. 60507. The court denied Mr. Waske's request. Lehman Dkt. 60508. On May 18, 2020, the Plan Administrator timely filed another objection, specifically addressing Mr. Waske's Motion for Summary Judgment. Lehman Dkt. 60641.

At the June 2020 hearing, the court considered all three motions, not just the Motion for Summary Judgment and Motion to Reserve that were listed on the agenda. *See generally*, App. 2 A623–A646 ("Hearing"). The court explained that it held a single hearing "to dispose of all three motions," because they are "all related" and "all seeking, in essence, the same relief." Hearing 12:19–23. Mr. Waske likewise stated that "all of my motions, essentially, center around the prospectus contract language."

3

Hearing 6:6–10. Following a hearing at which Mr. Waske, Rex Wu, and LBHI were given opportunities to be heard, the court denied each of Mr. Waske's motions and relief sought by the joinders. *See* Lehman Dkt. 60678.

Mr. Waske now appeals the bankruptcy court's rulings on each of the motions. Dkt. 1. In addition to legal error, Mr. Waske objects to the manner in which the court conducted the hearing, which he characterizes as amounting to a due process violation. *See* Stmt. Issues ¶¶ 1–11.

## STANDARD OF REVIEW

District courts have appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts under 28 U.S.C. § 158(a). "A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*." *Davidson v. AMR Corp.*, 566 B.R. 657, 663 (S.D.N.Y. 2017).[5] "Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006). A bankruptcy court abuses its discretion where its ruling is based on an error of law or clearly erroneous finding of fact, or where the decision "cannot be located within the range of permissible decisions." *In re Dana Corp.*, 574 F.3d 129, 145 (2d Cir. 2009). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Margulies v. Hough (In re Margulies)*, 566 B.R. 318, 328 (S.D.N.Y. 2017). "A district court should not overturn a bankruptcy court decision if an error is harmless, meaning the error is not inconsistent with substantial justice or does not affect the substantial rights of the parties." *Morse v. Rescap Borrower Claims Trust*, No. 14 Civ. 5800 (GHW), 2015 WL 353931, at *3 (S.D.N.Y. Jan. 26, 2015).

Throughout the adversarial process, a party appearing without counsel is typically afforded leniency. Pleadings or motions submitted by pro se litigants "must be construed liberally," and read

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

"to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also In re Motor Liquidation Co.*, No. 11 Civ. 7893 (DLC), 2012 WL 398640, at *2 (S.D.N.Y. Feb. 7, 2012) (applying liberal reading principle to pro se bankruptcy appellant). It is nonetheless well established that pro se litigants, including litigants in bankruptcy proceedings, are "required to learn and comply with procedural rules." *In re Truong*, 388 B.R. 43, 45 (S.D.N.Y. 2008) (citing *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995)).

## DISCUSSION

The Court will address each of Mr. Waske's three motions in turn, as well as his allegations related to due process violations and judicial bias.

### I. Motion to Reclassify

The Motion to Reclassify sought to enforce a guarantee of Lehman Brothers Holdings Capital Trusts III, IV, V, and VI that Mr. Waske alleged was not properly enforced by the trustees who filed the timely claims. Lehman Dkt. 60337 at 1–2. Mr. Waske argued that based on language in the prospectuses for these trusts, he has standing to enforce the guarantee as if he were the trustee, and that the trustee failed trust securities holders by not raising the issue earlier. *Id.* at 3–6. Mr. Waske contended that if properly understood, his trust equities are in parity with "LBIE senior preferred shares A or B." *Id.* at 3–4. He thus maintained that this error should be rectified by a reclassification of the shares of the Capital Trusts, moving them from Class 10B to Class 4. *Id.* at 4.

The bankruptcy court rejected Mr. Waske's claims due to his lack of standing to modify the plan, and the untimeliness of his claims.

#### A. Standing

The bankruptcy court rightly held that Mr. Waske did not have standing to modify the Plan. *See* Hearing at 21:2–22:3 ("Mr. Waske is not a plan proponent and, indeed, has no standing to seek to modify the Lehman Plan at all, let alone at this late date."). Although Mr. Waske termed his motion as one to

