WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Adam M. Bialek
Brant D. Kuehn
Christopher J. Lucht

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |

**REPLY IN FURTHER SUPPORT OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR LEAVE TO AMEND AND EXTEND THE SCOPE OF THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................3

    A.   The Court Can Rule on the Plan Administrator's Motion While Suburban's Motion to Dismiss is Pending ...........................................................................................3

        i.   The Plan Administrator Has Standing to Assert Claims Against Suburban .............3

        ii.   Legal Precedent Does Not Require That Suburban's Motion to Dismiss Be Decided Before Binding Suburban to the Second Amended ADR Order ............4

        iii.   Suburban's Efficiency/Mootness Argument is Not Compelling..............................6

        iv.   Seeking Mandatory Mediation is Not Coercive .......................................................7

    B.   The Plan Administrator's Motion is Timely ...................................................................8

    C.   The Plan Administrator's Mediation Efforts and Settlements with Others are Relevant....................................................................................................11

    D.   The Plan Administrator is Not Seeking to Compel Suburban to Mediate the GSE Claims a Second Time ...............................................................................12

    E.   The Court has Authority to Grant the Motion Pursuant to Rule 9024 and Section 105(a) ................................................................................................13

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                          **Page(s)**

*Cotto v. Fannie Mae*
   2021 WL 4340668 (S.D.N.Y. Sept. 22, 2021) .................................................................... 5, 6

*Bagbag v. Summa Capital Corp.*
   (In re Bagbag), 2020 Bankr. LEXIS 709 (Bankr. S.D.N.Y. March 17, 2020) .................................. 13

*Balthazar Mgmt., LLC v. Beale St. Blues Co.*,
   2020 U.S. Dist. LEXIS 20158 (S.D. Fla.2020) ................................................................... 10

*Cacchillo v. Insmed, Inc.*,
   638 F.3d 401 (2d Cir. 2011) ................................................................................................. 4

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*,
   986 F. Supp. 2d 574 (W.D. Pa. 2013) ........................................................................ 9, 12, 13

*Dan River Inc. v. Crown Crafts, Inc.*,
   1999 U.S. Dist. LEXIS 6940 (S.D.N.Y. 1999) ................................................................. 12

*In re A.T. Reynolds & Sons, Inc.*,
   452 B.R. 374 (S.D.N.Y. 2011) ........................................................................................... 7

*In re Melgar*,
   2010 U.S. Dist. LEXIS 115476 (S.D. Fla. 2010) ............................................................... 13

*In re NII Holdings, Inc.*,
   536 B.R. 61 (Bankr. S.D.N.Y. 2015) ................................................................................. 10

*In re Sosa*,
   443 B.R. 263 (Bankr. D.R.I. 2011) .................................................................................... 14

*Johnson v. Bon-Ton Dep't Stores, Inc.*,
   2006 U.S. Dist. LEXIS 96744 (W.D. N.Y. 2006) ............................................................ 10

*Lehman Brothers Holdings Inc. v. 1st Advantage Mortgage, LLC.*,
   594 B.R. 33 (Bankr. S.D.N.Y. 2018) ..................................................................... 8, 11, 12

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) .................................................................................................. 4

*Matter of Sargeant Farms, Inc.*,
   224 B.R. 842 (Bankr. M.D. Fla. 1998) ............................................................................. 14

*Monbo v. Nathan, No. 18-cv-5930*,
   2021 WL 2530710 (E.D.N.Y. June 21, 2021) ..................................................................... 5

*New Eng. Dairies, Inc. v. Dairy Mart Conv. Stores, Inc.*
   (In re Dairy Mart Conv. Stores, Inc.), 351 F.3d 86 (2d Cir. 2003) ................................... 14

*Raines v. Byrd*,
  521 U.S. 811 (1997) .................................................................................................................. 5

*ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.*,
  2010 U.S. Dist. LEXIS 83011 (E.D. Tex. 2010) ..................................................................... 9

*Small v. New York*,
  2015 U.S. Dist. LEXIS, 144783, *3 (W.D.N.Y. 2015) ........................................................... 7

*Sunny v. Biden*,
  2021 U.S. Dist. LEXIS 220185 (E.D.N.Y. Nov. 15, 2021) ..................................................... 5

