

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------------- x

                 :
**STEPHEN FINKELSTEIN,**         :

     **Plaintiff,**          :

                 :
    **v.**              :

                 :
**U.S. BANK, NATIONAL ASSOCIATION as**   :
**Trustee (and any predecessors or successors**   :
**thereto),**             :

      **Defendant.**        :

                 :

------------------------------------------------------------- X

**Index No.**
**650849/2021**


**Hon. Andrew Borrok**

**(IAS Part 53)**


## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:   Aurora Bank FSB (fka Lehman Brothers Bank)
    c/o Corporation Service Company
    80 State Street
    Albany, NY 12207

     YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

     In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Aurora Bank FSB (fka Lehman Brothers Bank) must designate one or more former officers, directors, members or employees, or other individual(s) who consent to testify on its behalf. Such designation must include the identity, and the description or title of such individual(s), and if

Aurora Bank FSB (fka Lehman Brothers Bank) designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.

Dated: July 19, 2022

/s/ *Michael A. Collyard*
ROBINS KAPLAN LLP
Michael A. Collyard
Peter C. Ihrig
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
mcollyard@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for Defendant U.S. Bank National Association*

**SCHEDULE A**

## I.   DEFINITIONS

1.      "Aurora Bank FSB (fka Lehman Brothers Bank)," "You" or "Your" refers individually and collectively to Aurora Bank FSB (fka Lehman Brothers Bank) and any of its affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Originator with respect to the Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.      "Action" means the above-captioned lawsuit styled as or related to *Finkelstein v. U.S. Bank National Association*, Index No. 650849/2021 (Sup. Ct. N.Y. Cnty.).

3.      "Assignment Agreement" means any assignment agreement, or similar agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

4.      "Assignor(s)" means any entity who assigned or transferred its rights in a Subject Loan.

5.      "Certificate(s)" refers individually and collectively to any of the certificates issued by the Trusts.

6.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.      "Completeness R&Ws" means any representation or warranty made by any Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer

concerning the completeness of the Mortgage Files for the Trusts, the breach of which the

Trustee is obligated to enforce under the applicable Governing Agreements.

8.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting.

9.      "Custodial Agreement" means any agreement setting forth the rights, duties, and

obligations of a Custodian for the Covered Trusts.

10.     "Depositor" means any entity defined in the Governing Agreements for any Trust

as a depositor, as well as its officers, directors, employees, corporate parents, predecessors,

successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other

Persons acting or purporting to act on its behalf.

11.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" as described in Fed R. Civ.

P. 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of the

term.

12.     "Exception(s)" means the notation(s) or description in any Document or

certification that a Mortgage File is incomplete, missing documents, or otherwise does not

comply with the requirements as prescribed in the Governing Agreements for the Trusts.

13.     "Exception Report(s)" means a report accompanying a certification provided

pursuant to a Governing Agreement that identifies documents required to be included in the

Mortgage File that are missing, defective, or incomplete as of the date of the report or that

otherwise failed to satisfy the requirements of the Governing Agreements.

14.     "Governing Agreement(s)" means all agreements governing the Trusts, as

applicable, along with related exhibits, schedules, and appendices, including, but not limited to,

2

Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial Agreements, and Servicing Agreements.

15.     "Identify(ing)" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a Person has been identified with respect to this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of Persons.

16.     "Identify(ing)" (with respect to Documents) means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s) and recipient(s).

17.     "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

18.     "Investor" refers to any entity that has invested in the Certificates of any of the Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its investment advisors and attorneys, in its capacity as an Investor.

19.     "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited to, Documents completed or submitted by a borrower or mortgagor or his or her agent when

applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting

exception applications and/or decisions, appraisal or valuation results, title commitment and

policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance

certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

20.    "Loan Servicing File" means all Documents that are maintained and/or used in the

course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator,

Servicer, and Master Servicer file, including, but not limited to, Documents completed or

submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii)

origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal

or valuation results, title commitment and policy, AUS findings, loan approval, loan application

(Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage

insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes

and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan

servicing records, including, without limitation, call notes, foreclosure files and

Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related

Documents; (viii) all records relating to repurchase analyses, demands, investigations and

Communications; and (ix) servicing guidelines and procedures.

21.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a

loan-by-loan identification of the Subject Loans (which descriptions may include information

concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral

information, borrower income, and/or other information about the borrower or the loan).

22.    "Master Servicer" means any entity defined in the Governing Agreements for any

Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

4

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

23.     "MLPA" means any mortgage loan purchase agreement, sale agreement, or

representations and warranties agreement, or any similar agreement, between an Originator and a

Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in

which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in

any of the Trusts.

24.     "Mortgage File(s)" means the file consisting of documents to be delivered to the

Custodian under the terms of the Governing Agreements, including, but not limited to, the note,

mortgage, title policy, and assignments.

25.     "Originator" has the same meaning ascribed to it in the relevant Governing

Agreements or prospectus supplement for each Trust, and any other entity that originated one or

more of the Subject Loans, as well as their officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on their behalf.

26.     "Person(s)" refers to natural persons, proprietorships, governmental agencies,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

entities.

27.     "Plaintiff" means Stephen Finkelstein and any agent, employee, attorney, or

Person acting under the control of or on behalf of the foregoing, or any affiliated entity,

including entities involved in or providing information, research, or analysis relating to the

investments of the "Plaintiff". For the avoidance of doubt, and without otherwise limiting the

5

foregoing, the definition of "Plaintiff" includes any investment advisor, sub-advisor, custodian, administrator, or other Person or entity providing services to the "Plaintiff."

28.    "Prior Holder" means any Investor other than Plaintiff who previously owned any of the Certificates that were ultimately sold or transferred to Plaintiff.

29.    "Refer" or "relate" or "referring" or "relating" means all Documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

30.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100—Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

31.    "RMBS" means any Residential Mortgage Backed Security as that term is commonly known in the industry.

32.    "Service" or "Servicing" means the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

33.    "Servicer" means the entities identified as a Servicer (or any successor Servicer),

Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer),

or special servicer (or any successor special servicer) in the relevant Governing Agreements for

each Trust, and any other entity that services loans and/or is responsible for any portion of the

Servicing functions performed, or required to be performed, with respect to each of the Trusts, as

well as their officers, directors, employees, corporate parents, predecessors, successors,

subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons

acting or purporting to act on their behalf.

34.    "Servicing Agreement" means any servicing agreement or servicing and sale

agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a

Depositor, in which the parties define the duties and obligations of the Servicer for the loans

underlying or collateralizing the Certificates.

35.    "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant

Governing Agreements for each Trust, and any other entity that securitized the loans underlying

or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

36.    "Subject Loan(s)" refers individually and collectively to any of the loans

underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all

mortgage loans identified on any Loan Tape provided in connection with the offer or sale of

Certificates issued pursuant to the Trusts.

37.    "Trust(s)" refers individually and collectively to the issuing entities of the

Certificates, as identified in Appendix 1.

7

38.    "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

39.    "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on their behalf, including their attorneys.

40.    "Warrantor" means any entity that made a representation and warranty regarding the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

## II.    **INSTRUCTIONS**

1.    "All/any/each" shall be construed as encompassing any and all.

2.    "And/or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

3.    References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be deemed to include that entity's current and former employees, agents, officers, directors, partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or any Person acting or purporting to act on its behalf.

4.    The singular form of a word shall be construed and applied to include the plural form, and vice versa.

8

5.    Each deposition topic and document request shall be construed independently, and no topic or request shall be viewed as limiting the scope of any other.

6.    If You object to a portion or aspect of any deposition topic or document request, state the grounds for Your objections with specificity.

7.    Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.    Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.    You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.    Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

9

11.    If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

12.    If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

13.    If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

14.    If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

(a)    the Document is missing or lost;

(b)    the Document has been destroyed;

10

(c)    the Document has been transferred or delivered to another Person or entity and, if
       so, to whom and at whose request;

(d)    the Document has been otherwise disposed of; and

(e)    a precise statement of the circumstances surrounding the disposition of the
       Document and the date of its disposition.

15.    Documents not otherwise responsive to these requests shall be produced if such

Documents mention, discuss, refer to, or explain the Documents that are called for by these

requests, or if such Documents are attached to Documents called for by the requests, including

routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.


## III.    FORM OF PRODUCTION – HARD COPY

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images

with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The

database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH,"

"ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized

(i.e., distinct Documents should not be merged into a single record, and a single Document

should not be split into multiple records) and should be produced in the order in which they are

kept in the usual course of business. If an original Document contains color necessary to

understand the meaning or content of the Document, the Document should be produced as

single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR")

text for each Document should also be provided. The OCR software should maximize text

quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned

on during the OCR process.

## IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the Document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint Documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original Document contains color, the Document should be produced as single-page, 300 DPI, color JPG images. For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files. Documents for which text cannot be extracted will be produced with OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the Document has been produced in native format should also be provided. If Documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either

12

party believes that native files should be produced for a specific Document or class of

Documents not required to be produced in native format pursuant to this paragraph or to the

extent records do not easily conform to native or TIFF format (i.e., structured data), the parties

should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents

(based on MD5 or SHA-1 hash values, at the family level). Attachments should not be

eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments

are also duplicates. An e-mail that includes content in the BCC or other blind copy field should

not be treated as a duplicate of an e-mail that does not include content in those fields, even if all

remaining content in the e-mail is identical. Removal of near-duplicate Documents is not

acceptable. De-duplication should be done across the entire collection (i.e., global level) and the

ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a

source of that Document. To accommodate for rolling productions, for ESI that is removed as

duplicate from earlier productions, the producing party should provide an overlay file no later

than three days after the date of each rolling production that includes the duplicate custodian

names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received

during loan origination, underwriting, approval and funding, including any supplemental

materials received post-funding) and/or Loan Servicing Files, shall be organized as they were

maintained in the ordinary course of business, but produced in reasonably useable format. The

following specifications will be met when producing Loan Files: the files will be produced as

TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All

files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma *.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

## V.    **RELEVANT TIME PERIOD**

All requests herein refer to the period of January 1, 2004, through the date of Your response (the "relevant time period"), unless otherwise specifically indicated, and shall include all Documents and information that relate to such period, even though prepared or published outside of the relevant time period. If a Document prepared before this period is necessary for a correct or complete understanding of any Document covered by a request, You must produce the earlier Document as well. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the request.

## VI.    **TOPICS FOR EXAMINATION**

**TOPIC NO. 1**: Your policies, procedures, and practices concerning Your retention of documents comprising the Mortgage Files for the Subject Loans.

**TOPIC NO. 2**:  Your policies, procedures, and practices for curing document exceptions in RMBS trusts, including Exceptions with respect to Mortgage Files for the Subject Loans.

**TOPIC NO. 3**:  Your policies, procedures, and practices concerning Your evaluation of and response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of Completeness R&Ws, including any policies, procedures, and practices to determine whether an Exception or breach of a Completeness R&W increases the risk of loss on mortgage loan.

**TOPIC NO. 4**:  Your Communications with any Person concerning any Exceptions noted in the Exception Reports for the Trusts.

**TOPIC NO. 5**:  Your Communications with any Person concerning any demand from a Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of Completeness R&Ws.

**TOPIC NO. 6**:  Your efforts to respond to any notice or demand from a Person to cure, substitute, or repurchase a Subject Loan based upon Exceptions or breaches of Completeness R&Ws, including the ultimate resolution of any such notices or demands.

**TOPIC NO. 7**:  Your efforts to provide a notice or to respond to a notice concerning any materially defective document in, or document missing from, a Mortgage File for the Trusts, including the ultimate resolution of any such notices or demands.

**TOPIC NO. 8**: The Subject Loans You cured, substituted, or repurchased based upon Exceptions or breaches of Completeness R&Ws.

## VII.    DOCUMENTS REQUESTED

**REQUEST NO. 1**:  All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2:** All Documents subpoenaed by the Plaintiff in this Action, if any, and all Communications with the Plaintiff concerning any such subpoena(s).

**REQUEST NO. 3:** All Documents and Communications with the Plaintiff or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4:** All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions or actual or alleged breaches of Completeness R&Ws.

**REQUEST NO. 5:** All Documents and Communications between the Plaintiff or a Prior Holder and You concerning the Trusts or the Subject Loans, including but not limited to Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 6:** All Documents and Communications that demonstrate Your financial ability or inability, between the date of issuance of the Certificates in the Trusts and the date six (6) years from issuance of the Certificates in the Trusts, to repurchase or replace any loans that You originated in the Trusts and whether You had the ability or inability, in lieu of repurchasing or replacing said loans to substitute for such loans, including by contributing cash for loans with losses equal to those losses in the same time period.

**REQUEST NO. 7:** All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor, or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Exceptions or Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations (if any) in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 8:** Any policies and procedures concerning cure, repurchase or substitution obligations to RMBS trusts with respect to Mortgage Files containing Exceptions or breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating cure, repurchase and/or substitution demands, policies and procedures for determining whether an Exception increases the risk of loss on the loan, policies and procedures related to providing notice of Exceptions or breaches of Completeness R&Ws pursuant to the Governing Agreements, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

16

**REQUEST NO. 9:** All Documents, Communications, and Agreements (including settlement agreements) between You and any Person, including drafts thereof, concerning the resolution of any of Your actual or potential liability relating to any Subject Loans with Exceptions or breaches of Completeness R&Ws.

**REQUEST NO. 10:** All Documents and Communications indicating how much You reserved during the relevant time period, by year, for mortgage loan repurchases based upon Exceptions or breaches of Completeness R&Ws, including, but not limited to, how many mortgage loans You had available or in reserve for substitution, by year, and the terms of those loans.

**REQUEST NO. 11:** All Documents reflecting and identifying the mortgage loans You substituted or repurchased during the relevant time period based upon Exceptions or breaches of Completeness R&Ws, including the name of the trust and, for each substituted or repurchased loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees, and, as applicable, the repurchase price.

**REQUEST NO. 12:** All Documents and Communications concerning notices or demands relating to Exceptions or breaches of Completeness R&Ws that You sent to any other Originator, Seller, Sponsor, Depositor, Assignor, Warrantor, or any other Person against which You held a claim for repurchase or indemnification, including the name of the Trust, the account number(s) for each loan at issue, Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 13:** All Documents You created or provided to any Person in response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of a Completeness R&Ws.

**REQUEST NO. 14:** All Loan Origination Files and Mortgage File documents (not previously provided to the Custodian) concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiff or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

## APPENDIX 1

Trusts

1. ABSHE 2005-HE8
2. ABSHE 2006-HE2
3. ABSHE 2006-HE5
4. ARMT 2005-10
5. ARMT 2005-6A
6. ARMT 2005-7
7. BAFC 2006-I
8. BAFC 2007-C
9. BASIC 2006-1
10. BSABS 2006-AC2
11. FFML 2006-FF12
12. FFML 2006-FF2
13. GPMF 2006-AR4
14. GPMF 2007-AR1
15. GPMF 2007-AR2
16. GSR 2004-14
17. HEAT 2004-3
18. HEAT 2004-4
19. HEAT 2006-6
20. LXS 2006-GP4
21. LXS 2007-12N
22. MABS 2006-FRE1
23. MABS 2006-NC1
24. MABS 2006-WMC1
25. SARM 2006-5
26. SASC 2006-WF3
27. STARM 2007-S1
28. SURF 2006-BC4
29. WMLT 2005-WMC1

18

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACHCOUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

```
-------------------------------------------------------------- x
                                                               :
                                                               :    Index No.
                                                               :    650849/2021
STEPHEN FINKELSTEIN,                                           :
                                                               :
            Plaintiff,                                         :
                                                               :
                                                               :    Hon. Andrew Borrok
                                                               :
      v.                                                       :    (IAS Part 53)
                                                               :
                                                               :
                                                               :
U.S. BANK, NATIONAL ASSOCIATION as                            :
Trustee (and any predecessors or successors                   :
thereto),                                                      :
                                                               :
            Defendant.                                         :
                                                               :
                                                               :

-------------------------------------------------------------- X
```

## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:    Aurora Bank FSB (fka Lehman Brothers Bank)
       c/o Corporation Service Company
       80 State Street
       Albany, NY 12207

YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Aurora Bank FSB (fka Lehman Brothers Bank) must designate one or more former officers, directors, members or employees, or other individual(s) who consent to testify on its behalf. Such designation must include the identity, and the description or title of such individual(s), and if

Aurora Bank FSB (fka Lehman Brothers Bank) designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.

Dated: July 19, 2022

/s/ *Michael A. Collyard*
ROBINS KAPLAN LLP
Michael A. Collyard
Peter C. Ihrig
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
mcollyard@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for Defendant U.S. Bank National Association*

## SCHEDULE A

### I.    DEFINITIONS

1.    "Aurora Bank FSB (fka Lehman Brothers Bank)," "You" or "Your" refers individually and collectively to Aurora Bank FSB (fka Lehman Brothers Bank) and any of its affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Servicer of Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.    "Action" means the above-captioned lawsuit styled as or related to *Finkelstein v. U.S. Bank National Association*, Index No. 650849/2021 (Sup. Ct. N.Y. Cnty.).

3.    "Assignment Agreement" means any assignment agreement, or similar agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

4.    "Assignor(s)" means any entity who assigned or transferred its rights in a Subject Loan.

5.    "Certificate(s)" refers individually and collectively to any of the certificates issued by the Trusts.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.    "Complaint" means the operative complaint filed in this Action.

8. "Completeness R&Ws" means any representation or warranty made by any
Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer
concerning the completeness of the Mortgage Files for the Trusts, the breach of which the
Trustee is obligated to enforce under the applicable Governing Agreements.

9. "Concerning" means relating to, referring to, describing, evidencing, or
constituting.

10. "Custodial Agreement" means any agreement setting forth the rights, duties, and
obligations of a Custodian for the Covered Trusts.

11. "Depositor" means any entity defined in the Governing Agreements for any Trust
as a depositor, as well as its officers, directors, employees, corporate parents, predecessors,
successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other
Persons acting or purporting to act on its behalf.

12. "Document(s)" is defined to be synonymous in meaning and equal in scope to the
usage of the term "documents or electronically stored information" as described in Fed R. Civ.
P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of the
term.

13. "Exception(s)" means the notation(s) or description in any Document or
certification that a Mortgage File is incomplete, missing documents, or otherwise does not
comply with the requirements as prescribed in the Governing Agreements for the Trusts.

14. "Exception Report(s)" means a report accompanying a certification provided
pursuant to a Governing Agreement that identifies documents required to be included in the
Mortgage File that are missing, defective, or incomplete as of the date of the report or that
otherwise failed to satisfy the requirements of the Governing Agreements.

2

15.    "Governing Agreement(s)" means all agreements governing the Trusts, as

applicable, along with related exhibits, schedules, and appendices, including, but not limited to,

Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements,

MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial

Agreements, and Servicing Agreements.

16.    "Government Entities" means any state or federal law enforcement or regulatory

agency, including, but not limited to, any state's office of attorney general, the United States

Department of Justice, the United States Securities and Exchange Commission ("SEC"), the

Federal Reserve Bank, the Federal Deposit Insurance Corporation, the Office of the Comptroller

of the Currency, the Federal Housing Finance Agency, the United States Department of Housing

and Urban Development, the Federal Bureau of Investigation, Government-Sponsored

Enterprises, any state or federal banking regulatory authority, or any other state or federal agency

or law enforcement authority.

17.    "Identify(ing)" (with respect to Persons) means to give, to the extent known, the

Person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment.  Once a Person has been identified

with respect to this subparagraph, only the name of that Person need be listed in response to

subsequent discovery requesting the identification of Persons.

18.    "Identify(ing)" (with respect to Documents) means to give, to the extent known,

the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv)

author(s), addressee(s) and recipient(s).

3

19.     "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

20.     "Investors" refers to any entity that has invested in the Certificates of any of the Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its investment advisors and attorneys, in its capacity as an Investor.

21.     "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited to, Documents completed or submitted by a borrower or mortgagor or his or her agent when applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

22.     "Loan Servicing File" means all Documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, Documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage

4

insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes

and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan

servicing records, including, without limitation, call notes, foreclosure files and

Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related

Documents; (viii) all records relating to repurchase analyses, demands, investigations and

Communications; and (ix) servicing guidelines and procedures.

23.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a

loan-by-loan identification of the Subject Loans (which descriptions may include information

concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral

information, borrower income, and/or other information about the borrower or the loan).

24.    "Master Servicer" means any entity defined in the Governing Agreements for any

Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

25.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or

representations and warranties agreement, or any similar agreement, between an Originator and a

Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in

which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in

any of the Trusts.

26.    "Mortgage File(s)" means the file consisting of documents to be delivered to the

Custodian under the terms of the Governing Agreements, including, but not limited to, the note,

mortgage, title policy, and assignments.

5

27.     "OCC Consent Order(s)" means the various Consent Orders and findings made by

the Office of the Comptroller of the Currency relating to servicing practices for foreclosures, as

referenced in the Complaint.

28.     "Originator" has the same meaning ascribed to it in the relevant Governing

Agreements or prospectus supplement for each Trust, and any other entity that originated one or

more of the Subject Loans, as well as their officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on their behalf.

29.     "Person(s)" refers to natural persons, proprietorships, governmental agencies,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

entities.

30.     "Plaintiff" means Stephen Finkelstein and any agent, employee, attorney, or

Person acting under the control of or on behalf of the foregoing, or any affiliated entity,

including entities involved in or providing information, research, or analysis relating to the

investments of the "Plaintiff". For the avoidance of doubt, and without otherwise limiting the

foregoing, the definition of "Plaintiff" includes any investment advisor, sub-advisor, custodian,

administrator, or other Person or entity providing services to the "Plaintiff."

31.     "Prior Holder" means any Investor other than Plaintiff who previously owned any

of the Certificates that were ultimately sold or transferred to Plaintiff.

32.     "Refer" or "relate" or "referring" or "relating" means all Documents which

comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created,

generated or maintained as a result of the subject matter of the request, including, without

6

limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

33.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100— Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

34.    "RMBS" means any Residential Mortgage Backed Security as that term is commonly known in the industry.

35.    "Robo-signing" refers to the practice of "mechanically" signing foreclosure affidavits, as alleged in Plaintiff's Complaint (*see, e.g.*, NYSCEF Doc. No. 61, ¶¶ 62–64), that was at issue in the OCC Consent Orders.

36.    "Service" or "Servicing" means the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

37.    "Servicer" means the entities identified as a Servicer (or any successor Servicer), Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer), or special servicer (or any successor special servicer) in the relevant Governing Agreements for each Trust, and any other entity that services loans and/or is responsible for any portion of the Servicing functions performed, or required to be performed, with respect to each of the Trusts, as

7

well as their officers, directors, employees, corporate parents, predecessors, successors,
subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons
acting or purporting to act on their behalf.

38.    "Servicing Agreement" means any servicing agreement or servicing and sale
agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a
Depositor, in which the parties define the duties and obligations of the Servicer for the loans
underlying or collateralizing the Certificates.

39.    "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant
Governing Agreements for each Trust, and any other entity that securitized the loans underlying
or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents,
predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,
representatives, and all other Persons acting or purporting to act on its behalf.

40.    "Subject Loan(s)" refers individually and collectively to any of the loans
underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all
mortgage loans identified on any Loan Tape provided in connection with the offer or sale of
Certificates issued pursuant to the Trusts.

41.    "Trust(s)" refers individually and collectively to the issuing entities of the
Certificates, as identified in Appendix 1.

42.    "Trustee" has the meaning set forth the Governing Agreements, including any
predecessor or successor to that role.

43.    "U.S. Bank" refers individually and collectively to U.S. Bank National
Association, whether in its individual or Trustee capacities, and any of its affiliates,
predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers,

8

directors, partners, employees, representatives, agents and intermediaries, and all other Persons

acting or purporting to act on their behalf, including their attorneys.

44.    "Warrantor" means any entity that made a representation and warranty regarding

the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as

well as its officers, directors, employees, corporate parents, predecessors, successors,

subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons

acting or purporting to act on its behalf.


**II.    INSTRUCTIONS**

1.    "All/any/each" shall be construed as encompassing any and all.

2.    "And/or" shall be construed either conjunctively or disjunctively as necessary to

bring within the scope of the discovery request all responses that might otherwise be construed to

be outside the scope.

3.    References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be

deemed to include that entity's current and former employees, agents, officers, directors,

partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or

any Person acting or purporting to act on its behalf.

4.    The singular form of a word shall be construed and applied to include the plural

form, and vice versa.

5.    Each deposition topic and document request shall be construed independently,

and no topic or request shall be viewed as limiting the scope of any other.

6.    If You object to a portion or aspect of any deposition topic or document request,

state the grounds for Your objections with specificity.

9

7.      Documents shall be produced as they are kept in the usual course of business, or
the Documents shall be organized and labeled to correspond to the categories in these requests.
In the case of Documents that have already been produced to any federal, state or local
government entity (including regulatory entities), whether pursuant to administrative requests,
investigations, subpoenas or otherwise, those Documents should be produced in the same manner
as they were previously produced by You.

8.      Documents shall be produced in such fashion as to identify the department,
branch, office, or central file or Document repository in which each such Document was located
and, where applicable, the natural person in whose possession it was found and the business
address of each Document's custodian(s).

9.      You are required to produce the original of each Document requested, together
with all non-identical copies and drafts of each Document. If the original of any Document
cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and
bound or stapled in the same manner as the original, and produce all other non-identical copies
that differ from the original and from the other copies produced for any reason, including,
without limitation, the making of notes thereon.

10.     Documents attached to each other in their original form should not be separated
when produced. Any attachments to e-mail messages shall be produced with, and linked to, the
attaching e-mail.

11.     If You are unable to respond fully to any Document request, respond to the extent
possible, and specify the reasons for Your inability to respond in full and describe to the best of
Your knowledge, information and belief, and with as much particularity as possible, those
portions of the Document that are not being produced.

10

12.     If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

13.     If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

14.     If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

(a)     the Document is missing or lost;

(b)     the Document has been destroyed;

(c)     the Document has been transferred or delivered to another Person or entity and, if so, to whom and at whose request;

(d)     the Document has been otherwise disposed of; and

(e)     a precise statement of the circumstances surrounding the disposition of the Document and the date of its disposition.

11

15. Documents not otherwise responsive to these requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these requests, or if such Documents are attached to Documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III. FORM OF PRODUCTION – HARD COPY

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original Document contains color necessary to understand the meaning or content of the Document, the Document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each Document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native

format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the Document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint Documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original Document contains color, the Document should be produced as single-page, 300 DPI, color JPG images. For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files. Documents for which text cannot be extracted will be produced with OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the Document has been produced in native format should also be provided. If Documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific Document or class of Documents not required to be produced in native format pursuant to this paragraph or to the

13

extent records do not easily conform to native or TIFF format (i.e., structured data), the parties should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate Documents is not acceptable. De-duplication should be done across the entire collection (i.e., global level) and the ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a source of that Document. To accommodate for rolling productions, for ESI that is removed as duplicate from earlier productions, the producing party should provide an overlay file no later than three days after the date of each rolling production that includes the duplicate custodian names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received during loan origination, underwriting, approval and funding, including any supplemental materials received post-funding) and/or Loan Servicing Files, shall be organized as they were maintained in the ordinary course of business, but produced in reasonably useable format. The following specifications will be met when producing Loan Files: the files will be produced as TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

14

*Non-Convertible Files.*  Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format.  Responsive, non-convertible files will be produced in the form of a placeholder TIFF image.  Some examples of file types that may not convert include file types with the following extensions:  *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example).  If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology.  Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression.  If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

## V.    RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2004, through the date of Your

response (the "relevant time period"), unless otherwise specifically indicated, and shall include

all Documents and information that relate to such period, even though prepared or published

outside of the relevant time period.  If a Document prepared before this period is necessary for a

correct or complete understanding of any Document covered by a request, You must produce the

earlier Document as well.  If any Document is undated and the date of its preparation cannot be

determined, the Document shall be produced if otherwise responsive to the request.

## VI.    TOPICS FOR EXAMINATION

**TOPIC NO. 1**:  Your policies, procedures, and practices for determining, identifying, and
obtaining the documents required to foreclose upon a loan, including obtaining documents that
You determine are required for foreclosure but are either missing from the Mortgage File or are
otherwise defective.

**TOPIC NO. 2**:  Your policies, procedures, and practices for determining, identifying, and
obtaining the documents required to submit a title insurance claim, including documents that
You determine are required for such a claim but are either missing from the Mortgage File or are
otherwise defective.

**TOPIC NO. 3**:  Your understanding of how, if at all, having only a copy of a Mortgage File
document, rather than an original, could impact the servicing of a loan in an RMBS trust.

**TOPIC NO. 4**:  Your Communications with any party regarding any Exceptions noted in the
Exception Reports for the Trusts.

**TOPIC NO. 5**:  Your receipt of any Documents that would cure any Exception noted for any
Trust, regardless of whether You notified the Custodian concerning Your receipt of such
documents.

**TOPIC NO. 6**:  Your understanding of Your ability to obtain and gather Documents relevant to
a mortgage loan that may be needed in the event of foreclosure or to file a title insurance claim.

**TOPIC NO. 7**:  Your efforts to obtain and gather the items listed as part of the Mortgage Files
for any Subject Loans that were subject to foreclosure or for which You filed a title insurance
claim, including the results of such efforts.

16

**TOPIC NO. 8**:  Your policies, procedures, and practices for providing to the Custodian any Documents You obtained in preparation for foreclosure and/or a title insurance claim for the Mortgage Loans.

**TOPIC NO. 9**:  Your understanding of the relationship, if any, between Exceptions and "robo-signing" and/or the OCC Consent Order, including whether Exceptions caused the alleged practice of "robo-signing" or the practices described in the OCC Consent Orders.

**TOPIC NO. 10**:  Your understanding of the use of each document in the Mortgage File with respect to servicing loans in RMBS trusts, and any increased risk of loss that may occur based on any such document being missing or defective.

**TOPIC NO. 11**:  Your understanding of Regulation AB Item 1122(d)(4)(i), including whether Item 1122(d)(4)(i) is related to Exceptions.

**TOPIC NO. 12**:  Your understanding of whether any of the Trusts were included in any sample that formed the basis of a Regulation AB Item 1122 assertion or USAP certification attestation provided to the Trustee.

**TOPIC NO. 13**:  Your understanding regarding whether Exceptions affected foreclosure timelines related to Subject Loans, and/or led to foreclosure moratoria.

**TOPIC NO. 14**:  Your efforts to provide a notice or to respond to a notice regarding any materially defective document in, or document missing from, a Mortgage File for the Trusts.

## VII.   DOCUMENTS REQUESTED

**REQUEST NO. 1**:  All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2**:  All Documents subpoenaed by the Plaintiff in this Action, if any, and all Communications with the Plaintiff concerning any such subpoena(s).

**REQUEST NO. 3**:  All Documents and Communications with the Plaintiff or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4**:  All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions in the Subject Loans.

**REQUEST NO. 5**:  All Documents and Communications identifying and concerning Subject Loans for which You made a title insurance claim.

**REQUEST NO. 6**:  All Documents and Communications, including documents held by Your foreclosure attorneys, concerning Subject Loans for which You filed for foreclosure.

17

**REQUEST NO. 7**: All Documents and Communications concerning cure, repurchase or substitution notices, demands, or requests You made to Originators or Assignors or Warrantors regarding the Subject Loans based on alleged Exceptions or breach of Completeness R&Ws, including the name of the trust, the loan number(s) for each loan You demanded be repurchased or substituted, and Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 8**: All Loan Origination Files concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiff or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**REQUEST NO. 9**: All Loan Servicing Files concerning any foreclosed Subject Loans in the Trusts, and any analysis performed with respect to such Loan Servicing Files, including but not limited to any reports or summaries of such analyses and, for any Loan Servicing Files You produce to Plaintiff or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**REQUEST NO. 10**: All Documents and Communications between the Plaintiff, a Prior Holder, and You concerning the Trusts or the Subject Loans, including but not limited to Communications concerning Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 11**: All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations—if any—in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 12**: Any policies and procedures concerning repurchase or substitution obligations in RMBS trusts with respect to breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating responsibility for repurchase and/or substitution demands, policies and procedures for evaluating repurchase and substitution requests, policies and procedures related to providing notice of missing or defective documents or notice of breaches of Completeness R&Ws pursuant to the Governing Agreements for RMBS trusts, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

**REQUEST NO. 13**: All Documents and Communications concerning the results of any repurchase or substitution demands You made for RMBS trusts by year during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including, but not limited to, the percentage of mortgage loans that were actually repurchased or substituted pursuant to Your demands.

**REQUEST NO. 14**: All Documents and Communications concerning any agreements between You and the Plaintiff or a Prior Holder concerning mortgage loans relating to the Trusts.

18

**REQUEST NO. 15**:  Documents reflecting and identifying the mortgage loans for which You demanded substitution and/or repurchase from any RMBS trust during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including the name of the trust and, for each loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees at the time of the demand, the outstanding principal balance and accrued interest and fees at the time of repurchase, and the repurchase price.

**REQUEST NO. 16**:  All Documents and Communications concerning repurchase or substitution demands or requests You received regarding any RMBS trust during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including the name of the trust, the name of the requesting party, the account number(s) for the loans identified in the demand or request, Your analysis of the demand or request, Your response to the demand or request, and whether You sought repurchase or substitution of the identified loans.

## APPENDIX 1

Trusts

1. ABSHE 2005-HE8
2. ABSHE 2006-HE2
3. ABSHE 2006-HE5
4. ARMT 2005-10
5. ARMT 2005-6A
6. ARMT 2005-7
7. BAFC 2006-I
8. BAFC 2007-C
9. BASIC 2006-1
10. BSABS 2006-AC2
11. FFML 2006-FF12
12. FFML 2006-FF2
13. GPMF 2006-AR4
14. GPMF 2007-AR1
15. GPMF 2007-AR2
16. GSR 2004-14
17. HEAT 2004-3
18. HEAT 2004-4
19. HEAT 2006-6
20. LXS 2006-GP4
21. LXS 2007-12N
22. MABS 2006-FRE1
23. MABS 2006-NC1
24. MABS 2006-WMC1
25. SARM 2006-5
26. SASC 2006-WF3
27. STARM 2007-S1
28. SURF 2006-BC4
29. WMLT 2005-WMC1

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

21

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------------------- x
                                     :

**STEPHEN FINKELSTEIN,**
                                     :

        **Plaintiff,**
                                     :

      v.
                                     :

**U.S. BANK, NATIONAL ASSOCIATION as**
**Trustee (and any predecessors or successors**
**thereto),**

        **Defendant.**

---------------------------------------------------------------- X

Index No.
**650849/2021**

**Hon. Andrew Borrok**

**(IAS Part 53)**


## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:    Aurora Loan Services LLC
        c/o Corporation Service Company
        80 State Street
        Albany, NY 12207

      YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

      In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Aurora Loan Services LLC must designate one or more former officers, directors, members or employees, or other individual(s) who consent to testify on its behalf. Such designation must include the identity, and the description or title of such individual(s), and if Aurora Loan

Services LLC designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.

Dated: July 19, 2022                    /s/ *Michael A. Collyard*

ROBINS KAPLAN LLP
Michael A. Collyard
Peter C. Ihrig
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
mcollyard@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for Defendant U.S. Bank National Association*

**SCHEDULE A**

I.   **DEFINITIONS**

1.      "Aurora Loan Services LLC," "You" or "Your" refers individually and collectively to Aurora Loan Services LLC and any of its affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Servicer and Master Servicer of Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.      "Action" means the above-captioned lawsuit styled as or related to *Finkelstein v. U.S. Bank National Association*, Index No. 650849/2021 (Sup. Ct. N.Y. Cnty.).

