# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE

LEHMAN BROTHERS HOLDINGS INC.,
et al,

        Debtor.

---

REX WU

        Appellant,

   v.

LEHMAN BROTHERS HOLDINGS INC.
        Appellee.

Bankr. No.   08-13555(SCC)

US SDNY Bankruptcy Court Docket #61493

US SDNY District Court ECF# 22-cv-08021

---

### CROSS APPELLEE'S DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED ON THE RECORD ON APPEAL

REX WU, pursuant to Federal Rule of Bankruptcy Procedure 8009, hereby designates the following items to be included in the Record on Appeal.  The Appellant will not redesignate all the records he and the Appellee previously already have designated and will rely on all the designations.  For the records designated by either the Appellee or the Appellant, the Appellant treats the designations as including all exhibits and attachments to such filings whether listed or not by the Appellee or the Appellant.

1.   Lehman Brothers Holdings Inc. Capital Trust Guarantee Agreement (Exhibit A)

2.   Debtor's Eighty-Second Omnibus Objection to Claims (Duplicative of Indenture Trustee Claims) [SDNY Bankruptcy Court ECF#13936]

3.   Claim #25478 (Exhibit B)

1/25

4. Order Signed on 3/3/2011 Granting Debtors Eighty-Second Omnibus Objection to Claims (Duplicative of Indenture Trustee Claims) [SDNY Bankruptcy Court ECF #14794]

5. Notice of Withdrawal of Debtors Eighty-Second Omnibus Objection to Claims (Duplicative of Indenture Trustee Claims) as to Certain Claimants (related document(s) [13936]) [SDNY Bankruptcy Court ECF #17896]

6. Supplemental Order Signed on 4/27/2012 Granting Debtors Two Hundred Eighteenth Omnibus Objection to Disallow and Expunge Certain Claims.  (SDNY Bankruptcy Court ECF #27630)

7. ECAPS Subordinated Guarantee (Exhibit C)

Respectfully Submitted,

Dated: October 17th, 2022
Rex Wu
6315 N Campbell
Chicago, IL 60659
312.785.0348
rex_wu@live.com

10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

EX-4.05 7 a2105775zex-4_05.htm EX-4.05
<u>QuickLinks</u> -- Click here to rapidly navigate through this document

<strong>EXHIBIT 4.05</strong>

**GUARANTEE AGREEMENT**

**Lehman Brothers Holdings Capital Trust III**

**Dated as of March 17, 2003**

---

**CROSS REFERENCE TABLE***

| Section of Trust Indenture Act of 1939, as amended | Section of Guarantee Agreement |
|---|---|
| 310(a) | 4.1(a) |
| 310(b) | 2.8; 4.1(c) |
| 310(c) | Inapplicable |
| 311(a) | 2.2(b) |
| 311(b) | 2.2(b) |
| 311(c) | Inapplicable |
| 312(a) | 2.2(a); 2.9 |
| 312(b) | 2.2(b); 2.9 |
| 312(c) | 2.9 |
| 313(a) | 2.3 |
| 313(b) | 2.3 |
| 313(c) | 2.3 |
| 313(d) | 2.3 |
| 314(a) | 2.4 |
| 314(b) | Inapplicable |
| 314(c) | 2.5 |
| 314(d) | Inapplicable |
| 314(e) | 2.5 |
| 314(f) | Inapplicable |
| 315(a) | 3.1(d); 3.2(a) |
| 315(b) | 2.7(a) |
| 315(c) | 3.1(c) |
| 315(d) | 3.1(d) |
| 316(a) | 2.6; 5.4(a) |
| 316(b) | 5.3 |
| 316(c) | Inapplicable |
| 317(a) | 2.10 |
| 317(b) | Inapplicable |
| 318(a) | 2.1(b) |

\*    This Cross-Reference Table does not constitute part of the Agreement and shall not have any bearing upon the interpretation of any of its terms or provisions.

i

---

**TABLE OF CONTENTS**

Page

SECTION 1        INTERPRETATION AND DEFINITIONS                                          1

| 1.1. | Interpretation and Definitions | 1 |
|---|---|---|
| SECTION 2 | TRUST INDENTURE ACT | 5 |
| 2.1. | Trust Indenture Act; Application | 5 |
| 2.2. | Lists of Holders of Securities | 5 |
| 2.3. | Reports by Guarantee Trustee | 5 |
| 2.4. | Periodic Reports to Guarantee Trustee | 5 |
| 2.5. | Evidence of Compliance with Conditions Precedent | 5 |
| 2.6. | Guarantee Event of Default; Waiver | 6 |
| 2.7. | Guarantee Event of Default; Notice | 6 |
| 2.8. | Conflicting Interests | 6 |
| 2.9. | Disclosure of Information | 7 |
| 2.10. | Guarantee Trustee May File Proofs of Claim | 7 |
| SECTION 3 | POWERS, DUTIES AND RIGHTS OF GUARANTEE TRUSTEE | 7 |
| 3.1. | Powers and Duties of Guarantee Trustee | 7 |
| 3.2. | Certain Rights of Guarantee Trustee. | 9 |
| 3.3. | Not Responsible for Recitals or Issuance of Guarantee | 10 |
| SECTION 4 | GUARANTEE TRUSTEE | 11 |
| 4.1. | Guarantee Trustee; Eligibility | 11 |
| 4.2. | Appointment, Removal and Resignation of Guarantee Trustee | 11 |
| SECTION 5 | GUARANTEE | 12 |
| 5.1. | Guarantee | 12 |
| 5.2. | Waiver of Notice and Demand | 12 |
| 5.3. | Obligations Not Affected | 13 |
| 5.4. | Rights of Holders | 14 |
| 5.5. | Guarantee of Payment | 14 |
| 5.6. | Subrogation | 14 |
| 5.7. | Independent Obligations | 14 |
| SECTION 6 | LIMITATION OF TRANSACTIONS; SUBORDINATION | 15 |
| 6.1. | Limitation of Transactions | 15 |
| 6.2. | Ranking | 15 |

10/16/22, 12:20 AM                              https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

6.3.        Subordination of Common Securities                                                                15

ii

SECTION 7        TERMINATION                                                                                  16

7.1.        Termination                                                                                       16

SECTION 8        INDEMNIFICATION                                                                              16

8.1.        Exculpation                                                                                       16

8.2.        Indemnification                                                                                   16

SECTION 9        MISCELLANEOUS                                                                                17

9.1.        Successors and Assigns                                                                            17

9.2.        Amendments                                                                                        17

9.3.        Notices                                                                                           17

9.4.        Benefit                                                                                           18

9.5.        Governing Law                                                                                     18

iii

## GUARANTEE AGREEMENT

This GUARANTEE AGREEMENT (the "Guarantee"), dated as of March 17, 2003, is executed and delivered by Lehman Brothers Holdings Inc., a Delaware corporation (the "Guarantor"), and JPMorgan Chase Bank, as trustee (the "Guarantee Trustee"), for the benefit of the Holders (as defined herein) from time to time of the Securities (as defined herein) of Lehman Brothers Holdings Capital Trust III, a Delaware statutory trust (the "Trust").