5

"reclassify," because Mr. Waske sought to substantively modify the established payment rights, the court correctly analyzed his request under 11 U.S.C. § 1127(b). *See In re Indu Craft Inc.*, No. 11 Civ. 5996 (JMF), 2012 WL 3070387, at *9 (S.D.N.Y. July 27, 2012) *aff'd,* 580 F. App'x 33 (2d Cir. 2014) ("It is well established that Section 1127(b) of the Bankruptcy Code provides the sole means for modification of [a] plan of reorganization after it has been confirmed."); *see also In re Joint Eastern & Southern District Asbestos Litigation*, 982 F.2d 721, 748 (2d Cir.1992), *as modified*, 993 F.2d 7 (2d Cir.1993) (finding parties could not avoid restrictions of 1127(b) where proposed change altered substantive rights). Confirmation of a plan is the equivalent of a final judgment in civil litigation, and Section 1127(b) enforces this finality. *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) (citing 7 Lawrence P. King, *et al.*, *Collier on Bankruptcy* ¶ 1127.04 [3], at 1127–9 (15th rev. ed. 2000)) ("Collier"). Under Section 1127(b), only plan proponents or the reorganized debtor can modify the plan, and they may do so with court approval "only if circumstances warrant such modification." *See* 11 U.S.C. § 1127(b); *see also In re Boylan Int'l, Ltd.*, 452 B.R. 43, 48 (Bankr. S.D.N.Y. 2011) ("[O]nly the proponent of a plan or the reorganized debtor may modify a confirmed plan."). The bankruptcy court also correctly concluded that even parties with standing are not permitted to modify the plan if doing so would upset the expectations of creditors. *See id.* at 50 (citing 7 Collier ¶ 1127.03 [4]); *see also* Hearing 21:10–19.

Mr. Waske, who did not participate in any capacity in the formation of the Plan, is not a plan proponent and does not point to any evidence that would imbue him with standing to reclassify the claims.[6] Even if he were a plan proponent, Mr. Waske's effort to reclassify certain Class 10B claims to

---

[6] Mr. Waske cites to the following language in the prospectus that he maintains gives him standing: "If the guarantee trustee fails to enforce the guarantee trustee's rights under the guarantee, any holder of preferred securities may directly sue Lehman Brothers Holdings to enforce the guarantee trustee's rights under the guarantee." Lehman Dkt. 60542-1 at 62; *See also*, Stmt. Issues ¶ 9 ("Joseph Waske and the Joinders have the standing and rights to file a lawsuit against LBHI to enforce the guarantee as if they are the Trustee upon the Trustee failing to enforce the Guarantee."). This language in the trust

6

Class 4 almost ten years after the Plan was finalized would upset the expectations of creditors.[7]

Accordingly, there was no error in the bankruptcy court's legal analysis, nor were there any clearly erroneous findings of fact.

    **B.**    **Timeliness of the Claim**

The bankruptcy court devoted the majority of its oral ruling to the untimeliness of Mr. Waske's claim. As the court explained:

> The time for seeking this relief has long been past. The bar date for filing claims in the Lehman Chapter 11 cases was September 22, 2009. Lehman Dkt. 4271. Indeed, the indentured trustees of Capital Trust Three, Four, Five and Six, timely filed global proofs of claim on behalf of the trust. *See* Claim Numbers 21805, 22122, 22123 and 67753. These claims were classified in LBHI Class 10B under the Lehman plan…This Court entered an order confirming the Lehman Plan on December 6, 2011. Lehman Dkt. 23023.

Hearing 17:2–17 (citations formatted).[8] The court further explained the significance of the Bar Date:

> Bankruptcy Rule 3030(c)(3)[9] requires that the bankruptcy court establish a deadline for filing proofs of claim in a Chapter 11 case. Claims filed after the bar date shall be disallowed. A bar date is "critically important to the administration of a Chapter 11 case as it is intended to be a mechanism providing the debtor and its creditors with finality." *See Enron Creditors Recovery Corporation*, 370 B.R. 90, 94 (S.D.N.Y. 2007).

---

prospectus, however, does not change whether Mr. Waske was a plan proponent, nor does it affect the timeliness of his claims.

[7] Not only was the Plan confirmed in 2011, but by 2014, it was apparent that the securities issued by Capital Trusts III, IV, V, and VI would not receive payment from LBHI. *See* "LBHI, As Plan Administrator, Response to Questions Received from Creditors," (February 26, 2014) available at: https://document.epiq11.com/document/getdocumentbycode/?docId=2465387&projectCode=LBH&source =dm.