*Tocci v. Antioch Univ.*,
  967 F. Supp. 2d 1176 (S.D. Ohio 2013) .................................................................................. 9

*U.S. E. Telecomms., Inc. v. U.S. W. Info. Sys., Inc.*,
  15 F.3d 261 (2d Cir. 1994) ...................................................................................................... 5

*Underdue v. Wells Fargo Bank, N.A.*,
  2020 U.S. Dist. LEXIS 236827 (W.D.N.C. 2020) ................................................................ 10

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................................ 14

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, for LBHI and certain of its subsidiaries, submits this Reply in response to the Memorandum of Law of Suburban Mortgage, Inc. in Opposition to Motion of Lehman Brothers Holdings Inc. for Leave to Amend and Extend the Scope of the Alternative Dispute Resolution Procedures Order to Suburban Mortgage Inc. and to Compel Suburban Mortgage to Mediate (the "Opposition" or "Opp.") and in Further Support of its Motion for Leave to Amend and Extend the Scope of the Alternative Dispute Resolution Procedures Orders for Indemnification Claims of the Debtors against Mortgage Loan Sellers (the "Reply").

## PRELIMINARY STATEMENT

1.  Suburban's refusal to mediate is puzzling. No other defendant mortgage originator has refused to mediate in the coordinated actions. The Plan Administrator offered special mediation terms to Suburban such as (i) permitting Suburban to select the mediator, (ii) agreeing to pay the mediator fees; and (iii) agreeing to mediate remotely. The Court-ordered ADR Procedures have been wildly successful. The Plan Administrator has successfully resolved over 94% of the number of active, coordinated cases, representing over 96% of the damages sought. Suburban waives no defenses by participating in the mediation. It is undisputed that requiring Suburban to participate in mediation does not violate Suburban's right to due process because the mediation is non-binding, and the ADR Order explicitly states that the Seller/Defendants cannot be forced to accept any specific settlement or compromise.

2.  Instead of simply agreeing that a Suburban businessperson and counsel meet with the Plan Administrator and its counsel and a mediator via videoconference, Suburban opposes this Motion raising several incorrect legal arguments. The Plan Administrator briefly explains why Suburban's main arguments are incorrect:

3.  *First,* Suburban argues that this Court cannot order mediation while its motion to dismiss is pending. Taken to its logical conclusion, Suburban argues that the Court can make no rulings on any subject until it first rules on any motion regarding standing or jurisdiction. Not so. This Court has inherent power to, among other things, control its own docket, continue discovery, or order mediation at any time, including when motions to dismiss are pending. While other defendants that joined Suburban's Motion to Dismiss initially hesitated to mediate, all but one of those defendants resolved their cases through mediation or business-to-business communications.

4.  *Second*, Suburban contends that it is more "efficient" for the Court to decide its motion to dismiss first because if granted, it could prevent Suburban, the Court, and even the Plan Administrator from expending more resources on this case. This argument is unpersuasive. Even if Suburban prevails, which it will not, the Plan Administrator could either litigate against Suburban in another jurisdiction or appeal, either of which would be costly, time consuming, and wasteful if the case could have been resolved through mediation. If the Plan Administrator prevails, the Court will have wasted time and resources on deciding and writing the decision (which is not immediately appealable), and both parties will continue to expend time and resources.

5.  *Third*, Suburban argues that compelling mediation would be improperly "coercive." However, the cases on which Suburban relies explain the type of conduct that is considered "coercive" – such as requiring parties to settle or to make a settlement offer. Neither is required here. The proposed Second Amended ADR order expressly states the opposite.

6.  *Finally*, Suburban claims the Plan Administrator's Motion is untimely and that mediating at this late stage in the litigation is inefficient. The Standing Order does not constrain a bankruptcy judge from assigning a matter to mediation upon its own motion. Thus, even if the Court agrees that a timing requirement exists, the Court remains free to assign the matter to mediation. Suburban's argument that it is too late to mediate in this litigation is self-serving nonsense. The Plan

2

Administrator has successfully mediated cases with countless other originator defendants in the exact same procedural posture. Indeed, the Plan Administrator resolved one case through mediation just this week. As cited below, courts throughout the country order mediation at the beginning of cases, in discovery, before trial, and even during trial.