3.      "Assignment Agreement" means any assignment agreement, or similar agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

4.      "Assignor(s)" means any entity who assigned or transferred its rights in a Subject Loan.

5.      "Certificate(s)" refers individually and collectively to any of the certificates issued by the Trusts.

6.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.      "Complaint" means the operative complaint filed in this Action.

1

8. "Completeness R&Ws" means any representation or warranty made by any Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer concerning the completeness of the Mortgage Files for the Trusts, the breach of which the Trustee is obligated to enforce under the applicable Governing Agreements.

9. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

10. "Custodial Agreement" means any agreement setting forth the rights, duties, and obligations of a Custodian for the Covered Trusts.

11. "Depositor" means any entity defined in the Governing Agreements for any Trust as a depositor, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

12. "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" as described in Fed R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of the term.

13. "Exception(s)" means the notation(s) or description in any Document or certification that a Mortgage File is incomplete, missing documents, or otherwise does not comply with the requirements as prescribed in the Governing Agreements for the Trusts.

14. "Exception Report(s)" means a report accompanying a certification provided pursuant to a Governing Agreement that identifies documents required to be included in the Mortgage File that are missing, defective, or incomplete as of the date of the report or that otherwise failed to satisfy the requirements of the Governing Agreements.

2

15.    "Governing Agreement(s)" means all agreements governing the Trusts, as applicable, along with related exhibits, schedules, and appendices, including, but not limited to, Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial Agreements, and Servicing Agreements.

16.    "Government Entities" means any state or federal law enforcement or regulatory agency, including, but not limited to, any state's office of attorney general, the United States Department of Justice, the United States Securities and Exchange Commission ("SEC"), the Federal Reserve Bank, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Federal Housing Finance Agency, the United States Department of Housing and Urban Development, the Federal Bureau of Investigation, Government-Sponsored Enterprises, any state or federal banking regulatory authority, or any other state or federal agency or law enforcement authority.

17.    "Identify(ing)" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a Person has been identified with respect to this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of Persons.

18.    "Identify(ing)" (with respect to Documents) means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s) and recipient(s).

3

19.    "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

20.    "Investors" refers to any entity that has invested in the Certificates of any of the Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its investment advisors and attorneys, in its capacity as an Investor.

21.    "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited to, Documents completed or submitted by a borrower or mortgagor or his or her agent when applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

22.    "Loan Servicing File" means all Documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, Documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage

4

insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes

and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan

servicing records, including, without limitation, call notes, foreclosure files and

Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related

Documents; (viii) all records relating to repurchase analyses, demands, investigations and

Communications; and (ix) servicing guidelines and procedures.

23.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a

loan-by-loan identification of the Subject Loans (which descriptions may include information

concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral

information, borrower income, and/or other information about the borrower or the loan).

24.    "Master Servicer" means any entity defined in the Governing Agreements for any

Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

25.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or

representations and warranties agreement, or any similar agreement, between an Originator and a

Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in

which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in

any of the Trusts.

26.    "Mortgage File(s)" means the file consisting of documents to be delivered to the

Custodian under the terms of the Governing Agreements, including, but not limited to, the note,

mortgage, title policy, and assignments.

5

27.     "OCC Consent Order(s)" means the various Consent Orders and findings made by

the Office of the Comptroller of the Currency relating to servicing practices for foreclosures, as

referenced in the Complaint.

28.     "Originator" has the same meaning ascribed to it in the relevant Governing

Agreements or prospectus supplement for each Trust, and any other entity that originated one or

more of the Subject Loans, as well as their officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on their behalf.

29.     "Person(s)" refers to natural persons, proprietorships, governmental agencies,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

entities.

30.     "Plaintiff" means Stephen Finkelstein and any agent, employee, attorney, or

Person acting under the control of or on behalf of the foregoing, or any affiliated entity,

including entities involved in or providing information, research, or analysis relating to the

investments of the "Plaintiff". For the avoidance of doubt, and without otherwise limiting the

foregoing, the definition of "Plaintiff" includes any investment advisor, sub-advisor, custodian,

administrator, or other Person or entity providing services to the "Plaintiff."

31.     "Prior Holder" means any Investor other than Plaintiff who previously owned any

of the Certificates that were ultimately sold or transferred to Plaintiff.

32.     "Refer" or "relate" or "referring" or "relating" means all Documents which

comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created,

generated or maintained as a result of the subject matter of the request, including, without

6

limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

33.     "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100— Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

34.     "RMBS" means any Residential Mortgage Backed Security as that term is commonly known in the industry.

35.     "Robo-signing" refers to the practice of "mechanically" signing foreclosure affidavits, as alleged in Plaintiff's Complaint (*see, e.g.*, NYSCEF Doc. No. 61, ¶¶ 62–64), that was at issue in the OCC Consent Orders.

36.     "Service" or "Servicing" means the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

37.     "Servicer" means the entities identified as a Servicer (or any successor Servicer), Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer), or special servicer (or any successor special servicer) in the relevant Governing Agreements for each Trust, and any other entity that services loans and/or is responsible for any portion of the Servicing functions performed, or required to be performed, with respect to each of the Trusts, as

7

well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on their behalf.

38.    "Servicing Agreement" means any servicing agreement or servicing and sale agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the loans underlying or collateralizing the Certificates.

39.    "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other entity that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

40.    "Subject Loan(s)" refers individually and collectively to any of the loans underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of Certificates issued pursuant to the Trusts.

41.    "Trust(s)" refers individually and collectively to the issuing entities of the Certificates, as identified in Appendix 1.

42.    "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

43.    "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers,

8

directors, partners, employees, representatives, agents and intermediaries, and all other Persons

acting or purporting to act on their behalf, including their attorneys.

44.     "Warrantor" means any entity that made a representation and warranty regarding

the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as

well as its officers, directors, employees, corporate parents, predecessors, successors,

subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons

acting or purporting to act on its behalf.


## II.     INSTRUCTIONS

1.     "All/any/each" shall be construed as encompassing any and all.

2.     "And/or" shall be construed either conjunctively or disjunctively as necessary to

bring within the scope of the discovery request all responses that might otherwise be construed to

be outside the scope.

3.     References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be

deemed to include that entity's current and former employees, agents, officers, directors,

partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or

any Person acting or purporting to act on its behalf.

4.     The singular form of a word shall be construed and applied to include the plural

form, and vice versa.

5.     Each deposition topic and document request shall be construed independently,

and no topic or request shall be viewed as limiting the scope of any other.

6.     If You object to a portion or aspect of any deposition topic or document request,

state the grounds for Your objections with specificity.

9

7.    Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.    Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.    You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.    Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

11.    If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

10

12.     If any Document is withheld, in whole or in part, for any reason, including, but
not limited to, any claim of privilege, whether work product or attorney-client, common interest,
confidentiality, or trade secret, You shall provide a privilege log setting forth separately with
respect to each such Document: (a) the nature of the privilege or the ground of confidentiality
claimed; (b) the type of Document; (c) the authors of the Document, including title and
affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who
received copies of the Document, including titles and affiliations; (f) the date of the Document;
(g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to
the Document.

13.     If a Document contains both privileged and non-privileged material, the non-
privileged material must be disclosed to the maximum extent possible without thereby disclosing
the privileged material.  If a privilege is asserted with regard to part of the material contained in a
Document, You must clearly indicate the portions as to which the privilege is claimed in
accordance with the procedure outlined above.

14.     If a Document responsive to the requests was at any time in Your possession,
custody or control, but is no longer available for production, state as to each such Document the
following information whether:

(a)     the Document is missing or lost;

(b)     the Document has been destroyed;

(c)     the Document has been transferred or delivered to another Person or entity and, if
        so, to whom and at whose request;

(d)     the Document has been otherwise disposed of; and

(e)     a precise statement of the circumstances surrounding the disposition of the
        Document and the date of its disposition.

11

15.    Documents not otherwise responsive to these requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these requests, or if such Documents are attached to Documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.    FORM OF PRODUCTION – HARD COPY

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original Document contains color necessary to understand the meaning or content of the Document, the Document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each Document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native

12

format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the Document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint Documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original Document contains color, the Document should be produced as single-page, 300 DPI, color JPG images. For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files. Documents for which text cannot be extracted will be produced with OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the Document has been produced in native format should also be provided. If Documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific Document or class of Documents not required to be produced in native format pursuant to this paragraph or to the

extent records do not easily conform to native or TIFF format (i.e., structured data), the parties
should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents
(based on MD5 or SHA-1 hash values, at the family level). Attachments should not be
eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments
are also duplicates. An e-mail that includes content in the BCC or other blind copy field should
not be treated as a duplicate of an e-mail that does not include content in those fields, even if all
remaining content in the e-mail is identical. Removal of near-duplicate Documents is not
acceptable. De-duplication should be done across the entire collection (i.e., global level) and the
ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a
source of that Document. To accommodate for rolling productions, for ESI that is removed as
duplicate from earlier productions, the producing party should provide an overlay file no later
than three days after the date of each rolling production that includes the duplicate custodian
names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received
during loan origination, underwriting, approval and funding, including any supplemental
materials received post-funding) and/or Loan Servicing Files, shall be organized as they were
maintained in the ordinary course of business, but produced in reasonably useable format. The
following specifications will be met when producing Loan Files: the files will be produced as
TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All
files for a specific loan number will be produced with the loan number in a field named "loan
number". The Documents will be bates numbered and designated per the Protective Order.

14

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

## V.    **RELEVANT TIME PERIOD**

All requests herein refer to the period of January 1, 2004, through the date of Your

response (the "relevant time period"), unless otherwise specifically indicated, and shall include

all Documents and information that relate to such period, even though prepared or published

outside of the relevant time period.  If a Document prepared before this period is necessary for a

correct or complete understanding of any Document covered by a request, You must produce the

earlier Document as well.  If any Document is undated and the date of its preparation cannot be

determined, the Document shall be produced if otherwise responsive to the request.

## VI.    **TOPICS FOR EXAMINATION**

**TOPIC NO. 1:**  Your policies, procedures, and practices for determining, identifying, and
obtaining the documents required to foreclose upon a loan, including obtaining documents that
You determine are required for foreclosure but are either missing from the Mortgage File or are
otherwise defective.

**TOPIC NO. 2:**  Your policies, procedures, and practices for determining, identifying, and
obtaining the documents required to submit a title insurance claim, including documents that
You determine are required for such a claim but are either missing from the Mortgage File or are
otherwise defective.

**TOPIC NO. 3:**  Your understanding of how, if at all, having only a copy of a Mortgage File
document, rather than an original, could impact the servicing of a loan in an RMBS trust.

**TOPIC NO. 4:**  Your Communications with any party regarding any Exceptions noted in the
Exception Reports for the Trusts.

**TOPIC NO. 5:**  Your receipt of any Documents that would cure any Exception noted for any
Trust, regardless of whether You notified the Custodian concerning Your receipt of such
documents.

**TOPIC NO. 6:**  Your understanding of Your ability to obtain and gather Documents relevant to
a mortgage loan that may be needed in the event of foreclosure or to file a title insurance claim.

**TOPIC NO. 7:**  Your efforts to obtain and gather the items listed as part of the Mortgage Files
for any Subject Loans that were subject to foreclosure or for which You filed a title insurance
claim, including the results of such efforts.

**TOPIC NO. 8**: Your policies, procedures, and practices for providing to the Custodian any Documents You obtained in preparation for foreclosure and/or a title insurance claim for the Mortgage Loans.

**TOPIC NO. 9**: Your understanding of the relationship, if any, between Exceptions and "robo-signing" and/or the OCC Consent Order, including whether Exceptions caused the alleged practice of "robo-signing" or the practices described in the OCC Consent Orders.

**TOPIC NO. 10**: Your understanding of the use of each document in the Mortgage File with respect to servicing loans in RMBS trusts, and any increased risk of loss that may occur based on any such document being missing or defective.

**TOPIC NO. 11**: Your understanding of Regulation AB Item 1122(d)(4)(i), including whether Item 1122(d)(4)(i) is related to Exceptions.

**TOPIC NO. 12**: Your understanding of whether any of the Trusts were included in any sample that formed the basis of a Regulation AB Item 1122 assertion or USAP certification attestation provided to the Trustee.

**TOPIC NO. 13**: Your understanding regarding whether Exceptions affected foreclosure timelines related to Subject Loans, and/or led to foreclosure moratoria.

**TOPIC NO. 14**: Your efforts to provide a notice or to respond to a notice regarding any materially defective document in, or document missing from, a Mortgage File for the Trusts.

## VII.    DOCUMENTS REQUESTED

**REQUEST NO. 1**: All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2**: All Documents subpoenaed by the Plaintiff in this Action, if any, and all Communications with the Plaintiff concerning any such subpoena(s).

**REQUEST NO. 3**: All Documents and Communications with the Plaintiff or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4**: All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions in the Subject Loans.

**REQUEST NO. 5**: All Documents and Communications identifying and concerning Subject Loans for which You made a title insurance claim.

**REQUEST NO. 6**: All Documents and Communications, including documents held by Your foreclosure attorneys, concerning Subject Loans for which You filed for foreclosure.

17

**REQUEST NO. 7**: All Documents and Communications concerning cure, repurchase or substitution notices, demands, or requests You made to Originators or Assignors or Warrantors regarding the Subject Loans based on alleged Exceptions or breach of Completeness R&Ws, including the name of the trust, the loan number(s) for each loan You demanded be repurchased or substituted, and Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 8**: All Loan Origination Files concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiff or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**REQUEST NO. 9**: All Loan Servicing Files concerning any foreclosed Subject Loans in the Trusts, and any analysis performed with respect to such Loan Servicing Files, including but not limited to any reports or summaries of such analyses and, for any Loan Servicing Files You produce to Plaintiff or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**REQUEST NO. 10**: All Documents and Communications between the Plaintiff, a Prior Holder, and You concerning the Trusts or the Subject Loans, including but not limited to Communications concerning Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 11**: All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations—if any—in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 12**: Any policies and procedures concerning repurchase or substitution obligations in RMBS trusts with respect to breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating responsibility for repurchase and/or substitution demands, policies and procedures for evaluating repurchase and substitution requests, policies and procedures related to providing notice of missing or defective documents or notice of breaches of Completeness R&Ws pursuant to the Governing Agreements for RMBS trusts, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

**REQUEST NO. 13**: All Documents and Communications concerning the results of any repurchase or substitution demands You made for RMBS trusts by year during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including, but not limited to, the percentage of mortgage loans that were actually repurchased or substituted pursuant to Your demands.

**REQUEST NO. 14**: All Documents and Communications concerning any agreements between You and the Plaintiff or a Prior Holder concerning mortgage loans relating to the Trusts.

18

**REQUEST NO. 15**: Documents reflecting and identifying the mortgage loans for which You demanded substitution and/or repurchase from any RMBS trust during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including the name of the trust and, for each loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees at the time of the demand, the outstanding principal balance and accrued interest and fees at the time of repurchase, and the repurchase price.

**REQUEST NO. 16**: All Documents and Communications concerning repurchase or substitution demands or requests You received regarding any RMBS trust during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including the name of the trust, the name of the requesting party, the account number(s) for the loans identified in the demand or request, Your analysis of the demand or request, Your response to the demand or request, and whether You sought repurchase or substitution of the identified loans.

## APPENDIX 1

Trusts

1. ABSHE 2005-HE8
2. ABSHE 2006-HE2
3. ABSHE 2006-HE5
4. ARMT 2005-10
5. ARMT 2005-6A
6. ARMT 2005-7
7. BAFC 2006-I
8. BAFC 2007-C
9. BASIC 2006-1
10. BSABS 2006-AC2
11. FFML 2006-FF12
12. FFML 2006-FF2
13. GPMF 2006-AR4
14. GPMF 2007-AR1
15. GPMF 2007-AR2
16. GSR 2004-14
17. HEAT 2004-3
18. HEAT 2004-4
19. HEAT 2006-6
20. LXS 2006-GP4
21. LXS 2007-12N
22. MABS 2006-FRE1
23. MABS 2006-NC1
24. MABS 2006-WMC1
25. SARM 2006-5
26. SASC 2006-WF3
27. STARM 2007-S1
28. SURF 2006-BC4
29. WMLT 2005-WMC1

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACHCOUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

21

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

```
-------------------------------------------------------------- x
                                                               :
                                                               :    Index No.
STEPHEN FINKELSTEIN,                                           :    650849/2021
                                                               :
             Plaintiff,                                        :
                                                               :
                                                               :    Hon. Andrew Borrok
                                                               :
      v.                                                       :    (IAS Part 53)
                                                               :
                                                               :
U.S. BANK, NATIONAL ASSOCIATION as                            :
Trustee (and any predecessors or successors                    :
thereto),                                                      :
                                                               :
             Defendant.                                        :
                                                               :
                                                               :

-------------------------------------------------------------- X
```

### SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:    Lehman Brothers Holdings Inc.
       c/o Corporation Service Company
       80 State Street
       Albany, NY 12207

YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Lehman Brothers Holdings Inc. must designate one or more former officers, directors, members or employees, or other individual(s) who consent to testify on its behalf.  Such designation must include the identity, and the description or title of such individual(s), and if Lehman Brothers

Holdings Inc. designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.

Dated: July 19, 2022

/s/ *Michael A. Collyard*

ROBINS KAPLAN LLP
Michael A. Collyard
Peter C. Ihrig
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
mcollyard@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for Defendant U.S. Bank National Association*

**SCHEDULE A**

I.    **DEFINITIONS**

1.    "Lehman Brothers Holdings Inc.," "You" or "Your" refers individually and collectively to Lehman Brothers Holdings Inc. and any of its affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Seller/Sponsor with respect to the Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.    "Action" means the above-captioned lawsuit styled as or related to *Finkelstein v. U.S. Bank National Association*, Index No. 650849/2021 (Sup. Ct. N.Y. Cnty.).

3.    "Assignment Agreement" means any assignment agreement, or similar agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

4.    "Assignor(s)" means any entity who assigned or transferred its rights in a Subject Loan.

5.    "Certificate(s)" refers individually and collectively to any of the certificates issued by the Trusts.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.    "Completeness R&Ws" means any representation or warranty made by any Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer

1

concerning the completeness of the Mortgage Files for the Trusts, the breach of which the

Trustee is obligated to enforce under the applicable Governing Agreements.

   8.    "Concerning" means relating to, referring to, describing, evidencing, or

constituting.

   9.    "Custodial Agreement" means any agreement setting forth the rights, duties, and

obligations of a Custodian for the Covered Trusts.

   10.    "Depositor" means any entity defined in the Governing Agreements for any Trust

as a depositor, as well as its officers, directors, employees, corporate parents, predecessors,

successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other

Persons acting or purporting to act on its behalf.

   11.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" as described in Fed R. Civ.

P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of the

term.

   12.    "Exception(s)" means the notation(s) or description in any Document or

certification that a Mortgage File is incomplete, missing documents, or otherwise does not

comply with the requirements as prescribed in the Governing Agreements for the Trusts.

   13.    "Exception Report(s)" means a report accompanying a certification provided

pursuant to a Governing Agreement that identifies documents required to be included in the

Mortgage File that are missing, defective, or incomplete as of the date of the report or that

otherwise failed to satisfy the requirements of the Governing Agreements.

   14.    "Governing Agreement(s)" means all agreements governing the Trusts, as

applicable, along with related exhibits, schedules, and appendices, including, but not limited to,

Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial Agreements, and Servicing Agreements.

15.     "Identify(ing)" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a Person has been identified with respect to this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of Persons.

16.     "Identify(ing)" (with respect to Documents) means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s) and recipient(s).

17.     "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

18.     "Investor" refers to any entity that has invested in the Certificates of any of the Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its investment advisors and attorneys, in its capacity as an Investor.

19.     "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited to, Documents completed or submitted by a borrower or mortgagor or his or her agent when

3

applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting

exception applications and/or decisions, appraisal or valuation results, title commitment and

policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance

certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

20.    "Loan Servicing File" means all Documents that are maintained and/or used in the

course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator,

Servicer, and Master Servicer file, including, but not limited to, Documents completed or

submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii)

origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal

or valuation results, title commitment and policy, AUS findings, loan approval, loan application

(Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage

insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes

and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan

servicing records, including, without limitation, call notes, foreclosure files and

Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related

Documents; (viii) all records relating to repurchase analyses, demands, investigations and

Communications; and (ix) servicing guidelines and procedures.

21.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a

loan-by-loan identification of the Subject Loans (which descriptions may include information

concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral

information, borrower income, and/or other information about the borrower or the loan).

22.    "Master Servicer" means any entity defined in the Governing Agreements for any

Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

4

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

23.     "MLPA" means any mortgage loan purchase agreement, sale agreement, or

representations and warranties agreement, or any similar agreement, between an Originator and a

Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in

which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in

any of the Trusts.

24.     "Mortgage File(s)" means the file consisting of documents to be delivered to the

Custodian under the terms of the Governing Agreements, including, but not limited to, the note,

mortgage, title policy, and assignments.

25.     "Originator" has the same meaning ascribed to it in the relevant Governing

Agreements or prospectus supplement for each Trust, and any other entity that originated one or

more of the Subject Loans, as well as their officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on their behalf.

26.     "Person(s)" refers to natural persons, proprietorships, governmental agencies,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

entities.

27.     "Plaintiff" means Stephen Finkelstein and any agent, employee, attorney, or

Person acting under the control of or on behalf of the foregoing, or any affiliated entity,

including entities involved in or providing information, research, or analysis relating to the

investments of the "Plaintiff". For the avoidance of doubt, and without otherwise limiting the

foregoing, the definition of "Plaintiff" includes any investment advisor, sub-advisor, custodian, administrator, or other Person or entity providing services to the "Plaintiff."

28.    "Prior Holder" means any Investor other than Plaintiff who previously owned any of the Certificates that were ultimately sold or transferred to Plaintiff.

29.    "Refer" or "relate" or "referring" or "relating" means all Documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

30.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100— Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

31.    "RMBS" means any Residential Mortgage Backed Security as that term is commonly known in the industry.

32.    "Service" or "Servicing" means the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

6

33.    "Servicer" means the entities identified as a Servicer (or any successor Servicer),

Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer),

or special servicer (or any successor special servicer) in the relevant Governing Agreements for

each Trust, and any other entity that services loans and/or is responsible for any portion of the

Servicing functions performed, or required to be performed, with respect to each of the Trusts, as

well as their officers, directors, employees, corporate parents, predecessors, successors,

subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons

acting or purporting to act on their behalf.

34.    "Servicing Agreement" means any servicing agreement or servicing and sale

agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a

Depositor, in which the parties define the duties and obligations of the Servicer for the loans

underlying or collateralizing the Certificates.

35.    "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant

Governing Agreements for each Trust, and any other entity that securitized the loans underlying

or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

36.    "Subject Loan(s)" refers individually and collectively to any of the loans

underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all

mortgage loans identified on any Loan Tape provided in connection with the offer or sale of

Certificates issued pursuant to the Trusts.

37.    "Trust(s)" refers individually and collectively to the issuing entities of the

Certificates, as identified in Appendix 1.

7

38.     "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

39.     "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on their behalf, including their attorneys.

40.     "Warrantor" means any entity that made a representation and warranty regarding the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

## II.   **INSTRUCTIONS**

1.     "All/any/each" shall be construed as encompassing any and all.

2.     "And/or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

3.     References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be deemed to include that entity's current and former employees, agents, officers, directors, partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or any Person acting or purporting to act on its behalf.

4.     The singular form of a word shall be construed and applied to include the plural form, and vice versa.

8

5.      Each deposition topic and document request shall be construed independently, and no topic or request shall be viewed as limiting the scope of any other.

6.      If You object to a portion or aspect of any deposition topic or document request, state the grounds for Your objections with specificity.

7.      Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.      Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.      You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.     Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

11.     If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

12.     If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

13.     If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

14.     If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

(a)     the Document is missing or lost;

(b)     the Document has been destroyed;

10

(c)     the Document has been transferred or delivered to another Person or entity and, if
        so, to whom and at whose request;

(d)     the Document has been otherwise disposed of; and

(e)     a precise statement of the circumstances surrounding the disposition of the
        Document and the date of its disposition.

15.     Documents not otherwise responsive to these requests shall be produced if such

Documents mention, discuss, refer to, or explain the Documents that are called for by these

requests, or if such Documents are attached to Documents called for by the requests, including

routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.    FORM OF PRODUCTION – HARD COPY

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images

with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The

database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH,"

"ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized

(i.e., distinct Documents should not be merged into a single record, and a single Document

should not be split into multiple records) and should be produced in the order in which they are

kept in the usual course of business. If an original Document contains color necessary to

understand the meaning or content of the Document, the Document should be produced as

single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR")

text for each Document should also be provided. The OCR software should maximize text

quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned

on during the OCR process.

11

## IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV,
300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type
files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native
format. All ESI should be produced with a delimited, database load file that contains the
metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should
also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the
reader using the native software that created the Document. For example, TIFF images of e-mail
messages should include the BCC line. PowerPoint Documents should be processed with hidden
slides and all speaker notes unhidden, and should be processed to show both the slide and the
speaker's notes on the TIFF image. If an original Document contains color, the Document
should be produced as single-page, 300 DPI, color JPG images. For each Document, a
Document-level text file should be provided in addition to the TIFFs. The text of native files
should be extracted directly from the native file and each text file will be named using its
corresponding image files. Documents for which text cannot be extracted will be produced with
OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image
slip-sheet containing the confidential designation and text stating the Document has been
produced in native format should also be provided. If Documents requested in native format
require redactions, the parties should meet and confer regarding how to implement redactions
while ensuring that proper formatting and usability are maintained. Each native file should be
named according to the Bates number it has been assigned, and should be linked directly to its
corresponding record in the load file using the NATIVELINK field. To the extent that either

party believes that native files should be produced for a specific Document or class of Documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (i.e., structured data), the parties should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate Documents is not acceptable. De-duplication should be done across the entire collection (i.e., global level) and the ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a source of that Document. To accommodate for rolling productions, for ESI that is removed as duplicate from earlier productions, the producing party should provide an overlay file no later than three days after the date of each rolling production that includes the duplicate custodian names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received during loan origination, underwriting, approval and funding, including any supplemental materials received post-funding) and/or Loan Servicing Files, shall be organized as they were maintained in the ordinary course of business, but produced in reasonably useable format. The following specifications will be met when producing Loan Files: the files will be produced as TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All

13

files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

14

## V.    **RELEVANT TIME PERIOD**

All requests herein refer to the period of January 1, 2004, through the date of Your

response (the "relevant time period"), unless otherwise specifically indicated, and shall include

all Documents and information that relate to such period, even though prepared or published

outside of the relevant time period.  If a Document prepared before this period is necessary for a

correct or complete understanding of any Document covered by a request, You must produce the

earlier Document as well.  If any Document is undated and the date of its preparation cannot be

determined, the Document shall be produced if otherwise responsive to the request.

## VI.    **TOPICS FOR EXAMINATION**

**TOPIC NO. 1**: Your policies, procedures, and practices concerning Your retention of documents
comprising the Mortgage Files for the Subject Loans.

**TOPIC NO. 2**:  Your policies, procedures, and practices for curing document exceptions in
RMBS trusts, including Exceptions with respect to Mortgage Files for the Subject Loans.

**TOPIC NO. 3**:  Your policies, procedures, and practices concerning Your evaluation of and
response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based
upon Exceptions or breaches of Completeness R&Ws, including any policies, procedures, and
practices to determine whether an Exception or breach of a Completeness R&W increases the
risk of loss on mortgage loan.

**TOPIC NO. 4**:  Your Communications with any Person concerning any Exceptions noted in the
Exception Reports for the Trusts.

**TOPIC NO. 5**:  Your Communications with any Person concerning any demand from a Person
to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of
Completeness R&Ws.

**TOPIC NO. 6**:  Your efforts to respond to any notice or demand from a Person to cure,
substitute, or repurchase a Subject Loan based upon Exceptions or breaches of Completeness
R&Ws, including the ultimate resolution of any such notices or demands.

**TOPIC NO. 7**:  Your efforts to provide a notice or to respond to a notice concerning any
materially defective document in, or document missing from, a Mortgage File for the Trusts,
including the ultimate resolution of any such notices or demands.

**TOPIC NO. 8**: The Subject Loans You cured, substituted, or repurchased based upon Exceptions or breaches of Completeness R&Ws.

## VII.    DOCUMENTS REQUESTED

**REQUEST NO. 1**: All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2:** All Documents subpoenaed by the Plaintiff in this Action, if any, and all Communications with the Plaintiff concerning any such subpoena(s).

**REQUEST NO. 3:** All Documents and Communications with the Plaintiff or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4:** All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions or actual or alleged breaches of Completeness R&Ws.

**REQUEST NO. 5:** All Documents and Communications between the Plaintiff or a Prior Holder and You concerning the Trusts or the Subject Loans, including but not limited to Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 6:** All Documents and Communications that demonstrate Your financial ability or inability, between the date of issuance of the Certificates in the Trusts and the date six (6) years from issuance of the Certificates in the Trusts, to repurchase or replace any loans that You originated in the Trusts and whether You had the ability or inability, in lieu of repurchasing or replacing said loans to substitute for such loans, including by contributing cash for loans with losses equal to those losses in the same time period.

**REQUEST NO. 7:** All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor, or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Exceptions or Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations (if any) in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 8:** Any policies and procedures concerning cure, repurchase or substitution obligations to RMBS trusts with respect to Mortgage Files containing Exceptions or breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating cure, repurchase and/or substitution demands, policies and procedures for determining whether an Exception increases the risk of loss on the loan, policies and procedures related to providing notice of Exceptions or breaches of Completeness R&Ws pursuant to the Governing Agreements, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

**REQUEST NO. 9:** All Documents, Communications, and Agreements (including settlement agreements) between You and any Person, including drafts thereof, concerning the resolution of any of Your actual or potential liability relating to any Subject Loans with Exceptions or breaches of Completeness R&Ws.

**REQUEST NO. 10:** All Documents and Communications indicating how much You reserved during the relevant time period, by year, for mortgage loan repurchases based upon Exceptions or breaches of Completeness R&Ws, including, but not limited to, how many mortgage loans You had available or in reserve for substitution, by year, and the terms of those loans.

**REQUEST NO. 11:** All Documents reflecting and identifying the mortgage loans You substituted or repurchased during the relevant time period based upon Exceptions or breaches of Completeness R&Ws, including the name of the trust and, for each substituted or repurchased loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees, and, as applicable, the repurchase price.

**REQUEST NO. 12:** All Documents and Communications concerning notices or demands relating to Exceptions or breaches of Completeness R&Ws that You sent to any other Originator, Seller, Sponsor, Depositor, Assignor, Warrantor, or any other Person against which You held a claim for repurchase or indemnification, including the name of the Trust, the account number(s) for each loan at issue, Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 13:** All Documents You created or provided to any Person in response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of a Completeness R&Ws.

**REQUEST NO. 14:** All Loan Origination Files and Mortgage File documents (not previously provided to the Custodian) concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiff or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

## APPENDIX 1

Trusts

1. ABSHE 2005-HE8
2. ABSHE 2006-HE2
3. ABSHE 2006-HE5
4. ARMT 2005-10
5. ARMT 2005-6A
6. ARMT 2005-7
7. BAFC 2006-I
8. BAFC 2007-C
9. BASIC 2006-1
10. BSABS 2006-AC2
11. FFML 2006-FF12
12. FFML 2006-FF2
13. GPMF 2006-AR4
14. GPMF 2007-AR1
15. GPMF 2007-AR2
16. GSR 2004-14
17. HEAT 2004-3
18. HEAT 2004-4
19. HEAT 2006-6
20. LXS 2006-GP4
21. LXS 2007-12N
22. MABS 2006-FRE1
23. MABS 2006-NC1
24. MABS 2006-WMC1
25. SARM 2006-5
26. SASC 2006-WF3
27. STARM 2007-S1
28. SURF 2006-BC4
29. WMLT 2005-WMC1

# TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACHCOUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

# EXHIBIT  1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------------------  x
                                                   :

                                                   :

**MARK A. ZITTMAN, IRA FBO MARK**
**ZITTMAN, MARK A. ZITTMAN as Beneficiary of**
**IRA FBO MARK ZITTMAN, MARK A.**
**ZITTMAN as Trustee of the MARK A. ZITTMAN**
**REVOCABLE TRUST, and MARK A. ZITTMAN**
**REVOCABLE TRUST,**

                        **Plaintiffs,**


       **v.**


**U.S. BANK, NATIONAL ASSOCIATION as**
**Trustee (and any predecessors or successors**
**thereto),**

                        **Defendant.**


---------------------------------------------------------------  X

**Index No.**
**656964/2021**


**Hon. Joel M. Cohen**
**(IAS Part 3)**


## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:     Aurora Bank FSB (fka Lehman Brothers Bank)
            c/o Corporation Service Company
            80 State Street
            Albany, NY 12207

      YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

      In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Aurora Bank FSB must designate one or more former officers, directors, members or employees, or

other individual(s) who consent to testify on its behalf. Such designation must include the identity, and the description or title of such individual(s), and if Aurora Bank FSB designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.

Dated: July 19, 2022

/s/ *Michael A. Collyard*
ROBINS KAPLAN LLP
Michael A. Collyard
Peter C. Ihrig
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
mcollyard@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for Defendant U.S. Bank National Association*

## SCHEDULE A

### I.    DEFINITIONS

1.    "Aurora Bank FSB (fka Lehman Brothers Bank)," "You" or "Your" refers

individually and collectively to Aurora Bank FSB (fka Lehman Brothers Bank) and any of its

affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or

former officers, directors, partners, employees, representatives, agents and intermediaries, and all

other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as

Originator with respect to the Subject Loans underlying or collateralizing the Certificates issued

pursuant to one or more Trusts.

2.    "Action" means the above-captioned lawsuit styled as or related to *Zittman,*

*et al. v. U.S. Bank National Association*, Index No. 656964/2021 (Sup. Ct. N.Y. Cnty.).

3.    "Assignment Agreement" means any assignment agreement, or similar

agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the

loans for securitization in the Trusts.

4.    "Assignor(s)" means any entity who assigned or transferred its rights in a Subject

Loan.

5.    "Certificate(s)" refers individually and collectively to any of the certificates

issued by the Trusts.

6.    "Communication" means the transmittal of information (in the form of facts,

ideas, inquiries or otherwise).

7.    "Completeness R&Ws" means any representation or warranty made by any

Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer

1

concerning the completeness of the Mortgage Files for the Trusts, the breach of which the

Trustee is obligated to enforce under the applicable Governing Agreements.

8.      "Concerning" means relating to, referring to, describing, evidencing, or

constituting.

9.      "Custodial Agreement" means any agreement setting forth the rights, duties, and

obligations of a Custodian for the Covered Trusts.

10.     "Depositor" means any entity defined in the Governing Agreements for any Trust

as a depositor, as well as its officers, directors, employees, corporate parents, predecessors,

successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other

Persons acting or purporting to act on its behalf.

11.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" as described in Fed R. Civ.

P. 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of the

term.

12.     "Exception(s)" means the notation(s) or description in any Document or

certification that a Mortgage File is incomplete, missing documents, or otherwise does not

comply with the requirements as prescribed in the Governing Agreements for the Trusts.

13.     "Exception Report(s)" means a report accompanying a certification provided

pursuant to a Governing Agreement that identifies documents required to be included in the

Mortgage File that are missing, defective, or incomplete as of the date of the report or that

otherwise failed to satisfy the requirements of the Governing Agreements.