WITNESSETH:

WHEREAS, pursuant to the Declaration (as defined herein), the Trust may initially issue an unlimited amount of preferred securities, having a liquidation amount of $25 per security and designated the 6.375% Preferred Securities of the Trust, Series K (the "Preferred Securities"), and common securities, having a liquidation amount of $25 per security and designated the 6.375% Common Securities of the Trust (the "Common Securities" and, together with the Preferred Securities, the "Securities");

WHEREAS, as incentive for the Holders to purchase the Securities, the Guarantor desires irrevocably and unconditionally to agree, to the extent set forth in this Guarantee, to pay to the Holders of the Securities the Guarantee Payments (as defined herein) and to make certain other payments on the terms and conditions set forth herein; and that if a Trust Enforcement Event (as defined herein) has occurred and is continuing, the rights of holders of the Common Securities to receive Guarantee Payments under this Guarantee are subordinated to the rights of Holders of Preferred Securities to receive Guarantee Payments under this Guarantee.

NOW, THEREFORE, in consideration of the purchase by each Holder of Securities, which purchase the Guarantor hereby agrees shall benefit the Guarantor, the Guarantor executes and delivers this Guarantee for the benefit of the Holders.

### SECTION 1

### INTERPRETATION AND DEFINITIONS

1.1.    *Interpretation and Definitions.*    In this Guarantee, unless the context otherwise requires:



10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

(a)  capitalized terms used in this Guarantee but not defined in the preamble above have the respective meanings assigned to them in this Section 1.1;

(b)  a term defined anywhere in this Guarantee has the same meaning throughout;

(c)  all references to "the Guarantee" or "this Guarantee" are to this Guarantee as modified, supplemented or amended from time to time;

(d)  all references in this Guarantee to Articles, Sections and Recitals are to Articles, Sections and Recitals of this Guarantee, unless otherwise specified;

(e)  unless otherwise defined in this Guarantee, a term defined in the Trust Indenture Act has the same meaning when used in this Guarantee;

(f)  a reference to the singular includes the plural and vice versa and a reference to any masculine form of a term shall include the feminine form of a term, as applicable; and

(g)  the following terms have the following meanings:

"Affiliate" has the same meaning as given to that term in Rule 405 of the Securities Act of 1933, as amended, or any successor rule thereunder.

"Business Day" has the meaning specified in the Declaration.

"Common Securities" has the meaning specified in the Recitals hereto.

"Corporate Trust Office" means the principal office of the Guarantee Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of execution of this Guarantee is located at 4 New York Plaza, 15th Floor, New York, New York 10004.

"Covered Person" means a Holder or beneficial owner of Securities.

"Debentures" means the series of subordinated deferrable interest debentures to be issued by the Guarantor designated the 6.375% Subordinated Deferrable Interest Debentures due 2052 held by the Property Trustee (as defined in the Declaration) of the Trust.

"Declaration" means the Amended and Restated Declaration of Trust, dated as of March 17, 2003, as amended, modified or supplemented from time to time, among the trustees of the Trust named therein, the Guarantor, as sponsor, and the Holders, from time to time, of undivided beneficial ownership interests in the assets of the Trust.

"Global Security" means a fully registered, global Preferred Security.

"Guarantee Event of Default" means a default by the Guarantor on any of its payment or other obligations under this Guarantee.

"Guarantee Payments" means the following payments or distributions, without duplication, with respect to the Securities, to the extent not paid by or on behalf of the Trust: (i) any accumulated and unpaid Distributions (as defined in the Declaration) that are required to be paid on such Securities to the extent the Trust has sufficient funds available therefor at the time, (ii) the redemption price, including all accumulated and unpaid Distributions to the date of

2

redemption, with respect to any Securities called for redemption by the Trust, to the extent the Trust shall have sufficient funds available therefor at the time or (iii) upon a voluntary or involuntary dissolution, winding-up or termination of the Trust (other than in connection with the distribution of Debentures to the Holders in exchange for Securities as provided in the Declaration), the lesser of (a) the aggregate of the liquidation amount and all accumulated and unpaid Distributions on the Securities to the date of payment, to the extent the Trust has sufficient funds available therefor and (b) the amount of assets of the Trust remaining available for distribution to Holders in liquidation of the Trust (in either case, the "Liquidation Distribution").



"Guarantee Trustee" means JPMorgan Chase Bank, until a Successor Guarantee Trustee has been appointed and has accepted such appointment pursuant to the terms of this Guarantee and thereafter means each such Successor Guarantee Trustee.

"Holder" means any holder of Securities, as registered on the books and records of the Trust; provided, however, that, in determining whether the Holders of the requisite percentage of Preferred Securities have given any request, notice, consent or waiver hereunder, "Holder" shall not include the Guarantor or any Affiliate of the Guarantor or any other obligor on the Preferred Securities; and provided further, that in determining whether the Holders of the requisite liquidation amount of Preferred Securities have voted on any matter provided for in this Guarantee, then for the purpose of such determination only (and not for any other purpose hereunder), if the Preferred Securities remain in the form of one or more Global Certificates (as defined in the Declaration), the term "Holders" shall mean the holder of the Global Certificate acting at the direction of the Beneficial Owners (as defined in the Declaration).

"Indemnified Person" means the Guarantee Trustee, any Affiliate of the Guarantee Trustee, or any officers, directors, shareholders, members, partners, employees, representatives, nominees, custodians or agents of the Guarantee Trustee.

"Indenture" means the Indenture, dated as of February 1, 1996, between the Guarantor (the "Company") and The Chase Manhattan Bank, formerly known as Chemical Bank, as trustee, as amended and supplemented by the First Supplemental Indenture dated as of February 1, 1996, and by any other indenture supplemental thereto pursuant to which the Debentures are to be issued to the Property Trustee (as defined in the Declaration) of the Trust.

"Majority in Liquidation Amount" means, except as provided in the terms of the Preferred Securities or by the Trust Indenture Act, Holder(s) of outstanding Securities, voting together as a single class, or, as the context may require, Holders of outstanding Preferred Securities or Holders of outstanding Common Securities, voting separately as a class, who are the record owners of more than 50% of the aggregate liquidation amount (including the stated amount that would be paid on redemption, liquidation or otherwise, plus accumulated and unpaid Distributions to the date upon which the voting percentages are determined) of all outstanding Securities of the relevant class. In determining whether the Holders of the requisite amount of Securities have voted, Securities which are owned by the Guarantor or any Affiliate of the Guarantor or any other obligor on the Securities shall be disregarded for the purpose of any such determination.

3

"Officers' Certificate" means, with respect to any Person, a certificate signed on behalf of such Person by two Authorized Officers (as defined in the Declaration) of such Person. Any Officers' Certificate delivered with respect to compliance with a condition or covenant provided for in this Guarantee shall include:

    (a)  a statement that each officer signing the Officers' Certificate has read the covenant or condition and the definitions relating thereto;

    (b)  a brief statement of the nature and scope of the examination or investigation undertaken by each officer on behalf of such Person in rendering the Officers' Certificate;

    (c)  a statement that each such officer has made such examination or investigation as, in such officer's opinion, is necessary to enable such officer on behalf of such Person to express an informed opinion as to whether or not such covenant or condition has been complied with; and

    (d)  a statement as to whether, in the opinion of each such officer acting on behalf of such Person, such condition or covenant has been complied with.

"Person" means a legal person, including any individual, corporation, estate, partnership, joint venture, association, joint stock company, limited liability company, trust, unincorporated association, or government or any agency or political subdivision thereof, or any other entity of whatever nature.

"Preferred Securities" has the meaning specified in the Recitals hereto.

"Redemption Price" has the meaning specified in the Declaration.