[8] Mr. Waske repeatedly asserted that he was not seeking to file a "late claim," but merely seeking to "reclassify" the "fractional shares" of the Capital Trusts that he owned. *See, e.g.*, Lehman Dkt. 60403, ¶¶ 4–18. As with Section 1127(b), the requirements of the Bar Date cannot be avoided by titling a motion as one to reclassify rather than a new, untimely claim. It is, rather, the substance of the relief requested that controls. *See Matter of All. Operating Corp.*, 60 F.3d 1174, 1175 (5th Cir. 1995) ("Amendments to proofs of claim that change the nature of the claim from an unsecured status to a priority status set forth a new claim."). The bankruptcy court properly analyzed Mr. Waske's motion, which sought to dramatically alter the status of the claim, as a request to file a late claim.

[9] The Court presumes this is a reference to Fed. R. Bankr. P. 3003(c)(3), not 3030 (which does not exist). Whether this was an error in the transcript or not is immaterial, as the error did not affect any substantial rights.

7

Hearing 18:17–25 (citations formatted).

A bankruptcy court's decision to deny an untimely proof of claim is reviewed for abuse of discretion. *See, e.g.*, *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) ("Discretion of a bankruptcy court to allow or disallow late-filed claims is well-established."). As stated previously, only decisions based on an error of law, a clearly erroneous finding of fact, or those outside the realm of permissible decisions will be overturned under this standard. *In re Dana Corp.*, 574 F.3d at 145. That the Lehman Brothers Chapter 11 case is now in its second decade highlights the importance of this deferential standard. Judge Chapman is steeped in the procedure, history, and facts of this bankruptcy, and her knowledge and experience properly informed her well-reasoned choices here regarding how to schedule, hear, and resolve Mr. Waske's untimely claims.[10]

The Bar Date for claims in this case was September 22, 2009. Lehman Dkt. 4271. The parties responsible for the subordinated debt held by the trusts at issue here filed timely proofs of claim and had those claims adjudicated. *See* App. 2 at A738–A764. Bankruptcy Rule 3003(c)(3) requires a deadline for proofs of claim in a Chapter 11 case because achieving finality for both the debtors and creditors is critical to the bankruptcy process. *See* Fed. R. Bankr. P. 3003(c)(3). The bankruptcy court explained these concepts in its denial of Mr. Waske's motions, which came more than ten years after the Bar Date. Accordingly, the bankruptcy court did not abuse its discretion in denying these untimely claims.

## II.  Motion to Reserve

Roughly a month after filing the Motion to Reclassify, Mr. Waske filed a "Motion to Reserve for Motion to Reclassify," which sought to set aside $71 million dollars to pay his claim. Lehman Dkt. 60448 at 10. Read to make its strongest argument, Mr. Waske's Motion to Reserve requested that LBHI

---

[10] Judge Chapman had previously ruled on a prior set of motions in which Mr. Wu made substantively the same arguments based on the same prospectuses of the same trust securities. *See* App. 2, A702–A736 (transcript of Wu hearing, denying similar motion).

8

establish a reserve under Section 8.4 of the Plan.[11] *See* Lehman Dkt. 23023-1 at 88–89. Section 8.4 allows for funds to be set aside for "disputed claims" that may become allowed claims. *Id.* Given that the court denied the Motion to Reclassify, there were no disputed claims, and accordingly there was no error in denying the Motion to Reserve.

### III.  Motion for Summary Judgment

Mr. Waske filed his Motion for Summary Judgment a month after filing his Motion to Reserve. *See* Lehman Dkt. 60484. At the time he filed the motion, it had been more than 21 days since the Plan Administrator had been served with his Motion to Reserve, and on that basis, Mr. Waske requested the bankruptcy court grant the motions to reclassify and reserve. *See id.* In making this argument, Mr. Waske relied on the pleading deadlines set forth in Fed. R. Civ. P. 12. *Id*. at 2. Briefing schedules in the underlying bankruptcy, however, have been governed by the bankruptcy court's Case Management Order since 2010. *See* Lehman Dkt. 9635. That scheduling order provides that LBHI may file any objection seven days before the scheduled hearing or at any other date ordered by the court. *See id.* at ¶ 32. A month after Mr. Waske filed his Motion for Summary Judgment, the bankruptcy court set a hearing date in June 2020 and directed that all objections be filed by May 18, 2020. *See* Lehman Dkt. 60498. This order dictated the deadlines LBHI was required to meet. LBHI had filed an objection on March 24, 2020, and filed another objection on May 18, both of which were timely.[12]

Accordingly, the bankruptcy court did not commit legal error or abuse its discretion by considering the objections and denying the Motion for Summary Judgment.