7. At bottom, it is puzzling why Suburban has strenuously fought to avoid mediation, which has been wildly successful and where the Plan Administrator has offered to pay for the mediator. The Plan Administrator respectfully requests this Court Order Suburban and its counsel to appear at a mediation with the Plan Administrator and its counsel.

## ARGUMENT

### A. The Court Can Rule on the Plan Administrator's Motion While Suburban's Motion to Dismiss is Pending

8. Suburban argues that it should not be compelled to mediate until its pending motion to dismiss for lack of standing has been decided for three reasons: (i) precedent requires that a plaintiff's standing be determined before the court takes any other case-related action; (ii) it is more efficient to decide its motion to dismiss first; and (iii) compelling mediation while its motion to dismiss is pending is improperly "coercive." *See* Opp. at 3-4, 11-14 and 15-17. The Court should reject each of these arguments for the reasons explained below.

   *i. The Plan Administrator Has Standing to Assert Claims Against Suburban*

9. As an initial matter, and as set forth in the Plan Administrator's Memorandum of Law in Opposition to Certain Defendants' Omnibus Motion to Dismiss RMBS Complaints Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Standing [Case No. 16-01019, Dkt. No. 1236] ("Opposition to MTD"), the Plan Administrator has standing to assert its claims against Suburban. In short, Suburban contended that the Plan Administrator lacks standing because it assigned its indemnification rights as to the At-Issue Loans to the RMBS Trusts. This argument

3

fundamentally misunderstands the securitization of the At-Issue Loans. Suburban failed to distinguish between Transferor Loans and Covered Loans. As this Court knows, only Covered Loans, not Transferor Loans, were at issue in the Estimation Proceeding. The Plan Administrator retained indemnification rights for the Covered Loans, which include the At-Issue Loans Suburban sold to Lehman Brothers Bank. The distinction between the treatment of Transferor Loans, which do not encompass the At-Issue Loans, and Covered Loans, which do, is apparent from the sample documents the Defendants attached as exhibits to their motion to dismiss. Suburban, however, ignored, mischaracterized, or simply did not understand these documents. *See* Opposition to Motion to Dismiss at 25-31 (Ad. Pro. No. 18-01825; Dkt. 15).

        ii.    *Legal Precedent Does Not Require That Suburban's Motion to Dismiss Be Decided Before Binding Suburban to the Second Amended ADR Order*

10.    Suburban claims that it is a "constitutional necessity for LBHI to establish standing and for SMI's fact-based challenge to LBHI's standing to be resolved before the Court may consider the instant motion." Opp. at 3. This argument fails because none of Suburban's cited cases address the question of whether the Court is legally required to decide a pending motion to dismiss based on standing before it decides an ADR or other non-merits-based motion. Instead, Suburban's cited cases either reiterate well-known and fundamental jurisdictional principles – see for example Opp. 3 (*citing Mahon v. Ticor Title Ins*. Co., 683 F.3d 59, 62 (2d Cir. 2012)("if plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim")[1] and *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("standing is a federal jurisdictional question determining the power of the court to entertain the suit.") – or contain out-of-context quotations that give the misleading impression that those courts are addressing Suburban's argument in this case.

---

[1] In *Mahon*, Plaintiff argued that it was permitted to sue "non-injurious defendants as long as one of the defendants in the suit injured the plaintiff," which the Court rejected as "unprecedented." *Mahon*, 683 F.3d at 62 (2d Cir. 2012).

4

11. For example, Suburban's quotation from *Sunny v. Biden*, 2021 U.S. Dist. LEXIS 220185, at *27 (E.D.N.Y. Nov. 15, 2021), that "[b]ecause Article III standing is always an antecedent question, the Court must address the issue of jurisdiction before turning, as necessary, to the parties' other positions,'" is misleading because the *Sunny* court is opining that when considering Plaintiffs' preliminary injunction motions a court should first decide any jurisdictional arguments raised in *those motions*. Another example is Suburban's citation to *Raines v. Byrd*:

> LBHI's failure to demonstrate standing precludes the instant motion – or at least requires that the standing issue be resolved in advance of any motion to compel SMI to mediate. Neither LBHI's nor the Court's conceivable desire to "'settle' [this dispute] for the sake of convenience and efficiency," *Raines v. Byrd*, 521 U.S. 811, 820 (1997), can supersede the constitutional necessity for LBHI to establish standing and for SMI's fact-based challenge to LBHI's standing to be resolved before the Court may consider the instant motion.