14.     "Governing Agreement(s)" means all agreements governing the Trusts, as

applicable, along with related exhibits, schedules, and appendices, including, but not limited to,

2

Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial Agreements, and Servicing Agreements.

15.     "Identify(ing)" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a Person has been identified with respect to this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of Persons.

16.     "Identify(ing)" (with respect to Documents) means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s) and recipient(s).

17.     "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

18.     "Investor" refers to any entity that has invested in the Certificates of any of the Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its investment advisors and attorneys, in its capacity as an Investor.

19.     "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited to, Documents completed or submitted by a borrower or mortgagor or his or her agent when

3

applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

20.    "Loan Servicing File" means all Documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, Documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan servicing records, including, without limitation, call notes, foreclosure files and Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related Documents; (viii) all records relating to repurchase analyses, demands, investigations and Communications; and (ix) servicing guidelines and procedures.

21.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a loan-by-loan identification of the Subject Loans (which descriptions may include information concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral information, borrower income, and/or other information about the borrower or the loan).

22.    "Master Servicer" means any entity defined in the Governing Agreements for any Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

23.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or representations and warranties agreement, or any similar agreement, between an Originator and a Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in any of the Trusts.

24.    "Mortgage File(s)" means the file consisting of documents to be delivered to the Custodian under the terms of the Governing Agreements, including, but not limited to, the note, mortgage, title policy, and assignments.

25.    "Originator" has the same meaning ascribed to it in the relevant Governing Agreements or prospectus supplement for each Trust, and any other entity that originated one or more of the Subject Loans, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on their behalf.

26.    "Person(s)" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other entities.

27.    "Plaintiffs" means, collectively, Mark A. Zittman; IRA FBO Mark Zittman; Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman; Mark A. Zittman as Trustee of the Mark A Zittman Revocable Trust; Mark A. Zittman Revocable Trust; and any officer, agent, employee, attorney, or Person acting under the control of or on behalf of the foregoing, or any affiliated entity, including entities involved in or providing information, research, or analysis

5

relating to the investment of these entities. For the avoidance of doubt, and without otherwise limiting the foregoing, the definition of "Plaintiffs" includes any investment advisor, sub-advisor, custodian, administrator, or other Person or entity providing services to the "Plaintiffs."

28.   "Prior Holder" means any Investor other than Plaintiffs who previously owned any of the Certificates that were ultimately sold or transferred to Plaintiffs.

29.   "Refer" or "relate" or "referring" or "relating" means all Documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

30.   "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100— Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

31.   "RMBS" means any Residential Mortgage Backed Security as that term is commonly known in the industry.

32.   "Service" or "Servicing" means the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

33.    "Servicer" means the entities identified as a Servicer (or any successor Servicer),

Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer),

or special servicer (or any successor special servicer) in the relevant Governing Agreements for

each Trust, and any other entity that services loans and/or is responsible for any portion of the

Servicing functions performed, or required to be performed, with respect to each of the Trusts, as

well as their officers, directors, employees, corporate parents, predecessors, successors,

subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons

acting or purporting to act on their behalf.

34.    "Servicing Agreement" means any servicing agreement or servicing and sale

agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a

Depositor, in which the parties define the duties and obligations of the Servicer for the loans

underlying or collateralizing the Certificates.

35.    "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant

Governing Agreements for each Trust, and any other entity that securitized the loans underlying

or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

36.    "Subject Loan(s)" refers individually and collectively to any of the loans

underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all

mortgage loans identified on any Loan Tape provided in connection with the offer or sale of

Certificates issued pursuant to the Trusts.

37.    "Trust(s)" refers individually and collectively to the issuing entities of the

Certificates, as identified in Appendix 1.

7

38.     "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

39.     "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on their behalf, including their attorneys.

40.     "Warrantor" means any entity that made a representation and warranty regarding the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

## II.     **INSTRUCTIONS**

1.     "All/any/each" shall be construed as encompassing any and all.

2.     "And/or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

3.     References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be deemed to include that entity's current and former employees, agents, officers, directors, partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or any Person acting or purporting to act on its behalf.

4.     The singular form of a word shall be construed and applied to include the plural form, and vice versa.

8

5.      Each deposition topic and document request shall be construed independently, and no topic or request shall be viewed as limiting the scope of any other.

6.      If You object to a portion or aspect of any deposition topic or document request, state the grounds for Your objections with specificity.

7.      Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.      Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.      You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.     Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

9

11.    If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

12.    If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

13.    If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

14.    If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

(a)    the Document is missing or lost;

(b)    the Document has been destroyed;

(c)     the Document has been transferred or delivered to another Person or entity and, if so, to whom and at whose request;

(d)     the Document has been otherwise disposed of; and

(e)     a precise statement of the circumstances surrounding the disposition of the Document and the date of its disposition.

15.     Documents not otherwise responsive to these requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these requests, or if such Documents are attached to Documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.     FORM OF PRODUCTION – HARD COPY

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original Document contains color necessary to understand the meaning or content of the Document, the Document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each Document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

11

## IV.    **FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION**

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the Document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint Documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original Document contains color, the Document should be produced as single-page, 300 DPI, color JPG images. For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files. Documents for which text cannot be extracted will be produced with OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the Document has been produced in native format should also be provided. If Documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either

party believes that native files should be produced for a specific Document or class of

Documents not required to be produced in native format pursuant to this paragraph or to the

extent records do not easily conform to native or TIFF format (i.e., structured data), the parties

should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents

(based on MD5 or SHA-1 hash values, at the family level). Attachments should not be

eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments

are also duplicates. An e-mail that includes content in the BCC or other blind copy field should

not be treated as a duplicate of an e-mail that does not include content in those fields, even if all

remaining content in the e-mail is identical. Removal of near-duplicate Documents is not

acceptable. De-duplication should be done across the entire collection (i.e., global level) and the

ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a

source of that Document. To accommodate for rolling productions, for ESI that is removed as

duplicate from earlier productions, the producing party should provide an overlay file no later

than three days after the date of each rolling production that includes the duplicate custodian

names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received

during loan origination, underwriting, approval and funding, including any supplemental

materials received post-funding) and/or Loan Servicing Files, shall be organized as they were

maintained in the ordinary course of business, but produced in reasonably useable format. The

following specifications will be met when producing Loan Files: the files will be produced as

TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All

files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

## V.    RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2004, through the date of Your response (the "relevant time period"), unless otherwise specifically indicated, and shall include all Documents and information that relate to such period, even though prepared or published outside of the relevant time period. If a Document prepared before this period is necessary for a correct or complete understanding of any Document covered by a request, You must produce the earlier Document as well. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the request.

## VI.    TOPICS FOR EXAMINATION

**TOPIC NO. 1:** Your policies, procedures, and practices concerning Your retention of documents comprising the Mortgage Files for the Subject Loans.

**TOPIC NO. 2:** Your policies, procedures, and practices for curing document exceptions in RMBS trusts, including Exceptions with respect to Mortgage Files for the Subject Loans.

**TOPIC NO. 3:** Your policies, procedures, and practices concerning Your evaluation of and response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of Completeness R&Ws, including any policies, procedures, and practices to determine whether an Exception or breach of a Completeness R&W increases the risk of loss on mortgage loan.

**TOPIC NO. 4:** Your Communications with any Person concerning any Exceptions noted in the Exception Reports for the Trusts.

**TOPIC NO. 5:** Your Communications with any Person concerning any demand from a Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of Completeness R&Ws.

**TOPIC NO. 6:** Your efforts to respond to any notice or demand from a Person to cure, substitute, or repurchase a Subject Loan based upon Exceptions or breaches of Completeness R&Ws, including the ultimate resolution of any such notices or demands.

**TOPIC NO. 7:** Your efforts to provide a notice or to respond to a notice concerning any materially defective document in, or document missing from, a Mortgage File for the Trusts, including the ultimate resolution of any such notices or demands.

**TOPIC NO. 8**: The Subject Loans You cured, substituted, or repurchased based upon Exceptions or breaches of Completeness R&Ws.

**VII.    DOCUMENTS REQUESTED**

**REQUEST NO. 1**: All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2:** All Documents subpoenaed by the Plaintiffs in this Action, if any, and all Communications with the Plaintiffs concerning any such subpoena(s).

**REQUEST NO. 3:** All Documents and Communications with the Plaintiffs or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4:** All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions or actual or alleged breaches of Completeness R&Ws.

**REQUEST NO. 5:** All Documents and Communications between the Plaintiffs or a Prior Holder and You concerning the Trusts or the Subject Loans, including but not limited to Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 6:** All Documents and Communications that demonstrate Your financial ability or inability, between the date of issuance of the Certificates in the Trusts and the date six (6) years from issuance of the Certificates in the Trusts, to repurchase or replace any loans that You originated in the Trusts and whether You had the ability or inability, in lieu of repurchasing or replacing said loans to substitute for such loans, including by contributing cash for loans with losses equal to those losses in the same time period.

**REQUEST NO. 7:** All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor, or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Exceptions or Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations (if any) in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 8:** Any policies and procedures concerning cure, repurchase or substitution obligations to RMBS trusts with respect to Mortgage Files containing Exceptions or breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating cure, repurchase and/or substitution demands, policies and procedures for determining whether an Exception increases the risk of loss on the loan, policies and procedures related to providing notice of Exceptions or breaches of Completeness R&Ws pursuant to the Governing Agreements, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

16

**REQUEST NO. 9:** All Documents, Communications, and Agreements (including settlement agreements) between You and any Person, including drafts thereof, concerning the resolution of any of Your actual or potential liability relating to any Subject Loans with Exceptions or breaches of Completeness R&Ws.

**REQUEST NO. 10:** All Documents and Communications indicating how much You reserved during the relevant time period, by year, for mortgage loan repurchases based upon Exceptions or breaches of Completeness R&Ws, including, but not limited to, how many mortgage loans You had available or in reserve for substitution, by year, and the terms of those loans.

**REQUEST NO. 11:** All Documents reflecting and identifying the mortgage loans You substituted or repurchased during the relevant time period based upon Exceptions or breaches of Completeness R&Ws, including the name of the trust and, for each substituted or repurchased loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees, and, as applicable, the repurchase price.

**REQUEST NO. 12:** All Documents and Communications concerning notices or demands relating to Exceptions or breaches of Completeness R&Ws that You sent to any other Originator, Seller, Sponsor, Depositor, Assignor, Warrantor, or any other Person against which You held a claim for repurchase or indemnification, including the name of the Trust, the account number(s) for each loan at issue, Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 13:** All Documents You created or provided to any Person in response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of a Completeness R&Ws.

**REQUEST NO. 13:** All Loan Origination Files and Mortgage File documents (not previously provided to the Custodian) concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiffs or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

## APPENDIX 1

Trusts

1.   ABFC 2007-WMC1
2.   BAFC 2006-H
3.   BAFC 2007-C
4.   BAFC 2007-D
5.   BSABS 2006-AC2
6.   CSAB 2006-3
7.   GSAA 2006-1
8.   GSAA 2006-3
9.   GSAMP 2006-HE4
10.  GSR 2005-AR7
11.  GSR 2006-AR1
12.  HEAT 2005-6
13.  HEAT 2005-7
14.  HEAT 2006-3
15.  HEAT 2006-4
16.  HVMLT 2005-3
17.  HVMLT 2006-1
18.  HVMLT 2006-4
19.  LXS 2005-5N
20.  LXS 2005-9N
21.  LXS 2007-15N
22.  MSM 2006-1AR
23.  SASC 2007-EQ1
24.  SURF 2006-AB3
25.  SURF 2007-BC2
26.  TMST 2007-3
27.  WFMBS 2006-AR1

18

# TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then  just list the e-mail address.  An e-mail address should always be provided for every  document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given,  then just list the e-mail address.  An e-mail address should always be provided for  every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given,  then just list the e-mail address.  An e-mail address should always be provided for  every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is  given, then just list the e-mail address.  An e-mail address should always be  provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACHCOUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone  where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on  the deliverable, containing a separate text file per document. These text files  should be named with their corresponding bates numbers. Note: E-mails should  include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should  be provided. |

19

08-13555-mg    Doc 61483-1    Filed 09/10/22    Entered 09/10/22 17:54:43    Exhibit 1
Pg 111 of 287

At IAS Part 3 of the Supreme Court of the
State of New York, Commercial Division,
County of New York, at the courthouse
thereof, 60 Centre Street, New York, New
York, on the 17th day of May, 2022

PRESENT: Honorable Joel M. Cohen, Justice
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x
                                                              :   Index No.
                                                              :   656964/2021
MARK A. ZITTMAN, IRA FBO MARK ZITTMAN,                        :
MARK A. ZITTMAN as Beneficiary of IRA FBO                     :   Hon. Joel M. Cohen
MARK ZITTMAN, MARK A. ZITTMAN as Trustee                     :   (IAS Part 3)
of the MARK A. ZITTMAN REVOCABLE TRUST,                       :
and MARK A. ZITTMAN REVOCABLE TRUST,                          :
                                                              :
                        Plaintiffs,                           :
                                                              :   STIPULATION AND
                                                              :   ~~PROPOSED~~
        v.                                                    :   CONFIDENTIALITY AND
                                                              :   PROTECTIVE ORDER
                                                              :
U.S. BANK, NATIONAL ASSOCIATION as Trustee                    :
(and any predecessors or successors thereto),                 :
                                                              :
                        Defendant.                            :

------------------------------------------------------------ X

        This matter having come before the Court by stipulation of Plaintiffs Mark A. Zittman, IRA

FBO Mark Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A. Zittman

as Trustee of the Mark A. Zittman Revocable Trust, and Mark A. Zittman Revocable Trust and

Defendant U.S. Bank National Association, for the entry of a protective order pursuant to CPLR

3013(a), limiting the review, copying, dissemination, and filing of confidential and/or proprietary

Documents and information to be produced by the Parties or their respective counsel, or by any

1

non-party, in the course of discovery in this matter to the extent set forth below (the "Stipulation and Order"). Having found that the Parties, by, between, and among their respective counsel, have stipulated and agreed to the terms set forth herein, and good cause having been shown,

IT IS ORDERED that:

1.    This Stipulation and Order is being entered into to facilitate the production, exchange, and discovery of Documents and information that the Parties agree merit confidential treatment. This Stipulation and Order shall govern the handling of Documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admission, responses to requests for production, and any other information or material produced, given, or exchanged by and among the Parties and any non-parties to the above-captioned action (the "Litigation") in connection with discovery in the Litigation (such information or material hereinafter referred to as "Discovery Material").

2.    A Producing Party (as defined below) may designate Discovery Material in connection with this Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" either by notation on the Document, statement on the record of a deposition, written notice to counsel for the Parties hereto, or by other appropriate means. In the case of Documents produced in native, electronic form, the confidentiality can be designated on the placeholder sheet produced along with that Document, or in a confidentiality metadata field. A Producing Party (as defined below) who designates any Discovery Material "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" bears the burden of establishing the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" status of such Discovery Material in any situation in which the designation is at issue, and nothing in this Stipulation and Order shall be construed to alter such burden.

3.    As used herein:

2

(a)  "Plaintiffs" or "Zittman" shall mean Plaintiffs Mark A. Zittman, IRA FBO Mark
Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A.
Zittman as Trustee of the Mark A. Zittman Revocable Trust, and Mark A.
Zittman Revocable Trust, including Plaintiffs' investment advisors.

(b)  "Defendant" or "U.S. Bank" shall mean Defendant U.S. Bank National
Association.

(c)  "Party" shall mean Plaintiffs or Defendant, and, Defendant together with
Plaintiffs, the "Parties".

(d)  "Confidential Information" shall mean all Discovery Material, and all
information contained therein, and other information designated as
"CONFIDENTIAL," that the Producing Party (as defined below) reasonably and
in good faith believes constitutes and/or contains (i) any trade secret or other
confidential non-public research, design, development, financial or commercial
information or (ii) Non-Party Borrower Information (as defined below). In
addition, a Producing Party (as defined below) may designate as
"CONFIDENTIAL" non-public personal information, other sensitive personally
identifiable information (such as Social Security numbers, dates of birth, home
addresses, phone numbers, email addresses) or other information for which
applicable federal or state law requires confidential treatment.

(e)  "Document" shall mean all writings, drawings, graphs, charts, photographs,
sound recordings, images, and other data or data compilations, any recorded
form of information, whether in printed, electronic, or other format, and
including deposition transcripts, answers to interrogatories, and other discovery
requests and responses.

3

08-13555-mg    Doc 61483-1    Filed 09/10/22    Entered 09/10/22 17:54:43    Exhibit 1

(f)    "Highly Confidential Information" shall mean all Discovery Material, and all

information contained therein, and other information designated as "HIGHLY

CONFIDENTIAL," that the Producing Party (as defined below) reasonably and

in good faith believes, at the time of designation, constitutes and/or contains

current trade secrets, proprietary business information, or other information the

disclosure of which would result in competitive, commercial or financial harm to

the Producing Party (as defined below) or its personnel, clients or customers if

disclosed. Should a Producing Party identify categories of Documents in

addition to those identified in this paragraph that the party wishes to designate as

"HIGHLY CONFIDENTIAL," the Parties shall meet and confer in good faith

regarding the Producing Party's proposed designation and, if the Parties are

unable to reach agreement on the proposed designation, each Party expressly

reserves the right to seek appropriate relief from the Court.

(g)    "Non-Party Borrower Information" shall mean any information that constitutes

"nonpublic personal information" within the meaning of the Gramm-Leach

Bliley Act, 15 U.S.C. § 6802, et seq. and its implementing regulations,

including, but not limited to, any portion of a mortgage loan file, spreadsheet or

other Document or data set that includes financial or credit information for any

person (including any credit history, report or score obtained on any such person

to determine the individual's eligibility for credit) together with personally

identifiable information with respect to such person, including, but not limited

to, name, address, Social Security number, loan number, telephone number, or

place or position of work. As set forth in Paragraph 36 below, this Stipulation

4

and Order authorizes the disclosure of such Non-Party Borrower Information in this Litigation.

(h) "Protected Information" shall mean Confidential Information and Highly Confidential Information, collectively.

(i) "Producing Party" shall mean the Party to this Litigation who gives testimony or produces Documents or other materials containing Protected Information and/or any non-party producing or giving testimony concerning Protected Information in connection with discovery in this Litigation, or the Party asserting the confidentiality designation, as the case may be.

(j) "Receiving Party" shall mean the Party to this Litigation and/or any non-party receiving Protected Information in connection with discovery in this Litigation.

4. The Receiving Party may, at any time, notify the Producing Party that the Receiving Party does not concur in the designation of Discovery Material as Confidential Information or Highly Confidential Information. The Parties shall meet and confer in good faith regarding any such disagreement over the classification of Discovery Material and, if the Producing Party does not agree to change the designation of such Discovery Material, the Receiving Party may move the Court for an order removing the designation of such Discovery Material as Protected Information. Upon such a motion, the Producing Party shall bear the burden to prove that the Discovery Material in question is Protected Information. If such a motion is filed, the Discovery Material shall be deemed Protected Information, with the same confidentiality designation as asserted by the Producing Party, unless and until the Court rules otherwise.

5. In order to expedite the production of voluminous materials, a Producing Party may, but is not required to, produce materials without a detailed review for confidentiality designation

5

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM INDEX NO. 656964/2021

NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

RECEIVED NYSCEF: 05/17/2022

and may designate collections of Documents that, by their nature, contain Confidential Information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" notwithstanding that some of the Documents within the collection may not qualify for such designation. A Party's "bulk" designation of Documents shall not constitute waiver of any Party's rights set forth in Paragraph 20 of this Stipulation and Order. Notwithstanding the foregoing, a Receiving Party may at any time challenge the designation of one or more particular Documents on the grounds that the Document(s) do not qualify for protection, including as provided in Paragraphs 4 and 29 of this Stipulation and Order.

6.    Except with the prior written consent of the Producing Party or by Order of the Court, Confidential Information shall not be furnished, shown or disclosed to any person or entity except:

      (a)    counsel for the Parties to this Litigation and their associated attorneys, paralegals and other professional personnel (including support staff) who are directly assisting such counsel in the preparation of this Litigation for trial or other proceeding herein, are under the supervision or control of such counsel, and who have been advised of their obligations hereunder;

      (b)    expert witnesses or consultants who are employed or retained by a Party in connection with the prosecution or defense of this Litigation, and members of the expert witnesses' or consultants' staff working under the expert witnesses' or consultants' supervision, provided, however, that such Confidential Information is furnished, shown or disclosed to them in accordance with Paragraph 8 hereof;

6

(c)    third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

(d)    the Court and Court personnel, if filed in accordance with Paragraph 15 hereof;

(e)    an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

(f)    trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

(g)    personnel of the Parties (including in-house counsel) actually engaged in assisting in the preparation of this Litigation for trial or other proceeding herein and who have been advised of their obligations hereunder;

(h)    former personnel of the Parties actually engaged in assisting in the preparation of this Litigation for trial or other proceeding herein provided, however, that such Confidential Information is furnished, shown, or disclosed to them in accordance with Paragraph 8 hereof;

(i)    any mediator or arbitrator engaged by the Parties to this Litigation;

(j)    the insurers and reinsurers of the Parties to this Litigation, and counsel to such insurers and reinsurers as necessary for the prosecution or defense of this Litigation; and

(k)    any other person agreed to by the Parties.

7

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 7
NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF 05/24/2022

RECEIVED NYSCEF: 05/17/2022

7.    No disclosure of Highly Confidential Information may be made to any person or entity other than:

(a)    counsel for the Parties to this Litigation and their associated attorneys, paralegals and other professional personnel (including support staff) who are directly assisting such counsel in the preparation of this Litigation for trial or other proceeding herein, are under the supervision or control of such counsel, and who have been advised of their obligations hereunder. Disclosure to in-house counsel, paralegals, and other professional personnel (including support staff) shall be limited to those in-house counsel providing legal advice in connection with this Litigation and the paralegals and other professional personnel supporting such in-house counsel, and Highly Confidential Information may not be disclosed to any officers, directors, employees or agents of a Party except as otherwise provided in Section 7(h). For the avoidance of doubt, Highly Confidential Information disclosed to in-house counsel, paralegals, and other professional personnel may not be used for any business or other purpose unrelated to the prosecution or defense of this Litigation;

(b)    expert witnesses or consultants who are employed or retained by a Party in connection with the prosecution or defense of this Litigation, and members of the expert witnesses' or consultants' staff working under the expert witnesses' or consultants' supervision, provided, however, that such Highly Confidential Information is furnished, shown or disclosed in accordance with Paragraph 8 hereof. Such disclosure shall only be to the extent reasonably necessary for such expert witness or consultant to perform his or her work;

8

    (c)    third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

    (d)    the Court and Court personnel, if filed in accordance with Paragraph 15, hereof;

    (e)    an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

    (f)    trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

    (g)    any mediator or arbitrator engaged by the Parties to this Litigation;

           the following persons (or any persons that may hold their respective positions in the future) who have been advised of their obligations hereunder: individuals at U.S. Bank holding the position of vice president or above with responsibility for litigation and disputes or oversight of this Litigation; and

    (h)    any other person agreed to by the Parties.

    8.    Before any disclosure of Protected Information is made pursuant to Paragraphs 6(b) or 6(h), or 7(b) hereof, counsel for the Receiving Party shall obtain from the intended recipient of the Protected Information such person's written undertaking, in the form of Exhibit A attached hereto, to comply with and be bound by its terms.

9.      Protected Information shall be utilized by the Receiving Party only for purposes of this Litigation, or the enforcement of insurance rights with respect to this Litigation, and for no other purposes.

10.     All depositions shall presumptively be treated as Confidential Information subject to this Stipulation and Order during the deposition and until fifteen (15) days after the final transcript of said deposition is received by counsel for each of the Parties, unless otherwise specified in writing or on the record of the deposition by the Producing Party. At or before the end of such fifteen (15) day period, the deposition, or pages thereof, may be designated for future purposes as Confidential Information or Highly Confidential Information by any Party or, where applicable, by the non-party providing the deposition testimony.

11.     Should the need arise for any of the Parties to disclose Protected Information during any hearing or trial before the Court, including through argument or the presentation of evidence, such Party may do so only after taking such steps as the Court shall deem necessary to preserve the confidentiality of such Protected Information.

12.     This Stipulation and Order shall not preclude counsel for the Parties from using Protected Information during any deposition in this Litigation, provided that prior to any such use, the Party intending to use Protected Information shall: (a) provide a copy of this Stipulation and Order to the witness, and others to whom disclosure is intended to be made; (b) explain the Stipulation and Order to said persons and/or cause them to read the Stipulation and Order; and (c) obtain from said persons properly executed undertakings, in the form of Exhibit A attached hereto, if such persons are not covered by Paragraphs 6 and 7 of this Stipulation and Order. Should any person refuse to execute the undertaking before or at the deposition, counsel for the Parties may

10

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68                                   RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68                                   RECEIVED NYSCEF: 05/17/2022

still use the Protected Information during the deposition, and the Parties agree that the use of such Protected Information during the deposition shall not negate its treatment as Protected Information pursuant to this Stipulation and Order. Counsel shall retain copies of the signed "Exhibit A" forms until the termination of this Litigation. The Parties shall act in good faith to eliminate, whenever possible, the expenditure of "on the record" time to effectuate or confirm compliance with this paragraph at any deposition.

13.    A Party may designate as Confidential Information any Discovery Material produced or given by any non-party to this case, or any portion thereof. In the case of Documents, designation shall be made by notifying all counsel, in writing, of those Documents that are to be stamped and treated as Confidential Information at any time up to thirty (30) days after actual receipt of copies of those Documents by counsel for the Party asserting the confidentiality designation. Prior to the expiration of such thirty (30) day period (or until a designation is made by counsel, if such a designation is made in a shorter period of time), all such Documents shall be treated as Confidential Information. In the case of testimony, designation shall be made by notifying all counsel, in writing, of those portions of a transcript which are to be stamped or otherwise treated as Confidential Information at any time up to thirty (30) days after the final transcript is received by counsel for the Party asserting the confidentiality designation.

14.    Disclosing parties shall designate and treat "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material as follows:

(a)    In the case of Documents, interrogatory answers, responses to requests to admit, and the information contained therein, designation shall be made by marking or stamping each page as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, prior to its production or disclosure to the Receiving Party.

11

Electronically stored information (other than that produced in native form) designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be marked or stamped as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, using means sufficient to ensure that every page of such Document, when printed, contains the appropriate mark or stamp. Electronically stored information produced in native format shall include any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation in the file name.

(b)    In the event that a disclosing party inadvertently fails to stamp or otherwise designate a Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at the time of its production, that disclosing party may stamp or otherwise designate the Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at any reasonable time thereafter. The delay in so designating a Document shall not, in and of itself, be deemed to have effected a waiver of any of the protections of this Stipulation and Order, and parties will make reasonable efforts to claw back any previously disseminated undesignated Documents that are later designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

(c)    Any "CONFIDENTIAL" material produced in a non-paper media (e.g., videotape, audiotape, computer disc) may be designated as such by labeling the outside of such non-paper media as "CONFIDENTIAL." In the event a Receiving Party generates any electronic copy, "hard copy," transcription, or printout from any such designated non- paper media, such party must treat each copy, transcription, or printout as "CONFIDENTIAL" pursuant to the terms of this Stipulation and Order.

12

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

15.    (a) A Party or, as appropriate, non-party, who seeks to file with the Court (i) any

deposition transcripts, exhibits, answers to interrogatories, or other Discovery Material which have

previously been designated as comprising or containing Protected Information, or (ii) any pleading,

brief or memorandum which reproduces, paraphrases or discloses Protected Information shall,

fourteen (14) days prior to filing any motion, provide the Producing Party with written notice of its

intent to file such material with the Court, so that the Producing Party may file by Order to Show

Cause a motion to seal such Protected Information; provided, however, that in the event that the

Party seeking to file or reference Protected Information identifies additional Protected Information

less than fourteen (14) days prior to the relevant filing date, that Party may supplement its initial

disclosure and the parties shall meet and confer to facilitate the filing by the Producing Party of any

motion to seal such Protected Information prior to the relevant filing date.

(b) Any motion to seal Protected Information must be filed seven (7) days prior to the deadline to

file the underlying motion or other filing, or promptly after disclosure of the intended use of

Protected Information, and the Protected Information shall not be filed until the Court renders a

decision on the motion to seal. If the Court does not decide the motion to seal prior to the deadline

to file the underlying motion or other filing, the filing Party (or, as appropriate, non-party) shall, on

the deadline to file the underlying motion or other filing, serve on the other Parties and provide the

Court with a complete and unredacted copy of the underlying motion or other filing. Within three

business days following the Court's determination of the motion to seal, the filing Party (or, as

appropriate, non-party) shall file the underlying motion or other filing with the Court in accordance

with the Court's order and Paragraph 15(c) below.

(c) If the Producing Party makes a timely motion to seal, and the motion is granted, the filing Party

(or, as appropriate, non-party) shall ensure that all Documents (or, if directed by the court, portions

13

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
                                        Pg 124 of 287

of Documents) that are the subject of the order to seal are filed in accordance with the procedures
that govern the filing of sealed Documents on the NYSCEF system.

(d) All pleadings, briefs, or memoranda which reproduce, paraphrase, or disclose any materials
which have previously been designated by any party as comprising or containing Protected
Information shall identify such Documents by the production number ascribed to them at the time
of production.

16. Any person receiving Protected Information shall not reveal or discuss such
information with any person not entitled to receive such information under the terms hereof.

17. The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material
that is provided under this Stipulation and Order shall maintain such material in a secure and safe
area and shall exercise the same standard of due and proper care with respect to the storage,
custody, use and/or dissemination of such material as is exercised by the recipient with respect to
its own proprietary material. "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material shall
not be copied, reproduced, summarized, extracted or abstracted, except to the extent that such
copying, reproduction, summarization, extraction or abstraction is reasonably necessary for the
conduct of this Litigation. All such copies, reproductions, summarizations, extractions, and
abstractions shall be subject to the terms of the Stipulation and Order and labeled in the same
manner as the designated material on which they are based.

18. Any Discovery Material that may contain Protected Information that has been
produced without identification as to its protected nature as provided in Paragraphs 2 and/or 13 of
this Stipulation and Order, may be so designated by the party asserting the confidentiality
designation by written notice to the undersigned counsel for the Receiving Party identifying the
Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within a reasonable

14

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM
NYSCEF DOC. NO. 68

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
                                                                     INDEX NO. 656964/2021

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

RECEIVED NYSCEF: 05/17/2022

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

time following the discovery that the Document or information has been produced without such designation. Promptly after providing such notice, the Producing Party shall provide re-labeled copies of the Discovery Material to the Receiving Party reflecting the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation. The Receiving Party shall replace the originally designated Discovery Material with the newly designated Discovery Material and shall destroy the originally designated Discovery Material or return such material to the Producing Party. To the extent such information may have been disclosed to anyone not authorized to receive Confidential Information or Highly Confidential Information, as applicable, the Receiving Party shall make reasonable efforts to retrieve the information promptly and to avoid any further disclosure.

19.     Extracts and summaries of Protected Information shall also be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the provisions of this Stipulation and Order.

20.     The production or disclosure of Protected Information shall in no way constitute a waiver of each Party's right to object to the production or disclosure of other information in this Litigation or in any other action.

21.     The procedure set forth below is intended to provide the Producing Party or any other party purporting to hold a privilege with an efficient method for retrieving or "clawing back" Protected Information that has been produced, subject to any resolution of any dispute over the privileged or protected status of the Protected Information, and for foreclosing any arguments of waiver.

22.     A Producing Party's disclosure in connection with this Litigation of one or more Documents that such Producing Party believes constitute, contain or reflect information otherwise

15

08-13555-mg    Doc 61482-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
                              Pg 126 of 287

RECEIVED NYSCEF: 05/24/2022

protected by the attorney-client privilege, the common interest privilege, the work-product doctrine or any other privilege or immunity from discovery ("Privileged Documents"), shall not constitute a waiver with respect to such Privileged Documents or generally of such privilege or immunity. If a Receiving Party receives materials that appear to be subject to an attorney-client privilege, the common interest privilege, or otherwise protected by a discovery privilege or immunity, the Receiving Party must refrain from further use or examination of the materials that may be privileged, and shall immediately notify the Producing Party, in writing, that he or she possesses material that appears to be privileged. In the event a Producing Party discovers it has disclosed Privileged Documents, the Producing Party may provide notice to the other Parties advising of the disclosure and requesting return or destruction of the Privileged Documents. Upon such notice, the Receiving Party shall make no further use or examination of the Privileged Documents and shall immediately segregate them in a manner that will prevent further disclosure or dissemination of their contents, and, within ten (10) days of receiving such notice of production of Privileged Documents, the Receiving Party shall destroy or return all original Documents identified by the Producing Party in such notice (whether electronic or hard copy), shall destroy or delete any and all copies (whether electronic or hard copy), and shall expunge from any other Document, information or material derived from the produced Privileged Documents. To the extent the Receiving Party provided any disclosed Privileged Documents to any other person or non-party, the Receiving Party shall promptly make reasonable efforts to retrieve and destroy such Privileged Documents and notify the Producing Party that it has done so. The party clawing back the produced Privileged Documents will provide the Receiving Party with a privilege log that reasonably identifies the basis for the assertion of privilege.

16

23.     If, based on (1) the privilege log entries provided to the Receiving Party by the

Producing Party, or (2) the Receiving Party's review of Documents that occurred prior to the

assertion of privilege and claw-back, there is a dispute over whether the clawed-back Documents at

issue are protected from disclosure by virtue of a privilege or immunity from discovery, the original

Documents shall nevertheless be immediately destroyed or returned to the Producing Party along

with all copies (whether electronic or hard copy) thereof. All counsel shall undertake reasonable

efforts to resolve the issue of whether the Documents are privileged without Court intervention. To

the extent counsel cannot resolve the issue, the Receiving Party may bring a motion to compel

production of the Privileged Documents, but may not assert as a ground for compelling production

the fact or circumstance that the Privileged Documents had already been produced. In conjunction

with such a motion, the Receiving Party may request the Court review in-camera the clawed-back

Documents at issue, and, if the Court so orders, the Producing Party shall provide the Privileged

Documents under seal to the Court for in-camera review. In the event of a motion to compel

production of the Privileged Documents, the burden is on the Producing Party to provide, in its

opposition to the motion to compel, information regarding the content and context of the Privileged

Documents sufficient to establish the applicability of any asserted privilege or immunity from

discovery.

24.     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed

Protected Information it has received from a Producing Party to any person or in any circumstance

not authorized under this Stipulation and Order, the Receiving Party must promptly, after discovery

of the disclosure, (a) notify the relevant Producing Party in writing of the unauthorized

disclosure(s) and the identity of such persons(s) to whom Protected Information was disclosed, (b)

make reasonable efforts to retrieve all copies of the Discovery Material containing Protected

17

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
Pg 128 of 287

INDEX NO. 656964/2021

RECEIVED NYSCEF: 05/24/2022

RECEIVED NYSCEF: 05/17/2022

Information from the person or persons to whom unauthorized disclosures were made (the "Unauthorized Recipient(s)"), (c) inform the Unauthorized Recipient(s) of all the terms of this Stipulation and Order, and (d) request the Unauthorized Recipient(s) to execute the undertaking attached hereto as Exhibit A.

25.    The Parties will exchange privilege logs in a timely fashion to ensure that there is reasonable time for the resolution of any privilege disputes, and the production of any Documents in connection with such resolution, prior to the close of fact discovery. The Parties need not log: (a) privileged communications to or from counsel in connection with the Litigation; or (b) Documents created at the request of counsel in connection with the Litigation. Nothing in this Stipulation and Order prevents the Parties from meeting and conferring or negotiating separate agreements regarding privilege log creation, production, content, format, or related issues.