"Responsible Officer" means, with respect to the Guarantee Trustee, any officer with direct responsibility for the administration of this Guarantee and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of that officer's knowledge of and familiarity with the particular subject.

7/25

10/16/22, 12:20 AM                     https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

"Securities" has the meaning specified in the Recitals hereto.

"Successor Guarantee Trustee" means a successor Guarantee Trustee possessing the qualifications to act as Guarantee Trustee under Section 4.1.

"Trust Enforcement Event" in respect of the Securities means an Indenture Event of Default (as defined in the Indenture) has occurred and is continuing in respect of the Debentures.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended from time to time, or any successor legislation.

4

## SECTION 2

### TRUST INDENTURE ACT

2.1.   *Trust Indenture Act; Application.*   (a) This Guarantee is subject to the provisions of the Trust Indenture Act that are required to be part of this Guarantee and shall, to the extent applicable, be governed by such provisions.

(b)  If and to the extent that any provision of this Guarantee limits, qualifies or conflicts with the duties imposed by Sections 310 to 317, inclusive, of the Trust Indenture Act, such imposed duties shall control.

2.2.   *Lists of Holders of Securities.*   (a) The Guarantor shall provide the Guarantee Trustee (i) except while the Preferred Securities are represented by one or more Global Securities at least one Business Day prior to the date for payment of Distributions, a list, in such form as the Guarantee Trustee may reasonably require, of the names and addresses of the Holders of the Securities ("List of Holders") as of the record date relating to the payment of such Distributions, and (ii) at any other time, within 30 days of receipt by the Guarantor of a written request from the Guarantee Trustee for a List of Holders as of a date no more than 15 days before such List of Holders is given to the Guarantee Trustee; provided that the Guarantor shall not be obligated to provide such List of Holders at any time the List of Holders does not differ from the most recent List of Holders given to the Guarantee Trustee by the Guarantor. The Guarantee Trustee shall preserve, in as current a form as is reasonably practicable, all information contained in Lists of Holders given to it, provided that the Guarantee Trustee may destroy any List of Holders previously given to it on receipt of a new List of Holders.

(b)  The Guarantee Trustee shall comply with its obligations under Sections 311(a), 311(b) and 312(b) of the Trust Indenture Act.

2.3.   *Reports by Guarantee Trustee.*   Within 60 days after May 15 of each year (commencing with the year of the first anniversary of the issuance of the Securities), the Guarantee Trustee shall provide to the Holders of the Securities such reports as are required by Section 313 of the Trust Indenture Act (if any) in the form and in the manner provided by Section 313 of the Trust Indenture Act. The Guarantee Trustee shall also comply with the requirements of Section 313(d) of the Trust Indenture Act.

2.4.   *Periodic Reports to Guarantee Trustee.*   The Guarantor shall provide to the Guarantee Trustee such documents, reports and information as required by Section 314(a) (if any) of the Trust Indenture Act and the compliance certificate required by Section 314(a) of the Trust Indenture Act in the form, in the manner and at the times required by Section 314(a) of the Trust Indenture Act.

2.5.   *Evidence of Compliance with Conditions Precedent.*   The Guarantor shall provide to the Guarantee Trustee such evidence of compliance with any conditions precedent, if any, provided for in this Guarantee that relate to any of the matters set forth in Section 314(c) of the Trust Indenture Act. Any certificate or opinion required to be given by an officer pursuant to Section 314(c)(1) may be given in the form of an Officers' Certificate.

5

2.6.   *Guarantee Event of Default; Waiver.*   The Holders of a Majority in Liquidation Amount of the Securities may, by vote or written consent, on behalf of the Holders of all of the Securities, waive any past Guarantee Event of Default and its consequences. Upon such waiver, any such Guarantee Event of Default shall cease to exist, and any Guarantee Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Guarantee, but no such waiver shall extend to any subsequent or other default or Guarantee Event of Default or impair any right consequent thereon.

10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

2.7.   *Guarantee Event of Default; Notice.*   (a) The Guarantee Trustee shall, within 90 days after the occurrence of a Guarantee Event of Default, transmit by mail, first class postage prepaid, to the Holders of the Securities, notices of all Guarantee Events of Default actually known to a Responsible Officer of the Guarantee Trustee, unless such defaults have been cured before the giving of such notice; provided, that the Guarantee Trustee shall be protected in withholding such notice if and so long as a Responsible Officer of the Guarantee Trustee in good faith determines that the withholding of such notice is in the interests of the Holders of the Securities.

(b)  The Guarantee Trustee shall not be deemed to have knowledge of any Guarantee Event of Default unless the Guarantee Trustee shall have received written notice thereof or a Responsible Officer of the Guarantee Trustee charged with the administration of the Declaration shall have obtained actual knowledge thereof.

2.8.   *Conflicting Interests.*   The Declaration shall be deemed to be specifically described in this Guarantee for the purposes of clause (i) of the first proviso contained in Section 310(b) of the Trust Indenture Act. Nothing herein shall prevent the Trustee from filing with the Commission the application referred to in the penultimate paragraph of Section 310(b) of the Trust Indenture Act. In determining whether the Trustee has a conflicting interest as defined in Section 310(b) of the Trust Indenture Act with respect to the Securities or the Guarantees in respect of such Securities, there shall be excluded (i) all series of securities issued or issuable under the Indenture, (ii) (A) the Guarantee Agreement, dated as of January 26, 1999, executed and delivered by Lehman Brothers Holdings Inc. and The Chase Manhattan Bank for the benefit of the holders identified therein of Lehman Brothers Capital Trust I, (B) the Guarantee Agreement, dated as of April 20, 1999, executed and delivered by Lehman Brothers Holdings Inc. and The Chase Manhattan Bank for the benefit of the holders identified herein of Lehman Brothers Capital Trust II and (C) this Agreement and (iii) (A) the Amended and Restated Declaration of Trust, dated as of January 26, 1999, by and among Lehman Brothers Holdings Inc., the Regular Trustees named therein, The Chase Manhattan Bank, as initial Property Trustee and Chase Manhattan Bank Delaware, as initial Delaware Trustee, (B) the Amended and Restated Declaration of Trust, dated as of April 20, 1999, by and among Lehman Brothers Holdings Inc., the Regular Trustees named therein, The Chase Manhattan Bank, as initial Property Trustee and Chase Manhattan Bank Delaware, as initial Delaware Trustee and (C) Amended and Restated Declaration of Trust, dated as of March 17, 2003, by and among Lehman Brothers Holdings Inc., the Regular Trustees named therein, JPMorgan Chase Bank (formerly known as The Chase Manhattan Bank), as initial Property Trustee and Chase Manhattan Bank USA, National Association, as initial Delaware Trustee.

6

2.9.   *Disclosure of Information.*   The disclosure of information as to the names and addresses of the Holders of the Securities in accordance with Section 312 of the Trust Indenture Act, regardless of the source from which such information was derived, shall not be deemed to be a violation of any existing law, or any law hereafter enacted which does not specifically refer to Section 312 of the Trust Indenture Act, nor shall the Guarantee Trustee be held accountable by reason of mailing any material pursuant to a request made under Section 312(b) of the Trust Indenture Act.