---

[11] Mr. Waske's initial motion stated that there was no provision governing a reserve in the Plan, and instead cited a series of provisions regarding the court's inherent powers. Lehman Dkt. 60448 at 1 (citing Section 13.10 of the Plan and 11 U.S.C. §§ 105(a), 502(c) and 1142(b) as authority for the funds to be set aside).

[12] Even if the objections were untimely, the bankruptcy court has the discretion to consider a late motion or objection. Judge Chapman did not abuse her discretion by considering the objection. *See In re Fletcher Int'l, Ltd.*, 536 B.R. at 557.

9

IV.     **Agenda of Hearing, Due Process, and Bias**

In addition to appealing the bankruptcy court's decision on the merits, Mr. Waske also raised the following issues regarding perceived unfairness of the hearing:

- He and others were not given adequate notice of the motions on the agenda at the hearing. Stmt. Issues ¶ 2 (stating Mr. Waske was not "served on the hearing agenda with the Motion to Reclassify on it."). The bankruptcy court heard all three motions together, even though Mr. Waske requested the hearing only resolve the Motion for Summary Judgment. *Id.* ¶ 1. Furthermore, the bankruptcy court devoted the majority of the hearing to arguments regarding the Motion to Reclassify, not the two motions that were on the notice of hearing. *Id.* ¶ 3.
- The bankruptcy court refused to hear argument on the "Neuberger Berman" issue. *Id.* ¶ 4, 11.

Mr. Waske further contends that the order issued following the hearing was invalid due to these violations of Waske's due process rights. *Id.* ¶ 7. He further argues that Judge Chapman was biased against him and that the case should be thus remanded to a different judge. *Id.* ¶ 4, 8. There is no evidence in the record from which the Court can conclude that Judge Chapman was biased or that her handling of this case was at all improper.

A bankruptcy court, like a district court, has wide latitude in determining how to manage its docket most efficiently. *See In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 560 (S.D.N.Y. 2015), *aff'd sub nom.*, 661 F. App'x 124 (2d Cir. 2016); *see also* 11 U.S.C. § 105(d). Case management decisions are thus reviewed for abuse of discretion.[13] *Id.*

Turning to the issues raised, Mr. Waske first contends he was not given adequate notice of the issues that would be argued at the hearing. The notice of hearing issued in April listed the Motion for Summary Judgment and the Motion to Reserve as the motions to be argued at the June hearing. Lehman Dkt. 60498. Mr. Waske requested that the Court amend the agenda such that the hearing only concerned

---

[13] The oral argument Mr. Waske objects to was itself not obligatory; indeed, to the extent he was granted an opportunity for oral argument at all, that was within the court's discretion. *See Bernheim v. Damon & Morey, LLP*, No. 06-3386-BK (LEAD), 2007 WL 1858292, at *2 (2d Cir. June 28, 2007) (summary order) ("Bankruptcy judges enjoy broad discretion as to the type of hearing to conduct.").

10

Motion for Summary Judgment. *See* Lehman Dkt. 60507. The court denied this request. Lehman Dkt. 60508. At the hearing, the bankruptcy court heard argument and ruled on not only the two motions previously listed in the notice of hearing, but also on Mr. Waske's Motion to Reclassify, which was *not* mentioned in the notice of hearing. Mr. Waske alleges that this deprived him of time to prepare, and that the lack of notice was especially harmful because the majority of the hearing concerned the Motion to Reclassify. The Court disagrees. Even if it did not list every motion that would be discussed at the hearing, the bankruptcy court's notice here was adequate. *See Bernheim v. Damon & Morey, LLP*, No. 06-3386-BK (LEAD), 2007 WL 1858292, at *2 (2d Cir. June 28, 2007) (stating that bankruptcy judges have broad discretion to determine the "notice and hearing" appropriate to a particular case). Given that all three motions are related and concern the same relief, and given that the notice of hearing indicated that the substantive legal issues would be discussed, the bankruptcy court did not abuse its discretion in deciding all three motions at the June hearing.

Mr. Waske next alleges that he was prejudiced by the bankruptcy court's refusal to hear argument on the "Neuberger Berman Issue." As with the decision to hold oral argument at all, a court's decision to hear particular arguments is entitled to great deference, and it was not an abuse of discretion for Judge Chapman to refuse to hear further argument on the "Neuberger Berman Issue" from Mr. Wu, as it was adequately described in Mr. Waske's briefs. *See, e.g.*, Lehman Dkt. 60542, ¶ 4, 7–9. Indeed, the manner in which the bankruptcy court chose to limit argument reflected its considerable existing knowledge.