Opp. at 4. This citation is misleading because the Supreme Court is not addressing a situation involving competing motions, much less whether a jurisdictional motion should be considered before a non-jurisdictional one; instead it is simply opining that a court should not forego a jurisdictional analysis for the sake of convenience when the Court is eager to proceed to the merits of an important dispute regarding whether "an action taken by one of the other two branches of Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. at 820 ("Instead, we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.").

12. Finally, Suburban cited cases in this section of its brief (Opp. at 4-5) that are unrelated to its argument that standing motions must be decided first and are otherwise factually distinguishable from the instant proceeding. *See Monbo v. Nathan*, No. 18-cv-5930, 2021 WL 2530710, *3 (E.D.N.Y. June 21, 2021) (analyzing whether failure to rule on a motion can be grounds for writ of mandamus); *U.S. E. Telecomms., Inc. v. U.S. W. Info. Sys., Inc.*, 15 F.3d 261, 263 (2d Cir. 1994) (same). In fact, one case – *Cotto v. Fed. Nat'l Mortg. Ass'n*, – runs directly counter to

5

Suburban's argument that now that some discovery has been conducted it would be inefficient to mediate. 2021 WL 4340668, *4 (S.D.N.Y. Sept. 22, 2021) (denying mediation referral motion as, among other reasons, *premature* because no discovery had taken place).

       *iii.*     *Suburban's Efficiency/Mootness Argument is Not Compelling*

13.     Suburban contends that it is more "efficient" for the Court to decide its motion to dismiss first because if granted, it could save Suburban, the Court, and even the Plan Administrator "from expending more litigation resources on the SMI cases." Opp. at 11.  As set forth in the Plan Administrator's Motion, this argument is unpersuasive.  Motion at 9.  Even if Suburban prevails, which it will not (see *supra* at ¶ 9) because this Court has jurisdiction and the Plan Administrator has standing to pursue the claims, the Plan Administrator could litigate against Suburban in another jurisdiction or appeal, either of which would be costly, time consuming, and wasteful if the case could have been resolved through mediation.  Of course, if the motion to dismiss is denied, the Court will have "wasted" time and resources on deciding and writing the decision, and both parties will continue to expend time and resources on the litigation.

14.     Suburban's claim that the proposed Second Amended ADR Order, which requires written Statements of Position is "expensive and time-consuming" and therefore cost prohibitive as compared to continued litigation (Opp. at 14-15), is disingenuous.  Suburban's counsel admits that she understands the issues well because she (i) participated in the GSE mediation, (ii) participated in settlement discussions, and (iii) drafted a motion to dismiss. *Id.* at 14.  Accordingly, neither drafting a Statement of Position nor participating in a mediation that the Plan Administrator is paying for is "expensive" or "time-consuming."  On the other hand, continued litigation where depositions and expert discovery have yet to commence *is* expensive and time-consuming.  Indeed, participation in mediation might have cost less than preparing opposition to this Motion.

6

  *iv.*  *Seeking Mandatory Mediation is Not Coercive*

  15. Suburban argues that to seek mandatory mediation at this juncture would be improperly "coercive" because: (i) it has a pending motion to dismiss and should not be forced to expend further time or resources mediating until its motion is decided, and (ii) forcing mediation on an unwilling party is "unlikely to be productive." Opp. at 15. Suburban is wrong on both counts. *First*, Suburban's own cases demonstrate what conduct is considered a "pressure tactic" or improperly "coercive" – such as requiring parties to settle or even to make a settlement offer. *See, e.g., In re A.T. Reynolds & Sons, Inc.,* 452 B.R. 374, 382 (S.D.N.Y. 2011). Suburban provided no caselaw supporting its claim that incurring additional time and costs necessary for mediation when a motion to dismiss is pending, is "coercive."