26.    The Parties agree that they may not have an adequate remedy at law in the event that a court of competent jurisdiction determines that there is an actual or threatened breach of this Stipulation and Order by any Party and agree that, under such circumstances, the Parties may be entitled to specific performance and/or injunctive relief to enforce the terms hereof, in addition to any remedy to which they may be entitled at law or in equity.

27.    The provisions of this Stipulation and Order shall be binding upon the Parties. All modifications of, waivers of and amendments to this Stipulation and Order must be in writing and signed by, or on behalf of, the Parties.

28.    This Stipulation and Order is entered into without prejudice to the right of any Party to seek relief from, or modification of, this Stipulation and Order or any provisions thereof by

18

properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the New York Civil Practice Law and Rules or other applicable law.

29.     This Stipulation and Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

30.     This Stipulation and Order has no effect upon, and shall not apply to, the Parties' use of their own Discovery Material for any purpose. Nothing herein shall impose any restrictions on the use or disclosure by a Party of Documents, materials, or information designated as Protected Information that has been generated or obtained lawfully by such Party independently of the proceedings in this Litigation.

31.     In the event that additional parties join or are joined in this Litigation, they shall not have access to Protected Information until the newly joined party, by its counsel, has executed and filed with the Court its agreement to be fully bound by this Stipulation and Order.

32.     The Parties agree to be bound by the terms of this Stipulation and Order pending the entry by the Court of this Stipulation and Order, and any violation of its terms shall be subject to the same penalties and sanctions, as if this Stipulation and Order had been entered by the Court.

33.     If any Receiving Party is subpoenaed in any other action or proceeding, or is served with a Document demand or is otherwise compelled by law to produce Documents (collectively, a "Demand"), and such Demand seeks Discovery Material that was produced or designated as Protected Information, or that reflects or contains Protected Information, by someone other than the Receiving Party, the Receiving Party shall give prompt written notice by hand or electronic or facsimile transmission, within ten (10) business days of receipt of such Demand, to the Party or its

19

counsel who produced or designated the material as Protected Information. The Receiving Party shall not produce any of the Producing Party's Protected Information, unless Court-ordered or otherwise required by law, for a period of at least ten (10) days after providing the required notice to the Producing Party. If, within ten (10) days of receiving such notice, the Producing Party gives notice to the Receiving Party that the Producing Party opposes production of its Protected Information, the Receiving Party shall object, citing this Stipulation and Order, and not thereafter produce such Protected Information, except as required by law. The Producing Party shall be solely responsible for pursuing any objection to the requested production. Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Stipulation and Order to challenge or appeal any order requiring production of Protected Information covered by this Stipulation and Order, or to subject itself to any penalties for non- compliance with any legal process or order, or to seek any relief from this Court. In the event that Protected Information is produced to a non-party to this Stipulation and Order in response to a Demand, such Discovery Material shall continue to be treated in accordance with the designation as Confidential or Highly Confidential Information by the Parties to this Stipulation and Order.

34.     To the extent a Receiving Party is required to disclose Protected Information produced in the Litigation, without a subpoena or other form of legal process, by a regulatory or supervisory agency exercising its visitorial powers pursuant to 12 U.S.C. § 484 and/or 12 C.F.R. § 7.4000 ("Regulatory Demand") and compliance with the Regulatory Demand renders the Party unable to comply with Paragraph 33 hereof, the Party may comply with the Regulatory Demand and shall give prompt written notice by hand or electronic or facsimile transmission as soon as is practicable following receipt of the Regulatory Demand and no later than the time at which the Party produces the Protected Information in response to the Regulatory Demand, unless the

20

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/17/2022
NYSCEF DOC. NO. 68                                   RECEIVED NYSCEF: 05/17/2022

Receiving Party is prohibited by law from providing notice of the Regulatory Demand to the Producing Party.

35.     No Party shall produce or be requested to produce or identify any material or information that the Party is prohibited by law from disclosing under 31 U.S.C. § 5318(g), 31 C.F.R. § 103.18(e), or 12 C.F.R. § 510.5.

36.     For good cause shown, the following provisions shall apply to Non-Party Borrower Information. To the extent any federal or state law or other legal authority governing the disclosure or use of Non-Party Borrower Information (hereinafter, "Non-Party Borrower Information Law") permits disclosure of such information pursuant to an order of a court, this Stipulation and Order shall constitute compliance with such requirement. To the extent any Non-Party Borrower Information Law requires a Producing Party, including third- parties, to obtain a Court-ordered subpoena or to give notice or obtain consent, in any form or manner, from any person or entity before disclosure of any Non-Party Borrower Information, the Court finds that, in the view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, there is good cause to excuse such requirement, and this Stipulation and Order shall constitute an express direction that the Producing Party is exempted from obtaining a Court-ordered subpoena or having to notify and/or obtain consent from any person or entity prior to the disclosure of Non-Party Borrower Information. To the extent that any Non-Party Borrower Information Law requires that any person or entity be notified prior to disclosure of Non-Party Borrower Information except where such notice is prohibited by Court order, the Court directs that, in view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, the Producing Parties are explicitly prohibited from

21

providing such notice; provided, however, that this Stipulation and Order shall not prohibit any Producing Party from contacting any person or entity for any other purpose. Any Producing Party may seek additional orders from this Court that such party believes may be necessary to comply with any Non-Party Borrower Information Law.

37.     Nothing herein shall prevent any Receiving Party from disclosing Protected Information to the extent necessary to report to appropriate taxing authorities, or to the accountants or independent public auditors of the Receiving Party in confidence, as and only to the extent required to perform auditing or tax accounting work; and (b) to the extent necessary for purposes of financial reporting, including United States Securities and Exchange Commission and regulatory filings, and other regulatory requests.

38.     For the avoidance of doubt, nothing herein shall preclude counsel from giving advice to his or her client in this Litigation that includes a general evaluation of Protected Information, provided that counsel shall not disclose the contents of any Protected Information in violation of the terms of this Stipulation and Order.

39.     Any Party, in conducting discovery from non-parties in connection with the Litigation, shall provide any non-party from which it seeks discovery with a copy of this Stipulation and Order so as to inform each such non-party of his, her, or its rights herein. If a non-party provides discovery to any Party in connection with the Litigation, the provisions of this Stipulation and Order shall apply to such discovery as if such discovery were being provided by a Party. Under such circumstances, the non-party shall have the same rights and obligations under the Stipulation and Order as held by the Parties. For the avoidance of doubt, non-parties may designate

22

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

Discovery Material as Confidential Information or Highly Confidential Information pursuant to Paragraphs 3(a) and 3(c) as set forth herein.

40.    This Stipulation and Order shall continue to be binding after the conclusion of this Litigation except (a) that there shall be no restriction on Documents that are used as exhibits in Court (unless such exhibits were filed under seal and never unsealed); and (b) that a Party may seek the written permission of the Producing Party or further order of the Court with respect to dissolution or modification of the Stipulation and Order.

41.    Nothing herein shall be deemed to waive any privilege recognized by law, or shall be deemed an admission as to the admissibility in evidence of any Privileged Information, facts, or Documents revealed in the course of disclosure.

42.    Within ninety (90) days after the final termination of this Litigation by settlement (including, to the extent applicable, final court approval of such settlement) or exhaustion of all appeals, all Protected Information produced or designated and all reproductions thereof, shall be returned to the Producing Party or shall be destroyed, at the option of the Producing Party, which option shall be communicated in writing to the Receiving Party promptly. In the event that any Producing Party opts for destruction of its Protected Information, the Receiving Party shall certify, in writing, within ninety (90) days of the final termination of this Litigation that it has undertaken its best efforts to destroy such physical objects and Documents, and that such physical objects and Documents have been destroyed to the best of its knowledge. These best efforts need not include destroying Protected Information residing on back-up tapes or other disaster recovery systems. Notwithstanding anything to the contrary, counsel of record for the Parties may retain copies of Documents constituting work product, reports, pleadings, motion papers, discovery responses,

23

deposition and trial transcripts and deposition and trial exhibits. This Stipulation and Order shall not be interpreted in a manner that would violate any applicable canons of ethics or codes of professional responsibility. Nothing in this Stipulation and Order shall prohibit or interfere with the ability of counsel for any Party, or of experts or consultants specially retained for this case, to represent any individual, corporation, or other entity adverse to any Party or its affiliate(s) in connection with any other matters. For the avoidance of doubt, experts, third-party vendors, and consultants who have received Protected Information shall also be required to return or destroy such Protected Information pursuant to the terms of this paragraph.

43.    All Discovery Material shall be used solely for the purpose of conducting this Litigation and not for any other purpose whatsoever.

44.    Except as specifically provided herein, the terms, conditions, and limitations of this Stipulation and Order shall survive the termination of this Litigation.

45.    During the pendency of this Litigation, the Court shall retain jurisdiction over this Order, and persons who receive Discovery Material that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be subject to this Stipulation and Order, including any proceedings relating to their performance under, or compliance with, this Stipulation and Order.

46.    The Court will not retain jurisdiction after the conclusion of this Litigation for enforcement of this Stipulation and Order with respect to the Litigation.

47.    To maximize the security of information in transit, any media on which Protected Information is produced shall be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. If a party provides another party's Protected

24

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM     INDEX NO. 656964/2021
NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM     RECEIVED NYSCEF: 05/17/2022

RECEIVED NYSCEF: 05/17/2022

Information to a third party, as identified and permitted under this Stipulation and Order, that party shall comply with the requirements of this paragraph as if it were the Producing Party.

25

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM   INDEX NO. 656964/2021

NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM   RECEIVED NYSCEF: 05/17/2022

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

Dated: May 17, 2022
New York, New York

**LUNDIN PLLC**
John M. Lundin
Alexandra M.C. Douglas
405 Lexington Avenue
26th Floor
New York, NY 10174
(212) 541-2402
JLundin@LundinPLLC.com
ADouglas@LundinPLLC.com

John J.D. McFerrin-Clancy
17 State Street, 40th Floor
New York, NY 10004
(646) 771-7377
jmc@mcferrin-clancy.com

*Attorneys for Plaintiffs Mark A. Zittman,*
*IRA FBO Mark Zittman, Mark A.*
*Zittman as Beneficiary of IRA FBO*
*Mark Zittman, Mark A. Zittman as*
*Trustee of the Mark A. Zittman*
*Revocable Trust, and Mark A. Zittman*
*Revocable Trust*

Respectfully submitted,

**JONES DAY**
David F. Adler
Michael T. Marcucci
100 High Street
Boston, MA 02110
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Joseph C. Barry
Calland M. Ferraro
North Point
901 Lakeside Avenue East
Cleveland, OH 44114-1190
(216) 586-3939; (216) 579-0212 (fax)
jbarry@jonesday.com
cferraro@jonesday.com

*Attorneys for Defendant U.S. Bank*
*National Association*

Dated: 5/24/22

ENTER.

Hon. Joel M. Cohen, J.S.C.

26

## EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MARK A. ZITTMAN, IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Beneficiary of IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Trustee of the MARK A. ZITTMAN REVOCABLE TRUST, and MARK A. ZITTMAN REVOCABLE TRUST | Index No.:  656964/2021 <br><br> Part 3 <br><br> (Cohen, J.) |
| Plaintiffs, <br><br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION, <br><br> Defendant. | STIPULATION AND [PROPOSED] CONFIDENTIALITY AND PROTECTIVE ORDER |

## UNDERTAKING FOR THE USE OF CONFIDENTIAL INFORMATION

I, _____, state that:

1.     My business address is _____

2.     My present employer is _____

3.     My present occupation or job description is _____

4.     I have received a copy of the Stipulation and Confidentiality and Protective Order (the "Stipulation and Order") entered in the above-entitled action (the "Litigation") on

_____

5.     I have carefully read and understand the provisions of the Stipulation and Order.

6.     I will comply with all of the provisions of the Stipulation and Order.

A-1

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/24/2022
    RECEIVED NYSCEF: 05/17/2022

7.    I will hold in confidence, will not disclose to anyone not qualified under the Stipulation and Order, and will use only for purposes of this Litigation, any Confidential Information or Highly Confidential Information that is disclosed to me.

8.    At the conclusion of my work on this matter, I will return or destroy, to the extent permitted by law, all Protected Information that comes into my possession, and Documents or things that I have prepared relating thereto, to counsel for the Party by whom I am employed or retained, or to counsel from whom I received the Protected Information.

9.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulation and Order in this Litigation.

Dated: _____    By: _____

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------------- x
                                                   :

|  |  |
|---|---|
| | **Index No.** |
| | **656964/2021** |
| **MARK A. ZITTMAN, IRA FBO MARK** | |
| **ZITTMAN, MARK A. ZITTMAN as Beneficiary of** | |
| **IRA FBO MARK ZITTMAN, MARK A.** | |
| **ZITTMAN as Trustee of the MARK A. ZITTMAN** | **Hon. Joel M. Cohen** |
| **REVOCABLE TRUST, and MARK A. ZITTMAN** | **(IAS Part 3)** |
| **REVOCABLE TRUST,** | |

                    **Plaintiffs,**

      **v.**

**U.S. BANK, NATIONAL ASSOCIATION as**
**Trustee (and any predecessors or successors**
**thereto),**

                **Defendant.**

------------------------------------------------------------- X

## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:    Lehman Brothers Holdings Inc.
       c/o Corporation Service Company
       80 State St.
       Albany, NY 12207

      YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

      In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Lehman Brothers Holdings Inc.  must designate one or more former officers, directors, members or

employees, or other individual(s) who consent to testify on its behalf.  Such designation must include the identity, and the description or title of such individual(s), and if Lehman Brothers Holdings Inc. designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.


Dated: July 19, 2022                    /s/ *Michael A. Collyard*
                                        ROBINS KAPLAN LLP
                                        Michael A. Collyard
                                        Peter C. Ihrig
                                        800 LaSalle Avenue, Suite 2800
                                        Minneapolis, MN 55402
                                        (612) 349-8500
                                        mcollyard@robinskaplan.com
                                        pihrig@robinskaplan.com

                                        *Attorneys for Defendant U.S. Bank National Association*

## SCHEDULE A

### I.    DEFINITIONS

1.    "Lehman Brothers Holdings Inc.," "You" or "Your" refers individually and collectively to Lehman Brothers Holdings Inc. and any of its affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Originator with respect to the Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.    "Action" means the above-captioned lawsuit styled as or related to *Zittman, et al. v. U.S. Bank National Association*, Index No. 656964/2021 (Sup. Ct. N.Y. Cnty.).

3.    "Assignment Agreement" means any assignment agreement, or similar agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

4.    "Assignor(s)" means any entity who assigned or transferred its rights in a Subject Loan.

5.    "Certificate(s)" refers individually and collectively to any of the certificates issued by the Trusts.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.    "Completeness R&Ws" means any representation or warranty made by any Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer

1

concerning the completeness of the Mortgage Files for the Trusts, the breach of which the

Trustee is obligated to enforce under the applicable Governing Agreements.

8.    "Concerning" means relating to, referring to, describing, evidencing, or

constituting.

9.    "Custodial Agreement" means any agreement setting forth the rights, duties, and

obligations of a Custodian for the Covered Trusts.

10.    "Depositor" means any entity defined in the Governing Agreements for any Trust

as a depositor, as well as its officers, directors, employees, corporate parents, predecessors,

successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other

Persons acting or purporting to act on its behalf.

11.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" as described in Fed R. Civ.

P. 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of the

term.

12.    "Exception(s)" means the notation(s) or description in any Document or

certification that a Mortgage File is incomplete, missing documents, or otherwise does not

comply with the requirements as prescribed in the Governing Agreements for the Trusts.

13.    "Exception Report(s)" means a report accompanying a certification provided

pursuant to a Governing Agreement that identifies documents required to be included in the

Mortgage File that are missing, defective, or incomplete as of the date of the report or that

otherwise failed to satisfy the requirements of the Governing Agreements.

14.    "Governing Agreement(s)" means all agreements governing the Trusts, as

applicable, along with related exhibits, schedules, and appendices, including, but not limited to,

2

Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements,

MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial

Agreements, and Servicing Agreements.

15.    "Identify(ing)" (with respect to Persons) means to give, to the extent known, the

Person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment.  Once a Person has been identified

with respect to this subparagraph, only the name of that Person need be listed in response to

subsequent discovery requesting the identification of Persons.

16.    "Identify(ing)" (with respect to Documents) means to give, to the extent known,

the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and

(iv) author(s), addressee(s) and recipient(s).

17.    "Investigation" refers to any internal or external analysis, review, inquiry, probe,

audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or

informal.

18.    "Investor" refers to any entity that has invested in the Certificates of any of the

Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-

interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries,

present or former officers, directors, partners, employees, representatives, agents and

intermediaries, and all other Persons acting or purporting to act on its behalf, including its

investment advisors and attorneys, in its capacity as an Investor.

19.    "Loan File" means all Documents that are maintained in the ordinary course of

originating, underwriting, approving, and funding any Subject Loan, including, but not limited

to, Documents completed or submitted by a borrower or mortgagor or his or her agent when

applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

20.    "Loan Servicing File" means all Documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, Documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan servicing records, including, without limitation, call notes, foreclosure files and Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related Documents; (viii) all records relating to repurchase analyses, demands, investigations and Communications; and (ix) servicing guidelines and procedures.

21.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a loan-by-loan identification of the Subject Loans (which descriptions may include information concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral information, borrower income, and/or other information about the borrower or the loan).

22.    "Master Servicer" means any entity defined in the Governing Agreements for any Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

4

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

23.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or

representations and warranties agreement, or any similar agreement, between an Originator and a

Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in

which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in

any of the Trusts.

24.    "Mortgage File(s)" means the file consisting of documents to be delivered to the

Custodian under the terms of the Governing Agreements, including, but not limited to, the note,

mortgage, title policy, and assignments.

25.    "Originator" has the same meaning ascribed to it in the relevant Governing

Agreements or prospectus supplement for each Trust, and any other entity that originated one or

more of the Subject Loans, as well as their officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on their behalf.

26.    "Person(s)" refers to natural persons, proprietorships, governmental agencies,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

entities.

27.    "Plaintiffs" means, collectively, Mark A. Zittman; IRA FBO Mark Zittman; Mark

A. Zittman as Beneficiary of IRA FBO Mark Zittman; Mark A. Zittman as Trustee of the Mark

A Zittman Revocable Trust; Mark A Zittman Revocable Trust; and any officer, agent,

employee, attorney, or Person acting under the control of or on behalf of the foregoing, or any

affiliated entity, including entities involved in or providing information, research, or analysis

5

relating to the investment of these entities. For the avoidance of doubt, and without otherwise limiting the foregoing, the definition of "Plaintiffs" includes any investment advisor, sub-advisor, custodian, administrator, or other Person or entity providing services to the "Plaintiffs."

28.    "Prior Holder" means any Investor other than Plaintiffs who previously owned any of the Certificates that were ultimately sold or transferred to Plaintiffs.

29.    "Refer" or "relate" or "referring" or "relating" means all Documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

30.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100—Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

31.    "RMBS" means any Residential Mortgage Backed Security as that term is commonly known in the industry.

32.    "Service" or "Servicing" means the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

33. "Servicer" means the entities identified as a Servicer (or any successor Servicer), Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer), or special servicer (or any successor special servicer) in the relevant Governing Agreements for each Trust, and any other entity that services loans and/or is responsible for any portion of the Servicing functions performed, or required to be performed, with respect to each of the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on their behalf.

34. "Servicing Agreement" means any servicing agreement or servicing and sale agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the loans underlying or collateralizing the Certificates.

35. "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other entity that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

36. "Subject Loan(s)" refers individually and collectively to any of the loans underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of Certificates issued pursuant to the Trusts.

37. "Trust(s)" refers individually and collectively to the issuing entities of the Certificates, as identified in Appendix 1.

7

38.     "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

39.     "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on their behalf, including their attorneys.

40.     "Warrantor" means any entity that made a representation and warranty regarding the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

## II.    __INSTRUCTIONS__

1.     "All/any/each" shall be construed as encompassing any and all.

2.     "And/or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

3.     References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be deemed to include that entity's current and former employees, agents, officers, directors, partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or any Person acting or purporting to act on its behalf.

4.     The singular form of a word shall be construed and applied to include the plural form, and vice versa.

8

5.      Each deposition topic and document request shall be construed independently, and no topic or request shall be viewed as limiting the scope of any other.

6.      If You object to a portion or aspect of any deposition topic or document request, state the grounds for Your objections with specificity.

7.      Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.      Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.      You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.     Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

11.    If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

12.    If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

13.    If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

14.    If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

(a)    the Document is missing or lost;

(b)    the Document has been destroyed;

10

(c)     the Document has been transferred or delivered to another Person or entity and, if so, to whom and at whose request;

(d)     the Document has been otherwise disposed of; and

(e)     a precise statement of the circumstances surrounding the disposition of the Document and the date of its disposition.

15.     Documents not otherwise responsive to these requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these requests, or if such Documents are attached to Documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.    **FORM OF PRODUCTION – HARD COPY**

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original Document contains color necessary to understand the meaning or content of the Document, the Document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each Document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

11

## IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the Document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint Documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original Document contains color, the Document should be produced as single-page, 300 DPI, color JPG images. For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files. Documents for which text cannot be extracted will be produced with OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the Document has been produced in native format should also be provided. If Documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either

12

party believes that native files should be produced for a specific Document or class of

Documents not required to be produced in native format pursuant to this paragraph or to the

extent records do not easily conform to native or TIFF format (i.e., structured data), the parties

should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents

(based on MD5 or SHA-1 hash values, at the family level). Attachments should not be

eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments

are also duplicates. An e-mail that includes content in the BCC or other blind copy field should

not be treated as a duplicate of an e-mail that does not include content in those fields, even if all

remaining content in the e-mail is identical. Removal of near-duplicate Documents is not

acceptable. De-duplication should be done across the entire collection (i.e., global level) and the

ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a

source of that Document. To accommodate for rolling productions, for ESI that is removed as

duplicate from earlier productions, the producing party should provide an overlay file no later

than three days after the date of each rolling production that includes the duplicate custodian

names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received

during loan origination, underwriting, approval and funding, including any supplemental

materials received post-funding) and/or Loan Servicing Files, shall be organized as they were

maintained in the ordinary course of business, but produced in reasonably useable format. The

following specifications will be met when producing Loan Files: the files will be produced as

TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All

files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma *.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

14

## V.     RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2004, through the date of Your response (the "relevant time period"), unless otherwise specifically indicated, and shall include all Documents and information that relate to such period, even though prepared or published outside of the relevant time period.  If a Document prepared before this period is necessary for a correct or complete understanding of any Document covered by a request, You must produce the earlier Document as well.  If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the request.

## VI.    TOPICS FOR EXAMINATION

**TOPIC NO. 1:** Your policies, procedures, and practices concerning Your retention of documents comprising the Mortgage Files for the Subject Loans.

**TOPIC NO. 2:** Your policies, procedures, and practices for curing document exceptions in RMBS trusts, including Exceptions with respect to Mortgage Files for the Subject Loans.

**TOPIC NO. 3:** Your policies, procedures, and practices concerning Your evaluation of and response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of Completeness R&Ws, including any policies, procedures, and practices to determine whether an Exception or breach of a Completeness R&W increases the risk of loss on mortgage loan.

**TOPIC NO. 4:** Your Communications with any Person concerning any Exceptions noted in the Exception Reports for the Trusts.

**TOPIC NO. 5:** Your Communications with any Person concerning any demand from a Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of Completeness R&Ws.

**TOPIC NO. 6:** Your efforts to respond to any notice or demand from a Person to cure, substitute, or repurchase a Subject Loan based upon Exceptions or breaches of Completeness R&Ws, including the ultimate resolution of any such notices or demands.

**TOPIC NO. 7:** Your efforts to provide a notice or to respond to a notice concerning any materially defective document in, or document missing from, a Mortgage File for the Trusts, including the ultimate resolution of any such notices or demands.

15

**TOPIC NO. 8**: The Subject Loans You cured, substituted, or repurchased based upon Exceptions or breaches of Completeness R&Ws.

## VII.    DOCUMENTS REQUESTED

**REQUEST NO. 1**:  All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2:** All Documents subpoenaed by the Plaintiffs in this Action, if any, and all Communications with the Plaintiffs concerning any such subpoena(s).

**REQUEST NO. 3:** All Documents and Communications with the Plaintiffs or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4:** All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions or actual or alleged breaches of Completeness R&Ws.

**REQUEST NO. 5:** All Documents and Communications between the Plaintiffs or a Prior Holder and You concerning the Trusts or the Subject Loans, including but not limited to Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 6:** All Documents and Communications that demonstrate Your financial ability or inability, between the date of issuance of the Certificates in the Trusts and the date six (6) years from issuance of the Certificates in the Trusts, to repurchase or replace any loans that You originated in the Trusts and whether You had the ability or inability, in lieu of repurchasing or replacing said loans to substitute for such loans, including by contributing cash for loans with losses equal to those losses in the same time period.

**REQUEST NO. 7:** All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor, or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Exceptions or Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations (if any) in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 8:** Any policies and procedures concerning cure, repurchase or substitution obligations to RMBS trusts with respect to Mortgage Files containing Exceptions or breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating cure, repurchase and/or substitution demands, policies and procedures for determining whether an Exception increases the risk of loss on the loan, policies and procedures related to providing notice of Exceptions or breaches of Completeness R&Ws pursuant to the Governing Agreements, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

16

**REQUEST NO. 9:** All Documents, Communications, and Agreements (including settlement agreements) between You and any Person, including drafts thereof, concerning the resolution of any of Your actual or potential liability relating to any Subject Loans with Exceptions or breaches of Completeness R&Ws.

**REQUEST NO. 10:** All Documents and Communications indicating how much You reserved during the relevant time period, by year, for mortgage loan repurchases based upon Exceptions or breaches of Completeness R&Ws, including, but not limited to, how many mortgage loans You had available or in reserve for substitution, by year, and the terms of those loans.

**REQUEST NO. 11:** All Documents reflecting and identifying the mortgage loans You substituted or repurchased during the relevant time period based upon Exceptions or breaches of Completeness R&Ws, including the name of the trust and, for each substituted or repurchased loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees, and, as applicable, the repurchase price.

**REQUEST NO. 12:** All Documents and Communications concerning notices or demands relating to Exceptions or breaches of Completeness R&Ws that You sent to any other Originator, Seller, Sponsor, Depositor, Assignor, Warrantor, or any other Person against which You held a claim for repurchase or indemnification, including the name of the Trust, the account number(s) for each loan at issue, Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 13:** All Documents You created or provided to any Person in response to a demand from any Person to cure, substitute, or repurchase a mortgage loan based upon Exceptions or breaches of a Completeness R&Ws.

**REQUEST NO. 13:** All Loan Origination Files and Mortgage File documents (not previously provided to the Custodian) concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiffs or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**APPENDIX 1**

Trusts

1.   ABFC 2007-WMC1
2.   BAFC 2006-H
3.   BAFC 2007-C
4.   BAFC 2007-D
5.   BSABS 2006-AC2
6.   CSAB 2006-3
7.   GSAA 2006-1
8.   GSAA 2006-3
9.   GSAMP 2006-HE4
10.  GSR 2005-AR7
11.  GSR 2006-AR1
12.  HEAT 2005-6
13.  HEAT 2005-7
14.  HEAT 2006-3
15.  HEAT 2006-4
16.  HVMLT 2005-3
17.  HVMLT 2006-1
18.  HVMLT 2006-4
19.  LXS 2005-5N
20.  LXS 2005-9N
21.  LXS 2007-15N
22.  MSM 2006-1AR
23.  SASC 2007-EQ1
24.  SURF 2006-AB3
25.  SURF 2007-BC2
26.  TMST 2007-3
27.  WFMBS 2006-AR1

# TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACHCOUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

At IAS Part 3 of the Supreme Court of the State of New York, Commercial Division, County of New York, at the courthouse thereof, 60 Centre Street, New York, New York, on the 17th day of May, 2022

PRESENT: Honorable Joel M. Cohen, Justice
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------- x
                                                     :
                                                     :   Index No.
                                                     :   656964/2021
MARK A. ZITTMAN, IRA FBO MARK ZITTMAN,               :
MARK A. ZITTMAN as Beneficiary of IRA FBO            :   Hon. Joel M. Cohen
MARK ZITTMAN, MARK A. ZITTMAN as Trustee             :   (IAS Part 3)
of the MARK A. ZITTMAN REVOCABLE TRUST,              :
and MARK A. ZITTMAN REVOCABLE TRUST,                 :
                                                     :
               Plaintiffs,                           :   STIPULATION AND
                                                     :   ~~PROPOSED~~
                                                     :   CONFIDENTIALITY AND
       v.                                            :   PROTECTIVE ORDER
                                                     :
                                                     :
U.S. BANK, NATIONAL ASSOCIATION as Trustee           :
(and any predecessors or successors thereto),        :
                                                     :
               Defendant.                            :
                                                     :
--------------------------------------------------- X

       This matter having come before the Court by stipulation of Plaintiffs Mark A. Zittman, IRA

FBO Mark Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A. Zittman

as Trustee of the Mark A. Zittman Revocable Trust, and Mark A. Zittman Revocable Trust and

Defendant U.S. Bank National Association, for the entry of a protective order pursuant to CPLR

3013(a), limiting the review, copying, dissemination, and filing of confidential and/or proprietary

Documents and information to be produced by the Parties or their respective counsel, or by any

1

non-party, in the course of discovery in this matter to the extent set forth below (the "Stipulation and Order"). Having found that the Parties, by, between, and among their respective counsel, have stipulated and agreed to the terms set forth herein, and good cause having been shown,

IT IS ORDERED that:

1.    This Stipulation and Order is being entered into to facilitate the production, exchange, and discovery of Documents and information that the Parties agree merit confidential treatment. This Stipulation and Order shall govern the handling of Documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admission, responses to requests for production, and any other information or material produced, given, or exchanged by and among the Parties and any non-parties to the above-captioned action (the "Litigation") in connection with discovery in the Litigation (such information or material hereinafter referred to as "Discovery Material").

2.    A Producing Party (as defined below) may designate Discovery Material in connection with this Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" either by notation on the Document, statement on the record of a deposition, written notice to counsel for the Parties hereto, or by other appropriate means. In the case of Documents produced in native, electronic form, the confidentiality can be designated on the placeholder sheet produced along with that Document, or in a confidentiality metadata field. A Producing Party (as defined below) who designates any Discovery Material "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" bears the burden of establishing the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" status of such Discovery Material in any situation in which the designation is at issue, and nothing in this Stipulation and Order shall be construed to alter such burden.

3.    As used herein:

2

(a)  "Plaintiffs" or "Zittman" shall mean Plaintiffs Mark A. Zittman, IRA FBO Mark
Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A.
Zittman as Trustee of the Mark A. Zittman Revocable Trust, and Mark A.
Zittman Revocable Trust, including Plaintiffs' investment advisors.

(b)  "Defendant" or "U.S. Bank" shall mean Defendant U.S. Bank National
Association.

(c)  "Party" shall mean Plaintiffs or Defendant, and, Defendant together with
Plaintiffs, the "Parties".

(d)  "Confidential Information" shall mean all Discovery Material, and all
information contained therein, and other information designated as
"CONFIDENTIAL," that the Producing Party (as defined below) reasonably and
in good faith believes constitutes and/or contains (i) any trade secret or other
confidential non-public research, design, development, financial or commercial
information or (ii) Non-Party Borrower Information (as defined below). In
addition, a Producing Party (as defined below) may designate as
"CONFIDENTIAL" non-public personal information, other sensitive personally
identifiable information (such as Social Security numbers, dates of birth, home
addresses, phone numbers, email addresses) or other information for which
applicable federal or state law requires confidential treatment.

(e)  "Document" shall mean all writings, drawings, graphs, charts, photographs,
sound recordings, images, and other data or data compilations, any recorded
form of information, whether in printed, electronic, or other format, and
including deposition transcripts, answers to interrogatories, and other discovery
requests and responses.

3

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68                                         RECEIVED NYSCEF: 05/17/2022

(f)    "Highly Confidential Information" shall mean all Discovery Material, and all information contained therein, and other information designated as "HIGHLY CONFIDENTIAL," that the Producing Party (as defined below) reasonably and in good faith believes, at the time of designation, constitutes and/or contains current trade secrets, proprietary business information, or other information the disclosure of which would result in competitive, commercial or financial harm to the Producing Party (as defined below) or its personnel, clients or customers if disclosed. Should a Producing Party identify categories of Documents in addition to those identified in this paragraph that the party wishes to designate as "HIGHLY CONFIDENTIAL," the Parties shall meet and confer in good faith regarding the Producing Party's proposed designation and, if the Parties are unable to reach agreement on the proposed designation, each Party expressly reserves the right to seek appropriate relief from the Court.

(g)    "Non-Party Borrower Information" shall mean any information that constitutes "nonpublic personal information" within the meaning of the Gramm-Leach Bliley Act, 15 U.S.C. § 6802, et seq. and its implementing regulations, including, but not limited to, any portion of a mortgage loan file, spreadsheet or other Document or data set that includes financial or credit information for any person (including any credit history, report or score obtained on any such person to determine the individual's eligibility for credit) together with personally identifiable information with respect to such person, including, but not limited to, name, address, Social Security number, loan number, telephone number, or place or position of work. As set forth in Paragraph 36 below, this Stipulation

4

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM INDEX NO. 656964/2021

NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

RECEIVED NYSCEF: 05/17/2022

and Order authorizes the disclosure of such Non-Party Borrower Information in this Litigation.

(h) "Protected Information" shall mean Confidential Information and Highly Confidential Information, collectively.

(i) "Producing Party" shall mean the Party to this Litigation who gives testimony or produces Documents or other materials containing Protected Information and/or any non-party producing or giving testimony concerning Protected Information in connection with discovery in this Litigation, or the Party asserting the confidentiality designation, as the case may be.

(j) "Receiving Party" shall mean the Party to this Litigation and/or any non-party receiving Protected Information in connection with discovery in this Litigation.

4.    The Receiving Party may, at any time, notify the Producing Party that the Receiving Party does not concur in the designation of Discovery Material as Confidential Information or Highly Confidential Information. The Parties shall meet and confer in good faith regarding any such disagreement over the classification of Discovery Material and, if the Producing Party does not agree to change the designation of such Discovery Material, the Receiving Party may move the Court for an order removing the designation of such Discovery Material as Protected Information. Upon such a motion, the Producing Party shall bear the burden to prove that the Discovery Material in question is Protected Information. If such a motion is filed, the Discovery Material shall be deemed Protected Information, with the same confidentiality designation as asserted by the Producing Party, unless and until the Court rules otherwise.

5.    In order to expedite the production of voluminous materials, a Producing Party may, but is not required to, produce materials without a detailed review for confidentiality designation

5

and may designate collections of Documents that, by their nature, contain Confidential Information

as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" notwithstanding that some of the

Documents within the collection may not qualify for such designation. A Party's "bulk"

designation of Documents shall not constitute waiver of any Party's rights set forth in Paragraph 20

of this Stipulation and Order. Notwithstanding the foregoing, a Receiving Party may at any time

challenge the designation of one or more particular Documents on the grounds that the

Document(s) do not qualify for protection, including as provided in Paragraphs 4 and 29 of this

Stipulation and Order.