2.10.   *Guarantee Trustee May File Proofs of Claim.*   Upon the occurrence of a Guarantee Event of Default, the Guarantee Trustee is hereby authorized to (a) recover judgment, in its own name and as trustee of an express trust, against the Guarantor for the whole amount of any Guarantee Payments remaining unpaid and (b) file such proofs of claim and other papers or documents as may be necessary or advisable in order to have its claims and those of the Holders of the Securities allowed in any judicial proceedings relative to the Guarantor, its creditors or its property.

### SECTION 3

### POWERS, DUTIES AND RIGHTS OF

### GUARANTEE TRUSTEE

3.1.   *Powers and Duties of Guarantee Trustee.*

(a)  This Guarantee shall be held by the Guarantee Trustee on behalf of the Trust for the benefit of the Holders of the Securities, and the Guarantee Trustee shall not transfer this Guarantee to any Person except a Holder of Securities exercising his or her rights pursuant to Section 5.4(b) or to a Successor Guarantee Trustee on acceptance by such Successor Guarantee Trustee of its appointment to act as Successor Guarantee Trustee. The right, title and interest of the Guarantee Trustee in and to this Guarantee shall automatically vest in any Successor Guarantee Trustee, and such vesting and succession of title shall be effective whether or not conveyance documents have been executed and delivered pursuant to the appointment of such Successor Guarantee Trustee.

(b)  If a Guarantee Event of Default actually known to a Responsible Officer of the Guarantee Trustee has occurred and is continuing, the Guarantee Trustee shall enforce this Guarantee for the benefit of the Holders of the Securities.

9/25

10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

(c)  The Guarantee Trustee, before the occurrence of any Guarantee Event of Default and after the curing of all Guarantee Events of Default that may have occurred, shall undertake to perform only such duties as are specifically set forth in this Guarantee, and no implied covenants shall be read into this Guarantee against the Guarantee Trustee. In case a Guarantee Event of Default has occurred (that has not been cured or waived pursuant to Section 2.6) and is actually known to a Responsible Officer of the Guarantee Trustee, the Guarantee Trustee shall exercise such of the rights and powers vested in it by this Guarantee, and use the same degree of care and skill in its exercise thereof, as a

7

prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

(d)  No provision of this Guarantee shall be construed to relieve the Guarantee Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(i)  prior to the occurrence of any Guarantee Event of Default and after the curing or waiving of all such Guarantee Events of Default that may have occurred:

(A)  the duties and obligations of the Guarantee Trustee shall be determined solely by the express provisions of this Guarantee, and the Guarantee Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Guarantee, and no implied covenants or obligations shall be read into this Guarantee against the Guarantee Trustee; and

(B)  in the absence of bad faith on the part of the Guarantee Trustee, the Guarantee Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Guarantee Trustee and conforming to the requirements of this Guarantee; but in the case of any such certificates or opinions that by any provision hereof are specifically required to be furnished to the Guarantee Trustee, the Guarantee Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Guarantee;

(ii)  the Guarantee Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer of the Guarantee Trustee, unless it shall be proved that the Guarantee Trustee was negligent in ascertaining the pertinent facts upon which such judgment was made;

(iii)  the Guarantee Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of not less than a Majority in Liquidation Amount of the Securities relating to the time, method and place of conducting any proceeding for any remedy available to the Guarantee Trustee, or exercising any trust or power conferred upon the Guarantee Trustee under this Guarantee; and

(iv)  no provision of this Guarantee shall require the Guarantee Trustee to expend or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if the Guarantee Trustee shall have reasonable grounds for believing that

8

the repayment of such funds or liability is not reasonably assured to it under the terms of this Guarantee or if the Guarantee Trustee shall have reasonable grounds for believing that an indemnity, reasonably satisfactory to the Guarantee Trustee, against such risk or liability is not reasonably assured to it under the terms of this Guarantee.

3.2.  *Certain Rights of Guarantee Trustee.*

(a)  Subject to the provisions of Section 3.1:

(i)  The Guarantee Trustee may conclusively rely, and shall be fully protected in acting or refraining from acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by it to be genuine and to have been signed, sent or presented by the proper party or parties;

(ii)  Any direction or act of the Guarantor contemplated by this Guarantee shall be sufficiently evidenced by an Officers' Certificate;

10/25

(iii)  Whenever, in the administration of this Guarantee, the Guarantee Trustee shall deem it desirable that a matter be proved or established before taking, suffering or omitting any action hereunder, the Guarantee Trustee (unless other evidence is herein specifically prescribed) may, in the absence of bad faith on its part, request and conclusively rely upon an Officers' Certificate which, upon receipt of such request, shall be promptly delivered by the Guarantor;

(iv)  The Guarantee Trustee shall have no duty to see to any recording, filing or registration or any instrument (or any rerecording, refiling or re-registration thereof);

(v)  The Guarantee Trustee may consult with counsel, and the advice or opinion of such counsel with respect to legal matters shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in accordance with such advice or opinion. Such counsel may be counsel to the Guarantor or any of its Affiliates and may include any of its employees. The Guarantee Trustee shall have the right at any time to seek instructions concerning the administration of this Guarantee from any court of competent jurisdiction;

(vi)  The Guarantee Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Guarantee at the request or direction of any Holder, unless such Holder shall have provided to the Guarantee Trustee such security and indemnity, reasonably satisfactory to the Guarantee Trustee, against the costs, expenses (including attorneys' fees and expenses and the expenses of the Guarantee Trustee's agents, nominees or custodians) and liabilities that might be incurred by it in complying with such request or direction, including such reasonable advances as may be requested by the Guarantee Trustee; provided, that

9

nothing contained in this Section 3.2(a)(vi) shall be taken to relieve the Guarantee Trustee, upon the occurrence of a Guarantee Event of Default, of its obligation to exercise the rights and powers vested in it by this Guarantee;

(vii)  The Guarantee Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but the Guarantee Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit;

(viii)  The Guarantee Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, nominees, custodians or attorneys, and the Guarantee Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder;

(ix)  Any action taken by the Guarantee Trustee or its agents hereunder shall bind the Holders, and the signature of the Guarantee Trustee or its agents alone shall be sufficient and effective to perform any such action. No third party shall be required to inquire as to the authority of the Guarantee Trustee to so act or as to its compliance with any of the terms and provisions of this Guarantee, both of which shall be conclusively evidenced by the Guarantee Trustee's or its agent's taking such action; and

(x)  Whenever in the administration of this Guarantee the Guarantee Trustee shall deem it desirable to receive instructions with respect to enforcing any remedy or right or taking any other action hereunder, the Guarantee Trustee (i) may request written instructions from the Holders of a Majority in Liquidation Amount of the Securities, (ii) may refrain from enforcing such remedy or right or taking such other action until such written instructions are received, and (iii) shall be protected in conclusively relying on or acting in accordance with such written instructions.

(b)  No provision of this Guarantee shall be deemed to impose any duty or obligation on the Guarantee Trustee to perform any act or acts or exercise any right, power, duty or obligation conferred or imposed on it in any jurisdiction in which it shall be illegal, or in which the Guarantee Trustee shall be unqualified or incompetent to act in accordance with applicable law, to perform any such act or acts or to exercise any such right, power, duty or obligation. No permissive power or authority available to the Guarantee Trustee shall be construed to be a duty.

3.3.  *Not Responsible for Recitals or Issuance of Guarantee.*   The recitals contained in this Guarantee shall be taken as the statements of the Guarantor, and the Guarantee Trustee does not assume any responsibility for their correctness. The Guarantee Trustee makes no representations as to the validity or sufficiency of this Guarantee.