Although Mr. Waske takes issue with how the bankruptcy court handled his case, nothing the court did in adjudicating Mr. Waske's motions constitutes a deprivation of due process. Due process is satisfied when a litigant is given an opportunity to be heard. *See In re Gordon*, 577 B.R. 38, 50 (S.D.N.Y. 2017) (finding due process was not violated where litigant was given "an opportunity to be heard by filing opposition papers and presenting oral argument at the hearing"); *see also In re AMR Corp.*, 490 B.R. 470, 479–80 (S.D.N.Y. 2013) (finding no violation of due process where the party was heard based

11

on motions and appearance at a hearing). It is undisputed that Mr. Waske was given the opportunity to both argue his case in his motion papers and be heard at the hearing.

Finally, the allegations of bias are cursory, unsupported, and entirely without merit. Given a generous reading, Mr. Waske alleges bias based on (1) his belief that *ex parte* communications took place between the Plan Administrator and Judge Chapman, which led to the decision to consider all three motions at one hearing, and (2) the judge's adverse rulings against him and the other pro se litigants over this trust securities issue and on his Motion for Summary Judugment. *See* Stmt. Issues ¶ 4, 8. Such baseless accusations of judicial bias are routinely dismissed. *See In re Uppal*, No. 17-AP-01026 (CGM), 2018 WL 4521215, at *4 (S.D.N.Y. Sept. 20, 2018) (dismissing "unsupported allegations" of due process violations and bias as frivolous); *In re Amelio*, 857 F. App'x 665, 668 (2d Cir. 2021) (affirming dismissal of motions for recusal based on alleged collusion and adverse rulings).

The record does not allege any actual *ex parte* communications. Instead, Mr. Waske's allegations require an inference from the following set of circumstances: he initially requested hearing only on the summary judgment motion, not on the merits, *see* Lehman Dkt. 60507, and the bankruptcy court's notice of hearing "added the Motion to Reserve for the Motion to Reclassify over [his] objection," Stmt. Issues ¶ 4. Mr. Waske states this was done "to aid the Plan Administrator by giving the Plan Administrator a legal avenue to defeat the Motion for Summary Judgment." *Id.*

Mr. Waske infers that some *ex parte* dealings must have taken place based on this sequence of events. This conclusion is unsupported by the evidence—the record as a whole demonstrates that Judge Chapman chose to decide all three of Mr. Waske's motions at the same time for purposes of judicial economy, not because it was requested by the Plan Administrator. Moreover, the allegations rely on the faulty premise that the Plan Administrator needed judicial intervention to timely oppose Mr. Waske's motions. But, the Plan Administrator had already timely filed an objection to Mr. Waske's motions. While Mr. Waske's arguments must be liberally construed, the Court need not accept as true his

12

"conclusions of law or unwarranted deductions of fact." *In re Motors Liquidation Co.*, No. 12 Civ. 4138 (RA), 2013 WL 143805, at *2 (S.D.N.Y. Jan. 10, 2013). There is thus no basis to conclude any *ex parte* communications took place.

Even assuming there were *ex parte* communications in violation of Fed. R. Bankr. P. 9003(a), they were harmless. The only prejudice alleged by Mr. Waske is a lack of time to prepare for argument on the Motion to Reclassify. While this can constitute prejudice under some circumstances, here, Mr. Waske had several months to prepare and was on notice that the substance of his motions would be discussed at this hearing. Accordingly, he suffered no prejudice.

Furthermore, neither the scheduling of the case nor the decisions exhibit any bias. As discussed above, hearing three motions in the same case on the same substantive issue was plainly sensible, and it is well established that "[d]isagreement with a litigant's legal position is not an indication of improper bias on the part of the Court." *Yi Sun v. New York City Police Dep't*, No. 18 Civ. 11002 (LTS) (SN), 2020 WL 6820824, at *1 (S.D.N.Y. Oct. 9, 2020); *see also Liteky v. U.S.*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). There is no evidence that Judge Chapman's rulings were motivated by bias; rather the evidence suggests that they were the product solely of her evaluation of the merits and timeliness of Mr. Waske's motions.

Accordingly, Mr. Waske's request that the decision be reversed due to "due process violations" and remanded to another judge is denied.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is affirmed, and Mr. Waske's appeal is denied in its entirety. The Clerk of Court is respectfully directed to close this case.

LBHI is directed to serve a copy of this order on Mr. Waske and to file proof of service on the docket.

SO ORDERED.

Dated:   September 30, 2021
         New York, New York

RONNIE ABRAMS
United States District Judge