  16. *Second*, compelling mediation by definition involves at least one "unwilling" party and therefore the presence of an unwilling party is never a sufficient basis to deny such a request. Courts routinely find that compelling an unwilling party is both permitted and often effective at resolving a dispute. As one Court stated:

> Experience has shown that even where parties believe that there is no possibility of settlement at the outset of mediation, they may change their minds during the process. Therefore, while the court "cannot force litigants to settle an action, it is well established that a court can require parties to appear for a settlement conference."

*Small v. New York,* 2015 U.S. Dist. LEXIS, 144783, *3 (W.D.N.Y. 2015) (*citing Bulkmatic Transport Co. v. Pappas,* 2002 WL 975625, *2 (S.D.N.Y. 2002)).

  17. *Finally*, Suburban contends that the Plan Administrator's instant motion in combination with a sanctions motion against *another* mortgage originator who mediated in bad faith "suggests LBHI's tactics are intended to improperly coerce settlement." Opp. at 16-17. Not so. The Plan Administrator did not bring the motion against mortgage originator, Wall Street, because it would not settle. Not every mediation has resulted in settlement. Moreover, some involved

7

defendants engaging in hard negotiating tactics and sometimes even refusing to make a reasonable or material settlement offer, or who had taken aggressive litigation positions throughout their cases. Rather, the Plan Administrator's sanctions motion was prompted by Wall Street's failure to prepare for and participate in the mediation in any meaningful way, spurning this Court's ADR Orders and blatantly wasting the Estate's resources.

B.   **The Plan Administrator's Motion is Timely**

18.   Suburban claims that the Plan Administrator's Motion is "fatally untimely" because the underlying ADR Orders on which it is based (i) were "initiated before litigation and contemplated either pre-litigation mediation or that mediation would take place very early in the litigation" and (ii) were based on General Standing Order M-452 which explicitly provides that a motion to assign a matter to mediation be made "by a party in interest" and "must be filed promptly after filing the initial document in the matter." Opp. at 8-9. None of these arguments is persuasive.

19.   *First*, as explained in the Plan Administrator's Motion, the Plan Administrator filed the 2018 ADR Motion shortly after the RMBS Settlements and before commencing litigation against Suburban regarding the RMBS Indemnification Claims.[2] It only carved out Suburban because Suburban agreed to attempt to resolve the case without formal mediation, and if that failed, through an agreed upon mediation process. Subsequently, however, Suburban refused to mediate thereby

---

[2] Suburban's citation to *Lehman Brothers Holdings Inc. v. 1st Advantage Mortgage, LLC.*, 594 B.R. 33, 48 (Bankr. S.D.N.Y. 2018) is inapposite because that case references this Court's GSE ADR Order, not the RMBS ADR Order at-issue here. *Id*. (referencing the "over 11,000 loans and over 3,000 potential counterparties against which LBHI allegedly held third-party contractual claims for indemnification and/or reimbursement by virtue of the GSE Settlements. To manage *this volume of indemnification claims*, the Court authorized the Plan Administrator to implement a pre-litigation mediation protocol with the Sellers from which it sought indemnification.") (emphasis added). Furthermore, because the GSE ADR Order does not contain a deadline for completing the GSE mediations, the Court's description of that order as "pre-litigation" mediation is merely pointing out that the order governs disputes that have not yet resulted in formal litigation, not that it is limited to only such situations.

8

forcing the Plan Administrator to bring the Motion. Suburban's hyper-technical reading of the Standing Order would effectively reward Suburban for such gamesmanship.[3]

20.     *Second*, the Standing Order does not constrain a bankruptcy judge from assigning a matter to mediation upon its own motion.[4] The prompt filing requirement only addresses the timing of a motion by a party in interest. *Id*. Thus, even if the Court agrees there is a timing requirement, the Court remains free, upon its own motion, to assign the matter to mediation.