6.      Except with the prior written consent of the Producing Party or by Order of the

Court, Confidential Information shall not be furnished, shown or disclosed to any person or entity

except:

      (a)    counsel for the Parties to this Litigation and their associated attorneys, paralegals

and other professional personnel (including support staff) who are directly

assisting such counsel in the preparation of this Litigation for trial or other

proceeding herein, are under the supervision or control of such counsel, and who

have been advised of their obligations hereunder;

      (b)    expert witnesses or consultants who are employed or retained by a Party in

connection with the prosecution or defense of this Litigation, and members of

the expert witnesses' or consultants' staff working under the expert witnesses' or

consultants' supervision, provided, however, that such Confidential Information

is furnished, shown or disclosed to them in accordance with Paragraph 8 hereof;

6

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
Pg 166 of 287

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021

RECEIVED NYSCEF: 05/17/2022

(c)    third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

(d)    the Court and Court personnel, if filed in accordance with Paragraph 15 hereof;

(e)    an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

(f)    trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

(g)    personnel of the Parties (including in-house counsel) actually engaged in assisting in the preparation of this Litigation for trial or other proceeding herein and who have been advised of their obligations hereunder;

(h)    former personnel of the Parties actually engaged in assisting in the preparation of this Litigation for trial or other proceeding herein provided, however, that such Confidential Information is furnished, shown, or disclosed to them in accordance with Paragraph 8 hereof;

(i)    any mediator or arbitrator engaged by the Parties to this Litigation;

(j)    the insurers and reinsurers of the Parties to this Litigation, and counsel to such insurers and reinsurers as necessary for the prosecution or defense of this Litigation; and

(k)    any other person agreed to by the Parties.

7

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM
NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68

INDEX NO. 656964/2021
RECEIVED NYSCEF: 05/17/2022

RECEIVED NYSCEF: 05/17/2022

7.     No disclosure of Highly Confidential Information may be made to any person or entity other than:

(a)     counsel for the Parties to this Litigation and their associated attorneys, paralegals and other professional personnel (including support staff) who are directly assisting such counsel in the preparation of this Litigation for trial or other proceeding herein, are under the supervision or control of such counsel, and who have been advised of their obligations hereunder. Disclosure to in-house counsel, paralegals, and other professional personnel (including support staff) shall be limited to those in-house counsel providing legal advice in connection with this Litigation and the paralegals and other professional personnel supporting such in-house counsel, and Highly Confidential Information may not be disclosed to any officers, directors, employees or agents of a Party except as otherwise provided in Section 7(h). For the avoidance of doubt, Highly Confidential Information disclosed to in-house counsel, paralegals, and other professional personnel may not be used for any business or other purpose unrelated to the prosecution or defense of this Litigation;

(b)     expert witnesses or consultants who are employed or retained by a Party in connection with the prosecution or defense of this Litigation, and members of the expert witnesses' or consultants' staff working under the expert witnesses' or consultants' supervision, provided, however, that such Highly Confidential Information is furnished, shown or disclosed in accordance with Paragraph 8 hereof. Such disclosure shall only be to the extent reasonably necessary for such expert witness or consultant to perform his or her work;

8

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM INDEX NO. 656964/2021
NYSCEF DOC. NO. 68
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM RECEIVED NYSCEF: 05/24/2022
NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

(c) third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

(d) the Court and Court personnel, if filed in accordance with Paragraph 15, hereof;

(e) an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

(f) trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

(g) any mediator or arbitrator engaged by the Parties to this Litigation;

the following persons (or any persons that may hold their respective positions in the future) who have been advised of their obligations hereunder: individuals at U.S. Bank holding the position of vice president or above with responsibility for litigation and disputes or oversight of this Litigation; and

(h) any other person agreed to by the Parties.

8. Before any disclosure of Protected Information is made pursuant to Paragraphs 6(b) or 6(h), or 7(b) hereof, counsel for the Receiving Party shall obtain from the intended recipient of the Protected Information such person's written undertaking, in the form of Exhibit A attached hereto, to comply with and be bound by its terms.

9

9.      Protected Information shall be utilized by the Receiving Party only for purposes of this Litigation, or the enforcement of insurance rights with respect to this Litigation, and for no other purposes.

10.     All depositions shall presumptively be treated as Confidential Information subject to this Stipulation and Order during the deposition and until fifteen (15) days after the final transcript of said deposition is received by counsel for each of the Parties, unless otherwise specified in writing or on the record of the deposition by the Producing Party. At or before the end of such fifteen (15) day period, the deposition, or pages thereof, may be designated for future purposes as Confidential Information or Highly Confidential Information by any Party or, where applicable, by the non-party providing the deposition testimony.

11.     Should the need arise for any of the Parties to disclose Protected Information during any hearing or trial before the Court, including through argument or the presentation of evidence, such Party may do so only after taking such steps as the Court shall deem necessary to preserve the confidentiality of such Protected Information.

12.     This Stipulation and Order shall not preclude counsel for the Parties from using Protected Information during any deposition in this Litigation, provided that prior to any such use, the Party intending to use Protected Information shall: (a) provide a copy of this Stipulation and Order to the witness, and others to whom disclosure is intended to be made; (b) explain the Stipulation and Order to said persons and/or cause them to read the Stipulation and Order; and (c) obtain from said persons properly executed undertakings, in the form of Exhibit A attached hereto, if such persons are not covered by Paragraphs 6 and 7 of this Stipulation and Order. Should any person refuse to execute the undertaking before or at the deposition, counsel for the Parties may

10

still use the Protected Information during the deposition, and the Parties agree that the use of such Protected Information during the deposition shall not negate its treatment as Protected Information pursuant to this Stipulation and Order. Counsel shall retain copies of the signed "Exhibit A" forms until the termination of this Litigation. The Parties shall act in good faith to eliminate, whenever possible, the expenditure of "on the record" time to effectuate or confirm compliance with this paragraph at any deposition.

13.    A Party may designate as Confidential Information any Discovery Material produced or given by any non-party to this case, or any portion thereof. In the case of Documents, designation shall be made by notifying all counsel, in writing, of those Documents that are to be stamped and treated as Confidential Information at any time up to thirty (30) days after actual receipt of copies of those Documents by counsel for the Party asserting the confidentiality designation. Prior to the expiration of such thirty (30) day period (or until a designation is made by counsel, if such a designation is made in a shorter period of time), all such Documents shall be treated as Confidential Information. In the case of testimony, designation shall be made by notifying all counsel, in writing, of those portions of a transcript which are to be stamped or otherwise treated as Confidential Information at any time up to thirty (30) days after the final transcript is received by counsel for the Party asserting the confidentiality designation.

14.    Disclosing parties shall designate and treat "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material as follows:

(a)    In the case of Documents, interrogatory answers, responses to requests to admit, and the information contained therein, designation shall be made by marking or stamping each page as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, prior to its production or disclosure to the Receiving Party.

11

Electronically stored information (other than that produced in native form) designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be marked or stamped as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, using means sufficient to ensure that every page of such Document, when printed, contains the appropriate mark or stamp. Electronically stored information produced in native format shall include any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation in the file name.

(b)     In the event that a disclosing party inadvertently fails to stamp or otherwise designate a Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at the time of its production, that disclosing party may stamp or otherwise designate the Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at any reasonable time thereafter. The delay in so designating a Document shall not, in and of itself, be deemed to have effected a waiver of any of the protections of this Stipulation and Order, and parties will make reasonable efforts to claw back any previously disseminated undesignated Documents that are later designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

(c)     Any "CONFIDENTIAL" material produced in a non-paper media (e.g., videotape, audiotape, computer disc) may be designated as such by labeling the outside of such non-paper media as "CONFIDENTIAL." In the event a Receiving Party generates any electronic copy, "hard copy," transcription, or printout from any such designated non- paper media, such party must treat each copy, transcription, or printout as "CONFIDENTIAL" pursuant to the terms of this Stipulation and Order.

12

15.    (a) A Party or, as appropriate, non-party, who seeks to file with the Court (i) any

deposition transcripts, exhibits, answers to interrogatories, or other Discovery Material which have

previously been designated as comprising or containing Protected Information, or (ii) any pleading,

brief or memorandum which reproduces, paraphrases or discloses Protected Information shall,

fourteen (14) days prior to filing any motion, provide the Producing Party with written notice of its

intent to file such material with the Court, so that the Producing Party may file by Order to Show

Cause a motion to seal such Protected Information; provided, however, that in the event that the

Party seeking to file or reference Protected Information identifies additional Protected Information

less than fourteen (14) days prior to the relevant filing date, that Party may supplement its initial

disclosure and the parties shall meet and confer to facilitate the filing by the Producing Party of any

motion to seal such Protected Information prior to the relevant filing date.

(b) Any motion to seal Protected Information must be filed seven (7) days prior to the deadline to

file the underlying motion or other filing, or promptly after disclosure of the intended use of

Protected Information, and the Protected Information shall not be filed until the Court renders a

decision on the motion to seal. If the Court does not decide the motion to seal prior to the deadline

to file the underlying motion or other filing, the filing Party (or, as appropriate, non-party) shall, on

the deadline to file the underlying motion or other filing, serve on the other Parties and provide the

Court with a complete and unredacted copy of the underlying motion or other filing. Within three

business days following the Court's determination of the motion to seal, the filing Party (or, as

appropriate, non-party) shall file the underlying motion or other filing with the Court in accordance

with the Court's order and Paragraph 15(c) below.

(c) If the Producing Party makes a timely motion to seal, and the motion is granted, the filing Party

(or, as appropriate, non-party) shall ensure that all Documents (or, if directed by the court, portions

13

of Documents) that are the subject of the order to seal are filed in accordance with the procedures that govern the filing of sealed Documents on the NYSCEF system.

(d)  All pleadings, briefs, or memoranda which reproduce, paraphrase, or disclose any materials which have previously been designated by any party as comprising or containing Protected Information shall identify such Documents by the production number ascribed to them at the time of production.

16.     Any person receiving Protected Information shall not reveal or discuss such information with any person not entitled to receive such information under the terms hereof.

17.     The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material that is provided under this Stipulation and Order shall maintain such material in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such material as is exercised by the recipient with respect to its own proprietary material. "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material shall not be copied, reproduced, summarized, extracted or abstracted, except to the extent that such copying, reproduction, summarization, extraction or abstraction is reasonably necessary for the conduct of this Litigation. All such copies, reproductions, summarizations, extractions, and abstractions shall be subject to the terms of the Stipulation and Order and labeled in the same manner as the designated material on which they are based.

18.     Any Discovery Material that may contain Protected Information that has been produced without identification as to its protected nature as provided in Paragraphs 2 and/or 13 of this Stipulation and Order, may be so designated by the party asserting the confidentiality designation by written notice to the undersigned counsel for the Receiving Party identifying the Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within a reasonable

14

time following the discovery that the Document or information has been produced without such designation. Promptly after providing such notice, the Producing Party shall provide re-labeled copies of the Discovery Material to the Receiving Party reflecting the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation. The Receiving Party shall replace the originally designated Discovery Material with the newly designated Discovery Material and shall destroy the originally designated Discovery Material or return such material to the Producing Party. To the extent such information may have been disclosed to anyone not authorized to receive Confidential Information or Highly Confidential Information, as applicable, the Receiving Party shall make reasonable efforts to retrieve the information promptly and to avoid any further disclosure.

19.     Extracts and summaries of Protected Information shall also be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the provisions of this Stipulation and Order.

20.     The production or disclosure of Protected Information shall in no way constitute a waiver of each Party's right to object to the production or disclosure of other information in this Litigation or in any other action.

21.     The procedure set forth below is intended to provide the Producing Party or any other party purporting to hold a privilege with an efficient method for retrieving or "clawing back" Protected Information that has been produced, subject to any resolution of any dispute over the privileged or protected status of the Protected Information, and for foreclosing any arguments of waiver.

22.     A Producing Party's disclosure in connection with this Litigation of one or more Documents that such Producing Party believes constitute, contain or reflect information otherwise

15

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

protected by the attorney-client privilege, the common interest privilege, the work-product doctrine or any other privilege or immunity from discovery ("Privileged Documents"), shall not constitute a waiver with respect to such Privileged Documents or generally of such privilege or immunity. If a Receiving Party receives materials that appear to be subject to an attorney-client privilege, the common interest privilege, or otherwise protected by a discovery privilege or immunity, the Receiving Party must refrain from further use or examination of the materials that may be privileged, and shall immediately notify the Producing Party, in writing, that he or she possesses material that appears to be privileged. In the event a Producing Party discovers it has disclosed Privileged Documents, the Producing Party may provide notice to the other Parties advising of the disclosure and requesting return or destruction of the Privileged Documents. Upon such notice, the Receiving Party shall make no further use or examination of the Privileged Documents and shall immediately segregate them in a manner that will prevent further disclosure or dissemination of their contents, and, within ten (10) days of receiving such notice of production of Privileged Documents, the Receiving Party shall destroy or return all original Documents identified by the Producing Party in such notice (whether electronic or hard copy), shall destroy or delete any and all copies (whether electronic or hard copy), and shall expunge from any other Document, information or material derived from the produced Privileged Documents. To the extent the Receiving Party provided any disclosed Privileged Documents to any other person or non-party, the Receiving Party shall promptly make reasonable efforts to retrieve and destroy such Privileged Documents and notify the Producing Party that it has done so. The party clawing back the produced Privileged Documents will provide the Receiving Party with a privilege log that reasonably identifies the basis for the assertion of privilege.

16

23.    If, based on (1) the privilege log entries provided to the Receiving Party by the Producing Party, or (2) the Receiving Party's review of Documents that occurred prior to the assertion of privilege and claw-back, there is a dispute over whether the clawed-back Documents at issue are protected from disclosure by virtue of a privilege or immunity from discovery, the original Documents shall nevertheless be immediately destroyed or returned to the Producing Party along with all copies (whether electronic or hard copy) thereof. All counsel shall undertake reasonable efforts to resolve the issue of whether the Documents are privileged without Court intervention. To the extent counsel cannot resolve the issue, the Receiving Party may bring a motion to compel production of the Privileged Documents, but may not assert as a ground for compelling production the fact or circumstance that the Privileged Documents had already been produced. In conjunction with such a motion, the Receiving Party may request the Court review in-camera the clawed-back Documents at issue, and, if the Court so orders, the Producing Party shall provide the Privileged Documents under seal to the Court for in-camera review. In the event of a motion to compel production of the Privileged Documents, the burden is on the Producing Party to provide, in its opposition to the motion to compel, information regarding the content and context of the Privileged Documents sufficient to establish the applicability of any asserted privilege or immunity from discovery.

24.    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Information it has received from a Producing Party to any person or in any circumstance not authorized under this Stipulation and Order, the Receiving Party must promptly, after discovery of the disclosure, (a) notify the relevant Producing Party in writing of the unauthorized disclosure(s) and the identity of such persons(s) to whom Protected Information was disclosed, (b) make reasonable efforts to retrieve all copies of the Discovery Material containing Protected

17

Information from the person or persons to whom unauthorized disclosures were made (the
"Unauthorized Recipient(s)"), (c) inform the Unauthorized Recipient(s) of all the terms of this
Stipulation and Order, and (d) request the Unauthorized Recipient(s) to execute the undertaking
attached hereto as Exhibit A.

25.     The Parties will exchange privilege logs in a timely fashion to ensure that there is
reasonable time for the resolution of any privilege disputes, and the production of any Documents
in connection with such resolution, prior to the close of fact discovery. The Parties need not log: (a)
privileged communications to or from counsel in connection with the Litigation; or (b) Documents
created at the request of counsel in connection with the Litigation. Nothing in this Stipulation and
Order prevents the Parties from meeting and conferring or negotiating separate agreements
regarding privilege log creation, production, content, format, or related issues.

26.     The Parties agree that they may not have an adequate remedy at law in the event that
a court of competent jurisdiction determines that there is an actual or threatened breach of this
Stipulation and Order by any Party and agree that, under such circumstances, the Parties may be
entitled to specific performance and/or injunctive relief to enforce the terms hereof, in addition to
any remedy to which they may be entitled at law or in equity.

27.     The provisions of this Stipulation and Order shall be binding upon the Parties. All
modifications of, waivers of and amendments to this Stipulation and Order must be in writing and
signed by, or on behalf of, the Parties.

28.     This Stipulation and Order is entered into without prejudice to the right of any Party
to seek relief from, or modification of, this Stipulation and Order or any provisions thereof by

18

properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the New York Civil Practice Law and Rules or other applicable law.

29.    This Stipulation and Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

30.    This Stipulation and Order has no effect upon, and shall not apply to, the Parties' use of their own Discovery Material for any purpose. Nothing herein shall impose any restrictions on the use or disclosure by a Party of Documents, materials, or information designated as Protected Information that has been generated or obtained lawfully by such Party independently of the proceedings in this Litigation.

31.    In the event that additional parties join or are joined in this Litigation, they shall not have access to Protected Information until the newly joined party, by its counsel, has executed and filed with the Court its agreement to be fully bound by this Stipulation and Order.

32.    The Parties agree to be bound by the terms of this Stipulation and Order pending the entry by the Court of this Stipulation and Order, and any violation of its terms shall be subject to the same penalties and sanctions, as if this Stipulation and Order had been entered by the Court.

33.    If any Receiving Party is subpoenaed in any other action or proceeding, or is served with a Document demand or is otherwise compelled by law to produce Documents (collectively, a "Demand"), and such Demand seeks Discovery Material that was produced or designated as Protected Information, or that reflects or contains Protected Information, by someone other than the Receiving Party, the Receiving Party shall give prompt written notice by hand or electronic or facsimile transmission, within ten (10) business days of receipt of such Demand, to the Party or its

19

counsel who produced or designated the material as Protected Information. The Receiving Party

shall not produce any of the Producing Party's Protected Information, unless Court-ordered or

otherwise required by law, for a period of at least ten (10) days after providing the required notice

to the Producing Party. If, within ten (10) days of receiving such notice, the Producing Party gives

notice to the Receiving Party that the Producing Party opposes production of its Protected

Information, the Receiving Party shall object, citing this Stipulation and Order, and not thereafter

produce such Protected Information, except as required by law. The Producing Party shall be solely

responsible for pursuing any objection to the requested production. Nothing herein shall be

construed as requiring the Receiving Party or anyone else covered by this Stipulation and Order to

challenge or appeal any order requiring production of Protected Information covered by this

Stipulation and Order, or to subject itself to any penalties for non- compliance with any legal

process or order, or to seek any relief from this Court. In the event that Protected Information is

produced to a non-party to this Stipulation and Order in response to a Demand, such Discovery

Material shall continue to be treated in accordance with the designation as Confidential or Highly

Confidential Information by the Parties to this Stipulation and Order.

34.    To the extent a Receiving Party is required to disclose Protected Information

produced in the Litigation, without a subpoena or other form of legal process, by a regulatory or

supervisory agency exercising its visitorial powers pursuant to 12 U.S.C. § 484 and/or 12 C.F.R. §

7.4000 ("Regulatory Demand") and compliance with the Regulatory Demand renders the Party

unable to comply with Paragraph 33 hereof, the Party may comply with the Regulatory Demand

and shall give prompt written notice by hand or electronic or facsimile transmission as soon as is

practicable following receipt of the Regulatory Demand and no later than the time at which the

Party produces the Protected Information in response to the Regulatory Demand, unless the

20

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/24/2022
NYSCEF DOC. NO. 68                                   RECEIVED NYSCEF: 05/17/2022

Receiving Party is prohibited by law from providing notice of the Regulatory Demand to the Producing Party.

35.    No Party shall produce or be requested to produce or identify any material or information that the Party is prohibited by law from disclosing under 31 U.S.C. § 5318(g), 31 C.F.R. § 103.18(e), or 12 C.F.R. § 510.5.

36.    For good cause shown, the following provisions shall apply to Non-Party Borrower Information. To the extent any federal or state law or other legal authority governing the disclosure or use of Non-Party Borrower Information (hereinafter, "Non-Party Borrower Information Law") permits disclosure of such information pursuant to an order of a court, this Stipulation and Order shall constitute compliance with such requirement. To the extent any Non-Party Borrower Information Law requires a Producing Party, including third- parties, to obtain a Court-ordered subpoena or to give notice or obtain consent, in any form or manner, from any person or entity before disclosure of any Non-Party Borrower Information, the Court finds that, in the view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, there is good cause to excuse such requirement, and this Stipulation and Order shall constitute an express direction that the Producing Party is exempted from obtaining a Court-ordered subpoena or having to notify and/or obtain consent from any person or entity prior to the disclosure of Non-Party Borrower Information. To the extent that any Non-Party Borrower Information Law requires that any person or entity be notified prior to disclosure of Non-Party Borrower Information except where such notice is prohibited by Court order, the Court directs that, in view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, the Producing Parties are explicitly prohibited from

21

08-13555-mg   Doc 61483-1   Filed 08/10/22   Entered 08/10/22 17:54:43   Exhibit 1

providing such notice; provided, however, that this Stipulation and Order shall not prohibit any Producing Party from contacting any person or entity for any other purpose. Any Producing Party may seek additional orders from this Court that such party believes may be necessary to comply with any Non-Party Borrower Information Law.

37.   Nothing herein shall prevent any Receiving Party from disclosing Protected Information to the extent necessary to report to appropriate taxing authorities, or to the accountants or independent public auditors of the Receiving Party in confidence, as and only to the extent required to perform auditing or tax accounting work; and (b) to the extent necessary for purposes of financial reporting, including United States Securities and Exchange Commission and regulatory filings, and other regulatory requests.

38.   For the avoidance of doubt, nothing herein shall preclude counsel from giving advice to his or her client in this Litigation that includes a general evaluation of Protected Information, provided that counsel shall not disclose the contents of any Protected Information in violation of the terms of this Stipulation and Order.

39.   Any Party, in conducting discovery from non-parties in connection with the Litigation, shall provide any non-party from which it seeks discovery with a copy of this Stipulation and Order so as to inform each such non-party of his, her, or its rights herein. If a non-party provides discovery to any Party in connection with the Litigation, the provisions of this Stipulation and Order shall apply to such discovery as if such discovery were being provided by a Party. Under such circumstances, the non-party shall have the same rights and obligations under the Stipulation and Order as held by the Parties. For the avoidance of doubt, non-parties may designate

22

Discovery Material as Confidential Information or Highly Confidential Information pursuant to Paragraphs 3(a) and 3(c) as set forth herein.

40.    This Stipulation and Order shall continue to be binding after the conclusion of this Litigation except (a) that there shall be no restriction on Documents that are used as exhibits in Court (unless such exhibits were filed under seal and never unsealed); and (b) that a Party may seek the written permission of the Producing Party or further order of the Court with respect to dissolution or modification of the Stipulation and Order.

41.    Nothing herein shall be deemed to waive any privilege recognized by law, or shall be deemed an admission as to the admissibility in evidence of any Privileged Information, facts, or Documents revealed in the course of disclosure.

42.    Within ninety (90) days after the final termination of this Litigation by settlement (including, to the extent applicable, final court approval of such settlement) or exhaustion of all appeals, all Protected Information produced or designated and all reproductions thereof, shall be returned to the Producing Party or shall be destroyed, at the option of the Producing Party, which option shall be communicated in writing to the Receiving Party promptly. In the event that any Producing Party opts for destruction of its Protected Information, the Receiving Party shall certify, in writing, within ninety (90) days of the final termination of this Litigation that it has undertaken its best efforts to destroy such physical objects and Documents, and that such physical objects and Documents have been destroyed to the best of its knowledge. These best efforts need not include destroying Protected Information residing on back-up tapes or other disaster recovery systems. Notwithstanding anything to the contrary, counsel of record for the Parties may retain copies of Documents constituting work product, reports, pleadings, motion papers, discovery responses,

23

deposition and trial transcripts and deposition and trial exhibits. This Stipulation and Order shall not be interpreted in a manner that would violate any applicable canons of ethics or codes of professional responsibility. Nothing in this Stipulation and Order shall prohibit or interfere with the ability of counsel for any Party, or of experts or consultants specially retained for this case, to represent any individual, corporation, or other entity adverse to any Party or its affiliate(s) in connection with any other matters. For the avoidance of doubt, experts, third-party vendors, and consultants who have received Protected Information shall also be required to return or destroy such Protected Information pursuant to the terms of this paragraph.

43.    All Discovery Material shall be used solely for the purpose of conducting this Litigation and not for any other purpose whatsoever.

44.    Except as specifically provided herein, the terms, conditions, and limitations of this Stipulation and Order shall survive the termination of this Litigation.

45.    During the pendency of this Litigation, the Court shall retain jurisdiction over this Order, and persons who receive Discovery Material that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be subject to this Stipulation and Order, including any proceedings relating to their performance under, or compliance with, this Stipulation and Order.

46.    The Court will not retain jurisdiction after the conclusion of this Litigation for enforcement of this Stipulation and Order with respect to the Litigation.

47.    To maximize the security of information in transit, any media on which Protected Information is produced shall be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. If a party provides another party's Protected

24

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/17/2022

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

Information to a third party, as identified and permitted under this Stipulation and Order, that party shall comply with the requirements of this paragraph as if it were the Producing Party.

25

Dated: May 17, 2022
     New York, New York

**LUNDIN PLLC**
John M. Lundin
Alexandra M.C. Douglas
405 Lexington Avenue
26th Floor
New York, NY 10174
(212) 541-2402
JLundin@LundinPLLC.com
ADouglas@LundinPLLC.com

John J.D. McFerrin-Clancy
17 State Street, 40th Floor
New York, NY 10004
(646) 771-7377
jmc@mcferrin-clancy.com

*Attorneys for Plaintiffs Mark A. Zittman,*
*IRA FBO Mark Zittman, Mark A.*
*Zittman as Beneficiary of IRA FBO*
*Mark Zittman, Mark A. Zittman as*
*Trustee of the Mark A. Zittman*
*Revocable Trust, and Mark A. Zittman*
*Revocable Trust*

Respectfully submitted,

**JONES DAY**
David F. Adler
Michael T. Marcucci
100 High Street
Boston, MA 02110
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Joseph C. Barry
Calland M. Ferraro
North Point
901 Lakeside Avenue East
Cleveland, OH 44114-1190
(216) 586-3939; (216) 579-0212 (fax)
jbarry@jonesday.com
cferraro@jonesday.com

*Attorneys for Defendant U.S. Bank*
*National Association*

Dated: 5/24/22

ENTER,

Hon. Joel M. Cohen, J.S.C.

26

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSFILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/17/2022

NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MARK A. ZITTMAN, IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Beneficiary of IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Trustee of the MARK A. ZITTMAN REVOCABLE TRUST, and MARK A. ZITTMAN REVOCABLE TRUST | Index No.:    656964/2021 |
| | Part 3 |
| | (Cohen, J.) |
| Plaintiffs, | |
| v. | STIPULATION AND [PROPOSED] CONFIDENTIALITY AND PROTECTIVE ORDER |
| U.S. BANK NATIONAL ASSOCIATION, | |
| Defendant. | |

## UNDERTAKING FOR THE USE OF CONFIDENTIAL INFORMATION

I, _____, state that:

1.    My business address is _____

2.    My present employer is _____

3.    My present occupation or job description is _____

4.    I have received a copy of the Stipulation and Confidentiality and Protective Order (the "Stipulation and Order") entered in the above-entitled action (the "Litigation") on

_____

5.    I have carefully read and understand the provisions of the Stipulation and Order.

6.    I will comply with all of the provisions of the Stipulation and Order.

A-1

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM        INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM        INDEX NO. 656964/2021
NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/24/2022
RECEIVED NYSCEF: 05/17/2022

7.    I will hold in confidence, will not disclose to anyone not qualified under the Stipulation and Order, and will use only for purposes of this Litigation, any Confidential Information or Highly Confidential Information that is disclosed to me.

8.    At the conclusion of my work on this matter, I will return or destroy, to the extent permitted by law, all Protected Information that comes into my possession, and Documents or things that I have prepared relating thereto, to counsel for the Party by whom I am employed or retained, or to counsel from whom I received the Protected Information.

9.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulation and Order in this Litigation.


Dated: _____        By: _____

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-----------------------------------------------------------------  x

                                    :

**MARK A. ZITTMAN, IRA FBO MARK**     :
**ZITTMAN, MARK A. ZITTMAN as Beneficiary of**
**IRA FBO MARK ZITTMAN, MARK A.**       :
**ZITTMAN as Trustee of the MARK A. ZITTMAN** :
**REVOCABLE TRUST, and MARK A. ZITTMAN** :
**REVOCABLE TRUST,**                      :

               **Plaintiffs,**            :

                                    :

        **v.**                               :

                                    :

**U.S. BANK, NATIONAL ASSOCIATION as**   :
**Trustee (and any predecessors or successors**
**thereto),**

               **Defendant.**

-----------------------------------------------------------------  X

| | |
|---|---|
| **Index No.** | |
| **656964/2021** | |
| **Hon. Joel M. Cohen** | |
| **(IAS Part 3)** | |

## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:    Aurora Bank FSB (fka Lehman Brothers Bank)
       c/o Corporation Service Company
       80 State Street
       Albany, NY 12207

     YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

     In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition, Aurora Bank FSB must designate one or more former officers, directors, members or employees, or

other individual(s) who consent to testify on its behalf.  Such designation must include the identity, and the description or title of such individual(s), and if Aurora Bank FSB designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.


Dated: July 19, 2022

/s/ *Michael A. Collyard*
_____
ROBINS KAPLAN LLP
Michael A. Collyard
Peter C. Ihrig
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
mcollyard@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for Defendant U.S. Bank National Association*

## SCHEDULE A

### I.    DEFINITIONS

1.    "Aurora Bank FSB (fka Lehman Brothers Bank)," "You" or "Your" refers individually and collectively to Aurora Bank FSB (fka Lehman Brothers Bank) and any of its affiliates, predecessors-in-interest, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Servicer of Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.    "Action" means the above-captioned lawsuit styled as or related to *Zittman, et al. v. U.S. Bank National Association*, Index No. 656964/2021 (Sup. Ct. N.Y. Cnty.).

3.    "Assignment Agreement" means any assignment agreement, or similar agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

4.    "Assignor(s)" means any entity who assigned or transferred its rights in a Subject Loan.

5.    "Certificate(s)" refers individually and collectively to any of the certificates issued by the Trusts.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.    "Completeness R&Ws" means any representation or warranty made by any Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer

concerning the completeness of the Mortgage Files for the Trusts, the breach of which the

Trustee is obligated to enforce under the applicable Governing Agreements.

8.    "Concerning" means relating to, referring to, describing, evidencing, or

constituting.

9.    "Custodial Agreement" means any agreement setting forth the rights, duties, and

obligations of a Custodian for the Covered Trusts.

10.    "Custodial File" means any portion of a Mortgage File held by a Custodian on

behalf of the Trustee.

11.    "Depositor" means any entity defined in the Governing Agreements for any Trust

as a depositor, as well as its officers, directors, employees, corporate parents, predecessors,

successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other

Persons acting or purporting to act on its behalf.

12.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" as described in Fed R. Civ.

P. 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of the

term.

13.    "Exception(s)" means the notation(s) or description in any Document or

certification that a Mortgage File is incomplete, missing documents, or otherwise does not

comply with the requirements as prescribed in the Governing Agreements for the Trusts.

14.    "Exception Report(s)" means a report accompanying a certification provided

pursuant to a Governing Agreement that identifies documents required to be included in the

Mortgage File that are missing, defective, or incomplete as of the date of the report or that

otherwise failed to satisfy the requirements of the Governing Agreements.

15.   "Final Certifications" refer to the final certifications as described in the Governing Agreements applicable to the Trusts.

16.   "Governing Agreement(s)" means all agreements governing the Trusts, as applicable, along with related exhibits, schedules, and appendices, including, but not limited to, Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial Agreements, and Servicing Agreements.

17.   "Identify(ing)" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a Person has been identified with respect to this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of Persons.

18.   "Identify(ing)" (with respect to Documents) means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s) and recipient(s).

19.   "Initial Certifications" refers to the certifications required to be made after closing, within a number of days specified in the Governing Agreements but prior to the Final Certification.

20.   "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

21.   "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited

to, Documents completed or submitted by a borrower or mortgagor or his or her agent when applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

22.    "Loan Servicing File" means all Documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, Documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan servicing records, including, without limitation, call notes, foreclosure files and Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related Documents; (viii) all records relating to repurchase analyses, demands, investigations and Communications; and (ix) servicing guidelines and procedures.

23.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a loan-by-loan identification of the Subject Loans (which descriptions may include information concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral information, borrower income, and/or other information about the borrower or the loan).

24.    "Master Servicer" means any entity defined in the Governing Agreements for any
Trust as a master servicer, as well as its officers, directors, employees, corporate parents,
predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,
representatives, and all other Persons acting or purporting to act on its behalf.

25.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or
representations and warranties agreement, or any similar agreement, between an Originator and a
Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in
which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in
any of the Trusts.

26.    "Mortgage File(s)" means the file consisting of documents to be delivered to the
Custodian under the terms of the Governing Agreements, including, but not limited to, the note,
mortgage, title policy, and assignments.

27.    "Originator" has the same meaning ascribed to it in the relevant Governing
Agreements or prospectus supplement for each Trust, and any other entity that originated one or
more of the Subject Loans, as well as their officers, directors, employees, corporate parents,
predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,
representatives, and all other Persons acting or purporting to act on their behalf.

28.    "Person(s)" refers to natural persons, proprietorships, governmental agencies,
corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other
entities.

29.    "Plaintiffs" means, collectively, Mark A. Zittman; IRA FBO Mark Zittman; Mark
A. Zittman as Beneficiary of IRA FBO Mark Zittman; Mark A. Zittman as Trustee of the Mark
A Zittman Revocable Trust; Mark A. Zittman Revocable Trust; and any officer, agent,

employee, attorney, or Person acting under the control of or on behalf of the foregoing, or any

affiliated entity, including entities involved in or providing information, research, or analysis

relating to the investment of these entities. For the avoidance of doubt, and without otherwise

limiting the foregoing, the definition of "Plaintiffs" includes any investment advisor, sub-

advisor, custodian, administrator, or other Person or entity providing services to the "Plaintiffs."

30.    "Refer" or "relate" or "referring" or "relating" means all Documents which

comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created,

generated or maintained as a result of the subject matter of the request, including, without

limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate,

consider, review or report on the subject matter of the request.

31.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing

Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100—

Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be

amended from time to time, and subject to such clarification and interpretation as have been

provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release

No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be

provided by the SEC from time to time.

32.    "Service" or "Servicing" means the act of servicing and administering the Subject

Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set

forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in

Item 1108 of Regulation AB.

33.    "Servicer" means the entities identified as a Servicer (or any successor Servicer),

Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer),

or special servicer (or any successor special servicer) in the relevant Governing Agreements for each Trust, and any other entity that services loans and/or is responsible for any portion of the Servicing functions performed, or required to be performed, with respect to each of the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on their behalf.

34.     "Servicing Agreement" means any servicing agreement or servicing and sale agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the loans underlying or collateralizing the Certificates.

35.     "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other entity that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

36.     "Subject Loan(s)" refers individually and collectively to any of the loans underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of Certificates issued pursuant to the Trusts.

37.     "Trailing Reports" means any Exception Reports created after the Final Certifications.

38.     "Trust(s)" refers individually and collectively to the issuing entities of the Certificates, as identified in Appendix 1.

39.    "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

40.    "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on their behalf, including their attorneys.

41.    "Warrantor" means any entity that made a representation and warranty regarding the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

## II.    <u>INSTRUCTIONS</u>

1.    "All/any/each" shall be construed as encompassing any and all.

2.    "And/or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

3.    References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be deemed to include that entity's current and former employees, agents, officers, directors, partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or any Person acting or purporting to act on its behalf.