10

**SECTION 4**

11/25

10/16/22, 12:20 AM                           https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

## GUARANTEE TRUSTEE

4.1.  *Guarantee Trustee; Eligibility.*

(a)  There shall be at all times a Guarantee Trustee which shall:

(i)  not be an Affiliate of the Guarantor; and

(ii)  be a corporation organized and doing business under the laws of the United States of America or any state or territory thereof or of the District of Columbia, or a corporation or other Person permitted by the Securities and Exchange Commission to act as an institutional trustee under the Trust Indenture Act, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least 50 million U.S. dollars ($50,000,000), and subject to supervision or examination by federal, state, territorial or District of Columbia authority. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the supervising or examining authority referred to above, then, for the purposes of this Section 4.1(a)(ii), the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

(b)  If at any time the Guarantee Trustee shall cease to be eligible to so act under Section 4.1(a), the Guarantee Trustee shall immediately resign in the manner and with the effect set out in Section 4.2(c).

(c)  If the Guarantee Trustee has or shall acquire any "conflicting interest" within the meaning of Section 310(b) of the Trust Indenture Act, the Guarantee Trustee and Guarantor shall in all respects comply with the provisions of Section 310(b) of the Trust Indenture Act.

4.2.  *Appointment, Removal and Resignation of Guarantee Trustee.*

(a)  Subject to Section 4.2(b), unless a Guarantee Event of Default shall have occurred and be continuing, the Guarantee Trustee may be appointed or removed with or without cause at any time by the Guarantor.

(b)  The Guarantee Trustee shall not be removed in accordance with Section 4.2(a) until a Successor Guarantee Trustee has been appointed and has accepted such appointment by written instrument executed by such Successor Guarantee Trustee and delivered to the Guarantor.

(c)  The Guarantee Trustee appointed to office shall hold such office until a Successor Guarantee Trustee shall have been appointed or until its removal or resignation. The Guarantee Trustee may resign from office (without need for prior or subsequent accounting) by an instrument in writing executed by the Guarantee Trustee

11

and delivered to the Guarantor, which resignation shall not take effect until a Successor Guarantee Trustee has been appointed and has accepted such appointment by instrument in writing executed by such Successor Guarantee Trustee and delivered to the Guarantor and the resigning Guarantee Trustee.

(d)  If no Successor Guarantee Trustee shall have been appointed and accepted appointment as provided in this Section 4.2 within 60 days after delivery to the Guarantor of an instrument of removal or resignation, the removed or resigning Guarantee Trustee may petition any court of competent jurisdiction for appointment of a Successor Guarantee Trustee. Such court may thereupon, after prescribing such notice, if any, as it may deem proper, appoint a Successor Guarantee Trustee.

(e)  No Guarantee Trustee shall be liable for the acts or omissions to act of any Successor Guarantee Trustee.

(f)  Upon termination of this Guarantee or removal or resignation of the Guarantee Trustee pursuant to this Section 4.2, the Guarantor shall pay to the Guarantee Trustee all amounts owing for fees and reimbursement of expenses which have accrued to the date of such termination, removal or resignation.

## SECTION 5

## GUARANTEE

12/25

10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

5.1.   *Guarantee.*

The Guarantor irrevocably and unconditionally agrees to pay in full to the Holders the Guarantee Payments (without duplication of amounts theretofore paid by the Trust), as and when due, regardless of any defense, right of set-off or counterclaim that the Trust may have or assert. The Guarantor's obligation to make a Guarantee Payment may be satisfied by direct payment of the required amounts by the Guarantor to the Holders or by causing the Trust to pay such amounts to the Holders. Notwithstanding anything to the contrary herein, the Guarantor retains all of its rights under the Indenture to (i) extend the interest payment period on the Debentures and the Guarantor shall not be obligated hereunder to make any Guarantee Payments during any Extension Period (as defined in the certificate evidencing the Debentures) with respect to the Distributions (as defined in the Declaration) on the Securities and (ii) change the maturity date of the Debentures to the extent permitted by the Indenture.

5.2.   *Waiver of Notice and Demand.*

The Guarantor hereby waives notice of acceptance of this Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, any right to require a proceeding first against the Trust or any other Person before proceeding against the Guarantor, protest, notice of nonpayment, notice of dishonor, notice of redemption and all other notices and demands.

12

---

5.3.   *Obligations Not Affected.*

The obligations, covenants, agreements and duties of the Guarantor under this Guarantee shall be absolute and unconditional and shall remain in full force and effect until the entire liquidation amount of all outstanding Securities shall have been paid and such obligation shall in no way be affected or impaired by reason of the happening from time to time of any event, including without limitation, the following, whether or not with notice to, or the consent of, the Guarantor:

(a)  The release or waiver, by operation of law or otherwise, of the performance or observance by the Trust of any express or implied agreement, covenant, term or condition relating to the Securities to be performed or observed by the Trust;

(b)  The extension of time for the payment by the Trust of all or any portion of the Distributions, Redemption Price, Liquidation Distribution or any other sums payable under the terms of the Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with the Securities (other than an extension of time for payment of Distributions, Redemption Price, Liquidation Distribution or other sum payable that results from the extension of any interest payment period on the Debentures or any change to the maturity date of the Debentures permitted by the Indenture);

(c)  Any failure, omission, delay or lack of diligence on the part of the Property Trustee or the Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Property Trustee or the Holders pursuant to the terms of the Securities, or any action on the part of the Trust granting indulgence or extension of any kind;

(d)  The voluntary or involuntary liquidation, dissolution, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Trust or any of the assets of the Trust;

(e)  Any invalidity of, or defect or deficiency in, the Securities;

(f)   The settlement or compromise of any obligation guaranteed hereby or hereby incurred; or

(g)  Any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a guarantor, it being the intent of this Section 5.3 that the obligations of the Guarantor hereunder shall be absolute and unconditional under any and all circumstances.

There shall be no obligation of the Guarantee Trustee or the Holders to give notice to, or obtain consent of the Guarantor or any other Person with respect to the happening of any of the foregoing.

13

---

No setoff, counterclaim, reduction or diminution of any obligation, or any defense of any kind or nature that the Guarantor has or may have against any Holder shall be available hereunder to the Guarantor against such Holder to reduce the payments to it under this Guarantee.


13/25

10/16/22, 12:20 AM                                     https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

5.4.   *Rights of Holders.*

(a)  The Holders of at least a Majority in Liquidation Amount of the Securities have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Guarantee Trustee in respect of this Guarantee or to direct the exercise of any trust or power conferred upon the Guarantee Trustee under this Guarantee.

(b)  If the Guarantee Trustee fails to enforce this Guarantee, then any Holder of Securities may, subject to the subordination provisions of Section 6.2, institute a legal proceeding directly against the Guarantor to enforce the Guarantee Trustee's rights under this Guarantee without first instituting a legal proceeding against the Trust, the Guarantee Trustee or any other person or entity. In addition, if the Guarantor has failed to make a Guarantee Payment, a Holder of Securities may, subject to the subordination provisions of Section 6.2, directly institute a proceeding against the Guarantor for enforcement of the Guarantee for such payment to the Holder of the Securities of the principal of or interest on the Debentures on or after the respective due dates specified in the Debentures, and the amount of the payment will be based on the Holder's pro rata share of the amount due and owing on all of the Securities. The Guarantor hereby waives any right or remedy to require that any action on this Guarantee be brought first against the Trust or any other person or entity before proceeding directly against the Guarantor.