21.     *Third*, there is no statutory or public policy reason to limit court-ordered mediations to "very early in the litigation." On the contrary, Courts routinely compel mediation at later stages of litigation, including up to and even after trial, because mediation can save the parties' and the courts' resources at almost any stage of litigation. *See, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 986 F. Supp. 2d 574, 657 n.124 (W.D. Pa. 2013) ("the Court ordered the parties to Court-annexed mediation, once during trial, before the verdict, and once before the hearing on post-trial motions"); *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1181 (S.D. Ohio 2013) ("On the eve of trial, the Court ordered the parties into mediation. On July 12, 2010, the mediator reported to the Court that the parties had successfully resolved the case."); *ReedHycalog UK, Ltd. v. Diamond Innovations, Inc*., 2010 U.S. Dist. LEXIS 83011, *21-23 (E.D. Tex. 2010) (Court ordered the parties

---

[3] While it declines to engage in a "he said, she said" dispute regarding whether Suburban agreed to mediate the Plan Administrator's RMBS Indemnification Claims, because such an agreement is not required for mandatory mediation, the Plan Administrator simply states that an agreement was reached as shown in an email chain among Ms. Adler, James Lawlor, Adam Bialek, and Brant Kuehn from January through February 2021, which is attached as Exhibit A to the Declaration of Christopher J. Lucht in Further Support of Lehman Brothers Holdings Inc.'s Motion for Leave to Amend and Extend the Scope of the Alternative Resolution Procedures Order For Indemnification Claims Against Mortgage Loan Sellers. *Compare* L. Adler's Declaration at ¶ 2 ("[a]t no time has [Suburban] ever agreed to formally or otherwise mediate LBHI's indemnification claims against it with respect to loans that LBHI alleges LBHI sold to RMBS Trustees") *with* Email Chain ("LBHI is agreeable to using Mr. Baugher [as a mediator] if he is willing."; "I do want to confirm, though, that LBHI is going to pay for the mediator as you had earlier said. . . . As I mentioned, we are not available for mediation until the latter part of March.").

[4] *See* Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceeding (annexed to Standing General Order M-452) at § 1.1 ("By Court Order. The Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee. The motion by a party in interest must be filed promptly after filing the initial document in the matter.")

9

to mediate during trial); *Balthazar Mgmt., LLC v. Beale St. Blues Co.*, 2020 U.S. Dist. LEXIS 20158, *3 (S.D. Fla.2020) ("During the pendency of the appeal, the Eleventh Circuit Court of Appeals ordered the parties to mediate. The parties did not settle this matter during the mediation, but they agreed to continue settlement discussions. On or about December 30, 2019, the parties agreed to the basic terms of a conditional global settlement."); *Johnson v. Bon-Ton Dep't Stores, Inc.,* 2006 U.S. Dist. LEXIS 96744, *16 (W.D. N.Y. 2006) (ordering mediation to proceed and, if unsuccessful, a final Pretrial order would be entered scheduling a trial); *Underdue v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 236827, *8 (W.D.N.C. 2020) (requiring mediation where the parties had been litigating for over four years).

22.     Suburban's reliance upon *In re NII Holdings, Inc.,* 536 B.R. 61, 83 (Bankr. S.D.N.Y. 2015), which denied a motion to compel mediation, is misplaced as it involved a different set of facts and circumstances. There, an *ad hoc* committee of creditors sought to compel mediation with the debtor over a proposed bankruptcy plan. The debtor resisted the mediation because the debtor's major creditors supported the plan it had proposed. Opp. Ex. A at p. 19:1-20. Additionally, the debtor had met with the *ad hoc* committee's attorneys and concluded that their proposal was a "non-starter." *Id.* Here, it is the Plan Administrator moving to compel mediation of a party in an adversary proceeding, not an *ad hoc* creditors' committee attempting to compel mediation over a plan which has support from the major creditors. Additionally, in *NII*, the case was at a "late-stage" because the plan was near confirmation. Here, we are not in a "late-stage" of the litigation as fact discovery is incomplete and depositions and expert discovery have not commenced.

**C.     The Plan Administrator's Mediation Efforts and Settlements with Others are Relevant**

23.     Suburban argues that the Plan Administrator's successful resolution of over 94% of the number of active, coordinated cases, representing over 96% of the damages sought, is irrelevant because those cases involved different parties, different facts, and occurred earlier in the case and

10

were consolidated (*i.e.*, related) only for "administrative purposes." Opp. at 6. Suburban is wrong. In its order consolidating the Plan Administrator's GSE Indemnification Claims, the Court determined:

> While the Court recognizes that each Adversary Proceeding entails distinct issues of fact, LBHI's allegations are substantially identical across Defendants. Most of the allegations of breach of representations and warranties contained in the Complaints stem from the same document, the Seller's Guide. Accordingly, common issues of law exist across the Adversary Proceedings, a factor which also weighs in favor of adjudication of all of the proceedings before one court.