4.    The singular form of a word shall be construed and applied to include the plural form, and vice versa.

5.     Each deposition topic and document request shall be construed independently, and no topic or request shall be viewed as limiting the scope of any other.

6.     If You object to a portion or aspect of any deposition topic or document request, state the grounds for Your objections with specificity.

7.     Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.     Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.     You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.     Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

11.     If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

12.     If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

13.     If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

14.     If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

(a)     the Document is missing or lost;

(b)     the Document has been destroyed;

(c)    the Document has been transferred or delivered to another Person or entity and, if so, to whom and at whose request;

(d)    the Document has been otherwise disposed of; and

(e)    a precise statement of the circumstances surrounding the disposition of the Document and the date of its disposition.

15.    Documents not otherwise responsive to these requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these requests, or if such Documents are attached to Documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.    **FORM OF PRODUCTION – HARD COPY**

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The Documents should be logically unitized (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original Document contains color necessary to understand the meaning or content of the Document, the Document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each Document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV,

300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type

files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native

format. All ESI should be produced with a delimited, database load file that contains the

metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should

also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the

reader using the native software that created the Document. For example, TIFF images of e-mail

messages should include the BCC line. PowerPoint Documents should be processed with hidden

slides and all speaker notes unhidden, and should be processed to show both the slide and the

speaker's notes on the TIFF image. If an original Document contains color, the Document

should be produced as single-page, 300 DPI, color JPG images. For each Document, a

Document-level text file should be provided in addition to the TIFFs. The text of native files

should be extracted directly from the native file and each text file will be named using its

corresponding image files. Documents for which text cannot be extracted will be produced with

OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image

slip-sheet containing the confidential designation and text stating the Document has been

produced in native format should also be provided. If Documents requested in native format

require redactions, the parties should meet and confer regarding how to implement redactions

while ensuring that proper formatting and usability are maintained. Each native file should be

named according to the Bates number it has been assigned, and should be linked directly to its

corresponding record in the load file using the NATIVELINK field. To the extent that either

party believes that native files should be produced for a specific Document or class of

Documents not required to be produced in native format pursuant to this paragraph or to the

extent records do not easily conform to native or TIFF format (i.e., structured data), the parties

should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents

(based on MD5 or SHA-1 hash values, at the family level). Attachments should not be

eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments

are also duplicates. An e-mail that includes content in the BCC or other blind copy field should

not be treated as a duplicate of an e-mail that does not include content in those fields, even if all

remaining content in the e-mail is identical. Removal of near-duplicate Documents is not

acceptable. De-duplication should be done across the entire collection (i.e., global level) and the

ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a

source of that Document. To accommodate for rolling productions, for ESI that is removed as

duplicate from earlier productions, the producing party should provide an overlay file no later

than three days after the date of each rolling production that includes the duplicate custodian

names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received

during loan origination, underwriting, approval and funding, including any supplemental

materials received post-funding) and/or Loan Servicing Files, shall be organized as they were

maintained in the ordinary course of business, but produced in reasonably useable format. The

following specifications will be met when producing Loan Files: the files will be produced as

TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All

files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

## V.    RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2004, through the date of Your

response (the "relevant time period"), unless otherwise specifically indicated, and shall include

all Documents and information that relate to such period, even though prepared or published

outside of the relevant time period.  If a Document prepared before this period is necessary for a

correct or complete understanding of any Document covered by a request, You must produce the

earlier Document as well.  If any Document is undated and the date of its preparation cannot be

determined, the Document shall be produced if otherwise responsive to the request.

## VI.    TOPICS FOR EXAMINATION

**TOPIC NO. 1**:  Your review of Mortgage Files for the Subject Loans under the applicable
Governing Agreements.

**TOPIC NO. 2**:  Your preparation of any certifications, including Initial Certifications, Final
Certifications, or any interim certification, and related Exception Reports concerning any of the
Subject Loans.

**TOPIC NO. 3**:  The computer systems, including any emBTRUST software, You used in the
preparation of Exception Reports concerning any Subject Loans.

**TOPIC NO. 4**:  Your distribution of any certifications or Exception Reports concerning any
Subject Loans prepared under the applicable Governing Agreements.

**TOPIC NO. 5**:  Your practices, including the use of any computer systems such as emBTRUST
software, for tracking, recording and/or verifying the cure of any Exceptions listed in the
Exception Reports concerning any Subject Loans prepared under the applicable Governing
Agreements.

**TOPIC NO. 6**:  The records, including any emBTRUST exports or files, evidencing the
circumstances of the cure of any Exceptions listed in the Exception Reports concerning any
Subject Loans prepared under the applicable Governing Agreements.

**TOPIC NO. 7**:  Your communications with U.S. Bank or any other party to the Governing
Agreements concerning the certifications, Exception Reports, or the cure of any Exceptions
concerning any Subject Loans.

**TOPIC NO. 8**:  The creation of any document produced in response to this or any other
subpoena served in this Action.

**TOPIC NO. 9**: Your efforts to produce documents in response to Plaintiffs' subpoena(s), if any.

**TOPIC NO. 10**: Your efforts to produce documents in response to U.S. Bank's subpoena(s).

**TOPIC NO. 11**: The drafting, negotiation, review, and Your understanding of the language and terms of the Governing Agreements as it relates to Your role as Custodian for each Trust for which You served as a Custodian.

**TOPIC NO. 12**: Your use of computer software, including but not limited to emBTRUST software (as applicable), for tracking, recording, and/or verifying the cure of any Exceptions listed in the Exception Reports concerning any Subject Loans, including Your understanding exports or documents created from such computer software concerning the Trusts.

**TOPIC NO. 13**: Your communications with any party regarding the cure of any Exceptions concerning any Subject Loans, and Your receipt of any documents that cured an Exception concerning any Trusts.

**TOPIC NO. 14**: Your understanding of Regulation AB Item 1122(d)(4)(i), including whether Item 1122(d)(4)(i) is related to Exceptions.

**TOPIC NO. 15**: Your understanding of whether any of the Trusts were included in any sample that formed the basis of a Regulation AB Item 1122 assertion or USAP certification attestation provided to the Trustee.

**TOPIC NO. 16**: Your efforts to issue a notice to cure or to respond to notice to cure under the Governing Agreements based on the discovery or receipt of notice of any materially defective document in, or that a document is missing from, a Mortgage File for the Trusts.

## VII.    DOCUMENTS REQUESTED

**REQUEST NO. 1**: All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2**: All Documents subpoenaed by the Plaintiffs in this Action, if any, and all Communications with the Plaintiffs concerning any such subpoena(s).

**REQUEST NO. 3**: All Regulation AB compliance certifications You completed in Your capacity as Custodian for the Trusts.

**REQUEST NO. 4**: All Initial Certifications, Final Certifications, or any other certifications provided under the Governing Agreements, including, but not limited to, any Exception Report produced in excel or other native format.

**REQUEST NO. 5**: Any Exception Report produced in excel or other native format associated with the Initial Certifications, Final Certifications, or any other certifications provided under the Governing Agreements.

**REQUEST NO. 6**: All Trailing Reports produced in excel or other native format.

**REQUEST NO. 7**:  Documents sufficient to show whether any Exceptions relating to the Subject Loans, and associated with the Final Certifications or any other certifications, were cured, the date of any cured Exceptions, and the manner in which the Exception was cured.

**REQUEST NO. 8**: All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning any actual or alleged missing or defective document or breach of Completeness R&Ws.

**APPENDIX 1**

Trusts

1.   ABFC 2007-WMC1
2.   BAFC 2006-H
3.   BAFC 2007-C
4.   BAFC 2007-D
5.   BSABS 2006-AC2
6.   CSAB 2006-3
7.   GSAA 2006-1
8.   GSAA 2006-3
9.   GSAMP 2006-HE4
10.  GSR 2005-AR7
11.  GSR 2006-AR1
12.  HEAT 2005-6
13.  HEAT 2005-7
14.  HEAT 2006-3
15.  HEAT 2006-4
16.  HVMLT 2005-3
17.  HVMLT 2006-1
18.  HVMLT 2006-4
19.  LXS 2005-5N
20.  LXS 2005-9N
21.  LXS 2007-15N
22.  MSM 2006-1AR
23.  SASC 2007-EQ1
24.  SURF 2006-AB3
25.  SURF 2007-BC2
26.  TMST 2007-3
27.  WFMBS 2006-AR1

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
                                    Pg 209 of 287

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021

NYSCEF DOC. NO. 68                                          RECEIVED NYSCEF: 05/17/2022

At IAS Part 3 of the Supreme Court of the State of New York, Commercial Division, County of New York, at the courthouse thereof, 60 Centre Street, New York, New York, on the 17th day of May, 2022

PRESENT: Honorable Joel M. Cohen, Justice
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------- x
                                                    :
                                                    :    Index No.
MARK A. ZITTMAN, IRA FBO MARK ZITTMAN,              :    656964/2021
MARK A. ZITTMAN as Beneficiary of IRA FBO           :
MARK ZITTMAN, MARK A. ZITTMAN as Trustee            :    Hon. Joel M. Cohen
of the MARK A. ZITTMAN REVOCABLE TRUST,             :    (IAS Part 3)
and MARK A. ZITTMAN REVOCABLE TRUST,                :
                                                    :
                    Plaintiffs,                     :
                                                    :    STIPULATION AND
                                                    :    ~~PROPOSED~~
        v.                                          :    CONFIDENTIALITY AND
                                                    :    PROTECTIVE ORDER
                                                    :
U.S. BANK, NATIONAL ASSOCIATION as Trustee          :
(and any predecessors or successors thereto),       :
                                                    :
                    Defendant.                      :
                                                    :
------------------------------------------------- X

This matter having come before the Court by stipulation of Plaintiffs Mark A. Zittman, IRA

FBO Mark Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A. Zittman

as Trustee of the Mark A. Zittman Revocable Trust, and Mark A. Zittman Revocable Trust and

Defendant U.S. Bank National Association, for the entry of a protective order pursuant to CPLR

3013(a), limiting the review, copying, dissemination, and filing of confidential and/or proprietary

Documents and information to be produced by the Parties or their respective counsel, or by any

1

non-party, in the course of discovery in this matter to the extent set forth below (the "Stipulation and Order"). Having found that the Parties, by, between, and among their respective counsel, have stipulated and agreed to the terms set forth herein, and good cause having been shown,

IT IS ORDERED that:

1.     This Stipulation and Order is being entered into to facilitate the production, exchange, and discovery of Documents and information that the Parties agree merit confidential treatment. This Stipulation and Order shall govern the handling of Documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admission, responses to requests for production, and any other information or material produced, given, or exchanged by and among the Parties and any non-parties to the above-captioned action (the "Litigation") in connection with discovery in the Litigation (such information or material hereinafter referred to as "Discovery Material").

2.     A Producing Party (as defined below) may designate Discovery Material in connection with this Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" either by notation on the Document, statement on the record of a deposition, written notice to counsel for the Parties hereto, or by other appropriate means. In the case of Documents produced in native, electronic form, the confidentiality can be designated on the placeholder sheet produced along with that Document, or in a confidentiality metadata field. A Producing Party (as defined below) who designates any Discovery Material "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" bears the burden of establishing the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" status of such Discovery Material in any situation in which the designation is at issue, and nothing in this Stipulation and Order shall be construed to alter such burden.

3.     As used herein:

2

(a)    "Plaintiffs" or "Zittman" shall mean Plaintiffs Mark A. Zittman, IRA FBO Mark Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A. Zittman as Trustee of the Mark A. Zittman Revocable Trust, and Mark A. Zittman Revocable Trust, including Plaintiffs' investment advisors.

(b)    "Defendant" or "U.S. Bank" shall mean Defendant U.S. Bank National Association.

(c)    "Party" shall mean Plaintiffs or Defendant, and, Defendant together with Plaintiffs, the "Parties".

(d)    "Confidential Information" shall mean all Discovery Material, and all information contained therein, and other information designated as "CONFIDENTIAL," that the Producing Party (as defined below) reasonably and in good faith believes constitutes and/or contains (i) any trade secret or other confidential non-public research, design, development, financial or commercial information or (ii) Non-Party Borrower Information (as defined below). In addition, a Producing Party (as defined below) may designate as "CONFIDENTIAL" non-public personal information, other sensitive personally identifiable information (such as Social Security numbers, dates of birth, home addresses, phone numbers, email addresses) or other information for which applicable federal or state law requires confidential treatment.

(e)    "Document" shall mean all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, any recorded form of information, whether in printed, electronic, or other format, and including deposition transcripts, answers to interrogatories, and other discovery requests and responses.

3

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM
INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68
RECEIVED NYSCEF: 05/24/2022
RECEIVED NYSCEF: 05/17/2022

(f)    "Highly Confidential Information" shall mean all Discovery Material, and all information contained therein, and other information designated as "HIGHLY CONFIDENTIAL," that the Producing Party (as defined below) reasonably and in good faith believes, at the time of designation, constitutes and/or contains current trade secrets, proprietary business information, or other information the disclosure of which would result in competitive, commercial or financial harm to the Producing Party (as defined below) or its personnel, clients or customers if disclosed. Should a Producing Party identify categories of Documents in addition to those identified in this paragraph that the party wishes to designate as "HIGHLY CONFIDENTIAL," the Parties shall meet and confer in good faith regarding the Producing Party's proposed designation and, if the Parties are unable to reach agreement on the proposed designation, each Party expressly reserves the right to seek appropriate relief from the Court.

(g)    "Non-Party Borrower Information" shall mean any information that constitutes "nonpublic personal information" within the meaning of the Gramm-Leach Bliley Act, 15 U.S.C. § 6802, et seq. and its implementing regulations, including, but not limited to, any portion of a mortgage loan file, spreadsheet or other Document or data set that includes financial or credit information for any person (including any credit history, report or score obtained on any such person to determine the individual's eligibility for credit) together with personally identifiable information with respect to such person, including, but not limited to, name, address, Social Security number, loan number, telephone number, or place or position of work. As set forth in Paragraph 36 below, this Stipulation

4

and Order authorizes the disclosure of such Non-Party Borrower Information in this Litigation.

(h)    "Protected Information" shall mean Confidential Information and Highly Confidential Information, collectively.

(i)    "Producing Party" shall mean the Party to this Litigation who gives testimony or produces Documents or other materials containing Protected Information and/or any non-party producing or giving testimony concerning Protected Information in connection with discovery in this Litigation, or the Party asserting the confidentiality designation, as the case may be.

(j)    "Receiving Party" shall mean the Party to this Litigation and/or any non-party receiving Protected Information in connection with discovery in this Litigation.

4.    The Receiving Party may, at any time, notify the Producing Party that the Receiving Party does not concur in the designation of Discovery Material as Confidential Information or Highly Confidential Information. The Parties shall meet and confer in good faith regarding any such disagreement over the classification of Discovery Material and, if the Producing Party does not agree to change the designation of such Discovery Material, the Receiving Party may move the Court for an order removing the designation of such Discovery Material as Protected Information. Upon such a motion, the Producing Party shall bear the burden to prove that the Discovery Material in question is Protected Information. If such a motion is filed, the Discovery Material shall be deemed Protected Information, with the same confidentiality designation as asserted by the Producing Party, unless and until the Court rules otherwise.

5.    In order to expedite the production of voluminous materials, a Producing Party may, but is not required to, produce materials without a detailed review for confidentiality designation

5

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM INDEX NO. 656964/2021

NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM INDEX NO. 656964/2021

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

RECEIVED NYSCEF: 05/17/2022

and may designate collections of Documents that, by their nature, contain Confidential Information

as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" notwithstanding that some of the

Documents within the collection may not qualify for such designation. A Party's "bulk"

designation of Documents shall not constitute waiver of any Party's rights set forth in Paragraph 20

of this Stipulation and Order. Notwithstanding the foregoing, a Receiving Party may at any time

challenge the designation of one or more particular Documents on the grounds that the

Document(s) do not qualify for protection, including as provided in Paragraphs 4 and 29 of this

Stipulation and Order.

6.     Except with the prior written consent of the Producing Party or by Order of the

Court, Confidential Information shall not be furnished, shown or disclosed to any person or entity

except:

     (a)    counsel for the Parties to this Litigation and their associated attorneys, paralegals

and other professional personnel (including support staff) who are directly

assisting such counsel in the preparation of this Litigation for trial or other

proceeding herein, are under the supervision or control of such counsel, and who

have been advised of their obligations hereunder;

     (b)    expert witnesses or consultants who are employed or retained by a Party in

connection with the prosecution or defense of this Litigation, and members of

the expert witnesses' or consultants' staff working under the expert witnesses' or

consultants' supervision, provided, however, that such Confidential Information

is furnished, shown or disclosed to them in accordance with Paragraph 8 hereof;

6

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
Pg 215 of 287

INDEX NO. 656964/2021

NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

RECEIVED NYSCEF: 05/17/2022

RECEIVED NYSCEF: 05/17/2022

(c)    third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

(d)    the Court and Court personnel, if filed in accordance with Paragraph 15 hereof;

(e)    an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

(f)    trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

(g)    personnel of the Parties (including in-house counsel) actually engaged in assisting in the preparation of this Litigation for trial or other proceeding herein and who have been advised of their obligations hereunder;

(h)    former personnel of the Parties actually engaged in assisting in the preparation of this Litigation for trial or other proceeding herein provided, however, that such Confidential Information is furnished, shown, or disclosed to them in accordance with Paragraph 8 hereof;

(i)    any mediator or arbitrator engaged by the Parties to this Litigation;

(j)    the insurers and reinsurers of the Parties to this Litigation, and counsel to such insurers and reinsurers as necessary for the prosecution or defense of this Litigation; and

(k)    any other person agreed to by the Parties.

7

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/17/2022
INDEX NO. 656964/2021
RECEIVED NYSCEF: 05/17/2022

7.    No disclosure of Highly Confidential Information may be made to any person or entity other than:

(a)    counsel for the Parties to this Litigation and their associated attorneys, paralegals and other professional personnel (including support staff) who are directly assisting such counsel in the preparation of this Litigation for trial or other proceeding herein, are under the supervision or control of such counsel, and who have been advised of their obligations hereunder. Disclosure to in-house counsel, paralegals, and other professional personnel (including support staff) shall be limited to those in-house counsel providing legal advice in connection with this Litigation and the paralegals and other professional personnel supporting such in-house counsel, and Highly Confidential Information may not be disclosed to any officers, directors, employees or agents of a Party except as otherwise provided in Section 7(h). For the avoidance of doubt, Highly Confidential Information disclosed to in-house counsel, paralegals, and other professional personnel may not be used for any business or other purpose unrelated to the prosecution or defense of this Litigation;

(b)    expert witnesses or consultants who are employed or retained by a Party in connection with the prosecution or defense of this Litigation, and members of the expert witnesses' or consultants' staff working under the expert witnesses' or consultants' supervision, provided, however, that such Highly Confidential Information is furnished, shown or disclosed in accordance with Paragraph 8 hereof. Such disclosure shall only be to the extent reasonably necessary for such expert witness or consultant to perform his or her work;

8

(c)     third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

(d)     the Court and Court personnel, if filed in accordance with Paragraph 15, hereof;

(e)     an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

(f)     trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

(g)     any mediator or arbitrator engaged by the Parties to this Litigation;

the following persons (or any persons that may hold their respective positions in the future) who have been advised of their obligations hereunder: individuals at U.S. Bank holding the position of vice president or above with responsibility for litigation and disputes or oversight of this Litigation; and

(h)     any other person agreed to by the Parties.

8.    Before any disclosure of Protected Information is made pursuant to Paragraphs 6(b) or 6(h), or 7(b) hereof, counsel for the Receiving Party shall obtain from the intended recipient of the Protected Information such person's written undertaking, in the form of Exhibit A attached hereto, to comply with and be bound by its terms.

9

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM
NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

INDEX NO. 656964/2021

RECEIVED NYSCEF: 05/17/2022

9.     Protected Information shall be utilized by the Receiving Party only for purposes of this Litigation, or the enforcement of insurance rights with respect to this Litigation, and for no other purposes.

10.     All depositions shall presumptively be treated as Confidential Information subject to this Stipulation and Order during the deposition and until fifteen (15) days after the final transcript of said deposition is received by counsel for each of the Parties, unless otherwise specified in writing or on the record of the deposition by the Producing Party. At or before the end of such fifteen (15) day period, the deposition, or pages thereof, may be designated for future purposes as Confidential Information or Highly Confidential Information by any Party or, where applicable, by the non-party providing the deposition testimony.

11.     Should the need arise for any of the Parties to disclose Protected Information during any hearing or trial before the Court, including through argument or the presentation of evidence, such Party may do so only after taking such steps as the Court shall deem necessary to preserve the confidentiality of such Protected Information.

12.     This Stipulation and Order shall not preclude counsel for the Parties from using Protected Information during any deposition in this Litigation, provided that prior to any such use, the Party intending to use Protected Information shall: (a) provide a copy of this Stipulation and Order to the witness, and others to whom disclosure is intended to be made; (b) explain the Stipulation and Order to said persons and/or cause them to read the Stipulation and Order; and (c) obtain from said persons properly executed undertakings, in the form of Exhibit A attached hereto, if such persons are not covered by Paragraphs 6 and 7 of this Stipulation and Order. Should any person refuse to execute the undertaking before or at the deposition, counsel for the Parties may

10

still use the Protected Information during the deposition, and the Parties agree that the use of such Protected Information during the deposition shall not negate its treatment as Protected Information pursuant to this Stipulation and Order. Counsel shall retain copies of the signed "Exhibit A" forms until the termination of this Litigation. The Parties shall act in good faith to eliminate, whenever possible, the expenditure of "on the record" time to effectuate or confirm compliance with this paragraph at any deposition.

13.    A Party may designate as Confidential Information any Discovery Material produced or given by any non-party to this case, or any portion thereof. In the case of Documents, designation shall be made by notifying all counsel, in writing, of those Documents that are to be stamped and treated as Confidential Information at any time up to thirty (30) days after actual receipt of copies of those Documents by counsel for the Party asserting the confidentiality designation. Prior to the expiration of such thirty (30) day period (or until a designation is made by counsel, if such a designation is made in a shorter period of time), all such Documents shall be treated as Confidential Information. In the case of testimony, designation shall be made by notifying all counsel, in writing, of those portions of a transcript which are to be stamped or otherwise treated as Confidential Information at any time up to thirty (30) days after the final transcript is received by counsel for the Party asserting the confidentiality designation.

14.    Disclosing parties shall designate and treat "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material as follows:

(a)    In the case of Documents, interrogatory answers, responses to requests to admit, and the information contained therein, designation shall be made by marking or stamping each page as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, prior to its production or disclosure to the Receiving Party.

11

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM

NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

NYSCEF DOC. NO. 68

INDEX NO. 656964/2021

RECEIVED NYSCEF: 05/24/2022

RECEIVED NYSCEF: 05/17/2022

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

Electronically stored information (other than that produced in native form) designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be marked or stamped as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, using means sufficient to ensure that every page of such Document, when printed, contains the appropriate mark or stamp. Electronically stored information produced in native format shall include any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation in the file name.

(b)     In the event that a disclosing party inadvertently fails to stamp or otherwise designate a Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at the time of its production, that disclosing party may stamp or otherwise designate the Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at any reasonable time thereafter. The delay in so designating a Document shall not, in and of itself, be deemed to have effected a waiver of any of the protections of this Stipulation and Order, and parties will make reasonable efforts to claw back any previously disseminated undesignated Documents that are later designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

(c)     Any "CONFIDENTIAL" material produced in a non-paper media (e.g., videotape, audiotape, computer disc) may be designated as such by labeling the outside of such non-paper media as "CONFIDENTIAL." In the event a Receiving Party generates any electronic copy, "hard copy," transcription, or printout from any such designated non- paper media, such party must treat each copy, transcription, or printout as "CONFIDENTIAL" pursuant to the terms of this Stipulation and Order.

12

15.    (a) A Party or, as appropriate, non-party, who seeks to file with the Court (i) any deposition transcripts, exhibits, answers to interrogatories, or other Discovery Material which have previously been designated as comprising or containing Protected Information, or (ii) any pleading, brief or memorandum which reproduces, paraphrases or discloses Protected Information shall, fourteen (14) days prior to filing any motion, provide the Producing Party with written notice of its intent to file such material with the Court, so that the Producing Party may file by Order to Show Cause a motion to seal such Protected Information; provided, however, that in the event that the Party seeking to file or reference Protected Information identifies additional Protected Information less than fourteen (14) days prior to the relevant filing date, that Party may supplement its initial disclosure and the parties shall meet and confer to facilitate the filing by the Producing Party of any motion to seal such Protected Information prior to the relevant filing date.

(b) Any motion to seal Protected Information must be filed seven (7) days prior to the deadline to file the underlying motion or other filing, or promptly after disclosure of the intended use of Protected Information, and the Protected Information shall not be filed until the Court renders a decision on the motion to seal. If the Court does not decide the motion to seal prior to the deadline to file the underlying motion or other filing, the filing Party (or, as appropriate, non-party) shall, on the deadline to file the underlying motion or other filing, serve on the other Parties and provide the Court with a complete and unredacted copy of the underlying motion or other filing. Within three business days following the Court's determination of the motion to seal, the filing Party (or, as appropriate, non-party) shall file the underlying motion or other filing with the Court in accordance with the Court's order and Paragraph 15(c) below.

(c) If the Producing Party makes a timely motion to seal, and the motion is granted, the filing Party (or, as appropriate, non-party) shall ensure that all Documents (or, if directed by the court, portions

13

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
Pg 222 of 287
INDEX NO. 656964/2021

RECEIVED NYSCEF: 05/17/2022

of Documents) that are the subject of the order to seal are filed in accordance with the procedures that govern the filing of sealed Documents on the NYSCEF system.

(d) All pleadings, briefs, or memoranda which reproduce, paraphrase, or disclose any materials which have previously been designated by any party as comprising or containing Protected Information shall identify such Documents by the production number ascribed to them at the time of production.

16.    Any person receiving Protected Information shall not reveal or discuss such information with any person not entitled to receive such information under the terms hereof.

17.    The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material that is provided under this Stipulation and Order shall maintain such material in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such material as is exercised by the recipient with respect to its own proprietary material. "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material shall not be copied, reproduced, summarized, extracted or abstracted, except to the extent that such copying, reproduction, summarization, extraction or abstraction is reasonably necessary for the conduct of this Litigation. All such copies, reproductions, summarizations, extractions, and abstractions shall be subject to the terms of the Stipulation and Order and labeled in the same manner as the designated material on which they are based.

18.    Any Discovery Material that may contain Protected Information that has been produced without identification as to its protected nature as provided in Paragraphs 2 and/or 13 of this Stipulation and Order, may be so designated by the party asserting the confidentiality designation by written notice to the undersigned counsel for the Receiving Party identifying the Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within a reasonable

14

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM INDEX NO. 656964/2021
NYSCEF DOC. NO. 7
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
RECEIVED NYSCEF: 05/17/2022
NYSCEF DOC. NO. 68
RECEIVED NYSCEF: 05/17/2022

time following the discovery that the Document or information has been produced without such designation. Promptly after providing such notice, the Producing Party shall provide re-labeled copies of the Discovery Material to the Receiving Party reflecting the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation. The Receiving Party shall replace the originally designated Discovery Material with the newly designated Discovery Material and shall destroy the originally designated Discovery Material or return such material to the Producing Party. To the extent such information may have been disclosed to anyone not authorized to receive Confidential Information or Highly Confidential Information, as applicable, the Receiving Party shall make reasonable efforts to retrieve the information promptly and to avoid any further disclosure.

19.    Extracts and summaries of Protected Information shall also be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the provisions of this Stipulation and Order.

20.    The production or disclosure of Protected Information shall in no way constitute a waiver of each Party's right to object to the production or disclosure of other information in this Litigation or in any other action.

21.    The procedure set forth below is intended to provide the Producing Party or any other party purporting to hold a privilege with an efficient method for retrieving or "clawing back" Protected Information that has been produced, subject to any resolution of any dispute over the privileged or protected status of the Protected Information, and for foreclosing any arguments of waiver.

22.    A Producing Party's disclosure in connection with this Litigation of one or more Documents that such Producing Party believes constitute, contain or reflect information otherwise

15

protected by the attorney-client privilege, the common interest privilege, the work-product doctrine or any other privilege or immunity from discovery ("Privileged Documents"), shall not constitute a waiver with respect to such Privileged Documents or generally of such privilege or immunity. If a Receiving Party receives materials that appear to be subject to an attorney-client privilege, the common interest privilege, or otherwise protected by a discovery privilege or immunity, the Receiving Party must refrain from further use or examination of the materials that may be privileged, and shall immediately notify the Producing Party, in writing, that he or she possesses material that appears to be privileged. In the event a Producing Party discovers it has disclosed Privileged Documents, the Producing Party may provide notice to the other Parties advising of the disclosure and requesting return or destruction of the Privileged Documents. Upon such notice, the Receiving Party shall make no further use or examination of the Privileged Documents and shall immediately segregate them in a manner that will prevent further disclosure or dissemination of their contents, and, within ten (10) days of receiving such notice of production of Privileged Documents, the Receiving Party shall destroy or return all original Documents identified by the Producing Party in such notice (whether electronic or hard copy), shall destroy or delete any and all copies (whether electronic or hard copy), and shall expunge from any other Document, information or material derived from the produced Privileged Documents. To the extent the Receiving Party provided any disclosed Privileged Documents to any other person or non-party, the Receiving Party shall promptly make reasonable efforts to retrieve and destroy such Privileged Documents and notify the Producing Party that it has done so. The party clawing back the produced Privileged Documents will provide the Receiving Party with a privilege log that reasonably identifies the basis for the assertion of privilege.

16

23.  If, based on (1) the privilege log entries provided to the Receiving Party by the Producing Party, or (2) the Receiving Party's review of Documents that occurred prior to the assertion of privilege and claw-back, there is a dispute over whether the clawed-back Documents at issue are protected from disclosure by virtue of a privilege or immunity from discovery, the original Documents shall nevertheless be immediately destroyed or returned to the Producing Party along with all copies (whether electronic or hard copy) thereof. All counsel shall undertake reasonable efforts to resolve the issue of whether the Documents are privileged without Court intervention. To the extent counsel cannot resolve the issue, the Receiving Party may bring a motion to compel production of the Privileged Documents, but may not assert as a ground for compelling production the fact or circumstance that the Privileged Documents had already been produced. In conjunction with such a motion, the Receiving Party may request the Court review in-camera the clawed-back Documents at issue, and, if the Court so orders, the Producing Party shall provide the Privileged Documents under seal to the Court for in-camera review. In the event of a motion to compel production of the Privileged Documents, the burden is on the Producing Party to provide, in its opposition to the motion to compel, information regarding the content and context of the Privileged Documents sufficient to establish the applicability of any asserted privilege or immunity from discovery.

24.  If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Information it has received from a Producing Party to any person or in any circumstance not authorized under this Stipulation and Order, the Receiving Party must promptly, after discovery of the disclosure, (a) notify the relevant Producing Party in writing of the unauthorized disclosure(s) and the identity of such persons(s) to whom Protected Information was disclosed, (b) make reasonable efforts to retrieve all copies of the Discovery Material containing Protected

17

Information from the person or persons to whom unauthorized disclosures were made (the "Unauthorized Recipient(s)"), (c) inform the Unauthorized Recipient(s) of all the terms of this Stipulation and Order, and (d) request the Unauthorized Recipient(s) to execute the undertaking attached hereto as Exhibit A.

25.     The Parties will exchange privilege logs in a timely fashion to ensure that there is reasonable time for the resolution of any privilege disputes, and the production of any Documents in connection with such resolution, prior to the close of fact discovery. The Parties need not log: (a) privileged communications to or from counsel in connection with the Litigation; or (b) Documents created at the request of counsel in connection with the Litigation. Nothing in this Stipulation and Order prevents the Parties from meeting and conferring or negotiating separate agreements regarding privilege log creation, production, content, format, or related issues.

26.     The Parties agree that they may not have an adequate remedy at law in the event that a court of competent jurisdiction determines that there is an actual or threatened breach of this Stipulation and Order by any Party and agree that, under such circumstances, the Parties may be entitled to specific performance and/or injunctive relief to enforce the terms hereof, in addition to any remedy to which they may be entitled at law or in equity.

27.     The provisions of this Stipulation and Order shall be binding upon the Parties. All modifications of, waivers of and amendments to this Stipulation and Order must be in writing and signed by, or on behalf of, the Parties.

28.     This Stipulation and Order is entered into without prejudice to the right of any Party to seek relief from, or modification of, this Stipulation and Order or any provisions thereof by

18

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the New York Civil Practice Law and Rules or other applicable law.

29.    This Stipulation and Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

30.    This Stipulation and Order has no effect upon, and shall not apply to, the Parties' use of their own Discovery Material for any purpose. Nothing herein shall impose any restrictions on the use or disclosure by a Party of Documents, materials, or information designated as Protected Information that has been generated or obtained lawfully by such Party independently of the proceedings in this Litigation.

31.    In the event that additional parties join or are joined in this Litigation, they shall not have access to Protected Information until the newly joined party, by its counsel, has executed and filed with the Court its agreement to be fully bound by this Stipulation and Order.

32.    The Parties agree to be bound by the terms of this Stipulation and Order pending the entry by the Court of this Stipulation and Order, and any violation of its terms shall be subject to the same penalties and sanctions, as if this Stipulation and Order had been entered by the Court.

33.    If any Receiving Party is subpoenaed in any other action or proceeding, or is served with a Document demand or is otherwise compelled by law to produce Documents (collectively, a "Demand"), and such Demand seeks Discovery Material that was produced or designated as Protected Information, or that reflects or contains Protected Information, by someone other than the Receiving Party, the Receiving Party shall give prompt written notice by hand or electronic or facsimile transmission, within ten (10) business days of receipt of such Demand, to the Party or its

19

counsel who produced or designated the material as Protected Information. The Receiving Party

shall not produce any of the Producing Party's Protected Information, unless Court-ordered or

otherwise required by law, for a period of at least ten (10) days after providing the required notice

to the Producing Party. If, within ten (10) days of receiving such notice, the Producing Party gives

notice to the Receiving Party that the Producing Party opposes production of its Protected

Information, the Receiving Party shall object, citing this Stipulation and Order, and not thereafter

produce such Protected Information, except as required by law. The Producing Party shall be solely

responsible for pursuing any objection to the requested production. Nothing herein shall be

construed as requiring the Receiving Party or anyone else covered by this Stipulation and Order to

challenge or appeal any order requiring production of Protected Information covered by this

Stipulation and Order, or to subject itself to any penalties for non- compliance with any legal

process or order, or to seek any relief from this Court. In the event that Protected Information is

produced to a non-party to this Stipulation and Order in response to a Demand, such Discovery

Material shall continue to be treated in accordance with the designation as Confidential or Highly

Confidential Information by the Parties to this Stipulation and Order.

34.    To the extent a Receiving Party is required to disclose Protected Information

produced in the Litigation, without a subpoena or other form of legal process, by a regulatory or

supervisory agency exercising its visitorial powers pursuant to 12 U.S.C. § 484 and/or 12 C.F.R. §

7.4000 ("Regulatory Demand") and compliance with the Regulatory Demand renders the Party

unable to comply with Paragraph 33 hereof, the Party may comply with the Regulatory Demand

and shall give prompt written notice by hand or electronic or facsimile transmission as soon as is

practicable following receipt of the Regulatory Demand and no later than the time at which the

Party produces the Protected Information in response to the Regulatory Demand, unless the

20

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

Receiving Party is prohibited by law from providing notice of the Regulatory Demand to the Producing Party.