5.5.   *Guarantee of Payment.*

This Guarantee creates a guarantee of payment and not of collection.

5.6.   *Subrogation.*

The Guarantor shall be subrogated to all (if any) rights of the Holders of Securities against the Trust in respect of any amounts paid to such Holders by the Guarantor under this Guarantee; provided, however, that the Guarantor shall not (except to the extent required by mandatory provisions of law) be entitled to enforce or exercise any right that it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of payment under this Guarantee, if at the time of any such payment, any amounts are due and unpaid under this Guarantee. If any amount shall be paid to the Guarantor in violation of the preceding sentence, the Guarantor agrees to hold such amount in trust for the Holders and to pay over such amount to the Guarantee Trustee for the benefit of the Holders.

5.7.   *Independent Obligations.*

The Guarantor acknowledges that its obligations hereunder are independent of the obligations of the Trust with respect to the Securities, and that the Guarantor shall be liable as

14

principal and as debtor hereunder to make Guarantee Payments pursuant to the terms of this Guarantee notwithstanding the occurrence of any event referred to in subsections 5.3(a) through 5.3(g), inclusive, hereof.

### SECTION 6

### LIMITATION OF TRANSACTIONS; SUBORDINATION

6.1.   *Limitation of Transactions.*

So long as any Securities remain outstanding, if (i) there shall have occurred an event of default under the Indenture with respect to the Debentures, (ii) there shall be a Guarantee Event of Default or (iii) the Guarantor shall have given notice of its election of an Extension Period as provided in the certificate evidencing the Debentures and shall not have rescinded such notice, or such Extension Period or any extension thereof shall be continuing, then the Guarantor shall not, and shall not permit any subsidiary of the Guarantor, to (x) declare or pay any dividends or distributions on, or redeem, purchase, acquire or make a liquidation payment with respect to, any of the Guarantor's capital stock or (y) make any payment of principal, interest or premium, if any, on or repay, repurchase or redeem any debt securities of the Guarantor that rank on a parity with or junior in interest to the Debentures or make any guarantee payments with respect to any guarantee by the Guarantor of the debt securities of any subsidiary of the Guarantor if such guarantee ranks on a parity with or junior in interest to the Debentures (other than (a) dividends or distributions in common stock of the Guarantor, (b) payments under this Guarantee, (c) any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto, and (d) purchases of common stock related to the issuance of common stock or rights under any of the Guarantor's benefit plans).



10/16/22, 12:20 AM                          https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

6.2.  *Ranking.*

This Guarantee will constitute an unsecured obligation of the Guarantor and will rank (i) subordinate and junior in right of payment to all other liabilities of the Guarantor, (ii) on a parity with the most senior preferred or preference stock now or hereafter issued by the Guarantor and with any guarantee now or hereafter entered into by the Guarantor in respect of any preferred securities of any Affiliate of the Guarantor and (iii) senior to the Guarantor's common stock. In addition, at all times such obligations will be structurally subordinated to the liabilities and obligations of the Guarantor's subsidiaries.

6.3.  *Subordination of Common Securities*

If a Trust Enforcement Event has occurred and is continuing under the Declaration, the rights of the holders of the Common Securities to receive Guarantee Payments hereunder shall be subordinated to the rights of the Holders of the Preferred Securities to receive Guarantee Payments under this Guarantee.

15

---

## SECTION 7

### TERMINATION

7.1.  *Termination.*

This Guarantee shall terminate upon (i) full payment of the Redemption Price of all Securities, (ii) distribution of the Debentures to the Holders of all the Securities or (iii) full payment of the amounts payable in accordance with the Declaration upon liquidation of the Trust. Notwithstanding the foregoing, this Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time any Holder of Securities must restore payment of any sums paid under the Securities or under this Guarantee.

## SECTION 8

### INDEMNIFICATION

8.1.  *Exculpation.*

(a)  No Indemnified Person shall be liable, responsible or accountable in damages or otherwise to the Guarantor or any Covered Person for any loss, damage, liability, expense or claim incurred by reason of any act or omission performed or omitted by such Indemnified Person in good faith in accordance with this Guarantee and in a manner that such Indemnified Person reasonably believed to be within the scope of the authority conferred on such Indemnified Person by this Guarantee or by law, except that an Indemnified Person shall be liable for any such loss, damage or claim incurred by reason of such Indemnified Person's negligence or willful misconduct with respect to such acts or omissions.

(b)  An Indemnified Person shall be fully protected in relying in good faith upon the records of the Guarantor and upon such information, opinions, reports or statements presented to the Guarantor by any Person as to matters the Indemnified Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Guarantor, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses, or any other facts pertinent to the existence and amount of assets from which Distributions to Holders of Securities might properly be paid.

8.2.  *Indemnification.*

The Guarantor agrees to indemnify each Indemnified Person for, and to hold each Indemnified Person harmless against any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses (including reasonable legal fees and expenses) of defending itself against, or investigating, any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder. The obligation to indemnify as set forth in this Section 8.2 shall survive the termination of this Guarantee.

16

---


16/25

10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

### SECTION 9

### MISCELLANEOUS

9.1.   *Successors and Assigns.*

All guarantees and agreements contained in this Guarantee shall bind the successors, assigns, receivers, trustees and representatives of the Guarantor and shall inure to the benefit of the Holders of the Securities then outstanding.

9.2.   *Amendments.*

Except with respect to any changes that do not materially adversely affect the rights of the Holders (in which case no consent of the Holders will be required), this Guarantee may not be amended without the prior approval of the Holders of not less than $66^2/3\%$ of the aggregate liquidation amount of the Securities. The provisions of Section 11.2 of the Declaration with respect to meetings of, and action by written consent of, the Holders of the Securities apply to the giving of such approval.

9.3.   *Notices.*

All notices provided for in this Guarantee shall be in writing, duly signed by the party giving such notice, and shall be delivered by hand, telecopied or mailed by registered or certified mail, as follows:

(a)  If given to the Guarantee Trustee, at the Guarantee Trustee's mailing address set forth below (or such other address as the Guarantee Trustee may give notice of to the Guarantor and the Holders of the Securities):

    JPMorgan Chase Bank
    4 New York Plaza
    15th Floor
    New York, New York 10004
    Attention: Institutional Trut Services
    Facsimile: (212) 623-6274

(b)  If given to the Guarantor, at the Guarantor's mailing addresses set forth below (or such other address as the Guarantor may give notice of to the Guarantee Trustee and the Holders of the Securities):

    Lehman Brothers Holdings Inc.
    399 Park Avenue
    New York, New York 10022
    Attention: Corporate Counsel
    Facsimile: (212) 526-0339

17

(c)  If given to any Holder of Securities, at the address set forth on the books and records of the Trust.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid, except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

9.4.   *Benefit.*

This Guarantee is solely for the benefit of the Holders of the Securities and, subject to Section 3.1(a), is not separately transferable from the Securities.

9.5.   *Governing Law.*

THIS GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.


17/25

10/16/22, 12:20 AM                    https://www.sec.gov/Archives/edgar/data/806085/000104746903008869/a2105775zex-4_05.htm

18

IN WITNESS WHEREOF, this Guarantee is executed as of the day and year first above written.