*Lehman Brothers Holdings Inc. v. 1st Advantage Mortgage, LLC.*, 594 B.R. 33, 48 (Bankr. S.D.N.Y. 2018). This reasoning also applies to the RMBS Indemnification Claims. *See* December 13, 2018 Order [Adv. Pro. No. 16-01019, Dkt. 709] (binding RMBS Indemnification Defendants to the Case Management Order [Adv. Pro. No. 16-01019, ECF No. 305]).

24. Many of the successful mediations and settlements were with parties that raised the same defenses as Suburban in its Opposition. For example, many of these mediations occurred after formal litigation had commenced and have continued to date. Indeed, one such case was resolved this week with another party to the pending Motion to Dismiss. Moreover, *all but one of the other defendants that joined Suburban's pending Motion to Dismiss have since settled*.[5]

25. Clearly, the success of the mediations with these similarly situated defendants is relevant to and supports binding Suburban to the Second Amended ADR Order.

---

[5] The following defendants joined Suburban's motion to dismiss: Gateway Mortgage Group, LLC, American Bank and Congressional Bancshares, Arlington Capital and Gateway Diversified, Broadview Capital, Hartland Mortgage, LHM Financial, Loan Simple Inc., Luxury Mortgage Corp., Oaktree Funding Corp., MC Advantage, Republic State Mortgage Co. individually and as successor to Union Trust Mortgage Corp., Residential Home Funding Corp., Ross Mortgage Corp. Seattle Bank f/k/a Seattle Savings Bank; Sterling National Mortgage Co.; Sun American Mortgage Company; Sun Mortgage Company Inc.; Windsor Capital Mortgage Corp.; WR Starkey Mortgage LLP; Goldwater Bank; and Jersey Mortgage. All of those defendants have since settled, except for American Bank/Congressional Bancshares.

**D.   The Plan Administrator is Not Seeking to Compel Suburban to Mediate the GSE Claims a Second Time**

26. Several times in its Opposition, Suburban claims that the Plan Administrator is attempting to compel it to involuntarily mediate the GSE claims a second time. Opp. at ¶¶2, 6-7, 9-10 and 21. Suburban's claim is wrong because the Plan Administrator's Motion seeks only an order "that Suburban be bound by the Proposed Second Amended ADR Order and be directed to mediate the Plan Administrator's RMBS Indemnification Claims." Mot. at ¶30 ("Relief Requested"); *see also* Mot., Ex. A (Proposed Order) ("ORDERED that Suburban Mortgage Inc…is bound by the ADR Order and is required to participate in the mediation of LBHI's RMBS Indemnification Claims in good faith.").

27. The Plan Administrator's motion focuses on supporting this specific request for relief, describing the history of this dispute – from the Plan Administrator's first attempt to bind Suburban to the 2018/2019 ADR Order regarding RMBS Indemnification Claims (*id*. at ¶¶20-23), the Plan Administrator's subsequent "carve out" of Suburban from that Order (*id*. at ¶24), and Suburban's failure to fulfill its promise to formal mediate the RMBS Indemnification Claims if informal discussions between the parties were unsuccessful (*id.* at ¶¶25-26) – while noting that it unsuccessfully mediated its GSE Indemnification Claims with Suburban in 2015 (*id*. at n.3).

28. Suburban incorrectly contends that a Court cannot compel subsequent mediations on the same matter. Suburban's reliance on *Dan River Inc. v. Crown Crafts, Inc*., 1999 U.S. Dist. LEXIS 6940 (S.D.N.Y. 1999) is unavailing because the court in that case was only discussing its authority under Rule 16 to sanction a party for failing to appear at a court-ordered settlement conference. The Court held that it may require a party to appear for "at least one settlement conference," implying that it could require additional settlement conferences. Here, the Court can order the parties to mediate the RMBS and GSE claims. *See, e.g*., *Carnegie Mellon Univ. v. Marvell*

12

*Tech. Group, Ltd.*, 986 F. Supp. 2d 574, 657 n.124 (W.D. Pa. 2013) ("the Court ordered the parties to Court-annexed mediation, once during trial, before the verdict, and once before the hearing on post-trial motions"); *In re Melgar*, 2010 U.S. Dist. LEXIS 115476, *9-10 (S.D. Fla. 2010) (compelling the parties to conduct a second mediation).