35.    No Party shall produce or be requested to produce or identify any material or information that the Party is prohibited by law from disclosing under 31 U.S.C. § 5318(g), 31 C.F.R. § 103.18(e), or 12 C.F.R. § 510.5.

36.    For good cause shown, the following provisions shall apply to Non-Party Borrower Information. To the extent any federal or state law or other legal authority governing the disclosure or use of Non-Party Borrower Information (hereinafter, "Non-Party Borrower Information Law") permits disclosure of such information pursuant to an order of a court, this Stipulation and Order shall constitute compliance with such requirement. To the extent any Non-Party Borrower Information Law requires a Producing Party, including third- parties, to obtain a Court-ordered subpoena or to give notice or obtain consent, in any form or manner, from any person or entity before disclosure of any Non-Party Borrower Information, the Court finds that, in the view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, there is good cause to excuse such requirement, and this Stipulation and Order shall constitute an express direction that the Producing Party is exempted from obtaining a Court-ordered subpoena or having to notify and/or obtain consent from any person or entity prior to the disclosure of Non-Party Borrower Information. To the extent that any Non-Party Borrower Information Law requires that any person or entity be notified prior to disclosure of Non-Party Borrower Information except where such notice is prohibited by Court order, the Court directs that, in view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, the Producing Parties are explicitly prohibited from

21

providing such notice; provided, however, that this Stipulation and Order shall not prohibit any Producing Party from contacting any person or entity for any other purpose. Any Producing Party may seek additional orders from this Court that such party believes may be necessary to comply with any Non-Party Borrower Information Law.

37.    Nothing herein shall prevent any Receiving Party from disclosing Protected Information to the extent necessary to report to appropriate taxing authorities, or to the accountants or independent public auditors of the Receiving Party in confidence, as and only to the extent required to perform auditing or tax accounting work; and (b) to the extent necessary for purposes of financial reporting, including United States Securities and Exchange Commission and regulatory filings, and other regulatory requests.

38.    For the avoidance of doubt, nothing herein shall preclude counsel from giving advice to his or her client in this Litigation that includes a general evaluation of Protected Information, provided that counsel shall not disclose the contents of any Protected Information in violation of the terms of this Stipulation and Order.

39.    Any Party, in conducting discovery from non-parties in connection with the Litigation, shall provide any non-party from which it seeks discovery with a copy of this Stipulation and Order so as to inform each such non-party of his, her, or its rights herein. If a non-party provides discovery to any Party in connection with the Litigation, the provisions of this Stipulation and Order shall apply to such discovery as if such discovery were being provided by a Party. Under such circumstances, the non-party shall have the same rights and obligations under the Stipulation and Order as held by the Parties. For the avoidance of doubt, non-parties may designate

22

Discovery Material as Confidential Information or Highly Confidential Information pursuant to Paragraphs 3(a) and 3(c) as set forth herein.

40.    This Stipulation and Order shall continue to be binding after the conclusion of this Litigation except (a) that there shall be no restriction on Documents that are used as exhibits in Court (unless such exhibits were filed under seal and never unsealed); and (b) that a Party may seek the written permission of the Producing Party or further order of the Court with respect to dissolution or modification of the Stipulation and Order.

41.    Nothing herein shall be deemed to waive any privilege recognized by law, or shall be deemed an admission as to the admissibility in evidence of any Privileged Information, facts, or Documents revealed in the course of disclosure.

42.    Within ninety (90) days after the final termination of this Litigation by settlement (including, to the extent applicable, final court approval of such settlement) or exhaustion of all appeals, all Protected Information produced or designated and all reproductions thereof, shall be returned to the Producing Party or shall be destroyed, at the option of the Producing Party, which option shall be communicated in writing to the Receiving Party promptly. In the event that any Producing Party opts for destruction of its Protected Information, the Receiving Party shall certify, in writing, within ninety (90) days of the final termination of this Litigation that it has undertaken its best efforts to destroy such physical objects and Documents, and that such physical objects and Documents have been destroyed to the best of its knowledge. These best efforts need not include destroying Protected Information residing on back-up tapes or other disaster recovery systems. Notwithstanding anything to the contrary, counsel of record for the Parties may retain copies of Documents constituting work product, reports, pleadings, motion papers, discovery responses,

23

deposition and trial transcripts and deposition and trial exhibits. This Stipulation and Order shall not be interpreted in a manner that would violate any applicable canons of ethics or codes of professional responsibility. Nothing in this Stipulation and Order shall prohibit or interfere with the ability of counsel for any Party, or of experts or consultants specially retained for this case, to represent any individual, corporation, or other entity adverse to any Party or its affiliate(s) in connection with any other matters. For the avoidance of doubt, experts, third-party vendors, and consultants who have received Protected Information shall also be required to return or destroy such Protected Information pursuant to the terms of this paragraph.

43.     All Discovery Material shall be used solely for the purpose of conducting this Litigation and not for any other purpose whatsoever.

44.     Except as specifically provided herein, the terms, conditions, and limitations of this Stipulation and Order shall survive the termination of this Litigation.

45.     During the pendency of this Litigation, the Court shall retain jurisdiction over this Order, and persons who receive Discovery Material that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be subject to this Stipulation and Order, including any proceedings relating to their performance under, or compliance with, this Stipulation and Order.

46.     The Court will not retain jurisdiction after the conclusion of this Litigation for enforcement of this Stipulation and Order with respect to the Litigation.

47.     To maximize the security of information in transit, any media on which Protected Information is produced shall be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. If a party provides another party's Protected

24

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM          INDEX NO. 656964/2021
NYSCEF DOC. NO. 68                                        RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM          INDEX NO. 656964/2021

RECEIVED NYSCEF: 05/17/2022

Information to a third party, as identified and permitted under this Stipulation and Order, that party

shall comply with the requirements of this paragraph as if it were the Producing Party.

25

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021

NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

Dated: May 17, 2022
New York, New York

**LUNDIN PLLC**
John M. Lundin
Alexandra M.C. Douglas
405 Lexington Avenue
26th Floor
New York, NY 10174
(212) 541-2402
JLundin@LundinPLLC.com
ADouglas@LundinPLLC.com

John J.D. McFerrin-Clancy
17 State Street, 40th Floor
New York, NY 10004
(646) 771-7377
jmc@mcferrin-clancy.com

*Attorneys for Plaintiffs Mark A. Zittman,*
*IRA FBO Mark Zittman, Mark A.*
*Zittman as Beneficiary of IRA FBO*
*Mark Zittman, Mark A. Zittman as*
*Trustee of the Mark A. Zittman*
*Revocable Trust, and Mark A. Zittman*
*Revocable Trust*

Respectfully submitted,

**JONES DAY**
David F. Adler
Michael T. Marcucci
100 High Street
Boston, MA 02110
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Joseph C. Barry
Calland M. Ferraro
North Point
901 Lakeside Avenue East
Cleveland, OH 44114-1190
(216) 586-3939; (216) 579-0212 (fax)
jbarry@jonesday.com
cferraro@jonesday.com

*Attorneys for Defendant U.S. Bank*
*National Association*

Dated:    5/24/22

ENTER,

Hon. Joel M. Cohen, J.S.C.

26

## EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MARK A. ZITTMAN, IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Beneficiary of IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Trustee of the MARK A. ZITTMAN REVOCABLE TRUST, and MARK A. ZITTMAN REVOCABLE TRUST<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>Defendant. | Index No.:    656964/2021<br><br>Part 3<br><br>(Cohen, J.)<br><br>**STIPULATION AND [PROPOSED] CONFIDENTIALITY AND PROTECTIVE ORDER** |

## UNDERTAKING FOR THE USE OF CONFIDENTIAL INFORMATION

I, _____, state that:

1.   My business address is _____

2.   My present employer is _____

3.   My present occupation or job description is _____

4.   I have received a copy of the Stipulation and Confidentiality and Protective Order (the "Stipulation and Order") entered in the above-entitled action (the "Litigation") on

_____

5.   I have carefully read and understand the provisions of the Stipulation and Order.

6.   I will comply with all of the provisions of the Stipulation and Order.

A-1

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/24/2022
RECEIVED NYSCEF: 05/17/2022

7.     I will hold in confidence, will not disclose to anyone not qualified under the Stipulation and Order, and will use only for purposes of this Litigation, any Confidential Information or Highly Confidential Information that is disclosed to me.

8.     At the conclusion of my work on this matter, I will return or destroy, to the extent permitted by law, all Protected Information that comes into my possession, and Documents or things that I have prepared relating thereto, to counsel for the Party by whom I am employed or retained, or to counsel from whom I received the Protected Information.

9.     I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulation and Order in this Litigation.


Dated: _____        By: _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

```
------------------------------------------------------------   x
                                                               :   Index No.
                                                               :   656964/2021
MARK A. ZITTMAN, IRA FBO MARK                                  :
ZITTMAN, MARK A. ZITTMAN as Beneficiary of                    :
IRA FBO MARK ZITTMAN, MARK A.                                 :
ZITTMAN as Trustee of the MARK A. ZITTMAN                      :   Hon. Joel M. Cohen
REVOCABLE TRUST, and MARK A. ZITTMAN                           :   (IAS Part 3)
REVOCABLE TRUST,                                               :
                                                               :
              Plaintiffs,                                      :
                                                               :
                                                               :
       v.                                                      :
                                                               :
                                                               :
U.S. BANK, NATIONAL ASSOCIATION as                            :
Trustee (and any predecessors or successors                    :
thereto),

              Defendant.

------------------------------------------------------------   X
```

## SUBPOENA AD TESTIFICANDUM *AND* SUBPOENA DUCES TECUM

To:    Aurora Loan Services LLC
       c/o Corporation Service Company
       80 State Street
       Albany, NY 12207

YOU ARE HEREBY COMMANDED, that all business and excuses being laid aside, to appear at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019 on August 19, 2022 at 9:00 AM (ET), or at such other time agreed upon by the parties, and continuing from day-today until completed, to give testimony upon oral questions in the above action regarding the topics described in the attached Schedule A. The deposition shall be recorded by audio, video, and/or stenographic means by Veritext Legal Solutions, and may be used for all purposes as authorized by the law.

In accordance with Rule 11-f(e) of the Rules of the Commercial Division of the Supreme Court, U.S. Bank states that, no later than ten days prior to the scheduled deposition Aurora Loan Services LLC must designate one or more former officers, directors, members or employees, or

other individual(s) who consent to testify on its behalf. Such designation must include the identity, and the description or title of such individual(s), and if Aurora Loan Services LLC designates more than one individual, it must set out the topics listed in Schedule A on which each individual will testify.

YOU ARE FURTHER COMMANDED to produce by August 19, 2022, at the offices of Robins Kaplan LLP, 1325 Avenue of the Americas, Suite 2601, New York, New York 10019, complete and accurate copies of the documents, electronically stored information, or objects set forth in the attached Schedule A that are in your possession, custody, or control, pursuant to the definitions and instructions in the attached Schedule A, for purposes of inspection and copying, after which they will be returned.

Disclosure is sought from you because, upon information and belief, you possess information, documents, and things that are material and necessary to the prosecution of this action that are not reasonably available from the parties.

TAKE NOTICE that failure to comply with this subpoena is punishable as contempt of Court and may make you liable to the person upon whose behalf this subpoena was issued for a penalty and all allowed damages sustained by reason of your failure to comply.


Dated: July 19, 2022                    /s/ *Michael A. Collyard*
                                        ROBINS KAPLAN LLP
                                        Michael A. Collyard
                                        Peter C. Ihrig
                                        800 LaSalle Avenue, Suite 2800
                                        Minneapolis, MN 55402
                                        (612) 349-8500
                                        mcollyard@robinskaplan.com
                                        pihrig@robinskaplan.com

                                        *Attorneys for Defendant U.S. Bank National Association*

## SCHEDULE A

### I.    DEFINITIONS

1.      "Aurora Loan Services LLC," "You" or "Your" refers individually and

collectively to Aurora Loan Services LLC and any of its affiliates, predecessors-in-interest,

successors, divisions, direct or indirect subsidiaries, present or former officers, directors,

partners, employees, representatives, agents and intermediaries, and all other Persons acting or

purporting to act on its behalf, including its attorneys, in its capacities as Servicer and Master

Servicer of Subject Loans underlying or collateralizing the Certificates issued pursuant to one or

more Trusts.

2.      "Action" means the above-captioned lawsuit styled as or related to *Zittman,*

*et al. v. U.S. Bank National Association*, Index No. 656964/2021 (Sup. Ct. N.Y. Cnty.).

3.      "Assignment Agreement" means any assignment agreement, or similar

agreement, between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the

loans for securitization in the Trusts.

4.      "Assignor(s)" means any entity who assigned or transferred its rights in a Subject

Loan.

5.      "Certificate(s)" refers individually and collectively to any of the certificates

issued by the Trusts.

6.      "Communication" means the transmittal of information (in the form of facts,

ideas, inquiries or otherwise).

7.      "Complaints" means the operative complaints filed in this Action.

8.     "Completeness R&Ws" means any representation or warranty made by any Sponsor, Seller, Originator, Depositor, Warrantor, Assignor, Servicer, or Master Servicer concerning the completeness of the Mortgage Files for the Trusts, the breach of which the Trustee is obligated to enforce under the applicable Governing Agreements.

9.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

10.    "Custodial Agreement" means any agreement setting forth the rights, duties, and obligations of a Custodian for the Covered Trusts.

11.    "Depositor" means any entity defined in the Governing Agreements for any Trust as a depositor, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

12.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" as described in Fed R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of the term.

13.    "Exception(s)" means the notation(s) or description in any Document or certification that a Mortgage File is incomplete, missing documents, or otherwise does not comply with the requirements as prescribed in the Governing Agreements for the Trusts.

14.    "Exception Report(s)" means a report accompanying a certification provided pursuant to a Governing Agreement that identifies documents required to be included in the Mortgage File that are missing, defective, or incomplete as of the date of the report or that otherwise failed to satisfy the requirements of the Governing Agreements.

2

15.    "Governing Agreement(s)" means all agreements governing the Trusts, as

applicable, along with related exhibits, schedules, and appendices, including, but not limited to,

Pooling and Servicing Agreements, Indentures, Trust Agreements, Assignment Agreements,

MLPAs, Transfer and Servicing Agreements, Transfer and Assignment Agreements, Custodial

Agreements, and Servicing Agreements.

16.    "Government Entities" means any state or federal law enforcement or regulatory

agency, including, but not limited to, any state's office of attorney general, the United States

Department of Justice, the United States Securities and Exchange Commission ("SEC"), the

Federal Reserve Bank, the Federal Deposit Insurance Corporation, the Office of the Comptroller

of the Currency, the Federal Housing Finance Agency, the United States Department of Housing

and Urban Development, the Federal Bureau of Investigation, Government-Sponsored

Enterprises, any state or federal banking regulatory authority, or any other state or federal agency

or law enforcement authority.

17.    "Identify(ing)" (with respect to Persons) means to give, to the extent known, the

Person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment.  Once a Person has been identified

with respect to this subparagraph, only the name of that Person need be listed in response to

subsequent discovery requesting the identification of Persons.

18.    "Identify(ing)" (with respect to Documents) means to give, to the extent known,

the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv)

author(s), addressee(s) and recipient(s).

3

19.    "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

20.    "Investors" refers to any entity that has invested in the Certificates of any of the Trusts, beneficially or otherwise, individually or collectively with its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on its behalf, including its investment advisors and attorneys, in its capacity as an Investor.

21.    "Loan File" means all Documents that are maintained in the ordinary course of originating, underwriting, approving, and funding any Subject Loan, including, but not limited to, Documents completed or submitted by a borrower or mortgagor or his or her agent when applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

22.    "Loan Servicing File" means all Documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, Documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting Documents), mortgage note, mortgage or deed of trust, mortgage

4

insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes

and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan

servicing records, including, without limitation, call notes, foreclosure files and

Communications, and loss mitigation files; (vii) all mortgage insurance rescission-related

Documents; (viii) all records relating to repurchase analyses, demands, investigations and

Communications; and (ix) servicing guidelines and procedures.

23.    "Loan Tape(s)" means any electronic spreadsheet or other Document containing a

loan-by-loan identification of the Subject Loans (which descriptions may include information

concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral

information, borrower income, and/or other information about the borrower or the loan).

24.    "Master Servicer" means any entity defined in the Governing Agreements for any

Trust as a master servicer, as well as its officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on its behalf.

25.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or

representations and warranties agreement, or any similar agreement, between an Originator and a

Sponsor or Seller, or an Originator and a Depositor, or a Seller or Sponsor and a Depositor, in

which the Originator conveys loans to the Sponsor or Seller or the Depositor for securitization in

any of the Trusts.

26.    "Mortgage File(s)" means the file consisting of documents to be delivered to the

Custodian under the terms of the Governing Agreements, including, but not limited to, the note,

mortgage, title policy, and assignments.

5

27.     "OCC Consent Order(s)" means the various Consent Orders and findings made by

the Office of the Comptroller of the Currency relating to servicing practices for foreclosures, as

referenced in the Complaints.

28.     "Originator" has the same meaning ascribed to it in the relevant Governing

Agreements or prospectus supplement for each Trust, and any other entity that originated one or

more of the Subject Loans, as well as their officers, directors, employees, corporate parents,

predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents,

representatives, and all other Persons acting or purporting to act on their behalf.

29.     "Person(s)" refers to natural persons, proprietorships, governmental agencies,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

entities.

30.     "Plaintiffs" means, collectively, Mark A. Zittman; IRA FBO Mark Zittman; Mark

A. Zittman as Beneficiary of IRA FBO Mark Zittman; Mark A. Zittman as Trustee of the Mark

A Zittman Revocable Trust; Mark A. Zittman Revocable Trust; and any officer, agent,

employee, attorney, or Person acting under the control of or on behalf of the foregoing, or any

affiliated entity, including entities involved in or providing information, research, or analysis

relating to the investment of these entities. For the avoidance of doubt, and without otherwise

limiting the foregoing, the definition of "Plaintiffs" includes any investment advisor, sub-

advisor, custodian, administrator, or other Person or entity providing services to the "Plaintiffs."

31.     "Prior Holder" means any Investor other than Plaintiffs who previously owned

any of the Certificates that were ultimately sold or transferred to Plaintiffs.

32.     "Refer" or "relate" or "referring" or "relating" means all Documents which

comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created,

6

generated or maintained as a result of the subject matter of the request, including, without

limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate,

consider, review or report on the subject matter of the request.

33.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing

Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100—

Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100–229.1123, as such may be

amended from time to time, and subject to such clarification and interpretation as have been

provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release

No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be

provided by the SEC from time to time.

34.    "RMBS" means any Residential Mortgage Backed Security as that term is

commonly known in the industry.

35.    "Robo-signing" refers to the practice of "mechanically" signing foreclosure

affidavits, as alleged in Plaintiffs' Complaints (*see, e.g.*, NYSCEF Doc. No. 2, at ¶¶ 71–73), that

was at issue in the OCC Consent Orders.

36.    "Service" or "Servicing" means the act of servicing and administering the Subject

Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set

forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in

Item 1108 of Regulation AB.

37.    "Servicer" means the entities identified as a Servicer (or any successor Servicer),

Master Servicer (or any successor Master Servicer), subservicer (or any successor subservicer),

or special servicer (or any successor special servicer) in the relevant Governing Agreements for

each Trust, and any other entity that services loans and/or is responsible for any portion of the

7

Servicing functions performed, or required to be performed, with respect to each of the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on their behalf.

38.   "Servicing Agreement" means any servicing agreement or servicing and sale agreement, or similar agreement, between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the loans underlying or collateralizing the Certificates.

39.   "Sponsor" or "Seller" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other entity that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

40.   "Subject Loan(s)" refers individually and collectively to any of the loans underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of Certificates issued pursuant to the Trusts.

41.   "Trust(s)" refers individually and collectively to the issuing entities of the Certificates, as identified in Appendix 1.

42.   "Trustee" has the meaning set forth the Governing Agreements, including any predecessor or successor to that role.

43.   "U.S. Bank" refers individually and collectively to U.S. Bank National Association, whether in its individual or Trustee capacities, and any of its affiliates,

8

predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other Persons acting or purporting to act on their behalf, including their attorneys.

44.     "Warrantor" means any entity that made a representation and warranty regarding the Subject Loans or that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting or purporting to act on its behalf.

## II.    **INSTRUCTIONS**

1.     "All/any/each" shall be construed as encompassing any and all.

2.     "And/or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

3.     References to any non-natural Person (*e.g.*, corporation, partnership, etc.) shall be deemed to include that entity's current and former employees, agents, officers, directors, partners, members, attorneys, representatives, successors, advisors, sub-advisors, managers, or any Person acting or purporting to act on its behalf.

4.     The singular form of a word shall be construed and applied to include the plural form, and vice versa.

5.     Each deposition topic and document request shall be construed independently, and no topic or request shall be viewed as limiting the scope of any other.

6.    If You object to a portion or aspect of any deposition topic or document request, state the grounds for Your objections with specificity.

7.    Documents shall be produced as they are kept in the usual course of business, or the Documents shall be organized and labeled to correspond to the categories in these requests. In the case of Documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those Documents should be produced in the same manner as they were previously produced by You.

8.    Documents shall be produced in such fashion as to identify the department, branch, office, or central file or Document repository in which each such Document was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

9.    You are required to produce the original of each Document requested, together with all non-identical copies and drafts of each Document. If the original of any Document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

10.    Documents attached to each other in their original form should not be separated when produced. Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

11.    If You are unable to respond fully to any Document request, respond to the extent possible, and specify the reasons for Your inability to respond in full and describe to the best of

Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document that are not being produced.

      12.    If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality, or trade secret, You shall provide a privilege log setting forth separately with respect to each such Document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of Document; (c) the authors of the Document, including title and affiliation; (d) the addressees of the Document, including title and affiliation; (e) all Persons who received copies of the Document, including titles and affiliations; (f) the date of the Document; (g) the subject matter of the Document; and (h) the Bates and/or control number(s) assigned to the Document.

      13.    If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

      14.    If a Document responsive to the requests was at any time in Your possession, custody or control, but is no longer available for production, state as to each such Document the following information whether:

      (a)    the Document is missing or lost;

      (b)    the Document has been destroyed;

      (c)    the Document has been transferred or delivered to another Person or entity and, if so, to whom and at whose request;

(d)    the Document has been otherwise disposed of; and

(e)    a precise statement of the circumstances surrounding the disposition of the
Document and the date of its disposition.

15.    Documents not otherwise responsive to these requests shall be produced if such

Documents mention, discuss, refer to, or explain the Documents that are called for by these

requests, or if such Documents are attached to Documents called for by the requests, including

routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.    **FORM OF PRODUCTION – HARD COPY**

Hardcopy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images

with an .opt image cross-reference file and a delimited database load file (i.e., .dat).  The

database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH,"

"ENDATTACH," "PAGES" and "CUSTODIAN."  The Documents should be logically unitized

(i.e., distinct Documents should not be merged into a single record, and a single Document

should not be split into multiple records) and should be produced in the order in which they are

kept in the usual course of business.  If an original Document contains color necessary to

understand the meaning or content of the Document, the Document should be produced as

single-page, 300 DPI, color JPG images.  Multi-page Optical Character Recognition ("OCR")

text for each Document should also be provided.  The OCR software should maximize text

quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned

on during the OCR process.

12

**IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION**

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .OPT image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the Document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint Documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original Document contains color, the Document should be produced as single-page, 300 DPI, color JPG images. For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files. Documents for which text cannot be extracted will be produced with OCR.

If a Document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the Document has been produced in native format should also be provided. If Documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its

13

corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific Document or class of Documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (i.e., structured data), the parties should meet and confer in good faith.

Removal of duplicate Documents should only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate Documents is not acceptable. De-duplication should be done across the entire collection (i.e., global level) and the ALL CUSTODIANS field should list each Custodian, separated by a semicolon, who was a source of that Document. To accommodate for rolling productions, for ESI that is removed as duplicate from earlier productions, the producing party should provide an overlay file no later than three days after the date of each rolling production that includes the duplicate custodian names.

*Loan Files and Loan Servicing Files.* Files containing Documents created or received during loan origination, underwriting, approval and funding, including any supplemental materials received post-funding) and/or Loan Servicing Files, shall be organized as they were maintained in the ordinary course of business, but produced in reasonably useable format. The following specifications will be met when producing Loan Files: the files will be produced as TIFF/JPG except for those files which are to be produced in native format (Excel, Access). All

14

files for a specific loan number will be produced with the loan number in a field named "loan number". The Documents will be bates numbered and designated per the Protective Order.

*Non-Convertible Files.* Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd

Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in the non-convertible file section is meant to include productions of data produced from databases.

Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

Technology. Prior to use, the parties should meet and confer to disclose and discuss any proposed use of predictive coding technology or email thread suppression. If a party proposes the use of such predictive coding technology or email thread suppression, the parties agree to confer in good faith to negotiate a separate, mutually agreeable protocol.

## V.    RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2004, through the date of Your

response (the "relevant time period"), unless otherwise specifically indicated, and shall include

all Documents and information that relate to such period, even though prepared or published

outside of the relevant time period.  If a Document prepared before this period is necessary for a

correct or complete understanding of any Document covered by a request, You must produce the

earlier Document as well.  If any Document is undated and the date of its preparation cannot be

determined, the Document shall be produced if otherwise responsive to the request.

## VI.    TOPICS FOR EXAMINATION

**TOPIC NO. 1:**  Your policies, procedures, and practices for determining, identifying, and obtaining the documents required to foreclose upon a loan, including obtaining documents that You determine are required for foreclosure but are either missing from the Mortgage File or are otherwise defective.

**TOPIC NO. 2:**  Your policies, procedures, and practices for determining, identifying, and obtaining the documents required to submit a title insurance claim, including documents that You determine are required for such a claim but are either missing from the Mortgage File or are otherwise defective.

**TOPIC NO. 3:**  Your understanding of how, if at all, having only a copy of a Mortgage File document, rather than an original, could impact the servicing of a loan in an RMBS trust.

**TOPIC NO. 4:**  Your Communications with any party regarding any Exceptions noted in the Exception Reports for the Trusts.

**TOPIC NO. 5:**  Your receipt of any Documents that would cure any Exception noted for any Trust, regardless of whether You notified the Custodian concerning Your receipt of such documents.

**TOPIC NO. 6:**  Your understanding of Your ability to obtain and gather Documents relevant to a mortgage loan that may be needed in the event of foreclosure or to file a title insurance claim.

**TOPIC NO. 7:**  Your efforts to obtain and gather the items listed as part of the Mortgage Files for any Subject Loans that were subject to foreclosure or for which You filed a title insurance claim, including the results of such efforts.

16

**TOPIC NO. 8**:  Your policies, procedures, and practices for providing to the Custodian any Documents You obtained in preparation for foreclosure and/or a title insurance claim for the Mortgage Loans.

**TOPIC NO. 9**:  Your understanding of the relationship, if any, between Exceptions and "robo-signing" and/or the OCC Consent Order, including whether Exceptions caused the alleged practice of "robo-signing" or the practices described in the OCC Consent Orders.

**TOPIC NO. 10**:  Your understanding of the use of each document in the Mortgage File with respect to servicing loans in RMBS trusts, and any increased risk of loss that may occur based on any such document being missing or defective.

**TOPIC NO. 11**:  Your understanding of Regulation AB Item 1122(d)(4)(i), including whether Item 1122(d)(4)(i) is related to Exceptions.

**TOPIC NO. 12**:  Your understanding of whether any of the Trusts were included in any sample that formed the basis of a Regulation AB Item 1122 assertion or USAP certification attestation provided to the Trustee.

**TOPIC NO. 13**:  Your understanding regarding whether Exceptions affected foreclosure timelines related to Subject Loans, and/or led to foreclosure moratoria.

**TOPIC NO. 14**:  Your efforts to provide a notice or to respond to a notice regarding any materially defective document in, or document missing from, a Mortgage File for the Trusts.

## VII.    DOCUMENTS REQUESTED

**REQUEST NO. 1**:  All Documents responsive to the topics for examination listed above.

**REQUEST NO. 2**:  All Documents subpoenaed by the Plaintiffs in this Action, if any, and all Communications with the Plaintiffs concerning any such subpoena(s).

**REQUEST NO. 3**:  All Documents and Communications with the Plaintiffs or a Prior Holder concerning the Trusts or the Subject Loans or mortgage loans relating to the Trusts.

**REQUEST NO. 4**:  All Documents and Communications with the Trustee of the Trusts (including all predecessor trustees and all current trustees) concerning Exceptions in the Subject Loans.

**REQUEST NO. 5**:  All Documents and Communications identifying and concerning Subject Loans for which You made a title insurance claim.

**REQUEST NO. 6**:  All Documents and Communications, including documents held by Your foreclosure attorneys, concerning Subject Loans for which You filed for foreclosure.

**REQUEST NO. 7:** All Documents and Communications concerning cure, repurchase or substitution notices, demands, or requests You made to Originators or Assignors or Warrantors regarding the Subject Loans based on alleged Exceptions or breach of Completeness R&Ws, including the name of the trust, the loan number(s) for each loan You demanded be repurchased or substituted, and Your analysis and basis for demanding a repurchase or substitution.

**REQUEST NO. 8:** All Loan Origination Files concerning any foreclosed Subject Loans in the Trusts, and, for any Loan Origination Files You produce to Plaintiffs or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**REQUEST NO. 9:** All Loan Servicing Files concerning any foreclosed Subject Loans in the Trusts, and any analysis performed with respect to such Loan Servicing Files, including but not limited to any reports or summaries of such analyses and, for any Loan Servicing Files You produce to Plaintiffs or U.S. Bank, a list of loan numbers sufficient to identify the loans included in such production.

**REQUEST NO. 10:** All Documents and Communications between the Plaintiffs, a Prior Holder, and You concerning the Trusts or the Subject Loans, including but not limited to Communications concerning Your interpretation of the Governing Agreements, any purported liability of the Trustee under the Governing Agreements, or any indemnification by You or any other party to the Governing Agreements of the Trust or the Trustee.

**REQUEST NO. 11:** All Documents and Communications concerning the bankruptcy or insolvency of an Originator, Assignor or Warrantor with repurchase or substitution obligations concerning the Subject Loans with respect to Completeness R&Ws, including but not limited to Documents and Communications concerning claims You filed for such obligations—if any—in any bankruptcy or insolvency proceeding involving such an Originator, Assignor, or Warrantor.

**REQUEST NO. 12:** Any policies and procedures concerning repurchase or substitution obligations in RMBS trusts with respect to breaches of Completeness R&Ws, including, but not limited to, policies and procedures for evaluating responsibility for repurchase and/or substitution demands, policies and procedures for evaluating repurchase and substitution requests, policies and procedures related to providing notice of missing or defective documents or notice of breaches of Completeness R&Ws pursuant to the Governing Agreements for RMBS trusts, and policies and procedures concerning Your determination whether to repurchase or substitute a loan in such circumstances.

**REQUEST NO. 13:** All Documents and Communications concerning the results of any repurchase or substitution demands You made for RMBS trusts by year during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including, but not limited to, the percentage of mortgage loans that were actually repurchased or substituted pursuant to Your demands.

**REQUEST NO. 14:** All Documents and Communications concerning any agreements between You and the Plaintiffs or a Prior Holder concerning mortgage loans relating to the Trusts.

18

**REQUEST NO. 15:** Documents reflecting and identifying the mortgage loans for which You demanded substitution and/or repurchase from any RMBS trust during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including the name of the trust and, for each loan, the following information: the account number(s), the outstanding principal balance and accrued interest and fees at the time of the demand, the outstanding principal balance and accrued interest and fees at the time of repurchase, and the repurchase price.

**REQUEST NO. 16:** All Documents and Communications concerning repurchase or substitution demands or requests You received regarding any RMBS trust during the relevant time period for breaches of Completeness R&Ws and covenants concerning delivery of the Mortgage File, including the name of the trust, the name of the requesting party, the account number(s) for the loans identified in the demand or request, Your analysis of the demand or request, Your response to the demand or request, and whether You sought repurchase or substitution of the identified loans.

19

## APPENDIX 1

Trusts

1.  ABFC 2007-WMC1
2.  BAFC 2006-H
3.  BAFC 2007-C
4.  BAFC 2007-D
5.  BSABS 2006-AC2
6.  CSAB 2006-3
7.  GSAA 2006-1
8.  GSAA 2006-3
9.  GSAMP 2006-HE4
10. GSR 2005-AR7
11. GSR 2006-AR1
12. HEAT 2005-6
13. HEAT 2005-7
14. HEAT 2006-3
15. HEAT 2006-4
16. HVMLT 2005-3
17. HVMLT 2006-1
18. HVMLT 2006-4
19. LXS 2005-5N
20. LXS 2005-9N
21. LXS 2007-15N
22. MSM 2006-1AR
23. SASC 2007-EQ1
24. SURF 2006-AB3
25. SURF 2007-BC2
26. TMST 2007-3
27. WFMBS 2006-AR1

20

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| ALL CUSTODIANS | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

21

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68 RECEIVED NYSCEF: 05/17/2022

At IAS Part 3 of the Supreme Court of the
State of New York, Commercial Division,
County of New York, at the courthouse
thereof, 60 Centre Street, New York, New
York, on the 17th day of May, 2022

PRESENT: Honorable Joel M. Cohen, Justice
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------- x
:
MARK A. ZITTMAN, IRA FBO MARK ZITTMAN,     :
MARK A. ZITTMAN as Beneficiary of IRA FBO    :
MARK ZITTMAN, MARK A. ZITTMAN as Trustee    :
of the MARK A. ZITTMAN REVOCABLE TRUST,     :
and MARK A. ZITTMAN REVOCABLE TRUST,        :
:
                    Plaintiffs,       :
:
:
            v.                :
:
:
U.S. BANK, NATIONAL ASSOCIATION as Trustee   :
(and any predecessors or successors thereto),     :
:
                    Defendant.

-------------------------------------------------------- X

Index No.
656964/2021

Hon. Joel M. Cohen
(IAS Part 3)

**STIPULATION AND
~~[PROPOSED]~~
CONFIDENTIALITY AND
PROTECTIVE ORDER**

This matter having come before the Court by stipulation of Plaintiffs Mark A. Zittman, IRA

FBO Mark Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A. Zittman

as Trustee of the Mark A. Zittman Revocable Trust, and Mark A. Zittman Revocable Trust and

Defendant U.S. Bank National Association, for the entry of a protective order pursuant to CPLR

3013(a), limiting the review, copying, dissemination, and filing of confidential and/or proprietary

Documents and information to be produced by the Parties or their respective counsel, or by any

1

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM
NYSCEF DOC. NO. 68

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68

INDEX NO. 656964/2021
RECEIVED NYSCEF: 05/24/2022

INDEX NO. 656964/2021
RECEIVED NYSCEF: 05/17/2022

non-party, in the course of discovery in this matter to the extent set forth below (the "Stipulation and Order"). Having found that the Parties, by, between, and among their respective counsel, have stipulated and agreed to the terms set forth herein, and good cause having been shown,

IT IS ORDERED that:

1. This Stipulation and Order is being entered into to facilitate the production, exchange, and discovery of Documents and information that the Parties agree merit confidential treatment. This Stipulation and Order shall govern the handling of Documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admission, responses to requests for production, and any other information or material produced, given, or exchanged by and among the Parties and any non-parties to the above-captioned action (the "Litigation") in connection with discovery in the Litigation (such information or material hereinafter referred to as "Discovery Material").