LEHMAN BROTHERS HOLDINGS INC.,
as Guarantor

By:      /s/ OLIVER BUDDE
_____

Name: Oliver Budde
Title: Vice President

JPMORGAN CHASE BANK
as Guarantee Trustee

By:      /s/ ENRICO D. REYES
_____

Authorized Officer

19

QuickLinks

EXHIBIT 4.05

GUARANTEE AGREEMENT
SECTION 1 INTERPRETATION AND DEFINITIONS
SECTION 2 TRUST INDENTURE ACT
SECTION 3 POWERS, DUTIES AND RIGHTS OF GUARANTEE TRUSTEE
SECTION 4 GUARANTEE TRUSTEE
SECTION 5 GUARANTEE
SECTION 6 LIMITATION OF TRANSACTIONS; SUBORDINATION
SECTION 7 TERMINATION
SECTION 8 INDEMNIFICATION
SECTION 9 MISCELLANEOUS


18/25

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

**PROOF OF CLAIM**

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000025478

THIS SPACE IS FOR COURT USE ONLY

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (as defined on reverse side).

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

STEPHEN C. RESTELLI
26 POND ST.
BARRE, VT 05641

Telephone number ( 802 ) 476-0919  Email Address: STEPHEN849 @JUNO.COM

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(if known)

Filed on: _____

**Name and address where payment should be sent (if different from above)**

Telephone number: _____  Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 1,081,498.00
If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☒ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** MONEY LOANED THROUGH PURCHASE OF CUSIP #: 52520B206 & 52520X208
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: _____
Value of Property: $_____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection: _____
**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 21 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/18/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Stephen C. Restelli, STEPHEN C. RESTELLI |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 9/19/2009 at 9:26 AM Pacific. Please print this page as proof of your filing.

Stephen C. Restelli
26 Pond St.
Barre, VT 05641 United States

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Holdings Inc. (08-13555) |
| If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed. | These bonds are being held by my broker, Scottrade and are supposed to be guaranteed by LBHI |

| Documents |
|---|
| form1.jpg |
| form2.jpg |

| | |
|---|---|
| List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount. | The guarantees are part of each respective prospectus for cusip numbers 52520B206 and 52520X208, which include full face value of $25 for each plus interest. |
| Amount of claim against Obligor | $1,081,498.00 |
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | The Chase Manhattan Bank will act as guarantee trustee |
| Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire. | This is outlined on page 21 onward of the prospectus for cusip#52520B 206. "DESCRIPTION OF THE GUARANTEE The guarantee to be executed and delivered by Lehman Brothers Holdings for the benefit of the holders of preferred securities will be qualified as an indenture under the Trust Indenture Act of 1939. The Chase Manhattan Bank will act as guarantee trustee for purposes of the Trust Indenture Act. The terms of the guarantee will include those set forth in the guarantee and those made part of the guarantee by the Trust Indenture Act. The following summary of the material terms of the guarantee is not intended to be complete and is qualified in all respects by the applicable prospectus supplement, the guarantee, the Trust Indenture Act and other applicable law. The guarantee will be filed as an exhibit to a Form 8-K or similar document incorporated by reference in the registration statement of which this prospectus forms a part. You can obtain a copy of this document by following the directions on page 7. General Pursuant to and to the extent set forth in the guarantee, Lehman Brothers Holdings will irrevocably and |

20/25



Scottrade - Positions                                    Page 1 of 1

**Scottrade**
*More broker for your money.*
Your last login was: 9/18/2009 4:13:24 PM ET

ACCT#
69225874

| Home | Trade | My Account | Quotes & Research | Knowledge Center | Detailed Quote |

Hello, STEPHEN C
RESTELLI IRA                                    ?Help    ◆Tutor

Balances
Positions
Watch Lists &
  Portfolios
GainsKeeper ™
Account History
Order Status
Deposits
Withdrawals
My Information &
  Preferences
Alerts

### Positions (My Investments)

| Symbol | Description | Acct Type | Qty | Price | Market Value |
|--------|-------------|-----------|-----|-------|--------------|
| ~~~~ | ~~~~ | Cash | | | |
| ACM | ARCLAND ENERGY CORP COM NEW | Cash | | | |
| LEHLQ | LEHMAN BRO HLDGS CAP TR IV | Cash | 15000 | 0.29 | 4,350.00 |
| LEHNQ | LEHMAN BROS HLDGS CAP TR VI | Cash | 25700 | 0.24 | 6,168.00 |
| ~~~~ | ~~~~ | Cash | | | |
| TFNK | ~~~~ | Cash | | | |

Total Market Value:                              40,700

**Quick Quote:**

Symbol or Name [   Go ]
**Find Symbol**
DJIA
9,820.20          36.28
NASDAQ
2,132.86          6.11
S&P 500
1,068.30          2.81
[ Refresh ] [ Detailed ]
Market has closed.
9/18/2009 6:16 PM ET

Text Size: A A A

*$ "Today's Change(s)" value is calculated for current positions based upon the previous day's closing represent a gain/loss figure based upon your purchase price.

15,000       CUSIP # 52520B206   1.59375  DIVIDEND
25,700       CUSIP # 52520X208   1.56     DIVIDEND

Security Center | Forms & Agreements | Contact Us | Site Map | Suggestions

As your agreement for the receipt and use of market data provides, the securities markets (1) reserve all rights to the market data that they make available; (2) do not guarantee that data; and (3) shall not be liable for any loss due to their negligence or to any cause beyond their reasonable control.
© Copyright 2005 Scottrade. All Rights Reserved.

40,700 SHARES X $25 = $1,017,500.00   FACE VALUE
CUMULATIVE LEHNQ ANNUAL DIVIDENDS     40,092.00
CUMULATIVE LEHLQ ANNUAL DIVIDENDS     23,906.00
              TOTAL CLAIM   $1,081,498.00

S. RESTELLI
26 POND ST.
BARRE, VT 05641

WHITE RIVER JUNCTION
VT 050 2 T
19 SEP 2009    PM

SEP 18 2009
USPS 05641

22/25

SEP 2 1 2009

LEHMAN BROTHERS HOLDINGS
CLAIMS PROCESSING
C/O EQUIP BANKRUPTCY SOLUTIONS, LLC.
FDR STATION
P.O. BOX 5076
NEW YORK, NY  10150-5076

10150#5076

Exhibit G

https://sec.report/Document/0001047469-06-007275/a2170550z424b3.htm

# $300,000,000

# LEHMAN BROTHERS HOLDINGS E-CAPITAL TRUST I

### OFFER TO EXCHANGE ITS FLOATING RATE
### ENHANCED CAPITAL ADVANTAGED PREFERRED SECURITIES ("ECAPS$^{SM}$")
### WHICH HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933
### FOR ANY AND ALL OF ITS OUTSTANDING
### FLOATING RATE ENHANCED CAPITAL ADVANTAGED PREFERRED SECURITIES
### (Liquidation Amount $1,000 per trust preferred security)

### as guaranteed, to the extent described herein, by
## LEHMAN BROTHERS HOLDINGS INC.

## DESCRIPTION OF THE TRUST GUARANTEE

Set forth below is a summary of information concerning the new trust guarantee that will be executed and delivered by us for the benefit of the holders from time to time of trust preferred securities and the old trust guarantee that was executed and delivered by us in connection with the private offering of old trust preferred securities. As soon as practicable after the completion of this exchange offer, the old trust guarantee will be exchanged by us for the new trust guarantee. In this prospectus, we refer to the old trust guarantee and the new trust guarantee as the "trust guarantee." The summary does not purport to be complete and is subject in all respects to the provisions of, and is qualified in its entirety by reference to, the trust guarantee. The trust guarantee is filed as an exhibit to the registration statement of which this prospectus is a part. You can obtain a copy of the trust guarantee by following the directions under "Where You Can Find More Information." The new trust guarantee incorporates by reference the terms of the Trust Indenture Act and will be qualified as an indenture under the Trust Indenture Act upon effectiveness of the registration statement of which this prospectus is a part. JPMorgan Chase Bank, N.A., as the trust guarantee trustee, holds the old trust guarantee and will hold the trust guarantee for the benefit of the holders of the trust preferred securities and will act as trustee for the purposes of compliance with the Trust Indenture Act.