E.    **The Court has Authority to Grant the Motion Pursuant to Rule 9024 and Section 105(a)**

29.    Suburban argues that Rule 9024 (which incorporates by reference Fed. R. Civ. P. 60), is inapplicable to the Plan Administrator's Motion because (i) the Plan Administrator is technically not requesting "relief" from the Court's prior ADR Orders, and (ii) Lehman has not made the requisite showing of "extraordinary circumstances" to obtain relief under Rule 60(b)(6). Opp. at 22. Suburban is wrong on both counts.

30.    *First*, courts interpret Rule 9024 to also encompass requests to *modify* an order. *See, e.g., Bagbag v. Summa Capital Corp. (In re Bagbag)*, 2020 Bankr. LEXIS 709, *3 (Bankr. S.D.N.Y. March 17, 2020) ("The Court ruled that any request to vacate or *modify* the 2010 Judgment should be pursued under Rule 9024") (emphasis added). *Second*, the plain text of Rule 60(b)(6) does not mention "extraordinary circumstances." It is a catch all that allows a court to modify its Order for "any reason that justifies relief." To the extent "extraordinary circumstances" must be shown, such extraordinary circumstances can easily be shown here. The Court issued the ADR Order under extraordinary circumstances because the Plan Administrator faced the huge task of addressing potentially thousands of individual claims. As previously explained, the Plan Administrator excluded Suburban from the ADR Orders in exchange for Suburban's agreement to informally attempt to resolve the case or, if necessary, mediate its RMBS Indemnification Claims on more favorable mediation terms. The Plan administrator agreed to "carve them out" so as not to slow down the successful mediation process with the other defendants. Suburban's failure to abide by this commitment prompted the Motion to bind a single defendant to the successful ADR Order. If

the Order is not granted, the parties will likely face the hardship of continuing with costly litigation when experience suggests that resolution might be reached. In total, these are sufficiently "extraordinary circumstances" to warrant relief under Rule 60(b)(6).

31. The Court should also reject Suburban's hodgepodge of arguments claiming that the Court lacks the inherent authority power to order non-binding mediation. Opp. at 22-24.[6] As the Plan Administrator explained in its Motion, Section 105(a) of the Bankruptcy Code grants bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" 11 U.S.C. § 105(a); *see also New Eng. Dairies, Inc. v. Dairy Mart Conv. Stores, Inc. (In re Dairy Mart Conv. Stores, Inc.),* 351 F.3d 86, 91-92 (2d Cir. 2003) (*quoting* 11 U.S.C. § 105(a)); *In re Sosa*, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) ("it is within a district court's inherent powers to order even non-consensual mediation in those cases in which the step seems reasonably likely to serve the interests of justice.") (citations omitted); *Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 847 (Bankr. M.D. Fla. 1998) ("the bankruptcy court has the authority and power to promulgate rules associated with court-annexed mediation and, where necessary, to require the parties to participate in same."). Suburban does not address, much less distinguish, this authority in its Opposition. The Court clearly has the authority to expand the ADR Order as it relates to the Plan Administrator's RMBS Indemnification Claims against Suburban.

## CONCLUSION

The Plan Administrator respectfully requests that the Court grant the relief requested by entering the proposed Second Amended ADR Order annexed as Exhibit A to the Lucht Decl. and grant such other and further relief as it deems just and proper.

---

[6] Many of Suburban's objections raised here have already been addressed in this Reply, including Suburban's arguments that the Plan Administrator's standing must first be determined, the Plan Administrator's ADR Motion was untimely filed, and mediation is only beneficial if it occurs in the early stages of a case.

Dated:   New York, New York
         December 3, 2021

        *Adam M. Bialek*
William A. Maher
Adam M. Bialek
Brant D. Kuehn
Christopher J. Lucht

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050

*Counsel for Lehman Brothers Holdings Inc.*

15