2. A Producing Party (as defined below) may designate Discovery Material in connection with this Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" either by notation on the Document, statement on the record of a deposition, written notice to counsel for the Parties hereto, or by other appropriate means. In the case of Documents produced in native, electronic form, the confidentiality can be designated on the placeholder sheet produced along with that Document, or in a confidentiality metadata field. A Producing Party (as defined below) who designates any Discovery Material "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" bears the burden of establishing the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" status of such Discovery Material in any situation in which the designation is at issue, and nothing in this Stipulation and Order shall be construed to alter such burden.

3. As used herein:

2

08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1
Pg 262 of 287

 

(a)  "Plaintiffs" or "Zittman" shall mean Plaintiffs Mark A. Zittman, IRA FBO Mark
Zittman, Mark A. Zittman as Beneficiary of IRA FBO Mark Zittman, Mark A.
Zittman as Trustee of the Mark A. Zittman Revocable Trust, and Mark A.
Zittman Revocable Trust, including Plaintiffs' investment advisors.

(b)  "Defendant" or "U.S. Bank" shall mean Defendant U.S. Bank National
Association.

(c)  "Party" shall mean Plaintiffs or Defendant, and, Defendant together with
Plaintiffs, the "Parties".

(d)  "Confidential Information" shall mean all Discovery Material, and all
information contained therein, and other information designated as
"CONFIDENTIAL," that the Producing Party (as defined below) reasonably and
in good faith believes constitutes and/or contains (i) any trade secret or other
confidential non-public research, design, development, financial or commercial
information or (ii) Non-Party Borrower Information (as defined below). In
addition, a Producing Party (as defined below) may designate as
"CONFIDENTIAL" non-public personal information, other sensitive personally
identifiable information (such as Social Security numbers, dates of birth, home
addresses, phone numbers, email addresses) or other information for which
applicable federal or state law requires confidential treatment.

(e)  "Document" shall mean all writings, drawings, graphs, charts, photographs,
sound recordings, images, and other data or data compilations, any recorded
form of information, whether in printed, electronic, or other format, and
including deposition transcripts, answers to interrogatories, and other discovery
requests and responses.

3

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM          INDEX NO. 656964/2021

NYSCEF DOC. NO. 68                                        RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM          INDEX NO. 656964/2021

NYSCEF DOC. NO. 68                                        RECEIVED NYSCEF: 05/17/2022

(f)     "Highly Confidential Information" shall mean all Discovery Material, and all information contained therein, and other information designated as "HIGHLY CONFIDENTIAL," that the Producing Party (as defined below) reasonably and in good faith believes, at the time of designation, constitutes and/or contains current trade secrets, proprietary business information, or other information the disclosure of which would result in competitive, commercial or financial harm to the Producing Party (as defined below) or its personnel, clients or customers if disclosed. Should a Producing Party identify categories of Documents in addition to those identified in this paragraph that the party wishes to designate as "HIGHLY CONFIDENTIAL," the Parties shall meet and confer in good faith regarding the Producing Party's proposed designation and, if the Parties are unable to reach agreement on the proposed designation, each Party expressly reserves the right to seek appropriate relief from the Court.

(g)     "Non-Party Borrower Information" shall mean any information that constitutes "nonpublic personal information" within the meaning of the Gramm-Leach Bliley Act, 15 U.S.C. § 6802, et seq. and its implementing regulations, including, but not limited to, any portion of a mortgage loan file, spreadsheet or other Document or data set that includes financial or credit information for any person (including any credit history, report or score obtained on any such person to determine the individual's eligibility for credit) together with personally identifiable information with respect to such person, including, but not limited to, name, address, Social Security number, loan number, telephone number, or place or position of work. As set forth in Paragraph 36 below, this Stipulation

4

and Order authorizes the disclosure of such Non-Party Borrower Information in this Litigation.

(h) "Protected Information" shall mean Confidential Information and Highly Confidential Information, collectively.

(i) "Producing Party" shall mean the Party to this Litigation who gives testimony or produces Documents or other materials containing Protected Information and/or any non-party producing or giving testimony concerning Protected Information in connection with discovery in this Litigation, or the Party asserting the confidentiality designation, as the case may be.

(j) "Receiving Party" shall mean the Party to this Litigation and/or any non-party receiving Protected Information in connection with discovery in this Litigation.

4. The Receiving Party may, at any time, notify the Producing Party that the Receiving Party does not concur in the designation of Discovery Material as Confidential Information or Highly Confidential Information. The Parties shall meet and confer in good faith regarding any such disagreement over the classification of Discovery Material and, if the Producing Party does not agree to change the designation of such Discovery Material, the Receiving Party may move the Court for an order removing the designation of such Discovery Material as Protected Information. Upon such a motion, the Producing Party shall bear the burden to prove that the Discovery Material in question is Protected Information. If such a motion is filed, the Discovery Material shall be deemed Protected Information, with the same confidentiality designation as asserted by the Producing Party, unless and until the Court rules otherwise.

5. In order to expedite the production of voluminous materials, a Producing Party may, but is not required to, produce materials without a detailed review for confidentiality designation

5

and may designate collections of Documents that, by their nature, contain Confidential Information

as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" notwithstanding that some of the

Documents within the collection may not qualify for such designation. A Party's "bulk"

designation of Documents shall not constitute waiver of any Party's rights set forth in Paragraph 20

of this Stipulation and Order. Notwithstanding the foregoing, a Receiving Party may at any time

challenge the designation of one or more particular Documents on the grounds that the

Document(s) do not qualify for protection, including as provided in Paragraphs 4 and 29 of this

Stipulation and Order.

      6.    Except with the prior written consent of the Producing Party or by Order of the

Court, Confidential Information shall not be furnished, shown or disclosed to any person or entity

except:

      (a)    counsel for the Parties to this Litigation and their associated attorneys, paralegals
and other professional personnel (including support staff) who are directly
assisting such counsel in the preparation of this Litigation for trial or other
proceeding herein, are under the supervision or control of such counsel, and who
have been advised of their obligations hereunder;

      (b)    expert witnesses or consultants who are employed or retained by a Party in
connection with the prosecution or defense of this Litigation, and members of
the expert witnesses' or consultants' staff working under the expert witnesses' or
consultants' supervision, provided, however, that such Confidential Information
is furnished, shown or disclosed to them in accordance with Paragraph 8 hereof;

6

(c)   third-party vendors or consultants retained by the Parties or their counsel to
      furnish technical services in connection with this Litigation and who have been
      advised of their obligations hereunder;

(d)   the Court and Court personnel, if filed in accordance with Paragraph 15 hereof;

(e)   an officer before whom a deposition is taken, including stenographic reporters,
      videographers and any necessary secretarial, clerical or other personnel of such
      officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b)
      hereof;

(f)   trial and deposition witnesses, if furnished, shown or disclosed in accordance
      with Paragraphs 11 and 12(a)-(b), respectively, hereof;

(g)   personnel of the Parties (including in-house counsel) actually engaged in
      assisting in the preparation of this Litigation for trial or other proceeding herein
      and who have been advised of their obligations hereunder;

(h)   former personnel of the Parties actually engaged in assisting in the preparation of
      this Litigation for trial or other proceeding herein provided, however, that such
      Confidential Information is furnished, shown, or disclosed to them in accordance
      with Paragraph 8 hereof;

(i)   any mediator or arbitrator engaged by the Parties to this Litigation;

(j)   the insurers and reinsurers of the Parties to this Litigation, and counsel to such
      insurers and reinsurers as necessary for the prosecution or defense of this
      Litigation; and

(k)   any other person agreed to by the Parties.

7

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSFILEDC. NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 656964/2022
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

7.     No disclosure of Highly Confidential Information may be made to any person or entity other than:

(a)     counsel for the Parties to this Litigation and their associated attorneys, paralegals and other professional personnel (including support staff) who are directly assisting such counsel in the preparation of this Litigation for trial or other proceeding herein, are under the supervision or control of such counsel, and who have been advised of their obligations hereunder. Disclosure to in-house counsel, paralegals, and other professional personnel (including support staff) shall be limited to those in-house counsel providing legal advice in connection with this Litigation and the paralegals and other professional personnel supporting such in-house counsel, and Highly Confidential Information may not be disclosed to any officers, directors, employees or agents of a Party except as otherwise provided in Section 7(h). For the avoidance of doubt, Highly Confidential Information disclosed to in-house counsel, paralegals, and other professional personnel may not be used for any business or other purpose unrelated to the prosecution or defense of this Litigation;

(b)     expert witnesses or consultants who are employed or retained by a Party in connection with the prosecution or defense of this Litigation, and members of the expert witnesses' or consultants' staff working under the expert witnesses' or consultants' supervision, provided, however, that such Highly Confidential Information is furnished, shown or disclosed in accordance with Paragraph 8 hereof. Such disclosure shall only be to the extent reasonably necessary for such expert witness or consultant to perform his or her work;

8

    (c)    third-party vendors or consultants retained by the Parties or their counsel to furnish technical services in connection with this Litigation and who have been advised of their obligations hereunder;

    (d)    the Court and Court personnel, if filed in accordance with Paragraph 15, hereof;

    (e)    an officer before whom a deposition is taken, including stenographic reporters, videographers and any necessary secretarial, clerical or other personnel of such officer, if furnished, shown or disclosed in accordance with Paragraph 12(a)-(b) hereof;

    (f)    trial and deposition witnesses, if furnished, shown or disclosed in accordance with Paragraphs 11 and 12(a)-(b), respectively, hereof;

    (g)    any mediator or arbitrator engaged by the Parties to this Litigation; the following persons (or any persons that may hold their respective positions in the future) who have been advised of their obligations hereunder: individuals at U.S. Bank holding the position of vice president or above with responsibility for litigation and disputes or oversight of this Litigation; and

    (h)    any other person agreed to by the Parties.

    8.    Before any disclosure of Protected Information is made pursuant to Paragraphs 6(b) or 6(h), or 7(b) hereof, counsel for the Receiving Party shall obtain from the intended recipient of the Protected Information such person's written undertaking, in the form of Exhibit A attached hereto, to comply with and be bound by its terms.

9

9.      Protected Information shall be utilized by the Receiving Party only for purposes of this Litigation, or the enforcement of insurance rights with respect to this Litigation, and for no other purposes.

10.     All depositions shall presumptively be treated as Confidential Information subject to this Stipulation and Order during the deposition and until fifteen (15) days after the final transcript of said deposition is received by counsel for each of the Parties, unless otherwise specified in writing or on the record of the deposition by the Producing Party. At or before the end of such fifteen (15) day period, the deposition, or pages thereof, may be designated for future purposes as Confidential Information or Highly Confidential Information by any Party or, where applicable, by the non-party providing the deposition testimony.

11.     Should the need arise for any of the Parties to disclose Protected Information during any hearing or trial before the Court, including through argument or the presentation of evidence, such Party may do so only after taking such steps as the Court shall deem necessary to preserve the confidentiality of such Protected Information.

12.     This Stipulation and Order shall not preclude counsel for the Parties from using Protected Information during any deposition in this Litigation, provided that prior to any such use, the Party intending to use Protected Information shall: (a) provide a copy of this Stipulation and Order to the witness, and others to whom disclosure is intended to be made; (b) explain the Stipulation and Order to said persons and/or cause them to read the Stipulation and Order; and (c) obtain from said persons properly executed undertakings, in the form of Exhibit A attached hereto, if such persons are not covered by Paragraphs 6 and 7 of this Stipulation and Order. Should any person refuse to execute the undertaking before or at the deposition, counsel for the Parties may

10

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM INDEX NO. 656964/2021
08-13555-mg    Doc 61483-1    Filed 08/10/22    Entered 08/10/22 17:54:43    Exhibit 1

NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/17/2022

NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

still use the Protected Information during the deposition, and the Parties agree that the use of such Protected Information during the deposition shall not negate its treatment as Protected Information pursuant to this Stipulation and Order. Counsel shall retain copies of the signed "Exhibit A" forms until the termination of this Litigation. The Parties shall act in good faith to eliminate, whenever possible, the expenditure of "on the record" time to effectuate or confirm compliance with this paragraph at any deposition.

13. A Party may designate as Confidential Information any Discovery Material produced or given by any non-party to this case, or any portion thereof. In the case of Documents, designation shall be made by notifying all counsel, in writing, of those Documents that are to be stamped and treated as Confidential Information at any time up to thirty (30) days after actual receipt of copies of those Documents by counsel for the Party asserting the confidentiality designation. Prior to the expiration of such thirty (30) day period (or until a designation is made by counsel, if such a designation is made in a shorter period of time), all such Documents shall be treated as Confidential Information. In the case of testimony, designation shall be made by notifying all counsel, in writing, of those portions of a transcript which are to be stamped or otherwise treated as Confidential Information at any time up to thirty (30) days after the final transcript is received by counsel for the Party asserting the confidentiality designation.

14. Disclosing parties shall designate and treat "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material as follows:

(a) In the case of Documents, interrogatory answers, responses to requests to admit, and the information contained therein, designation shall be made by marking or stamping each page as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, prior to its production or disclosure to the Receiving Party.

11

Electronically stored information (other than that produced in native form) designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be marked or stamped as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," as appropriate, using means sufficient to ensure that every page of such Document, when printed, contains the appropriate mark or stamp. Electronically stored information produced in native format shall include any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation in the file name.

(b)   In the event that a disclosing party inadvertently fails to stamp or otherwise designate a Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at the time of its production, that disclosing party may stamp or otherwise designate the Document or other material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at any reasonable time thereafter. The delay in so designating a Document shall not, in and of itself, be deemed to have effected a waiver of any of the protections of this Stipulation and Order, and parties will make reasonable efforts to claw back any previously disseminated undesignated Documents that are later designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

(c)   Any "CONFIDENTIAL" material produced in a non-paper media (e.g., videotape, audiotape, computer disc) may be designated as such by labeling the outside of such non-paper media as "CONFIDENTIAL." In the event a Receiving Party generates any electronic copy, "hard copy," transcription, or printout from any such designated non- paper media, such party must treat each copy, transcription, or printout as "CONFIDENTIAL" pursuant to the terms of this Stipulation and Order.

12

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM
NYSCEF DOC. NO. 7

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM
NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

INDEX NO. 656964/2021

15.   (a) A Party or, as appropriate, non-party, who seeks to file with the Court (i) any deposition transcripts, exhibits, answers to interrogatories, or other Discovery Material which have previously been designated as comprising or containing Protected Information, or (ii) any pleading, brief or memorandum which reproduces, paraphrases or discloses Protected Information shall, fourteen (14) days prior to filing any motion, provide the Producing Party with written notice of its intent to file such material with the Court, so that the Producing Party may file by Order to Show Cause a motion to seal such Protected Information; provided, however, that in the event that the Party seeking to file or reference Protected Information identifies additional Protected Information less than fourteen (14) days prior to the relevant filing date, that Party may supplement its initial disclosure and the parties shall meet and confer to facilitate the filing by the Producing Party of any motion to seal such Protected Information prior to the relevant filing date.

(b)  Any motion to seal Protected Information must be filed seven (7) days prior to the deadline to file the underlying motion or other filing, or promptly after disclosure of the intended use of Protected Information, and the Protected Information shall not be filed until the Court renders a decision on the motion to seal. If the Court does not decide the motion to seal prior to the deadline to file the underlying motion or other filing, the filing Party (or, as appropriate, non-party) shall, on the deadline to file the underlying motion or other filing, serve on the other Parties and provide the Court with a complete and unredacted copy of the underlying motion or other filing. Within three business days following the Court's determination of the motion to seal, the filing Party (or, as appropriate, non-party) shall file the underlying motion or other filing with the Court in accordance with the Court's order and Paragraph 15(c) below.

(c)  If the Producing Party makes a timely motion to seal, and the motion is granted, the filing Party (or, as appropriate, non-party) shall ensure that all Documents (or, if directed by the court, portions

13

08-13555-mg Doc 61483-1 Filed 08/10/22 Entered 08/10/22 17:54:43 Exhibit 1

of Documents) that are the subject of the order to seal are filed in accordance with the procedures that govern the filing of sealed Documents on the NYSCEF system.

(d) All pleadings, briefs, or memoranda which reproduce, paraphrase, or disclose any materials which have previously been designated by any party as comprising or containing Protected Information shall identify such Documents by the production number ascribed to them at the time of production.

16. Any person receiving Protected Information shall not reveal or discuss such information with any person not entitled to receive such information under the terms hereof.

17. The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material that is provided under this Stipulation and Order shall maintain such material in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such material as is exercised by the recipient with respect to its own proprietary material. "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" material shall not be copied, reproduced, summarized, extracted or abstracted, except to the extent that such copying, reproduction, summarization, extraction or abstraction is reasonably necessary for the conduct of this Litigation. All such copies, reproductions, summarizations, extractions, and abstractions shall be subject to the terms of the Stipulation and Order and labeled in the same manner as the designated material on which they are based.

18. Any Discovery Material that may contain Protected Information that has been produced without identification as to its protected nature as provided in Paragraphs 2 and/or 13 of this Stipulation and Order, may be so designated by the party asserting the confidentiality designation by written notice to the undersigned counsel for the Receiving Party identifying the Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within a reasonable

14

time following the discovery that the Document or information has been produced without such designation. Promptly after providing such notice, the Producing Party shall provide re-labeled copies of the Discovery Material to the Receiving Party reflecting the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation. The Receiving Party shall replace the originally designated Discovery Material with the newly designated Discovery Material and shall destroy the originally designated Discovery Material or return such material to the Producing Party. To the extent such information may have been disclosed to anyone not authorized to receive Confidential Information or Highly Confidential Information, as applicable, the Receiving Party shall make reasonable efforts to retrieve the information promptly and to avoid any further disclosure.

19.     Extracts and summaries of Protected Information shall also be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the provisions of this Stipulation and Order.

20.     The production or disclosure of Protected Information shall in no way constitute a waiver of each Party's right to object to the production or disclosure of other information in this Litigation or in any other action.

21.     The procedure set forth below is intended to provide the Producing Party or any other party purporting to hold a privilege with an efficient method for retrieving or "clawing back" Protected Information that has been produced, subject to any resolution of any dispute over the privileged or protected status of the Protected Information, and for foreclosing any arguments of waiver.

22.     A Producing Party's disclosure in connection with this Litigation of one or more Documents that such Producing Party believes constitute, contain or reflect information otherwise

15

protected by the attorney-client privilege, the common interest privilege, the work-product doctrine or any other privilege or immunity from discovery ("Privileged Documents"), shall not constitute a waiver with respect to such Privileged Documents or generally of such privilege or immunity. If a Receiving Party receives materials that appear to be subject to an attorney-client privilege, the common interest privilege, or otherwise protected by a discovery privilege or immunity, the Receiving Party must refrain from further use or examination of the materials that may be privileged, and shall immediately notify the Producing Party, in writing, that he or she possesses material that appears to be privileged. In the event a Producing Party discovers it has disclosed Privileged Documents, the Producing Party may provide notice to the other Parties advising of the disclosure and requesting return or destruction of the Privileged Documents. Upon such notice, the Receiving Party shall make no further use or examination of the Privileged Documents and shall immediately segregate them in a manner that will prevent further disclosure or dissemination of their contents, and, within ten (10) days of receiving such notice of production of Privileged Documents, the Receiving Party shall destroy or return all original Documents identified by the Producing Party in such notice (whether electronic or hard copy), shall destroy or delete any and all copies (whether electronic or hard copy), and shall expunge from any other Document, information or material derived from the produced Privileged Documents. To the extent the Receiving Party provided any disclosed Privileged Documents to any other person or non-party, the Receiving Party shall promptly make reasonable efforts to retrieve and destroy such Privileged Documents and notify the Producing Party that it has done so. The party clawing back the produced Privileged Documents will provide the Receiving Party with a privilege log that reasonably identifies the basis for the assertion of privilege.

16

23.    If, based on (1) the privilege log entries provided to the Receiving Party by the Producing Party, or (2) the Receiving Party's review of Documents that occurred prior to the assertion of privilege and claw-back, there is a dispute over whether the clawed-back Documents at issue are protected from disclosure by virtue of a privilege or immunity from discovery, the original Documents shall nevertheless be immediately destroyed or returned to the Producing Party along with all copies (whether electronic or hard copy) thereof. All counsel shall undertake reasonable efforts to resolve the issue of whether the Documents are privileged without Court intervention. To the extent counsel cannot resolve the issue, the Receiving Party may bring a motion to compel production of the Privileged Documents, but may not assert as a ground for compelling production the fact or circumstance that the Privileged Documents had already been produced. In conjunction with such a motion, the Receiving Party may request the Court review in-camera the clawed-back Documents at issue, and, if the Court so orders, the Producing Party shall provide the Privileged Documents under seal to the Court for in-camera review. In the event of a motion to compel production of the Privileged Documents, the burden is on the Producing Party to provide, in its opposition to the motion to compel, information regarding the content and context of the Privileged Documents sufficient to establish the applicability of any asserted privilege or immunity from discovery.

24.    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Information it has received from a Producing Party to any person or in any circumstance not authorized under this Stipulation and Order, the Receiving Party must promptly, after discovery of the disclosure, (a) notify the relevant Producing Party in writing of the unauthorized disclosure(s) and the identity of such persons(s) to whom Protected Information was disclosed, (b) make reasonable efforts to retrieve all copies of the Discovery Material containing Protected

17

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

Information from the person or persons to whom unauthorized disclosures were made (the "Unauthorized Recipient(s)"), (c) inform the Unauthorized Recipient(s) of all the terms of this Stipulation and Order, and (d) request the Unauthorized Recipient(s) to execute the undertaking attached hereto as Exhibit A.

25.     The Parties will exchange privilege logs in a timely fashion to ensure that there is reasonable time for the resolution of any privilege disputes, and the production of any Documents in connection with such resolution, prior to the close of fact discovery. The Parties need not log: (a) privileged communications to or from counsel in connection with the Litigation; or (b) Documents created at the request of counsel in connection with the Litigation. Nothing in this Stipulation and Order prevents the Parties from meeting and conferring or negotiating separate agreements regarding privilege log creation, production, content, format, or related issues.

26.     The Parties agree that they may not have an adequate remedy at law in the event that a court of competent jurisdiction determines that there is an actual or threatened breach of this Stipulation and Order by any Party and agree that, under such circumstances, the Parties may be entitled to specific performance and/or injunctive relief to enforce the terms hereof, in addition to any remedy to which they may be entitled at law or in equity.

27.     The provisions of this Stipulation and Order shall be binding upon the Parties. All modifications of, waivers of and amendments to this Stipulation and Order must be in writing and signed by, or on behalf of, the Parties.

28.     This Stipulation and Order is entered into without prejudice to the right of any Party to seek relief from, or modification of, this Stipulation and Order or any provisions thereof by

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the New York Civil Practice Law and Rules or other applicable law.

29.    This Stipulation and Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

30.    This Stipulation and Order has no effect upon, and shall not apply to, the Parties' use of their own Discovery Material for any purpose. Nothing herein shall impose any restrictions on the use or disclosure by a Party of Documents, materials, or information designated as Protected Information that has been generated or obtained lawfully by such Party independently of the proceedings in this Litigation.

31.    In the event that additional parties join or are joined in this Litigation, they shall not have access to Protected Information until the newly joined party, by its counsel, has executed and filed with the Court its agreement to be fully bound by this Stipulation and Order.

32.    The Parties agree to be bound by the terms of this Stipulation and Order pending the entry by the Court of this Stipulation and Order, and any violation of its terms shall be subject to the same penalties and sanctions, as if this Stipulation and Order had been entered by the Court.

33.    If any Receiving Party is subpoenaed in any other action or proceeding, or is served with a Document demand or is otherwise compelled by law to produce Documents (collectively, a "Demand"), and such Demand seeks Discovery Material that was produced or designated as Protected Information, or that reflects or contains Protected Information, by someone other than the Receiving Party, the Receiving Party shall give prompt written notice by hand or electronic or facsimile transmission, within ten (10) business days of receipt of such Demand, to the Party or its

19

FILED: NEW YORK COUNTY CLERK 05/24/2022704:41 PM    INDEX NO. 656964/2021
NYSFILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVEDNYSCEF566/24/2022022
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

counsel who produced or designated the material as Protected Information. The Receiving Party
shall not produce any of the Producing Party's Protected Information, unless Court-ordered or
otherwise required by law, for a period of at least ten (10) days after providing the required notice
to the Producing Party. If, within ten (10) days of receiving such notice, the Producing Party gives
notice to the Receiving Party that the Producing Party opposes production of its Protected
Information, the Receiving Party shall object, citing this Stipulation and Order, and not thereafter
produce such Protected Information, except as required by law. The Producing Party shall be solely
responsible for pursuing any objection to the requested production. Nothing herein shall be
construed as requiring the Receiving Party or anyone else covered by this Stipulation and Order to
challenge or appeal any order requiring production of Protected Information covered by this
Stipulation and Order, or to subject itself to any penalties for non- compliance with any legal
process or order, or to seek any relief from this Court. In the event that Protected Information is
produced to a non-party to this Stipulation and Order in response to a Demand, such Discovery
Material shall continue to be treated in accordance with the designation as Confidential or Highly
Confidential Information by the Parties to this Stipulation and Order.

34.    To the extent a Receiving Party is required to disclose Protected Information
produced in the Litigation, without a subpoena or other form of legal process, by a regulatory or
supervisory agency exercising its visitorial powers pursuant to 12 U.S.C. § 484 and/or 12 C.F.R. §
7.4000 ("Regulatory Demand") and compliance with the Regulatory Demand renders the Party
unable to comply with Paragraph 33 hereof, the Party may comply with the Regulatory Demand
and shall give prompt written notice by hand or electronic or facsimile transmission as soon as is
practicable following receipt of the Regulatory Demand and no later than the time at which the
Party produces the Protected Information in response to the Regulatory Demand, unless the

20

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/24/2022

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

Receiving Party is prohibited by law from providing notice of the Regulatory Demand to the Producing Party.

35. No Party shall produce or be requested to produce or identify any material or information that the Party is prohibited by law from disclosing under 31 U.S.C. § 5318(g), 31 C.F.R. § 103.18(e), or 12 C.F.R. § 510.5.

36. For good cause shown, the following provisions shall apply to Non-Party Borrower Information. To the extent any federal or state law or other legal authority governing the disclosure or use of Non-Party Borrower Information (hereinafter, "Non-Party Borrower Information Law") permits disclosure of such information pursuant to an order of a court, this Stipulation and Order shall constitute compliance with such requirement. To the extent any Non-Party Borrower Information Law requires a Producing Party, including third- parties, to obtain a Court-ordered subpoena or to give notice or obtain consent, in any form or manner, from any person or entity before disclosure of any Non-Party Borrower Information, the Court finds that, in the view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, there is good cause to excuse such requirement, and this Stipulation and Order shall constitute an express direction that the Producing Party is exempted from obtaining a Court-ordered subpoena or having to notify and/or obtain consent from any person or entity prior to the disclosure of Non-Party Borrower Information. To the extent that any Non-Party Borrower Information Law requires that any person or entity be notified prior to disclosure of Non-Party Borrower Information except where such notice is prohibited by Court order, the Court directs that, in view of the protections provided for the information disclosed in this Stipulation and Order, the volume of Documents to be produced and the ongoing oversight of the Court, the Producing Parties are explicitly prohibited from

21

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSCEF: FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF 656964/23/2022
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

providing such notice; provided, however, that this Stipulation and Order shall not prohibit any Producing Party from contacting any person or entity for any other purpose. Any Producing Party may seek additional orders from this Court that such party believes may be necessary to comply with any Non-Party Borrower Information Law.

37.    Nothing herein shall prevent any Receiving Party from disclosing Protected Information to the extent necessary to report to appropriate taxing authorities, or to the accountants or independent public auditors of the Receiving Party in confidence, as and only to the extent required to perform auditing or tax accounting work; and (b) to the extent necessary for purposes of financial reporting, including United States Securities and Exchange Commission and regulatory filings, and other regulatory requests.

38.    For the avoidance of doubt, nothing herein shall preclude counsel from giving advice to his or her client in this Litigation that includes a general evaluation of Protected Information, provided that counsel shall not disclose the contents of any Protected Information in violation of the terms of this Stipulation and Order.

39.    Any Party, in conducting discovery from non-parties in connection with the Litigation, shall provide any non-party from which it seeks discovery with a copy of this Stipulation and Order so as to inform each such non-party of his, her, or its rights herein. If a non-party provides discovery to any Party in connection with the Litigation, the provisions of this Stipulation and Order shall apply to such discovery as if such discovery were being provided by a Party. Under such circumstances, the non-party shall have the same rights and obligations under the Stipulation and Order as held by the Parties. For the avoidance of doubt, non-parties may designate

22

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
NYSFILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/24/2022
NYSCEF DOC. NO. 68    RECEIVED NYSCEF: 05/17/2022

Discovery Material as Confidential Information or Highly Confidential Information pursuant to
Paragraphs 3(a) and 3(c) as set forth herein.

40.    This Stipulation and Order shall continue to be binding after the conclusion of this
Litigation except (a) that there shall be no restriction on Documents that are used as exhibits in
Court (unless such exhibits were filed under seal and never unsealed); and (b) that a Party may seek
the written permission of the Producing Party or further order of the Court with respect to
dissolution or modification of the Stipulation and Order.

41.    Nothing herein shall be deemed to waive any privilege recognized by law, or shall
be deemed an admission as to the admissibility in evidence of any Privileged Information, facts, or
Documents revealed in the course of disclosure.

42.    Within ninety (90) days after the final termination of this Litigation by settlement
(including, to the extent applicable, final court approval of such settlement) or exhaustion of all
appeals, all Protected Information produced or designated and all reproductions thereof, shall be
returned to the Producing Party or shall be destroyed, at the option of the Producing Party, which
option shall be communicated in writing to the Receiving Party promptly. In the event that any
Producing Party opts for destruction of its Protected Information, the Receiving Party shall certify,
in writing, within ninety (90) days of the final termination of this Litigation that it has undertaken
its best efforts to destroy such physical objects and Documents, and that such physical objects and
Documents have been destroyed to the best of its knowledge. These best efforts need not include
destroying Protected Information residing on back-up tapes or other disaster recovery systems.
Notwithstanding anything to the contrary, counsel of record for the Parties may retain copies of
Documents constituting work product, reports, pleadings, motion papers, discovery responses,

23

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM    INDEX NO. 656964/2021
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM    RECEIVED NYSCEF: 05/17/2022
NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

deposition and trial transcripts and deposition and trial exhibits. This Stipulation and Order shall not be interpreted in a manner that would violate any applicable canons of ethics or codes of professional responsibility. Nothing in this Stipulation and Order shall prohibit or interfere with the ability of counsel for any Party, or of experts or consultants specially retained for this case, to represent any individual, corporation, or other entity adverse to any Party or its affiliate(s) in connection with any other matters. For the avoidance of doubt, experts, third-party vendors, and consultants who have received Protected Information shall also be required to return or destroy such Protected Information pursuant to the terms of this paragraph.

43.    All Discovery Material shall be used solely for the purpose of conducting this Litigation and not for any other purpose whatsoever.

44.    Except as specifically provided herein, the terms, conditions, and limitations of this Stipulation and Order shall survive the termination of this Litigation.

45.    During the pendency of this Litigation, the Court shall retain jurisdiction over this Order, and persons who receive Discovery Material that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be subject to this Stipulation and Order, including any proceedings relating to their performance under, or compliance with, this Stipulation and Order.

46.    The Court will not retain jurisdiction after the conclusion of this Litigation for enforcement of this Stipulation and Order with respect to the Litigation.

47.    To maximize the security of information in transit, any media on which Protected Information is produced shall be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. If a party provides another party's Protected

24

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM

INDEX NO. 656964/2021

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM

RECEIVED NYSCEF: 05/24/2022

NYSCEF DOC. NO. 68

RECEIVED NYSCEF: 05/17/2022

Information to a third party, as identified and permitted under this Stipulation and Order, that party shall comply with the requirements of this paragraph as if it were the Producing Party.

25

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM          INDEX NO. 656964/2021
NYSCEF DOC. NO. 68          RECEIVED NYSCEF: 05/24/2022

FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM          INDEX NO. 656964/2021
NYSCEF DOC. NO. 68          RECEIVED NYSCEF: 05/17/2022

Dated: May 17, 2022
New York, New York

Respectfully submitted,

**LUNDIN PLLC**
John M. Lundin
Alexandra M.C. Douglas
405 Lexington Avenue
26th Floor
New York, NY 10174
(212) 541-2402
JLundin@LundinPLLC.com
ADouglas@LundinPLLC.com

John J.D. McFerrin-Clancy
17 State Street, 40th Floor
New York, NY 10004
(646) 771-7377
jmc@mcferrin-clancy.com

*Attorneys for Plaintiffs Mark A. Zittman,
IRA FBO Mark Zittman, Mark A.
Zittman as Beneficiary of IRA FBO
Mark Zittman, Mark A. Zittman as
Trustee of the Mark A. Zittman
Revocable Trust, and Mark A. Zittman
Revocable Trust*

**JONES DAY**
David F. Adler
Michael T. Marcucci
100 High Street
Boston, MA 02110
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Joseph C. Barry
Calland M. Ferraro
North Point
901 Lakeside Avenue East
Cleveland, OH 44114-1190
(216) 586-3939; (216) 579-0212 (fax)
jbarry@jonesday.com
cferraro@jonesday.com

*Attorneys for Defendant U.S. Bank
National Association*

Dated: 5/24/22

ENTER.

Hon. Joel M. Cohen, J.S.C.

26

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM                    INDEX NO. 656964/2021

NYSFILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM                 RECEIVED NYSCEF: 05/24/2022

NYSCEF DOC. NO. 68                                                 RECEIVED NYSCEF: 05/17/2022

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MARK A. ZITTMAN, IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Beneficiary of IRA FBO MARK ZITTMAN, MARK A. ZITTMAN as Trustee of the MARK A. ZITTMAN REVOCABLE TRUST, and MARK A. ZITTMAN REVOCABLE TRUST | Index No.:   656964/2021 |
| | Part 3 |
| | (Cohen, J.) |
| Plaintiffs, | |
| v. | STIPULATION AND [PROPOSED] CONFIDENTIALITY AND PROTECTIVE ORDER |
| U.S. BANK NATIONAL ASSOCIATION, | |
| Defendant. | |

## UNDERTAKING FOR THE USE OF CONFIDENTIAL INFORMATION

I, _____, state that:

1.   My business address is _____

2.   My present employer is _____

3.   My present occupation or job description is _____

4.   I have received a copy of the Stipulation and Confidentiality and Protective Order (the "Stipulation and Order") entered in the above-entitled action (the "Litigation") on

_____

5.   I have carefully read and understand the provisions of the Stipulation and Order.

6.   I will comply with all of the provisions of the Stipulation and Order.

A-1

FILED: NEW YORK COUNTY CLERK 05/24/2022 04:41 PM          INDEX NO. 656964/2021
NYSCEF DOC. NO. 68                                        RECEIVED NYSCEF: 05/24/2022
FILED: NEW YORK COUNTY CLERK 05/17/2022 05:30 PM          INDEX NO. 656964/2021
NYSCEF DOC. NO. 68                                        RECEIVED NYSCEF: 05/17/2022

7.      I will hold in confidence, will not disclose to anyone not qualified under the Stipulation and Order, and will use only for purposes of this Litigation, any Confidential Information or Highly Confidential Information that is disclosed to me.

8.      At the conclusion of my work on this matter, I will return or destroy, to the extent permitted by law, all Protected Information that comes into my possession, and Documents or things that I have prepared relating thereto, to counsel for the Party by whom I am employed or retained, or to counsel from whom I received the Protected Information.

9.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulation and Order in this Litigation.


Dated: _____          By: _____