### General

Pursuant to the old trust guarantee, we have, and pursuant to the new trust guarantee, we will, irrevocably agree, on a subordinated basis and to the extent set forth therein, to pay in full to the holders of the trust preferred securities (except to the extent paid by the trust), as and when due, regardless of any defense, right of set off or counterclaim that the trust may have or assert, the following payments, without duplication: (i) any accumulated and unpaid distributions on the trust preferred securities, to the extent the trust has funds available therefor, (ii) the redemption price with respect to any trust preferred securities called for redemption by the trust, to the extent the trust has funds available therefor, and (iii) upon a voluntary or involuntary dissolution of the trust (other than in connection with the redemption of all of the trust preferred securities), the lesser of (a) the aggregate of the liquidation amount and all accumulated and unpaid distributions on the trust securities to the date of payment and (b) the amount of assets of the trust remaining available for distribution to holders of trust securities upon the dissolution of the trust. Our obligation to make any payment under the trust guarantee may be satisfied by direct payment of the required amounts by us to the holders of trust preferred securities or by causing the trust to pay such amounts to such holders.

The old trust guarantee was, and the new trust guarantee will be, a guarantee on a subordinated basis with respect to the trust preferred securities from the time of issuance of the trust preferred securities but will only apply

23/25

to any payment of distributions or redemption price, or to payments upon the dissolution of the trust, to the extent the trust has funds available therefor. If the LLC fails to pay distributions on LLC preferred securities, the trust would lack available funds for the payment of distributions or amounts payable on redemption of the trust preferred securities or otherwise, and in such event holders of the trust preferred securities would not be able to rely upon the trust guarantee for payment of such amounts. Instead, holders of the trust preferred securities will have the remedies described in this prospectus under "Description of the Trust Preferred Securities—Trust Enforcement Events."

The trust guarantee does not apply to current distributions by the LLC unless and until such distributions are paid by the managing member out of funds of the LLC legally available for payment or to liquidating distributions unless there are assets available for payment in the LLC, each as more fully described under "Risk Factors—Distributions by the LLC may be deferred in our discretion and, in such case, holders will be required to recognize income for U.S. federal income tax purposes in advance of the receipt of cash attributable to such income."

54

---

### Events of Default; Enforcement of Trust Guarantee

An event of default under the trust guarantee will occur upon our failure to perform any of our payment or other obligations thereunder. The old trust guarantee constitutes, and the new trust guarantee will constitute, a guarantee of payment and not of collection (that is, the guaranteed party may directly institute a legal proceeding against us to enforce its rights under the trust guarantee without instituting a legal proceeding against any other person or entity).

The holders of a majority in liquidation amount of the trust preferred securities have the right to direct the time, method and place of conducting any proceeding for any remedy available to the trust guarantee trustee or to direct the exercise of any trust or power conferred upon the trust guarantee trustee under the trust guarantee. If the trust guarantee trustee fails to enforce its rights under the trust guarantee after a holder of trust preferred securities has made a written request, such holder may institute a legal proceeding directly against us to enforce the trust guarantee trustee's rights under the trust guarantee, without first instituting a legal proceeding against the trust, the trust guarantee trustee or any other person or entity. In any event, if we have failed to make a guarantee payment under the trust guarantee, a holder of trust preferred securities may directly institute a proceeding in such holder's own name against us for enforcement of the trust guarantee for such payment.

We, as guarantor, are required to file annually with the trust guarantee trustee a certificate as to whether or not we are in compliance with all the conditions and covenants applicable to us under the trust guarantee.

### Subordination

The old trust guarantee constitutes, and the new trust guarantee will constitute, an unsecured obligation of ours. The new trust guarantee will rank subordinate and junior to all other liabilities of ours and will rank *pari passu* with the most senior preferred stock issued from time to time by us and with any guarantee now or hereafter entered into by us in respect of such preferred stock or preference stock of any affiliate of ours and senior to our common stock. The terms of the trust preferred securities provide that each holder of trust preferred securities by acceptance thereof agrees to the subordination provisions and other terms of the trust guarantee.

### Amendments and Assignment

Except with respect to any changes that do not materially adversely affect the rights of holders of trust preferred securities (in which case no vote will be required), the trust guarantee may be amended only with the prior

approval of the holders of at least a majority in liquidation amount of all the outstanding trust preferred securities. The manner of obtaining any such approval of holders of the trust preferred securities will be as set forth above under "Description of the Trust Preferred Securities—Voting Rights."

All guarantees and agreements contained in the trust guarantee shall bind our successors, assigns, receivers, trustees and representatives and shall inure to the benefit of the holders of the trust preferred securities then outstanding. Except in connection with any permitted merger or consolidation of us with or into another entity or any permitted sale, transfer or lease of our assets to another entity as described below under "Description of the LLC Investments—The Company Debenture—Limitations on Mergers and Sales of Assets," we may not assign our rights or delegate our obligations under the trust guarantee without the prior approval of the holders of at least a majority of the aggregate stated liquidation amount of the trust preferred securities then outstanding.

55

## Termination of the Trust Guarantee

The trust guarantee will terminate as to each holder of trust preferred securities upon (i) full payment of the redemption price of all trust preferred securities or (ii) full payment of the amounts payable in accordance with the declaration of trust upon dissolution of the trust. The trust guarantee will continue to be effective or will be reinstated, as the case may be, if at any time any holder of trust preferred securities must restore payment of any sum paid under such trust preferred securities or such trust guarantee.

## Information Concerning the Trust Guarantee Trustee

The trust guarantee trustee, prior to the occurrence of a default with respect to the trust guarantee, undertakes to perform only such duties as are specifically set forth in the trust guarantee and, after default with respect to the trust guarantee, shall exercise the same degree of care as a prudent man would exercise in the conduct of his own affairs. Subject to such provision, the trust guarantee trustee is under no obligation to exercise any of the powers vested in it by the trust guarantee at the request of any holder of trust preferred securities unless it is offered reasonable indemnity against the costs, expenses and liabilities that might be incurred thereby. The holders of trust preferred securities will not be required to offer such indemnity in the event such holders, by exercising their voting rights, direct the trust guarantee trustee to take any action following a default with respect to the trust guarantee.

## Certain Business Relationships with Trust Guarantee Trustee

We and certain of our subsidiaries maintain bank accounts, borrow money and have other commercial banking, investment banking and other business relationships with the trust guarantee trustee and its affiliates in the ordinary course of business. The trust guarantee trustee or its affiliates may participate as underwriters, agents or dealers in any offering of trust preferred securities.

## Governing Law

The old trust guarantee is, and the new trust guarantee will be, governed by, and construed in accordance with, the laws of the State of New York.

56

25/25